UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,  :
and VERIZON COMMUNICATIONS INC.,   :   No. 08 cv 427 (LAK)
:
               Petitioners,   :
:
   vs.    :   **PETITION TO VACATE**
:   **ARBITRATION AWARD**
PATRICIA BROWN, HAROLD P. SCHROER, and   :
DAWN M. ZOBRIST, on an individual basis and on   :
behalf of others similarly situated,   :
:
               Respondents.   ::
:
------------------------------------------------------------------------x

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), Cellco Partnership

d/b/a Verizon Wireless ("Verizon Wireless") and Verizon Communications Inc. hereby petition

the Court for an order vacating the Class Determination Award of the American Arbitration

Association ("AAA") issued on January 10, 2008 (the "Award") and in support, allege as

follows:

## I.    NATURE OF THE ACTION

1.    This action seeks to vacate an arbitrator's class determination award that was

rendered in manifest disregard of federal law and in excess of the Arbitrator's powers. By this

Award, the Arbitrator certified two nationwide arbitration classes comprising tens of millions of

current and former Verizon Wireless customers, including millions whose contracts with Verizon

Wireless expressly prohibited arbitration on a class wide basis, or barred arbitration of claims

altogether in the event the class arbitration waiver was found to be invalid. Although his

authority derived solely from these contracts, the Arbitrator openly repudiated the plain language

of the parties' arbitration agreements in the name of what he called "equity and fairness." Where

a provision in the parties' contracts suited his aims, the Arbitrator recognized it and applied it. Where, however, a provision offended his personal notions of justice, the Arbitrator ignored it or simply declared it invalid and unenforceable, ignoring clear federal law that whether an arbitration clause is valid is a question reserved solely for courts, not arbitrators, to decide.

2.     The Arbitrator's usurpation of power did not end here.  Informed of a recent federal appellate decision holding that the Federal Arbitration Act ("FAA") preempts state law from declaring class waivers unconscionable, the Arbitrator proceeded to declare the class waivers in Verizon Wireless's customer service agreements ("CSAs") unconscionable under state law.  Apprised that the choice of law clauses in millions of CSAs designate a state law that enforce class arbitration waivers, the Arbitrator expressly acknowledged the validity of those choice of law clauses but refused to apply the law designated because it would prevent the outcome he was seeking.  Explained the well-settled standards under federal law for certifying a class action, the Arbitrator certified nationwide arbitration classes that are beset by internal conflicts of interest and whose designated class representatives either lack standing, are not members of the class they purport to represent, or both.  As long as what he considered the fair outcome was achieved, the Arbitrator was willing to ignore every fact and settled legal principle that got in his way.

3.     In substituting his own notions of equity for legal principle, the Arbitrator has manifestly disregarded federal law and exceeded his authority.  The Arbitrator has issued an irrational, results-oriented decision that runs roughshod over Verizon Wireless's rights and settled contractual expectations of millions of current and former customers.  These customers are now subject to having their claims and rights decided by an arbitrator who has shown no interest in faithfully applying the law.

4.      For the reasons set forth below, this Court must vacate the Award pursuant to Section 10(a) of the FAA, 9 U.S.C. § 10(a), and the Supremacy Clause of the United States Constitution, Art. IV, § 2, and enjoin respondents from attempting to confirm or enforce the Award.

## II.    THE PARTIES

5.      Petitioner Cellco Partnership d/b/a Verizon Wireless is a Delaware general partnership with its principal place of business in Basking Ridge, New Jersey.

6.      Petitioner Verizon Communications Inc. is a Delaware Corporation with its principal place of business in New York, New York.

7.      Respondent and purported class representative Patricia Brown is a citizen of Florida.

8.      Respondent and purported class representative Harold P. Schroer is a citizen of New York.

9.      Respondent and purported class representative Dawn M. Zobrist is citizen of Illinois.

## III.   JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Verizon Wireless seeks to vacate the Award principally on the ground that the Arbitrator manifestly disregarded federal law, and because Verizon Wireless's claim that the FAA preempts the Award arises under the Supremacy Clause of the United States Constitution, U.S. Const. art. IV, section 2.  This Court also has jurisdiction over this action under 28 U.S.C. § 1332(d), because this is a purported class action in which at least one member of the proposed classes is a citizen of a State different from Verizon Wireless and the matter in controversy

exceeds $5,000,000, exclusive of interests and costs. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the non-federal law grounds Verizon Wireless asserts for vacating the Award.

11.    This Court has personal jurisdiction over the Respondents because Respondent Schroer is a citizen of New York, the arbitration proceedings giving rise to this action occurred in New York, the FAA provides for nationwide service of process, Respondents have sufficient contacts with the United States, and it would be consistent with notions of fair play and substantial justice for this Court to exercise personal jurisdiction over Respondents.

12.    Venue is proper in this District under 9 U.S.C. § 10 and 28 U.S.C. § 1391, because the award giving rise to this action was made in this District and because a substantial part of the events giving rise to this action occurred in this District.

13.    This Petition to Vacate is timely under 9 U.S.C. § 12 because it was filed within three months of receipt of the Award from the AAA.

## IV.    BACKGROUND FACTS

14.    The underlying claims in this case arise from challenges to early termination fee ("ETF") provisions in CSAs, by which subscribers agreed to maintain service with Verizon Wireless for the term of the contract or, alternatively, pay the ETF. Defendants Patricia Brown, Harold P. Schroer, and Dawn M. Zobrist (collectively "Defendants") were each once parties to CSAs with Verizon Wireless that contained ETF provisions.

15.    Zobrist entered into a CSA with Verizon Wireless in July 2001, and cancelled her service in March 2002. She was charged an ETF which she paid "under protest." She has not been party to any contract with Verizon Wireless since March 2002.

16.     Brown entered into a CSA with Verizon Wireless in January 2003.  The two-year term of the CSA expired in January 2005, and Brown subsequently switched to a different carrier in July 2005.  She has never been assessed an ETF and has not been a party to a contract with Verizon Wireless since January 2005.

17.     Schroer was a party to various CSAs with Verizon Wireless.  He terminated his service and was assessed an ETF in May 2003.  Verizon Wireless ultimately waived that fee. Mr. Schroer has not been a party to a CSA with Verizon Wireless since May 2003.

18.     Zobrist and Brown initially brought actions in state court, but ultimately these actions were stayed in favor of separate arbitrations.  Schroer was added as an additional claimant in the Brown arbitration.

19.     On March 20, 2006, the AAA consolidated the Zobrist and Brown/Schroer arbitrations as *Brown et al. v. Cellco Partnerships d/b/a Verizon Wireless*, and *Zobrist et al. v. Verizon Wireless, Cellco Partnership, and Verizon Communications*, Consolidated Case No. 11 494 01274 05 and 11 494 0032 04 (pending before the AAA).

20.     Following consolidation, the Claimants filed a First Consolidated Demand for Class Arbitration, which asserted, among others, claims under 47 U.S.C. § 201, the New Jersey Consumer Fraud Act, and the common and statutory law of various other states.  Claimants sought to assert these causes of action on behalf of nationwide arbitration classes.

## V.     THE ARBITRATION AWARD

### A.     The Arbitrator Certified Two Nationwide Classes

21.     On January 10, 2008, the Arbitrator issued a Class Determination Award, a copy of which is attached as Exhibit A, that certified the following arbitration classes:

(a) all persons in the United States (excepting California residents) who were charged an

ETF by Verizon Wireless pursuant to a CSA which contained an arbitration clause from

November 1, 2000 to November 16, 2006 ("Class A Payer Class"); and

(b) all persons in the United States (again excepting California residents) who were

parties to a CSA with Verizon Wireless that included a provision for an ETF and

included an arbitration clause, during the same period ("Class B Subscriber Class").

22.     The Arbitrator designated Schroer and Zobrist as representatives for the Class A

Payer Class.  The Arbitrator designated Brown and Zobrist as representatives of the Class B

Subscriber Class, even though Claimants had never requested that Zobrist be considered as a

Class B Representative.  In addition, the Arbitrator sua sponte expanded the Class B definition

from the class Claimants had requested, so that it encompassed persons who "were" parties to a

CSA in the past, rather than including only those individuals who currently "are" parties to a

CSA.

23.     Pursuant to the AAA's Supplementary Rules governing class arbitrations, the

Arbitrator stayed arbitration proceedings for a period of at least 30 days to permit any party to

move a court of competent jurisdiction to confirm or vacate the Award.

**B.      The Class Determination Award Violates Federal Law**

24.     Throughout the proceedings, Verizon Wireless cited federal authority that

precluded class certification.  In explaining his decision, the Arbitrator did not seriously dispute

the controlling principles of federal law cited and relied upon by Verizon Wireless.  Rather, the

Arbitrator invoked his own personal notions of fairness, declaring that it would be "inequitable"

to follow federal law if that meant Claimants could not bring a nationwide class arbitration

against Verizon Wireless.  The Arbitrator apparently reasoned that, in the context of an

arbitration proceeding, equitable considerations took precedence over any conflicting legal rules or the provisions of the parties' agreement that otherwise might prevent what he regarded as a just outcome.

25.     The Arbitrator fundamentally misconceived the limits federal law imposes on an arbitrator's authority.  As explained below, the Award must be vacated because the Arbitrator exceeded his authority and manifestly disregarded clearly applicable federal law.

> **1.     Ignoring the Limits on His Authority Under Federal Law, the Arbitrator Declared Express Class Action Waivers Unenforceable**

26.     Many of the CSAs at issue for the period prior to July 2002 and all CSAs beginning in January 2005 had express provisions waiving class arbitrations.  The post January 2005 provisions stated:

> (3) YOU CAN OBTAIN PROCEDURES, RULES, AND FEE INFORMATION FROM THE AAA (WWW.ADR.COM), THE BBB (WWW.BBB.COM), OR FROM US.  THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF THOSE PROCEDURES OR RULES WOULD.
>
> . . .

27.     During the arbitration proceedings, Verizon Wireless cited federal authority providing that it is for the court, and not the arbitrator, to decide the enforceability of a provision in an agreement to arbitrate, and in particular the enforceability of a class waiver clause.  In manifest disregard of this federal law, the arbitrator determined that the class waiver provisions in the CSAs were unconscionable and therefore unenforceable.

28.     The Arbitrator acknowledged the case law cited by Verizon Wireless "holding that unconscionability is a gateway issue to be decided by a Court and not an arbitrator."  He justified his refusal to apply this law by declaring that Verizon Wireless had waived its right to

have a court determine the enforceability of the class waiver when, in an earlier state court proceeding, Verizon Wireless had stipulated that an arbitrator could decide whether Brown's October 2002 CSA permitted class arbitration.  This determination lacked any factual basis whatsoever:  Verizon Wireless' stipulation that an arbitrator could decide the *interpretation* question of whether *Brown's CSA* permitted class-wide arbitration for claims arising under *that CSA* did not waive Verizon Wireless' rights to have a court determine the *enforceability* of *different* class waiver provisions in *different* CSAs with *different* express class waiver provisions, including those of millions of absent class members whose CSAs were not before the Florida court.

29.    Apart from its lack of a factual basis, the Arbitrator's finding that Verizon Wireless had waived its right to have a court decide the validity of an arbitration clause was itself a manifest disregard of federal law.  Only a court may determine whether a party has relinquished its right to having a court determine the validity of a class waiver.

30.    Apart from ignoring federal law, the Arbitrator lacked the power under the controlling arbitration agreement to even reach the issue of whether the express class action waivers were enforceable.  The arbitration clauses in Verizon Wireless's CSAs designate the AAA as the arbitral forum, thereby incorporating the AAA's policy and rules.  The official AAA policy is not to accept for administration "demands for class arbitration where the underlying agreement prohibits class claims."  Under the Supplementary Rule 4 For Class Arbitration, moreover, an arbitrator may determine whether an arbitration "should proceed" as a class only if he or she is satisfied that the relevant "arbitration clause permits the arbitration to proceed as a class arbitration" or that "a court has ordered that an arbitrator determine whether a class arbitration may be maintained . . . ."  Thus, in declaring the express class arbitration waivers

unenforceable, the Arbitrator brushed aside the clear and unequivocal terms of the very agreements from which his authority derived.

31.    The Arbitrator further ignored the clear contractual provisions of millions of subscribers whose CSAs expressly stated that the agreement to arbitrate "would not apply" in the event the class waiver were deemed unenforceable.  As a result of the Arbitrator's decision, subscribers who had entered CSAs after January 2006 no longer had arbitration agreements with Verizon Wireless, because their arbitration clauses included the following provision:

> IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) ABOVE IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY."

32.    Again disregarding federal law, the Arbitrator declared this provision unconscionable and unenforceable.  The Arbitrator thus included in the arbitration classes tens of millions of subscribers who did not have an arbitration agreement with Verizon Wireless.

33.    The Arbitrator's ruling invalidating the class waiver provisions based on his own notions of justice and equity is also preempted by federal law, as set forth in recent federal appellate authority cited to the Arbitrator.  Verizon Wireless's CSAs are contracts evidencing a transaction involving commerce.  Under Section 2 of the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C § 2.  The Arbitrator's holding that the express class waiver provisions in Verizon Wireless's CSAs were unenforceable was not based "upon such grounds as exist at law or in equity for the revocation of any contract[,]" and is therefore preempted by the FAA.

34.     The Arbitrator's ruling invalidating the class waiver provisions also ignored the choice of law provisions in many of the applicable CSAs, which the Arbitrator expressly found to be valid.  These agreements provided that the agreement is "governed by the laws of the state encompassing the area code assigned to your wireless phone number, without regard to the conflicts of laws rules of that state."

35.     Verizon Wireless highlighted for the Arbitrator authority demonstrating that, although some state courts refused to enforce class arbitration waivers, many jurisdictions – including Florida and New York, which governed Brown's and Schroer's CSAs, respectively – follow federal law and enforce class arbitration waivers.  Verizon Wireless explained that even assuming an arbitrator had the authority to decide the validity of a class waiver, the Arbitrator could not make a universal determination regarding a class waiver's alleged unconscionability as to all subscribers of a putative nationwide class.  Once again, the Arbitrator ignored this well established law, even though he acknowledged the validity of the choice of law provisions.

## 2.     In Manifest Disregard of The Law, the Arbitrator Ignored Clear Conflicts Within Class A That Preclude Certification

36.     Throughout the proceedings, Verizon Wireless presented federal authority that precluded certification of the class of individuals were charged an ETF because of a fundamental intra-class conflict.

37.     Claimants alleged that the ETFs in Verizon Wireless's CSAs were unenforceable penalties, rather than valid liquidated damages provisions.  If Claimants successfully established that the ETFs were unenforceable penalties, however, Verizon Wireless would be entitled to collect its actual contract damages from any class members who breach their CSAs.  While some class members would benefit from the invalidation of the ETF, the vast majority would not

because they would be liable for actual damages in excess of the ETF.  Under federal law, the

existence of such a conflict of interest among members of a putative class barred certification.

38.    While aware of this authority, the Arbitrator wholly ignored it and certified the

Payer Class.

### 3.    The Arbitrator Acknowledged, and Then Ignored, the Valid Choice of Law Clauses in Verizon Wireless's CSAs

39.    During the arbitration process, Verizon Wireless cited federal authority holding

that the Arbitrator would exceed his authority if he failed to adhere to a valid, enforceable choice

of law clause agreed upon by the parties.  Verizon Wireless further noted that the choice of law

clauses in the CSAs precluded the certification of a nationwide arbitration class challenging the

validity of ETFs under state law because there were irreconcilable conflicts between the laws of

various states regarding the validity of liquidated damages provisions.

40.    As noted above, Verizon Wireless highlighted for the Arbitrator authority

reflecting differences among the various states as to the enforceability of class waiver provisions.

41.    The Arbitrator expressly recognized the validity and enforceability of the choice

of laws clauses in Verizon Wireless's CSAs.  The Arbitrator, however, then ignored these valid

choice of law clauses, and manifestly disregarded the law, in certifying two nationwide classes

encompassing multiple jurisdictions with irreconcilable conflicts regarding the validity of

liquidated damages provisions.

### 4.    In Manifest Disregard of Federal Law, The Arbitrator Certified Class B Subscriber Class Even Though None of the Claimants is a Member of That Class

42.    Claimants proposed Brown as the representative for Class B, consisting of current

subscribers who had entered a CSA between November 1, 2000 and November 16, 2006, that

included a provision for an ETF, with the exception of those subscribers whose CSAs were governed by California law.  In opposing certification of Class B, Verizon Wireless cited federal authority that a class action suit could not proceed absent a class representative, and that a class representative must be a member of a class at the time of certification.

43.    Under this controlling authority, the Arbitrator could not certify Class B.  Brown, the only representative Claimants had proposed for this class, had terminated her service with Verizon Wireless in January 2005, long before Claimants had moved for class certification.  She therefore lacked standing to represent a class of current subscribers.  Similarly, Zobrist, whom the Arbitrator *sua sponte* in his Award designated as a representative of Class B, has not been a party to a CSA with Verizon Wireless since March 2002, and also therefore lacks standing to serve as class representative.

44.    The Arbitrator compounded this error by defining Class B more broadly than Claimants had proposed.  While the definition Claimants had proposed included only parties "who *are* parties to a contract for wireless telephone personal account with Verizon . . . .", the Arbitrator *sua sponte* modified this decision to include parties "who *were*  parties to a contract . . . ."  This does nothing to cure the standing defect, because there still is no representative who has standing to seek prospective relief, which is the only relief sought with respect to Class B, and in any event the Arbitrator was not permitted under AAA rules to redefine the class in this fashion.

45.    The Arbitrator manifestly disregarded federal law and certified Class B with Brown and Zobrist as its representatives.

### 5.    The Arbitrator Failed To Apply the Statute of Limitations That Clearly Bar Claimants' Federal Claims

46.    Verizon Wireless cited controlling federal authority that the Arbitrator could not certify a class to bring a federal statutory claim under 47 U.S.C. § 201(b) because the claims of

the proposed class representatives were clearly barred by the two-year statute of limitations for such claims and therefore no representative had standing to bring this claim.

47.     Claimant Zobrist was assessed an ETF in March 2002.  When she filed her complaint in Illinois state court on August 9, 2002, she did not assert a Section 201(b) claim, and indeed she could not have done so, as state courts lack subject matter jurisdiction over such claims.  Nor did Ms. Zobrist assert a Section 201(b) claim in the original demand for arbitration filed on February 7, 2005.  Instead, her Section 201(b) claim was not asserted until October 2006, when it was included in the First Consolidated Arbitration Demand.  Because Ms. Zobrist did not bring this claim for more than four years after it accrued, her claim is barred by the statute of limitations.

48.     Claimant Schroer was assessed an ETF in May 2003, but did not bring his Section 201 claim until November 2005, more than two years later.  Mr. Schroer argued that his filing of an informal complaint with the Federal Communications Commission on January 27, 2005 tolled the statute of limitations, but under clear federal law, cited by Verizon Wireless during the arbitration proceedings, the filing of an informal administrative complaint does not toll the statute of limitations, and in any event, such a filing constitutes an election of remedies and bars Schroer from pursuing a Section 201(b) claim in any other forum.

49.     The arbitrator manifestly disregarded federal law requiring the arbitrator to decide whether the claims of the proposed class representatives were timely under the federal statute of limitations for a Section 201(b) claim, and therefore whether those class representatives had standing to bring the claim.

50.     Instead, the arbitrator refused to decide the limitations issue, and certified a class even though the Section 201(b) claims of the class representatives were time-barred under federal law.

### 6.     The Arbitrator Manifestly Disregarded Federal Law Barring Class Certification Where Individual Issues Predominate

51.     Adjudicating the merits of the Payer arbitration classes' claims would require particularized inquiries as to, for example, whether each member of the putative class has suffered actual injury as result of the ETFs in his or her CSA, as opposed to affirmatively benefiting from avoiding any obligation to pay Verizon Wireless contract damages.  Similarly, even assuming that a class member suffered actual injury, arbitration will necessitate an individualized, case-by-case inquiry as to whether that class member's claims is nevertheless barred from pursuing a claim against Verizon Wireless by the voluntary payment defense. Verizon Wireless cited the Arbitrator federal authority holding that class certification was improper under these circumstances, where such highly individualized issues predominate.

52.     The Arbitrator manifestly disregarded this authority in certifying the Payer class.

## VI.    CLAIM FOR RELIEF

53.     Verizon Wireless incorporates by reference, as though fully set forth herein, the allegations in Paragraph 1 through 52 above.

54.     For the reasons explained above, in rendering the Award, the Arbitrator exceeded his powers, and manifestly disregarded the law.

55.     The Arbitrator's ruling invalidating the class action waiver provisions in Verizon Wireless' CSAs is also preempted by federal law.

WHEREFORE, Verizon Wireless and Verizon Communications Inc. respectfully

requests the Court to issue an order vacating the Award, and enjoining Defendants from seeking to confirm or enforce the Award. Pursuant to 9 U.S.C. § 6, Verizon Wireless will file a motion to vacate the Award in accordance with the Local Rules.

Dated: New York, New York
        January 16, 2008

                                    Respectfully submitted,

                                    Henry Weissmann
                                    Hojoon Hwang
                                    Jonathan H. Blavin
                                    MUNGER, TOLLES & OLSON LLP
                                    355 South Grand Avenue, Suite 3500
                                    Los Angeles, CA 90071-1560
                                    Tel: 213-683-9100 – Fax: 213-687-3702

                                    Jeffrey S. Jacobson
                                    Carl Micarelli
                                    DEBEVOISE & PLIMPTON LLP
                                    919 Third Avenue
                                    New York, NY 10022-3916


                                    By: /s/ Carl Micarelli
                                         Carl Micarelli (CM 5332)

                                    Attorneys for Petitioners Cellco Partnership d/b/a
                                    Verizon Wireless and Verizon Communications Inc.

AMERICAN ARBITRATION ASSOCIATION
NORTHEAST CASE MANAGEMENT CENTER
-----------------------------------------------------------------x
Patricia Brown and Harold P. Schroer, on
an individual basis, and also on a classwide
basis on behalf of others similarly situated,

                    Claimants,

  -against-

Cellco Partnership d/b/a Verizon
Wireless,

                    Respondent.
-----------------------------------------------------------------x  **Consolidated Case No.**
Dawn M. Zobrist, individually and on behalf of  **11 494 01274 05 and**
others similarly situated,  **11 494 0032 05**

                    Claimant,

  -against-

Verizon Wireless, Cellco Partnership, and
Verizon Communications,

                    Respondents.
-----------------------------------------------------------------x

### <u>CLASS DETERMINATION AWARD</u>

      For reasons set forth below, Claimants' application for class certification pursuant
to Rule 4 of the American Arbitration Association ("AAA") Supplementary Rules for
Class Arbitrations (the "Supplementary Rules") is granted regarding Counts I, III, V, VI
and VII of Claimants' Consolidated Demand for Arbitration (the "Consolidated
Demand").

      I FIND that Claimants have complied with the criteria for class certification for
Counts I, III, V, VI and VII of the Consolidated Demand as required by Supplementary

Rule 4. My decision is also motivated by my conclusion that as a matter of equity and fairness, millions of class members are entitled to an adjudication of the central common questions of fact or law in this arbitration related to whether the $175.00 Early Termination Fee ("ETF") imposed by Respondents Cellco Partnership d/b/a Verizon Wireless, Verizon Wireless, Cellco Partnership, and Verizon Communications (collectively referred to as "Verizon") is based upon an unenforceable liquidated damage clause.

### PRIOR PROCEEDINGS

Claimants Patricia Brown ("Brown") and Dawn Zobrist ("Zobrist") commenced separate litigations in Florida and Illinois, respectively, against Verizon. Following motions by Verizon, those litigations were ultimately stayed and, the claims proceeded in two arbitrations commenced separately by Brown and Zobrist. The transfers to arbitration were premised upon arbitration clauses set forth in each customer's entry into or renewal of Verizon's standard Customer Service Agreement ("CSA"). Both arbitrations were administered by the American Arbitration Association pursuant to the Supplementary Rules. Thereafter, with the consent of Verizon, Claimant Harold Schroer ("Schroer") joined as a class representative claimant in the arbitration commenced by Brown. Although Verizon had argued in State Court that the arbitration clause in the CSA precluded class arbitration, Verizon did not object to Claimants' application for Supplementary Rule 3 clause construction that Brown's arbitration clause permitted the Brown arbitration pending before me to proceed on behalf of a class.

Thereafter, Verizon moved and the Arbitrator presiding over the Zobrist arbitration granted Verizon's application to consolidate the Zobrist arbitration with the

2

arbitration pending before me if I would accept the same. Verizon then moved before me to accept such consolidation, but Brown vigorously opposed the same. By Order dated March 20, 2006, I granted Verizon's motion to consolidate the two arbitrations.

Thereafter, amended pleadings were served (see below) and discovery proceeded regarding class certification. Many disputes regarding discovery and related administrative matters required resolution by this Tribunal. In all, 14 Procedural Orders were issued often following applications by either Claimants or Verizon or both.

### THE CONSOLIDATED DEMAND

Pursuant to an Order of this Tribunal, on or about October 27, 2006 Claimants filed their First Consolidated Demand for Class Arbitration (the "Consolidated Demand"). In the Consolidated Demand, Claimants sought class treatment for adjudication of the legality and/or enforceability of the clause in all 14 versions of Verizon's CSA in use from November 1, 2000 through November 16, 2006, which clause imposed a $175.00 ETF upon any customer who terminated his or her cell phone CSA before the end of its term. Claimants sought relief pursuant to the Federal Communications Act, 47 U.S.C. Section 201 et. seq., the New Jersey Consumer Fraud Act, N.J. Rev. Stat., Section 56:8-1 et. seq. and the common and statutory law of various states on behalf of the three classes. The first class was subsequently amended, such that the classes were essentially as follows:

Class A - Payer Class: All persons in the United States who were charged an early termination fee under a Verizon Wireless Customer Service Contract from November 1, 2000 through November 16, 2006, excluding persons with a California area code and California billing address for such

account.

Class B - Subscriber Class: All persons in the United States who were

parties to a contract for a wireless telephone personal account with

Verizon that included a provision for an early termination fee from

November 1, 2000 through November 16, 2006, excluding persons with a

California area code and California billing address for such account.

Class C - This class related to locked handset claims which have been

settled such that the application for certification was withdrawn.

The Consolidated Demand alleged the following regarding the individual putative

class representatives:

(a) Brown resided in Florida and in or about January, 2003 entered into a 24

month CSA with Verizon which included a $175.00 ETF.  Subsequent submissions

established that after January 2, 2005 Brown did not continue to be a Verizon

subscriber.

(b) Schroer was a New York resident who subscribed to Verizon's service in May

2001 and thereafter renewed and/or changed his Verizon CSA.  The last renewal was in

October 2002, which Verizon claims resulted in a 24 month CSA ending in October

2004.  Schroer terminated his Verizon CSA and switched to another carrier, causing

Verizon to charge him a $175.00 ETF.  Schroer disputed the fee, refused to pay it and

filed a complaint letter with the Federal Communications Commission (see below).

Verizon reported Schroer's non-payment to credit reporting agencies and, according to

testimony in this proceeding by Schroer, these reports caused him to be denied credit.

He specifically testified to one instance when he sought to make a purchase from Sears

4

and was denied credit. Verizon contends that following complaints by Schroer, Verizon amended its reports to credit bureau agencies so that there was no further adverse impact on Schroer's credit.

(c) Zobrist is an Illinois resident who in July 2001 entered into a two year CSA with Verizon. Zobrist cancelled her CSA in March 2002 and was charged a $175.00 ETF which she paid under protest. The record subsequently established that Zobrist terminated her service because of allegations of poor service by Verizon.

Verizon is a group of Delaware entities with a principal place of business in New Jersey. Some of the 14 CSAs containing the clause providing for the $175.00 ETF were actually in agreements drafted by companies acquired by Verizon during or prior to the period November 1, 2000 to November 16, 2006.

The Consolidated Demand alleged and record established that Brown, Schroer and Zobrist all were party to CSAs with Verizon which stated in part as follows:

> **"IF YOU CHOOSE TO END YOUR SERVICE BEFORE YOU BECOME A MONTH-TO-MONTH CUSTOMER (OR IF WE TERMINATE IT EARLY FOR GOOD CAUSE), YOU MUST PAY UP TO $175 PER WIRELESS PHONE NUMBER AS AN EARLY TERMINATION FEE."**

Although the ETF clause stated "you must pay up to $175.00" (emphasis added), the ETF as applied by Verizon did not vary during the term of the CSA. A Verizon customer who terminated the CSA before the end of its term (generally 2 years) was required to pay the full $175.00 if the CSA was cancelled one day after the CSA went into effect or one day before the CSA was scheduled to expire during the two year term. It is undisputed that all 14 versions of Verizon's CSAs during the period November 1, 2000 to November 16, 2006 contained a $175.00 ETF. On November 11, 2006 Verizon

independently changed the $175.00 flat ETF to a staggered ETF in 6 month increments

depending upon the time of a customer's early termination.

The Consolidated Demand alleged that the $175.00 ETF violated the following:

Count I alleged that the $175.00 ETF violated the Federal Communications Act,

47 U.S.C. Section 201, et. seq. and particularly, that the $175.00 was unjust,

unreasonable and unlawful under 47 U.S.C. Section 201(b).

Count II alleged that the $175.00 ETF violated the New Jersey Consumer Fraud

Act, N.J. Rev. Stat. Section 56:8-1, et. seq. which provided, in part, as follows:

> "The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing concealment, suppression, or omission
> of any material fact...whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an unlawful practice."

Count III alleged that the $175.00 ETF violated New Jersey common law

regarding liquidated damages because the amount of the ETF was not reasonable in

light of the anticipated or actual loss caused by the early termination, because the

parties did not fix the $175.00 ETF as a reasonable forecast of just compensation to

Verizon for early termination, because the harm caused by early termination of the CSA

by a customer was not incapable or very difficult of accurate estimation, and because

the $175.00 bore no reasonable relation to any actual damages.

Count IV alleged that the $175.00 ETF was "unconscionable, unfair, deceptive,

misleading and an unlawful practice" under Consumer Protection Statutes in Florida,

Illinois, Massachusetts, Michigan, Missouri, New York, New Jersey, North Carolina,

Tennessee and Washington.

Count V alleged that Verizon will be unjustly enriched at the expense of the

6

subscribers who were charged the $175.00 ETF by Verizon during the putative class period of November 1, 2000 to November 16, 2006.

Count VI alleged that Verizon improperly charged the $175.00 ETF, and must pay over and remit those sums.

Count VII on behalf of the Subscriber Class B sought a declaration that the $175.00 ETF provisions in the CSAs were unenforceable penalties.

The remaining counts related to the settled handset locking claims. Verizon's answer consisted of a series of denials and defenses including allegations that Verizon's actual damages on early termination of a CSA exceed $175.00 per customer such that the $175.00 ETF is reasonable and enforceable.

## CLASS CERTIFICATION

Supplementary Rule 4 sets forth the requirements for class certification, and states as follows:

"4. Class Certification.

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

7

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representatives(s) and each of the other class members.

(b) *Class Arbitrations Maintainable*

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration."

Supplementary Rule 5 also sets forth certain requirements regarding a Class

Determination Award, but, at the hearing, the parties stipulated to waive for now

Supplementary Rule 5(b), particularly the requirement of attaching of a copy of the

proposed Notice of Class Determination to the Class Determination Award together with

8

a statement of the specifics of intended delivery of such Notice to putative class members.

In addition to an evidentiary hearing and day-long oral argument, the parties have made extensive submissions in support of and in opposition to Claimants' application for class certification. In all, the parties have submitted hundreds of pages of legal argument in 12 separate briefs and thousands of pages of affidavits, exhibits, and experts' reports. In reaching my conclusion to grant, in part, Claimants' application for class certification, I have considered the requirements of Supplementary Rule 4 as follows:

A. <u>Numerosity</u> - Supplementary Rule 4(a)(1) - Whether the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable. Verizon does not contest that this requirement is met. The Payer Class A and the Subscriber Class B each contain millions of Verizon subscribers from November 1, 2000 through November 11, 2006. Unquestionably, joinder of separate arbitrations on behalf of all members is totally impracticable.

B. <u>Common Questions of Law or Fact</u> - Rule 4(a)(2) - Whether there are questions of law or fact common to the class. There are unquestionably overriding common questions of law or fact related to the following: "Whether the $175.00 ETF was unlawful, unfair, void or unenforceable". Additional related common questions of law or fact are as follows:

(a) Whether the $175.00 ETF is reasonable in light of Verizon's anticipated and/or actual loss caused by the early termination of a CSA by a Verizon customer;

(b) Whether the $175.00 ETF was fixed as liquidated damages as a result of a

9

reasonable forecast of just compensation for damages to Verizon as a result of early

termination of a CSA by a Verizon customer;

(c) Whether the harm caused to Verizon by early termination was capable or very

difficult of accurate estimation; and

(d) Whether the $175.00 ETF bore a reasonable relation to the actual damages

incurred by Verizon as a result of an early termination.

Verizon acknowledges that the above common questions of law or fact exist and

the parties have presented 9 expert reports and extensive testimony regarding these

common questions.  However, regarding possible class certification, Verizon argues

that these common questions are not predominant.  (See below Section G).

C.  Typicality - Supplementary Rule 4(a)(3) - Whether the claims or defenses of

the representative parties are typical of the claims or defenses of the class.  Verizon

argues that the claims or defenses regarding the three named representatives are not

typical of the claims and defenses of the class on two levels:

(a) Verizon argues that individual issues regarding each representative make that

claimant unsuitable as a class representative, and

(b) Verizon argues that all class representatives are subject to Statute of

Limitations defenses and therefore, they are not adequate representatives.  I reject

Verizon's arguments regarding individual issues pertinent to the three named

representatives for the following reasons:

1.  Verizon claims that Schroer's claims are not typical of the Payer Class A

because he never paid the $175.00 ETF and Verizon thereafter waived it.  Therefore,

Verizon claims that Schroer has no monetary claim unlike other putative class

10

members.  However, Class A is defined to cover subscribers who were "charged" the

$175.00 ETF, which includes but is not limited to subscribers who "paid" the $175.00

ETF.  Clearly, a customer could be harmed by a charge, even though he did not pay it.

Here, it is undisputed that Schroer, like other putative class members, was charged a

$175.00 ETF.  His testimony was credible that he suffered from adverse credit as a

result of the $175.00 ETF charge by Verizon and Verizon's subsequent report to credit

agencies.  Schroer's failure to make actual payment does not therefore make him

atypical.  Although the precise harm to him may be somewhat different than the harm to

most putative class members who paid the $175.00 ETF, it does not make Schroer an

unsuitable class representative.  It also does not alter the common questions of law or

fact to be determined in this matter, which clearly affected Schroer.

        2.  Following the evidentiary hearing regarding class certification, Verizon argued

that Schroer is not an appropriate class representative because he filed a complaint

with the Federal Trade Commission regarding the $175.00 ETF.  Verizon claimed that

the law required Schroer to elect his remedies such that he is now precluded from

proceeding in arbitration as a representative because he elected to proceed before the

Federal Trade Commission.  However, it is unclear if the filing of an informal letter

complaint with the Federal Trade Commission constituted the required statutory election

of remedies.  Additionally, Verizon has not established that any such election of

remedies applies in an arbitration context.  Moreover, it would appear to be manifestly

unfair to deprive Schroer of his right to adjudicate his claims in this arbitration because

of a letter he sent to the Federal Trade Commission, because the Federal Trade

Commission took no action and did nothing more that refer him to the New York State

Attorney General's Office.

3. Verizon claims that Zobrist is an inappropriate representative because she alleged that she terminated her Verizon CSA early as a result of poor service. Verizon claims that if Zobrist can establish such poor service, she might not be subject to the $175.00 ETF. However, the Consolidated Demand did not allege that Zobrist sought any adjudication based upon any allegations of poor service. Rather, Zobrist alleged that the $175.00 ETF was unreasonable and/or unenforceable based upon the reasons set forth above, which are typical of the claims of other members of the Class.

4. Verizon argues that Zobrist is an inappropriate representative because she paid the $175.00 ETF and therefore is subject to the voluntary payment doctrine. See Harris v. Chart One, 362 Ill. App. 3d 878 (2005), Merchants Mut. Ins. Group v. Travelers Ins. Co., 806 N.Y.S.2d 813 (2005). Verizon also argues that the voluntary payment doctrine particularly applies in connection with adjudicating the validity of a liquidated damage clause. The application of this doctrine, however, to bar Zobrist from pursuing her claims in this arbitration would appear to be grossly inequitable. As noted above, Verizon claims that Schroer is an inappropriate representative of the Payer Class A because he did not pay the $175.00 ETF. At the very same time Verizon claims that Zobrist is not an appropriate representative of the Payer Class A because she did pay the $175.00 ETF. This means that according to Verizon, no one is ever an appropriate class representative because every one of the millions of Verizon customers who were charged the $175.00 ETF either paid it or did not pay it. Such a result is inequitable and makes no sense.

Additionally, I find that the voluntary payment doctrine is inapplicable for the

following reasons:

(a) As noted, the application of the doctrine would make it impossible for there ever to be an appropriate class representative of Payer Class A.

(b) Zobrist made her payment "under protest" thereby protecting her credit rating and reserving her rights to take action to recover all or part of the $175.00 ETF.

(c) There are potential exceptions to this voluntary payment doctrine which may be applicable here.

(d) The weight of authority appears to be that issues related to the voluntary payment doctrine do not defeat class certification. Miller v. Optimum Choice, Inc., 2006 WL 2130640 at 7(D. Ct., Maryland, 2006); Sutton Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 875 So. 2d 1062 (La. App. Ct., 2004); Hill v. Galaxy Telecom L.P., 184 F.R.D. 82 (N.D. Miss., 1999).

5. Verizon argues that Brown is not an appropriate representative of the Subscriber Class B because she is not a current class member and has not been a class member since January 2005 when her two year plan expired. To the contrary, I find that for purposes of representation on the common questions of law or fact set forth above, Brown is an adequate representative. Brown was a subscriber during the class period such that the doctrine of "capable of repetition yet evading review" may well apply. Brown responded to interrogatories and traveled from Florida to New York to provide a deposition in this arbitration. No proof has been offered to demonstrate that Brown's interest would conflict with the interest of any member of Subscriber Class B and Brown remains a legitimate and adequate representative of Subscriber Class B.

Verizon also argues that none of the class representatives is appropriate

13

because all  their individual claims for violation of Federal Communications Act, Section 201 are barred by a two year Statute of Limitations.  I disagree at this point in connection with a motion for class certification for the following reasons:

(a) It is by no means clear to me that the federal claims interposed in this arbitration do not relate back to the State Court claims which were timely filed by Brown and/or Zobrist.

(b) It is also unclear if the Statute of Limitations was tolled as a result of Schroer filing his informal complaint with the Federal Communications Commission.

(c) Schroer established in his testimony that he continued to have credit problems within two years prior to the time he was added as a class representative and Verizon consented to him being added as a class representative.

(d) The defense of Statute of Limitations may be asserted more fully at a trial on the merits of the claims in this arbitration rather than in connection with whether such defense makes individual claimants atypical.

In sum, based upon the above, I Find that Brown, Schroer and Zobrist have claims which are typical of the claims and defenses for both Payer Class A and Subscriber Class B.

D.  <u>Representative Parties</u> - Supplementary Rule 4(a)(4) - Whether the representative parties will fairly and adequately protect the interests of the class. Except for the arguments set forth above, Verizon does not seriously object in this regard.  Moreover, based upon my own analysis of the credibility and testimony of Schroer, I believe that the representative parties will fairly and adequately protect the interests of both Payer Class A and Subscriber Class B.

14

E.  <u>Adequacy of Counsel</u> - Supplementary Rule 4(a)(5) - Whether counsel selected to represent the class will fairly and adequately protect the interests of the class.  Verizon does not seriously contest this point.  Moreover, based upon my review of the abilities of Claimants' counsel to date, I have no doubt that such counsel will fairly and adequately protect the interests of the classes.

F.  <u>Similarity of Arbitration Agreement</u> - Supplementary Rule 4(a)(6) - Whether each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.  Verizon argues strenuously that a class should not be certified for a variety of reasons based upon this requirement.  First, Verizon argues that certain of its customers were party to CSAs which did not contain arbitration clauses and such subscribers should therefore not be included in either a Payer Class A or Subscriber Class B.  I agree. Supplementary Rule 4(a)(6) clearly requires each member of a class to have entered into an arbitration agreement.  Without such an agreement, there was no consent by either the customer or Verizon to be subject to an arbitration proceeding.  A subscriber who is party to a CSA which did not contain an arbitration clause can therefore not be included in either class.

Second, although all 14 CSAs contain arbitration clauses calling for administration of the arbitrations by the AAA, Verizon argues that the arbitration clauses in some of the 14 CSAs require application of the AAA's Commercial Rules while other arbitration clauses in other CSAs require application of the AAA's Wireless Rules. Verizon further argues that the Commercial Rules and Wireless Rules have differences in connection with arbitrator selection.  However, Verizon has offered no proof that it

15

made any such objections at the time of arbitrator selection or that there was non-compliance with either set of rules. Additionally, regardless of whether the Commercial Rules or Wireless Rules apply, it is clear that the Supplementary Rules will substantially govern the conduct of this proceeding. Verizon has also not established any other significant difference between the Commercial Rules and Wireless Rules which would have any impact upon the outcome of this matter.

Third, Verizon argues that many of the CSAs used prior to July 2002 contained provisions waiving class arbitrations. Verizon also claims that since January 2005 the following clauses were inserted in all CSAs:

> "(3) YOU CAN OBTAIN PROCEDURES, RULES, AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), the BBB (WWW.BBB.ORG), OR FROM US. THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF THOSE PROCEDURES OR RULES WOULD.
> ...
> (6) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) ABOVE IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY."

Verizon argues that CSAs which contain a class arbitration waiver clause such as Section (3) above and CSAs which contain a termination of arbitral jurisdiction clause such as Section (6) above are not substantially similar to CSAs which do not contain such clauses, such as those entered into by Claimants. Claimants, however, assert persuasively that Verizon should be estopped from arguing that CSAs which contain arbitration agreements with explicit class arbitration waivers are not substantially similar to the arbitration agreements of the three class representatives.

In prior Court proceedings, Verizon argued that the arbitration clauses in

Claimants' CSAs precluded class arbitration. Therefore, arbitration clauses with explicit class arbitration waivers can not be substantially dissimilar from the clauses in Claimants' arbitration agreements. In fact, even in the Brown arbitration (prior to consolidation) Verizon refused to stipulate that the clauses at issue permitted this arbitration to proceed on behalf of a class. Rather, Verizon did not object (rather than consent) to Claimants' application for Rule 3 Clause Construction in order to maintain its argument that Claimants' arbitration clauses prohibited class arbitrations.

It is not equitable for Verizon to take different positions with respect to the various arbitration clauses at issue. If Verizon previously argued and still maintains that Claimants' arbitration clauses prohibit class arbitrations, then the pre-July 2002 arbitration clauses and the post-January 2005 arbitration clauses are substantially similar.

Although the inquiry under Supplemental Rule 4(a)(6) could end with the above analysis, there may remain some question about whether it is appropriate to certify classes in an arbitration and include class members who entered into CSAs which have clauses explicitly precluding class arbitration and then further stating that if such prohibition is deemed unenforceable, the agreement to arbitrate will "not apply". I therefore have considered and conclude that Verizon's class arbitration waiver and the related attempt by Verizon to terminate arbitral jurisdiction depending upon the outcome of a challenge to the class arbitration waiver are both unenforceable. Such clauses are unenforceable provisions in contracts of adhesion which are not reasonably foreseeable by the weaker party and/or are unconscionable.

Before further analysis of the specific clauses at issue, Verizon argues that this

17

Tribunal does not have authority to consider the enforceability of the class arbitration waiver and related termination of arbitral jurisdiction clauses because questions regarding unconscionability of class arbitration waivers can only be determined by Courts. Verizon specifically refers to caselaw holding that unconscionability is a gateway issue to be decided by a Court and not an arbitrator. However, the Brown and Schroer CSAs specifically state that "Only an arbitrator can decide whether an issue is arbitrable". (See Exhibit C612). As such, the parties' specific agreements provide authority for the arbitrator to decide this issue. Additionally, Verizon's argument is that CSAs containing class arbitration waivers and related termination of arbitral jurisdiction clauses are not substantially similar to the clauses of the three class representatives and other class members in connection with a ruling pursuant to Supplementary Rule 4(a)(6). Clearly, decisions regarding the application of Supplementary Rule 4(a)(6) must be made by the arbitrator.

Additionally, the record establishes that Verizon stipulated to a Court that the arbitrator should decide "threshold" questions. When Verizon moved in Florida State Court to stay this arbitration on the ground that the Brown/Schroer arbitration agreement contained a class action waiver, Verizon argued that the Florida State Court and not the arbitrator was required to decide this issue. Verizon thereafter withdrew this argument and advised the Florida State Court as follows:

> "...Verizon Wireless wishes to withdraw its argument to this Court that the 'on an individual basis' language expressly prohibits class action arbitrations and thus must be decided, as a 'gatekeeping' matter, by this Court. Rather, Verizon Wireless agrees that the question whether the contract language permits class arbitrations, as well as the other threshold questions that Verizon has presented to this Court, may be decided by the arbitrator." See Exhibit C628, letter of Verizon's counsel dated July 25,

18

2005.

Verizon thus advised the Florida State Court in writing that the arbitrator and not a Court has authority to decide "threshold questions" including those related to the validity of the class arbitration waiver clause. Verizon should not be permitted to argue to the Florida State Court that only the arbitrator will adjudicate such matters and then argue to the arbitrator that only a Court should adjudicate such matters.

There is little doubt that the CSAs are contracts of adhesion. Such contracts are entirely drafted by Verizon, are presented to customers on a "take it or leave it" basis, and afford no room for negotiation on any of their terms. The law appears to be well settled that a contract of adhesion is enforceable unless the particular clauses at issue are not within the reasonable foreseeability of the weaker, non-negotiating, non-drafting party or the clauses in question are unconscionable.

In this case, there are two clauses of concern, the class arbitration waiver clause and the related termination of arbitral jurisdiction clause. As a matter of equity, I find that both clauses are not within the reasonable expectations of the weaker party, the non-negotiating consumer. In this case, Verizon argued successfully to a number of Courts that the arbitration clauses were enforceable and the disputes should be transferred from Courts to arbitral forums. As such, the class representatives were precluded from seeking certification of a class in the litigation forum. Once in arbitration, Verizon opposed certification of a class based upon the class arbitration waiver clause. Thus, Verizon effectively takes the position that a consumer can never bring a class action against Verizon either in litigation or arbitration.

It can not be seriously argued that a consumer entering into a cell phone contract

19

would reasonably expect that by doing so, he or she is giving up his or her right to participate in a class action. This is especially so for a dispute regarding a $175.00 ETF. Even at this certification stage, where full adjudication of the merits has not been developed, each side has produced extensive and expensive reports of experts and significant legal argument regarding its claims and defenses. No reasonable consumer would be expected in a non-class action context to spend enough to seek an adjudication of the validity of the $175.00 ETF.

Additionally, in this case, Verizon argues that a consumer will reasonably expect that the adjudication of his or her claim will shift from Court to arbitration, but then, after more than two years of arbitral proceedings, the adjudication of his or her claim will shift back from arbitration to Court or some other forum depending upon the decision of a factfinder regarding the validity of the class arbitration waiver clause. This makes little sense and is not credible.

I also find that for the reasons reflected in authorities such as Muhammad v. County Bank of Rehoboth Beach 189 N.J. 1 (N.J. 2006) and Discover Card v. Superior Court 36 Cal. 4th 148 (2005), the class arbitration waiver clause is both substantively and procedurally unconscionable. As in Muhummad, the CSA is a contract of adhesion, where the consumer has virtually no bargaining power and a relatively small amount is at issue such that it would be virtually impossible to attract competent counsel to advance the cause of action unless it could proceed as a class action. As the Muhummad Court concluded:

> "We hold, therefore, that the presence of the class-arbitration waiver in Muhammad's consumer arbitration agreement renders that agreement unconscionable. As a matter of generally applicable state contract law, it

20

> was unconscionable for defendants to deprive Muhammad of the
> mechanism of a class-wide action, whether in arbitration or in court
> litigation."

I also find unconscionable Verizon's clause attempting to eliminate the jurisdiction of the arbitral forum depending upon my decision regarding the enforceability of the class arbitration waiver clause, for the following reasons:

(a) If the class arbitration waiver clause is unconscionable, it logically follows that any consequences of such a holding adverse to the consumer are also unconscionable.

(b) When the Brown and Zobrist matters were originally in Court, Verizon could have then sought an adjudication regarding the enforceability of both the class arbitration waiver clause and the related termination of arbitral jurisdiction clause. Instead Verizon asked to have both matters transferred to arbitration and stipulated that "threshold matters" should be decided by the arbitrator. It is inequitable for Verizon to thereafter argue that the arbitral forum no longer has jurisdiction and the claims must be transferred back to Court or some other forum.

(c) It is also inequitable for Verizon to have participated without objection in 2 arbitrations with 14 procedural orders over 2 years and then claim that the arbitral forum lacks jurisdiction.

(d) Verizon moved and succeeded in obtaining arbitral decisions leading to consolidation of the two arbitrations. This resulted in extensive negotiations and ultimately an order regarding designation of lead counsel for Claimants and new consolidated pleadings. Aside from the waste of effort and expense, if arbitral jurisdiction is terminated, it is totally unclear as to what would happen to the ETF claims of consumers whose CSAs contain the termination of arbitral jurisdiction clause. Would

the claims become unconsolidated? How is this accomplished? Are the claims referred to Court(s)? Which Court(s)? The procedural consequences for the affected consumer are untenable.

(e) It is unconscionable to make the jurisdiction of an arbitral forum dependent upon the arbitrator's determination regarding the merits of a claim or defense. If Verizon's termination of arbitral jurisdiction clause is enforceable, a draftsman of an arbitration clause (especially in a contract of adhesion) could provide that arbitration will "not apply" if the arbitrator hears certain testimony, receives certain documentary evidence, grants certain relief, or decides any issue or list of issues contrary to the position of the drafting party. It is unconscionable for the draftsman of a contract of adhesion to threaten an arbitral tribunal with the argument that it will no longer have jurisdiction unless it rules a certain way regarding a merits issue.

(f) Verizon's termination of jurisdiction clause is ambiguous to the consumer. The clause states that "If for some reason the prohibition on class arbitrations set forth in subsection (3) above is deemed unenforceable, then the agreement to arbitrate will not apply" (emphasis added). (See Exhibit R18). Does "not apply" mean the arbitration claims will be dismissed or will they be transferred to litigation or the Better Business Bureau or Small Claims Court? Will the consumer be entitled to reimbursement of any fees paid for arbitration? Will the consumer be entitled to the benefit of any information or rulings previously obtained in the arbitral forum? In short, the words "will not apply" are completely ambiguous as to what happens to the consumer's claims.

(g) As a practical matter, if Verizon's arguments prevailed, the exact same proceedings would take place twice - once in this arbitration for those consumers whose

CSAs do not contain class arbitration waiver clauses and whose CSAs contain such clauses but do not have related termination of arbitral jurisdiction clauses (see Exhibits R16 and 17) and again in another forum (litigation or the Better Business Bureau) for those consumers whose CSAs do contain both clauses. For the reasons argued extensively by Verizon in support of Verizon's motion to consolidate, this makes no sense.

For the aforesaid reasons, I conclude that both the class arbitration waiver clause and the termination of arbitral jurisdiction clause are unenforceable. I conclude that each class member entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representatives and each of the other class members.

G. Predominance-Supplementary Rule 4(b) - Whether the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

Verizon argues strenuously that as a result of inter-class conflict, the common questions of law or fact regarding the validity of the $175.00 ETF are not predominant. Verizon argues that it is entitled to assert a counterclaim against any certified class such that if it is determined that the $175.00 ETF is invalid, Verizon is entitled to its actual damages caused by each class member's early termination of his or her CSA. Verizon further argues that for some class members, particularly those who terminated their CSAs near the end of the two year terms, the actual damages to Verizon will be far less than the actual damages to Verizon for those customers who terminated their CSAs near the beginning of the two year terms. Additionally, Verizon claims that for the

23

majority of individual customers, the amount of actual damage to Verizon by an early termination exceeds the $175.00 ETF so that all such terminating customers will object to the invalidation of the $175.00 ETF.  Verizon argues that a minority of customers whose actual damages to Verizon are lower than the $175.00 ETF will desire invalidation of the $175.00 ETF.  Verizon claims that these inter-class conflicts are so strong that it is inappropriate to certify any class.

     I disagree with Verizon's arguments and find that any inter-class conflict is hypothetical and speculative.  I reject Verizon's arguments for the following reasons:

     1.  Even if there were an inter-class conflict as argued by Verizon, I believe it is not at all predominant in this matter.  The predominant common questions of law or fact are set forth above in Section B and relate to the validity and enforceability of the $175.00 ETF.  I also believe that it is far preferable to permit adjudication of these predominant questions than to prohibit such adjudication because of concern about hypothetical conflicts which have not been established.

     2.  Verizon argues that if the $175.00 ETF is invalidated, it is entitled to actual damages which will exceed the $175.00 ETF for many customers.  However, Verizon has set forth scant precedent for actual recovery of damages in excess of the liquidated damage amount in a contract where the liquidated damage clause has been declared unenforceable.

     3.  Verizon's principal argument is illogical.  If a majority of customers would actually be liable to Verizon for more than the $175.00 ETF,  it is likely that the $175.00 ETF clause will be upheld and enforceable.  It therefore seems highly speculative that a situation could arise where Verizon would be entitled to damages in excess of the

$175.00 ETF.

4. While Verizon argues that it would be entitled to damages against many putative class members in excess of the $175.00 ETF, there remains significant doubt as to whether Verizon has validly asserted a counterclaim in this matter. It is true that this Tribunal ordered the filing of the Consolidated Demand and Amended Answer, but there was no specific request for nor order granting leave to interpose a counterclaim. Nor has Verizon paid the requisite AAA filing fee for a counterclaim for monies in excess of $500 million of ETF revenues which Verizon purportedly collected during the 6 year class period. Both prior arbitrator consent and payment of the requisite filing fees are required for the interposition of a counterclaim.

5. Verizon has not sought certification of a counter-claim class. There is, therefore, significant question as to whether Verizon can assert such a counterclaim.

6. A significant portion of the extensive record in this matter related to whether or not Verizon did actually incur damages and if so, the magnitude of any such damages upon early termination by a customer at various points during a 2 year CSA. Numerous and extensive expert reports, affidavits and briefs were submitted on these points. Verizon's experts claimed that for some customers, Verizon's actual damages would exceed $1,000.00 per customer and that for the average customer the actual damage was approximately $300.00 above the $175.00 ETF. This was the result of Verizon's analyses of fixed and variable costs, the different types of subscriber plans, Verizon's costs of acquisition of each customer, and the amount of lost profit depending upon Verizon's allegedly large up front costs including handset subsidies, promotion benefits and advertising. Claimants, on the other hand, argued that overwhelmingly, Verizon

incurs no damage if a customer terminates its CSA early. Claimants argue that Verizon's profit margin for each customer entering into a new CSA is minimal and that the bulk of Verizon's profits come from extras, such as roaming charges. It is impossible on this record for me to determine whether or not there actually were damages sustained by Verizon upon the breach of a CSA by a customer and if so, the magnitude of any such damages. To the extent necessary to support the defense of offset by Verizon (see below), such detailed proof and analysis is more appropriate at a hearing on the merits in this arbitration.

7. Verizon's assertion of an inter-class conflict based upon its prosecution of a counterclaim also seems highly speculative given its concession at the evidentiary hearing that it has never sued any customer for the $175.00 ETF. It therefore seems highly implausible that if the $175.00 ETF is declared invalid, Verizon would then change its policy and begin suing individual customers for more than the $175.00 ETF, which amount still would remain relatively small compared to Verizon's expenses in preventing litigation.

8. At oral argument on this matter, Verizon stipulated that "if our actual damages in the aggregate as against all class members are offset against the aggregated ETF claims of all class members, and it comes out that we have more actual damages than the total of ETFs, then we [Verizon] would not seek to collect that excess." (See Transcript of Argument 3/29/07 - p. 367). As such, Verizon is adequately protected in its argument that it would be entitled to recovery of actual damages because it will be able to aggregate such damages and argue at the merits hearing that it is entitled to offset this aggregate amount against any recovery by the class. This is the same

26

approach adopted by Judge Sabraw in the California ETF class action.

9. Verizon argues that even with the aggregate offset approach, there remains an inter-class conflict because different customers breaching their CSAs at different times will receive back different amounts to the extent there is any recovery. However, any such conflict can be remedied by the use of formulas related to the time of breach during a customer's 2 year CSA. Also, any such conflict does not defeat the predominance of the common questions of law or fact regarding the validity and enforceability of the $175.00 ETF.

10. Verizon's assertion of a counterclaim specifically states that it is entitled to consequential damages. However, consequential damages may be explicitly barred by some or all of the CSAs.

11. Alleged inter-class conflict is also ameliorated by the ability of any class member concerned about a counterclaim to opt out of the class settlement. Such a customer would then still be bound by the $175.00 ETF.

12. Finally, Verizon's arguments regarding inter-class conflict are not applicable to the Subscriber Class B, since those customers had not terminated their CSAs during the class period and they seek only a declaration as to the validity of the $175.00 ETF.

In sum, I conclude that Verizon's assertion of a counterclaim and possible recovery on such a counterclaim are speculative. Based upon Verizon's admission that it has never sued a customer for an ETF and based upon Verizon's stipulation that it will not seek damages in excess of what it has allegedly collected for ETFs, I conclude that Verizon's claims of inter-class conflicts do not defeat the predominance of the questions of law or fact regarding the validity and enforceability of the $175.00 ETF.

27

Verizon also argues that Counts III, IV, VI and VII of the Consolidated Demand should not be certified because of variations in state laws regarding the evidentiary presentation for consideration of the validity of the $175.00 ETF.  Specifically, Verizon argues that the common law of some states requires an evidentiary presentation of whether a liquidated damage clause like the $175.00 ETF was a reasonable approximation of actual loss at the time Verizon and its customer entered into the CSA.  Other jurisdictions require an analysis of whether the liquidated damage clause like the $175.00 ETF is a fair approximation of actual damage incurred by Verizon at the time of breach of the CSA, i.e. at the time of early termination.  Verizon argues further that some jurisdictions require an analysis of both times in addition to other factors.

I do not find that the conflict regarding the time of analysis predominates over the common questions of law or fact set forth in Section B or should otherwise preclude certification of a class for Counts I, III, V, VI and VII of the Consolidated Demand for the following reasons:

1. In this case, the time lapse between the time of agreement to a CSA and the time of breach would generally be very short, less than 2 years.  In the massive evidentiary submissions regarding potential damages to Verizon in the event of an early termination by a customer, Verizon has not established any difference depending upon whether the analysis is made as of the time of entry into the CSA or the time of breach.  The existence of any difference therefore seems entirely hypothetical and not outcome determinative.

2. Given the flexibility of evidentiary standards in arbitration, this Tribunal would hear evidence of all factors at all times.  Given that formal rules of evidence need not

28

apply at an arbitration hearing on the merits, evidence will be accepted in this arbitration relevant to both the time of entry into the CSA and the time of the early termination by a customer.

Verizon objects to certification of a class regarding Counts II and IV of the Consolidated Demand on the grounds that there are such significant variations among the Consumer Fraud Statutes of the various states that it is inappropriate to apply New Jersey's Consumer Fraud Act or any other state's consumer protection statute to a nationwide class. I agree with Verizon's arguments and decline to certify a class on the basis of the Consumer Fraud Statute of any particular state for the following reasons:

1. Many of the CSAs contain choice of law provisions. In this case, the CSAs of Brown and Schroer contain choice of law provisions, such that the law of the state of the location of the customer's area code should apply. The CSA of Zobrist contains no such provision. The law seems clear that such choice of law provisions should be enforced, especially since it is fair to assume that the reasonable expectation of any customer is that he or she would be protected by the Consumer Fraud Statute of his or her state.

2. There are significant differences among the Consumer Fraud Statutes of the various states. I have personally reviewed the statutes cited in the detailed submissions of the parties regarding the Consumer Fraud Statutes in each of the 50 jurisdictions other than California. The variations include significant differences regarding exactly what is protected under each statute, levels of proof, types of defenses, the availability of treble damages, recovery of attorneys' fees, Statute of Limitations differences, and extra-territorial application of each statute. Given all the variations among the different

jurisdictions, class certification under State Consumer Fraud Statutes would probably require over 20 sub-classes and numerous evidentiary presentations, defenses and arguments pertinent to residents in different jurisdictions. There would also be significant question as to whether the three class representatives could act as representatives for sub-classes for states in which they are not a resident. Also, if Claimants prevailed, any award might require different levels of relief and different formulas for customers residing in different jurisdictions.

3. Claimants argue that New Jersey's Consumer Fraud statute should apply because it is one of the toughest in the nation and Verizon's principal place of business is in New Jersey. However, Claimants have not established that the location of one's principal place of business is enough to defeat a validly executed choice of law provision. Moreover, Verizon would be entitled to the benefit of the various defenses available under each of the different Consumer Fraud Statutes.

4. Verizon's argument regarding Schroer is persuasive. Schroer, a New York resident, admitted at the class certification hearing that he received multiple copies of Verizon's disclosure of the $175.00 ETF. As such, it is highly questionable if Schroer would succeed in an argument that the $175.00 ETF is a deceptive practice under the New York Consumer Protection Act, GBL §349 et. seq. which should apply, since Schroer lives in New York and his CSA requires that New York law apply. However, Schroer might be able to prove an "unconscionable commercial practice" under the New Jersey Consumer Fraud Statute, N.J. Rev. State §56:8-1, which does not require proof of any deception. It does not seem equitable to the rights of Verizon to be compelled to adjudicate claims by Schroer, a New York resident, based upon the New Jersey

30

*Consumer Fraud Statute* when Schroer and Verizon specifically agreed in the CSA that the New York Consumer Protection Act would apply to any claim by Schroer.

    5. As noted above, it does not seem manageable to conduct an adjudication under each of the 50 jurisdictions other than California to determine the enforceability of the $175.00 ETF. Count IV seems especially troublesome, since Claimants provide no rationale for certification of classes regarding the 10 states listed and Verizon correctly points out that there are significant differences among the laws of these 10 states.

    In sum, I Find that Verizon's allegations of inter-class conflict do not defeat Claimants' application for class certifications of a Payer Class A and Subscriber Class B under federal law or state common law. However, significant variations among the States' Consumer Fraud Statutes do defeat certification of classes for Counts II and IV of the Consolidated Demand.

    H. <u>Superiority</u> - Supplementary Rule 4(b) - Whether a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. Verizon argues that customers can seek resolution of their claims through Verizon's mediation program. However, Claimants have established that Verizon's mediation program was not described on its website and was rarely if ever used. Verizon has offered no proof to establish that customers have made use of the Verizon mediation program or that the use of the mediation program would successfully lead to resolution of the common questions of law or fact in this matter regarding the validity and enforceability of the $175.00 ETF.

Verizon next argues that customers can pursue claims like that pursued by Schroer before the Federal Trade Commission. Although the regulations appear to indicate that the Federal Trade Commission should adjudicate consumer complaints, Claimants have established that such procedures have never resulted in an adjudication for a consumer with a complaint. In this case, the Federal Trade Commission appears to have done little other than refer Schroer's complaint to the New York State Attorney General's office . The evidentiary record appears to establish that the Federal Trade Commission is ill-equipped to handle consumer complaints and appears to have no desire to do so.

Verizon next argues that customers can pursue their claims in Small Claims Courts. It does not seem likely that many of the 3.5 million customers will seek adjudication in Small Claims Courts. Verizon has provided no information indicating that any such customers have done so. Moreover, given the complexity of the arguments and the expense and detail in connection with the evidentiary submissions, it is highly unlikely that any customer will pursue adjudication of his or her claims in order to avoid payment of $175.00 ETF or the associated risk of an adverse credit rating.

Verizon argues that there is another putative class action pending in New Jersey commenced by a representative named Waudby and that for the reasons set forth above, a Court is better able to deal with a class action regarding the enforceability of the $175.00 ETF than this Tribunal in arbitration. However, as noted above, Verizon asked that this matter be sent to arbitration after Claimants began state court proceedings. Thus, Verizon argued to a Court that the matter was better adjudicated in arbitration and now argues to the arbitrator that the matter is better adjudicated in Court.

Additionally, the Waudby matter appears to have emanated from an unrelated dispute among counsel for the putative classes which has no connection to the merits of this arbitration proceeding. Also, the Waudby proceeding has been stayed by the New Jersey Federal Court apparently pending the outcome of this arbitration. I have not been advised of any other proceedings by any other putative class members.

There is no significant interest of other members of the classes in individually controlling the prosecution of separate arbitrations. Except as referred to above regarding the Waudby matter, there are no other proceedings concerning the controversy already commenced by or against members of the putative class. Unquestionably, it is desirable to concentrate the determination of claims regarding the validity and enforceability of Verizon's $175.00 ETF in one arbitral forum. Except as set forth above regarding management difficulties in the event of certification under state Consumer Fraud Statutes, I do not believe there will be significant difficulties in the management of a class arbitration which could not be resolved by subsequent creation of sub-classes and other similar devices.

## CONCLUSION

For the reasons set forth above, I conclude that Claimants' application for certification of Payer Class A and Subscriber Class B in respect of Counts I, III, V, VI, and VII of the Consolidated Demand is granted. Claimants' application for certification of Counts II and IV is denied.

The two classes are defined as follows:

Class A - Payer Class: All persons in the United States who were charged an early termination fee pursuant to a Customer Service

33

Agreement which contained an arbitration clause from November 1, 2000

through November 16, 2006, excluding persons with a California area

code and California billing address for such account.

Class B - Subscriber Class: All persons in the United States who were

parties to a contract for a wireless telephone personal account with

Verizon that included a provision for an early termination fee and included

an arbitration clause from November 1, 2000 through November 16, 2006,

excluding persons with a California area code and California billing

address for such account.

The class representatives for Class A are Harold P. Schroer and Dawn M. Zobrist.  The

representatives for Class B are Patricia Brown and Dawn M. Zobrist.

Counsel for the classes are Law Offices of Scott A. Bursor, 500 Seventh Avenue,

10th Floor, New York, NY 10018, lead counsel, Gilman and Pastor, LLP, 225 Franklin

Street, 16th Floor, Boston, MA 02110, Faruqi & Faruqi, 320 East 39th Street, New York,

NY 10016 and Mager & Goldstein, LLP, 1640 Town Center Circle, Suite 216, Weston,

FL 33326..

The claims, issues, and defenses are set forth above in Section B of this Class

Determination Award.  Putative Class Members shall be granted the right to opt out and

be excluded from Class Arbitration.  The timing and detail of the opt out will be set forth

in a Notice to class members to be later approved by this Tribunal.

34

Pursuant to Supplementary Rule 5(d), I stay all proceedings in this matter for a period of at least 30 days to permit any party to move a Court of competent jurisdiction to confirm or to vacate this Class Determination Award.

Dated:        White Plains, New York
              January 10, 2008

_____        _____
Date                           Eugene I. Farber

I, Eugene I. Farber do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

_____        _____
Date                           Eugene I. Farber

35