UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
and VERIZON COMMUNICATIONS INC.,

Petitioners,

-against-

No. 08 CV 00427 (LAK)

PATRICIA BROWN, HAROLD P. SCHROER, and
DAWN M. ZOBRIST, on an individual basis and on
behalf of others similarly situated,

Respondents.

## NOTICE OF RESPONDENTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO SUMMARILY DENY THE PETITION

PLEASE TAKE NOTICE THAT, upon the Declaration Of Scott A. Bursor,

submitted herewith, and the accompanying Memorandum Of Law In Support Of Respondents'

Motion To Dismiss Or In The Alternative To Summarily Deny The Petition, respondents Patricia

Brown, Harold P. Shroer, and Dawn M. Zobrist will move this Court at the Courthouse, 500

Pearl Street, New York, NY, at a date and time to be determined by the Court, for an order

dismissing, or in the alternative, summarily denying, the Petition To Vacate Arbitration Award.

Dated: January 29, 2008.

By _____
Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)
scott@bursor.com

*Lead Counsel for Claimants-Respondents*
*Patricia Brown, Harold P. Schroer, and*
*Dawn M. Zobrist*

Bradley M. Lakin
Daniel J. Cohen
THE LAKIN LAW FIRM, P.C.
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095-1127
Ph: 618.254.1127
danc@lakinlaw.com

Phillip A. Bock
Robert M. Hatch
DIAB & BOCK, LLC
20 N. Wacker Drive, Suite 1741
Chicago, IL  60606
Telephone:  (312) 334-1970
phil@diabbockllc.com

David Pastor
GILMAN AND PASTOR LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
(617) 742-9700 (tel)
(617) 742-9701 (fax)
dpastor@gilmanpastor.com

Nadeem Faruqi
Adam R. Gonnelli
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY 10016
(212) 983-9330 (tel)
(212) 983-9331 (fax)
nfaruqi@faruqilaw.com
agonnelli@faruqilaw.com

Jayne A. Goldstein
MAGER & GOLDSTEIN, LLP
1640 Town Center Circle, Suite
216
Weston, FL 33326
(954) 515-0123 (tel)
(954) 515-0124 (fax)
jgoldstein@magergoldstein.com

*Additional Counsel for Claimants-*
*Respondents Patricia Brown, Harold*
*P. Schroer, and Dawn M. Zobrist*

## CERTIFICATE OF SERVICE

I, SCOTT A. BURSOR, hereby certify that a true and correct copy of the

foregoing document has been served by hand on counsel for Petitioners Cellco Partnership d/b/a

Verizon Wireless and Verizon Communications Inc., Jeffrey S. Jacobson, Debevoise & Plimpton

LLP, 919 third Avenue, New York, NY 10022-3916, this 29th day of January, 2008.

By _____
Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
and VERIZON COMMUNICATIONS INC.,

                                        Petitioners,

-against-

PATRICIA BROWN, HAROLD P. SCHROER, and                    No. 08 CV 00427 (LAK)
DAWN M. ZOBRIST, on an individual basis and on
behalf of others similarly situated,

                                        Respondents.

---

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO SUMMARILY DENY THE PETITION

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)                                        January 29, 2008

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................... ii

Introduction ............................................................................................................... 1

Argument ................................................................................................................... 4

I.  THE PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT
    COMPLY WITH SECTION 6 OF THE FAA ................................................... 4

II.  THE PETITION SHOULD BE DISMISSED BECAUSE THIS COURT
     LACKS JURISDICTION TO REVIEW INTERLOCUTORY
     ARBITRATION ORDERS ................................................................................ 5

     A.  District Courts Lack Jurisdiction To Review Interlocutory
         Arbitration Orders ................................................................................... 5

     B.  The Class Determination Award Is Not A Final, Reviewable Order .................... 8

III.  IN THE ALTERNATIVE, THE PETITION SHOULD BE
      SUMMARILY DENIED BECAUSE THERE ARE NO GROUNDS
      FOR VACATUR OF THE AWARD ............................................................ 11

      A.  The Arbitrator Did Not Exceed His Authority .................................... 12

      B.  The Arbitrator Did Not Manifestly Disregard Applicable Law ........................... 18

          1.  The Arbitrator Did Not Manifestly Disregard Applicable Law
              Concerning Purported Conflicts Within Class A ......................... 19

          2.  The Arbitrator Did Not Manifestly Disregard Valid Choice
              Of Law Clauses .......................................................................... 21

          3.  The Arbitrator Did Not Manifestly Disregard Applicable Law
              Concerning Representation Of Class B ....................................... 22

          4.  The Arbitrator Did Not Manifestly Disregard The
              Statute Of Limitations On The § 201 Claim .............................. 25

          5.  The Arbitrator Did Not Manifestly Disregard Federal Law
              Concerning The Predominance Requirement .............................. 30

Conclusion ............................................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                                                      Page(s

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974)...................................................................................... 26, 27

*Americas Ins. Co. v. Seagull Compania Naviera, S.A.*,
   774 F.2d 64 (2d Cir. 1985)...................................................................... 11

*Banco Seguros Del Estado v. Mutual Marine Offices, Inc.*,
   230 F. Supp.2d 362 (S.D.N.Y. 2002)............................................... passim

*Barneby v. E.F. Hutton & Co.*,
   715 F. Supp. 1512 (M.D. Fla. 1989)....................................................... 27

*Companis Panemena Maritima San Gerasimo, S.A. v. J. E. Hurley Lumber Co.*,
   244 F.2d 286 (2d Cir. 1957).................................................................. 3, 6

*Crown, Cork, & Seal Co. v. Parker*,
   462 U.S. 345 (1983)................................................................................ 26

*Cullen v. Margiotta*,
   811 F.2d 698 (2d Cir. 1987)............................................................. 26, 27

*Deily v. Waste Management of Allentown*,
   118 F. Supp.2d 539 (E.D. Pa. 2000) ...................................................... 29

*DiRussa v. Dean Witter Reynolds Inc.*,
   121 F.3d 818 (2d Cir. 1997)................................................................... 14

*Florasynth, Inc. v. Pickholz*,
   750 F.2d 171 (S.D.N.Y. 1984)............................................................... 12

*Folkways Music Publishers v. Weiss*,
   989 F.2d 108 (2d Cir. 1993)................................................................... 11

*Franks v. Bowman Transportation Co.*,
   424 U.S. 747 (1976)................................................................................ 24

*Goldman v. Architectural Iron Co.*,
   2001 WL 1705117 (S.D.N.Y. Jan. 15, 2001) ........................................ 20

*Greenberg v. Bear, Stearns & Co.*,
   220 F.3d 22 (2d Cir. 2000)............................................................... 18, 29

*Halligan v. Piper Jaffray, Inc.*,
   148 F.3d 197 (2d Cir. 1998)................................................................... 18

*Hoeft v. MVL Group, Inc.*,
   343 F.3d 57 (2d Cir. 2003).................................................................... 25

*Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.*,
   127 F. Supp.2d 482 (S.D.N.Y. 2001)................................................ 6, 7, 11, 30

Page(s)

*Indiana Bell Tel. Co. v. Indiana Utility Regulatory Commission*,
  855 N.E.2d 357 (Ind. Ct. App. 2006)....................................................... 29

*Interior Finish Contractors Association of Delaware Valley v.
  Drywall Finishers Local Union No.1955*,
  625 F. Supp. 1233 (E.D.Pa.1985) ............................................................ 4

*Jenson v. Allison-Williams Co.*,
  1999 U.S. Dist. LEXIS 22170 (S.D. Cal. 1999) ..................................... 26

*John M. O'Quinn, P.C. v. Wood*,
  2007 WL 4465296 (Tex. App. Dec. 21, 2007) .................................... 3, 9

*Kruse v. Sands Bros. & Co.*,
  226 F. Supp.2d 484 (S.D.N.Y. 2002).................................................... 2, 4

*Liberian Vertex Transports, Inc. v. Associated Bulk Carriers, Ltd.*,
  738 F.2d 85 (1984).................................................................................... 6

*In re Linerboard Antitrust Litig.*,
  223 F.R.D. 335 (E.D. Pa. 2004) ............................................................. 26

*Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.*,
  956 F.2d 22 (2d Cir. 1992)...................................................................... 14

*Long John Silver's Restaurants, Inc. v. Cole*,
  409 F. Supp.2d 682 (D.S.C. 2006)................................................... 10, 11

*Marron v. Snap-On Tools*,
  2006 WL 51193 (D.N.J. June 9, 2006) ..................................................... 2

*McDaniel v. Bear Stearns & Co., Inc.*,
  196 F. Supp.2d 343 (S.D.N.Y. 2002)................................................ 18, 24

*Merrill Lynch v. Bobker*,
  808 F.2d 930 (2d Cir. 1986).................................................................... 18

*Metalgesellschaft A.G. v. M/V Capitan Constante*,
  790 F.2d 280 (2d. Cir. 1986)............................................................. 7, 10

*Mexiport, Inc. v. Frontier Communications Servs.*,
  253 F.3d 573 (11th Cir. 2001) ............................................................. 28

*Michaels v. Mariform Shipping, S.A.*,
  624 F.2d 411 (2d Cir. 1980)............................................................ passim

*O.R. Securities, Inc. v. Professional Planning Associates, Inc.*,
  857 F.2d 742 (11th Cir.1988) ................................................................... 4

*Siegel v. Titan Indus. Corp.*,
  779 F.2d 891 (2d Cir. 1985).................................................................... 19

*Sperry International Trade, Inc. v. Government of Israel*,
  532 F. Supp. 901 (S.D.N.Y. 1982)............................................... 7, 10, 11

iii

*St. Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199,*
   116 F.3d 41 (2d Cir. 1997)..................................................................... 25

*Stiles v. GTE Southwest Inc.,*
   128 F.3d 904 (5th Cir. 1997) ................................................................ 28

*Sunoco, Inc. v. Honeywell Int'l, Inc.,*
   2005 WL 2550673 (S.D.N.Y. Oct. 13, 2005) ....................................... 10

*Sutter v. Oxford Health Plans LLC,*
   227 Fed. Appx. 135 (3d Cir. 2007)......................................................... 10

*Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.,*
   931 F.2d 191 (2d Cir. 1991)................................................................ 7, 10

*United States Parole Board v. Geraghty,*
   445 U.S. 388 (1980).............................................................................. 23

*United States Postal Service v. Am. Postal Workers Union, AFL-CIO,*
   204 F3d 523, (4th Cir. 2000) .............................................................. 3, 11

*United States v. Commercial National Bank of Peoria,*
   874 F.2d 1165 (7th Cir. 1989) ............................................................... 28

*Wall Street Assocs. L.P. v. Becker Paribas Inc.,*
   27 F.3d 845 (2d Cir. 1994).................................................................... 11

*Wallace v. Buttar,*
   378 F.3d 182, 190 (2d Cir. 2004) ..................................................... 18, 30

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,*
   304 F.3d 200 (2d Cir. 2002)................................................................... 25

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,*
   103 F.3d 9 (2d Cir. 1997) ...................................................................... 19

*World Brilliance Corp. v. Bethlehem Steel Co.,*
   342 F.2d 362 (2d Cir. 1965).................................................................... 4

*Yonir Technologies, Inc. v. Duration Sys.,*
   244 F.Supp.2d 195 (S.D.N.Y. 2002)..................................................... 6, 7

*Zysk v. FFE Minerals USA, Inc.,*
   225 F. Supp.2d 482 (E.D. Pa. 2001) ...................................................... 29

## Statutes, Rules & Regulations

9 U.S.C.
   § 6.......................................................................................... 2, 4
   § 10....................................................................................... 2, 3, 6
   § 10(a) ......................................................................................... 12

<div align="right"><u>Page(s)</u></div>

47 U.S.C.
  § 201...............................................................................................................passim
  § 201(b)................................................................................................................27
  § 207....................................................................................................................28

American Arbitration Association, Supplementary Rules for Class Arbitrations
  Rule 3..................................................................................................13, 14, 15
  Rule 4(a)....................................................................................................5, 8
  Rule 4(a)(6)...................................................................................15, 16, 17
  Rule 4(b)...............................................................................................30
  Rule 5.....................................................................................................9
  Rule 5(a)..................................................................................................9
  Rule 5(b)..................................................................................................2
  Rule 5(c)..................................................................................................2
  Rule 5(d)..................................................................................................8
  Rule 5(e)..................................................................................2, 8, 9, 10

Fed. R. Civ. P.
  Rule 81(a)(6)(B)........................................................................................4

Local Civil Rules
  Rule 6.1.................................................................................................4
  Rule 7.1.................................................................................................4

S.Rep. No. 536, 68th Cong., 1st Sess. (1924);
  H.R.Rep. No. 96, 68th Cong., 1st Sess. (1924)..............................................4

Texas General Arbitration Act.................................................................3, 9

Respondents and certified class representatives, Patricia Brown, Harold P. Schroer, and Dawn M. Zobrist, respectfully submit this Memorandum Of Law In Support Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition.

## **Introduction**

Verizon's Petition To Vacate Arbitration Award (hereafter, "Petition"), was filed prematurely, in the wrong form, and in the wrong court. This case originated in the Circuit Court Of The 15th Judicial Circuit, In And For Palm Beach County, Florida, before Judge Elizabeth Maas. The case remains before that court, stayed pending the outcome of the ongoing arbitration proceedings. The matter was referred to arbitration more than two and a half years ago. Since then the American Arbitration Association (AAA) Tribunal, Arbitrator Eugene I. Farber (hereafter, the "Arbitrator" or the "Tribunal"), has made at least 14 procedural orders, conducted numerous hearings, including a 3-day mini-trial on a class certification motion, and on January 10, 2008, pursuant to the AAA Supplementary Rules for Class Arbitrations (hereafter, "Supplementary Rules"), granted a motion to certify two classes:

> Class A – Payer Class:  All persons in the United States who were charged an early termination fee pursuant to a [Verizon] Customer Service Agreement which contained an arbitration clause from November 1, 2000 through November 16, 2006, excluding persons with a California area code and California billing address for such account.

> Class B – Subscriber Class:  All persons in the United States who were parties to a contract for a wireless telephone personal account with Verizon that included a provision for an early termination fee and included an arbitration clause from November 1, 2000 through November 16, 2006, excluding persons with a California area code and California billing address for such account.

Class Determination Award (hereafter "Award") at 33-34, Bursor Decl. Exh. 1.  This Award followed the Arbitrator's consideration of "massive evidentiary submissions," *id.* at 28, including "9 expert reports and extensive testimony," *id.* at 10.

The Award remains incomplete.  The Arbitrator has not yet determined whether class members will be permitted to opt out of the class, and has not yet made provisions for the content and manner of notice to the class as required by Supplementary Rules 5(b) and (c).  *See* Bursor Decl. Exh. 2 (Supplementary Rules).  Presently before the Arbitrator is a motion addressing those issues, as well as a request to correct, amend or alter the Award pursuant to Supplementary Rule 5(e).  *See* Bursor Decl. Exh. 6 (Claimants' Motion To Correct, Alter Or Amend The Class Determination Award).

Now Verizon seeks vacatur of the Award through a "petition" filed in this Court rather than the Florida court where the underlying action remains pending.  Verizon's "Petition" should be dismissed because it does not comply with Section 6 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 6, which requires a party seeking vacatur of an arbitration award to proceed by motion to the court, not by a "petition."  *See Kruse v. Sands Bros. & Co.*, 226 F. Supp.2d 484, 487 (S.D.N.Y. 2002) (holding a petition is "not the legal equivalent of a motion to vacate").  *See* Part I, below.

Verizon's petition is also premature, because under the FAA the jurisdiction of courts is limited to review of final arbitration awards, and courts are not permitted to review interlocutory, interim or partial awards.  *See, e.g.*, *Marron v. Snap-On Tools*, 2006 WL 51193, at *1 (D.N.J.  June 9, 2006) ("Federal courts commonly understand this provision of the FAA [9 U.S.C. § 10] to allow review of final arbitration awards but *not* of interim or partial rulings."); *Michaels v. Mariform Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980) ("Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable.").  Thus, court review of Class Determination Awards is not permitted under the FAA.  *See, e.g.*, *Marron*, 2006 WL 51193, at *3 ("Given the early stage of

the proceedings and the breadth of issues submitted to the arbitrator that have not even been reached this [Class Determination Award] is not ripe for review by this court. … It is not in the interest of judicial economy for this court to entertain repeated interlocutory appeals that further delay the arbitration that Snap-On moved this Court to compel two years ago."); *John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, at *2-3 (Tex. App. Dec. 21, 2007) (holding Class Determination Award was not a final reviewable award under the Texas General Arbitration Act). Since the Award is not reviewable under the FAA, this Court lacks jurisdiction to rule on the Petition, which should be dismissed without reaching the merits. *See* Part II, below.

In the alternative, should the Court reach the merits, the Petition should be summarily denied. Judicial review of arbitral orders is "among the narrowest known to the law." *United States Postal Service v. Am. Postal Workers Union, AFL-CIO*, 204 F3d 523, 527 (4th Cir. 2000). Vacatur of arbitration awards is strongly disfavored, and under the FAA is permitted only upon a showing of corruption, fraud, or other misconduct by the arbitrator. *See* 9 U.S.C. § 10. Here, Verizon's petition does not even come close to meeting that standard. *See* Part III, below.

Finally, Verizon's Petition has the potential to cause undue delay in an arbitration proceeding that has already been unduly drawn out and protracted. The Second Circuit has expressly noted concerns about such delays, and has instructed that hearings on matters concerning ongoing arbitrations "should be held on short notice and the matter should be decided summarily." *Companis Panemena Maritima San Gerasimo, S.A. v. J. E. Hurley Lumber Co.*, 244 F.2d 286, 290 (2d Cir. 1957). Claimant-respondents respectfully request that Verizon's Petition be addressed consistent with that instruction, through an expedited briefing schedule and prompt hearing to dispose of this matter.

## Argument

I.    **THE PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT COMPLY WITH SECTION 6 OF THE FAA**

Section 6 of the Federal Arbitration Act ("FAA") requires a party seeking vacatur of an arbitration award to proceed by motion to the court. *See* 9 U.S.C. § 6 ("Any application to the court ... shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."). In matters related to arbitration, § 6 of the FAA preempts the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 81(a)(6)(B). The policy behind this section "is to expedite judicial treatment of matters pertaining to arbitration." *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365-66 (2d Cir. 1965), *citing* S.Rep. No. 536, 68th Cong., 1st Sess. (1924); H.R.Rep. No. 96, 68th Cong., 1st Sess. (1924); *see also Kruse v. Sands Bros. & Co.*, 226 F. Supp.2d 484, 485 (S.D.N.Y. 2002) (same). To this end, "the statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint or an [a]pplication." *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 745 (11th Cir.1988), *quoting Interior Finish Contractors Association of Delaware Valley v. Drywall Finishers Local Union No.1955,* 625 F. Supp. 1233, 1240 (E.D.Pa.1985) (internal quotations omitted). A request for vacatur must be made in the form of a motion. *Kruse*, 226 F. Supp.2d at 486.

The document Verizon submitted to this Court is not a motion. It is a complaint disguised as a "Petition To Vacate Arbitration Award." Like the petition in *Kruse*, Verizon's petition is drafted in the style of a complaint. It is comprised of allegations set forth in numbered paragraphs that contain only "conclusory statements … devoid of any argument or legal or factual support." *Id.* Such a petition is "not the legal equivalent of a motion to vacate." *Id.* at 487. Moreover the "Petition" does not conform to Local Civil Rules 6.1 and 7.1, which require

4

civil motions to be served with a notice of motion, supporting affidavits, and a memorandum of law.

## II.    THE PETITION SHOULD BE DISMISSED BECAUSE THIS COURT LACKS JURISDICTION TO REVIEW INTERLOCUTORY ARBITRATION ORDERS

The Class Determination Award that Verizon seeks to vacate concerns nothing but the further conduct of the arbitration.  It is a finding that the claimants have met the requirements of Supplementary Rule 4 such that they "may act in the arbitration as representative parties on behalf of all members of the class[es] described."  Supplementary Rule 4(a).  This is an interlocutory arbitration order that the Court lacks jurisdiction to review.

### A.    District Courts Lack Jurisdiction To Review Interlocutory Arbitration Orders

Under the FAA, "a district court does not have the power to review an interlocutory ruling by an arbitration panel."  *Michaels v. Mariform Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980).  *Michaels* involved a motion to vacate an arbitrator's "Decision & Interim Award" that determined the issue of liability on four of six counterclaims, but did not determine the claimant's affirmative claims, did not decide the two remaining counterclaims, and did not make a final damage award.  *Id.* at 412-13.  The losing party petitioned the District Court to vacate the award, which petition was denied on the merits.  *Id.*  On appeal, the Second Circuit held:  "[T]he district judge correctly refused to vacate the award.  However, rather than reaching the merits of [the losing party's] claims, he should simply have dismissed the petition as premature."  *Id.* at 412.  The Second Circuit explained:

> Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable.
>
> Policy considerations, no less than the language of the Act and precedent construing it, indicate that district courts should not be called upon to review preliminary rulings of arbitrators.  Most of

the advantages inherent in arbitration are dissipated by interlocutory appeals to a district court.  As we stated in *Compania Panemena Maritima*, *supra*, 244 F.2d at 288-89, a district court should not "hold itself open as an appellate tribunal" during an ongoing arbitration proceeding, since applications for interlocutory relief "result only in a waste of time, the interruption of the arbitration proceeding, and . . . delaying tactics in a proceeding that is supposed to produce a speedy decision."

*Michaels*, 624 F.2d at 414.  Accordingly the Second Circuit vacated the District Court's judgment denying the petition on the merits and remanded the action for dismissal.  *Id.* at 415.

*See also Liberian Vertex Transports, Inc. v. Associated Bulk Carriers, Ltd.*, 738 F.2d 85, 86-88 (1984) (dismissing appeal from District Court order refusing to confirm an "interim decision and partial final award" on four of eight claims on the ground that it was not a "final and determinative award" under § 10 of the FAA); *Yonir Technologies, Inc. v. Duration Sys.*, 244 F.Supp.2d 195, 206 (S.D.N.Y. 2002) (refusing to confirm an interlocutory order directing the production of bank statements, stating:  "It is an interlocutory order related to an ongoing arbitration.  I cannot exercise judicial review over this order, and thus cannot confirm it.").

Under the FAA, only final arbitral orders are reviewable.  The case law establishes four alternative tests for "finality," none of which can be met here.  First, under *Michaels*, "[i]n order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them." *Michaels*, 624 F.2d at 413.  But, as this Court has observed, the cases have not, in all circumstances, "required finality in that sense."  *Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.*, 127 F. Supp.2d 482, 487 (S.D.N.Y. 2001).

Second, and alternatively, arbitral orders have been considered final if they resolve a claim that is "independent and separate from the remaining issues before the arbitrators and could be finally determined without reference to those legally irrelevant issues."

*Metalgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d. Cir. 1986); *see also Home Ins. Co.*, 127 F. Supp.2d at 487-88 (holding arbitral order directing immediate payment of undisputed freight charge to be "final" as an award on a "separate and independent claim").

Third, and alternatively, arbitral orders have been considered final if "the parties agree that the panel is to make a final decision as to part of the dispute … [and] once arbitrators have finally decided the submitted issues, they are, in common-law parlance, '*functus officio*,' meaning that their authority over those questions is ended." *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir. 1991). "Thus, if the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue." *Id.*

Fourth, and alternatively, arbitral orders granting interim relief, such as temporary equitable awards to preserve assets, are considered final arbitral awards subject to judicial review. *See, e.g.*, *Sperry International Trade, Inc. v. Government of Israel*, 532 F. Supp. 901, 903 (S.D.N.Y. 1982) (holding arbitral order directing parties to deposit the proceeds of a letter of credit into a joint escrow account pending resolution of the dispute was final and could be confirmed); *Yonir Technologies, Inc. v. Duration Sys.*, 244 F. Supp.2d 195, 204-05 (S.D.N.Y. 2002) (holding arbitral order that joint venture monies be retained in venture until end of arbitration on dissolution issues was final and could be confirmed). The rationale for holding such interim awards to be final is that unless they are confirmed by a court and enforced, "the Award will be a meaningless and frustrated exercise of the Arbitrators' powers." *Sperry International Trade, Inc.*, 532 F. Supp. at 909.

B.    <u>**The Class Determination Award Is Not A Final, Reviewable Order**</u>

The Class Determination Award certifies two classes of Verizon customers, and finds that the claimants in the arbitration have met the requirements of Supplementary Rule 4 such that they "may act in the arbitration as representative parties on behalf of all members of the class[es] described." Supplementary Rule 4(a). This "Award" is not a final order because it does not finally dispose of all claims – or indeed any claims. It is merely a procedural order concerning the further conduct of the arbitration itself. And even as to that it is not final. Under Supplementary Rule 5(e), "[a] class determination award may be altered or amended by the arbitrator before a final award is rendered." Supplementary Rule 5(e), Bursor Decl. Exh. 2.[1]

While the AAA rules themselves provide for the possibility of court review of a class determination award, the rules of the AAA cannot expand the jurisdiction of this Court where the FAA has circumscribed it. Thus, the fact that Supplementary Rule 5(d) provides for a 30-day stay "to permit any party to move a court of competent jurisdiction to confirm or vacate the Class Determination Award" is of no consequence. The language of the rule itself is agnostic with respect to the jurisdiction of courts. It does not purport to create jurisdiction, but merely permits any party "to move a court of competent jurisdiction" if such court exists. In this case there is no such court because the parties' agreement is expressly made subject to the FAA, which permits review only of final orders. *See Michaels*, 624 F.2d at 414; Bursor Decl. Exh. 3 (parties' agreement stating: "The Federal Arbitration Act Applies To This Agreement."). In any event, the jurisdiction of this Court is not determined by a AAA rule; it is determined by Congress as expressed in the FAA.

---

[1] A motion to correct, alter or amend the Award under Supplementary Rule 5(e) is pending before the arbitrator. *See* Bursor Decl. Exh. 6.

Nor can the verbiage used in AAA rules or in the title of the "Award" transform an interlocutory order into a final one.  Thus, it is of no consequence that the class certification order is labeled an "award," or that Supplementary Rule 5(a) incorrectly describes such award as "final."  The reference in Rule 5(a) to the award being "final" is immediately contradicted by Rule 5(e), which makes clear that the Class Determination Award is <u>not</u> final because it "may be altered or amended by the arbitrator before a final award is rendered."  Relying on this reading of Rule 5(e), the only appellate court to examine the question has held that a Class Determination Award under Rule 5 is <u>not</u> final, as even the "AAA rules consider a class determination award to be something less than the final arbitration award":

> [W]e understand the 'award' referred to by the statute to be the final arbitration award and not merely any arbitration panel intermediate decision labeled 'award.'  The fact that the arbitration panel's class certification decision was labeled, under the AAA rules and in the document's heading, as a 'Class Determination Award' does not transform the intermediate decision of the panel into a final arbitration award.  …
>
> O'Quinn points out that the AAA rules themselves refer to a class determination award as a 'reasoned partial final award.'  AAA Supplementary Rules Regarding Class Arbitration, Rule 5(a), available at http://www.adr.org/sp.asp?id=21936.  However, those same rules also state that a "Class Determination Award may be altered or amended by the arbitrator before a final award is rendered."  AAA Supplementary Rules Regarding Class Arbitration, Rule 5(e), available at http://www.adr.org/sp.asp?id=21936.  Therefore the AAA rules consider a class determination award to be something less than the final arbitration award contemplated by the TGAA [Texas General Arbitration Act]."

*John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, at *2-3 (Tex. Ct. App. Dec. 21, 2007).[2]

---

[2] The research of Respondents' counsel has uncovered only three court decisions concerning appeals of Class Determination Awards issued under Supplementary Rule 5.  In *John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, cited in the text, a Texas appellate court held that the Class Determination Award was not a final reviewable order after the state trial court had

<div align="right">(footnote continued...)</div>

Thus the Class Determination Award is not considered final even under the AAA rules, and it does not meet any of the standards for finality under the applicable case law.  It certainly does not meet the *Michaels* test because it was not "intended by the arbitrator[] to be [his] complete determination of all claims submitted to [him]." *Michaels*, 624 F.2d at 413.  Nor does it finally resolve a claim that is "independent and separate from the remaining issues before the arbitrators and could be finally determined without reference to those legally irrelevant issues." *Metalgesellschaft A.G.*, 790 F.2d at 282.  Since it does not resolve the merits of any claim it cannot be final under either of these standards.

Nor is the Class Determination Award final under the "*functus officio*," standard set forth in *Trade & Transport, Inc.*, 931 F.2d at 195, because the arbitrator retains authority under Rule 5(e) to modify or amend the award.  Nor is it final under the line of cases concerning interim equitable awards to preserve assets, such as *Sperry International Trade, Inc.*, 532 F. Supp. at 903, because the Class Determination Award does not grant that type of interim relief, but rather concerns only the manner in which further arbitration proceedings will be conducted, *i.e.*, on a classwide basis.

The Class Determination Award is not a final order and it is not reviewable in this or any other court.  Verizon's petition is "an impermissible interlocutory attack on an ongoing arbitration proceeding." *Sunoco, Inc. v. Honeywell Int'l, Inc.*, 2005 WL 2550673, at *4 (S.D.N.Y. Oct. 13, 2005).  It should be dismissed without reaching the merits.

---

*(...footnote continued)*
denied a motion to vacate the award on its merits.  In the other two cases federal courts denied motions to vacate the awards without discussion of whether they were reviewable final orders under the FAA.  *See Sutter v. Oxford Health Plans LLC*, 227 Fed. Appx. 135 (3d Cir. 2007) (denying motion to vacate Class Determination Award); *Long John Silver's Restaurants, Inc. v. Cole*, 409 F. Supp.2d 682 (D.S.C. 2006) (denying motion to vacate Class Determination Award).

III.    **IN THE ALTERNATIVE, THE PETITION SHOULD BE SUMMARILY DENIED BECAUSE THERE ARE NO GROUNDS FOR VACATUR OF THE AWARD**

A petition to vacate an arbitration award is a summary proceeding in which the award is entitled to great deference by the reviewing court. *Home Ins. Co.*, 127 F. Supp.2d at 487. Moreover, a party seeking to vacate an award bears the burden of providing the reviewing court with a record sufficient to permit the exercise of informed judgment in accordance with the applicable scope of review. *Id.*

The scope of review of an arbitration award is generally "very narrowly limited," *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir. 1985), so as "to avoid undermining the twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers v. Weiss,* 989 F.2d 108, 111 (2d Cir. 1993). *See also Long John Silver's Restaurants, Inc. v. Cole*, 409 F. Supp.2d 682, 684 (D.S.C. 2006) ("It is well settled that a court's review of an arbitration award 'is among the narrowest known to the law.'"), *quoting United States Postal Service v. Am. Postal Workers Union, AFL-CIO*, 204 F3d 523, 527 (4th Cir. 2000).

"The vacation of arbitration awards is disfavored, and the grounds therefor are to be strictly construed." *Sperry International Trade, Inc.*, 532 F. Supp. at 905. Under the FAA, "the validity of an award is subject to attack only on those grounds listed in § 10, and the policy of the FAA requires that an award be enforced unless one of those grounds is affirmatively shown to exist." *Wall Street Assocs. L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir. 1994). The FAA provides that a court may make an order vacating an award in four circumstances:

(1)    where the award was procured by corruption, fraud, or undue means;

11

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*See* 9 U.S.C. § 10(a).  This section "severely restricts the power of a court to vacate an award to cases involving fraud in procurement of the award, misconduct, or arbitrators clearly exceeding their powers."  *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (S.D.N.Y. 1984).

Verizon's petition asserts two grounds for vacating the award in this case:  that the arbitrator (i) exceeded his authority, and (ii) acted in manifest disregard of applicable law.  Both of those contentions are meritless.

### A.     <u>The Arbitrator Did Not Exceed His Authority</u>

Verizon's petition alleges that the arbitrator exceeded the "limits on his authority under federal law" by holding the purported class action waivers in Verizon's customer service agreements (CSAs) unenforceable.  Petition ¶¶ 26-35.  According to Verizon's petition, the enforceability of the class action waivers is "a gateway issue to be decided by a Court and not an arbitrator."  Petition ¶ 28.

At the outset, it is important to note that Verizon's argument on this point is untenable for at least four reasons.

<u>First</u>, Verizon's argument is wrong because the parties' agreement explicitly gives the arbitrator the authority to decide that issue.  *See* Customer Agreement, Terms And Conditions, Bursor Decl. Exh. 3 ("Only an arbitrator can decide whether an issue is arbitrable.").

<u>Second</u>, Verizon's argument is wrong because the question of whether the relevant arbitration clauses permitted class arbitration had already been decided – by stipulation under Supplementary Rule 3 – long before the Class Determination Award had been made.  *See* Bursor Decl. Exh. 3 (Supplementary Rule 3); Bursor Decl. Exh. 4 ("Stipulated Partial Final Award – Clause Construction).

<u>Third</u>, Verizon's argument is wrong because Supplementary Rule 4(a)(6) not only authorizes, but *requires* the arbitrator to determine whether class members' arbitration clauses are "substantially similar."  To the extent that class action waivers affect the analysis of substantial similarity, the arbitrator is not only authorized, he is *obligated* to decide the issue.

<u>Fourth</u>, and perhaps most importantly, Verizon expressly and directly waived any argument to the contrary.  When Verizon moved the Florida court to stay this arbitration on the ground that the arbitration clause contained a class action waiver, Verizon argued vigorously that the Florida court, Judge Maas, was required to decide the issue and that she could not leave it to be decided by the arbitrator.  During a hearing before Judge Maas, Verizon was confronted with contrary statements Verizon had made in another case.  Thereafter, Verizon's counsel wrote to Judge Maas and expressly withdrew the argument:

> In light of its statements in *Campbell*, Verizon Wireless wishes to withdraw its argument to this Court that the 'on an individual basis' language expressly prohibits class action arbitrations and thus must be decided, as a 'gatekeeping' matter, by this Court. Rather, <u>Verizon Wireless agrees that the question whether the contract language permits class arbitrations, as well as the other threshold questions that Verizon Wireless has presented to this Court, may be decided by the arbitrator</u>.

7/25/05 Letter from K. Myles to Hon. Elizabeth T. Maas, Bursor Decl. Exh. 5, at 2 (emphasis added); *see also* Award at 18 ("[T]he record establishes that Verizon stipulated to a Court that the arbitrator should decide 'threshold' questions."); *id.* at 19 ("Verizon thus advised the Florida

13

State Court in writing that the arbitrator and not a Court has authority to decide 'threshold questions' including those related to the validity of the class arbitration waiver clause.").[3]

Now Verizon's Petition asserts that the arbitrator exceeded his authority by addressing that issue because "[o]nly a court may determine whether a party has relinquished its right to having a court determine the validity of a class waiver." Petition ¶ 29. Where arbitrators are accused of exceeding their powers, a court must ask "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 824 (2d Cir. 1997); *see also Banco Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F. Supp.2d 362, 375 (S.D.N.Y. 2002). In other words, the Court's role is to determine "whether the arbitrator acted within the scope of his authority," or whether the arbitral award is "merely and example of the arbitrator's own brand of justice." *Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.,* 956 F.2d 22, 25 (2d Cir. 1992).

Here this is not even a close question. As shown above, Verizon stipulated to the Florida court that such "threshold questions … may be decided by the arbitrator." Award at 18. Furthermore, the issue of "clause construction" under Supplementary Rule 3 – "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class ('the Clause Construction Award')" – was made by stipulation. *See* Award at 2, Bursor Decl. Exh. 1 ("Although Verizon had argued in State Court that the arbitration clause in the CSA precluded class arbitration, Verizon did not object to Claimants' application for Supplementary

---

[3] Notably, the underlying action remains before Judge Maas, stayed pending the result of the arbitration. Yet Verizon petitioned this Court, not Judge Maas, to vacate the award. Clearly Verizon anticipated that its principal argument for vacatur would get a chilly reception in Judge Maas's court given the state of the record there. This is the likely explanation for Verizon's forum shopping the action into this Court.

Rule 3 clause construction that Brown's arbitration clause permitted the Brown arbitration

pending before me to proceed on behalf of a class."); *see also* Stipulated Partial Final Award –

Clause Construction, Bursor Decl. Exh. 4 ("Verizon Wireless does not contest clause

construction in this case. … The parties waive any right to appeal this Clause Construction

Award.").

> Thereafter the case proceeded to the class certification stage, which required the

arbitrator to determine, among other things, whether "each class member has entered into an

agreement containing an arbitration clause which is substantially similar to that signed by the

class representative(s) and each of the other class members." Supplementary Rule 4(a)(6). It

was clearly within the scope of the arbitrator's authority to make that determination under

Supplementary Rule 4(a)(6). Indeed, the parties' agreement, the AAA rules, and the parties'

stipulation on clause construction all certainly anticipated that the arbitrator would decide that

issue. The parties presented the arbitrator with extensive briefing, exhibits, live testimony and

oral argument on precisely this issue. And then the arbitrator decided the matter. It is beyond

the pale to assert now that the arbitrator exceeded his authority in doing so.

> Moreover, the governing arbitration clause is broad, submitting to the arbitrator

"any controversy or claim arising out of or relating to this agreement," and further providing that

"only an arbitrator can decide whether an issue is arbitrable." Customer Agreement, Terms And

Conditions, Bursor Decl. Exh. 3. Indeed the Award references this clause and concludes that

"the parties' specific agreements provide authority for the arbitrator to decide this issue." Award

at 18, Bursor Decl. Exh. 1. And that is what happened here. The parties commenced an

arbitration under this broad arbitration clause. The parties stipulated to entry of a clause

construction award confirming that the arbitration clause permits the arbitration to proceed on

behalf of a class.  The parties presented the arbitrator with extensive briefing, exhibits,

testimony, and argument of counsel over several months culminating in a three-day trial on the

motion for class certification.  And thereafter the arbitrator decided precisely the question that

was put to him.

        Verizon's assertion that a court rather than the arbitrator should have made that

decision is, frankly, nonsensical, and directly contradicted by arguments Verizon asserted in the

Florida court before this matter was sent to arbitration:

> When the Brown and Zobrist matters were originally in Court,
> Verizon could have then sought an adjudication regarding the
> enforceability of both the class arbitration waiver clause and the
> related termination of arbitral jurisdiction clause.  Instead Verizon
> asked to have both matters transferred to arbitration and stipulated
> that "threshold matters" should be decided by the arbitrator.  It is
> inequitable for Verizon to thereafter argue that that arbitral forum
> no longer has jurisdiction and the claims must be transferred back
> to Court or some other forum.
>
> []  It is also inequitable for Verizon to have participated without
> objection in 2 arbitrations with 14 procedural orders over 2 years
> and then claim that the arbitral forum lacks jurisdiction.
>
> []  Verizon moved and succeeded in obtaining arbitral decisions
> leading to consolidation of the two arbitrations.  This resulted in
> extensive negotiations and ultimately in an order regarding
> designations of lead counsel for Claimants and new consolidated
> proceedings.  Aside from the waste of effort and expense, if
> arbitral jurisdiction is terminated, it is totally unclear as to what
> would happen to the ETF claims ....  Would the claims become
> unconsolidated?  How is this accomplished?  Are the claims
> referred to Court(s)?  Which Court(s)?  The procedural
> consequences for the affected consumer are untenable.

Award at 21-22, Bursor Decl. Exh. 1.

        Furthermore, the Award makes clear that the Arbitrator focused his analysis on

the question of substantial similarity of arbitration clauses under Rule 4(a)(6), and that the

finding concerning the unenforceability of the class action waivers was mere dictum, or at most a

subsidiary holding related to the principal issue of substantial similarity. The principal rationale for the finding of substantial similarity was that Verizon had taken the position that <u>all</u> of the arbitration clauses prohibited class arbitration, notwithstanding Verizon's having stipulated to the contrary at the clause construction stage:

> In prior Court proceedings, Verizon argued that the arbitration clauses in Claimants' CSAs precluded class arbitration. Therefore, arbitration clauses with explicit class arbitration waivers can not be substantially dissimilar from the clauses in Claimants' arbitration agreements. In fact, even in the Brown arbitration (prior to consolidation) Verizon refused to stipulate that the clauses at issue permitted this arbitration to proceed on behalf of a class. Rather, Verizon did not object (rather than consent) to Claimants' application for Rule 3 Clause Construction in order to maintain its argument that Claimants' arbitration clauses prohibited class arbitrations.
>
> It is not equitable for Verizon to take different positions with respect to the various arbitration clauses at issue. If Verizon previously argued and still maintains that Claimants' arbitration clauses prohibit class arbitrations, then the pre-July 2002 arbitration clauses and the post-January 2005 arbitration clauses are substantially similar.

Award at 16-17, Bursor Decl. Exh. 1.

The finding of substantial similarity under Supplementary Rule 4(a)(6) was based on the foregoing analysis, and the arbitrator noted that "the inquiry under Supplemental Rule 4(a)(6) could end with the above analysis." Award at 17, Bursor Decl. Exh. 1. Then, in belt-and-suspenders fashion, the arbitrator found the class action waivers unenforceable in any event, which is an alternative ground for the finding of substantially similarity among the relevant arbitration clauses. *See* Award at 17-23 (grounds for finding of unenforceability); *id.* at 23 ("For the aforesaid reasons, I conclude that both the class arbitration waiver clause and the termination of arbitral jurisdiction clause are unenforceable. I conclude that each class member entered into

17

an agreement containing an arbitration clause which is substantially similar to that signed by the class representatives and each of the other class members.").

### B.    The Arbitrator Did Not Manifestly Disregard Applicable Law

Verizon's petition asserts that several aspects of the Award were rendered in manifest disregard of applicable law.  However, "review for manifest error is severely limited." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir. 2000); *Banco De Seguros Del Estado v. Mutual Marine Offices, Inc.,* 230 F. Supp.2d 362, 371 (S.D.N.Y. 2002) (same).  The Second Circuit has cautioned that "manifest disregard clearly means more than error or misunderstanding with respect to the law."  *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir. 1998) (quotation marks omitted).  The "manifest disregard of law doctrine [applies] ... only in the most egregious instances of misapplication of legal principles." *Wallace v. Buttar,* 378 F.3d 182, 190 (2d Cir. 2004).  Specifically, a court may not vacate an arbitration award unless it finds that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  *Greenberg,* 220 F.3d at 28; *Banco De Seguros,* 230 F. Supp.2d at 371 (same).  "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986).

The party seeking vacatur of an arbitration award bears the burden of proving manifest disregard.  *See Greenberg*, 220 F.3d at 28.  "But, even if that party proves that the arbitrators' decision is based on a manifest error of [ ] law, a court must nevertheless confirm the award if grounds for the decision can be inferred from the facts of the case." *McDaniel v. Bear Stearns & Co., Inc.,* 196 F. Supp.2d 343, 351 (S.D.N.Y. 2002).  This is so even if the ground for the arbitrator's "decision is based on an error of fact or an error of law." *Willemijn*

*Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997),

*citing Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892-93 (2d Cir. 1985).

> ### 1.  The Arbitrator Did Not Manifestly Disregard Applicable Law Concerning Purported Conflicts Within Class A

Verizon's petition alleges that the arbitrator "ignored clear conflicts within Class

A that preclude certification."  Petition ¶ 36.  According to Verizon's petition, "[i]f claimants

successfully established that the ETFs were unenforceable penalties … Verizon Wireless would

be entitled to collect its actual damages from any class members who breach their CSAs."  *Id.*

¶ 37.  Verizon alleges in its petition, and it argued vigorously throughout the arbitration

proceedings, that this would create an intra-class conflict among the payer class because "[w]hile

some class members would benefit from the invalidation of the ETF, the vast majority would not

because they would be liable for actual damages in excess of the ETF."  *Id.*  Verizon's petition

alleges that certification of Class A (Payer Class) was in manifest disregard of law concerning

this purported conflict.  *Id.*

Verizon's intra-class conflict argument was the subject of numerous expert

reports from both sides, more than a full day of expert testimony at trial, and several voluminous

pre- and post-trial briefs.  As the Award points out:

> A significant portion of the extensive record in this matter related
> to whether or not Verizon did actual incur damages and if so, the
> magnitude of any such damages upon early termination by a
> customer at various points during the 2 year CSA.  Numerous and
> extensive expert reports, affidavits and briefs were submitted on
> these points.

Award at 25, Bursor Decl. Exh. 1

The Award clearly reflects the arbitrator's careful consideration of the evidence

concerning this purported intra-class conflict.  In the four pages of the Award that address this

issue, the arbitrator recites Verizon's argument and lists twelve grounds for rejecting it,

repeatedly finding the purported conflict to be "hypothetical," "speculative," "highly implausible," and "not … established." *See* Award at 24 ("hypothetical conflicts which have not been established"); *id.* ("highly speculative"); *id.* at 25 ("there remains significant doubt as to whether Verizon has validly asserted a counterclaim in this matter"); *id.* ("There is ... significant question as to whether Verizon can assert such a counterclaim."); *id.* at 26 ("It is impossible on this record for me to determine whether or not there actually were damages sustained by Verizon upon the breach of a CSA by a customer and if so, the magnitude of any such damages."); *id.* ("Verizon's assertion of an int[ra]-class conflict based upon its prosecution of a counterclaim also seems highly speculative given its concession at the evidentiary hearing that it has never sued any customer for the $175 ETF.  It therefore seems highly implausible that if the $175 ETF is declared invalid, Verizon would then change its policy and begin suing individual customers for more than the $175 ETF."); *id.* at 27 ("Verizon's assertions of a counterclaim specifically states that it is entitled to consequential damages.  However, consequential damages may be explicitly barred by some or all of the CSAs.").

After a lengthy analysis, the arbitrator concluded:  "In sum, I conclude that Verizon's assertion of a counterclaim and possible recovery on such counterclaim are speculative."  *Id.* at 27.  That conclusion was based on a very substantial evidentiary record, including live testimony from expert witnesses on both sides of the issue.  The arbitrator considered that evidence and made a decision.

It is not the role of a reviewing court to second-guess the correctness of that decision.  *See, e.g.*, *Goldman v. Architectural Iron Co.*, 2001 WL 1705117, at *5 (S.D.N.Y. Jan. 15, 2001) ("This Court may not usurp the Arbitrator's discretion to give to the testimony he heard the weight he deemed appropriate.").  A federal court cannot vacate an arbitral award even

if it is firmly convinced that the arbitration panel made the wrong call on the law.  On the

contrary, the award "should be enforced, despite a court's disagreement with it on the merits, if

there is a <u>barely colorable justification</u> for the outcome reached."  *Banco de Seguros del Estado*,

344 F.3d at 260 (emphasis added; citation and quotation marks omitted).  Here, there is far more

than a "barely colorable justification" for the arbitrator's considered decision that the purported

conflict asserted by Verizon was hypothetical, speculative and unproven, and was not a sufficient

ground to deny class certification.

### 2.    The Arbitrator Did Not Manifestly Disregard Valid Choice Of Law Clauses

Verizon's petition alleges that the arbitrator ignored valid choice of law clauses in

manifest disregard of the law.  Petition ¶¶ 39-41.  But the Award contains nearly four pages of

analysis of choice of law issues.  *See* Award at 28-32.  Notably, the Award denies certification of

Counts II and IV precisely because the arbitrator applied the choice of law clauses and found

conflicts among the various states' consumer protection statutes.  *See* Award at 29 ("I agree with

Verizon's arguments and decline to certify a class on the basis of the Consumer Fraud Statute of

any particular state ….").

With respect to the common law claims (Counts III, IV, VI and VII) however, the

arbitrator found that common issues would predominate despite alleged variations among state

laws:

> Verizon argues that the common law of some states requires an
> evidentiary presentation of whether a liquidated damage clause like
> the $175 ETF was a reasonable approximation of actual loss at the
> time Verizon and its customer entered into the CSA.  Other
> jurisdictions require an analysis of whether the liquidated damage
> clause like the $175 ETF is a fair approximation of actual damage
> incurred by Verizon at the time of breach of the CSA, i.e., at the
> time of early termination.  Verizon argues further that some
> jurisdictions require an analysis of both times in addition to other
> factors.

> I do not find that the conflict regarding the time of analysis predominates over the common questions of law or fact … or should otherwise preclude certification of a class ….
>
> …  In the massive evidentiary submissions regarding potential damages to Verizon in the event of an early termination by a customer, Verizon has not established any difference depending upon whether the analysis is made as of the time of entry into the CSA or the time of breach.  The existence of any difference therefore seems entirely hypothetical and not outcome determinative.
>
> …  Given the flexibility of evidentiary standards in arbitration, this Tribunal would hear evidence of all factors at all times.  Given that formal rules of evidence need not apply at an arbitration hearing on the merits, evidence will be accepted in this arbitration relevant to both the time of entry into the CSA and the time of the early termination by a customer.

Award at 28-29, Bursor Decl. Exh. 1.

   In reviewing for manifest disregard of applicable law, the Court's inquiry goes no farther than determining if there is a "barely colorable justification for the outcome reached." *Banco de Seguros del Estado,* 344 F.3d at 260.  The arbitrator's discussion of the "massive evidentiary submissions" showing no difference in terms of the time of the analysis under various states' laws, and of the flexible evidentiary standards in arbitration that would allow for consideration of all factors relevant under the various laws in any event, are more than sufficient to support the arbitrator's conclusion that common issues predominate despite any alleged conflicts among state laws.

###    3. The Arbitrator Did Not Manifestly Disregard Applicable Law Concerning Representation Of Class B

   Verizon's petition alleges that the arbitrator manifestly disregarded federal law by certifying Class B (Subscriber Class) with Brown and Zobrist as its representatives, because they had terminated their services and were no longer current Verizon subscribers.  *See* Petition ¶¶ 42-45.  According to Verizon's petition, such certification was precluded by federal law

holding that "a class representative must be a member of a class at the time of certification." *Id.*

¶ 42. But in fact, federal law is contrary to Verizon's position. *See, e.g.*, *United States Parole*

*Board v. Geraghty*, 445 U.S. 388, 397-404 (1980) ("Some claims are so inherently transitory that

the trial court will not have even enough time to rule on a motion for class certification before

the proposed representative's individual interest expires.").

   Verizon's argument overlooks a significant body of law applicable to class

claims, such as those asserted on behalf of Class B, that are "capable of repetition yet evading

review." For these claims it is not "well settled," as Verizon contends, that "a class

representative must be a member of the class." The opposite is well settled. For class claims

"capable of repetition yet evading review," the class representative <u>need not</u> remain a class

member throughout the litigation. So long as the representative was a member of the class at one

time, she may continue to represent the class despite changed circumstances that might otherwise

moot her individual claim.

   This case falls squarely under the "capable of repetition yet evading review"

doctrine. The duration of Verizon's typical customer service agreement is 24 months. A

subscriber chafing at Verizon's ETF is nevertheless likely to escape within 24 months by

completing the term. A legal challenge to the ETF necessarily takes longer than 24 months –

much longer, as illustrated by this very case, which is now more than five years old. In this

situation the test for adequacy of representation does not require current class membership. It

depends instead on whether "vigorous advocacy can be assured through means other than the

traditional requirement of a 'personal stake in the outcome.'" *United States Parole Board v.*

*Geraghty*, 445 U.S. 388, 404 (1980); *see also Franks v. Bowman Transportation Co.*, 424 U.S.

747, 755 (1976) (looking to "whether, in the specific circumstance of the given case at the time it is before this Court, an adversary relationship sufficient to fulfill this function exists").

The arbitrator was presented with extensive briefing and argument on the "capable of repetition yet evading review" doctrine, and he invoked it in concluding that Brown was an adequate representative of Class B (Subscriber Class) despite the expiration of her two-year CSA in January 2005:

> Verizon argues that Brown is not an appropriate representative of the Subscriber Class B because she is not a current class member and has not been a class member since January 2005 when her two year plan expired.  To the contrary, I find that for purposes of representation on the common questions of law or fact set forth above, Brown is an adequate representative.  Brown was a subscriber during the class period such that the doctrine of "<u>capable of repetition yet evading review</u>" may well apply.  Brown responded to interrogatories and traveled from Florida to New York to provide a deposition in this arbitration.  No proof has been offered to demonstrate that Brown's interest would conflict with the interest of any member of Subscriber Class B and Brown remains a legitimate and adequate representative of Subscriber Class B.

Award at 13 (emphasis added), Bursor Decl. Exh. 1.

This finding clearly passes muster on review for manifest disregard of law.  The arbitrator did not disregard the requirement for a class representative.  On the contrary, the arbitrator applied the doctrine of "capable of repetition yet evading review" and, based on the evidence presented, found that both Brown and Zobrist were adequate representatives of Class B despite the expiration or termination of their CSAs.  Whether the arbitrator correctly applied the doctrine is not the issue.  So long as there is a "barely colorable justification for the outcome reached," *Banco de Seguros del Estado,* 344 F.3d at 260, the arbitrator's decision cannot be disturbed.  *See also McDaniel,* 196 F.Supp.2d at 351 (S.D.N.Y. 2002) ("[E]ven if … arbitrators' decision is based on a manifest error of [ ] law, a court must nevertheless confirm the award if

grounds for the decision can be inferred from the facts of the case."); *Hoeft v. MVL Group, Inc.,* 343 F.3d 57, 70-71 (2d Cir. 2003) (confirming award and stating that it "is of no consequence" that arbitrator's decision did not apply the "clear majority view" of a certain principle of accounting law); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 216, n.10 (2d Cir. 2002) (award would be confirmed regardless of the court's "serious reservations about the soundness of the arbitrator's reading" of the contract at issue); *St. Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199,* 116 F.3d 41, 44-45 (2d Cir. 1997) ("Internal inconsistencies in the [arbitrator's] opinion are not grounds to vacate the award notwithstanding the [movant's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion.").

### 4.    The Arbitrator Did Not Manifestly Disregard The Statute Of Limitations On The § 201 Claim

Verizon's petition argues that the arbitrator could not certify a class on Count I, under 47 U.S.C. § 201, because the class representatives' claims were barred by the two-year statute of limitations.  Petition ¶¶ 46-50.  The arbitrator did not manifestly disregard the statute of limitations.  He considered it and properly rejected Verizon's argument:

> Verizon … argues that none of the class representatives is appropriate because all their individual claims for violation of the Federal Communications Act, Section 201 are barred by the two year Statute of Limitations.  I disagree at this point in connection with a motion for class certification for the following reasons:
>
> (a)    It is by no means clear to me that the federal claims interposed in this arbitration do not relate back to the State Court claims which were timely filed by Brown and/or Zobrist.
>
> (b)    It is also unclear if the Statute of Limitations was tolled as a result of Schroer filing his informal complaint with the Federal Communications Commission.

    (c)     Schroer established in his testimony that he continued to have credit problems within two years prior to the time he was added as a class representative and Verizon consented to him being added as a class representative.

    (d)     The defense of statute of limitations may be asserted more fully at a trial on the merits of the claims in this arbitration rather than in connection with whether such defense makes individual claims atypical.

Award at 13-14, Bursor Decl. Exh. 1.

The arbitrator received evidence and briefing addressing the tolling of the two-year limitations period by virtue of the filing of the State Court actions. Although the state-court complaints filed in both the *Zobrist* and *Brown/Schroer* cases did not assert § 201 claims, they did assert claims challenging the validity of Verizon's ETF under very similar, if not substantively identical, state statutes and common law principles. It is well established that "for tolling to apply, claims do not have to be identical but only substantially similar to those brought in the original class action." *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 2004); *see also Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring) ("[W]hen a plaintiff invokes [the tolling rule], the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit.'"), *quoting American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 562 (1974) (Blackmun, J., concurring); *Jenson v. Allison-Williams Co.*, 1999 U.S. Dist. LEXIS 22170 at *14 (S.D. Cal. 1999) ("Subsequent decisions have embraced Justice Powell's reasoning and have held that an individual action need not be identical to the original class action; the individual claims need only share a factual and legal relationship such that the defendant would likely rely on the same evidence or witnesses to put on its defense."); *Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987) ("Notwithstanding the differences between the legal theories advanced by plaintiffs in the state court action and those advanced in

the present action, we are persuaded that the *American Pipe* doctrine has applicability to the present action. The functional purpose of a statute of limitations is to prevent 'stale' lawsuits, *i.e.*, suits after 'evidence has been lost, memories have faded, and witnesses have disappeared.'"), *quoting American Pipe*, 414 U.S. at 554 (1974); *Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989) (holding that filing of earlier complaint asserting federal claims tolled limitations period for state law causes of action, and stating: "This Court agrees with the reasoning of the Second Circuit in *Cullen* …, and finds that the *American Pipe* tolling is properly extended where as here the individual claims involve the same 'evidence, memories, and witnesses' as are involved in the putative class action.").

The claims asserted in the original *Brown* and *Zobrist* cases were essentially the same as the § 201(b) claim in every way that matters for the tolling rule.  "Since the alleged wrongful acts are the same, the relevant evidence, memories, and witnesses with regard to these facts are the same."  *Cullen*, 811 F. 2d at 720.  Although there may be some differences between the § 201 claim and the state law claims, whatever differences there may be are "not the sorts of elements that suggest that *American Pipe* tolling would be inconsistent with the functional goal of statutes of limitations" because they would require "no special preservation of witnesses or evidence."  *Cullen*, 811 F.2d at 721.  Here, as in *Cullen*, "[t]he state court complaint clearly challenged the conduct that is at issue …, and we would be hard pressed to conclude that that complaint was not sufficient to alert the defendants sued there to preserve the evidence regarding that conduct."  *Id.*

The arbitrator also received evidence and briefing concerning the tolling of the statute of limitations by Schroer's filing of a complaint at the FCC within two years after Verizon assessed the ETF charge.  Section 207 of the Communications Act provides that claims for violations of "the provisions of this Act," such as the § 201 claim at issue in this arbitration, can be asserted by "complaint to the Commission" or by bringing suit "in any district court of the

United States of competent jurisdiction." Schroer asserted his claims exactly as the statute directs, by filing a "complaint to the Commission." The fact that the Commission treated Schroer's complaint as an "informal complaint" is of no consequence. The statute, § 207, speaks of a "complaint to the Commission" and does not distinguish between formal and informal complaints. *See Stiles v. GTE Southwest Inc.*, 128 F.3d 904, 907 (5th Cir. 1997) ("§ 207 draws no distinction between formal and informal complaints and the fact that the FCC has decided to provide both formal and informal complaint proceedings does not alter the clear language of the statute."); *Mexiport, Inc. v. Frontier Communications Servs.*, 253 F.3d 573, 575 (11th Cir. 2001) ("[T]he language of 47 U.S.C. § 207 is unambiguous. … The statute does not distinguish between informal and formal complaints, and we will not read such a distinction into it.").

Respondents' counsel have found no case directly holding that that the filing of an informal complaint with the FCC tolls the statute of limitations for a § 201 claim. However, the language of § 207 and the holdings in both *Stiles* and *Mexiport* plainly dictate that conclusion. Section 207 provides that the claim can be asserted by filing a "complaint to the Commission." Schroer did that. And under *Stiles* and *Mexiport*, there is no difference between a formal or informal complaint, so far as § 207 is concerned. Thus an informal complaint must toll the statute of limitations just as effectively as a formal complaint or, indeed, a court action. Such a conclusion would also be in accord with authorities holding informal complaints to other regulatory bodies sufficient to toll statutes of limitations. *See, e.g.*, *United States v. Commercial National Bank of Peoria*, 874 F.2d 1165, 1176 (7th Cir. 1989) ("We believe that the taxpayers adequately demonstrated that they filed a timely informal refund claim which tolled the statute of limitations. The written component of the taxpayers' informal refund claim and the circumstances surrounding the negotiation of the pending estate tax litigation satisfied the

important notice requirements."); *Zysk v. FFE Minerals USA, Inc.*, 225 F. Supp.2d 482, 489 n.3 (E.D. Pa. 2001) (holding that, despite plaintiffs failure to file a formal EEOC Charge of Discrimination, the filing of a "verified charge on the 256th day" was sufficient to toll the statute of limitations because plaintiff "had every reason to believe that the 300-day statute of limitations was tolled"); *Deily v. Waste Management of Allentown,* 118 F. Supp.2d 539, 543 n.5 (E.D. Pa. 2000) (finding in favor of a plaintiff whose formal EEOC Charge of Discrimination was not signed until 304 days after the last date of discrimination because the plaintiff filed an EEOC Intake Questionnaire and an Allegation of Employment Discrimination form on day 209); *Indiana Bell Tel. Co. v. Indiana Utility Regulatory Commission*, 855 N.E.2d 357, 365 (Ind. Ct. App. 2006) (holding a "proceeding" filed with the IURC tolled the 2-year statute of limitations under the Communications Act for a claim for refunds under the payphone provisions of the Act).

   The arbitrator considered these arguments and determined that it was "unclear" if the claims related back to the state court filings or it the statute had been tolled by the filing of Schroer's FCC complaint.  *See* Award at 13-14, Bursor Decl. Exh. 1.  The arbitrator's conclusion cannot be disturbed on review for manifest disregard of law, because on this record the Court cannot find that "(1) the arbitrator[] knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator[] was well defined, explicit, and clearly applicable to the case." *Greenberg,* 220 F.3d at 28; *Banco De Seguros*, 230 F. Supp.2d at 371 (same).  Verizon did not meet its burden to establish the affirmative defense of statute of limitations.  On the record presented to him, the arbitrator was unable to determine if the § 201 claim related back to earlier filings, such that the application of the statute of limitations was "unclear."  Award at 14, Bursor Decl. Exh. 1.  Nonetheless, the arbitrator allowed Verizon a

second bite at the apple, by allowing that Verizon may assert the defense "more fully at a trial on the merits." *Id.*

### 5. The Arbitrator Did Not Manifestly Disregard Federal Law Concerning The Predominance Requirement

Lastly, Verizon's petition alleges in the most generic of terms that the "arbitrator manifestly disregarded federal law barring class certification where individual issues predominate." Petition ¶¶ 51-52. But the predominance requirement for class certification is hardly unique to "federal law." The predominance requirement is incorporated into AAA's Supplementary Rule 4(b), quoted at page 8 of the Award, which requires, as a prerequisite to class certification, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The Award contains nearly 8 pages of analysis of the predominance requirement under Rule 4(b). *See* Award at 23-31, Bursor Decl. Exh. 1. Verizon's stated disagreement with the arbitrator's findings of predominance, as stated in ¶¶ 51-52 of the Petition in bare, vague and conclusory terms, cannot possibly justify vacatur of the Award under the manifest disregard of law standard. *See Wallace,* 378 F.3d at 190 ("[The] manifest disregard of law doctrine [applies] ... only in the most egregious instances of misapplication of legal principles."); *Home Ins. Co.*, 127 F. Supp.2d at 487 ("[A] party seeking to vacate an award bears the burden of providing the reviewing court with a record sufficient to permit the exercise of informed judgment in accordance with the applicable scope of review.").

## Conclusion

For the foregoing reasons the Court should dismiss the petition, or in the

alternative, should summarily deny the petition.

Dated: January 29, 2008,

By _____

Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY 10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)
scott@bursor.com

*Lead Counsel for Claimants-Respondents*
*Patricia Brown, Harold P. Schroer, and*
*Dawn M. Zobrist*

Bradley M. Lakin
Daniel J. Cohen
THE LAKIN LAW FIRM, P.C.
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095-1127
Ph: 618.254.1127
danc@lakinlaw.com

David Pastor
GILMAN AND PASTOR LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
(617) 742-9700 (tel)
(617) 742-9701 (fax)
dpastor@gilmanpastor.com

Phillip A. Bock
Robert M. Hatch
DIAB & BOCK, LLC
20 N. Wacker Drive, Suite 1741
Chicago, IL 60606
Telephone: (312) 334-1970
phil@diabbockllc.com

Nadeem Faruqi
Adam R. Gonnelli
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY 10016
(212) 983-9330 (tel)
(212) 983-9331 (fax)
nfaruqi@faruqilaw.com
agonnelli@faruqilaw.com

Jayne A. Goldstein
MAGER & GOLDSTEIN, LLP
1640 Town Center Circle, Suite 216
Weston, FL 33326
(954) 515-0123 (tel)
(954) 515-0124 (fax)
jgoldstein@magergoldstein.com

> *Additional Counsel for Claimants-
> Respondents Patricia Brown, Harold
> P. Schroer, and Dawn M. Zobrist*

## CERTIFICATE OF SERVICE

I, SCOTT A. BURSOR, hereby certify that a true and correct copy of the foregoing document has been served by hand on counsel for Petitioners Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc., Jeffrey S. Jacobson, Debevoise & Plimpton LLP, 919 third Avenue, New York, NY 10022-3916, this 29th day of January, 2008.

By _____
Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY 10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
and VERIZON COMMUNICATIONS INC.,

Petitioners,

-against-

PATRICIA BROWN, HAROLD P. SCHROER, and
DAWN M. ZOBRIST, on an individual basis and on
behalf of others similarly situated,

Respondents.

No. 08 CV 00427 (LAK)

---

## DECLARATION OF SCOTT A. BURSOR

I, SCOTT A. BURSOR, declare as follows:

1.      I am an attorney admitted to practice before this court, and I am counsel for the Respondents in this action. I submit this declaration in support of Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition.

2.      A true and correct copy of the 1/10/08 Class Determination Award in *Brown v. Cellco Partnership d/b/a Verizon Wireless*, AAA Consolidated Case No. 11 494 01274 05 and 11 494 0032 05 is annexed hereto as Exhibit 1.

3.      A true and correct copy of the American Arbitration Association Supplemental Rules for Class Arbitrations is annexed hereto as Exhibit 2.

4.      A true and correct copy of the arbitration agreement pursuant to which this matter was referred to arbitration, Verizon Wireless Customer Agreement, Terms And Conditions, is annexed hereto as Exhibit 3.

1

5.      A true and correct copy of the 9/16/05 Stipulated Partial Final Award –

Clause Construction in *Brown v. Cellco Partnership d/b/a Verizon Wireless*, AAA Consolidated

Case No. 11 494 01274 05, is annexed hereto as Exhibit 4.

6.      A true and correct copy of a 7/25/05 Letter from K. Myles to Hon.

Elizabeth T. Maas is annexed hereto as Exhibit 5.

7.      A true and correct copy of Claimants' Motion To Correct, Alter Or

Amend The Class Determination Award pending before the Arbitration Tribunal is attached

hereto as Exhibit 6.

I declare under penalty of perjury that the foregoing is true and correct.


Dated January 29, 2008.


Scott A. Bursor

## CERTIFICATE OF SERVICE

I, SCOTT A. BURSOR, hereby certify that a true and correct copy of the

foregoing document has been served by hand on counsel for Petitioners Cellco Partnership d/b/a

Verizon Wireless and Verizon Communications Inc., Jeffrey S. Jacobson, Debevoise & Plimpton

LLP, 919 third Avenue, New York, NY 10022-3916, this 29th day of January, 2008.

By_____

Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)

3

**EXHIBIT 1**

AMERICAN ARBITRATION ASSOCIATION
NORTHEAST CASE MANAGEMENT CENTER
-------------------------------------------------------------------x
Patricia Brown and Harold P. Schroer, on
an individual basis, and also on a c1asswide
basis on behalf of others similarly situated,

               Claimants,

 -against-

Cellco Partnership d/b/a Verizon
Wireless,

               Respondent.
-------------------------------------------------------------------x
Dawn M. Zobrist, individually and on behalf of
others similarly situated,

               Claimant,

 -against-

Verizon Wireless, Cellco Partnership, and
Verizon Communications,

               Respondents.
-------------------------------------------------------------------x

**Consolidated Case No.
11 4940127405 and
11 494 0032 05**

## <u>CLASS</u> <u>DETERMINATION</u> <u>AWARD</u>

      For reasons set forth below, Claimants' application for class certification pursuant to Rule 4 of the American Arbitration Association ("AAA") Supplementary Rules for Class Arbitrations (the "Supplementary Rules") is granted regarding Counts I, III, V, VI and VII of Claimants' Consolidated Demand for Arbitration (the "Consolidated Demand").

      I FIND that Claimants have complied with the criteria for class certification for Counts I, III, V, VI and VII of the Consolidated Demand as required by Supplementary

Rule 4.  My decision is also motivated by my conclusion that as a matter of equity and

fairness, millions of class members are entitled to an adjudication of the central

common questions of fact or law in this arbitration related to whether the $175.00 Early

Termination Fee ("ETF") imposed by Respondents Cellco Partnership d/b/a Verizon

Wireless, Verizon Wireless, Cellco Partnership, and Verizon Communications

(collectively referred to as "Verizon") is based upon an unenforceable liquidated

damage clause.

## PRIOR PROCEEDINGS

Claimants Patricia Brown ("Brown") and Dawn Zobrist ("Zobrist") commenced

separate litigations in Florida and Illinois, respectively, against Verizon.  Following

motions by Verizon, those litigations were ultimately stayed and, the claims proceeded

in two arbitrations commenced separately by Brown and Zobrist.  The transfers to

arbitration were premised upon arbitration clauses set forth in each customer's entry

into or renewal of Verizon's standard Customer Service Agreement ("CSA").  Both

arbitrations were administered by the American Arbitration Association pursuant to the

Supplementary Rules.  Thereafter, with the consent of Verizon, Claimant Harold

Schroer ("Schroer") joined as a class representative claimant in the arbitration

commenced by Brown.  Although Verizon had argued in State Court that the arbitration

clause in the CSA precluded class arbitration, Verizon did not object to Claimants'

application for Supplementary Rule 3 clause construction that Brown's arbitration clause

permitted the Brown arbitration pending before me to proceed on behalf of a class.

Thereafter, Verizon moved and the Arbitrator presiding over the Zobrist

arbitration granted Verizon's application to consolidate the Zobrist arbitration with the

2

arbitration pending before me if I would accept the same. Verizon then moved before me to accept such consolidation, but Brown vigorously opposed the same. By Order dated March 20, 2006, I granted Verizon's motion to consolidate the two arbitrations.

Thereafter, amended pleadings were served (see below) and discovery proceeded regarding class certification. Many disputes regarding discovery and related administrative matters required resolution by this Tribunal. In all, 14 Procedural Orders were issued often following applications by either Claimants or Verizon or both.

## THE CONSOLIDATED DEMAND

Pursuant to an Order of this Tribunal, on or about October 27, 2006 Claimants filed their First Consolidated Demand for Class Arbitration (the "Consolidated Demand"). In the Consolidated Demand, Claimants sought class treatment for adjudication of the legality and/or enforceability of the clause in all 14 versions of Verizon's CSA in use from November 1, 2000 through November 16, 2006, which clause imposed a $175.00 ETF upon any customer who terminated his or her cell phone CSA before the end of its term. Claimants sought relief pursuant to the Federal Communications Act, 47 U.S.C. Section 201 et. seq., the New Jersey Consumer Fraud Act, N.J. Rev. Stat., Section 56:8-1 et. seq. and the common and statutory law of various states on behalf of the three classes. The first class was subsequently amended, such that the classes were essentially as follows:

Class A - Payer Class: All persons in the United States who were charged an early termination fee under a Verizon Wireless Customer Service Contract from November 1, 2000 through November 16, 2006, excluding persons with a California area code and California billing address for such

account.

Class B - Subscriber Class: All persons in the United States who were

parties to a contract for a wireless telephone personal account with

Verizon that included a provision for an early termination fee from

November 1, 2000 through November 16, 2006, excluding persons with a

California area code and California billing address for such account.

Class C - This class related to locked handset claims which have been

settled such that the application for certification was withdrawn.

The Consolidated Demand alleged the following regarding the individual putative

class representatives:

(a) Brown resided in Florida and in or about January, 2003 entered into a 24

month CSA with Verizon which included a $175.00 ETF.  Subsequent submissions

established that after January 2, 2005 Brown did not continue to be a Verizon

subscriber.

(b) Schroer was a New York resident who subscribed to Verizon's service in May

2001 and thereafter renewed and/or changed his Verizon CSA.  The last renewal was in

October 2002, which Verizon claims resulted in a 24 month CSA ending in October

2004.  Schroer terminated his Verizon CSA and switched to another carrier, causing

Verizon to charge him a $175.00 ETF.  Schroer disputed the fee, refused to pay it and

filed a complaint letter with the Federal Communications Commission (see below).

Verizon reported Schroer's non-payment to credit reporting agencies and, according to

testimony in this proceeding by Schroer, these reports caused him to be denied credit.

He specifically testified to one instance when he sought to make a purchase from Sears

4

and was denied credit. Verizon contends that following complaints by Schroer, Verizon amended its reports to credit bureau agencies so that there was no further adverse impact on Schroer's credit.

(c) Zobrist is an Illinois resident who in July 2001 entered into a two year CSA with Verizon. Zobrist cancelled her CSA in March 2002 and was charged a $175.00 ETF which she paid under protest. The record subsequently established that Zobrist terminated her service because of allegations of poor service by Verizon.

Verizon is a group of Delaware entities with a principal place of business in New Jersey. Some of the 14 CSAs containing the clause providing for the $175.00 ETF were actually in agreements drafted by companies acquired by Verizon during or prior to the period November 1, 2000 to November 16, 2006.

The Consolidated Demand alleged and record established that Brown, Schroer and Zobrist all were party to CSAs with Verizon which stated in part as follows:

> "IF YOU CHOOSE TO END YOUR SERVICE BEFORE YOU BECOME A MONTH-TO-MONTH CUSTOMER (OR IF WE TERMINATE IT EARLY FOR GOOD CAUSE), YOU MUST PAY UP TO $175 PER WIRELESS PHONE NUMBER AS AN EARLY TERMINATION FEE."

Although the ETF clause stated "you must pay up to $175.00" (emphasis added), the ETF as applied by Verizon did not vary during the term of the CSA. A Verizon customer who terminated the CSA before the end of its term (generally 2 years) was required to pay the full $175.00 if the CSA was cancelled one day after the CSA went into effect or one day before the CSA was scheduled to expire during the two year term. It is undisputed that all 14 versions of Verizon's CSAs during the period November 1,2000 to November 16, 2006 contained a $175.00 ETF. On November 11,2006 Verizon

5

independently changed the $175.00 flat ETF to a staggered ETF in 6 month increments

depending upon the time of a customer's early termination.

The Consolidated Demand alleged that the $175.00 ETF violated the following:

Count I alleged that the $175.00 ETF violated the Federal Communications Act,

47 U.S.C. Section 201, et. seq. and particularly, that the $175.00 was unjust,

unreasonable and unlawful under 47 U.S.C. Section 201 (b).

Count II alleged that the $175.00 ETF violated the New Jersey Consumer Fraud

Act, N.J. Rev. Stat. Section 56:8-1, et. seq. which provided, in part, as follows:

"The act, use or employment by any person of any unconscionable
commercial practice, deception, fraud, false pretense, false promise,
misrepresentation, or the knowing concealment, suppression, or omission
of any material fact...whether or not any person has in fact been misled,
deceived or damaged thereby, is declared to be an unlawful practice."

Count III alleged that the $175.00 ETF violated New Jersey common law

regarding liquidated damages because the amount of the ETF was not reasonable in

light of the anticipated or actual loss caused by the early termination, because the

parties did not fix the $175.00 ETF as a reasonable forecast of just compensation to

Verizon for early termination, because the harm caused by early termination of the CSA

by a customer was not incapable or very difficult of accurate estimation, and because

the $175.00 bore no reasonable relation to any actual damages.

Count IV alleged that the $175.00 ETF was "unconscionable, unfair, deceptive,

misleading and an unlawful practice" under Consumer Protection Statutes in Florida,

Illinois, Massachusetts, Michigan, Missouri, New York, New Jersey, North Carolina,

Tennessee and Washington.

Count V alleged that Verizon will be unjustly enriched at the expense of the

subscribers who were charged the $175.00 ETF by Verizon during the putative class period of November 1, 2000 to November 16, 2006.

Count VI alleged that Verizon improperly charged the $175.00 ETF, and must pay over and remit those sums.

Count VII on behalf of the Subscriber Class B sought a declaration that the $175.00 ETF provisions in the CSAs were unenforceable penalties.

The remaining counts related to the settled handset locking claims.  Verizon's answer consisted of a series of denials and defenses including allegations that Verizon's actual damages on early termination of a CSA exceed $175.00 per customer such that the $175.00 ETF is reasonable and enforceable.

## CLASS CERTIFICATION

Supplementary Rule 4 sets forth the requirements for class certification, and states as follows:

"4.  Class Certification.

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration.  For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration.  In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described.  The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

7

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representatives(s) and each of the other class members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration."

Supplementary Rule 5 also sets forth certain requirements regarding a Class

Determination Award, but, at the hearing, the parties stipulated to waive for now

Supplementary Rule 5(b), particularly the requirement of attaching of a copy of the

proposed Notice of Class Determination to the Class Determination Award together with

8

a statement of the specifics of intended delivery of such Notice to putative class members.

In addition to an evidentiary hearing and day-long oral argument, the parties have made extensive submissions in support of and in opposition to Claimants' application for class certification. In all, the parties have submitted hundreds of pages of legal argument in 12 separate briefs and thousands of pages of affidavits, exhibits, and experts' reports. In reaching my conclusion to grant, in part, Claimants' application for class certification, I have considered the requirements of Supplementary Rule 4 as follows:

A. <u>Numerosity</u> - Supplementary Rule 4(a)(1) - Whether the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable. Verizon does not contest that this requirement is met. The Payer Class A and the Subscriber Class B each contain millions of Verizon subscribers from November 1, 2000 through November 11, 2006. Unquestionably, joinder of separate arbitrations on behalf of all members is totally impracticable.

B. <u>Common Questions of Law or Fact</u> - Rule 4(a)(2) - Whether there are questions of law or fact common to the class. There are unquestionably overriding common questions of law or fact related to the following: "Whether the $175.00 ETF was unlawful, unfair, void or unenforceable". Additional related common questions of law or fact are as follows:

(a) Whether the $175.00 ETF is reasonable in light of Verizon's anticipated and/or actual loss caused by the early termination of a CSA by a Verizon customer;

(b) Whether the $175.00 ETF was fixed as liquidated damages as a result of a

9

reasonable forecast of just compensation for damages to Verizon as a result of early

termination of a CSA by a Verizon customer;

(c) Whether the harm caused to Verizon by early termination was capable or very

difficult of accurate estimation; and

(d) Whether the $175.00 ETF bore a reasonable relation to the actual damages

incurred by Verizon as a result of an early termination.

Verizon acknowledges that the above common questions of law or fact exist and

the parties have presented 9 expert reports and extensive testimony regarding these

common questions.  However, regarding possible class certification, Verizon argues

that these common questions are not predominant.  (See below Section G).

C.  Typicality - Supplementary Rule 4(a)(3) - Whether the claims or defenses of

the representative parties are typical of the claims or defenses of the class.  Verizon

argues that the claims or defenses regarding the three named representatives are not

typical of the claims and defenses of the class on two levels:

(a) Verizon argues that individual issues regarding each representative make that

claimant unsuitable as a class representative, and

(b) Verizon argues that all class representatives are subject to Statute of

Limitations defenses and therefore, they are not adequate representatives.  I reject

Verizon's arguments regarding individual issues pertinent to the three named

representatives for the following reasons:

1.  Verizon claims that Schroer's claims are not typical of the Payer Class A

because he never paid the $175.00 ETF and Verizon thereafter waived it.  Therefore,

Verizon claims that Schroer has no monetary claim unlike other putative class

10

members.  However, Class A is defined to cover subscribers who were "charged" the $175.00 ETF, which includes but is not limited to subscribers who "paid" the $175.00 ETF.  Clearly, a customer could be harmed by a charge, even though he did not pay it.  Here, it is undisputed that Schroer, like other putative class members, was charged a $175.00 ETF.  His testimony was credible that he suffered from adverse credit as a result of the $175.00 ETF charge by Verizon and Verizon's subsequent report to credit agencies.  Schroer's failure to make actual payment does not therefore make him atypical.  Although the precise harm to him may be somewhat different than the harm to most putative class members who paid the $175.00 ETF, it does not make Schroer an unsuitable class representative.  It also does not alter the common questions of law or fact to be determined in this matter, which clearly affected Schroer.

2.  Following the evidentiary hearing regarding class certification, Verizon argued that Schroer is not an appropriate class representative because he filed a complaint with the Federal Trade Commission regarding the $175.00 ETF.  Verizon claimed that the law required Schroer to elect his remedies such that he is now precluded from proceeding in arbitration as a representative because he elected to proceed before the Federal Trade Commission.  However, it is unclear if the filing of an informal letter complaint with the Federal Trade Commission constituted the required statutory election of remedies.  Additionally, Verizon has not established that any such election of remedies applies in an arbitration context.  Moreover, it would appear to be manifestly unfair to deprive Schroer of his right to adjudicate his claims in this arbitration because of a letter he sent to the Federal Trade Commission, because the Federal Trade Commission took no action and did nothing more that refer him to the New York State

11

Attorney General's Office.

3.  Verizon claims that Zobrist is an inappropriate representative because she alleged that she terminated her Verizon CSA early as a result of poor service.  Verizon claims that if Zobrist can establish such poor service, she might not be subject to the $175.00 ETF.  However, the Consolidated Demand did not allege that Zobrist sought any adjudication based upon any allegations of poor service.  Rather, Zobrist alleged that the $175.00 ETF was unreasonable and/or unenforceable based upon the reasons set forth above, which are typical of the claims of other members of the Class.

4.  Verizon argues that Zobrist is an inappropriate representative because she paid the $175.00 ETF and therefore is subject to the voluntary payment doctrine.  See Harris v. Chart One, 362 Ill. App. 3d 878 (2005), Merchants Mut. Ins. Group v. Travelers Ins. Co., 806 N.Y.S.2d 813 (2005). Verizon also argues that the voluntary payment doctrine particularly applies in connection with adjudicating the validity of a liquidated damage clause.  The application of this doctrine, however, to bar Zobrist from pursuing her claims in this arbitration would appear to be grossly inequitable.  As noted above, Verizon claims that Schroer is an inappropriate representative of the Payer Class A because he did not pay the $175.00 ETF.  At the very same time Verizon claims that Zobrist is not an appropriate representative of the Payer Class A because she did pay the $175.00 ETF.  This means that according to Verizon, no one is ever an appropriate class representative because everyone of the millions of Verizon customers who were charged the $175.00 ETF either paid it or did not pay it.  Such a result is inequitable and makes no sense.

Additionally, I find that the voluntary payment doctrine is inapplicable for the

12

following reasons:

(a) As noted, the application of the doctrine would make it impossible for there ever to be an appropriate class representative of Payer Class A.

(b) Zobrist made her payment "under protest" thereby protecting her credit rating and reserving her rights to take action to recover all or part of the $175.00 ETF.

(c) There are potential exceptions to this voluntary payment doctrine which may be applicable here.

(d) The weight of authority appears to be that issues related to the voluntary payment doctrine do not defeat class certification. Miller v. Optimum Choice, Inc., 2006 WL 2130640 at 7(0. Ct., Maryland, 2006); Sutton Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 875 So. 2d 1062 (La. App. Ct., 2004); Hill v. Galaxy Telecom L.P., 184 F.RD. 82 (N.D. Miss., 1999).

5. Verizon argues that Brown is not an appropriate representative of the Subscriber Class B because she is not a current class member and has not been a class member since January 2005 when her two year plan expired. To the contrary, I find that for purposes of representation on the common questions of law or fact set forth above, Brown is an adequate representative. Brown was a subscriber during the class period such that the doctrine of "capable of repetition yet evading review" may well apply. Brown responded to interrogatories and traveled from Florida to New York to provide a deposition in this arbitration. No proof has been offered to demonstrate that Brown's interest would conflict with the interest of any member of Subscriber Class B and Brown remains a legitimate and adequate representative of Subscriber Class B.

Verizon also argues that none of the class representatives is appropriate

13

because all  their individual claims for violation of Federal Communications Act, Section 201 are barred by a two year Statute of Limitations.  I disagree at this point in connection with a motion for class certification for the following reasons:

(a) It is by no means clear to me that the federal claims interposed in this arbitration do not relate back to the State Court claims which were timely filed by Brown and/or Zobrist.

(b) It is also unclear if the Statute of Limitations was tolled as a result of Schroer filing his informal complaint with the Federal Communications Commission.

(c) Schroer established in his testimony that he continued to have credit problems within two years prior to the time he was added as a class representative and Verizon consented to him being added as a class representative.

(d) The defense of Statute of Limitations may be asserted more fully at a trial on the merits of the claims in this arbitration rather than in connection with whether such defense makes individual claimants atypical.

In sum, based upon the above, I Find that Brown, Schroer and Zobrist have claims which are typical of the claims and defenses for both Payer Class A and Subscriber Class B.

D.  Representative Parties - Supplementary Rule 4(a)(4) - Whether the representative parties will fairly and adequately protect the interests of the class. Except for the arguments set forth above, Verizon does not seriously object in this regard.  Moreover, based upon my own analysis of the credibility and testimony of Schroer, I believe that the representative parties will fairly and adequately protect the interests of both Payer Class A and Subscriber Class B.

14

E.  <u>Adequacy</u> of <u>Counsel</u> - Supplementary Rule 4(a)(5) - Whether counsel selected to represent the class will fairly and adequately protect the interests of the class.  Verizon does not seriously contest this point.  Moreover, based upon my review of the abilities of Claimants' counsel to date, I have no doubt that such counsel will fairly and adequately protect the interests of the classes.

F.  <u>Similarity</u> of <u>Arbitration</u> <u>Agreement</u> - Supplementary Rule 4(a)(6) - Whether each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.  Verizon argues strenuously that a class should not be certified for a variety of reasons based upon this requirement.  First, Verizon argues that certain of its customers were party to CSAs which did not contain arbitration clauses and such subscribers should therefore not be included in either a Payer Class A or Subscriber Class B.  I agree.  Supplementary Rule 4(a)(6) clearly requires each member of a class to have entered into an arbitration agreement.  Without such an agreement, there was no consent by either the customer or Verizon to be subject to an arbitration proceeding.  A subscriber who is party to a CSA which did not contain an arbitration clause can therefore not be included in either class.

Second, although all 14 CSAs contain arbitration clauses calling for administration of the arbitrations by the AAA, Verizon argues that the arbitration clauses in some of the 14 CSAs require application of the AAA's Commercial Rules while other arbitration clauses in other CSAs require application of the AAA's Wireless Rules.  Verizon further argues that the Commercial Rules and Wireless Rules have differences in connection with arbitrator selection.  However, Verizon has offered no proof that it

15

made any such objections at the time of arbitrator selection or that there was non-compliance with either set of rules. Additionally, regardless of whether the Commercial Rules or Wireless Rules apply, it is clear that the Supplementary Rules will substantially govern the conduct of this proceeding. Verizon has also not established any other significant difference between the Commercial Rules and Wireless Rules which would have any impact upon the outcome of this matter.

Third, Verizon argues that many of the CSAs used prior to July 2002 contained provisions waiving class arbitrations. Verizon also claims that since January 2005 the following clauses were inserted in all CSAs:

> "(3) YOU CAN OBTAIN PROCEDURES, RULES, AND FEE INFORMATION FROM THE AAA (VVWW.ADR.ORG), the BBB (VVWW.BBB.ORG), OR FROM US. THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF THOSE PROCEDURES OR RULES WOULD.
>
> (6) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) ABOVE IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY."

Verizon argues that CSAs which contain a class arbitration waiver clause such as Section (3) above and CSAs which contain a termination of arbitral jurisdiction clause such as Section (6) above are not substantially similar to CSAs which do not contain such clauses, such as those entered into by Claimants. Claimants, however, assert persuasively that Verizon should be estopped from arguing that CSAs which contain arbitration agreements with explicit class arbitration waivers are not substantially similar to the arbitration agreements of the three class representatives.

In prior Court proceedings, Verizon argued that the arbitration clauses in

16

Claimants' CSAs precluded class arbitration.  Therefore, arbitration clauses with explicit class arbitration waivers can not be substantially dissimilar from the clauses in Claimants' arbitration agreements.  In fact, even in the Brown arbitration (prior to consolidation) Verizon refused to stipulate that the clauses at issue permitted this arbitration to proceed on behalf of a class.  Rather, Verizon did not object (rather than consent) to Claimants' application for Rule 3 Clause Construction in order to  maintain its argument that Claimants' arbitration clauses prohibited class arbitrations.

It is not equitable for Verizon to take different positions with respect to the various arbitration clauses at issue.  If Verizon previously argued and still maintains that Claimants' arbitration clauses prohibit class arbitrations, then the pre-July 2002 arbitration clauses and the post-January 2005 arbitration clauses are substantially similar.

Although the inquiry under Supplemental Rule 4(a)(6) could end with the above analysis, there may remain some question about whether it is appropriate to certify classes in an arbitration and include class members who entered into CSAs which have clauses explicitly precluding class arbitration and then further stating that if such prohibition is deemed unenforceable, the agreement to arbitrate will "not apply". therefore have considered and conclude that Verizon's class arbitration waiver and the related attempt by Verizon to terminate arbitral jurisdiction depending upon the outcome of a challenge to the class arbitration waiver are both unenforceable.  Such clauses are unenforceable provisions in contracts of adhesion which are not reasonably foreseeable by the weaker party and/or are unconscionable.

Before further analysis of the specific clauses at issue, Verizon argues that this

17

Tribunal does not have authority to consider the enforceability of the class arbitration

waiver and related termination of arbitral jurisdiction clauses because questions

regarding unconscionability of class arbitration waivers can only be determined by

Courts. Verizon specifically refers to caselaw holding that unconscionability is a

gateway issue to be decided by a Court and not an arbitrator. However, the Brown and

Schroer CSAs specifically state that "Only an arbitrator can decide whether an issue is

arbitrable". (See Exhibit C612). As such, the parties' specific agreements provide

authority for the arbitrator to decide this issue. Additionally, Verizon's argument is that

CSAs containing class arbitration waivers and related termination of arbitral jurisdiction

clauses are not substantially similar to the clauses of the three class representatives

and other class members in connection with a ruling pursuant to Supplementary Rule

4(a)(6). Clearly, decisions regarding the application of Supplementary Rule 4(a)(6)

must be made by the arbitrator.

Additionally, the record establishes that Verizon stipulated to a Court that the

arbitrator should decide "threshold" questions. When Verizon moved in Florida State

Court to stay this arbitration on the ground that the Brown/Schroer arbitration agreement

contained a class action waiver, Verizon argued that the Florida State Court and not the

arbitrator was required to decide this issue. Verizon thereafter withdrew this argument

and advised the Florida State Court as follows:

> "..Verizon Wireless wishes to withdraw its argument to this Court that the
> 'on an individual basis' language expressly prohibits class action
> arbitrations and thus must be decided, as a 'gatekeeping' matter, by this
> Court. Rather, Verizon Wireless agrees that the question whether the
> contract language permits class arbitrations, as well as the other threshold
> questions that Verizon has presented to this Court, may be decided by the
> arbitrator." See Exhibit C628, letter of Verizon's counsel dated July 25,

18

2005.

Verizon thus advised the Florida State Court in writing that the arbitrator and not a Court has authority to decide "threshold questions" including those related to the validity of the class arbitration waiver clause. Verizon should not be permitted to argue to the Florida State Court that only the arbitrator will adjudicate such matters and then argue to the arbitrator that only a Court should adjudicate such matters.

There is little doubt that the CSAs are contracts of adhesion. Such contracts are entirely drafted by Verizon, are presented to customers on a "take it or leave it" basis, and afford no room for negotiation on any of their terms. The law appears to be well settled that a contract of adhesion is enforceable unless the particular clauses at issue are not within the reasonable foreseeability of the weaker, non-negotiating, non-drafting party or the clauses in question are unconscionable.

In this case, there are two clauses of concern, the class arbitration waiver clause and the related termination of arbitral jurisdiction clause. As a matter of equity, I find that both clauses are not within the reasonable expectations of the weaker party, the non-negotiating consumer. In this case, Verizon argued successfully to a number of Courts that the arbitration clauses were enforceable and the disputes should be transferred from Courts to arbitral forums. As such, the class representatives were precluded from seeking certification of a class in the litigation forum. Once in arbitration, Verizon opposed certification of a class based upon the class arbitration waiver clause. Thus, Verizon effectively takes the position that a consumer can never bring a class action against Verizon either in litigation or arbitration.

It can not be seriously argued that a consumer entering into a cell phone contract

19

would reasonably expect that by doing so, he or she is giving up his or her right to participate in a class action.  This is especially so for a dispute regarding a $175.00 **ETF.**  Even at this certification stage, where full adjudication of the merits has not been developed, each side has produced extensive and expensive reports of experts and significant legal argument regarding its claims and defenses.  No reasonable consumer would be expected in a non-class action context to spend enough to seek an adjudication of the validity of the $175.00 **ETF.**

Additionally, in this case, Verizon argues that a consumer will reasonably expect that the adjudication of his or her claim will shift from Court to arbitration, but then, after more than two years of arbitral proceedings, the adjudication of his or her claim will shift back from arbitration to Court or some other forum depending upon the decision of a factfinder regarding the validity of the class arbitration waiver clause.  This makes little sense and is not credible.

I also find that for the reasons reflected in authorities such as Muhammad v. County Bank of Rehoboth Beach 189 N.J. 1 (N.J. 2006) and Discover Card v. Superior Court 36 Cal. 4th 148 (2005), the class arbitration waiver clause is both sUbstantively and procedurally unconscionable.  As in Muhummad, the CSA is a contract of adhesion, where the consumer has virtually no bargaining power and a relatively small amount is at issue such that it would be virtually impossible to attract competent counsel to advance the cause of action unless it could proceed as a class action.  As the Muhummad Court concluded:

> "We hold, therefore, that the presence of the class-arbitration waiver in Muhammad's consumer arbitration agreement renders that agreement unconscionable.  As a matter of generally applicable state contract law, it

20

> was unconscionable for defendants to deprive Muhammad of the
> mechanism of a class-wide action, whether in arbitration or in court
> litigation."

I also find unconscionable Verizon's clause attempting to eliminate the jurisdiction of the arbitral forum depending upon my decision regarding the enforceability of the class arbitration waiver clause, for the following reasons:

(a) If the class arbitration waiver clause is unconscionable, it logically follows that any consequences of such a holding adverse to the consumer are also unconscionable.

(b) When the Brown and Zobrist matters were originally in Court, Verizon could have then sought an adjudication regarding the enforceability of both the class arbitration waiver clause and the related termination of arbitral jurisdiction clause. Instead Verizon asked to have both matters transferred to arbitration and stipulated that "threshold matters" should be decided by the arbitrator. It is inequitable for Verizon to thereafter argue that the arbitral forum no longer has jurisdiction and the claims must be transferred back to Court or some other forum.

(c) It is also inequitable for Verizon to have participated without objection in 2 arbitrations with 14 procedural orders over 2 years and then claim that the arbitral forum lacks jurisdiction.

(d) Verizon moved and succeeded in obtaining arbitral decisions leading to consolidation of the two arbitrations. This resulted in extensive negotiations and ultimately an order regarding designation of lead counsel for Claimants and new consolidated pleadings. Aside from the waste of effort and expense, if arbitral jurisdiction is terminated, it is totally unclear as to what would happen to the ETF claims of consumers whose CSAs contain the termination of arbitral jurisdiction clause. Would

21

the claims become unconsolidated?  How is this accomplished?  Are the claims referred to Court(s)?  Which Court(s)? The procedural consequences for the affected consumer are untenable.

(e)  It is unconscionable to make the jurisdiction of an arbitral forum dependent upon the arbitrator's determination regarding the merits of a claim or defense.  If Verizon's termination of arbitral jurisdiction clause is enforceable, a draftsman of an arbitration clause (especially in a contract of adhesion) could provide that arbitration will "not apply" if the arbitrator hears certain testimony, receives certain documentary evidence, grants certain relief, or decides any issue or list of issues contrary to the position of the drafting party.  It is unconscionable for the draftsman of a contract of adhesion to threaten an arbitral tribunal with the argument that it will no longer have jurisdiction unless it rules a certain way regarding a merits issue.

(f) Verizon's termination of jurisdiction clause is ambiguous to the consumer. The clause states that "If for some reason the prohibition on class arbitrations set forth in subsection (3) above is deemed unenforceable, then the agreement to arbitrate will not apply" (emphasis added).  (See Exhibit R18).  Does "not apply" mean the arbitration claims will be dismissed or will they be transferred to litigation or the Better Business Bureau or Small Claims Court?  Will the consumer be entitled to reimbursement of any fees paid for arbitration?  Will the consumer be entitled to the benefit of any information or rulings previously obtained in the arbitral forum?  In short, the words "will not apply" are completely ambiguous as to what happens to the consumer's claims.

(g) As a practical matter, if Verizon's arguments prevailed, the exact same proceedings would take place twice - once in this arbitration for those consumers whose

22

CSAs do not contain class arbitration waiver clauses and whose CSAs contain such clauses but do not have related termination of arbitral jurisdiction clauses (see Exhibits R16 and 17) and again in another forum (litigation or the Better Business Bureau) for those consumers whose CSAs do contain both clauses. For the reasons argued extensively by Verizon in support of Verizon's motion to consolidate, this makes no sense.

For the aforesaid reasons, I conclude that both the class arbitration waiver clause and the termination of arbitral jurisdiction clause are unenforceable. I conclude that each class member entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representatives and each of the other class members.

G. Predominance-Supplementary Rule 4(b) - Whether the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

Verizon argues strenuously that as a result of inter-class conflict, the common questions of law or fact regarding the validity of the $175.00 ETF are not predominant. Verizon argues that it is entitled to assert a counterclaim against any certified class such that if it is determined that the $175.00 ETF is invalid, Verizon is entitled to its actual damages caused by each class member's early termination of his or her CSA. Verizon further argues that for some class members, particularly those who terminated their CSAs near the end of the two year terms, the actual damages to Verizon will be far less than the actual damages to Verizon for those customers who terminated their CSAs near the beginning of the two year terms. Additionally, Verizon claims that for the

23

majority of individual customers, the amount of actual damage to Verizon by an early termination exceeds the $175.00 ETF so that all such terminating customers will object to the invalidation of the $175.00 ETF.  Verizon argues that a minority of customers whose actual damages to Verizon are lower than the $175.00 ETF will desire invalidation of the $175.00 ETF.  Verizon claims that these inter-class conflicts are so strong that it is inappropriate to certify any class.

I disagree with Verizon's arguments and find that any inter-class conflict is hypothetical and speculative.  I reject Verizon's arguments for the following reasons:

1.  Even if there were an inter-class conflict as argued by Verizon, I believe it is not at all predominant in this matter.  The predominant common questions of law or fact are set forth above in Section B and relate to the validity and enforceability of the $175.00 ETF.  I also believe that it is far preferable to permit adjudication of these predominant questions than to prohibit such adjudication because of concern about hypothetical conflicts which have not been established.

2.  Verizon argues that if the $175.00 ETF is invalidated, it is entitled to actual damages which will exceed the $175.00 ETF for many customers.  However, Verizon has set forth scant precedent for actual recovery of damages in excess of the liquidated damage amount in a contract where the liquidated damage clause has been declared unenforceable.

3.  Verizon's principal argument is illogical.  If a majority of customers would actually be liable to Verizon for more than the $175.00 ETF,  it is likely that the $175.00 ETF clause will be upheld and enforceable.  It therefore seems highly speculative that a situation could arise where Verizon would be entitled to damages in excess of the

$175.00 ETF.

4.  While Verizon argues that it would be entitled to damages against many putative class members in excess of the $175.00 ETF, there remains significant doubt as to whether Verizon has validly asserted a counterclaim in this matter.  It is true that this Tribunal ordered the filing of the Consolidated Demand and Amended Answer, but there was no specific request for nor order granting leave to interpose a counterclaim.  Nor has Verizon paid the requisite AAA filing fee for a counterclaim for monies in excess of $500 million of ETF revenues which Verizon purportedly collected during the 6 year class period.  Both prior arbitrator consent and payment of the requisite filing fees are required for the interposition of a counterclaim.

5.  Verizon has not sought certification of a counter-claim class.  There is, therefore, significant question as to whether Verizon can assert such a counterclaim.

6.  A significant portion of the extensive record in this matter related to whether or not Verizon did actually incur damages and if so, the magnitude of any such damages upon early termination by a customer at various points during a 2 year CSA.  Numerous and extensive expert reports, affidavits and briefs were submitted on these points.  Verizon's experts claimed that for some customers, Verizon's actual damages would exceed $1,000.00 per customer and that for the average customer the actual damage was approximately $300.00 above the $175.00 ETF.  This was the result of Verizon's analyses of fixed and variable costs, the different types of subscriber plans, Verizon's costs of acquisition of each customer, and the amount of lost profit depending upon Verizon's allegedly large up front costs inclUding handset subsidies, promotion benefits and advertising.  Claimants, on the other hand, argued that overwhelmingly, Verizon

25

incurs no damage if a customer terminates its CSA early. Claimants argue that Verizon's profit margin for each customer entering into a new CSA is minimal and that the bulk of Verizon's profits come from extras, such as roaming charges. It is impossible on this record for me to determine whether or not there actually were damages sustained by Verizon upon the breach of a CSA by a customer and if so, the magnitude of any such damages. To the extent necessary to support the defense of offset by Verizon (see below), such detailed proof and analysis is more appropriate at a hearing on the merits in this arbitration.

7. Verizon's assertion of an inter-class conflict based upon its prosecution of a counterclaim also seems highly speculative given its concession at the evidentiary hearing that it has never sued any customer for the $175.00 ETF. It therefore seems highly implausible that if the $175.00 ETF is declared invalid, Verizon would then change its policy and begin suing individual customers for more than the $175.00 ETF, which amount still would remain relatively small compared to Verizon's expenses in preventing litigation.

8. At oral argument on this matter, Verizon stipulated that "if our actual damages in the aggregate as against all class members are offset against the aggregated ETF claims of all class members, and it comes out that we have more actual damages than the total of ETFs, then we [Verizon] would not seek to collect that excess." (See Transcript of Argument 3/29/07 - p. 367). As such, Verizon is adequately protected in its argument that it would be entitled to recovery of actual damages because it will be able to aggregate such damages and argue at the merits hearing that it is entitled to offset this aggregate amount against any recovery by the class. This is the same

26

approach adopted by Judge Sabraw in the California ETF class action.

9. Verizon argues that even with the aggregate offset approach, there remains an inter-class conflict because different customers breaching their CSAs at different times will receive back different amounts to the extent there is any recovery. However, any such conflict can be remedied by the use of formulas related to the time of breach during a customer's 2 year CSA. Also, any such conflict does not defeat the predominance of the common questions of law or fact regarding the validity and enforceability of the $175.00 ETF.

10. Verizon's assertion of a counterclaim specifically states that it is entitled to consequential damages. However, consequential damages may be explicitly barred by some or all of the CSAs.

11. Alleged inter-class conflict is also ameliorated by the ability of any class member concerned about a counterclaim to opt out of the class settlement. Such a customer would then still be bound by the $175.00 ETF.

12. Finally, Verizon's arguments regarding inter-class conflict are not applicable to the Subscriber Class B, since those customers had not terminated their CSAs during the class period and they seek only a declaration as to the validity of the $175.00 ETF.

In sum, I conclude that Verizon's assertion of a counterclaim and possible recovery on such a counterclaim are speculative. Based upon Verizon's admission that it has never sued a customer for an ETF and based upon Verizon's stipulation that it will not seek damages in excess of what it has allegedly collected for ETFs, I conclude that Verizon's claims of inter-class conflicts do not defeat the predominance of the questions of law or fact regarding the validity and enforceability of the $175.00 ETF.

27

Verizon also argues that Counts III, IV, VI and VII of the Consolidated Demand should not be certified because of variations in state laws regarding the evidentiary presentation for consideration of the validity of the $175.00 ETF.  Specifically, Verizon argues that the common law of some states requires an evidentiary presentation of whether a liquidated damage clause like the $175.00 ETF was a reasonable approximation of actual loss at the time Verizon and its customer entered into the CSA.  Other jurisdictions require an analysis of whether the liqUidated damage clause like the $175.00 ETF is a fair approximation of actual damage incurred by Verizon at the time of breach of the CSA, Le. at the time of early termination.  Verizon argues further that some jurisdictions require an analysis of both times in addition to other factors.

I do not find that the conflict regarding the time of analysis predominates over the common questions of law or fact set forth in Section B or should otherwise preclude certification of a class for Counts I, III, V, VI and VII of the Consolidated Demand for the following reasons:

1.  In this case, the time lapse between the time of agreement to a CSA and the time of breach would generally be very short, less than 2 years.  In the massive evidentiary submissions regarding potential damages to Verizon in the event of an early termination by a customer, Verizon has not established any difference depending upon whether the analysis is made as of the time of entry into the CSA or the time of breach. The existence of any difference therefore seems entirely hypothetical and not outcome determinative.

2.  Given the flexibility of evidentiary standards in arbitration, this Tribunal would hear evidence of all factors at all times.  Given that formal rules of evidence need not

28

apply at an arbitration hearing on the merits, evidence will be accepted in this arbitration relevant to both the time of entry into the CSA and the time of the early termination by a customer.

Verizon objects to certification of a class regarding Counts II and IV of the Consolidated Demand on the grounds that there are such significant variations among the Consumer Fraud Statutes of the various states that it is inappropriate to apply New Jersey's Consumer Fraud Act or any other state's consumer protection statute to a nationwide class.  I agree with Verizon's arguments and decline to certify a class on the basis of the Consumer Fraud Statute of any particular state for the following reasons:

1.  Many of the CSAs contain choice of law provisions.  In this case, the CSAs of Brown and Schroer contain choice of law provisions, such that the law of the state of the location of the customer's area code should apply.  The CSA of Zobrist contains no such provision.  The law seems clear that such choice of law provisions should be enforced, especially since it is fair to assume that the reasonable expectation of any customer is that he or she would be protected by the Consumer Fraud Statute of his or her state.

2.  There are significant differences among the Consumer Fraud Statutes of the various states.  I have personally reviewed the statutes cited in the detailed submissions of the parties regarding the Consumer Fraud Statutes in each of the 50 jurisdictions other than California.  The variations include significant differences regarding exactly what is protected under each statute, levels of proof, types of defenses, the availability of treble damages, recovery of attorneys' fees, Statute of Limitations differences, and extra-territorial application of each statute.  Given all the variations among the different

29

jurisdictions, class certification under State Consumer Fraud Statutes would probably require over 20 sub-classes and numerous evidentiary presentations, defenses and arguments pertinent to residents in different jurisdictions. There would also be significant question as to whether the three class representatives could act as representatives for sub-classes for states in which they are not a resident. Also, if Claimants prevailed, any award might require different levels of relief and different formulas for customers residing in different jurisdictions.

     3. Claimants argue that New Jersey's Consumer Fraud statute should apply because it is one of the toughest in the nation and Verizon's principal place of business is in New Jersey. However, Claimants have not established that the location of one's principal place of business is enough to defeat a validly executed choice of law provision. Moreover, Verizon would be entitled to the benefit of the various defenses available under each of the different Consumer Fraud Statutes.

     4. Verizon's argument regarding Schroer is persuasive. Schroer, a New York resident, admitted at the class certification hearing that he received mUltiple copies of Verizon's disclosure of the $175.00 ETF. As such, it is highly questionable if Schroer would succeed in an argument that the $175.00 ETF is a deceptive practice under the New York Consumer Protection Act, GBL §349 et. seq. which should apply, since Schroer lives in New York and his CSA requires that New York law apply. However, Schroer might be able to prove an "unconscionable commercial practice" under the New Jersey Consumer Fraud Statute, N.J. Rev. State §56:8-1 , which does not require proof of any deception. It does not seem equitable to the rights of Verizon to be compelled to adjudicate claims by Schroer, a New York resident, based upon the New Jersey

Consumer Fraud Statute when Schroer and Verizon specifically agreed in the CSA that the New York Consumer Protection Act would apply to any claim by Schroer.

5. As noted above, it does not seem manageable to conduct an adjudication under each of the 50 jurisdictions other than California to determine the enforceability of the $175.00 ETF. Count IV seems especially troublesome, since Claimants provide no rationale for certification of classes regarding the 10 states listed and Verizon correctly points out that there are significant differences among the laws of these 10 states.

In sum, I Find that Verizon's allegations of inter-class conflict do not defeat Claimants' application for class certifications of a Payer Class A and Subscriber Class B under federal law or state common law. However, significant variations among the States' Consumer Fraud Statutes do defeat certification of classes for Counts II and IV of the Consolidated Demand.

H. Superiority - Supplementary Rule 4(b) - Whether a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. Verizon argues that customers can seek resolution of their claims through Verizon's mediation program. However, Claimants have established that Verizon's mediation program was not described on its website and was rarely if ever used. Verizon has offered no proof to establish that customers have made use of the Verizon mediation program or that the use of the mediation program would successfully lead to resolution of the common questions of law or fact in this matter regarding the validity and enforceability of the $175.00 **ETF.**

31

Verizon next argues that customers can pursue claims like that pursued by Schroer before the Federal Trade Commission.  Although the regulations appear to indicate that the Federal Trade Commission should adjudicate consumer complaints, Claimants have established that such procedures have never resulted in an adjudication for a consumer with a complaint.  In this case, the Federal Trade Commission appears to have done little other than refer Schroer's complaint to the New York State Attorney General's office.  The evidentiary record appears to establish that the Federal Trade Commission is ill-equipped to handle consumer complaints and appears to have no desire to do so.

Verizon next argues that customers can pursue their claims in Small Claims Courts.  It does not seem likely that many of the 3.5 million customers will seek adjudication in Small Claims Courts.  Verizon has provided no information indicating that any such customers have done so.  Moreover, given the complexity of the arguments and the expense and detail in connection with the evidentiary submissions, it is highly unlikely that any customer will pursue adjudication of his or her claims in order to avoid payment of $175.00 **ETF** or the associated risk of an adverse credit rating.

Verizon argues that there is another putative class action pending in New Jersey commenced by a representative named Waudby and that for the reasons set forth above, a Court is better able to deal with a class action regarding the enforceability of the $175.00 **ETF** than this Tribunal in arbitration.  However, as noted above, Verizon asked that this matter be sent to arbitration after Claimants began state court proceedings. Thus, Verizon argued to a Court that the matter was better adjudicated in arbitration and now argues to the arbitrator that the matter is better adjudicated in Court.

32

Additionally, the Waudby matter appears to have emanated from an unrelated dispute among counsel for the putative classes which has no connection to the merits of this arbitration proceeding.  Also, the Waudby proceeding has been stayed by the New Jersey Federal Court apparently pending the outcome of this arbitration.  I have not been advised of any other proceedings by any other putative class members.

There is no significant interest of other members of the classes in individually controlling the prosecution of separate arbitrations.  Except as referred to above regarding the Waudby matter, there are no other proceedings concerning the controversy already commenced by or against members of the putative class. Unquestionably, it is desirable to concentrate the determination of claims regarding the validity and enforceability of Verizon's $175.00 ETF in one arbitral forum.  Except as set forth above regarding management difficulties in the event of certification under state Consumer Fraud Statutes, I do not believe there will be significant difficulties in the management of a class arbitration which could not be resolved by subsequent creation of sub-classes and other similar devices.

<div align="center">**CONCLUSION**</div>

For the reasons set forth above, I conclude that Claimants' application for certification of Payer Class A and Subscriber Class B in respect of Counts I, III, V, VI, and VII of the Consolidated Demand is granted.  Claimants' application for certification of Counts II and IV is denied.

The two classes are defined as follows:

Class A - Payer Class:  All persons in the United States who were charged an early termination fee pursuant to a Customer Service

<div align="center">33</div>

Agreement which contained an arbitration clause from November 1, 2000

through November 16, 2006, excluding persons with a California area

code and California billing address for such account.

Class B - Subscriber Class: All persons in the United States who were

parties to a contract for a wireless telephone personal account with

Verizon that included a provision for an early termination fee and included

an arbitration clause from November 1, 2000 through November 16, 2006,

excluding persons with a California area code and California billing

address for such account.

The class representatives for Class A are Harold P. Schroer and Dawn M. Zobrist. The

representatives for Class B are Patricia Brown and Dawn M. Zobrist.

Counsel for the classes are Law Offices of Scott A. Bursor, 500 Seventh Avenue,

10th Floor, New York, NY 10018, lead counsel, Gilman and Pastor, LLP, 225 Franklin

Street, 16th Floor, Boston, MA 02110, Faruqi & Faruqi, 320 East 39th Street, New York,

NY 10016 and Mager & Goldstein, LLP, 1640 Town Center Circle, Suite 216, Weston,

FL 33326..

The claims, issues, and defenses are set forth above in Section B of this Class

Determination Award. Putative Class Members shall be granted the right to opt out and

be excluded from Class Arbitration. The timing and detail of the opt out will be set forth

in a Notice to class members to be later approved by this Tribunal.

34

Pursuant to Supplementary Rule 5(d), J stay all proceedings in this matter for a period of at least 30 days to permit any party to move a Court of competent jurisdiction to confirm or to vacate this Class Determination Award,

Dated:        White Plains, New York
              January 10, 2008

_____        _____
Date                           Eugene I. Farber

I, Eugene I. Farber do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

_____        _____
Date                           Eugene I. Farber

35

**EXHIBIT 2**

## American Arbitration Association
*Dispute Resolution Services Worldwide*

| Home | About | File a Case | Focus Areas | Rules / Procedures | Forms | Press Room | Events | Education |

### Rules and Procedures

Search Site: [_____] **GO**

○ Any Word  ● All Words  ○ Search Exact Phrase

🖶 Printer Friendly

**Supplementary Rules for Class Arbitrations**
*Effective Date October 8, 2003*

### 1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.

### 2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three arbitrators.

### 3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

### 4. Class Certification

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration.

## 5. Class Determination Award

(a) The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award (the "Class Determination Award"), which shall address each of the matters set forth in Rule 4.

(b) A Class Determination Award certifying a class arbitration shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. A copy of the proposed Notice of Class Determination (see Rule 6), specifying the intended mode of delivery of the Notice to the class members, shall be attached to the award.

(c) The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion.

(d) The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Class Determination Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Class Determination Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(e) A Class Determination Award may be altered or amended by the arbitrator before a final award is rendered.

## 6. Notice of Class Determination

(a) In any arbitration administered under these Supplementary Rules, the arbitrator shall, after expiration of the stay following the Class Determination Award, direct that class members be provided the best notice practicable under the circumstances (the "Notice of Class Determination"). The Notice of Class Determination shall be given to all members who can be identified through reasonable effort.

(b) The Notice of Class Determination must concisely and clearly state in plain, easily understood language:

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through counsel if the member so desires, and that any class member may attend the hearings;

(5) that the arbitrator will exclude from the class any member who requests exclusion, stating when and how members may elect to be

excluded;

    (6) the binding effect of a class judgment on class members;

    (7) the identity and biographical information about the arbitrator, the class representative(s) and class counsel that have been approved by the arbitrator to represent the class; and

    (8) how and to whom a class member may communicate about the class arbitration, including information about the AAA Class Arbitration Docket (see Rule 9).

## 7. Final Award

The final award on the merits in a class arbitration, whether or not favorable to the class, shall be reasoned and shall define the class with specificity. The final award shall also specify or describe those to whom the notice provided in Rule 6 was directed, those the arbitrator finds to be members of the class, and those who have elected to opt out of the class.

## 8. Settlement, Voluntary Dismissal, or Compromise

(a) (1) Any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of an arbitration filed as a class arbitration shall not be effective unless approved by the arbitrator.

    (2) The arbitrator must direct that notice be provided in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

    (3) The arbitrator may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(b) The parties seeking approval of a settlement, voluntary dismissal, or compromise under this Rule must submit to the arbitrator any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(c) The arbitrator may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(d) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires approval under this Rule. Such an objection may be withdrawn only with the approval of the arbitrator.

## 9. Confidentiality; Class Arbitration Docket

(a) The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances. However, in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings.

(b) The AAA shall maintain on its Web site a Class Arbitration Docket of arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:

    (1) a copy of the demand for arbitration;

    (2) the identities of the parties;

    (3) the names and contact information of counsel for each party;

    (4) a list of awards made in the arbitration by the arbitrator; and

    (5) the date, time and place of any scheduled hearings.

## 10. Form and Publication of Awards

(a) Any award rendered under these Supplementary Rules shall be in writing, shall be signed by the arbitrator or a majority of the arbitrators, and shall provide reasons for the award.

(b) All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.

## 11. Administrative Fees and Suspension for Nonpayment

(a) A preliminary filing fee of $3,250 is payable in full by a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration. The preliminary filing fee shall cover all AAA administrative fees through the rendering of the Clause Construction Award. If the arbitrator determines that the arbitration shall proceed beyond the Clause Construction Award, a supplemental filing fee shall be paid by the

requesting party. The supplemental filing fee shall be calculated based on the amount claimed in the class arbitration and in accordance with the fee schedule contained in the AAA's Commercial Arbitration Rules.

(b) Disputes regarding the parties' obligation to pay administrative fees or arbitrator's compensation pursuant to applicable law or the parties' agreement may be determined by the arbitrator. Upon the joint application of the parties, however, an arbitrator other than the arbitrator appointed to decide the merits of the arbitration, shall be appointed by the AAA to render a partial final award solely related to any disputes regarding the parties' obligations to pay administrative fees or arbitrator's compensation.

(c) If an invoice for arbitrator compensation or administrative charges has not been paid in full, the AAA may so inform the parties in order that one of them may advance the required deposit. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If an arbitration conducted pursuant to these Supplementary Rules is suspended for nonpayment, a notice that the case has been suspended shall be published on the AAA's Class Arbitration Docket.

## 12. Applications to Court and Exclusion of Liability

(a) No judicial proceeding initiated by a party relating to a class arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a class arbitration or potential class arbitration under these Supplementary Rules is a necessary or proper party in or to judicial proceedings relating to the arbitration. It is the policy of the AAA to comply with any order of a court directed to the parties to an arbitration or with respect to the conduct of an arbitration, whether or not the AAA is named as a party to the judicial proceeding in which the order is issued.

(c) Parties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Supplementary Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action seeking damages or injunctive relief for any act or omission in connection with any arbitration under these Supplementary Rules.

©2004 American Arbitration Association. All Rights Reserved.     Privacy Policy   Terms of Use

**EXHIBIT 3**

# Verizon Wireless

## Customer Agreement

### Terms & Conditions

Please read carefully
and file in a safe place.

verizon wireless
We never stop working for you.®

**YOUR VERIZON WIRELESS CUSTOMER AGREEMENT**

We're Verizon Wireless. Please carefully read this agreement, including the calling plan or plan you've chosen, before using this agreement or our service.

This agreement covers important topics such as when it begins, how long it lasts, fees for early termination and late payments, our rights to change the agreement, your wireless service, limitations of liability, and settlement of disputes by arbitration instead of in court. If you accept this agreement, it will apply to your wireless service from us, including the agreement, privacy policy, calling plan, and other terms and conditions. To the extent that this agreement conflicts with this agreement, this agreement will govern.

**About This Agreement**

A waiver of any part of this agreement in one instance won't be a waiver of any other part or any other instance. You can't assign this agreement or any of your rights or duties under it. We may assign this agreement or any of our rights or duties under it without notice to you.

**About You**

You agree that you're at least 18 years old and have the legal capacity to accept this agreement. If you're ordering for a company, you're representing that you're authorized to bind it, and when the context requires, "you" means the company.

**Dispute Resolution And Mandatory Arbitration**

*Disclaimer Of Warranties*

*Waivers And Limitations Of Liability*

©2005 Verizon Wireless
Bedminster, NJ 07921

**EXHIBIT**

"B"

### Your Rights To Refuse Or Cancel This Agreement

### Our Rights To Make Changes

### Termination Fees And Your Right To Terminate

### How Your Wireless Phone Works And Caller ID

### Different Kinds Of Charges and Surcharges We Set

### Taxes And Surcharges We Don't Set

### Your Rights For Dropped Calls Or Interrupted Service

### Roaming And Roaming Charges

### Cumulative Charges

### Your Bill

### Payments, Deposits, Credit Cards, And Checks

### Our Rights To Limit Or End Service

### Directories And Your Privacy

**EXHIBIT 4**

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION
Class Action Arbitration Tribunal

PATRICIA BROWN, on an individual basis, and also on
a classwide basis on behalf of others similarly situated,

                                    Claimant,

-against-

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS,

                                    Respondent.

Case No. 11 494 01274 05

Arbitrator: Eugene I. Farber

## STIPULATED PARTIAL FINAL AWARD – CLAUSE CONSTRUCTION

Claimant Patricia Brown and Defendant Cellco Partnership d/b/a Verizon
Wireless stipulate as follows:

1. Verizon Wireless does not contest clause construction in this case.

2. The parties waive any right to appeal this Clause Construction Award.

So stipulated this 14th day of September, by:

_____
Scott A. Bursor

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, 10th Floor
New York, NY 10018
Attorney for Claimant

_____
Kristin Linsley Myles

MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Attorneys for Respondent

So ordered this ___ day of September, by:

_____
Eugene I. Farber

1123244.1

**EXHIBIT 5**

MUNGER, TOLLES & OLSON LLP

560 MISSION STREET

TWENTY-SEVENTH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

———

355 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

PETER R. TAFT†
ROBERT H. JOHNSON†
ALAN V. FRIEDMAN†
RONALD L. OLSON†
DENNIS E. KINNAIRD†
RICHARD S. VOLPERT
DENNIS C. BROWN†
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
ROBERT L. ADLER
CARY B. LERMAN
CHARLES D. SIEGAL
RONALD K. MEYER
GREGORY P. STONE
VILMA S. MARTINEZ
BRAD D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
STEVEN L. GUISE†
ROBERT B. KNAUSS
STEPHEN M. KRISTOVICH
JOHN W. SPIEGEL
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
GREGORY D. PHILLIPS
LAWRENCE C. BARTH
KATHLEEN M. McDOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
RONALD C. HAUSMANN
PATRICK J. CAFFERTY, JR.
JAY M. FUJITANI
O'MALLEY M. MILLER
SANDRA A. SEVILLE-JONES
MARK H. EPSTEIN
HENRY WEISSMANN

KEVIN S. ALLRED
MARC A. BECKER
CYNTHIA L. BURCH
BART H. WILLIAMS
JEFFREY A. HEINTZ
JUDITH T. KITANO
KRISTIN LINSLEY MYLES
MARC T.G. DWORSKY
JEROME C. ROTH
STEPHEN D. ROSE
JEFFREY L. BLEICH
GARTH T. VINCENT
TED DANE
MARK SHINDERMAN
STUART N. SENATOR
MARTIN D. BERN
DANIEL P. COLLINS
STEVEN B. WEISBURD
EDWARD C. HAGEROTT, JR.
RICHARD E. DROOYAN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
MARY ANN TODD
MICHAEL J. O'SULLIVAN
KELLY M. KLAUS
DAVID B. GOLDMAN
BURTON A. GROSS
KEVIN S. MASUDA
HOJOON HWANG
KRISTIN S. ESCALANTE
DAVID C. DINIELLI
ANDREA WEISS JEFFRIES
PETER A. DETRE
PAUL J. WATFORD
DANA S. TREISTER
CARL H. MOOR
DAVID M. ROSENZWEIG
DAVID H. FRY
TODD E. MOLZ
LISA J. DEMSKY

MALCOLM A. HEINICKE
GREGORY J. WEINGART
TAMERLIN J. GODLEY
JAMES C. RUTTEN
J. MARTIN WILLHITE
RICHARD ST. JOHN
ROHIT K. SINGLA
ALLISON B. STEIN
MARSHA HYMANSON
SUSAN R. SZABO
LINDA S. GOLDMAN
LINDA M. BURROW
NATALIE PAGÈS STONE
BRETT J. RODDA
CAROLYN HOECKER LUEDTKE
JOSEPH S. KLAPACH
LISA VANCE CASTLETON
MONIKA S. WIENER
JOHN P. HURT
LYNN HEALEY SCADUTO
C. DAVID LEE
BAYRON T. GILCHRIST
RANDALL G. SOMMER
BROOKS E. ALLEN
EMILY M. STEPHENS
AARON M. MAY
SHONT E. MILLER
MARIA SEFERIAN
JASON L. HAAS
MANUEL F. CACHÁN
ERIC J. LORENZINI
MEGAN M. LA BELLE
KATHERINE K. HUANG
SARAH KURTIN
KATHERINE M. FORSTER
ROSEMARIE T. RING
JOSEPH J. YBARRA
ANNE M. VOIGTS
AILSA W. CHANG
AMANDA SCHREIBER
BLANCA FROHM YOUNG

ROBERT E. SATTERTHWAITE
ÖZGE GÜZELSU
LINDSAY D. MCCASKILL
MARK H. KIM
KATE K. ANDERSON
ALISON J. MARKOVITZ
LOREN KESSLER-HIGGINS
E. DORSEY HEINE
SAMUEL N. WEINSTEIN
PAUL M. ROHRER
KIT AUGUSTSON
JAY K. GHIYA
SUSAN TRAUB BOYD
JOHN C. DAY
JENNIFER L. POLSE
TODD J. ROSEN
DANIEL L. GEYSER
BRIAN R. HOCHLEUTNER
DEAN N. KAWAMOTO
GRANT A. DAVIS-DENNY
E. MARTIN ESTRADA
JASON RANTANEN
AMY C. TOVAR
REBECCA GOSE LYNCH
JONATHAN H. BLAVIN
JOHN R. GRIFFIN
DAVID M. SWEET
KAREN J. FESSLER
MICHELLE T. FRIEDLAND
J. RAZA LAWRENCE
MICHAEL T. KOVALESKI
LIKA C. MIYAKE
MELINDA EADES LEMOINE

RICHARD D. ESBENSHADE†
OF COUNSEL

E. LEROY TOLLES
(RETIRED)

†A PROFESSIONAL CORPORATION

July 25, 2005

WRITER'S DIRECT LINE
(415) 512-4022
(415) 512-4077 FAX
Kristin.Myles@mto.com

**VIA HAND DELIVERY AND FEDEX**

Hon. Elizabeth T. Maass
Palm Beach County Courthouse
205 North Dixie Highway, Room 11.1208
West Palm Beach, FL 33401

Re:    *Brown v. Verizon Wireless Services, LLC*, No. 50 2004CA005063MB

Dear Judge Maass:

I am writing to provide further information in response to questions that the Court posed at the July 15, 2005 hearing concerning the class action settlement proceedings in *Campbell v. Airtouch Cellular, et al.*, Cal. Super. Ct. No. GIC 751725, and to advise the Court of Verizon Wireless's position in light of that information.

At the July 15 hearing, as Your Honor may recall, Mr. Bursor raised a number of issues relating to the procedural history of *Campbell*. This led to a series of questions from the Court relating to the arbitration clause at issue in *Campbell* and the clause to which the plaintiff in this action, Patricia Brown, is a party. *See* July 15, 2005 Hearing Transcript ("Tr.") at 37-40 (excerpts attached as Exhibit A). Although I was not counsel in the *Campbell* action, I attempted to provide some answers to the Court's questions based on my understanding of what had occurred in *Campbell*. *Id*. at 48-51. Since the hearing, we have had an opportunity to review the record in *Campbell* and offer the following clarifications or corrections.

The *Campbell* settlement proceedings involved two rounds of briefing and hearings. On April 12, 2002, the court granted preliminary approval of a proposed class action settlement and certified a settlement class. At that time, Verizon Wireless's customer contract, which was

MUNGER, TOLLES & OLSON LLP

Hon. Elizabeth T. Maass
Page 2

attached as an exhibit to the Settlement Agreement, contained the same "on an individual basis" language that appears in the clause at issue in this action and the related *Brown* arbitration. At a September 2002 hearing, Judge Pate declined to grant final approval for the settlement. One of the court's concerns was that approval of the Settlement Agreement with Verizon Wireless's customer agreement attached might imply judicial approval of the terms of the customer agreement. Sept. 25, 2002 Hearing Transcript at 11-12 (excerpts attached as Ex. B). The court did not refer to specific terms of the customer agreement, nor did it reference the arbitration clause. *Id.* After further negotiations, the parties negotiated and submitted a new Settlement Agreement that was approved by the court in an order dated May 13, 2004. Reflecting the court's concerns expressed earlier, the new Agreement did not attach Verizon Wireless's customer agreement. At both of these stages of the *Campbell* proceeding, the arbitration clause in the Verizon Wireless agreement contained the "on an individual basis" language and did not expressly reference class actions. Contrary to the suggestions made by plaintiff's counsel during oral argument, the Court did not express any concern with the arbitration clause or any other clause in the customer agreement. Judge Pate's stated concern was to avoid the appearance of judicial approval of the customer agreement.

In its brief during the first phase of the *Campbell* settlement proceedings, Verizon Wireless stated to the *Campbell* court that the arbitration clause in question – *i.e.*, the clause to which the plaintiff in this action is a party – "does not expressly forbid class actions." *See* Defendants' Memorandum of Law in Support of Final Approval of Settlement and in Opposition to Objections at 137; *see also id.* at 135 (noting that contract "contains *no* express prohibition of class actions") (emphasis in original) (excerpts attached as Ex. C). Verizon Wireless further noted that, although some courts have held that class arbitration is not allowed unless affirmatively authorized by the parties' agreement, one court had held that such an issue is for the arbitrator, not the court, to decide. *Id.* at 137, n.152 (citing *Brennan v. ACE INA Holdings, Inc.*, No. 00-2730, 2002 U.S. Dist. LEXIS 15039, at *9-10, 12-13 (E.D. Pa. July 24, 2002)). Thus, although Verizon Wireless did not state in *Campbell* that the "on an individual basis" language permits class actions, which was one of the questions that this Court posed to Mr. Bursor (*see* Tr. at 40), it did indicate that the contract did not expressly prohibit them.

In light of its statements in *Campbell*, Verizon Wireless wishes to withdraw its argument to this Court that the "on an individual basis" language expressly prohibits class action arbitrations and thus must be decided, as a "gatekeeping" matter, by this Court. Rather, Verizon Wireless agrees that the question whether the contract language permits class arbitrations, as well as the other threshold questions that Verizon Wireless has presented to this Court, may be decided by the arbitrator. Accordingly, Verizon Wireless hereby withdraws its motions to stay this action, currently set for hearing on September 23, 2005, without prejudice to its ability to argue to the arbitrator that (1) the parties' arbitration clause should be construed not to permit class actions; (2) plaintiff's ETF-related claims should be stayed in light of the pending FCC proceedings; and (3) plaintiff's handset locking claims should be stayed or abated in light of the class settlement proceedings and related injunction in *Campbell*. We will coordinate with plaintiffs' counsel to implement a stipulation to this effect.

MUNGER, TOLLES & OLSON LLP

Hon. Elizabeth T. Maass
Page 3


We apologize for any inconvenience to the Court.

Respectfully submitted,

Kristin Linsley Myles


cc:    Scott A. Bursor, Esq.
       Jayne A. Goldstein, Esq.
       David Coulson, Esq.

**EXHIBIT 6**

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION
Class Action Arbitration Tribunal

| | |
|---|---|
| PATRICIA BROWN and HAROLD P. SCHROER on an individual basis, and also on a classwide basis on behalf of others similarly situated, | |
| Claimants, | Case No. 11 494 01274 05 |
| -against- | Arbitrator: Eugene I. Farber |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | |
| Respondent. | |
| DAWN M. ZOBRIST, individually and on behalf of others similarly situated, | |
| Claimant, | Case No. 11 494 0032 05 |
| -against- | Arbitrator: Eugene I. Farber |
| VERIZON WIRELESS, CELLCO PARTNERSHIP, and VERIZON COMMUNICATIONS, | |
| Respondents. | |

**CLAIMANTS' MOTION TO CORRECT, ALTER OR AMEND
THE CLASS DETERMINATION AWARD**

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)
scott@bursor.com

January 29, 2008

# TABLE OF CONTENTS

I.    THE AWARD SHOULD BE CORRECTED TO CONFORM TO THE
      REQUIREMENTS OF SUPPLEMENTARY RULE 5 ...................................................... 1

      A.    The Award Should Be Amended To Conform To Rule 5's
            Requirements Concerning Notice To The Class And Opt Out
            Procedures ..................................................................................................... 1

      B.    Since Rule 5(d) Is Preempted By The FAA, The Award Should Be
            Corrected To Conform With The FAA ........................................................... 3

II.   MISCELLANEOUS ERRATA .................................................................................. 6

      A.    References To The Federal Trade Commission ............................................... 6

      B.    References To "Inter-Class Conflict" ............................................................. 7

      C.    Reference To The Stay Of The *Waudby* Case ............................................... 7

      D.    Identification Of Representatives Of Class B ................................................ 8

      E.    Identification Of Class Counsel .................................................................... 8

Conclusion ........................................................................................................................ 8

APPENDIX A:  PROPOSED NOTICE OF CLASS DETERMINATION
      (NEWSPAPER VERSION) ....................................................................................... 10

APPENDIX B:  PROPOSED NOTICE OF CLASS DETERMINATION
      (WEBSITE VERSION) ............................................................................................. 11

Claimants and certified class representatives, Patricia Brown, Harold P. Schroer, and Dawn M. Zobrist, respectfully move this Tribunal pursuant to Rule 5(e) of the Supplementary Rules for Class Arbitrations (hereafter, "Supplementary Rules"), to correct, alter or amend the 1/10/08 Class Determination Award.

## I. THE AWARD SHOULD BE CORRECTED TO CONFORM TO THE REQUIREMENTS OF SUPPLEMENTARY RULE 5

The Award is incomplete because it does not address class notice as required by Supplementary Rule 5(b) and opt out procedures as required by Supplementary Rule 5(c). The Award also improperly invokes Supplementary Rule 5(d) to stay the action for 30 days, though Rule 5(d) does not apply to this case because it is pre-empted by the parties' agreement and by the Federal Arbitration Act ("FAA").

### A. The Award Should Be Amended To Conform To Rule 5's Requirements Concerning Notice To The Class And Opt Out Procedures

Supplementary Rule 5(b) provides:

A copy of the proposed Notice of Class Determination (see Rule 6) specifying the intended mode of delivery of the Notice to class members, shall be attached to the Award.

Supplementary Rule 5(c) provides:

The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration.

At the suggestion of the Tribunal, the parties agreed to defer briefing on these matters. *See* 1/25/07 Hearing Tr. at 255-56 ("THE ARBITRATOR: They are waived for purposes of what I have to do now and deferred until another time, that's correct."). The parties did not agree, however, that these matters would be deferred indefinitely, or deferred until after court review of the Class Determination Award. Such an approach would be inconsistent with Supplementary Rule 5, and if appellate review of a Class Determination Award was permitted – and Claimants

contend it is not for reasons set forth below – the Class Determination Award must be

completed, including the provisions for notice and opt out procedures, so that a reviewing court

can consider those matters at the same time.  A court's review of the Award might be affected,

for example, by whether the class is an opt-out class or a mandatory class, since the standards for

certification of such classes are not the same.  *See, e.g.*, Supplementary Rule 5(c) (requiring a

finding of "exceptional circumstances" for a mandatory, non-opt-out class).  If these matters are

not included in the Award, the notice and opt-out provisions would either be shielded from court

review, or alternatively there would be two appeals to court concerning the Award – an appeal of

the certification decision followed by a second appeal of the notice and opt-out provisions.

Neither of those outcomes is consistent with Supplementary Rule 5 or with the efficient and

orderly administration of a class arbitration.

So the Award should be altered or amended to attach a copy of the proposed

Notice of Class Determination and to describe the opt-out procedure in accordance with

Supplementary Rule 5(b) and (c).  And this should be done promptly, without undue delay.

Claimants propose that the Notice of Class Determination be provided by a publication

substantially in the form annexed hereto as Appendix A in the *USA Today*, *Wall Street Journal*,

*Atlanta Journal-Constitution*, *Chicago Tribune*, *Dallas Morning News*, *Detroit News & Free

Press*, *New York Times*, and *Washington Post*, to appear during the week of March 9-15, 2008,

and by publication substantially in the form annexed hereto as Appendix B on a dedicated

website to be established on or before March 9, 2008 and maintained for the duration of this

arbitration.  Pursuant to the parties' agreement, as construed by this Tribunal's 9/26/06 Opinion

And Order, and considerations of equity and fairness, the cost of notice should be borne initially

by the Respondents.

**B.**     <u>**Since Rule 5(d) Is Preempted By The FAA, The Award Should Be Corrected To Conform With The FAA**</u>

For the reasons set forth in the preceding section, a stay under Supplementary Rule 5(d) would be premature at this time since the Class Determination Award remains incomplete.  However, Rule 5(d) does not apply in any event because the parties' agreement expressly made subject to the Federal Arbitration Act ("FAA"), which permits court review only of final orders.  *See* Exh.C612 (parties' agreement stating:  "The Federal Arbitration Act Applies To This Agreement.").  Under the FAA, the jurisdiction of courts is limited to review of final arbitration awards, and courts are not permitted to review interlocutory, interim or partial awards.  *See, e.g.*, *Marron v. Snap-On Tools*, 2006 WL 51193, at *1 (D.N.J.  June 9, 2006) ("Federal courts commonly understand this provision of the FAA [9 U.S.C. § 10] to allow review of final arbitration awards but *not* of interim or partial rulings."); *Michaels v. Mariform Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980) ("Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable.").  Thus, court review of Class Determination Awards is not permitted under the FAA.  *See, e.g.*, *Marron*, 2006 WL 51193, at *3 ("Given the early stage of the proceedings and the breadth of issues submitted to the arbitrator that have not even been reached this [Class Determination Award] is not ripe for review by this court.  …  It is not in the interest of judicial economy for this court to entertain repeated interlocutory appeals that further delay the arbitration that Snap-On moved this Court to compel two years ago."); *John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, at *2-3 (Tex. App. Dec. 21, 2007) (holding Class Determination Award was not a final reviewable award under the Texas General Arbitration Act).

The Class Determination Award certifies two classes of Verizon customers, and finds that the claimants in the arbitration have met the requirements of Supplementary Rule 4

such that they "may act in the arbitration as representative parties on behalf of all members of the class[es] described." Supplementary Rule 4(a). This "Award" is not a final order because it does not finally dispose of all claims – or indeed any claims. It is merely a procedural order concerning the further conduct of this arbitration. And even as to that it is not final. Under Supplementary Rule 5(e), "[a] class determination award may be altered or amended by the arbitrator before a final award is rendered."

While the AAA rules themselves provide for the possibility of court review of a class determination award, the rules of the AAA must be construed and applied in a manner that is consistent with the parties' agreement and the FAA. Thus, the fact that Supplementary Rule 5(d) provides for a 30-day stay "to permit any party to move a court of competent jurisdiction to confirm or vacate the Class Determination Award" is of no consequence. The language of the rule itself is agnostic with respect to the jurisdiction of courts. It does not purport to create jurisdiction, but merely permits any party "to move a court of competent jurisdiction" if such court exists. In this case there is no such court because the parties' agreement is expressly made subject to the FAA, which permits review only of final orders. *See Michaels*, 624 F.2d at 414;

Nor can the verbiage used in AAA rules or in the title of the "Award" transform an interlocutory order into a final one. Thus, it is of no consequence that the class certification order is labeled an "award," or that Supplementary Rule 5(a) incorrectly describes such award as "final." The reference in Rule 5(a) to the award being "final" is immediately contradicted by Rule 5(e), which makes clear that the Class Determination Award is <u>not</u> final because it "may be altered or amended by the arbitrator before a final award is rendered." Relying on this reading of Rule 5(e), the only appellate court to examine the question has held that a Class Determination

Award under Rule 5 is <u>not</u> final, as even the "AAA rules consider a class determination award to be something less than the final arbitration award":

> [W]e understand the 'award' referred to by the statute to be the final arbitration award and not merely any arbitration panel intermediate decision labeled 'award.' The fact that the arbitration panel's class certification decision was labeled, under the AAA rules and in the document's heading, as a 'Class Determination Award' does not transform the intermediate decision of the panel into a final arbitration award. …
>
> O'Quinn points out that the AAA rules themselves refer to a class determination award as a 'reasoned partial final award.' AAA Supplementary Rules Regarding Class Arbitration, Rule 5(a), available at http://www.adr.org/sp.asp?id=21936. However, those same rules also state that a "Class Determination Award may be altered or amended by the arbitrator before a final award is rendered." AAA Supplementary Rules Regarding Class Arbitration, Rule 5(e), available at http://www.adr.org/sp.asp?id=21936. Therefore the AAA rules consider a class determination award to be something less than the final arbitration award contemplated by the TGAA [Texas General Arbitration Act]."

*John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, at *2-3 (Tex. App. Dec. 21, 2007).[1]

Thus the Class Determination Award is not considered final even under the AAA rules, and it does not meet any of the standards for finality under the applicable case law. It certainly does not meet the *Michaels* test because it was not "intended by the arbitrator[] to be [his] complete determination of all claims submitted to [him]." *Michaels*, 624 F.2d at 413. It is not a final order and is not reviewable in any court. Thus, Supplementary Rule 5(d) does not and

---

[1] Our research of has uncovered only three court decisions concerning appeals of Class Determination Awards issued under Supplementary Rule 5. In *John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, cited in the text, a Texas appellate court held that the Class Determination Award was not a final reviewable order after the state trial court had denied a motion to vacate the award on its merits. In the other two cases federal courts denied motions to vacate the awards without discussion of whether they were reviewable final orders under the FAA. *See Sutter v. Oxford Health Plans LLC*, 227 Fed. Appx. 135 (3d Cir. 2007) (denying motion to vacate Class Determination Award); *Long John Silver's Restaurants, Inc.*, 409 F. Supp.2d 682 (D.S.C. 2006) (denying motion to vacate Class Determination Award).

cannot apply.  Any stay of this action would be contrary to the parties' agreement, contrary to the

FAA, and contrary to the very principles and purposes of arbitration, which is supposed to

provide a means to resolve disputes "promptly and economically."  AAA Wireless Industry

Arbitration (WIA) Rules, Introduction; *see also* AAA Supplementary Procedures for Consumer

Related Disputes (SPCRD), Introduction ("Arbitration is usually faster and cheaper than going to

court.").  Thus, one of AAA's core principles is that "ADR proceedings should occur within a

reasonable time, without undue delay."  AAA Consumer Due Process Protocol (DPP),

Principle 8.  The Reporter's Comments elaborate on Principle 8 as follows:

> "A primary impetus for conflict resolution outside the court system is the
> potential for relatively speedy and efficient resolution of disputes.  From the
> Consumer's perspective, moreover, the expectation of a reasonably prompt
> conclusion is likely to be, along with cost savings, the leading perceived
> advantage of consensual mediation or arbitration.  *See Madden v. Kaiser
> Foundation Hosp.*, 17 Cal. 3d 699 711, 131 Cal. Rptr. 882, 522 P.2d 1178 (1976)
> (speed and economy of arbitration, in contrast to the expense and delay of jury
> trial, could prove helpful to all parties).

As this Tribunal has pointed out, the usual approach in arbitration is that the case moves forward

unless there is a court order staying it.  If Verizon believes this matter should be stayed, it can

seek a stay in court.  But this Tribunal cannot and should not apply a plainly inapplicable rule to

delay this action – which is already more than five years old – for no good reason.

## II.    MISCELLANEOUS ERRATA

The following errata should be corrected.

### A.    References To The Federal Trade Commission

The Award contains several references to the "Federal <u>Trade</u> Commission" at

page 11 (discussing Schroer's informal letter complaint) and page 32 (discussing Verizon's

argument concerning superiority).  Those references are in error.  They should refer to the

Federal <u>Communications</u> Commission, as the Award does elsewhere, for example at page 4

("Federal Communications Commission") and at page 14 (same). That is where Schroer filed his informal complaint, and that is the forum that Verizon had argued to be superior to this arbitration. There was no evidence or argument presented concerning the Federal Trade Commission.

B.     **References To "Inter-Class Conflict"**

In a number of instances the Award refers to Verizon's arguments concerning a purported "<u>inter</u>-class conflict." These should be clarified. The alleged conflict was consistently described by the parties as an <u>intra</u>-class conflict, not an <u>inter</u>-class conflict. The nature of the alleged conflict was *within* Class A, not *between* Class A and another class (*e.g.*, Class B). In the California action Verizon had alleged both types of conflicts, so the parties were sensitive to the careful use of these terms. The Tribunal's substitution of inter- for intra- is not technically incorrect, since the prefix inter- has multiple dictionary meanings. However, intra- is most commonly used to mean "within" and inter- is most commonly used to mean "between." In order to avoid confusion, Claimants propose that the Award be clarified to substitute intra- for inter- in all instances.

C.     **Reference To The Stay Of The *Waudby* Case**

The Award states at page 33 that "the Waudby proceeding has been stayed by the New Jersey Federal Court apparently pending the outcome of this arbitration." That is not correct. The *Waudby* case had been stayed pending an FCC decision on still-pending CTIA and SunCom petitions concerning the preemption issue. The federal court was unaware of this arbitration when it entered that stay, and apparently was also unaware of the folly of staying an action to wait for the FCC to act on those petitions, which may never happen. The federal court has since lifted that stay and *Waudby* is moving forward without regard to this arbitration.

Claimants propose that the sentence concerning the *Waudby* stay should be stricken from the Award.

     **D.**      **Identification Of Representatives Of Class B**

     The Award at page 34 identifies the representatives for Class B as Patricia Brown and Dawn M. Zobrist.  As Class B is defined in the Award, Harold P. Schroer is also a member and an adequate representative for that Class.  The Award should be altered or amended to identify Schroer among the representatives of Class B.

     **E.**      **Identification Of Class Counsel**

     The Award at page 34 identifies lead counsel and additional counsel for the class. Inadvertently omitted from the list are Diab & Bock, LLC, 20 N. Wacker Drive, Suite 1741, Chicago, IL 60606, and the Lakin Law Firm, 301 Evans Avenue, PO Box 27, Wood River, IL 62095.

<div align="center">

**Conclusion**

</div>

     For the foregoing reasons, the Class Determination Award should be corrected, altered or amended as described above.

Dated: January 29, 2008.

     By /s/ *Scott A. Bursor*_____
        Scott A. Bursor

      LAW OFFICES OF SCOTT A. BURSOR
      500 Seventh Avenue, 10th Floor
      New York, NY  10018
      (212) 989-9113 (tel)
      (212) 989-9163 (fax)
      scott@bursor.com

      **Lead Counsel For Class A and Class B**

Bradley M. Lakin
Daniel J. Cohen
THE LAKIN LAW FIRM, P.C.
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095-1127
Ph: 618.254.1127
danc@lakinlaw.com

Phillip A. Bock
Robert M. Hatch
DIAB & BOCK, LLC
20 N. Wacker Drive, Suite 1741
Chicago, IL  60606
Telephone:  (312) 334-1970
phil@diabbockllc.com

David Pastor
GILMAN AND PASTOR LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
(617) 742-9700 (tel)
(617) 742-9701 (fax)
dpastor@gilmanpastor.com

Nadeem Faruqi
Adam R. Gonnelli
FARUQI & FARUQI, LLP
320 East 39th Street
New York, NY 10016
(212) 983-9330 (tel)
(212) 983-9331 (fax)
nfaruqi@faruqilaw.com
agonnelli@faruqilaw.com

Jayne A. Goldstein
MAGER & GOLDSTEIN, LLP
1640 Town Center Circle, Suite 216
Weston, FL 33326
(954) 515-0123 (tel)
(954) 515-0124 (fax)
jgoldstein@magergoldstein.com

**Additional Counsel For Class A and Class B**

APPENDIX A:  PROPOSED NOTICE OF CLASS DETERMINATION
(NEWSPAPER VERSION)

<u>NOTICE OF CLASS DETERMINATION</u>

# If you had a Verizon Wireless service agreement with an early termination fee, a class action arbitration may affect your rights.

You may be affected by a class action arbitration alleging that Verizon Wireless are and unenforceable contractual penalties that were charged and collected from Verizon Wireless subscribers in violation of state and federal law.

The arbitration is called *Brown v. Cellco Patnership d/b/a/ Verizon Wireless*, Case No. 11 494 01274 05, administered by the American Arbitration Association.  The arbitration tribunal decided this case should be a class arbitration on behalf of a "Class," or group of people, that could include you.  This notice summarizes your rights and options before an up-coming trial.  More information is in a detailed notice available at the website below.  If you're included, you have to decide whether to stay in the Class and be bound by whatever results, or ask to be excluded and keep your right to sue Verizon Wireless separately.  There is no money available now and no guarantee that there will be.

## ARE YOU AFFECTED?

All persons in the United States who were parties to a contract for a wireless telephone personal account with Verizon that included a provision for an early termination fee and included an arbitration clause from November 1, 2000 through November 16, 2006, excluding such persons with a California area code and California billing address for such account, are Class members.

## WHAT IS THIS CASE ABOUT?

The claimants in the arbitration allege that Verizon Wireless violated federal and state law by charging customers an early termination fee of $175.00 per telephone number if their service is terminated before the expiration of a specified term, usually 2 years.  The suit seeks to recover monetary damages, restitution and/or injunctive relief.

Verizon Wireless denies the claimants' allegations.  The arbitration tribunal has not decided whether the claims have any merit.  Over the course of the arbitration, and possibly at a trial, the lawyers for the claimants will have to prove their case.

## WHO REPRESENTS YOU?

The arbitration tribunal appointed Law Offices Of Scott A. Bursor to represent you as Lead Class Counsel, and appointed Gilman and Pastor, LLP, Faruqi & Faruqi LLP, Mager & Goldstein LLP, The Lakin Law Firm, P.C., and Diab & Bock, LLC as additional class counsel.  Patricia Brown, Harold P. Schroer, and Dawn M. Zobrist are the claimants and appointed "Class Representatives."

## WHAT ARE YOUR OPTIONS ?

You have a choice of whether to stay in the Class or not, and you must decide this now.  If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, Verizon Wireless—as part of any other lawsuit or arbitration—concerning early termination fees in service agreements from November 1, 2000 through November 16, 2002.  If money or benefits are obtained, you will be notified about how to get a share.  To stay in the Class, you do not have to do anything now.

If you ask to be excluded from the Class, you cannot get any money or benefits from this arbitration if any are awarded, but you will keep any rights to sue Verizon for these claims, now or in the future, and will not be bound by any orders or judgments of the Court. To ask to be excluded, send a letter to the address below, postmarked by May 9, 2008, that indicates you want to be excluded from this arbitration.  This letter must actually be received by the addressee on or before May 16, 2008.  Include your name, address, and telephone number.

## HOW CAN YOU GET MORE INFORMATION?

If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit **[WEB ADDRESS]**, or write to: **[ADDRESS]**.  Please do not contact the American Arbitration Association or Verizon Wireless Customer Care concerning this arbitration.

10

**APPENDIX B:  PROPOSED NOTICE OF CLASS DETERMINATION (WEBSITE VERSION)**

NOTICE OF CLASS DETERMINATION

# If you had a Verizon Wireless service agreement with an early termination fee, a class action arbitration may affect your rights.

*An arbitration tribunal authorized this notice.  This is not a solicitation from a lawyer.*

- Verizon Wireless customers have sued Cellco Partnership d/b/a Verizon Wireless, and affiliated companies (collectively, "Verizon Wireless"), alleging that Verizon Wireless violated federal and state law by charging customers an early termination fee of $175.00 per telephone number if their service is terminated before the expiration of a specified term, usually 2 years.

- This matter has been referred to American Arbitration Association pursuant to the arbitration clause included in Verizon's customer service agreements.

- The Arbitration Tribunal has allowed the arbitration to be a class action on behalf of all persons in the United States who were parties to a contract for a wireless telephone personal account with Verizon that included a provision for an early termination fee and included an arbitration clause from November 1, 2000 through November 16, 2006, excluding such persons with a California area code and California billing address for such account.

- The Arbitration Tribunal has not decided whether the claims against Verizon Wireless have any merit.  There is no money available now, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS  LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this arbitration.  Await the outcome.  Give up certain rights.**<br><br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement.  But, you give up any rights to sue Verizon Wireless separately about the same legal claims in this arbitration. |
| **ASK TO BE EXCLUDED** | **Get out of this arbitration.  Get no benefits from it.  Keep rights.**<br><br>If you ask to be excluded and money or benefits are later awarded, you won't share in those.  But, you keep any rights to sue Verizon Wireless separately about the same legal claims in this arbitration. |

11

- Your options are explained in this notice.  To ask to be excluded, you must act before May 9, 2008.

- Lawyers for the Class will try to prove the claims against Verizon Wireless in this arbitration, including at a trial, if necessary.  If money or benefits are obtained from Verizon Wireless, you will be notified about how to ask for a share.  If a judgment is entered against the claimants, you may also be notified of that fact.

- **Any questions? Read on, browse the pages on this website, or email class counsel at [email address].**

## BASIC INFORMATION

### 1.  Why did I get this notice?

This notice explains that the Arbitration Tribunal has allowed, or "certified," a class action arbitration that may affect you.  You have legal rights and options that you may exercise before the Arbitration Tribunal holds a trial.  The trial is to decide whether the claims being made against Verizon Wireless, on your behalf, are correct.  Arbitrator Eugene I. Farber of the American Arbitration Association, is overseeing this class action.  The arbitration is known as *Brown v. Cellco Partnership d/b/a/ Verizon Wireless*, Case No. 11 494 01274 05, and also includes a consolidated case known as *Zobrist v. Verizon Wireless*, Case No. 11 494 0032 05.

### 2.  What is this arbitration about?

The claimants in the arbitration allege that Verizon Wireless violated federal and state law by charging customers an early termination fee of $175.00 per telephone number if their service is terminated before the expiration of a specified term, usually 2 years.  The suit seeks to recover monetary damages, restitution and/or injunctive relief.

### 3.  What is a class action and who is involved?

In a class action arbitration, one or more people called "Class Representatives" (in this case Patricia Brown, Harold P. Schroer, and Dawn M. Zobrist) sue on behalf of other people who have similar claims.  The people together are a "Class" or "Class Members."  The Verizon Wireless customers who sued—and all the Class Members like them—are called the Claimants. The company they sued (in this case, Verizon Wireless) is called the Respondent.  One Arbitration Tribunal resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.

### 4.  Why is this case in arbitration?

This case was referred to arbitration pursuant to a provision in the Verizon Wireless Customer Agreement, Terms And Conditions, which states that "instead of suing in court, we each agree to settle disputes only by arbitration."  The Terms and Conditions permit such arbitration to be administered by the American Arbitration Association.  This doesn't change your substantive rights, just the potential forums for resolving disputes.  It means that an Arbitration Tribunal, rather than a court, will rule on the dispute.  A final ruling by the Arbitration Tribunal, however,

can be confirmed and enforced by a court.

**5.  Why is this case a class action?**

The Arbitration Tribunal decided that this case can be a class action and move towards a trial because it meets the requirements of the American Arbitration Association's Supplemental Rules for Class Arbitrations.  More information about why the Arbitration Tribunal is allowing this case to be a class action is in the <u>Class Determination Award</u> <link>.

## THE CLAIMS IN THE ARBITRATION

**6.  What are the claims in the arbitration?**

Claimants' <u>First Amended Demand For Class Arbitration</u> <link> alleges that Verizon Wireless violated federal and state law by charging customers an early termination fee ("ETF") of $175.00 per telephone number if their service is terminated before the expiration of a specified term, usually 2 years.  The suit seeks to recover monetary damages, restitution and/or injunctive relief.

**7.  How does Verizon Wireless answer?**

Verizon Wireless's <u>answer</u> <link> consists of a series of denials and defenses including allegations that Verizon's actual damages on early termination of a customer service agreement ("CSA") exceed $175.00 per customer such that the $175 ETF is reasonable and enforceable.

**8.  Has the Arbitration Tribunal decided who is right?**

The Arbitration Tribunal hasn't decided whether Verizon Wireless or the Claimants are correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Claimants will win or lose this case.  The Claimants must prove their claims in the litigation, including at a trial, if necessary

**9.  What are the Claimants asking for?**

The Claimants are asking for, among other things, monetary damages, restitution and/or injunctive relief, including a refund of all ETFs collected by Verizon Wireless during the class period, and an order requiring Verizon Wireless to correct any adverse credit reports made against class members in connection with such ETFs and prohibiting Verizon Wireless from imposing such ETFs in the future.

**10.  Is there any money available now?**

No money or benefits are available now because the Arbitration Tribunal has not yet decided whether Verizon Wireless did anything wrong, and the two sides have not settled the case.  There is no guarantee that money or benefits ever will be obtained.  If they are, you will be notified about how to ask for a share.  If there is a judgment against the claimants, you may be notified of that fact as well.

# WHO IS IN THE CLASS

You need to decide whether you are affected by this arbitration.

## 11.  Am I part of this Class?

The Arbitration Tribunal's <u>Class Determination Award</u> <link> certified two classes:

> <u>Class A – Payer Class</u>:  All persons in the United States who were charged an early termination fee pursuant to a [Verizon] Customer Service Agreement which contained an arbitration clause from November 1, 2000 through November 16, 2006, excluding persons with a California area code and California billing address for such account.

> <u>Class B – Subscriber Class</u>:  All persons in the United States who were parties to a contract for a wireless telephone personal account with Verizon that included a provision for an early termination fee and included an arbitration clause from November 1, 2000 through November 16, 2006, excluding persons with a California area code and California billing address for such account.

# YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded before the trial, and you have to decide this now.

## 12.  What happens if I do nothing at all?

You don't have to do anything now if you want to keep the possibility of getting money or benefits from this arbitration.  By doing nothing you are staying in the Class.  If you stay in and the Claimants obtain money or benefits, as a result of either the trial or a settlement, you will be notified about whether you will need to apply for a share, and if so, how to do so.  Keep in mind that if you do nothing now, regardless of whether the Claimants win or lose the trial, you will not be able to sue, or continue to sue, Verizon Wireless—as part of any other lawsuit—about the same legal claims that are the subject of this lawsuit.  You will also be legally bound by all of the Orders the Arbitration Tribunal issues and judgments any Court makes in this class action.

## 13.  Why would I ask to be excluded?

If you are a member of the Class and you already have your own lawsuit against Verizon Wireless concerning the same or similar claims, and want to continue with it, you need to ask to be excluded from the Class.  If you exclude yourself from the Class—which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class—you won't

get any money or benefits from this lawsuit even if the Claimants obtain them as a result of the trial or from any settlement (that may or may not be reached) between Verizon Wireless and the Claimants. However, you may then be able to sue or continue to sue Verizon Wireless in a separate case. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

**14. How do I ask the Arbitration Tribunal to exclude me from the Class?**

To ask to be excluded, you must send a letter, postmarked by May 9, 2008, to **[ADDRESS]**, stating that you want to be excluded from the Class in *Brown v. Cellco Patnership d/b/a/ Verizon Wireless*. Be sure to include your name and address, and sign the letter. This letter must be actually received by the addressee by May 16, 2008. You may also click this link for an Exclusion Request Form <link>.

## THE LAWYERS REPRESENTING YOU

**15. Do the Class Members have a lawyer in this case?**

The Arbitration Tribunal appointed Law Offices Of Scott A. Bursor to represent you as Lead Class Counsel, and appointed Gilman and Pastor, LLP, Faruqi & Faruqi LLP, Mager & Goldstein LLP, The Lakin Law Firm, P.C., and Diab & Bock, LLC as additional class counsel.

**16. Should I get my own lawyer?**

If you choose to remain in the Class, you do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you will be responsible for paying that lawyer. For example, you can ask him or her to appear for you at any hearings or at the trial if you want someone other than Class Counsel to speak for you.

**17. How will the lawyers be paid?**

If Class Counsel get money or benefits for the Class, they may ask the Arbitration Tribunal for fees and expenses. You won't have to pay these fees and expenses now. If the Arbitration Tribunal grants Class Counsels' request, the fees and expenses would be either deducted from any money obtained for the Class or paid separately by Verizon Wireless.

## THE TRIAL

The Arbitration Tribunal will schedule a trial to decide who is right in this case.

**18. How and when will the Arbitration Tribunal decide who is right?**

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove the Claimants' claims in this litigation, including at a trial if necessary. There is no guarantee that the Claimants will win, or that they will get any money for the Class.

**19.  Do I have to come to the trial?**

The Arbitration Tribunal has not yet decided how any trial is to be conducted.  You do not need to attend the trial.  Class Counsel will present the case for the Claimants, and Verizon Wireless will present the defenses.  You or your own lawyer are welcome to come at your own expense. If you are needed, you will be contacted at the appropriate time.

**20.  Will I get money after the trial?**

If the Claimants obtain money or benefits as a result of the trial or a settlement of these claims, you will be notified about how to participate.  You also may be notified in the event the claimants are unsuccessful.  We do not know how long this will take.

## GETTING MORE INFORMATION

**21.  Are more details available?**

Check the links on this website for case documents <link>.  You may also contact class counsel by sending an email to **[EMAIL ADDRESS]** or by writing to **[ADDRESS]**.  Please do not contact the Arbitration Tribunal.  Please also do not contact Verizon Wireless Customer Care regarding this Notice or the arbitration itself.

DATE:  March 9, 2008.