UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x
                                             :

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,  :
and VERIZON COMMUNICATIONS INC.,          :
                                             :

               Petitioners,        :
                                             :

    vs.                          :        No. 08 CV 427 (LAK)
                                           :

PATRICIA BROWN, HAROLD P. SCHROER, and    :
DAWN M. ZOBRIST, on an individual basis and on  :
behalf of others similarly situated,          :
                                           :

              Respondents.     :
                                           :
----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITIONERS' MOTION TO VACATE CLASS DETERMINATION AWARD

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
Tel: 213-683-9100 – Fax: 213-687-3702

Jeffrey S. Jacobson
Carl Micarelli
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022-3916
Tel: 212-909-6000 – Fax: 212-909-6836

Attorneys for Petitioners Cellco Partnership d/b/a
Verizon Wireless and Verizon Communications Inc.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    Procedural History ................................................................................ 2

    B.    The Arbitration Agreements ................................................................. 4

ARGUMENT ...................................................................................................... 6

I.    The Class Improperly Includes Persons Whose Agreements Prohibit Class Arbitration .............................................................................................. 6

    A.    The Arbitrator Exceeded His Powers in Declaring the Class Arbitration Waivers Unenforceable ................................................... 6

        1.    The Standard of Review Is *De Novo* ...................................... 7

        2.    The Validity of a Class Arbitration Waiver Is Not Arbitrable Absent Clear and Unmistakable Evidence of Contrary Intent ................. 8

        3.    The Parties Did Not Clearly and Unmistakably Agree to Arbitrate the Gateway Issues of Arbitrability and Validity of the Prohibition on Class Arbitration ................................................. 9

    B.    The Arbitrator Manifestly Disregarded the Law in Refusing to Apply Valid Choice of Law Clauses to His Analysis ................................... 15

    C.    The Arbitrator Exceeded His Authority in Severing Class Arbitration Waiver Provisions from the Arbitration Agreements ......................... 17

    D.    The Arbitrator Violated the FAA by Refusing to Enforce the Waivers ............. 18

II.    Certification Violates the Substantial Rights of Verizon Wireless and Putative Class Members ...................................................................................... 20

    A.    Standard of Review ........................................................................... 20

    B.    The Arbitrator Manifestly Disregarded the Law in Finding That the Requirements for Class Certification Were Satisfied ......................... 23

        1.    The Arbitrator Manifestly Disregarded the Law by Ignoring the Class Representatives' Lack of Standing ................................. 23

        2.    The Arbitrator Disregarded the Law by Ignoring the Choice of Law Provisions That Lead to Conflicts Among State Laws ......... 28

        3.    The Arbitrator Manifestly Disregarded the Law by Ignoring Clear Conflicts Within Class A Precluding Certification ................... 30

CONCLUSION ................................................................................................. 35

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AT&T Corp. v. Coeur d'Alene* Tribe,
295 F.3d 899 (9th Cir. 2002) ................................................... 3

*Bradburn Parent/Teacher Store, Inc. v. 3M*,
No. A.02-7676, 2004 WL 414047 (E.D. Pa. March 1, 2004)................ 30

*Chirco v. Gateway Oaks, LLC*,
384 F.3d 307 (6th Cir. 2004) ................................................... 23

*Commonwealth Assocs. v. Letsos*,
40 F. Supp. 2d 170 (S.D.N.Y. 1999)......................................... 20

*Cooper v. QC Fin. Servs., Inc.*,
503 F. Supp. 2d 1266 (D. Ariz. 2007) ....................................... 8

*Coutee v. Barington Capital Group, L.P.*,
336 F.3d 1128 (9th Cir. 2003) ................................................ 14

*Digitel, Inc. v. MCI Worldcom, Inc.*,
239 F.3d 187 (2d Cir. 2001).............................................. 25, 27

*DiRussa v. Dean Witter Reynolds Inc.*,
121 F.3d 818 (2d Cir. 1997)............................................... 14, 19

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977).............................................................. 22

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007).................................................... 9

*Elec. Pipe Line, Inc. v. Fluid Sys., Inc.*,
250 F.2d 697 (2d Cir. 1957).................................................. 31

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................. 6

*Gay v. CreditInform*,
511 F.3d 369 (3d Cir. 2007)................................................... 18

*Gibson v. Am. Bankers Ins. Co.*,
289 F.3d 943 (6th Cir. 2002) ................................................. 24

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S.20 (1991)............................................................... 16

*Gipson v. Cross Country Bank*,
354 F. Supp. 2d 1278 (M.D. Ala. 2005) ..................................... 7

*Green Tree Financial Corp. v. Bazzle*,
539 U.S. 444 (2003).............................................................. 7

*Hairston v. Travelers Cas. & Sur. Co.*,
232 F.3d 1348 (11th Cir. 2000) .............................................. 24

*Hansberry v. Lee*,
311 U.S. 32 (1940)............................................................... 20

*Hasbro, Inc. v. Amron*,
419 F. Supp. 2d 678 (E.D. Pa. 2006) ....................................... 27

# TABLE OF AUTHORITIES

**Page**

*Horton v. Goose Creek Indep. Sch. Dist.*,
  690 F.2d 470 (5th Cir. 1982) ................................................................ 30
*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) .............................................................. 27
*In re Copper Antitrust Litig.*,
  436 F.3d 782 (7th Cir. 2006) ........................................................... 24, 25
*Jenkins v. First Am. Cash Advance of Ga., LLC*,
  400 F.3d 868 (11th Cir. 2005) ................................................................ 7
*Katz v. Feinberg*,
  290 F.3d 95 (2d Cir. 2002)......................................................... 6, 10, 11
*Local 1199 v. Brooks Drug Co.*,
  956 F.2d 22 (2d Cir. 1992)...................................................................... 5
*Lozano v. AT&T Wireless Services, Inc.*,
  504 F.3d 718 (9th Cir. 2007) ................................................................ 15
*Lusardi v. Xerox Corp.*,
  975 F.2d 964 (3d Cir. 1992).................................................................. 23
*Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*,
  253 F.3d 573 (11th Cir. 2001) .......................................................... 25, 27
*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).................................................................. 20, 21, 27
*Prostyakov v. Masco Corp.*,
  __ F.3d __, No. 06-3928, 2008 WL 170043 (7th Cir. Jan. 22, 2008).......... 14
*Reliastar Life Ins. Co. of New York v. EMC Nat'l Life Ins. Co.*,
  473 F. Supp. 2d 607 (S.D.N.Y 2007)........................................................ 5
*Riensche v. Cingular Wireless*,
  No. C06-1325Z, 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ............. 17
*Robinson v. City of Chicago*,
  868 F.2d. 959 (7th Cir. 1989) ............................................................... 23
*Rocky v. King*,
  900 F.2d 864 (5th Cir. 1990) ................................................................ 23
*Sec. Ins. Co. of Hartford v. TIG Ins. Co.*,
  360 F.3d 322 (2d Cir. 2004).................................................................. 17
*Shofer v. Hack Co.*,
  970 F.2d 1316 (4th Cir. 1992) .............................................................. 24
*Shroyer v. New Cingular Wireless Servs., Inc.*,
  498 F.3d 976 (9th Cir. 2007) ................................................................ 17
*Smaldone v. Senkowski*,
  273 F.3d 133 (2d Cir. 2001).................................................................. 26
*Southland Corp. v. Keating*,
  465 U.S. 1 (1984).................................................................................. 21
*Stiles v. Home Cable Concepts, Inc.*,
  994 F. Supp. 1410 (M.D. Ala. 1998) ....................................................... 9

# TABLE OF AUTHORITIES

**Page**

*Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*,
  435 F. Supp. 2d 382 (S.D.N.Y. 2006)..................................................... 15
*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
  891 F. Supp. 751 (E.D.N.Y. 1995) ......................................................... 31
*Tempo Shain Corp. v. Bertek, Inc.*,
  120 F.3d 16 (2d Cir. 1997)...................................................................... 20
*Tucker v. Phyfer*,
  819 F.2d 1030 (11th Cir. 1987) .............................................................. 23
*Valley Drug Co. v. Geneva Pharms., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) .............................................................. 30
*Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*,
  103 F.3d 9 (2d Cir. 1997) ....................................................................... 19

## STATE CASES

*Dickler v. Shearson Lehman Hutton, Inc.*,
  596 A.2d 860 (Pa. Super. Ct. 1991)....................................................... 21
*Discover Bank v. Superior Court*,
  113 P.3d 1100 (Cal. 2005) ...................................................................... 15
*Guiliano v. Cleo, Inc.*,
  995 S.W.2d 88 (Tenn. 1999).............................................................. 28, 30
*Keating v. Superior Court*,
  31 Cal. 3d 584 (1982) ............................................................................. 21
*Muhammad v. County Bank of Rehoboth Beach, Del.*,
  912 A.2d 88 (N.J. 2006)................................................................ 7, 14, 17

## FEDERAL STATUTES

9 U.S.C. § 10(a)(4)......................................................................................... 5
9 U.S.C. § 10................................................................................................... 3
9 U.S.C. § 10(a)(3)....................................................................................... 20

## FEDERAL RULES

Federal Rule of Civil Procedure 23(a)(4) ................................................... 34

## FEDERAL REGULATIONS

47 C.F.R. § 1.718 .......................................................................................... 26

## TABLE OF AUTHORITIES

**Page**

## OTHER AUTHORITIES

7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1768 (2005) .................... 30

David S. Clancy & Matthew M.K. Stein,
  *An Uninvited Guest*, 63 BUS. LAW. 55 (2007) ........................................................ 20

Jean R. Sternlight, *As Mandatory Binding Arbitration Meets the Class Action*, *Will the Class
  Action Survive?*, 42 WM. & MARY L. REV. 1 (2000) ................................................ 21

Maureen A. Weston,
  *Universes Colliding*, 47 WM. & MARY L. REV. 1711 (2006) .................................... 20

## INTRODUCTION

Verizon Wireless asks the Court to vacate an award issued in an American Arbitration Association ("AAA") proceeding certifying two nationwide classes comprising tens of millions of current and former Verizon Wireless customers (the "Award"). In taking this extraordinary step, the Arbitrator exceeded the limitations on his powers imposed by the parties' agreement and by settled law in pursuit of his own notions of "equity and fairness." Exhibit ("Ex.") 1 at 002. This Court has ample authority to and should vacate this *ultra vires* award.

The arbitration concerns a $175 early termination fee ("ETF") that applies to customers who terminate service before the end of their contract term, and which Respondents contend is an unlawful liquidated damages provision. The arbitration is a consolidated proceeding that began as two purported class actions in Florida and Illinois state courts, and is being conducted pursuant to the arbitration provisions of customer service agreements ("CSAs") that also contain the ETF provisions. After briefing and hearings, which were held in this district, the Arbitrator rendered the ruling at issue. Verizon Wireless promptly filed a petition in this Court to vacate the Award, as authorized by the Federal Arbitration Act ("FAA") (which provides that a petition to vacate an award may be brought in the judicial district in which the arbitration was held) and the AAA's rules (which contemplate judicial review of a class certification award).

The Award exceeded the Arbitrator's authority in two respects. First, the Arbitrator improperly certified a class that includes customers whose CSAs expressly prohibit class arbitration. Because the Arbitrator's authority derived solely from the parties' consent as embodied in the arbitration agreement, he lacked jurisdiction over millions of customers who agreed to forego class arbitration. The Arbitrator had no authority to consider the validity of the prohibition on classwide arbitration, which is an issue to be resolved by the courts.

The Arbitrator not only asserted jurisdiction he did not have, but also refused to apply the legal standards the parties chose to resolve that question. Despite acknowledging the validity of the choice of law provisions in the CSAs, which required application of each customer's home state law, he declared all of the class arbitration waiver provisions unenforceable, contrary to the chosen laws of many states that have upheld such provisions. Further, he declared that the arbitration agreements could be severed from and enforced without the class arbitration waivers, even where the agreements expressly state that if the waiver is deemed unenforceable then the parties agree not to arbitrate. Finally, the FAA preempts the laws of those states, upon which the Arbitrator relied, that deem a prohibition on class arbitrations unconscionable.

The Award exceeded the Arbitrator's authority in another respect as well: even as to those customers whose CSAs do permit a classwide arbitration, the Award violates settled federal standards for class certification. The Court must scrutinize this class certification award with greater care than an ordinary commercial arbitration award, to ensure that the due process rights of both Verizon Wireless and the putative class are protected, and that the proceeding is fundamentally fair. The Award fails these standards. A class cannot be certified because the class representatives either lack standing, are not members of the class they purport to represent, or both. Further, irremediable conflicts of interest within the class preclude certification.

## BACKGROUND

### A.    Procedural History

 The proceeding at issue, *Brown & Verizon Wireless*, No. 11 459 01274 05, and *Zobrist & Verizon Wireless*, No. 11 494 0032 05, is the result of the consolidation of two AAA arbitrations challenging Verizon Wireless's $175 ETF as an unlawful penalty. *Zobrist* was originally filed on August 9, 2002 in Illinois state court on behalf of a putative class of Illinois residents, and was sent to arbitration in February 2005 following the grant of Verizon Wireless's

motion to compel arbitration. *Brown* was filed as a putative class action on behalf of Florida residents in Florida state court on May 17, 2004. On June 3, 2005, Brown filed a demand for class arbitration with the AAA on behalf of a nationwide class of Verizon Wireless customers. Both Brown's and Zobrist's CSAs listed the AAA as the arbitral forum. *See* Ex. 15; Ex. 17.[1]

The AAA's Policy on Class Arbitrations states that the AAA will not administer "demands for class arbitration where the underlying agreement prohibits class claims," and that the AAA "will not seek to make decisions" concerning "whether an agreement that prohibits class actions is enforceable," a question that "the courts appeared to have reserved for themselves." Ex. 23 at 126. Verizon Wireless stated as an Affirmative Defense that based upon this Policy "and Supplementary Rules for Class Arbitrations, and the terms of the underlying customer service agreements ("CSA") of Claimant and members of the putative class, Claimant is precluded from seeking arbitration on a class basis." Ex. 24 at 129; Ex. 25 at 138.

In *Zobrist*, the arbitrator then assigned to the case construed the CSA to which Zobrist was a party—which was silent on class arbitration—to not prohibit class arbitration. In *Brown*, Verizon Wireless chose not to contest that the CSA to which Brown was a party—which says that arbitration shall be conducted on an "individual basis" (Ex. 15)—does not bar class arbitration. Ex. 26. (As noted below, however, other CSAs *expressly* prohibit class arbitration, and Verizon Wireless contests the Arbitrator's authority to certify a class of those customers.)

Eventually, the two cases were consolidated, and Respondents filed a first consolidated arbitration demand, asserting claims for violation of 47 U.S.C. § 201(b), as well as common law and statutory claims under state laws. Ex. 27. Verizon Wireless's Answering Statement asserts

---

[1] All exhibits referenced herein are attached to the Declaration of Jonathan H. Blavin in Support of Petitioners' Motion to Vacate Class Determination Award. All customer service agreements ("CSAs") referenced herein are attached to the Blavin Declaration as Exhibits 3 through 21.

as an affirmative defense that "Claimants and members of the putative Claimant class are subject to class waivers in their customer service agreements with Verizon Wireless that prohibit their inclusion in any certified class in arbitration under AAA rules."  Ex. 28 at 185.

Respondents moved to certify two classes encompassing class members from all states except California:[2] first, former Verizon Wireless subscribers who actually were assessed an ETF (Class A); and second, current subscribers whose CSAs contain an ETF provision (Class B). In both cases, the class would include persons with CSAs whose arbitration provision was "substantially similar" to those of the class representative.  Ex. 29 at 190, 192, 197.

On January 10, 2008, the Arbitrator issued his Award.  He certified Classes A and B but expanded the class definition for Class B to include all persons who "were" parties to a CSA containing an ETF, rather than those who "are" parties to such a contract, as Respondents had proposed.  Ex. 1 at 004.  This change, which appears to be inadvertent (*infra* note 7), would expand the class to include *every* customer Verizon Wireless has ever had during the class period, including those who were never assessed an ETF.

On January 16, 2008, Verizon Wireless filed a petition to vacate the Award.  The petition was filed in this District because the arbitration was conducted in Manhattan, *see* 9 U.S.C. § 10, and because the consolidated arbitration demand includes a claim under 47 U.S.C. § 201(b), as to which the federal courts have exclusive jurisdiction, *see AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002).

B.    **The Arbitration Agreements**

All Verizon Wireless customers enter into a CSA, and all putative class members' CSAs contained an arbitration clause.  The clauses can be grouped into four categories.

---

[2] California was excluded because of a prior-filed case involving many of the same counsel.  *See In re Cellphone Termination Fee Cases*, J.C.C.P. No. 4332 (Cal. Super. Ct., Alameda County).

1. ***Prior to July 2002.***  Prior to July 2002, Verizon Wireless's CSAs reflected the varying practices of its legacy companies.  Most of the CSAs in this period stated:

> EVEN IF APPLICABLE LAW PERMITS CLASS ACTIONS OR CLASS ARBITRATIONS, YOU WAIVE ANY RIGHT TO PURSUE ON A CLASS BASIS ANY SUCH CONTROVERSY OR CLAIM AGAINST [VERIZON WIRELESS].

Ex. 6 at 047, Ex. 10 at 064; *see also* Ex. 4 at 042, Ex. 7 at 051, Ex. 9 at 061 (substantially same).

Other agreements during this period stated:

> YOU MAY USE [AAA] PROCESS FOR A PARTICULAR DISPUTE, SO LONG AS IT DOESN'T PERMIT CLASS-WIDE ARBITRATION . . . . EVEN IF A LAW OR AN ARBITRATION RULE WOULD PERMIT A CLASS ACTION OR A CLASS ARBITRATION, WE EACH WAIVE ANY RIGHT TO SUCH A PROCEDURE.

Ex. 8 at 055.  Yet other CSAs, such as Zobrist's, were silent on class arbitration.  *See* Ex. 17.

2. ***July 2002-December 2004***: In July 2002, Verizon Wireless introduced a uniform CSA with an arbitration provision stating that all arbitrations were to be decided "on an individual basis."  *See* Ex. 11 at 066.  The CSAs of respondents Brown and Schroer contain this language. *See* Ex. 15 at 086; Ex. 16 at 089.  Verizon Wireless does not contest in this proceeding that the CSAs from July 2002-December 2004 do not prohibit classwide arbitration.

3. ***January 2005-January 2006***.  A uniform, national CSA that took effect in January 2005 stated: "THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF [AAA] PROCEDURES OR RULES WOULD."  Ex. 13 at 073.

4. ***February 2006-present***.  The February 2006 CSA retained the clause from the January 2005 CSA expressly prohibiting class arbitration, and further states:

> IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) ABOVE IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.

Ex. 20 at 117.

**ARGUMENT**

I.    **THE CLASS IMPROPERLY INCLUDES PERSONS WHOSE AGREEMENTS PROHIBIT CLASS ARBITRATION**

Although the CSAs prior to July 2002 and after December 2004 expressly prohibit class arbitration, the Arbitrator included them in the class. He did so by (1) asserting that the validity of the prohibitions on classwide arbitration was arbitrable, (2) determining that these provisions were unconscionable, and (3) severing these provisions from the remainder of the arbitration clauses, even where the clauses expressly prohibit such severance. As discussed below, each of these three steps violated well-settled law and each gives this Court an independent basis and authority to vacate the Award insofar as it included millions of customers subject to pre-July 2002 and post-December 2004 CSAs.

A.    **The Arbitrator Exceeded His Powers in Declaring the Class Arbitration Waivers Unenforceable**

Under the FAA, an award may be vacated "[w]here the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10(a)(4). The limits of the arbitrator's powers are defined by the parties' contract. *Local 1199 v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("The scope of authority of arbitrators . . . is determined by the agreement or submission" which "serves not only to define, but to circumscribe, the authority of arbitrators.") (citations and quotations omitted). An arbitrator exceeds his powers where he "resolve[s] an issue that the parties' agreement did not authorize him to resolve,'" *Reliastar Life Ins. Co. of New York v. EMC Nat'l Life Ins. Co.*, 473 F. Supp. 2d 607, 608 (S.D.N.Y. 2007) (citations omitted), or "merely administered his own brand of justice in contradiction of the clearly expressed language of the contract." *Local 1199*, 956 F.2d at 26.

### 1.    The Standard of Review Is *De Novo*

The Court must review *de novo* the Arbitrator's assertion that he had the power to determine whether the validity of the class arbitration waiver was itself an arbitrable issue.

The Court, not the Arbitrator, must decide whether the Arbitrator has the power to determine the arbitrability of a given issue—the "arbitrability of arbitrability."  In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court distinguished among three issues that may arise in an arbitration.  The first is a particular issue in dispute—*e.g.*, whether one party is liable to another.  The second is whether the parties agreed to arbitrate that particular issue.  The third issue is "*who should have the primary power to decide the second matter.*"  *Id*. at 942 (emphasis in original).  The Court resolved the third issue, concluding that courts have the power to decide whether an issue is arbitrable unless the parties "*clear*[*ly*] *and unmistakab*[*ly*]" provided that arbitrability would be submitted to an arbitrator.  *Id*. at 944 (emphasis added).

Because the Court must decide the scope of arbitrable issues, the Arbitrator's finding that the validity of the class arbitration waiver was arbitrable is "subject to independent review by the courts."  *Id*. at 947; *see also Katz v. Feinberg*, 290 F.3d 95, 97 (2d Cir. 2002) ("we affirm the district court's conclusion that determination of the arbitrability of arbitrability lay with it and not with the arbitration panel, and that, therefore, *de novo* review of the panel's arbitrability findings was appropriate").  This *de novo* standard of review would be altered only if the Court were to find that the parties had clearly and unmistakably provided for the Arbitrator to determine the scope of arbitrable issues.  As discussed below, the parties did not clearly and unmistakably agree to permit the Arbitrator to determine whether the validity of the class waiver was arbitrable.  Accordingly, the Court must independently determine whether the parties agreed to arbitrate the validity of the class arbitration waiver.

### 2. The Validity of a Class Arbitration Waiver Is Not Arbitrable Absent Clear and Unmistakable Evidence of Contrary Intent

In conducting its own independent review of whether the validity of the class arbitration waiver is arbitrable, the Court must be guided by another strong presumption against arbitrability. The *validity* of a provision in an arbitration clause that prohibits class arbitration is also a gateway issue to be resolved by a court, unless the parties clearly and unmistakably agree to arbitrate that issue. In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003), the Supreme Court,[3] invoking the *First Options* framework, distinguished the "interpretive" question—whether the contract should be construed to forbid a class arbitration—from the "validity" question—whether the contract, so interpreted, would be enforceable. The Court held that the interpretive question (also known as clause construction) is for the arbitrator to decide, but any question of validity of the arbitration provisions is to be resolved by the courts "in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary." *Id.* at 452 (citation omitted).

Thus, many courts have held a challenge to the validity of a class arbitration waiver is "for the court, and not an arbitrator, to determine." *See e.g.*, *Gipson v. Cross Country Bank*, 354 F. Supp. 2d 1278, 1289 (M.D. Ala. 2005) (enforceability of a provision that "expressly and unequivocally" prohibits class arbitrations is determined by the courts) *id.* at 1286-87; *see also Jenkins v. First Am. Cash Advance of Ga.*, *LLC*, 400 F.3d 868 (11th Cir. 2005) (court has jurisdiction to decide whether class arbitration waiver is unconscionable because challenge to validity of waiver constitutes a challenge to the validity of the arbitration agreement itself); *Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 96 (N.J. 2006) (court, not

---

[3] The lead opinion in *Green Tree* was joined by four Justices. Justice Stevens concurred in the result but stated that the plurality opinion, which expresses a view "close to [his] own," should be deemed "controlling." 539 U.S. at 455 (Stevens, J., concurring in the result).

arbitrator, has power to determine whether class arbitration waiver is unconscionable); *Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1276 (D. Ariz. 2007) (same).

The issue in this case was validity, not interpretation.  The pre-July 2002 and post-December 2004 CSAs at issue in this case expressly prohibited class arbitration.  The Arbitrator acknowledged the extensive "caselaw holding that unconscionability" of a class arbitration waiver "is a gateway issue to be decided by a Court and not an arbitrator."  Ex. 1 at 018.  Accordingly, the Arbitrator had no power to decide this gateway issue absent clear and unmistakable evidence that the parties agreed to arbitrate the validity of the provision in the arbitration agreement barring class arbitration.  As shown below, there is *no* such evidence, much less evidence that is clear and unmistakable.

### 3.    The Parties Did Not Clearly and Unmistakably Agree to Arbitrate the Gateway Issues of Arbitrability and Validity of the Prohibition on Class Arbitration

The Arbitrator based his assertion of authority to decide the validity of the class arbitration waiver on language in some of the CSAs and on statements that Verizon Wireless made to the Florida court in which one of the underlying actions originated.  Neither of these supported the inference the Arbitrator drew from it.  Neither point, together or separately, provided clear and unmistakable evidence of an intent to submit to the Arbitrator either a determination of the scope of arbitrable issues or the validity of the class arbitration waiver.

### a.    The Arbitrability Clause Does Not Submit to Arbitration the Scope of Arbitrable Issues or the Validity of the Class Arbitration Waiver

The Arbitrator relied first on the language contained in some of the CSAs stating that "[o]nly an arbitrator can decide whether an issue is arbitrable."  Ex. 1 at 018.  This reliance was entirely inappropriate with respect to customers under post-December 2004 CSAs, because those CSAs expressly barred class arbitration and did not contain this language.  *See* Ex. 17; Ex. 5; Ex.

13; Ex. 14.[4]  The Arbitrator could not invalidate the class arbitration waiver in these CSAs based on language that did not appear in them.

The Arbitrator's position was wrong, moreover, even with respect to the CSAs prior to July 2002 that contained this language.  This sentence allows the arbitrator to decide whether certain claims are covered by the arbitration agreement.  It does not clearly and unmistakably indicate the parties' intent to submit gateway issues to the arbitrator.

In *Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410 (M.D. Ala. 1998), for example, the plaintiff argued that the respondent's arbitration provision was "not enforceable" because he "did not understand the agreement." *Id*. at 1414.  The parties' arbitration provision provided that "all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator." *Id*. at 1415. The court concluded that the clause did not constitute "'clea[r] and unmistakabl[e]' evidence" of intent to submit to arbitration the validity of the agreement to arbitrate because it "is possible that the agreement . . . could be interpreted as only a statement regarding the resolution of the potential scope of the arbitration clause at issue." *Id.*  Given that there was "some dispute over the meaning of the arbitrability clause," the court held that it, not the arbitrator, should determine the validity of the provision. *Id*.; *see also Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221-22 (3d Cir. 2007) (contractual provision giving arbitrator power to determine "the issue of arbitrability" does not constitute clear and unmistakable intent to shift from courts to arbitrators those gateway issues that are presumptively for courts to decide).

Moreover, the CSAs containing this language also incorporate the AAA's rules regarding class arbitration, which *assign to courts, not arbitrators*, the determination of the validity of a

---

[4] Only one pre-July 2002 CSA contained this language.  *See* Ex. 8.  Other pre-July 2002 CSAs stated "[i]n all arbitrations," the "arbitrator will decide whether an issue is arbitrable or not." *See* Exs. 3, 4, 6, 7, 9, 10.

class arbitration waiver.  By listing the AAA as the arbitral forum, the CSAs incorporate the

AAA Supplementary Rules for Class Arbitration (Ex. 22), which "apply to any dispute arising

out of an agreement that provides for arbitration pursuant to any of the rules" of the AAA "where

a party submits a dispute to arbitration on behalf of or against a class or purported class."  Ex. 22

at 121 (Rule 1(a)).  The AAA Policy on Class Arbitrations states that the AAA "will not seek to

make decisions" concerning "whether an agreement that prohibits class actions is enforceable," a

question that "the courts appeared to have reserved for themselves."  Ex. 23 at 126.  Rule 4(a) of

the Supplementary Rules incorporates that Policy into the rules, stating that the arbitrator "shall

determine whether the arbitration should proceed as a class arbitration" only where "the

arbitrator is satisfied that the *arbitration clause permits* the arbitration to proceed as a class

arbitration . . . or where *a court* has ordered that an arbitrator determine whether a class

arbitration may be maintained."  Ex. 22 at 122 (emphasis added).

The CSAs, by incorporating the AAA's rules, limit the Arbitrator's power both to

determine the scope of arbitrable issues and to determine the validity of the class arbitration

waiver.  Accordingly, the arbitration clause cannot be read as clearly and unmistakably assigning

these gateway issues to the Arbitrator.  *See Katz*, 290 F.3d at 97 (presence of broad arbitration

clause and specific clause assigning certain decisions to another authority creates ambiguity and

requires courts to decide arbitrability).  The Court should independently review the Arbitrator's

assertion of authority to decide the validity of the class waivers, and based on that review set

aside his conclusion as inconsistent with the AAA's rules and the baseline *Green Tree* rule that

the validity of a class arbitration waiver is for the courts.

b.    Verizon Wireless' Statements to the Florida State Court Did Not Clearly and Unmistakably Submit the Issue to the Arbitrator

The Arbitrator also stated that he had the authority to decide the validity issue because the "record" purportedly "establishes that Verizon stipulated to a Court that the arbitrator should decide 'threshold' questions." Ex. 1 at 018. The Arbitrator's sole basis for this supposed stipulation was the following portion of a letter Verizon Wireless's counsel wrote to the Florida state court in the *Brown* proceedings:

> [In light of its statements in *Campbell*,] Verizon Wireless wishes to withdraw its argument to this Court that the "on an individual basis" language expressly prohibits class action arbitrations and thus must be decided, as a "gatekeeping" matter, by this Court. Rather, [it] agrees that the question whether the contract language permits class arbitrations, as well as the other threshold questions that Verizon has presented to this Court, may be decided by the arbitrator.

*Id*. (quoting Ex. 31 at 204) (brackets in original). This letter was submitted to the Florida court in connection with a motion to stay the *Brown* arbitration on the basis, among others, that Brown's demand for class arbitration was inconsistent with the "on an individual basis" language of her arbitration agreement. Verizon Wireless conceded that this language in Brown's particular CSA does not unequivocally prohibit class arbitrations and therefore raises an interpretive question for the arbitrator. The Arbitrator, however, interpreted this passage to mean that Verizon Wireless "advised the Florida State Court in writing that the arbitrator and not a Court has authority to decide 'threshold questions' including those related to the *validity* of the class arbitration waiver clause" in *every* CSA, not just the one at issue in *Brown*. *Id*. at 019 (emphasis added).

The Arbitrator's reliance on this letter was manifestly incorrect. Initially, the letter does not remotely suggest that Verizon Wireless was agreeing to permit the Arbitrator to determine the scope of the issues it agreed to arbitrate, and the Arbitrator did not even claim that it did. Certainly, the letter cannot be construed as a clear and unmistakable indication of intent to permit

the Arbitrator to determine the scope of arbitrable issues.  As a result, the Arbitrator's conclusion

that the letter submits the validity of the class waiver to arbitration is subject to *de novo* review.

Nor does the letter constitute clear and unmistakable evidence of an intent to submit the

validity of the class waiver to arbitration.  At the outset, the Arbitrator erroneously applied

Verizon Wireless's statements concerning the arbitration provision in Brown's CSA to *all*

arbitration provisions in *all* CSAs throughout the class period.  Verizon Wireless's statements in

this letter, however, concerned only the *particular* arbitration provision to which Brown

agreed—a provision in effect only from July 2002 to December 2004.  *See* Ex. 32 at 235:8-11;

236:7-11; 237:13-20; 240:11-241:6; Ex. 33 at 271.  Verizon Wireless's stay papers made clear its

position that arbitration clauses in other CSAs "should not be" (Ex. 54 at 888) considered in

determining whether Brown's CSA permitted class arbitration.  Brown agreed, arguing to the

Florida court that "[t]he arbitration agreement at issue here is the October 2002 version of the

Verizon Wireless Customer Agreement . . . . That is the *only agreement* upon which plaintiff's

arbitration demand is based.  And that is the *only agreement* upon which AAA is basing its

administration of the ongoing arbitration.  There is no dispute that this October 2002 version *is*

*the only operative agreement*."  Ex. 34 at 305 n.4 (emphasis added).

This distinction is vitally important because, unlike the July 2002 to December 2004

arbitration provision, which stated only that the arbitration occur "on an individual basis," the

arbitration provisions of Verizon Wireless CSAs prior to and after this time period contained

language that expressly prohibited class arbitrations.  *See supra* at 5-6.  At most, Verizon

Wireless's letter provides that an arbitrator could decide whether the language of Brown's

*particular* arbitration provision permits class arbitrations.

The Arbitrator's reasoning was also incorrect in that he conflated *clause construction—i.e.*, interpreting the provision to determine whether it prohibits class arbitration—and *validity—i.e.*, whether an agreement that expressly prohibits class arbitration is enforceable.  Verizon Wireless made this distinction clear to the Arbitrator.  Ex. 32 at 233:8-12; 233:23-234:18; 238:24-239:11; 240:22-241:6; *see supra* at 8-9.[5]  Although Verizon Wireless stated that it "agrees that the question whether the *contract language permits class arbitrations*" (Ex. 1 at 018) may "be decided by the arbitrator," Verizon Wireless consistently maintained that, under AAA's rules, it could not administer a class arbitration where the agreement expressly prohibits class arbitration.  *Supra* at 3-4.

Because the parties did not clearly and unmistakably refer the issue of the enforceability of the class waiver to the Arbitrator, the Court should independently review the Arbitrator's decision that he could address that issue, and based on such review should vacate the Award as inconsistent with the parties' agreements.  Because the validity of the prohibitions on class arbitration can only be adjudicated by the courts, the Arbitrator exceeded his authority in deeming those prohibitions invalid.  Accordingly, the Award must be vacated insofar as it includes in the class persons subject to pre-July 2002 and post-December 2004 CSAs.

---

[5] The Arbitrator implied that his authority over Brown's CSA extended to other CSAs because "decisions regarding the application of Supplementary Rule 4(a)(6) must be made by the arbitrator."  Ex. 1 at 018.  That rule concerns whether "each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members."  Ex. 22 at 122 (Supplementary Rule 4(a)(6)).  Comparing agreements in determining whether standards for class certification are met, however, is wholly different from determining whether a class arbitration waiver in an absent class member's CSA is valid.  Nothing in Supplementary Rule 4(a)(6) suggests that the Arbitrator had the power to determine the validity of class arbitration waivers.  On the contrary, as noted, AAA's rules expressly prohibit the Arbitrator from making that determination.

B.   **The Arbitrator Manifestly Disregarded the Law in Refusing to Apply Valid Choice of Law Clauses to His Analysis**

The Arbitrator lacked authority to determine the validity of the class arbitration waivers. But even if he had such authority, his conclusion that the prohibition on class arbitration was invalid also would have exceeded his authority.  Substantially all of the CSAs at issue state that the agreement is "governed by the laws of the state encompassing the area code assigned to your wireless phone number, without regard to the conflicts of laws rules of that state."  *See* Ex. 8 at 056, Ex. 11 at 066, Ex. 12 at 0067, Ex. 13 at 074, Ex. 14 at 079, Ex. 15 at 087, Ex. 16 at 089, Ex. 18 at 100, Ex. 19 at 109, Ex. 20 at 118; *see also* Ex. 3 at 038, Ex. 4 at 042, Ex. 6 at 047, Ex. 7 at 051, Ex. 9 at 058, Ex. 10 at 064, Ex. 21 at 120 (substantially similar).  The Arbitrator did not question the enforceability of these provisions.  Ex. 1 at 028-29 ("law seems clear that such choice of law provisions should be enforced").  Nonetheless, he failed to engage in *any* choice of law analysis with respect to the enforceability of the class arbitration waiver.  By acknowledging the validity of the choice of law clause, yet failing to apply it, the Arbitrator manifestly disregarded the law.  *See Prostyakov v. Masco Corp.*, __ F.3d __, No. 06-3928, 2008 WL 170043, at *6 (7th Cir. Jan. 22, 2008) ("we will vacate an award . . . when the arbitrator consciously refused to apply the parties' agreed-upon choice of law"); *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) ("[a]rbitrators act beyond their authority if they fail to adhere to a valid, enforceable choice of law clause"); *see also DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997) (arbitral decision may be vacated based on "manifest disregard of the law").

The Arbitrator did not engage in this state-by-state analysis, as was required.  Instead, he found the class arbitration waiver to be unenforceable anywhere in the country, relying solely on *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 912 A.2d 88 (N.J. 2006), and

*Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005). Ex. 1 at 020-21. These cases do not establish a uniform, nationwide rule. Indeed, at least nine states have upheld class arbitration waivers. Verizon Wireless cited these cases to the Arbitrator, Ex. 35 at 401, and he ignored them. The cases upon which the Arbitrator relied, moreover, were especially inapposite, as he had already found that the choice of law provision precluded classwide application of New Jersey law, Ex. 1 at 030, and he excluded California customers from the class.

    *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) (discussed in Ex. 52 at 834-35), emphasized that the conflict among states' laws regarding the enforceability of class arbitration waivers, and the need to conduct "a state-by-state review of contract conscionability jurisprudence" bearing on this issue, created predominating individualized issues that precluded class certification of the plaintiff's arbitrable claims. *Id*. at 728. Although the district court "found the class action waiver to be unconscionable under California law, it also recognized that the waiver may not be unconscionable under other states' laws" and the "law on predominance requires the district court to consider variations in state law." *Id*.

    The Arbitrator's failure to acknowledge the conflict of law issues stemming from the enforceability of the class arbitration waiver in his class certification analysis mandates vacatur of the award. *See Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*, 435 F. Supp. 2d 382, 385-86 (S.D.N.Y. 2006) (if the "Panel had made the choice-of-law analysis that it was mandated to make but chose to ignore, it would have had to recognize that what Stolt presented was tantamount to an established rule of maritime law;" "arbitrators manifestly disregarded a well defined rule of governing maritime law that precluded class arbitration").

**C.    The Arbitrator Exceeded His Authority in Severing Class Arbitration Waiver Provisions from the Arbitration Agreements**

The Arbitrator continued to exceed the limits of his authority by refusing to consider whether the basic agreements to arbitrate could survive his declaration that the class arbitration waivers within them were invalid.  The Arbitrator should have considered, but did not, whether the class waiver provisions could be severed from the agreements to arbitrate or whether their purported invalidity would render the agreements to arbitrate invalid in their entirety.

Most of the CSAs in effect before July 2002, for example, stated that any provision that "materially impair[s]" the company's or customer's "rights or duties" is not severable.  Ex. 3 at 038; Ex. 4 at 042; Ex. 6 at 047; Ex. 7 at 051; Ex. 8 at 056; Ex. 9 at 058; Ex. 10 at 064.  Because a principal benefit of arbitration is its "simplicity" and "expedition," (*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.20, 31 (1991)), a ruling that would transform a contemplated individual arbitration into a complex and costly class action materially undermines the parties' rationale for selecting arbitration.

Not only did the Arbitrator refuse to analyze severability in these pre-July 2002 contracts, he even disregarded *express* language in the post-2005 CSAs, which stated that "IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) ABOVE IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY."  Ex. 20 at 117.  As a result, he purported to assert jurisdiction over the claims of millions of class members who specifically agreed *not to arbitrate at all* if the class arbitration waivers were deemed invalid.

The Arbitrator refused to engage in a severability analysis, declaring that it would be "unconscionable" (Ex. 1 at 021), procedurally "untenable," and inefficient (*id*. at 022-23) to tie the validity of the agreement to arbitrate to the class arbitration waiver.  These considerations—

erroneous on their own terms—are, in any event, insufficient to create arbitral jurisdiction where it does not otherwise exist. An arbitrator's authority derives from consent, not equity. *Sec. Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 325 (2d Cir. 2004). The customers with a non-severability clause did not consent to the Arbitrator's determining their rights if the class arbitration waiver was held invalid. Yet the Arbitrator in effect reasoned that it would be inequitable for him not to assert jurisdiction over millions of customers over whom his lack of jurisdiction was clear and express.

There is no doubt that an agreement not to arbitrate on a class basis, and to send the case to court instead, is enforceable. The Ninth Circuit, for example, enforced a non-severability provision after finding the class action waiver unenforceable under California law. *See Shroyer v. New Cingular Wireless Servs., Inc*., 498 F.3d 976, 993 (9th Cir. 2007) ("[d]ue to the non-severability clause, under California law Cingular's entire arbitration clause is void by its own terms"); *see also Riensche v. Cingular Wireless*, No. C06-1325Z, 2006 WL 3827477, at *13 (W.D. Wash. Dec. 27, 2006). The Arbitrator's assertion of jurisdiction over customers under CSAs with a non-severability clause was improper.

### D.    The Arbitrator Violated the FAA by Refusing to Enforce the Waivers

Finally, the Arbitrator's refusal to enforce the class arbitration waivers violates the FAA, which preempts state laws that prevent enforcement of arbitration agreements as written if doing so entails treating arbitration agreements with particular disfavor. That is precisely what the Award does, and this error provides another, independent basis for overturning the Award.

The Arbitrator manifestly disregarded federal law by applying a state law rule that targets a particular category of arbitration agreements for special scrutiny. Relying on *Muhammad*, 912 A.2d 88 (N.J. 2006), and a similar California case, the Arbitrator deemed the class arbitration waivers in every Verizon Wireless CSA "unconscionable." Ex. 1 at 020.

The Arbitrator altogether ignored *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) (discussed in Ex. 53 at 867-69), which held that reliance on the *Muhammad* rationale is preempted. *Gay* held that the FAA preempted Pennsylvania caselaw holding, just as *Muhammad* did, that class arbitration waivers are unconscionable in cases involving small amounts in controversy. The Pennsylvania rule, the Third Circuit concluded, was "not based 'upon such grounds as exist in law or in equity for the revocation of *any* contract' pursuant to section 2 of the FAA, and therefore cannot prevent enforcement of the arbitration provision in this case." *Id.* at 395 (citations omitted) (alterations and emphasis in original). While the Pennsylvania authorities were "written ostensibly to apply general principles of contract law," the Third Circuit rejected as "sophistry" the argument that the cases "d[id] not 'rely on the uniqueness of an agreement[s] to arbitrate as a basis for a state-law holding that enforcement would be unconscionable.'" *Id.* (citation omitted).

*Muhammad*, upon which the Arbitrator relied, adopted the same reasoning as the Pennsylvania decisions held preempted by *Gay*. Each holds that an arbitration agreement that prohibits a class action in cases with small stakes is unconscionable, relying on state public policies favoring class actions. Each is concerned that, without a class procedure, an arbitration agreement would operate to exculpate defendants' wrongful acts and shield them from liability. While each purports to apply generally applicable contract law principles, they are all premised on the notion that individual arbitration cannot vindicate broad categories of state-law claims (i.e., those involving low amounts of damages) and thus impermissibly rely on the "uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Gay*, 511 F.3d at 395. Because *Muhammad* declares an entire category of state-law claims exempt from individual arbitration, its holding is preempted by the FAA.

19

## II.   CERTIFICATION VIOLATES THE SUBSTANTIAL RIGHTS OF VERIZON WIRELESS AND PUTATIVE CLASS MEMBERS

As discussed above, *see supra* Part I, the Arbitrator did not have authority even to consider certifying a class of customers with contracts prior to July 2002 or after December 2004. Although Verizon Wireless does not dispute that the Arbitrator had jurisdiction to consider certification of a class of customers subject to the CSAs in effect from July 2002 through December 2004, his decision to certify two classes flies in the face of fundamental legal principles, including basic rules of standing, choice of law, and intra-class conflicts. Because the Arbitrator exceeded his authority in certifying these classes, the Award should be vacated.

### A.   Standard of Review

An ordinary arbitral decision may be vacated where the panel acted in "manifest disregard of the law"—*i.e.*, where "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators ... [was] well defined, explicit, and clearly applicable." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997) (citation and internal quotation omitted). A court may infer manifest disregard "if it finds that the error made by the arbitrators is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator." *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 13 (2d Cir. 1997).

While the Award manifestly disregards the law in several respects and must be vacated under this standard, the Court has a duty to scrutinize the decision with even greater care. First, the parties' arbitration agreements incorporate the AAA's Supplemental Rules on Class Arbitration, which contemplate more searching judicial review. Those Rules require findings that track Federal Rule of Civil Procedure 23, *see* Ex. 22 at 122, Rule 4(a), and provide that any class certification order be set forth in a "reasoned" award, *id.*, Rule 5(a), which is not otherwise

required in an arbitration.  When read in context with the rule requiring a stay for at least 30 days "to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award," *id*. at 123, Rule 5(d), these provisions contemplate that judicial review of a class certification award must be more searching than other arbitral awards.

Due process considerations likewise require the Court to review a class arbitration award with greater scrutiny.  Any class action must comport with basic standards of due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985), including the requirement of adequate representation, *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940).  In addition, the FAA provides that an award should be vacated where the arbitrator is guilty of "misbehavior by which the rights of any party have been prejudiced," 9 U.S.C. § 10(a)(3), and the caselaw has interpreted this standard to mean that an award should be set aside "where fundamental fairness is violated" by an arbitrator's procedural decision.  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997).  Before this Court can confirm the Award, moreover, it must be convinced that the assertion of jurisdiction to determine the rights of absent class members comports with due process and fundamental fairness.

This Court's own actions are subject to due process standards.  *See Commonwealth Assocs. v. Letsos*, 40 F. Supp. 2d 170, 177 (S.D.N.Y. 1999) (Kaplan, J.) (suggesting, without deciding, that "the application of the coercive power of a court to confirm and enforce an arbitration award" may constitute state action).  And while an agreement to arbitrate may be viewed in some situations as an acceptance of the limitations on judicial review of arbitral awards, *see id*., the extension of this reasoning to *absent* class members is problematic.[6]  The

---

[6] *See, e.g.*, David S. Clancy & Matthew M.K. Stein, *An Uninvited Guest*, 63 Bus. Law. 55, 79 (2007) (arguing that if class arbitration is permitted, courts should subject it to "probing" review); Maureen A. Weston, *Universes Colliding*, 47 Wm. & Mary L. Rev. 1711 (2006)

language of the arbitration agreements does not expressly waive customers' traditional rights to prevent the deprivation of their property absent adequate representation. At a minimum, judicial review must ensure that absent class members are adequately represented in class arbitration. *See* Sternlight, 42 Wm. & Mary L. Rev. at 111 ("It is inconceivable that courts would allow absent class members to be bound by an inadequate arbitral proceeding, where they would not have been bound by an inadequate judicial proceeding"). From Verizon Wireless's perspective, it is important that the certification award be tested against due process to ensure that any resulting judgment binds absent class members. *See Shutts*, 472 U.S. at 805.

These due process concerns have led courts to exercise greater oversight of class arbitrations than of other forms of arbitration. In *Keating v. Superior Court*, 31 Cal. 3d 584 (1982), *rev'd on other grounds sub nom. Southland Corp. v. Keating*, 465 U.S. 1 (1984), the court emphasized the need for the judiciary "to exercise a measure of external supervision *in order to safeguard the rights of absent class members to adequate representation*." 31 Cal. 3d at 613 (emphasis added); *see also id.* at 622 (Richardson, J., dissenting) ("Because of the due process safeguards required to keep class members apprised of the course of the litigation, substantial judicial involvement by the court will be required to monitor the progress of the arbitration," including "'a stringent and continuing examination of the adequacy of representation by the named class representative at all stages of the litigation.'" (citation omitted)); *Dickler v. Shearson Lehman Hutton, Inc.*, 596 A.2d 860, 866 (Pa. Super. Ct. 1991) (following *Keating* and suggesting judicial review of class arbitration "to insure that class representatives adequately provide for absent class members").

---

(arguing that judiciary should play an active role in review of class arbitration awards); Jean R. Sternlight, *As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?*, 42 Wm. & Mary L. Rev. 1, 126 (2000) (same).

Accordingly, the Court must conduct a searching review to ensure that the Award comports with due process, and in particular that it meets the requirements of adequate representation.  At a minimum, if the Court determines that the Arbitrator engaged in an abuse of discretion in concluding that absent class members would be adequately represented, and that their due process rights would be otherwise respected, the Court should vacate the Award.

**B.    The Arbitrator Manifestly Disregarded the Law in Finding That the Requirements for Class Certification Were Satisfied**

**1.    The Arbitrator Manifestly Disregarded the Law by Ignoring the Class Representatives' Lack of Standing**

a.    No Named Plaintiff Had Standing to Represent Class B

It is a firmly established requirement of federal law that a class representative must be part of the class in order to have standing to represent the class.  *See, e.g.*, *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  This requirement is an element of adequacy of representation, and this Court therefore should subject to searching review the Arbitrator's determination that Class B could be certified even though the class representative lacks standing.

Respondents' proposed Class B seeks to enjoin the continued enforcement of CSAs with a flat $175 ETF.  Respondents proposed a class defined as:

> All persons within the United States who are parties to a Verizon Wireless customer service agreement activated between November 1, 2000 and November 16, 2006, *excluding* persons with a California area code and billing address.

Ex. 36 at 407.[7]  The proposed class representative, respondent Brown,[8] terminated her CSA in January 2005 and therefore was no longer a "part[y] to" such an agreement.  *See* Ex. 37 at 414.

---

[7] The Award (mis)described the class as including those "who *were* parties to" such contracts (Ex. 1 at 003), not just the person who "are" parties as proposed by Respondents.  This change was not proposed by any party.  Nor was there any discussion in the extensive briefing on class certification as to whether the class, so modified, would share any common issues of fact or law or otherwise satisfy the requirements for certification.

Indeed, the class is quickly disappearing: all customers who enter into a new or renewed contract on or after November 16, 2006, are subject to an ETF that declines over time, rather than the flat $175 that Respondents challenge. Because contracts are almost always two years or less in duration, the proposed class will have all but disappeared within nine months.

Because of their apparent inability to locate a substitute representative, Respondents relied on the "capable of repetition yet evading review" doctrine in an effort to save Brown's standing. *See* Ex. 38 at 421. That doctrine, however, does not apply when the named plaintiff was not a class member when the motion for class certification was filed. *See* Ex. 35 at 404 (citing *Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (3d Cir. 1992); *Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990); *Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987)). Brown failed to meet this threshold requirement. The doctrine, moreover, does not apply in a suit between private parties unless the party can "show a reasonable expectation that he would again be subjected to the same action *by the same defendant*." Ex. 35 at 405 (quoting *Chirco v. Gateway Oaks, LLC*, 384 F.3d 307, 309 (6th Cir. 2004) (emphasis in original) and citing *Robinson v. City of Chicago*, 868 F.2d. 959, 967 (7th Cir. 1989) (the doctrine applies only "in those exceptional circumstances where a plaintiff can reasonably show that he will again be subject to the alleged illegality")). No such possibility existed here: on November 16, 2006, Verizon Wireless changed its ETF provision from a flat to a declining ETF. *See* Ex. 39. Respondents noted the significance of that change by limiting the class definition to those with contracts pre-dating this change. *See* Ex. 35 at 405. Thus, even if Brown were to enter into a new contract with Verizon Wireless, she would not be subject to the same alleged illegality.

---

[8] The Arbitrator found that Zobrist could serve as a representative of Class B. Ex. 1 at 034. Zobrist, however, terminated her contract with Verizon Wireless in March 2002 (Ex. 1 at 005) and can no more represent Class B than Brown could, due to her own lack of standing.

The Arbitrator suggested that the capable of repetition yet evading review doctrine "may well apply," without acknowledging, much less attempting to distinguish, the contrary authorities cited by Verizon Wireless.  Ex. 1 at 013.  The Arbitrator's further observations that Brown participated in discovery and that there is no apparent conflict between her interests and those of Class B members (*id.*) are unresponsive.  A person without standing does not obtain one through diligence or interest.  In certifying Class B, the Arbitrator manifestly disregarded the law.

          b.    <u>No Named Plaintiff Had Standing to Represent Class A with Respect to the Section 201(b) Claim</u>

The Arbitrator further engaged in manifest disregard of the law in certifying Class A's claim under Section 201(b) of the Communications Act, because he refused to enforce the statute of limitations that deprived the named plaintiffs of standing to pursue such a claim.  As noted, lack of standing impacts adequacy of representative, and this Court therefore should subject the Arbitrator's finding to searching review.

None of the named plaintiffs asserted this claim within two years of being assessed the ETF, as required by 47 U.S.C. § 207.  *See* Ex. 40 at 487-88.  The claim was first asserted in November 2005, in the Consolidated Arbitration Demand.  The two proposed representatives of Class A, Zobrist and Schroer, were assessed ETFs in March 2002 and May 2003, respectively.

Verizon Wireless cited authority holding that Zobrist's Section 201(b) claim did not relate back to her original complaint in Illinois state court, in which she did not assert, and could not have asserted, this exclusively-federal claim.  *See id.* (citing *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002); *Hairston v. Travelers Cas. & Sur. Co.*, 232 F.3d 1348, 1349 (11th Cir. 2000); *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir. 1992); *In re Copper Antitrust Litig.*, 436 F.3d 782, 796-97 (7th Cir. 2006) (state antitrust law claims did not toll statute on exclusively-federal Clayton Act claims, even though claims are substantially similar).

Respondents only offered that filing of substantially similar claims tolled the statute of limitations, but none of their authorities addressed this "cross-jurisdictional" situation. *See Copper Antitrust Litig*, 436 F.3d at 794.

In response to Schroer's argument that his filing of an informal complaint with the FCC on January 27, 2005 tolled the statute of limitations, Verizon Wireless also cited authority that such a filing not only fails to toll the statute of limitations, but also constitutes a binding election of remedies under 47 U.S.C. § 207 that precludes Schroer from proceeding in another forum. *See* Ex. 41 at 492-93. Section 207 provides that a person damaged by a charge or practice of a common carrier "may *either* make complaint to the [FCC] . . . or may bring suit for the recovery of damages…. but such person shall *not* have the right to pursue *both such remedies*." 47 U.S.C. § 207 (emphasis added). By choosing to file a complaint with the FCC, Schroer was precluded from seeking relief elsewhere. *See* Ex. 41 at 492-93; *see also Digitel, Inc. v. MCI Worldcom, Inc.*, 239 F.3d 187, 189 (2d Cir. 2001) (a letter to FCC Commissioner constituted "a binding election . . . to pursue . . . remedies before the agency") (cited in Ex. 41 at 494). The Arbitrator's reasoning that "it is unclear if the filing of an informal letter complaint with the Federal Trade Commission [sic] constituted the required statutory election of remedies" (Ex. 1 at 011), ignored contrary authority cited by Verizon Wireless. *E.g.*, *Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*, 253 F.3d 573, 575 (11th Cir. 2001) (section 207 "does not distinguish between informal and formal complaints" and is "jurisdictional") (cited in Ex. 41 at 493).

The Arbitrator next claimed that Verizon Wireless "has not established that any such election of remedies applies in an arbitration context" (Ex. 1 at 011), referring apparently to the fact that Section 207 speaks of an election of remedies as between the FCC and the district

courts, rather than between the FCC and an arbitration proceeding. This purported distinction has no substance.

The Arbitrator assumed jurisdiction over the Section 201(b) claim, despite the fact that Section 207 expressly confers jurisdiction only on the FCC or the district courts, not to arbitral tribunals. He did so over Verizon Wireless's objection that the claim should be referred to the FCC. *See* Ex. 42 at 507-08. If the Arbitrator can exercise *any* jurisdiction at all over this claim, it could only be because he is acting in lieu of a district court within the meaning of Section 207. The Arbitrator cannot then ignore the jurisdictional limits that would apply to a district court under the very same statute. The FCC's regulations, moreover, specifically provide that a formal complaint does not relate back to an informal complaint unless filed within six months of the agency's disposition of the informal complaint. 47 C.F.R. § 1.718 (cited in Ex. 41 at 495). Thus, any relation back must be limited to a claim filed within the six month period and could not have rendered timely Schroer's claim, which was asserted for the first time in arbitration some nine months after the FCC closed the file on his informal complaint.

The Arbitrator then sought to justify his refusal to apply the law by opining that it would be "grossly inequitable" to bar Schroer's claims based on his election of remedies and the statute of limitations when the FCC purportedly "took no action and did nothing more that [sic] refer him to the New York State Attorney General's Office." Ex. 1 at 011-12. This reasoning, in addition to being contradicted by the record, *see* Ex. 43, once again substituted the Arbitrator's personal notions of fairness for the clear requirements of federal law. That the statute of limitations sometimes works hardships is no basis for refusing to apply it, except in "rare and exceptional circumstances" beyond the party's control. *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001). There is no claim that such circumstances exist in this case. Moreover, an

election of remedies requirement of section 207 is jurisdictional (*Mexiport*, 253 F.3d at 575; *see also Digitel*, 239 F.3d at 188-89), and cannot be ignored on "equitable" grounds.

The Arbitrator's refusal to apply the relevant statutes of limitations constitutes a manifest disregard of law.  In *Hasbro, Inc. v. Amron*, 419 F. Supp. 2d 678 (E.D. Pa. 2006), the court vacated an arbitration award that purported to award damages on a claim that the petitioner contended was time barred.  After concluding that the claim was time barred, the court found that rendering an award on a time-barred claim "r[o]se beyond a simple error of law to a manifest disregard of the law, because if petitioners' counterclaim were barred by the statute of limitations, it had no cause of action."  419 F. Supp. 2d at 689.  Likewise here, the class representatives had no cause of action and had no standing to represent the class.

> **2.    The Arbitrator Disregarded the Law by Ignoring the Choice of Law Provisions That Lead to Conflicts Among State Laws**

As Verizon Wireless argued to the Arbitrator, "[n]o class action is proper unless all litigants are governed by the *same* legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (emphasis added) (cited, with other authorities, in Ex. 35 at 389).  Due process requires application of proper choice of law rules in a class action, *Shutts*, 472 U.S. at 821-22, and the Court should subject the Arbitrator's decision on this issue to searching review.

The CSAs' choice of law provisions require application of the laws of 49 states to class members' claims.  Where those laws conflict, certification of a nationwide class is precluded.  Indeed, the Arbitrator denied certification of Respondents' consumer protection claim precisely because of the conflicts between state consumer protection statutes.  Ex. 1 at 030.

The Arbitrator, however, ignored an equally irreconcilable conflict among the laws of the various states that govern the validity of a liquidated damages provision.  Many states, including New York, Florida, and Illinois, whose laws apply to the class representatives, provide that the

reasonableness of a liquidated damages clause should be determined *as of the time the contract was executed*. Ex. 40 at 481 and cases cited.  In contrast, in a number of jurisdictions, a liquidated damages provision must be reasonable both in relation to the anticipated damages from the breach *and* the actual damages that occur therefrom.  *See id.* and cases cited; *Guiliano v. Cleo, Inc*., 995 S.W.2d 88 (Tenn. 1999) (discussing importance of difference between prospective and retrospective approach to determining validity of liquidated damage provision).

These differing liability standards would be outcome-determinative for many class members.  One measure of Verizon Wireless's actual damages is its prospective lost profits for the remaining months on early terminating subscribers' contracts.  *See* Ex. 1 at 025-26.  From a pre-breach perspective, Verizon Wireless cannot know if or when a particular subscriber may terminate, and thus its forecast of actual damages necessarily constitutes an *average* sum of damages over all points of possible termination in the contract period.  If $175 is determined to be a fair approximation of the *average* damages under the prospective approach, it would be valid as to all class members, including those who terminated the contract in the last few months of the contract and caused a much smaller amount of damage.  A class member from a retrospective-approach state would lose the ability to argue that the ETF is invalid as to him or her because the after-the-fact damages turned out to be much smaller. Ex. 32 at 242:15-243:12; 244:21-245:10; 245:13-246:2.  Thus, ignoring the choice of law provision will prejudice the rights of numerous class members.

Although the Arbitrator briefly referenced these issues in his award, his discussion is devoid of any meaningful choice of law analysis.  The Arbitrator's analysis is limited to two points, neither of which comes to close to addressing the conflict of law contentions raised by Verizon Wireless.  First, the Arbitrator reasoned that the existence of any difference in liability

standard between jurisdictions "seems entirely hypothetical and not outcome determinative" because the "time lapse between the time of agreement to a CSA and the time of breach would generally be very short, less than 2 years." Ex. 1 at 028. That a contract may be terminated shortly after it is entered into, however, has no bearing on whether a retrospective approach would yield a result different from a prospective approach. Under the retrospective approach, which examines the actual losses sustained, the point of termination would be critical for determining the validity of the ETF. In contrast, under the prospective approach, the validity of the ETF would not depend upon when any particular subscriber terminates in his or her contract, but would rather be based upon what the average damages are from all points of termination.

The Arbitrator also reasoned that "[g]iven that formal rules of evidence need not apply at an arbitration hearing on the merits, evidence will be accepted in this arbitration relevant to both the time of entry into the [customer agreement] and the time of the early termination by a customer." Ex. 1 at 028-29. What evidence is admissible, however, has no bearing on the standard for liability, which is dictated by application of the choice of law provision. As counsel for Verizon Wireless explained to the Arbitrator, "putting aside what evidence can be admitted, you have to base your decision on the substantive law of the state and the failure to do so is grounds for vacating an arbitral award." Ex. 32 at 246.1:20-25.

Because the Arbitrator failed to address the conflict of laws between the states' standards concerning the validity of liquidated damages provisions, the Award must be vacated.

### 3.    The Arbitrator Manifestly Disregarded the Law by Ignoring Clear Conflicts Within Class A Precluding Certification

Verizon Wireless presented to the Arbitrator the clear mandate of federal law that "a putative representative cannot adequately protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented." Ex. 44 at 525

(quoting 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1768, at 389 (2005)).  A "conflict exists where some party members claim to have been harmed by the same conduct that benefited other members of the class.  In such a situation, the named representatives cannot 'vigorously prosecute the interests of the class through qualified counsel' because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members."  *Id.* at 526 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).  A conflict goes to the heart of the due process requirement of adequacy of representation, and the Court therefore must subject to searching review the Arbitrator's conclusion that conflicts do not preclude certification of Class A.

Respondents bore the burden of establishing the *absence* of a substantial conflict within the class.  *See id.* at 525-26 ("'[S]ince the burden of proof on certification issues is on the plaintiff,' it is 'improper to demand much evidence from the defendant that a significant number of class members oppose the plaintiff when it is obvious that a real possibility of antagonism exists.'  *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982); *see also, e.g.*, *Bradburn Parent/Teacher Store, Inc. v. 3M*, No. A.02-7676, 2004 WL 414047, at *6 (E.D. Pa. March 1, 2004) ('[The] Court finds Plaintiff's attempt to characterize the conflict in this action as speculative to be misplaced. . . .  It is not Defendant's burden to definitively establish through the use of empirical data that a conflict among class members actually exists.')").

Verizon Wireless amply met its minimal burden of showing the real possibility of a conflict.  If the class representatives succeed in proving that Verizon Wireless's ETF is an unlawful liquidated damages provision, Verizon Wireless would then be entitled to recover its *actual* damages caused by the class members' breach of their service agreements, in lieu of the ETF.  *See id.* at 526-27 and authorities cited.  The actual damages that Verizon Wireless may

31

seek include its expectancy damages, i.e., profits it would have earned had the customer maintained service until the end of the contract term. *Id.* at 528-29.

Verizon Wireless submitted expert testimony demonstrating that, for the average class member, such damages significantly exceed the amount of the ETF (i.e., $175). *Id.* at 529-31; Ex. 45; Ex. 46; Ex. 47. On average, class members terminate their contracts with many months still left on the contract term, such that Verizon Wireless would have earned, at a minimum, monthly access charges significantly exceeding $175. *See* Ex. 46 at 602-05, ¶¶ 8, 9 & Table 1. Finally, Verizon Wireless submitted expert analysis of how much profit it would have earned on this lost revenue, considering the costs that Verizon Wireless avoided by no longer having to serve these customers. Ex. 47 at 644-46, ¶¶ 16-22. This analysis concluded that Verizon Wireless's lost profits damages significantly exceeded $175 on average. *See id.* at 647, ¶ 26.

In response, Respondents offered the testimony of a single expert, Dr. Lee Selwyn, who claimed that Verizon Wireless earns no profit on its monthly plans and that all of its costs are avoided when customers terminate early. *See* Ex. 55 at 899-904. Selwyn's analysis was based entirely on his observation that Verizon Wireless's *total* costs increased roughly in proportion to the growth in the number of customers over a four year period. *Id.* at 901-903. This was precisely the type of lost profits analysis that the federal courts have consistently rejected because it relies solely on correlation of movement and not causation. *See, e.g.*, *Elec. Pipe Line, Inc. v. Fluid Sys., Inc.*, 250 F.2d 697, 699 (2d Cir. 1957); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 828 (E.D.N.Y. 1995) (discussed in Ex. 48 at 697-99). In fact, Verizon Wireless showed that significant categories of its costs increased during the period examined by Selwyn for reasons unrelated to the growth in the number of customers. Ex. 49 at 718, ¶ 21.

Verizon Wireless also rebutted Selwyn's testimony by showing that it ignored the significant up-front costs Verizon Wireless incurs to sign up customers, including the cost of subsidizing the handset price to the customer. This cost of acquisition is a sunk cost: there is no way to recover this amount if the customer prematurely terminates the contract. *See* Ex. 48 at 690-91 and evidence cited. Selwyn admitted as much at the hearing. Ex. 50 at 752-54; Ex. 51 at 807:9-10. Yet, by taking *all* of Verizon Wireless's costs into account in calculating its lost profits, Selwyn treated these sunk costs as if they were avoidable.

Verizon Wireless thoroughly established that Selwyn's analysis suffered from these and other errors. *See* Ex. 40 at 461-62. The Arbitrator nevertheless rejected the conflict argument based on a manifest disregard of the applicable legal standard. The Arbitrator did *not* reject Verizon Wireless's evidence or resolve the conflict in the expert testimony. Nor did he make any finding that Verizon Wireless's profit margins are so low that there would be few class members who would face a claim for actual damages greater than $175. Instead, he said that it was "impossible on this record for me to determine whether or not there actually were damages sustained by Verizon upon the breach of a CSA by a customer and if so, the magnitude of such damages." Ex. 1 at 026. In so doing, he shifted the burden to Verizon Wireless to prove that a conflict would certainly exist, contrary to the clear legal requirement that Respondents show that a conflict would *not* arise. Under the correct legal standards, the Arbitrator's conclusion that he could not determine the magnitude of actual damages meant that Respondents had not met their burden of proof, and that class certification should have been denied.

Other arguments advanced by the Arbitrator to justify his conclusion only serve to highlight the Arbitrator's disregard of the burden of proof and the legal standards on class certification. Several of the Arbitrator's purported reasons amounted to speculation regarding

the merits of Verizon Wireless's claims for actual damages (Ex. 1 at 024 (citing whether sufficient precedent supports recovery of actual damages in excess of the liquidated damages); *id.* at 027 (noting that consequential damages may not be available under the CSAs)) or procedural obstacles to asserting such claims. *See id.* at 025 (expressing "doubt" whether Verizon Wireless's counter-claims are procedurally proper). In addition to being wrong as a matter of fact and law,[9] such speculation could not justify the Arbitrator's disregard of the conflict. In any case where the proposed class faces a counter-claim, it is possible that the counter-claims would ultimately not succeed on the merits. But the Arbitrator nowhere concluded that Verizon Wireless's counter-claims were procedurally or substantively barred. The conflict persists because class members face the *risk* of greater liability, and many of them would undoubtedly forego the opportunity to claim a $175 refund to avoid that risk.

The Arbitrator also relied on Verizon Wireless's stipulation that if its actual damages in the aggregate against all class members are offset against the aggregated ETF claims of all class members, and if the actual damages exceed the ETF claims in the aggregate, Verizon Wireless would not seek to collect that excess. Ex. 1 at 026-27. This was the approach taken by the California Superior Court to address what it recognized was a significant conflict within the class, as the Arbitrator noted. *Id.* That approach, however, does not cure the conflict. A class member with an ETF exceeding Verizon Wireless's actual damages claim would have his recovery reduced, potentially to zero, by having his claim aggregated with that of another class member who has a negative claim. For example, class member A who terminated late in the contract and has a claim for $100 would lose his claim because his recovery would be offset by

---

[9] For example, Verizon Wireless presented clear authority holding that expectancy damages are not considered "consequential" damages (Ex. 48 at 687-88), and that actual damages in excess of an invalid liquidated damage amount may be recovered (*id*. at 688; Ex. 40 at 458), a point on which Respondents presented no contrary authority.

the liability of class member B, who terminated early in the contract and faces a net liability for actual damages of $100. While the Arbitrator speculated that this conflict could be addressed by "use of formulas related to the time of breach," the Arbitrator nowhere explained what such formulas may be or how they could address this conflict.

Finally, the Arbitrator analyzed the intra-class conflict as an issue of predominance of common questions. *See* Ex. 1 at 023, 027. As noted above, and as Verizon Wireless explained to the Arbitrator (e.g., Ex. 44 at 525-26), a substantial possibility of an intra-class conflict precludes a finding that Respondents would adequately represent the class. Adequate representation is a requirement for certification independent of the issue of predominance, both under Federal Rule of Civil Procedure 23(a)(4) and under the AAA rules. *See id.* at 524-25. The Arbitrator manifestly disregarded that law by using his finding of predominance as an excuse to ignore Respondents' failure to establish adequate representation, which required Respondents to demonstrate that there would be no significant conflict within the class. *See* Ex. 1 at 024 ("it is far preferable to permit adjudication of these predominant questions than to prohibit such adjudication because of concern about hypothetical conflicts which have not been established"). This reasoning disregards the law in two respects: by reversing the burden of proof with respect to the existence of a conflict and by conflating the predominance and adequate representation requirements. The Award should be vacated in so far as it certifies any claim of Class A.

## CONCLUSION

The Arbitrator exceeded his authority and disregarded the parties' agreements to arbitrate in several material respects. The Award was further rendered in manifest disregard of the law and contrary to due process requirements. The Court should vacate the Award in its entirety.

Dated:  New York, New York
            February 11, 2008

                              Respectfully submitted,

                              Henry Weissmann
                              Hojoon Hwang
                              Jonathan H. Blavin
                              MUNGER, TOLLES & OLSON LLP
                              355 South Grand Avenue, Suite 3500
                              Los Angeles, CA  90071-1560
                              Tel:  213-683-9100 – Fax:  213-687-3702

                              Jeffrey S. Jacobson
                              Carl Micarelli
                              DEBEVOISE & PLIMPTON LLP
                              919 Third Avenue
                              New York, NY  10022-3916
                              Tel:  212-909-6000 –  Fax: 212-909-6836


                              By: /s/ Jeffrey S. Jacobson
                                  Jeffrey S. Jacobson

                              Attorneys for Petitioners Cellco Partnership d/b/a
                              Verizon Wireless and Verizon Communications Inc.

## CERTIFICATE OF SERVICE

I, Carl Micarelli, a member of the Bar of this Court, certify as follows:

On this 11th day of February 2008, I served the within Notice of Motion to Vacate Class Determination Award, Declaration of Jonathan H. Blavin in Support of Petitioners' Motion to Vacate Class Determination Award (Redacted Public Version), and Memorandum of Law in Support of Petitioners' Motion to Vacate Class Determination Award upon Scott A. Bursor, counsel for the Respondents, by electronic mail to scott@bursor.com, such means of service being an electronic means to which he has consented in writing pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.

Dated: New York, New York
      February 11, 2008

_____
Carl Micarelli