UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
and VERIZON COMMUNICATIONS INC.,

                              Petitioners,

-against-

PATRICIA BROWN, HAROLD P. SCHROER, and
DAWN M. ZOBRIST, on an individual basis and on
behalf of others similarly situated,

                              Respondents.

No. 08 CV 00427 (LAK)

---

## <u>MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION TO VACATE CLASS DETERMINATION AWARD</u>

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)

February 21, 2008

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................ iii

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 5

I.   THIS COURT LACKS JURISDICTION TO REVIEW THE CLASS
     DETERMINATION AWARD .................................................................................. 5

II.  THE ARBITRATOR HAD AUTHORITY TO DECIDE ALL CLASS
     CERTIFICATION ISSUES ..................................................................................... 7

     A.   The Parties' Agreement Authorizes The Arbitrator To Decide Both
          The Arbitrability And The Merits Of Every Issue In This Case................... 7

     B.   AAA Rules Expressly Require The Arbitrator To Decide Whether The
          Applicable Arbitration Clauses Permit Class Arbitration, And Whether
          Class Members' Clauses Are "Substantially Similar"................................ 11

     C.   Throughout The Procedural History Of These Actions, Verizon Has
          Repeatedly Argued Or Conceded That The Arbitrator Has Authority
          To Decide These Matters ............................................................................ 12

          1.   In Brown, Verizon Expressly Stipulated To The Florida Court That
               "Threshold Questions," Including The Enforceability Of Class Action
               Waivers, "May Be Decided By The Arbitrator".................................. 12

          2.   In Zobrist, Verizon Expressly Conceded To The Arbitrator That
               "It Is For The Arbitrator To Decide Whether The Parties' Customer
               Agreement … Permits Class-Wide Arbitration" ................................ 14

          3.   Verizon's Motion To Consolidate Brown And Zobrist Argued
               That "AAA Arbitrators Have Plenary Jurisdiction Over Procedural
               Matters Relating To An Arbitration"................................................. 15

     D.   Standard Of Review Of Scope Of Arbitral Authority ................................ 16

     E.   The Arbitrator Did Not Exceed His Authority .......................................... 17

          1.   The Arbitrator Had Authority To Determine Substantial Similarity................ 18

          2.   The Arbitrator Had Authority To Determine The Enforceability
               Of Class Action Waivers And Related Termination Of
               Jurisdiction Clauses .......................................................................... 23

*Table Of Contents - Continued*

Page

III.   THE ARBITRATOR DID NOT MANIFESTLY DISREGARD
       APPLICABLE LAW ........................................................................................ 24

       A.   Standard Of Review For Manifest Disregard Of Applicable Law ............................ 24

       B.   The Arbitrator Did Not Manifestly Disregard Gay v. CreditInform ......................... 25

       C.   The Arbitrator Did Not Manifestly Disregard Applicable Choice Of
            Law Principles ........................................................................................ 26

            1.   Unenforceability Of Class Action Waivers ...................................... 27

            2.   Unenforceability Of Termination Of Arbitral Jurisdiction Clauses ................. 28

            3.   State Common Law Claims (Counts III, IV, VI and VII) ................................ 29

       D.   The Arbitrator Did Not Manifestly Disregard Law Concerning
            Standing Of Class B Representatives ........................................................ 30

       E.   The Arbitrator Did Not Manifestly Disregard Law Concerning The
            Statute Of Limitations On The § 201 Claim................................................ 31

       F.   The Arbitrator Did Not Manifestly Disregard Law Concerning
            Hypothetical And Unproven Conflicts Within Class A............................................ 31

Conclusion ........................................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**                                                                                      Page(s)

*Americas Ins. Co. v. Seagull Compania Naviera, S.A.*,
  774 F.2d 64 (2d Cir. 1985)................................................................................ 2

*Banco De Seguros Del Estado v. Mutual Marine Offices, Inc.*,
  230 F. Supp.2d 362 (S.D.N.Y. 2002)........................................................... passim

*DiRussa v. Dean Witter Reynolds Inc.*,
  121 F.3d 818 (2d Cir. 1997)........................................................................... 17

*Discover Bank v. Superior Court*,
  36 Cal.4th 148 (2005) ...................................................................... 25, 26, 27, 28

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)................................. passim

*Florasynth, Inc. v. Pickholz*,
  750 F.2d 171 (S.D.N.Y. 1984)........................................................................... 3

*Gay v. CreditInform*,
  511 F.3d 369 (3d Cir. 2007).................................................................... 25, 26

*Goldman v. Architectural Iron Co.*,
  2001 WL 1705117 (S.D.N.Y. Jan. 15, 2001) .................................................. 33

*Gostinelli v. Stein*,
  794 N.Y.S.2d 759 (4th Dept. 2005) ............................................................... 11

*Green Tree Financial Corp. v. Bazzle*,
  539 U.S. 444 (2003)............................................................... 8, 9, 14, 17

*Greenberg v. Bear, Stearns & Co.*,
  220 F.3d 22 (2d Cir. 2000).......................................................................... passim

*Halligan v. Piper Jaffray, Inc.*,
  148 F.3d 197 (2d Cir. 1998).......................................................................... 24

*John M. O'Quinn, P.C. v. Wood*,
  2007 WL 44652963 (Tex. App. Dec. 21, 2007) ........................................... 5

*Kinkel v. Cingular Wireless LLC*,
  857 N.E.2d 250 (Ill. 2006) ............................................................................. 26

*Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.*,
  956 F.2d 22 (2d Cir. 1992).......................................................................... 17

*Long John Silver's Restaurants, Inc. v. Cole*,
  409 F. Supp.2d 682 (D.S.C. 2006)............................................................. 2, 3

*Lowden v. T-Mobile USA, Inc.*,
  2008 WL 172079 (9th Cir. Jan. 22, 2008) ................................................... 26

Table of Authorities - Continued

Page(s)

*Marron v. Snap-On Tools*,
   2006 WL 51193 (D.N.J.  June 9, 2006) ................................................................. 5, 6

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) ................................................................................................. 11

*McDaniel v. Bear Stearns & Co., Inc.*,
   196 F. Supp.2d 343 (S.D.N.Y. 2002) ..................................................................... 25

*Merrill Lynch v. Bobker*,
   808 F.2d 930 (2d Cir. 1986) ................................................................................... 24

*Michaels v. Mariform Shipping, S.A.*,
   624 F.2d 411 (2d Cir. 1980) ..................................................................................... 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ..................................... 8

*Muhammad v. County Bank of Rehoboth Beach*,
   189 N.J. 1 (N.J. 2006) ............................................................................. 25, 27, 28

*Pasteur Health Plan, Inc. v. Salazar*,
   658 So.2d 543 (Fla. 3d DCA 1995) ....................................................................... 10

*Riensche v. Cingular Wireless*,
   2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ................................................... 29

*Scott v. Cingular Wireless*,
   161 P.3d 843 (Wash. 2007) ................................................................................... 26

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   498 F.3d 976 (9th Cir. 2007) ........................................................................... 26, 29

*Siegel v. Titan Indus. Corp.*,
   779 F.2d 891 (2d Cir. 1985) ................................................................................... 25

*Sunoco, Inc. v. Honeywell Int'l, Inc.*,
   2005 WL 2550673 (S.D.N.Y. Oct. 13, 2005) .......................................................... 6

*Sutter v. Oxford Health Plans LLC*,
   227 Fed. Appx. 135 (3d Cir. 2007) .......................................................................... 3

*United States Parole Board v. Geraghty*,
   445 U.S. 388 (1980) ............................................................................................... 30

*United States Postal Service v. Am. Postal Workers Union, AFL-CIO*,
   204 F3d 523 (4th Cir. 2000) ................................................................................... 2

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)................................................................................... 33

Table of Authorities - Continued

Page(s)

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,*
    489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)............................................................ 9

*Wallace v. Buttar,*
    378 F.3d 182 (2d Cir. 2004)................................................................................................... 4, 24

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,*
    103 F.3d 9 (2d Cir. 1997) ........................................................................................................ 25

## Statutes, Rules & Regulations

47 U.S.C.
    § 201................................................................................................................................... 31

9 U.S.C.
    § 1 ............................................................................................................................... passim
    § 10 ......................................................................................................................................... 5
    § 10(a) ..................................................................................................................................... 3

AAA Supplementary Rules for Class Arbitration
    Rule 3 ............................................................................................................................... 6, 11
    Rule 4(a)(6)....................................................................................................................... passim
    Rule 5 ..................................................................................................................................... 6
    Rule 5(b) ................................................................................................................................. 6
    Rule 5(c) ................................................................................................................................. 6
    Rule 5(e).......................................................................................................................... 1, 5, 6

Fed. R. Civ. P.
    Rule 23(a)(4) ........................................................................................................................ 33

## Secondary Authorities

Restatement (Second) of Contracts
    § 206................................................................................................................................... 10

Respondents and certified class representatives, Patricia Brown, Harold P. Schroer, and Dawn M. Zobrist, respectfully submit this Memorandum Of Law In Opposition To Petitioners' Motion To Vacate Class Determination Award.

## Introduction

The Petitioners, Cellco Partnership d/b/a Verizon Wireless, and Verizon Communications Inc. (hereafter "Verizon"), ask this Court to vacate an arbitration award certifying two classes to challenge the validity of Verizon's $175 early termination fee imposed in customer service agreements (CSAs) for wireless telephone service. The arbitrator's decision was based on "massive evidentiary submissions," Class Determination Award at 28, Bursor Decl. Exh. 1,[1] including "9 expert reports and extensive testimony," *id.* at 10. Verizon's 35-page memorandum in support of the motion seeks to re-hash nearly every argument previously asserted in the arbitration, and a few new arguments that were never made before the arbitrator. Verizon's kitchen-sink approach is fundamentally inconsistent with the very limited review permitted under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*

As a threshold matter, Verizon's motion must be denied because this Court's jurisdiction under the FAA is limited to review of final arbitration awards, and the Court is not permitted to review interlocutory, interim or partial awards. The Class Determination Award, by definition, is not a final order on the merits. It is not even a final order on the subject of class certification, since AAA rules provide that "A class determination award may be altered or amended by the arbitrator before a final award is rendered." AAA Supplementary Rules for Class Arbitration, Rule 5(e), Bursor Decl. Exh. 2 (hereafter, "Supplementary Rules").

---

[1] The Declaration of Scott A. Bursor, with Exhibits 1 through 6, was submitted on January 29, 2008 with Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition. A second volume of the Declaration of Scott A. Bursor, attaching Exhibits 7 through 19, is submitted herewith. Both are cited as "Bursor Decl."

Respondents therefore moved to dismiss Verizon's petition for lack of jurisdiction. *See* Respondents January 29, 2008 Memorandum Of Law In Support Of Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition, at pages 5-10. For the reasons set forth in that motion to dismiss, and again in Part I, below, Verizon's motion should be denied, and Verizon's petition should be dismissed, without reaching the merits.

Even assuming arguendo that this Court has jurisdiction to review the award, Verizon's kitchen-sink approach is not consistent with the constraints the FAA imposes on judicial review of arbitral awards. Such review "is among the narrowest known to the law." *Long John Silver's Restaurants, Inc. v. Cole*, 409 F. Supp.2d 682, 684 (D.S.C. 2006), *quoting United States Postal Service v. Am. Postal Workers Union, AFL-CIO*, 204 F3d 523, 527 (4th Cir. 2000); *see also Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir. 1985) (recognizing that review of an arbitration award is generally "very narrowly limited"). Verizon's motion strains at these limitations. Verizon argues that a "more searching judicial review" and "greater scrutiny" are required because of the due process considerations involved in class actions. Verizon Mem. at 20-21. *See also id.* at 7 (urging *de novo* review); *id.* at 23 ("searching review"); *id.* at 28 ("searching review"). Thus, according to Verizon, "The Court must scrutinize this class certification award with greater care than an ordinary commercial arbitration award." Verizon Mem. at 2. But Verizon cites no authority whatsoever for the "searching review" it seeks, nor does Verizon explain exactly what that "searching review" would entail.

The standards for review of arbitral awards are well-established. The FAA provides that a court may make an order vacating an award in four circumstances:

(1)     where the award was procured by corruption, fraud, or undue means;

2

(2)      where there was evident partiality or corruption in the arbitrators, or either of them;

(3)      where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)      where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*See* 9 U.S.C. § 10(a).  This section "severely restricts the power of a court to vacate an award to cases involving fraud in procurement of the award, misconduct, or arbitrators clearly exceeding their powers." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (S.D.N.Y. 1984).  Courts reviewing arbitral awards in class actions have consistently limited their review to these grounds. *See, e.g.*, *Long John Silver's Restaurants, Inc. v. Cole*, 409 F. Supp.2d at 684 (D.S.C. 2006) ("[T]he Court's review of the arbitrator's decision to certify an opt-out class is extremely narrow in scope."); *Sutter v. Oxford Health Plans LLC*, 227 Fed. Appx. 135 (3d Cir. 2007) (affirming denial of motion to vacate class determination award, stating "the District Court did not err in applying a highly deferential standard of review," and "the arbitrator neither exceeded his authority nor evidenced manifest disregard for the law").  Neither the FAA nor any other authority provides for different grounds or standards of review for arbitral awards in class actions.

When placed within the very narrow constraints of review permitted by the FAA, Verizon's arguments do not even come close to establishing grounds for vacatur of the award. Verizon's principal argument is that the arbitrator exceeded the scope of his authority by declaring class action waivers unenforceable, and by including within the class persons whose agreements purport to prohibit class arbitration.  According to Verizon, "The Arbitrator had no

authority to consider the validity of the prohibition on classwide arbitration, which is an issue to be resolved by the courts." Verizon Mem. at 1. The fundamental problem with this argument is that it flatly contradicts what Verizon told the Florida court at the outset of this case. Verizon stipulated to the Florida court that "threshold questions," including the enforceability of class action waivers, "may be decided by the arbitrator." 7/25/05 Letter from K. Myles to Hon. Elizabeth T. Maas, Bursor Decl. Exh. 5, at 2. That stipulation, together with an arbitration agreement and AAA rules that clearly commit this determination to the arbitrator, leave no doubt that the arbitrator's decision was well within the scope of his authority. *See* Part II, below.

Additionally, in each instance where Verizon disagrees with the arbitrator's findings, Verizon asserts that such findings were made in "manifest disregard of applicable law." But "review for manifest error is severely limited." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir. 2000); *Banco De Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F. Supp.2d 362, 371 (S.D.N.Y. 2002) (same). Vacatur on ground of manifest disregard is permitted only in the "most egregious instances" where the arbitrator knew of a well defined and explicit legal rule that was clearly applicable to the case, but consciously refused to apply and enforce it. *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004); *Greenberg,* 220 F.3d at 28; *Banco De Seguros*, 230 F. Supp.2d at 371. Verizon attempts to show manifest disregard on several points, none of which involve a well defined, explicit, clearly applicable legal rule. *See* Part III, below.

Verizon's motion attempts to relitigate, *de novo*, every issue addressed in an interlocutory arbitration order, and invites this Court to second-guess the arbitrator's decision on every contested point. The FAA does not permit that.

**Argument**

## I.    THIS COURT LACKS JURISDICTION TO REVIEW THE CLASS DETERMINATION AWARD

Under the FAA, the jurisdiction of courts is limited to review of final arbitration awards, and courts are not permitted to review interlocutory, interim or partial awards. *See, e.g.*, *Marron v. Snap-On Tools*, 2006 WL 51193, at *1 (D.N.J.  June 9, 2006) ("Federal courts commonly understand [9 U.S.C. § 10] to allow review of final arbitration awards but *not* of interim or partial rulings."); *Michaels v. Mariform Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980) ("Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable.").  A Class Determination Award by definition is not a final award, but merely an interim ruling that contemplates a later decision on the merits.  *See, e.g.*, Supplementary Rule 5(e), Bursor Decl. Exh. 2 ("A class determination award may be altered or amended by the arbitrator before a final award is rendered.").  Thus, court review of a Class Determination Award is not permitted under the FAA.  *See John M. O'Quinn, P.C. v. Wood*, 2007 WL 4465296, at *2-3 (Tex. App. Dec. 21, 2007) (holding Class Determination Award was not a final reviewable award under the Texas General Arbitration Act); *see also Marron*, 2006 WL 51193, at *3 ("Given the early stage of the proceedings and the breadth of issues submitted to the arbitrator that have not even been reached this [Clause Construction Award under Supplementary Rule 3] is not ripe for review by this court. … It is not in the interest of judicial economy for this court to entertain repeated interlocutory appeals that further delay the arbitration that Snap-On moved this Court to compel two years ago.").[2]

---

[2] Respondents January 29, 2008 Memorandum Of Law In Support Of Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition (at pages 2-3) indicated in a parenthetical that *Marron* held that a Class Determination Award was not ripe for review.  That

(footnote continued...)

Respondents moved to dismiss Verizon's petition on January 29, 2008 for lack of jurisdiction. Respondents incorporate by reference, as though fully set forth herein, the arguments in their motion to dismiss. One of those arguments merits further elaboration. Respondents motion to dismiss pointed out (at page 2) that the Class Determination Award remains incomplete because the Arbitrator has not yet determined whether class members will be permitted to opt out of the class, and has not yet made provisions for the content and manner of notice to the class as required by Supplementary Rules 5(b) and (c). On February 18, 2008, the Arbitrator held a preliminary hearing on a pending motion to correct, alter or amend the Class Determination Award to address these and other matters. *See* 2/19/08 Consolidated Arbitration Procedural Order No. 16, Bursor Decl. Exh. 7. The Arbitrator ordered briefing on these issues and set them for hearing on March 4, 2008. *See id.* These ongoing proceedings in arbitration further illustrate that the Class Determination Award is not a final, reviewable order under any conceivable standard for finality. Under Supplementary Rule 5(e), it "may be altered or amended by the arbitrator before a final award is rendered." And right now the Arbitrator is actively considering several such alterations and amendments. Verizon's attempt to seek court review of this partial, incomplete and non-final award is "an impermissible interlocutory attack on an ongoing arbitration proceeding." *Sunoco, Inc. v. Honeywell Int'l, Inc.*, 2005 WL 2550673, at *4 (S.D.N.Y. Oct. 13, 2005). Under the FAA, the Court lacks jurisdiction to entertain such an interlocutory attack.

---

*(...footnote continued)*
was an error. The award at issue in *Marron* was a clause construction award under Supplementary Rule 3, not a class determination award under Supplementary Rule 5.

6

## II.    THE ARBITRATOR HAD AUTHORITY TO DECIDE ALL CLASS CERTIFICATION ISSUES

The parties' agreement, the AAA rules, and repeated stipulations by Verizon concerning the scope of the arbitrator's authority, clearly and unmistakably establish that the arbitrator had authority to decide both the merits and arbitrability of every issue related to class certification.

### A.    The Parties' Agreement Authorizes The Arbitrator To Decide Both The Arbitrability And The Merits Of Every Issue In This Case

The *Brown* arbitration is governed primarily by the arbitration agreement between Brown and Verizon, Bursor Decl. Exh. 3.[3]  That agreement contains three clauses that clearly and unmistakably give the arbitrator the authority to determine both the merits and the arbitrability of every issue in this case.

First, the parties' agreement contains a broad arbitration clause, which states:

> ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST … WILL BE SETTLED BY ONE OR MORE NEUTRAL

---

[3] There are three claimants and class representatives in the now consolidated *Brown* and *Zobrist* arbitration – Brown, Schroer and Zobrist.  Brown and Schroer have identical arbitration agreements with Verizon.  *See* Bursor Decl. Exh. 3.  Zobrist's arbitration agreement with Verizon is slightly different, but Verizon conceded in its motion to consolidate *Brown* and *Zobrist* that there were no significant differences between the *Brown* and *Zobrist* arbitration clauses.  *See* 11/18/05 Supplement To Motion Of Verizon Wireless For Consolidation Of Competing *Zobrist* And *Brown* Putative Class Actions at 5, Bursor Decl. Exh. 12 ("the differences between the *Brown* and *Zobrist* arbitration clauses in no way advise against consolidation").  The Arbitrator accepted Verizon's argument on this point and granted Verizon's motion to consolidate, stating: "Brown has not established that the differences [between the arbitration clauses] are significant …. [T]o the extent there are differences, it is likely that they can be resolved by different procedures and/or subclasses."  3/24/06 Order, Bursor Decl. Exh. 13.  At the class certification stage, Verizon failed to establish any "significant difference" between the *Brown* and *Zobrist* arbitration clauses, or the arbitration clauses of any class member.  *See* Class Determination Award at 15-16, Bursor Decl. Exh. 1.

ARBITRATORS ON AN INDIVIDUAL BASIS BEFORE THE
AMERICAN ARBITRATION ASSOCIATION ("AAA") ….

*See* Bursor Decl. Exh. 3.  The breadth of this clause is unmistakable.  It commits to arbitration

"any controversy or claim arising out of or relating to this agreement."  This language would

certainly encompass disputes concerning whether the agreement permits class arbitration, and

whether it is substantially similar to arbitration agreements between Verizon and other class

members.  The broad arbitration clause does not carve out these or any other matters.

A nearly identical arbitration clause was at issue in *Green Tree Financial Corp. v.*

*Bazzle*, 539 U.S. 444 (2003) (hereafter, "*Bazzle*"), and the Supreme Court found that such a

clause not only permitted, but required the arbitrator to decide class certification issues:

> Under the terms of the parties' contracts, the question – whether
> the agreement forbids class arbitration – is for the arbitrator to
> decide.  The parties agreed to submit to the arbitrator "*[a]ll*
> disputes, claims, or controversies arising from or relating to this
> contract or the relationships which result from this contract." *Ibid.*
> (emphasis added).  And the dispute about what the arbitration
> contract in each case means (*i.e.,* whether it forbids the use of class
> arbitration procedures) is a dispute "relating to this contract" and
> the resulting "relationships."  Hence the parties seem to have
> agreed that an arbitrator, not a judge, would answer the relevant
> question.  *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S.
> 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (arbitration is a
> "matter of contract").  And if there is doubt about that matter –
> about the "'scope of arbitrable issues'" – we should resolve that
> doubt "'in favor of arbitration.'"  *Mitsubishi Motors Corp. v. Soler*
> *Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87
> L.Ed.2d 444 (1985).
>
> …
>
> Unlike *First Options,* the question is not whether the parties
> wanted a judge or an arbitrator to decide *whether they agreed to*
> *arbitrate a matter.*  514 U.S., at 942-945, 115 S.Ct. 1920.  Rather
> the relevant question here is what *kind of arbitration proceeding*
> the parties agreed to.  That question does not concern a state statute
> or judicial procedures, *cf. Volt Information Sciences, Inc. v. Board*
> *of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468,

> 474-476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).  It concerns contract interpretation and arbitration procedures.  Arbitrators are well situated to answer that question.  Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide.  *Cf. Howsam, supra,* at 83, 123 S.Ct. 588 (finding for roughly similar reasons that the arbitrator should determine a certain procedural "gateway matter").

*Bazzle*, 539 U.S. at 451-53.[4]

Second, the parties' agreement provides that "AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF … AS A COURT WOULD."  Bursor Decl. Exh. 3.  There is no question that a court could certify a class or award classwide relief.  The parties' agreement specifically authorizes the arbitrator to do the same.

Third, the parties' agreement provides that "ONLY AN ARBITRATOR CAN DECIDE WHETHER AN ISSUE IS ARBITRABLE."  Bursor Decl. Exh. 3.  It is difficult to imagine any combination of words in the English language that could more clearly and unmistakably authorize the arbitrator to decide questions of arbitrability.  Yet in the face of this provision, Verizon now argues that "the Court must decide the scope of arbitrable issues."  Verizon Mem. at 7.  Verizon's argument is quite clearly contradicted by the parties' agreement and by controlling authority from the United States Supreme Court.  *See, e.g.*, *First Options Of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 ("We agree … that a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.").

---

[4] The lead opinion in *Bazzle* was joined by four Justices.  Justice Stevens concurred in the result, and specifically concurred with the plurality's conclusion that the arbitrator, and not a court, should have decided class certification.  *See Bazzle*, 539 U.S. at 455 (Stevens, J. concurring) ("Arguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court.")

9

The issue in *First Options* was whether there should be any arbitration at all. *See id.* at 941 ("The Kaplans … denied that their disagreement with First Options was arbitrable …."). Here, there is no such issue. All parties agree that the substantive claims are arbitrable. Verizon disputes only whether certain questions about the type of arbitration to be had – *i.e.*, whether it may be classwide arbitration, and who may be included within the class – were submitted to the arbitrator.

More importantly, *First Options* did not involve an agreement containing clear and unmistakable language stating "ONLY AN ARBITRATOR CAN DECIDE WHETHER AN ISSUE IS ARBITRABLE." Bursor Decl. Exh. 3. Furthermore, this language was drafted entirely by Verizon and included in a contract of adhesion. *See* Class Determination Award at 19 ("There is little doubt that the CSAs are contracts of adhesion. Such contracts are entirely drafted by Verizon, are presented to customers on a 'take it or leave it' basis, and afford no room for negotiation on any of their terms."). To the extent that the arbitrability clause leaves any room for doubt – and Respondents respectfully submit it does not – two important contract interpretation principles would compel the clause to be construed in favor of arbitrability. *See First Options*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally …should apply ordinary state-law principles that govern the formation of contracts."). The first is the principle that any ambiguity in the agreement must be construed against the drafter, Verizon. *See, e.g.*, Restatement (Second) of Contracts § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."); *Pasteur Health Plan, Inc. v. Salazar*, 658 So.2d 543, 545 (Fla. 3d DCA 1995) ("any ambiguities and omissions should be construed in

favor of [the non-drafting party]"), *rev. denied* 666 So.2d 901 (Fla. 1996); *Gostinelli v. Stein*, 794 N.Y.S.2d 759, 762 (4th Dept. 2005) ("any ambiguity … must be construed against the drafter").[5]  The second is the principle that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).

The parties' agreement is unambiguous and unmistakably clear in authorizing the arbitrator to decide every issue in this case, including questions of arbitrability.  Respondents respectfully submit that it is impossible to read the parties agreement, providing "ONLY AN ARBITRATOR CAN DECIDE WHETHER AN ISSUE IS ARBITRABLE" and conclude, as Verizon does, that "the Court must decide the scope of arbitrable issues."  Verizon Mem. at 7. There is no phrasing in the English language that could possibly be more clear on this point.

**B.      AAA Rules Expressly Require The Arbitrator To Decide Whether The Applicable Arbitration Clauses Permit Class Arbitration, And Whether Class Members' Clauses Are "Substantially Similar"**

AAA rules also leave no doubt that the Arbitrator was authorized to decide these matters.  Supplementary Rule 3 provides that "the arbitrator shall determine … whether the arbitration clause permits the arbitration to proceed on behalf of or against a class."  *See* Bursor Decl. Exh. 2 (Supplementary Rules).  In the *Brown* arbitration Verizon initially argued that AAA should not administer the *Brown* arbitration because, according to Verizon, the Brown arbitration agreement "expressly prohibits class claims."  6/8/05 Letter from J. Hunt to AAA Vice President Catherine Shanks, Bursor Decl. Exh. 8 ("Because the arbitration agreement in question contains an express prohibition on class claims, the AAA should not accept Claimant's demand for arbitration.").  The AAA administrative personnel rejected Verizon's position and agreed to

---

[5] Respondents cite New York and Florida law in the text because Verizon contends that Brown's agreement is governed by Florida law and Schroer's is governed by New York law.

administer the case.  Thereafter Verizon agreed not to contest Brown's motion for a clause

construction award.  *See* Bursor Decl. Exh. 4 (*Brown* clause construction award).  Verizon did

contest the issue in the *Zobrist* case, and lost.  *See* Bursor Decl. Exh. 20 (*Zobrist* clause

construction award).  Verizon waived the right to appeal both clause construction awards.[6]

Supplemental Rule 4(a)(6) requires the arbitrator to determine whether "each

class member has entered into an agreement containing an arbitration clause which is

substantially similar to that signed by the class representative(s) and each of the other class

members."  *See* Bursor Decl. Exh. 2 (Supplementary Rules).  By their agreement providing for

arbitration under AAA rules, *see* Bursor Decl. Exh. 3, the parties clearly authorized the arbitrator

make the determination of substantial similarity required under Rule 4(a)(6).

> C. **Throughout The Procedural History Of These Actions, Verizon Has Repeatedly Argued Or Conceded That The Arbitrator Has Authority To Decide These Matters**

In addition to the parties' clear arbitration agreement and clear AAA rules

authorizing the arbitrator to decide class certification issues, the procedural history of this case is

replete with statements by Verizon confirming the arbitrator's authority to decide these matters.

> 1. **In *Brown*, Verizon Expressly Stipulated To The Florida Court That "Threshold Questions," Including The Enforceability Of Class Action Waivers, "May Be Decided By The Arbitrator"**

Verizon filed a motion to stay the *Brown* arbitration in the Florida court where the

case was initially pending.  *See* 6/30/05 Motion Of Defendant Verizon Wireless To Stay

Arbitration Proceedings Inconsistent With Parties' Agreement, Bursor Decl. Exh. 9.  Verizon

---

[6] *See* Bursor Decl. Exh. 4 ("The parties waive any right to appeal this Clause Construction Award"); 11/29/05 Letter from J. Blavin to Arbitrator Matthews, Bursor Decl. Exh. 19 ("I am writing to advise you that Verizon Wireless does not intend to appeal the tribunal's November 22, 2005 clause construction award.  Verizon Wireless also has informed Mr. Eugene I. Farber, arbitrator of the *Brown and Verizon Wireless* matter, of its intent not to appeal this ruling.").

argued that Brown's arbitration clause contained an express prohibition on class arbitration, and

that "the enforcement of express contractual prohibitions on class arbitration [is] an issue for

courts, not arbitrators." *Id.* at 8. At a July 15, 2005 hearing, Verizon's counsel urged the Florida

court to enforce the purported class action waiver by precluding class arbitration as a "gate

keeping matter" instead of leaving the issue to be decided by the arbitrator:

> [T]he FAA authorizes the Court, as a gate keeping matter, to direct
> the parties to proceed in the manner set forth in the arbitration
> agreement.
>
> That's exactly what we are asking for here.
>
> The Court legitimately performs that function in a whole host of
> gate keeping capacities.
>
> That is not to say that the Court then micro-manages the day to day
> activities of the arbitrator, which come up at the end of the day,
> subject to this deferential standard, which is, you know, in many
> states, anyway, not very much reviewed, but in terms of the gate
> keeping function, the court can and should perform that function,
> and that's our argument.
>
> It should not be sent to arbitration and then brought back up under
> that deferential standard.

7/15/05 Hearing Tr. at 61, Bursor Decl. Exh. 10.

Shortly after that hearing, however, Verizon withdrew its motion and conceded

the issue.

> In light of its statements in *Campbell*, Verizon Wireless wishes to
> withdraw its argument to this Court that the 'on an individual
> basis' language expressly prohibits class action arbitrations and
> thus must be decided, as a 'gatekeeping' matter, by this Court.
> Rather, <u>Verizon Wireless agrees that the question whether the
> contract language permits class arbitrations, as well as the other
> threshold questions that Verizon Wireless has presented to this
> Court, may be decided by the arbitrator</u>.

7/25/05 Letter from K. Myles to Hon. Elizabeth T. Maas, Bursor Decl. Exh. 5, at 2 (emphasis added).

Those "threshold questions" included, among others, "the enforcement of express contractual

prohibitions on class arbitration." *See* 6/30/05 Motion Of Defendant Verizon Wireless To Stay

Arbitration Proceedings Inconsistent With Parties' Agreement at 8, Bursor Decl. Exh. 9.

   The arbitrator's Class Determination Award appropriately recognized the

significance of Verizon's conduct in the Florida court:

> [T]he record establishes that Verizon stipulated to a Court that the
> arbitrator should decide "threshold" questions. When Verizon
> moved in Florida State Court to stay this arbitration on the ground
> that the Brown/Schroer arbitration agreement contained a class
> action wavier, Verizon argued that the Florida State Court and not
> the arbitrator was required to decide this issue. Verizon thereafter
> withdrew this argument. [Repeats quotation from Myles letter,
> Bursor Decl. Exh. 5.] Verizon thus advised the Florida State Court
> in writing that the arbitrator and not a Court has authority to decide
> "threshold questions" including those related to the validity of the
> class arbitration waiver clause. Verizon should not be permitted to
> argue to the Florida State Court that only the arbitrator will
> adjudicate such matters and then argue to the arbitrator that only a
> Court should adjudicate such matters.

Class Determination Award at 18-19, Bursor Decl. Exh. 1.[7]

   **2.**  **In *Zobrist*, Verizon Expressly Conceded To The Arbitrator That "It Is
      For The Arbitrator To Decide Whether The Parties' Customer
      Agreement … Permits Class-Wide Arbitration"**

   Verizon made a similar statement with regard to the scope of the arbitrator's

authority in *Zobrist* when Verizon sought to have Arbitrator Matthews construe the *Zobrist*

clause to prohibit class arbitration. Verizon argued that "Following *Bazzle*, it is for this arbitrator

to decide whether the parties' customer agreement, as interpreted under the applicable state

substantive law permits class-wide arbitration." 9/23/05 Opposition Of Verizon Wireless To

---

   [7] This episode explains the rationale for Verizon's forum shopping and filing of its petition in
this Court rather than returning to the Florida court where the underlying litigation remains
stayed pending the outcome of the arbitration. Clearly Verizon anticipated that its principal
argument would get a chilly reception in Florida given the state of the record there.

Claimant's Motion For Preliminary Clause Construction Award at 3 (emphasis added), Bursor

Decl. Exh. 11.

> **3.** **Verizon's Motion To Consolidate *Brown* And *Zobrist* Argued That "AAA Arbitrators Have Plenary Jurisdiction Over Procedural Matters Relating To An Arbitration"**

After the clause construction phase Verizon moved for consolidation of the

*Brown* and *Zobrist* arbitrations, over Brown's objection.  In support of that motion, Verizon

emphasized the "plenary jurisdiction" of AAA arbitrators.  Verizon argued that "It is well-settled

that AAA arbitrators have plenary jurisdiction over procedural matters relating to an arbitration,

including the power to consolidate arbitration proceedings."  11/18/05 Supplement To Motion Of

Verizon Wireless For Consolidation Of Competing *Zobrist* And *Brown* Putative Class Actions at

1, Bursor Decl. Exh. 12.  Verizon argued that "It is well-established that an arbitrator has broad

authority to decide procedural matters in managing the arbitral proceedings, including, where

appropriate, consolidation of related arbitrations."  *Id.* at 2.  Verizon argued that "It makes little

sense for the AAA to have the procedural authority to consolidate potentially millions of claims

via the class action mechanism, yet to lack the authority to consolidate two competing class

arbitrations that significantly overlap in terms of parties and claims."  *Id.* at 4.  Verizon argued

"That the AAA, or a AAA arbitrator, has discretion to control procedural matters within a

pending arbitration or arbitrations is further supported by the common practice among arbitrators

– consistently approved by the courts – to follow federal and state rules on matters of procedures

….."  *Id.*  Verizon argued that "the differences between the *Brown* and *Zobrist* arbitration clauses

[one of which contained an "express prohibition on class arbitration," according to Verizon, and

the other of which did not] in no way advise against consolidation."  *Id.* at 5.  Verizon argued

that "The AAA and its arbitrators have broad authority to decide procedural matters in managing

15

the arbitral proceedings, including consolidation of related arbitrations.  The tribunal should exercise that authority here and consolidate the *Zobrist* and *Brown* matters." *Id.* at 8.

The Arbitrator agreed with Verizon that "an arbitrator does have authority to determine whether or not two arbitrations should be consolidated."  3/24/06 Order at 6, Bursor Decl. Exh. 13.  At Verizon's urging, the Arbitrator exercised that authority to grant Verizon's motion to consolidate *Brown* and *Zobrist*.  *Id.* at 8-9.

### D.    Standard Of Review Of Scope Of Arbitral Authority

Verizon argues for *de novo* review of the scope of the arbitrator's authority under *First Options*, 514 U.S. at 947.  Verizon Mem. at 7.  But *First Options* did not endorse complete *de novo* review in any circumstances.  *First Options* held that where the evidence does not show that the parties intended to commit decisions on arbitrability to an arbitrator, "there is no *special* standard [of review] … [but the matter should] proceed like review of any other district court decision finding an agreement between parties, *e.g.*, accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo*." *Id.* at 947-48.  Even if this standard were applied, the arbitrator's findings of fact concerning the scope of the parties' agreement, as well as the stipulations and concessions Verizon made in the Florida Court and earlier arbitration proceedings, would be reviewed under a clearly erroneous standard.

But for the reasons discussed at length above, the key distinction is that unlike *First Options*, in this case there is clear and unmistakable evidence that the parties' agreed to commit determinations of arbitrability to the arbitrator, which evidence includes an explicit contractual provision to that effect, and Verizon's repeated statements throughout the procedural history of both the *Brown* and *Zobrist* cases.  There is no question that as the drafter of an agreement stating "ONLY AN ARBITRATOR CAN DECIDE WHETHER AN ISSUE IS ARBITRABLE," Bursor Decl. Exh. 3, Verizon clearly and unmistakably committed questions of

arbitrability to be decided by the arbitrator.  This was further confirmed by Verizon's stipulation

to the Florida court that "threshold questions," including the enforceability of class action

waivers, "may be decided by the arbitrator."  Bursor Decl. Exh. 5.  This was further confirmed

when Verizon told Arbitrator Matthews that "Following *Bazzle*, <u>it is for this arbitrator to decide</u>

whether the parties' customer agreement, as interpreted under the applicable state substantive

law permits class-wide arbitration."  Bursor Decl. Exh. 11.  This was further confirmed when

Verizon told Arbitrator Farber that "AAA arbitrators have plenary jurisdiction over procedural

matters relating to an arbitration, including the power to consolidate arbitration proceedings."

Bursor Decl. Exh. 12.  Again, it is hard to imagine any clearer or more unmistakable

combination of words in the English language that could be used to express the parties' intent to

commit these determinations to the arbitrator.

   On this record, under the *First Options* framework, "the court must defer to an

arbitrator's arbitrability finding."  *First Options*, 514 U.S. at 943.  Under that deferential

standard of review, a court must ask "whether the arbitrators had the power, based on the parties'

submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators

correctly decided that issue."  *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 824 (2d Cir.

1997); *see also Banco Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F. Supp.2d 362,

375 (S.D.N.Y. 2002).  In other words, the Court's role is to determine "whether the arbitrator

acted within the scope of his authority," or whether the arbitral award is "merely and example of

the arbitrator's own brand of justice."  *Local 1199, Drug, Hosp. & Health Care Employees

Union v. Brooks Drug Co.,* 956 F.2d 22, 25 (2d Cir. 1992).

  **E.**  **<u>The Arbitrator Did Not Exceed His Authority</u>**

   Verizon contends that the arbitrator exceeded his authority in declaring class

action waivers unenforceable, Verizon Mem. at 6, and in purportedly severing termination of

jurisdiction clauses from some class members' arbitration agreements, *id.* at 17. At the outset, it is important to recognize that Verizon is fundamentally mischaracterizing the arbitrator's decision. The arbitrator's decision focused principally on the question of substantial similarity of arbitration clauses under Supplementary Rule 4(a)(6). To the extent the arbitrator reached the questions of the enforceability of class action waivers and termination of jurisdiction clauses, the arbitrator's conclusions with respect to those issues were mere dictum, or alternative and subsidiary holdings related to the principal issue of substantial similarity under Supplementary Rule 4(a)(6). In any event, it was clearly within the authority of the arbitrator to determine each of these issues.

### 1.    The Arbitrator Had Authority To Determine Substantial Similarity

The arbitrator clearly had authority to determine whether "each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members." *See* Supplementary Rule 4(a)(6), Bursor Decl. Exh. 2. That determination did not require the arbitrator to determine the enforceability of any class action waiver. The principal ground for finding substantial similarity was that Verizon had already committed to the position that Brown and Schroer's arbitration clauses expressly prohibited class arbitration, but Zobrist's did not. Thus, if a class member's arbitration clause prohibited class arbitration, it was in that respect similar to the Brown/Schroer agreement, if it did not, it was in that respect similar to the Zobrist agreement. The relevant procedural history underlying this determination was as follows.

Brown filed her demand for class arbitration with AAA on June 3, 2005. Five days later, on June 8, 2005, Verizon's counsel wrote a letter to AAA urging the Association not to accept or administer the case because of a purported class action waiver in the arbitration clause:

> I write to call your attention to the fact that the arbitration agreement into which Ms. Brown and Verizon Wireless entered, and on which she bases her Demand for Arbitration, expressly prohibits class claims. …
>
> Because the arbitration agreement in question contains an express prohibition on class claims, the AAA should not accept Claimant's demand for arbitration.

6/8/05 Letter from J. Hunt to AAA Vice President C. Shanks, Bursor Decl. Exh. 8.

On June 22, 2005, AAA notified the parties that it would accept the demand and administer the case. *See* 6/22/05 Letter from AAA to parties, Bursor Decl. Exh. 14.

On June 30, 2005, Verizon filed a motion to stay the *Brown* arbitration in Florida court where the case was initially pending. *See* Bursor Decl. Exh. 9. Verizon argued that Brown's arbitration clause "expressly states that any arbitration shall be conducted 'on an individual basis' … which is most naturally read to mean 'not on a class-wide basis.' … The words 'on an individual basis' frequently appear as an integral part of class waiver provisions." *Id.* at 5.

On July 5, 2005, Verizon filed an Answering Statement in this arbitration. Bursor Decl. Exh. 15. The first thing it said was: "Claimant Patricia Brown's putative class arbitration proceeding should not go forward. She and Respondent Cellco Partnership d/b/a Verizon Wireless ('Verizon Wireless') have agreed to resolve their disputes "on an individual basis," rather than on a class basis." *Id.* at 1. The first of Verizon's 31 affirmative defenses was "Class Arbitration Precluded":

> As its first affirmative defense, Respondent alleges that based upon the American Arbitration Association ('AAA') Policy on Class Arbitrations and Supplementary Rules for Class Arbitrations, and the terms of the underlying customer service agreements ('CSA') of Claimant and members of the putative class, Claimant is precluded from seeking arbitration on a class basis.

19

*Id.* at 3.

On August 24, 2005, the Association notified that parties of the appointment of Eugene I. Farber as arbitrator. *See* 8/24/05 AAA letter, Bursor Decl. Exh. 16. That day Claimants filed a motion for clause construction award under Supplementary Rule 3. Bursor Decl. Exh. 17.

On August 31, 2005, the Arbitration Tribunal held its first preliminary hearing in the *Brown* arbitration. During that hearing Verizon's counsel, Ms. Myles, stated that Verizon "will not contest clause construction." Based on that statement, the Tribunal directed the parties to prepare a stipulated partial final award on clause construction. *See* Bursor Decl. ¶ 13.

Immediately after the preliminary hearing, still on August 31, 2005, Claimants' proposed a stipulation stating "The applicable arbitration clause permits this arbitration to proceed on behalf of a class." Bursor Decl. Exh. 18. The statement was taken verbatim from Supplementary Rule 3. *See* Bursor Decl. Exh. 2. Nevertheless, Verizon refused that proposed stipulation. Verizon refused to concede that the Brown clause did in fact permit class arbitration because Verizon wanted to preserve its ability to contest the issue in other matters. After two weeks of further negotiation, Verizon agreed to sign a stipulation that said only "Verizon Wireless does not contest clause construction *in this case*." Bursor Decl. Exh. 4 (emphasis added). To this day, Verizon's position is that the Brown/Schroer clause "expressly prohibits class claims," though Verizon did not contest the issue "in this case." *See* Verizon Mem. at 5 ("Verizon Wireless does not contest in this proceeding that the CSAs from July 2002-December 2004 [which includes the Brown and Schroer agreements] do not prohibit classwide arbitration.").

Rule 4(a)(6) requires that "each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative." The Brown/Schroer clause, according to Verizon, "expressly prohibits class claims." 6/8/05 Letter from J. Hunt to C. Shanks, Bursor Decl. Exh. 8. Arbitration clauses with class waivers, therefore, are "substantially similar" to the Brown/Schroer clause in that regard. Verizon waived any contrary argument when it stipulated that it "will not contest clause construction in this case."

Although the Zobrist arbitration clause does not have a class action waiver, Verizon conceded in its motion to consolidate, and the arbitrator's consolidation order held, that the Zobrist clause was substantially similar to the Brown/Schroer clause. So in this case we have class representatives with express class action waivers, and a class representative without an express class action wavier. Either way, every class member will have an arbitration clause "substantially similar" to at least one class representative. And either way, this arbitrator held – at Verizon's urging on its motion to consolidate – that the Brown/Schroer and Zobrist clauses are substantially similar to each other for purposes of this case. 3/24/06 Order at 9, Bursor Decl. Exh. 13 ("[T]o the extent there are differences [in the arbitration agreements], it is likely that they can be resolved by different procedures and/or sub-classes.").

Verizon could have sought to enforce the class action waivers in the Florida court, but chose instead to waive the argument and to stipulate that the arbitrator could decide the matter. Then when the same issue was teed up for the arbitrator at the clause construction stage, Verizon again chose not to contest the class waiver issue, and to waive any appeal on that issue – although Verizon refused to stipulate that the Brown clause permitted class arbitration. Then Verizon emphasized the similarity of two arbitration clauses – one with and the other without an

express class action waiver – in support of its successful motion to consolidate *Brown* and

*Zobrist*. The arbitrator's Class Determination Award emphasized this procedural history to find

that, on the facts of this case, Verizon was estopped from contesting the substantial similarity of

arbitration clauses based on the purported class action waivers.

> Verizon argues that CSAs which contain a class arbitration waiver clause … and CSAs which contain a termination of arbitral jurisdiction clause … are not substantially similar to CSAs which do not contain such clauses, such as those entered into by Claimants. Claimants, however, assert persuasively that <u>Verizon should be estopped from arguing that CSAs which contain arbitration agreements with explicit class action waivers are not substantially similar to the arbitration agreements of the three class representatives</u>.
>
> In prior Court proceedings, Verizon argued that the arbitration clauses in Claimants' CSAs precluded class arbitration. Therefore, arbitration clauses with explicit class arbitration waivers can not be substantially dissimilar from the clauses in Claimants' arbitration agreements. In fact, even in the Brown arbitration (prior to consolidation) Verizon refused to stipulate that the clauses at issue permitted this arbitration to proceed on behalf of a class. Rather, Verizon did not object (rather than consent) to Claimants' application for Rule 3 Clause Construction in order to maintain its argument that Claimants' arbitration clauses prohibited class arbitrations.
>
> It is not equitable for Verizon to take different positions with respect to the various arbitration clauses at issue. <u>If Verizon previously argued and still maintains that Claimants' arbitration clauses prohibit class arbitrations, then the pre-July 2002 arbitration clauses and the post-January 2005 arbitration clauses are substantially similar</u>.

Class Determination Award at 16-17 (emphasis added), Bursor Decl. Exh. 1.

The arbitrators' foregoing analysis fully determined the question of substantial

similarity (i) on the basis of a comparison of the arbitration clauses informed by Verizon's own

interpretation of those clauses, and (ii) alternatively based on principles of equitable estoppel.

No part of this analysis required the arbitrator to reach the question of enforceability of class

action waivers.  *See id.* at 17 ("the inquiry under Supplemental Rule 4(a)(6) could end with the above analysis").  The arbitrator's further analysis of the enforceability issues were thus either unnecessary dicta or alternative bases for reaching the same result – belt-and-suspenders.  In any event, each of these issues was well within the purview of the arbitrator's legitimate authority, as explained below.

> ### 2.  The Arbitrator Had Authority To Determine The Enforceability Of Class Action Waivers And Related Termination Of Jurisdiction Clauses

After the initial analysis of substantial similarity, the arbitrator went on to find that he had the authority to determine the enforceability of class action waivers and related termination of jurisdiction clauses.  The arbitrator cited three bases for such authority.  First, the arbitrator noted that the "CSAs specifically state that 'Only an arbitrator can decide whether an issue is arbitrable.' … As such, the parties' specific agreements provide authority for the arbitrator to decide the issue."  Class Determination Award at 18, Bursor Decl. Exh. 1.

Second, the arbitrator reasoned that such determinations might be relevant to the determination of substantial similarity under Rule 4(a)(6), and "[c]learly decisions regarding the application of Supplementary Rule 4(a)(6) must be made by the arbitrator."  Class Determination Award at 18, Bursor Decl. Exh. 1.

Third, the arbitrator noted that Verizon had "stipulated to a Court that the arbitrator should decide 'threshold' questions … [and had] advised the Florida Court in writing that the arbitrator and not a Court has authority to decide 'threshold questions' including those related to the validity of the class arbitration waiver clause."  Class Determination Award at 18-19, Bursor Decl. Exh. 1.

These three bases, in addition to those set forth in Parts II.A through II.C, above, including the broad arbitration clause in the parties' agreement and the provision authorizing the

arbitrator to "award the same damages and relief … as a court would," Bursor Decl. Exh. 3, as well as Verizon's statements concerning the arbitrator's "plenary jurisdiction" to order consolidation, *see* Bursor Decl. Exh. 12, indicate clearly and unmistakably that such matters are within the arbitrator's authority.

## III.    THE ARBITRATOR DID NOT MANIFESTLY DISREGARD APPLICABLE LAW

Verizon contends the arbitrator manifestly disregarded applicable law in several respects. But Verizon's arguments simply express disagreement with the arbitrator's findings. They do not identify any instance in which the arbitrator manifestly disregarded a well defined, explicit, and clearly applicable legal rule.

### A.    Standard Of Review For Manifest Disregard Of Applicable Law

"[R]eview for manifest error is severely limited." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir. 2000); *Banco De Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F. Supp.2d 362, 371 (S.D.N.Y. 2002) (same). The Second Circuit has cautioned that "manifest disregard clearly means more than error or misunderstanding with respect to the law." *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir. 1998) (quotation marks omitted). The "manifest disregard of law doctrine [applies] ... only in the most egregious instances of misapplication of legal principles." *Wallace v. Buttar,* 378 F.3d 182, 190 (2d Cir. 2004). Specifically, a court may not vacate an arbitration award unless it finds that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Greenberg,* 220 F.3d at 28; *Banco De Seguros*, 230 F. Supp.2d at 371 (same). "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986).

The party seeking vacatur of an arbitration award bears the burden of proving manifest disregard. *See Greenberg*, 220 F.3d at 28. "But, even if that party proves that the arbitrators' decision is based on a manifest error of [ ] law, a court must nevertheless confirm the award if grounds for the decision can be inferred from the facts of the case." *McDaniel v. Bear Stearns & Co., Inc.,* 196 F. Supp.2d 343, 351 (S.D.N.Y. 2002). This is so even if the ground for the arbitrator's "decision is based on an error of fact or an error of law." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997), *citing Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892-93 (2d Cir. 1985).

**B.**    **The Arbitrator Did Not Manifestly Disregard *Gay v. CreditInform***

Verizon argues that the arbitrator "manifestly disregarded federal law" by holding the class arbitration waivers unconscionable. The arbitrator held the class action waivers unenforceable for a number of reasons including, among others, "the reasons set forth in *Muhammad v. County Bank of Rehoboth Beach*, 189 N.J. 1 (N.J. 2006) and *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005)." Class Determination Award at 20, Bursor Decl. Exh. 1. Those cases held class action waivers unenforceable based on findings that they were exculpatory clauses and were unconscionable. Verizon argues that *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) "held that the FAA preempted Pennsylvania caselaw holding, just as *Muhammad* did, that class arbitration waivers are unconscionable in cases involving small amounts in controversy."

Verizon mischaracterizes both *Gay* and *Muhammad*. But it is unnecessary to parse the detailed holdings of *Gay* and *Muhammad* for purposes of reviewing the arbitrator's order for manifest disregard. *Gay* is a Third Circuit case discussing Pennsylvania case law. In this case, neither this Court nor the arbitrator is bound by the law of the Third Circuit or the law of Pennsylvania. For this simple reason, *Gay* does not set forth a "governing legal principle" that

is "clearly applicable to the case." *Greenberg,* 220 F.3d at 28; *Banco De Seguros*, 230 F. Supp.2d at 371 (same). Both of those criteria would be required to support a finding of manifest disregard.

Moreover, *Gay*'s holding with respect to preemption of state law unconscionability doctrine is an outlier, or a minority view at best. The vast majority of cases have held that the FAA does not preempt the application of state law unconscionability doctrine to invalidate a class action waiver. *See, e.g.*, *Lowden v. T-Mobile USA, Inc.*, 2008 WL 172079 (9th Cir. Jan. 22, 2008) (rejecting *Gay* and holding that invalidation of a class action waiver based on Washington unconscionability law is not preempted by the FAA); *Shroyer v. New Cingular Wireless Servs., Inc.,* 498 F.3d 976 (9th Cir. 2007) (holding invalidation of class action waiver is not preempted by the FAA); *Discover Bank v. Superior Court*, 36 Cal.4[th] 148 (Cal. 2005) (same); *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250 (Ill. 2006) (same); *Scott v. Cingular Wireless*, 161 P.3d 843, 858 (Wash. 2007) (same, stating "[t]he FAA favors arbitration, not exculpation). In any event, whether *Gay* is an outlier, a minority view, or something else, it simply is not binding in this case. If the arbitrator disregarded *Gay*, he was free to do so and to follow the majority approach instead.

## C.  The Arbitrator Did Not Manifestly Disregard Applicable Choice Of Law Principles

Verizon argues that the arbitrator manifestly disregarded choice of law principles in connection with findings of unenforceability of class action waivers and related termination of jurisdiction clauses, and also in connection with the finding of predominance of common issues on the state common law claims. Verizon's arguments, again, have no merit.

### 1.     Unenforceability Of Class Action Waivers

Verizon argues that the arbitrator "failed to engage in *any* choice of law analysis with respect to the enforceability of the class arbitration waiver." Verizon Mem. at 15. Verizon criticizes the arbitrator's reliance on *Muhammad* and *Discover Bank* because those cases "do not establish a uniform, nationwide rule," and "at least nine states have upheld class arbitration waivers." Verizon Mem. at 16. But again, Verizon mischaracterizes the issue presented to the arbitrator.

The enforceability of class action waivers was not squarely presented to the arbitrator on the class certification motion. It had been squarely presented on Brown's original clause construction motion, and Verizon did not contest the matter. *See* Bursor Decl. Exh. 4. At the class certification stage, the issue was not enforceability, but substantial similarity among class members' arbitration clauses. As explained above, the arbitrator determined the question of substantial similarity (i) on the basis of a comparison of the arbitration clauses informed by Verizon's own interpretation of those clauses, and (ii) alternatively based on principles of equitable estoppel. *See* Part II.E.1, above. Neither of those bases for decision implicated any choice of law issue. The question of substantial similarity of arbitration clauses arises only under AAA's Supplementary Rule 4(a)(6), so this is not an issue that is directly addressed by the law of any state. With respect to the question of estoppel, Verizon never identified any variation among state law that would affect the arbitrator's analysis of the estoppel issue.

Even with respect to the portion of the Class Determination Award that goes on to address the enforceability of the class action waivers, either in dicta or as an alternative basis for finding substantial similarity, choice of law issues still do not come to the fore. Verizon characterizes the issue as though class action waivers are enforceable in some states but not in others. That is a gross oversimplification of the law on this point. No state has a blanket rule.

There is no state in which class action waivers are always enforced, or always not enforced. Every state court decision on this issue is heavily fact dependent, because the application of unconscionability principles depends on the facts and circumstances of the case. *See, e.g.*, *Muhammad*, 189 N.J. at 102 (characterizing the decision as "<u>fact-sensitive</u>") (emphasis added); *Discover Bank*, 36 Cal.4th at 153 ("we conclude that, at least <u>under some circumstances</u>, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable") (emphasis added). The arbitrator's detailed factual analysis of this issue, including particularly his review of the procedural history of this case, provides far more than a "barely colorable justification" for the arbitrator's conclusion that the class action waivers are unconscionable, and thus unenforceable. On review for manifest disregard, no more is required. *See Banco de Seguros del Estado*, 344 F.3d at 260. Verizon did not identify any clearly applicable state law that, on the facts of this case, would have compelled a different result.

### 2.    Unenforceability Of Termination Of Arbitral Jurisdiction Clauses

Verizon also disputes the arbitrator's conclusion that the termination of arbitral jurisdiction clauses appended to some of the class action waivers were unenforceable. Verizon Mem. at 17-18. The arbitrator recognized this as a clause that purports "to make the jurisdiction of an arbitral forum dependent upon the arbitrator's determination regarding the merits of a claim or defense." Class Determination Award at 22, Bursor Decl. Exh. 1. The arbitrator found this provision unconscionable for at least 7 reasons. *See id.* at 21-23 (items (a) through (g)). Verizon did not identify to the arbitrator any state or federal case that had enforced such a provision – certainly none that had done so on behalf of a party that had "participated without objection in 2 arbitrations with 14 procedural orders over 2 years and then claim[ed] that the arbitral forum lacks jurisdiction." *See id.* at 21.

Now Verizon protests on the ground that *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 993 (9th Cir. 2007) and *Riensche v. Cingular Wireless*, 2006 WL 3827477, at * 13 (W.D. Wash. Dec. 27, 2006) enforced similar clauses – albeit in a fundamentally different procedural situation. *See* Verizon Mem. at 18. The short answer to that argument is that these cases were not binding on the arbitrator, and were never cited to the arbitrator in any event. The arbitrator cannot be found to have manifestly disregarded case law that was never cited to him. *See, e.g.*, *Greenberg*, 220 F.3d at 28 (manifest disregard requires that "the arbitrator[] knew of a governing legal principle yet refused to apply it); *Banco De Seguros*, 230 F. Supp.2d at 371 (same).

### 3.    State Common Law Claims (Counts III, IV, VI and VII)

Verizon argues that the arbitrator "ignored an equally irreconcilable conflict among the laws of the various states that govern the validity of a liquidated damages provision," Verizon Mem. at 28, because according to Verizon some states employ a "retrospective approach" while other states employ a "prospective approach" to the issue, *id.* at 30. However, the arbitrator carefully considered this issue and determined, based on the evidence, that common issues would predominate despite alleged variations among state laws:

> Verizon argues that the common law of some states requires an evidentiary presentation of whether a liquidated damage clause like the $175 ETF was a reasonable approximation of actual loss at the time Verizon and its customer entered into the CSA. Other jurisdictions require an analysis of whether the liquidated damage clause like the $175 ETF is a fair approximation of actual damage incurred by Verizon at the time of breach of the CSA, i.e., at the time of early termination. Verizon argues further that some jurisdictions require an analysis of both times in addition to other factors.
>
> I do not find that the conflict regarding the time of analysis predominates over the common questions of law or fact … or should otherwise preclude certification of a class ….

> … In the massive evidentiary submissions regarding potential
> damages to Verizon in the event of an early termination by a
> customer, Verizon has not established any difference depending
> upon whether the analysis is made as of the time of entry into the
> CSA or the time of breach.  The existence of any difference
> therefore seems entirely hypothetical and not outcome
> determinative.
>
> … Given the flexibility of evidentiary standards in arbitration, this
> Tribunal would hear evidence of all factors at all times.  Given that
> formal rules of evidence need not apply at an arbitration hearing on
> the merits, evidence will be accepted in this arbitration relevant to
> both the time of entry into the CSA and the time of the early
> termination by a customer.

Class Determination Award at 28-29, Bursor Decl. Exh. 1.

In reviewing for manifest disregard of applicable law, the Court's inquiry goes no

farther than determining if there is a "barely colorable justification for the outcome reached."

*Banco de Seguros del Estado,* 344 F.3d at 260.  The arbitrator's discussion of the "massive

evidentiary submissions" showing no difference in terms of the time of the analysis under

various states' laws, and of the flexible evidentiary standards in arbitration that would allow for

consideration of all factors relevant under the various laws in any event, are more than sufficient

to support the arbitrator's conclusion that common issues predominate despite any alleged

conflicts among state laws.

>    D.    **The Arbitrator Did Not Manifestly Disregard Law Concerning Standing Of
>          Class B Representatives**

Verizon argues that the arbitrator manifestly disregarded the "firmly established

requirement of federal law that a class representative must be part of the class in order to have

standing to represent the class," because, according to Verizon, "no named plaintiff had standing

to represent Class B."  Verizon Mem. at 23.  But in fact, federal law is contrary to Verizon's

position.  *See, e.g.*, *United States Parole Board v. Geraghty*, 445 U.S. 388, 397-404 (1980)

("Some claims are so inherently transitory that the trial court will not have even enough time to

rule on a motion for class certification before the proposed representative's individual interest expires."). The arbitrator found that this case falls squarely under the "capable of repetition yet evading review" doctrine, and he invoked it in concluding that Brown was an adequate representative of Class B (Subscriber Class) despite the expiration of her two-year CSA in January 2005. *See* Class Determination Award at 13, Bursor Decl. Exh. 1.

This issue is thoroughly addressed in Respondents January 29, 2008 Memorandum Of Law In Support Of Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition, at Part III.B.3, pages 22-25. Rather than repeating that discussion here, for sake of brevity and avoiding duplication, Respondent's incorporate that discussion by reference as though fully set forth herein.

### E.    The Arbitrator Did Not Manifestly Disregard Law Concerning The Statute Of Limitations On The § 201 Claim

Verizon argues that the arbitrator "refused to enforce the statute of limitations that deprived the named plaintiffs of standing to pursue" their claims under 47 U.S.C. § 201. Verizon Mem. at 25. But the arbitrator did not refuse to enforce the statute of limitations – he considered it thoroughly and determined that Verizon had not met its burden to show that the § 201 claims were time-barred. This issue is thoroughly addressed in Respondents January 29, 2008 Memorandum Of Law In Support Of Respondents' Motion To Dismiss Or In The Alternative To Summarily Deny The Petition, at Part III.B.4, pages 25-30. Rather than repeating that discussion here, for sake of brevity and avoiding duplication, Respondent's incorporate that discussion by reference as though fully set forth herein.

### F.    The Arbitrator Did Not Manifestly Disregard Law Concerning Hypothetical And Unproven Conflicts Within Class A

Lastly, Verizon argues that the arbitrator manifestly disregarded "the real possibility of a conflict," Verizon Mem. at 31, based on Verizon's contention that if the $175

early termination fee was invalidated, Verizon might recover more than $175 in actual damages from some class members on a counterclaim that, some five years into this case, still has not been pleaded.  This was the principal and most hotly contested issue in the arbitration, spawning 9 expert reports.  *See* Class Determination Award at 10, Bursor Decl. Exh. 1 ("9 expert reports and extensive testimony").  After hearing three days of testimony and argument, followed by several rounds of supplemental post-trial briefing, the arbitrator simply was not convinced by Verizon's argument about this purported conflict.  In the four pages of the Award that address this issue, the arbitrator recites Verizon's argument and lists twelve grounds for rejecting it, repeatedly finding the purported conflict to be "hypothetical," "speculative," "highly implausible," and "not … established."  *See* Class Determination Award at 24 ("hypothetical conflicts which have not been established"); *id.* ("highly speculative"); *id.* at 25 ("there remains significant doubt as to whether Verizon has validly asserted a counterclaim in this matter"); *id.* ("There is ... significant question as to whether Verizon can assert such a counterclaim."); *id.* at 26 ("It is impossible on this record for me to determine whether or not there actually were damages sustained by Verizon upon the breach of a CSA by a customer and if so, the magnitude of any such damages."); *id.* ("Verizon's assertion of an int[ra]-class conflict based upon its prosecution of a counterclaim also seems highly speculative given its concession at the evidentiary hearing that it has never sued any customer for the $175 ETF.  It therefore seems highly implausible that if the $175 ETF is declared invalid, Verizon would then change its policy and begin suing individual customers for more than the $175 ETF."); *id.* at 27 ("Verizon's assertions of a counterclaim specifically states that it is entitled to consequential damages. However, consequential damages may be explicitly barred by some or all of the CSAs.").

After a lengthy analysis, the arbitrator concluded:  "In sum, I conclude that Verizon's assertion of a counterclaim and possible recovery on such counterclaim are speculative."  *Id.* at 27.  This determination is certainly well in accord with the law that speculative conflicts should be "disregarded at the class certification stage."  *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).  As the Second Circuit explained:

> Even if a level of conflict may exist among the [class], that potential for conflict need not defeat certification.  While Rule 23(a)(4) is designed to ferret out potential conflicts between representatives and other class members, *see Amchem*, 521 U.S. at 625-26, 117 S. Ct. 2231, 'not every potential disagreement between a representative and the class members will stand in the way of a class suit.'  1 Newberg & Conte, *supra*, § 3.26, at 3- 143.  'The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental,' *id.* § 3.26, at 3-143 to -144, and 'speculative conflict should be disregarded at the class certification stage.' *Id.* § 3.25, at 3-136; *see also* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.25[4][b][ii], at 23-119 (3d ed. 1998) (stating that to find inadequacy of representation 'most courts hold that the conflict must be more than merely speculative or hypothetical').

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 at 145.

Verizon devotes several pages of its memorandum (pages 30-35) to re-hashing its side of the argument between the expert witnesses concerning Verizon's actual damages, if any, in the event of early termination.  But on review for manifest disregard, this Court cannot second-guess the arbitrator's evaluation of that evidence.  *See, e.g.*, *Goldman v. Architectural Iron Co.*, 2001 WL 1705117, at *5 (S.D.N.Y. Jan. 15, 2001) ("This Court may not usurp the Arbitrator's discretion to give to the testimony he heard the weight he deemed appropriate.").  A federal court cannot vacate an arbitral award even if it is firmly convinced that the arbitrator made the wrong call on the law.  On the contrary, the award "should be enforced, despite a

court's disagreement with it on the merits, if there is a <u>barely colorable justification</u> for the outcome reached." *Banco de Seguros del Estado,* 344 F.3d at 260 (emphasis added; citation and quotation marks omitted).  Here, there is far more than a "barely colorable justification" for the arbitrator's considered decision that the purported conflict asserted by Verizon was hypothetical, speculative and unproven, and was not a sufficient ground to deny class certification.

<u>**Conclusion**</u>

For the foregoing reasons, as well as those set forth in the January 29, 2008

Memorandum Of Law In Support Of Respondents' Motion To Dismiss Or In The Alternative To

Summarily Deny The Petition, Verizon's motion should be denied.

Dated: February 21, 2008

By   /s/
     Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)
scott@bursor.com

*Lead Counsel for Claimants-Respondents*
*Patricia Brown, Harold P. Schroer, and*
*Dawn M. Zobrist*

Bradley M. Lakin
Daniel J. Cohen
THE LAKIN LAW FIRM, P.C.
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095-1127
Ph: 618.254.1127
danc@lakinlaw.com

David Pastor
GILMAN AND PASTOR LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
(617) 742-9700 (tel)
(617) 742-9701 (fax)
dpastor@gilmanpastor.com

Phillip A. Bock
Robert M. Hatch
DIAB & BOCK, LLC
20 N. Wacker Drive, Suite 1741
Chicago, IL  60606
Telephone:  (312) 334-1970
phil@diabbockllc.com

Nadeem Faruqi
Adam R. Gonnelli
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY 10016
(212) 983-9330 (tel)
(212) 983-9331 (fax)
nfaruqi@faruqilaw.com
agonnelli@faruqilaw.com

Jayne A. Goldstein
MAGER & GOLDSTEIN, LLP
1640 Town Center Circle, Suite
216
Weston, FL 33326
(954) 515-0123 (tel)
(954) 515-0124 (fax)
jgoldstein@magergoldstein.com

*Additional Counsel for Claimants-*
*Respondents Patricia Brown, Harold*
*P. Schroer, and Dawn M. Zobrist*

## **CERTIFICATE OF SERVICE**

I, SCOTT A. BURSOR, hereby certify that a true and correct copy of the foregoing document has been served by email to cmicarelli@debevoise.com, henry.weismmann@mto.com, hojoon.hwang@mto.com, and jonathan.blavin@mto.com, this 21st day of February, 2008, in accordance with the February 13, 2008 Stipulation And Order providing for service of all papers in this matter by email.

By    /s/                    
        Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)

37