UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
and VERIZON COMMUNICATIONS INC.,

                                        Petitioners,

-against-

PATRICIA BROWN, HAROLD P. SCHROER, and
DAWN M. ZOBRIST, on an individual basis and on
behalf of others similarly situated,

                                        Respondents.

No. 08 CV 00427 (LAK)


### DECLARATION OF SCOTT A. BURSOR   (VOL. II)


        I, SCOTT A. BURSOR, declare as follows:

        1.      I am the same Scott A. Bursor that submitted a declaration in this matter on January 29, 2008, attaching Exhibits 1 through 6.

        2.      A true and correct copy of Consolidated Arbitration Procedural Order No. 16 is attached hereto as Exhibit 7.

        3.      A true and correct copy of a 6/8/05 Letter from J. Hunt to AAA Vice President Catherine Shanks is attached hereto as Exhibit 8.

        4.      A true and correct copy of the 6/30/05 Motion Of Defendant Verizon Wireless To Stay Arbitration Proceedings Inconsistent With Parties' Agreement is attached hereto as Exhibit 9.

5.    A true and correct copy of relevant excerpts of a 7/15/05 Hearing Transcript from the Florida State Court action, *Brown v. Verizon Wireless Servs.* LLC, are attached hereto as Exhibit 10.

6.    A true and correct copy of  the 9/23/05 Opposition Of Verizon Wireless To Claimant's Motion For Preliminary Clause Construction Award in *Zobrist* is attached hereto as Exhibit 11.

7.    A true and correct copy of the 11/18/05 Supplement To Motion Of Verizon Wireless For Consolidation Of Competing *Zobrist* And *Brown* Putative Class Actions is attached hereto as Exhibit 12.

8.    A true and correct copy of the 3/24/06 Order granting Verizon's motion to consolidate the *Brown* and *Zobrist* arbitrations is attached hereto as Exhibit 13.

9.    A true and correct copy of a 6/22/05 Letter from AAA to parties is attached hereto as Exhibit 14.

10.    A true and correct copy of Verizon's Answering Statement in the *Brown* arbitration is attached hereto as Exhibit 15.

11.    A true and correct copy of the 8/24/05 letter from AAA to the parties is attached hereto as Exhibit 16.

12.    A true and correct copy of Claimant's Motion For A Clause Construction Award Confirming That The Applicable Arbitration Clause Permits This Arbitration To Proceed On Behalf Of A Class in the *Brown* arbitration is attached hereto as Exhibit 17.

13.    On August 31, 2005, the Arbitration Tribunal held its first preliminary hearing in the *Brown* arbitration.  During that hearing Verizon's counsel, Ms. Myles, stated that Verizon "will not contest clause construction."  Based on that statement, the Tribunal directed the parties to prepare a stipulated partial final award on clause construction. A true and correct copy of Brown's 8/31/05 proposed Stipulated Partial Final Award – Clause Construction is attached hereto as Exhibit 18.

14.     A true and correct copy of the 11/29/05 Letter from J. Blavin to Arbitrator Matthews is attached hereto as Exhibit 19.

15.     A true and correct copy of the *Zobrist* Clause Construction Award is attached hereto as Exhibit 20.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 21, 2008.


_____/s/_____

Scott A. Bursor

## <u>CERTIFICATE OF SERVICE</u>

I, SCOTT A. BURSOR, hereby certify that a true and correct copy of the

foregoing document has been served by email to cmicarelli@debevoise.com,

henry.weismmann@mto.com, hojoon.hwang@mto.com, and jonathan.blavin@mto.com, this 21st

day of February, 2008, in accordance with the February 13, 2008 Stipulation And Order

providing for service of all papers in this matter by email.

By  /s/
        Scott A. Bursor  (SB1141)

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, Floor 10B
New York, NY  10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)

AMERICAN ARBITRATION ASSOCIATION
NORTHEAST CASE MANAGEMENT CENTER
-------------------------------------------------------------x
Patricia Brown and Harold P. Schroer, on
an individual basis, and also on a classwide
basis on behalf of others similarly situated,

               Claimants,

 -against-

Cello Partnership d/b/a Verizon
Wireless,

               Respondent.
-------------------------------------------------------------x
Dawn M. Zobrist, individually and on behalf of
others similarly situated,

               Claimant,

 -against-

Verizon Wireless, Cellco Partnership, and
Verizon Communications,

               Respondents.
-------------------------------------------------------------x

**Consolidated Case No.
11 494 01274 05 and
11 494 0032 05**

## CONSOLIDATED ARBITRATION PROCEDURAL ORDER NO. 16

The Undersigned Arbitrator, having convened a conference by telephone regarding various matters, and Claimants appearing by Scott Bursor, David Pastor, James Goldstein, Daniel Cohen and Phillip Bock, Esqs. and Respondents appearing by Henry Weissman, Hojoon Hwang and Jonathan Blavin, Esqs., and the Arbitrator having heard status reports and argument regarding various points, it is hereby Ordered as follows:

1. By February 25, 2008 each side may make an additional submission regarding various motions and matters discussed in the conference call.

2. By February 28, 2008 each side may submit a reply.

3. A hearing will be held by telephone conference call on March 4, 2008 at 4:00 p.m. EST.

Dated:    White Plains, New York
          February 19, 2008

_____
Eugene I. Farber, Arbitrator

# MUNGER, TOLLES & OLSON LLP

560 MISSION STREET

TWENTY-SEVENTH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

---

355 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

June 8, 2005

WRITER'S DIRECT LINE
(415) 512-4016
(415) 644-6916 FAX
John.Hunt@mto.com

## BY FAX AND MAIL

Catherine Shanks
American Arbitration Association
Vice President - Case Management Center
950 Warren Avenue
East Providence, RI 02914

> Re:   Case No. 11 459 01274 05
> Patricia Brown v. Verizon Wireless

Dear Ms. Shanks:

      I am one of the counsel for Verizon Wireless in the above-captioned matter. I have received a letter of today's date from you and Katharine Flanagan to David Coulson stating that the AAA intends to accept claimant Patricia Brown's demand for arbitration and administer the arbitration under the AAA's Supplementary Rules for Class Arbitrations, provided Claimant remits the unpaid balance of the class arbitration filing fee.

      I write to call your attention to the fact that the arbitration agreement into which Ms. Brown and Verizon Wireless entered, and on which she bases her Demand for Arbitration, expressly prohibits class claims. The agreement provides that "any controversy or claim arising out of this agreement . . . will be settled by one or more neutral arbitrators *on an individual basis* before the American Arbitration Association." *See* Verizon Wireless Customer Agreement, "Dispute Resolution And Mandatory Arbitration," ¶ 1 (emphasis added) (Ex. A).

      Because the arbitration agreement in question contains an express prohibition on class claims, the AAA should not accept Claimant's demand for arbitration. The American

MUNGER, TOLLES & OLSON LLP
Catherine Shanks
June 8, 2005
Page 2

Arbitration Association Policy on Class Arbitrations explicitly provides that "[t]he Association is not currently accepting administration demands for class arbitration where the underlying agreement prohibits class claims, consolidation, or joinder, unless an order of a court directs the parties to the underlying agreement to submit their dispute to an arbitrator or to the Association." *See* Ex. B. No court order directing arbitration has yet been entered in this case, so accepting Claimant's demand for class arbitration is inconsistent with the Policy.

Based on the text of the arbitration agreement and the AAA's class arbitration policy, I request on behalf of Verizon Wireless that that Association reject Claimant's demand for class arbitration.

I look forward to hearing from the Association promptly on this subject. I would appreciate it very much if you would direct further communications relating this matter to Kristin Linsley Myles and to me, as well as to Mr. Coulson. Many thanks in advance for your courtesy. Contact information for Ms. Myles and me appears below.

| | |
|---|---|
| Kristin Linsley Myles | John P. Hunt |
| Munger, Tolles & Olson LLP | Munger, Tolles & Olson LLP |
| 560 Mission St., Suite 1900 | 560 Mission St., Suite 1900 |
| San Francisco, CA 94105-2907 | San Francisco, CA 94105-2907 |
| Fax: (415) 512-4077 | Fax: (415) 644-6916 |
| E-mail: Kristin.Myles@mto.com | E-mail: John.Hunt@mto.com |

Very truly yours,

John P. Hunt

cc:     Katharine M. Flanagan
        David A. Coulson, Esq.
        Kristin Linsley Myles, Esq.
        Scott A. Bursor, Esq.
        Jayne A. Goldstein, Esq.
        David Pastor, Esq.

IN THE CIRCUIT COURT FOR THE
FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO.  50 2004 CA 00563 MB-AI

PATRICIA BROWN, on behalf of herself and
all others similarly situated,

      Plaintiff,

v.

VERIZON WIRELESS SERVICES, LLC,[1]

      Defendant.

_____/

## MOTION OF DEFENDANT VERIZON WIRELESS TO STAY ARBITRATION
## PROCEEDINGS INCONSISTENT WITH PARTIES' AGREEMENT

Pursuant to the Florida Arbitration Code, Fla. Stat. Ann. § 682.01, *et seq.*, and the Federal

Arbitration Act, 9 U.S.C. §§ 1-16, Defendant Verizon Wireless moves for an order staying the

pending, purportedly class-wide arbitration proceeding that the plaintiff in this action, Patricia

Brown, has separately commenced against Verizon Wireless.  A stay is warranted because, by

the plain terms of the parties' agreement, the class-wide arbitration that Ms. Brown has purported

to file is not authorized.  In the alternative, Verizon Wireless seeks a stay of the arbitration for

the reasons set out Defendant's Motion for (1) Stay of Plaintiff's ETF Claims Pending Outcome

of Proceedings Before the Federal Communications Commission and (2) Abatement of

Plaintiff's Handset Locking Claims, dated May 24, 2005.  In support of its motion, Verizon

Wireless states as follows.

---

[1] Defendant Cellco Partnership d/b/a Verizon Wireless was incorrectly sued as "Verizon Wireless Services, LLC."

## BACKGROUND

1. Plaintiff Patricia Brown filed this action in this court on May 17, 2004.

2. Verizon Wireless removed the case to federal court on June 30, 2004 and, on August 4, 2004, filed a motion in that court to compel arbitration. The action was remanded to this court on October 4, 2004. On January 11, 2005, Verizon Wireless filed its motion to compel arbitration on an individual basis, as provided in the agreement between Ms. Brown and Verizon Wireless.

3. Plaintiff's agreement with Verizon Wireless provides, in part:

> **INSTEAD OF SUING IN COURT, WE EACH AGREE TO SETTLE DISPUTES (EXCEPT CERTAIN SMALL CLAIMS) ONLY BY ARBITRATION . . . . TO THE FULLEST EXTENT PERMITTED BY LAW WE EACH AGREE THAT:**
>
> 1. THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT, OR ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS <u>ON AN INDIVIDUAL BASIS</u> BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB") AS DESCRIBED BELOW.

Ex. A (bold in original, underlining added). As the underlined text demonstrates, Plaintiff and Verizon Wireless agreed that disputes between them would be arbitrated "on an individual basis."

4. Plaintiff resisted arbitration for months, asserting arguing that the arbitration provisions in her agreements with Verizon Wireless were unconscionable. In support of this claim, Plaintiff served extensive discovery requests on Verizon Wireless, secured a commission to take the deposition of the American Arbitration Association ("AAA") in New York, and (incorrectly) represented through counsel to the Court that the AAA had found arbitration

2

provisions in Verizon Wireless service contracts to be unenforceable. Plaintiff also maintained that Verizon Wireless's responses to her discovery requests were inadequate and filed a motion to compel further discovery responses in this Court. That motion currently is set for hearing on July 15, 2005 at 9:00 a.m.

       5.      On May 24, 2005, Verizon Wireless filed its Motion for (1) Stay of Plaintiff's ETF Claims Pending Outcome of Proceedings Before the Federal Communications Commission and (2) Abatement of Plaintiff's Handset Locking Claims, seeking to stay or abate this case in its entirety.

       6.      On June 3, 2005, in a reversal of position and in violation of her arbitration agreement with Verizon Wireless, Plaintiff filed with the AAA a demand for class-wide arbitration on behalf of a nationwide class, requesting that hearings be held in New York City. Ex. B. When the AAA announced its intention to administer Plaintiff's class-wide arbitration, Verizon Wireless immediately objected, noting that Plaintiff's service agreement permits arbitration only "on an individual basis" and noting that, under the AAA's own rules, the AAA will not administer requests for class-wide arbitration, absent a court order, where the parties' contract precludes such class-wide treatment. Ex. C. On June 22, 2005, the AAA informed the parties that it would proceed with administering the arbitration despite the objection of Verizon Wireless to the use of a class procedure to which Verizon Wireless had not agreed. Ex. D.

## ARGUMENT

By this motion, Verizon Wireless seeks to preserve its agreement with Plaintiff that disputes between them be arbitrated only "on an individual basis." Verizon Wireless does not seek to avoid arbitration; indeed, the motion of Verizon Wireless to compel arbitration according to the terms of the parties' agreement remains on file with the Court. Verizon Wireless simply seeks to enforce the parties' agreement to arbitrate as the agreement is written.

## I.    THE COURT HAS JURISDICTION TO ENTERTAIN THIS MOTION

This motion seeks to stay a purported class-wide arbitration proceeding to which Verizon

Wireless has not agreed. Plaintiff has subjected herself and this dispute to the jurisdiction of the

Court by filing her action against Verizon Wireless, so the Court has jurisdiction to grant the

relief requested. *See, e.g., NEC Elecs., Inc. v. VG Sales Co.*, 655 So. 2d 1146, 1148 (Fla. 4th

DCA 1995) (upholding Florida trial court's injunction staying parallel arbitration proceedings in

California between parties to Florida lawsuit, noting that Florida court had "jurisdiction over all

the parties" to the litigation).

## II.    NO AGREEMENT TO ARBITRATE ON A CLASS-WIDE BASIS EXISTS, SO UNDER THE FEDERAL ARBITRATION ACT AND THE FLORIDA ARBITRATION CODE, THE PENDING AAA ARBITRATION SHOULD BE STAYED

Florida law expressly authorizes courts to stay arbitration proceedings where there is no

agreement to arbitrate:

> On application the court may stay an arbitration proceeding commenced or about
> to be commenced, if it shall find that no agreement or provision for arbitration
> subject to this law exists between the party making the application and the party
> causing the arbitration to be had. The court shall summarily hear and determine
> the issue of the making of the agreement or provision and, according to its
> determination, shall grant or deny the application.

Fla. Stat. Ann. § 682.03(4) (West 2005). *See also Hospitality Ventures of Coral Springs, L.C. v.*

*American Arbitration Ass'n*, 755 So. 2d 159, 160 (Fla. 4th DCA 2000) ("Where there is a dispute

between the parties to a contract concerning the propriety of arbitration, the proper remedy is for

a party to apply to the court for an order compelling or staying arbitration pursuant to section

682.03"); *Caltagirone v. School Board*, 355 So. 2d 873 (Fla. 2d DCA 1978) (upholding TRO

halting arbitration until court could determine existence of valid contract between parties).

Florida law also authorizes a stay of the parallel and duplicative New York arbitration that

Plaintiff has commenced based on the "proposition that a court with prior jurisdiction may enjoin

a party's pursuit of competing actions in other forums where there is the possibility of exposing

parties to inconsistent findings of law or fact. Avoidance of a multiplicity of suits is also a valid

4

ground for issuing a stay." *NEC Elecs., Inc. v. VG Sales Co.*, 655 So. 2d 1146, 1148 (4th DCA 1995) (upholding stay of arbitration in California).

The Federal Arbitration Act likewise authorizes courts to compel arbitration according to the terms of a written contract, *see* 9 U.S.C. § 4, including the authority to enjoin parties from attempting to arbitrate on a class-wide basis when the contract forbids class-wide arbitration. *See Discover Bank v. Cook*, No. 2:05-CV-19-FWO, 2005 WL 1514034, at *6 (M.D. Ala. June 27, 2005) (enjoining claimant from pursuing class-wide arbitration contrary to contract provision).

The dispute here falls within the scope of section 682.03(4) of the Florida Arbitration Code and section 4 of the Federal Arbitration Act, because the agreement to arbitrate on an individual basis is integral to the agreement to arbitrate: The existence of a valid provision forbidding class actions "places the making of the Arbitration Agreements in issue" and is a question that "may be decided by a federal court." *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005); *see also Gipson v. Cross Country Bank*, 354 F. Supp. 2d 1278, 1286-87 (M.D. Ala. 2005) (enforceability of "express prohibit[ion]" on class arbitration "concern[s] the validity of the arbitration clause" itself, and thus is among the "matters 'contracting parties would likely . . . expect[] a court' to decide."); *Cook*, 2005 WL 1514034, at *4 (M.D. Ala. June 27, 2005) (following *Jenkins*).

Here, it cannot be disputed that there is "no agreement or provision for arbitration" on a class-wide basis. Fla. Stat. Ann. § 682.03(4). The agreement between Plaintiff and Verizon Wireless expressly states that any arbitration shall be conducted "on an individual basis." The phrase "on an individual basis" is most naturally read to mean "not on a class-wide basis," and no other interpretation has been offered or recommends itself.

The words "on an individual basis" frequently appear as an integral part of class waiver provisions of arbitration agreements. *See Fonte v. AT&T Wireless Servs., Inc.*, __ So. 2d __, No. 4D04-219, 2005 WL 1397960, at *2, *4 (Fla. 4th DCA June 15, 2005) (compelling arbitration pursuant to wireless services contract containing "bar on class representation" that permitted

5

arbitrator to award statutory damages "on an individual basis"); *Pitchford v. AmSouth Bank*, 285

F. Supp. 2d 1286, 1289 (M.D. Ala. 2003) (upholding class waiver provision that "[a]ny

arbitration under this paragraph shall be on an individual basis between the parties to this

Arbitration only and shall not be commenced as a member or representative of or on behalf of a

class of persons"); *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 114, 122 (2003)

(reversing denial of motion to compel arbitration under agreement containing "no-class-action

provision" that arbitration would be "on an individual basis without resort to any form of class

action").

        More generally, courts frequently use the phrase "on an individual basis" in the context

of class actions to mean "not on a class-wide basis." *See, e.g., Bombalier v. Lifemark Hosp.*, 661

So. 2d 849, 852 (Fla. 3d DCA 1995) (contrasting "joinder" of claims with acceptance or

rejection of offer to arbitrate "on an individual basis"); *Klay v. Humana, Inc.*, 382 F.3d 1241,

1259-60 (11th Cir. 2004) (class could be certified despite fact damages would be calculated "on

an individual basis"); *Terry L. Braun. P.A. v. Campbell*, 827 So. 2d 261, 267 (Fla. 5th DCA

2002) ("[w]here both liability and damages depend on individual factual determinations,

resolution of these claims can only be decided on an individual basis which is inconsistent with

the commonality requirement for class actions").

        Plaintiff's counsel is incorrect, in his unsupported assertion in a letter to the AAA, that

the words "on an individual basis" in the Agreement do not prohibit class-wide claims. Ex. E.

Plaintiff has not offered, and cannot offer, any explanation of what the phrase *does* mean if it

does not prohibit class-wide arbitration. As noted above, the words of the contract have no

logical or natural reading other than to mandate individual arbitration actions and thereby

prohibit class-wide arbitrations such as the one Plaintiff is attempting to pursue in New York.

        The Federal Arbitration Act confirms the Court's authority and duty to enter a stay of the

pending arbitration under the circumstances presented here. The FAA "requires courts to

enforce privately negotiated agreements to arbitrate, like other contracts, *in accordance with

their terms*." *Volt Info. Scis. v. Board of Trustees*, 489 U.S. 468, 478 (1989) (emphasis added);

*see also id.* at 479 (same); *id.* at 476 ("the federal policy [underlying the FAA] is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate"). Accordingly, when the parties to a contract subject to the FAA choose the law of a particular state to govern their agreement, a court may apply the law of that state to stay an arbitration even if the FAA otherwise would permit the arbitration to go forward. *Id.* at 470, 479. *See also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements").

Plaintiff may point to *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), to argue that an arbitrator should decide whether class-wide arbitration is permitted. This argument is wrong, because *Bazzle* does not require that an arbitrator "interpret" *unambiguous* contract language requiring arbitration "on an individual basis." The contract at issue in *Bazzle* contained no express language requiring any arbitration to be conducted on an individual basis. Instead, defendant Green Tree asked the Court to infer a prohibition on class actions from language providing that disputes "shall be resolved . . . by one arbitrator selected by us [Green Tree] with consent of you [Green Tree's customer]." *Id.* at 450. The four-Justice plurality addressed the issue of who should resolve the dispute over the meaning of this clause only after determining that the cited language did *not* clearly prohibit class arbitration. *See Bazzle*, 539 U.S. at 451 (plurality op.) ("We do not believe . . . that the contracts' language is as clear as The Chief Justice believes."). Justice Stevens, whose concurrence produced the five-Justice majority, would not have disturbed the judgment of the South Carolina Supreme Court that the agreement was "silent" on the issue of class arbitration. *Id.* at 454.[2]

---

[2] The rule that issues of interpretation are referred to the arbitrator only in case of ambiguity is consistent with the general principle that "clear contractual language governs our [*i.e.*, courts'] interpretation of arbitration agreements," and that Supreme Court authority "direct[s] *courts* to respect the terms of the agreement" when they are "clear." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 n.9 (2002).

Thus, *Bazzle* simply did not address the situation where, as here, clear contract language does not permit class actions. As Senior Judge Albritton of the Middle District of Alabama concluded in a lengthy and well-reasoned opinion analyzing *Bazzle* earlier this year, where a "clause prohibiting class arbitration is clear, that is, there is no issue of contract interpretation as there was in *Bazzle*," then "an arbitrator need not interpret the contract's class action waiver clause," because "there is simply no room for interpretation; it is forbidden." *Gipson*, 354 F. Supp. 2d at 1286-87. Under such circumstances, there is no need for the court to "defer to the arbitrator's interpretation of the arbitration agreement regarding whether it forbids or allows class arbitration." *Id.* at 1287. *Gipson* follows a long line of cases recognizing that *Bazzle* announced a rule for ambiguous contracts, not for clear ones. *See Johnson v. Long John Silver's Rests., Inc.*, 320 F. Supp. 2d 656, 668 (M.D. Tenn. 2004) (in case of "ambiguous contract," rule that arbitrator should interpret contract applies); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1126-27 (D. Kan. 2003) (where contract "silent," referring to arbitrator question whether class-wide arbitration permitted); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 926 (M.D. Tenn. 2003) (evaluating unconscionability of arbitration clause based on class waiver because contract not "silen[t]" on class issue); *Yuen v. Superior Court*, 121 Cal. App. 4th 1133, 1143 (2004) ("[e]ven though, the plurality in [*Bazzle*] held that the arbitrator decides whether the agreement forbids a class action, they determined, at least initially, that the arbitration agreement in that case did not clearly forbid class arbitration"); *Bess v. DirecTV, Inc.*, 351 Ill. App. 3d 1148, 1153 (2004) (noting that *Bazzle* arose "in the context of an arbitration agreement that was silent about whether class arbitration was forbidden or allowed"); *cf. Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Personnel of Texas*, 343 F.3d 355, 360 (5th Cir. 2003) (noting lack of clarity in *Bazzle*, assuming "*arguendo*" that court should address whether contract contained clear class waiver, and finding no such clear waiver).

Many cases treat the enforcement of express contractual prohibitions on class arbitration as an issue for courts, not arbitrators, and thus reflect the principle that there is no need for "interpretation" of a contract by an arbitrator where that contract is clear. *See Jenkins*, 400 F.3d

8

at 877 ("federal court may adjudicate" validity of undisputed class waiver); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003); *Cook*, 2005 WL 1514034, at *4 ("because this case involves an arbitration agreement containing an express class action waiver, this issue is one which is directly in the purview of the court").

## III.    THE PENDING ARBITRATION SHOULD BE STAYED FOR THE REASONS SET OUT IN THE MOTION OF VERIZON WIRELESS TO STAY PROCEEDINGS IN THIS COURT

The New York arbitration should be stayed for the additional reasons set forth in Defendant's Motion for (1) Stay of Plaintiff's ETF Claims Pending Outcome of Proceedings Before the Federal Communications Commission and (2) Abatement of Plaintiff's Handset Locking Claims, dated May 24, 2005. Ex. F. As that motion explains, Plaintiff's ETF claims are preempted if ETFs are "rates" for wireless service under 47 U.S.C. § 332(c)(3)(A). The FCC has primary jurisdiction over the question whether ETFs are rates, and it has commenced a proceeding to address that very issue. Thus, as the May 24 stay motion explains, Plaintiff's ETF claims should be stayed under the primary jurisdiction doctrine pending the completion of that proceeding.

The primary jurisdiction doctrine "applies to arbitrators as well as courts." *See New York Cross Harbor R.R. Terminal Corp. v. Consolidated Rail Corp.*, 72 F. Supp. 2d 70, 81 (E.D.N.Y. 1998). Accordingly, the arbitration should be stayed for the same reasons that this action should be stayed. Indeed, those reasons apply with even more compelling force in the arbitration context, because "[a] persuasive argument can be made that it is less appropriate for arbitrators than for courts to decide [] issues within [an agency's] primary jurisdiction." *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1279 n.11 (9th Cir. 1984). Applying these principles, courts stay arbitrations that overlap with agency proceedings. *Hawaii Nurses' Association Collective Bargaining Organization v. Kapiolani Health Care System*, CV No. 95-00139 DAE,

1996 WL 511631 at *2 (D. Haw. July 5, 1996) (noting that trial court "stayed the Arbitration

Action contingent on the NLRB's determination," because "[t]he NLRB . . . has primary

jurisdiction" over issues presented; concluding there was "no further need to compel arbitration"

once NLRB "conclusively resolved the issue . . . disputed in the . . . Arbitration Action."). *See*

*also Nelson v. International Brotherhood of Electrical Workers*, 899 F.2d 1557, 1563-64 (9th

Cir. 1990), *overruled on other grounds, Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003),

(court injunction against enforcement of arbitration award proper where NLRB had primary

jurisdiction over parties' dispute); *District of Columbia v. Verizon South, Inc.*, 806 A.2d 216,

220, 223 (D.C. Ct. App. 2002) (enjoining arbitration where statute vested exclusive jurisdiction

of dispute in the state board of contract appeals).

   Arbitration of Plaintiff's "handset locking" claims also should be stayed for the reasons

set out in Defendant's May 24 motion. As that motion explains, the handset locking claims

duplicate claims asserted by a certified national class in a case that was pending in California,

*Campbell v. Airtouch Cellular*, No. GIC 751725 (Cal. Super. Ct., S.D. County). Plaintiff Brown

is a party to *Campbell*, and *Campbell* was pending when this action was commenced, so

Ms. Brown's new action on the "handset locking" claims should be stayed or abated under the

principle of priority. Courts may stay arbitration proceedings as well as court proceedings based

on the principle of priority, *see NEC Elecs., Inc. v. VG Sales Co.*, 655 So. 2d 1146, 1148 (Fla.

4th DCA 1995), so the arbitration should be stayed on that ground as well.

## IV.    VERIZON WIRELESS WILL SUFFER IRREPARABLE HARM IF IT IS FORCED TO ARBITRATE PLAINTIFF'S CLAIM ON A CLASS-WIDE BASIS

   Under Florida law and the Federal Arbitration Act, a party is irreparably harmed by being

forced to undergo an arbitration to which it did not agree. *See Reuter Recycling of Fla., Inc. v.*

*City of Dania Beach*, 859 So. 2d 1271, 1272-73 (Fla. 4th DCA 2003) (reversing order of trial

court refusing to enjoin binding arbitration; party "is irreparably harmed by the trial court's

refusal to enjoin arbitration of claims not included in an agreement to arbitrate"); *K.W. Brown &*

*Co. v. McCutchen*, 819 So. 2d 977, 979 (Fla. 4th DCA 2002) ("no legal remedy can compensate .

10

. . for having to allegedly undergo an arbitration process in which they did not agree to participate"); *IFG Network Secs. v. King*, 282 F. Supp. 2d at 1350 (M.D. Fla. 2003) (under FAA, "[i]f the parties failed to reach an agreement to arbitrate, . . . awarding injunctive relief to prevent arbitration is appropriate").

## V.   CONCLUSION

For the foregoing reasons, the Court should (1) issue an order staying the purported class-wide arbitration proceeding against Verizon Wireless that Plaintiff sought to initiate by her claim of June 3, 2005, pending a judicial determination about the existence of an agreement between Verizon Wireless and Plaintiff to arbitrate on a class-wide basis; and (2) determine that no agreement to arbitrate on a class-wide basis exists.

At a minimum, the Court should stay the arbitration based on the primary jurisdiction doctrine, the principle of priority, and the other reasons set out in Defendant's Motion for (1) Stay of Plaintiff's ETF Claims Pending Outcome of Proceedings Before the Federal Communications Commission and (2) Abatement of Plaintiff's Handset Locking Claims, dated May 24, 2005.

DATED: June 30, 2005

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Attorneys for Cellco Partnership d/b/a
Verizon Wireless
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
E-mail: coulsond@gtlaw.com

By: _____
DAVID A. COULSON
Florida Bar No. 176222

11

CASE NO. 50 2004 CA 00563 MB-AI

Of Counsel:
Henry Weissmann
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: 213-683-9100
Facsimile: 213-687-3702
E-mail: WeissmannHX@mto.com
--and--
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105-2907
Phone: 415-512-4000
Fax: 415-512-4077
E-mail: MylesKL@mto.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

Federal Express and electronic mail as PDF attachment to counsel listed on the below service list

on this 30th day of June, 2005.

DAVID A. COULSON

## CERTIFICATE OF SERVICE

Jayne A. Goldstein, Esq.
**MAGER WHITE & GOLDSTEIN LLP**
2825 University Drive, Suite 350
Coral Springs, Florida 33065
Telephone: 954-341-0844
Facsimile: 954-341-0855
Email: jgoldstein@mwg-law.com

Ann D. White, Esq.
Michael J. Kane, Esq.
Lee Albert, Esq.
**MAGER WHITE & GOLDSTEIN LLP**
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Telephone: 215-481-0273
Facsimile: 215-481-0271
Email: awhite@mwg-law.com
Email: mkane@mwg-law.com
Email: lalbert@mwg-law.com

Scott A. Bursor, Esq.
**LAW OFFICES OF SCOTT A. BURSOR**
500 Seventh Avenue, 10th Floor
New York, NY 10018
Telephone: 212-989-9113
Facsimile: 212-989-9163
Email: scott@bursor.com

David Pastor, Esq.
**GILMAN AND PASTOR, LLP**
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: 781-231-7850
Facsimile: 781-231-7840
Email: dpastor@gilmanpastor.com

MIA-FS1\COULSOND\806728v01\6/30/05\59019.016200

2005.07.15 Hearing Transcript.txt

1

1          IN THE CIRCUIT COURT OF THE  FIFTEENTH
           JUDICIAL CIRCUIT IN AND FOR PALM BEACH
2          COUNTY,                          FLORIDA

3                CASE NO.  502004CA005063XXXXMB

4

5    PATRICIA BROWN, on behalf of herself
     and all others similarly situated,
6
                        Plaintiff(s),
7
     vs.
8
     VERIZON WIRELESS SERVICES, LLC,
9
10                      Defendant(s).

11   - - - - - - - - - - - - - - - - - - - -X

12

13

14

15          The above entitled case came on for hearing on
     July 15, 2005, before the Honorable ELIZABETH T.
16   MAASS, as Judge of Palm Beach County Courthouse, Palm
     Beach County, Florida, commencing at 9:00 a.m. -
17   10:10 a.m.

18

19

20

21

22

23

24

25

⚲

2

1                - A P P E A R A N C E S -

2    On behalf of the Plaintiffs,

3                     JAYNE A. GOLDSTEIN, ESQ.
                      2825 University Drive
                           Page 1

2005.07.15 Hearing Transcript.txt
4                          Suite 350
                           Coral Springs, Florida 33065
5                          954 341-0844

6                                   and

7                          LAW OFFICES OF SCOTT A. BURSOR
                           500 Seventh Avenue
8                          10th Floor
                           New York, New York 10018
9                          212 989-9113
                           BY:   SCOTT A. BURSOR, ESQ.
10
       On behalf of the Defendant
11
                           GREENBERG TRAURIG, P.A.
12                         1221 Brickell Avenue
                           Miami, Florida 33131
13                         305 579-0754
                           BY:   DAVID A. COULSON, ESQ.
14
                                    and
15
                           MUNGER, TOLLES & OLSON LLP
16                         560 Mission Street
                           27th Floor
17                         San Francisco, California 94105-2907
                           415 512-4022
18                         KRISTIN LONSLEY MYLES, ESQ.

19
       ALSO PRESENT:
20
                           PATRICIA ROCHE SUNAR, ESQ.
21                         Litigation Counsel for Verizon
                           Legal & External Affairs Department
22                         180 Washington Valley Road
                           W3135
23                         Bedminster, New Jersey 07921
                           908 306-7316
24

25


                                                                    3

1                   THE COURT:  Good morning.  This is

2            Brown versus Verizon.

3                   The only thing we're here on today is

4            for the motion to compel discovery.

5                   MS. GOLDSTEIN:  Good morning, your

6            Honor, Jayne Goldstein for the plaintiff,

7            Ms. Brown.

8                   Along with me is Scott Bursor,
                              Page 2

2005.07.15 Hearing Transcript.txt

9        Judge Albertson says, if there's no

10     need for clause construction because the

11     clause is clear, then you don't need to go

12     through that phase, and you don't need to

13     send it to the arbitrator.

14        So I think the triple A rules are

15     perfectly consistent with our position.

16        The real question boils down to, is the

17     clause clear, and as we've said --

18     THE COURT:  You know, it's a little bit

19     different.

20        I mean, I assume there's a practical

21     distinction of whether the arbitrator does

22     it or I do it, correct?

23        The grounds for vacating or confirming

24     an award are much more narrower than what

25     would be subject to review on appeal.

60

1        I mean, is that really what we're

2     fighting over?

3     MS. MYLES:  Yes.  I don't think anybody

4     wants to stake out a position today on what

5     the rules of review would be here.

6     THE COURT:  Sure.

7     MS. MYLES:  But, generally, they are

8     narrower than what the Court does

9     legitimately at the gate keeping phase.

10        For example, here's an example the

11     courts routinely do, and the courts have

12     upheld, the appellate courts upheld it.

Page 51

2005.07.15 Hearing Transcript.txt

13         Supposing the clause says the

14     arbitration shall take place in Florida,

15     and someone files an arbitration in Texas,

16     which are the facts of the case that the

17     parties discussed in the briefs.

18         In fact, it's an eleventh circuit case

19     called Stirling, that we rely on.

20         In that case the issue went to the

21     arbitrator in Texas, and the arbitrator

22     said, hey, I'm going to go forward.  We're

23     going to go forward here in Texas.

24         This is where the plaintiff lives.

25         The plaintiff had been in Florida at

♀

61

1      the time, then was no longer employed by

2      the defendant, and moved back to Texas.

3          So they said the plaintiff is here,

4      we're going to go ahead.

5          The Court in Florida enjoined that, and

6      directed the parties to proceed in Florida.

7          The eleventh circuit upheld that.

8          They said the FAA authorizes the Court,

9      as a gate keeping matter, to direct the

10     parties to proceed in the manner set forth

11     in the arbitration agreement.

12         That's exactly what we are asking for

13     here.

14         The Court legitimately performs that

15     function in a whole host of gate keeping

16     capacities.

17         This is not to say that the Court then

2005.07.15 Hearing Transcript.txt

18          micro-manages the day to day activities of
19          the arbitrator, which come up at the end of
20          the day, subject to this deferential
21          standard, which is, you know, in many
22          states, anyway, not very much reviewed, but
23          in terms of the gate keeping function, the
24          court can and should perform that function,
25          and that's our argument.

                                                    62
1               It should not be sent to arbitration
2          and then brought back up under that
3          deferential standard.
4               THE COURT:  I think we're all in
5          agreement now, we're not going to do the
6          motion to compel discovery?
7               MR. BURSOR:  Yes, your Honor.
8               THE COURT:  And you will all specially
9          set for hearing on the motion to stay the
10         arbitration?
11              MS. MYLES:  We have four motions.
12              Maybe Mr. Coulson can speak to this
13         too, but we have our original motion to
14         compel arbitration in accordance with the
15         terms of the party's agreements.
16              THE COURT:  That's your petition that
17         was already filed?
18              MS. MYLES:  Then we have our motion to
19         stay the arbitration.
20              Then we have their motion to stay the
21         action in deference to the arbitration, and
                        Page 53

2005.07.15 Hearing Transcript.txt

22      then we have our motion separately, which

23      we haven't discussed today, to stay the

24      action in deference to the FCC's

25      proceeding, and relatedly, in the Campbell

                                                63

1       case.

2            That goes only to this separate issue

3       of handset locking.

4            So there's two different claims.

5            So those are the motions.

6            THE COURT:  You want me to get the book

7       and set up that hearing?

8            MR. COULSON:  That'd probably be more

9       efficient, your Honor.

10           MR. BURSOR:  Your Honor, we may be able

11      to cut some of those motions down.

12           I mean, for example, both sides have

13      moved to stay this litigation on various

14      grounds.

15           They've got three different grounds for

16      staying it.

17           Individual arbitration, the FCC thing,

18      and this Campbell case.

19           They want this litigation stayed for

20      those reasons.

21           We want this litigation stayed in

22      deference to the arbitration that's going

23      now.

24           Everybody wants to stay the case.

25           THE COURT:  Sure, so why don't we just

                        Page 54

2005.07.15 Hearing Transcript.txt

64

1      do it.

2          MR. BURSOR:  That's what I'm saying, we

3      can stay this action today.

4          There's no objection to it.

5          THE COURT:  I don't think that's her

6      position.

7          MS. MYLES:  That's completely

8      inconsistent with at least two of our

9      motions.

10         MR. BURSOR:  So Verizon's position is

11     that action needs to go forward, and cannot

12     be stayed today?

13         THE COURT:  Well, Verizon's position,

14     as I understand it, she wants me to make a

15     decision on the motion to compel the

16     plaintiff to go forward individually, and

17     stay the class arbitration that they

18     presented and filed.

19         MS. MYLES:  Correct.  And our other

20     motion is independent of that, and is

21     related to the FCC and Campbell.

22         THE COURT:  Right.  How long do we

23     realistically need to argue those motions?

24         MS. MYLES:  How long did we take today?

25         THE COURT:  Well, we talked a lot,

65

1      because you all were educating me.

2          An hour.

3          MR. COULSON:  An hour, hour-and-a-half,

RICHARD E. DROOYAN
Munger, Tolles & Olson LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

JOHN P. HUNT
JONATHAN H. BLAVIN
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:     (415) 512-4000
Facsimile:      (415) 644-6911
Attorneys for Respondent

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL AND CLASS ARBITRATION TRIBUNAL

| | |
|---|---|
| In the Matter of Arbitration Between:<br><br>DAWN M. ZOBRIST, individually, and on behalf of others similarly situated<br><br>and<br><br>VERIZON WIRELESS, VERIZON COMMUNICATIONS INC., AND CELLCO PARTNERSHIP | Case No. 11 494 0032 05<br>Arbitrator: Joseph Matthews<br><br>OPPOSITION OF VERIZON WIRELESS TO CLAIMANT'S MOTION FOR PRELIMINARY CLAUSE CONSTRUCTION AWARD |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT .............................................................................................................. 2

    A.   Following *Bazzle*, The Relevant Question is Whether Under Illinois Law
        the Parties' Arbitration Agreement Permits Class Arbitration ............................ 2

    B.   Under Illinois Law, the Agreement's Silence on the Question of Class-
        Wide Arbitration Must Be Construed To Disallow It ......................................... 4

III. CONCLUSION .......................................................................................................... 11

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Champ v. Siegel Trading Company, Inc.,*
  55 F.3d 269 (7th Cir. 1995) .................................................................................. 6, 7, 8

*Fla. E. Coast Ry. Co. v. CSX Transp. Inc.,*
  42 F.3d 1125 (7th Cir. 1994) ..................................................................................... 6

*Gammaro v. Thorp Consumer Disc. Co.,*
  828 F. Supp. 673 (D. Minn. 1993) ............................................................................. 7

*Gray v. Conseco, Inc.,*
  No. SACV000322800, 2001 WL 1081347 (C.D. Cal. Sept. 6, 2001) ........................ 7

*Green Tree Financial Corp. v. Bazzle,*
  539 U.S. 444 (2003) ........................................................................................... passim

*Hawkins v. Aid Ass'n for Lutherans,*
  No. 00-C-1327, 2001 WL 34388865 (E.D. Wis. Oct. 31, 2001) ............................... 7

*Herrington v. Union Planters Bank, N.A.,*
  113 F. Supp. 2d 1026 (S.D. Miss. 2000) ................................................................... 7

*Johnson v. W. Suburban Bank,*
  225 F.3d 366, 377 n.4 (3d Cir. 2000) ........................................................................ 7

*McCarthy v. Providential Corp.,*
  No. C 94-0627 FMS, 1994 WL 387852 (N.D. Cal. July 19, 1994) ........................... 7

*Mitsubishi Motors Corp. v. Soler,*
  473 U.S. 614 (1985) ................................................................................................. 11

### STATE CASES

*Berryman Transfer & Storage Co., Inc. v. New Prime, Inc.,*
  345 Ill. App. 3d 859 (2004) .................................................................................... 4, 9

*Bess v. DirectTV,*
  351 Ill. App. 3d 1148 (2004) .................................................................................. 1, 2

*Braye v. Archer-Daniels-Midland Co.,*
  175 Ill. 2d 201 (1997) ............................................................................................... 5

*Coles-Moultrie Elec. Co-op. v. City of Sullivan,*
  304 Ill. App. 3d 153 (1999) ..................................................................................... 10

*Croom v. City of De Kalb,*
  71 Ill. App. 3d 370 (1979) ......................................................................................... 5

# TABLE OF AUTHORITIES
(continued)

Page

*De Tienne v. S. N. Nielsen Co.*,
45 Ill. App. 2d 231 (1963) ........................................................................................ 9

*Dickler v. Shearson Lehman Hutton, Inc.*,
408 Pa. Super. 286 (1991) ........................................................................................ 8

*Dominium Austin Partners, LLC v. Lindquist*,
No. C5-00-2010, 2001 WL 950085 (Minn. Ct. App. Aug. 21, 2001) ....................... 8

*First Nat'l Bank of La Grange v. Mid-States Eng'g & Sales, Inc.*,
103 Ill. App. 3d 572 (1981) ..................................................................................... 5

*Frederick v. Prof'l Truck Driver Training School, Inc.*,
328 Ill. App. 3d 472 (2002) ..................................................................................... 5

*Goble v. Cent. Sec. Mut. Ins. Co.*,
125 Ill. App. 2d 298 (1970) ..................................................................................... 5

*Ill. Bankers' Life Ass'n v. Collins*,
341 Ill. 548 (1930) ................................................................................................... 5

*Illinois Farmers Insurance Company v. Glass Service Company, Inc,.*
683 N.W. 2d 792 (Minn. 2004) ............................................................................... 4

*In re Estate of Braun*,
222 Ill. App. 3d 178 (1991) ..................................................................................... 5

*Jewelers Mut. Ins. Co. v. Firstar Bank Ill.*,
341 Ill. App. 3d 14 (2003) ....................................................................................... 4

*Keating v. Superior Court*,
31 Cal.3d 584 (1982) ............................................................................................... 8

*Klemp v. Hergott Group, Inc.*,
267 Ill. App. 3d 574 (1994) ..................................................................................... 4

*Lanier v. Assocs. Fin., Inc.*,
114 Ill. 2d 1 (1986) .................................................................................................. 6

*McMahon v. Chicago Mercantile Exchange*,
221 Ill. App. 3d 935 (1991) ..................................................................................... 6

*Med Ctr. Cars, Inc. v. Smith*,
727 So. 2d 9 (Ala. 1998) .......................................................................................... 8

*Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Sav. Bank*,
235 Ill. App. 3d 978 (1992) ..................................................................................... 6

*Nitrin, Inc. v. Bethlehem Steel Corp.*,
35 Ill. App. 3d 596 (1976) ....................................................................................... 10

*Shields Pork Plus, Inc. v. Swiss Valley Ag Serv.*,
329 Ill. App. 3d 305 (2002) ..................................................................................... 4

## TABLE OF AUTHORITIES
(continued)

Page

*Stein v. Geonerco, Inc.*,
   105 Wash. App. 41 (2001) ................................................................................. 8

*Zobrist v. Verizon Wireless*,
   354 Ill. App. 3d 1139 (2004) ........................................................................ 2, 7

*Zubi v. Acceptance Indem. Ins. Co.*,
   323 Ill. App. 3d 28 (2001) ............................................................................... 9

## AAA COMMERCIAL AND CLASS ARBITRATION TRIBUNAL CASES

*Bagpeddler, et al. and U.S. Bancorp & Nova Information Systems*,
   No. 11 181 00322 04 (AAA September 2, 2004) .................................................. 10

*Barton and Cottage Homesteads of America, Inc.*,
   No. 11 115 02967 04 (AAA May 11, 2005) ......................................................... 4

*Hearthside Restaurant, Inc., et al., and Qwest Dex, Inc.*,
   No. 11 147 00357 04 (AAA Sept. 2, 2004) .......................................................... 3

*Anthony Hobby and Snap-on Tools Company, LLC*,
   No. 11 114 01884 04 (AAA June 8, 2005) .................................................... 3, 4, 9

*Millstein and Protection One Alarm Systems*,
   No. 11 110 00270 04 (AAA October 11, 2004) ..................................................... 8

## OTHER AUTHORITIES

AAA Supplementary Rules for Class Arbitration ................................................. 1, 3, 6

11 WILLISTON ON CONTRACTS § 30:23 (4th ed. 2004) ................................................. 6

## I.  **INTRODUCTION**

The threshold issue to be decided by this tribunal is whether the parties' arbitration agreement "permits" class-wide arbitration under the laws of the state of Illinois. This is a matter of contract interpretation to ascertain the intention of the parties at the time that they entered into their arbitration agreement.

In this case, the parties agreed in the customer service agreement that "[a]ny controversy or claim arising out of or relating to this Agreement, other than a claim by Verizon Wireless as to non-payment, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . ."  As Claimant concedes, the arbitration agreement here "is totally silent on the question of class treatment," Motion for Preliminary Clause Construction Award to Allow Class Actions (the "Motion") at 4, and Claimant points to nothing that would suggest that the parties intended to permit class-wide arbitration at the time that they entered into their agreement.

To overcome this deficiency, Claimant erroneously asserts that "[t]he inquiry is whether the applicable clause was intended to *exclude* class treatment." *Id.* at 3 (emphasis in original).  As stated by the Appellate Court of Illinois, however, "the arbitrator must decide whether 'the applicable arbitration clause *permits* the arbitration to proceed on behalf of . . . a class[.]'" *Bess v. DirectTV,* 351 Ill. App. 3d 1148, 1154-55 (2004) (emphasis added) (*quoting* AAA Supplementary Rules for Class Arbitrations, Rule 3).  Claimant also mistakenly relies on *Florida* rules of construction that have no applicability here.  The interpretation of the arbitration clause is governed by Illinois law, which does not support her attempt to create a right to class-wide arbitration where none exists.

In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), a plurality of the Supreme Court held that it is for arbitrators, not courts, to decide whether an arbitration agreement should be construed under applicable state law to permit class-wide arbitration if the clause is silent on this issue.  As the Court noted, South Carolina law, which applied in that case,

provided that an agreement that was silent on the issue of class-wide arbitration should be construed to permit it. Thus, the only question for the arbitrator to decide in *Bazzle* was whether the terms of the agreement were in fact silent, or whether they affirmatively forbade class-wide arbitration.

Here, in contrast, no Illinois court has ever held that class-wide arbitration is permitted where an arbitration clause is silent on the issue. Indeed, under Illinois law there is a strong presumption against inserting implicit terms, such as those authorizing class-wide arbitration, that could have been included in the agreement. This presumption, which is intended to preserve the parties' intent, is amplified here because the majority of courts had held that class-wide arbitration was precluded if the arbitration clause was silent on the issue when the parties entered into their agreement in July 2001. Complaint ¶ 22. It is a well-established rule of Illinois contract jurisprudence that contracts should be interpreted in light of the law existing at the time of contracting so that they are construed in accordance with the parties' intent. Given these principles, the tribunal should conclude that the parties' agreement does not implicitly permit class arbitration.

## II.    ARGUMENT

### A.    Following *Bazzle*, The Relevant Question is Whether Under Illinois Law the Parties' Arbitration Agreement Permits Class Arbitration

In *Bazzle,* a plurality of the Supreme Court held that it was for the arbitrator to determine, under applicable state law, whether an agreement that is silent on the issue of class-wide arbitration should be construed to permit it. 539 U.S. at 451-52; *Bess v. DirectTV,* 351 Ill. App. 3d at 1154-55; *Zobrist v. Verizon Wireless,* 354 Ill. App. 3d 1139, 1144 (2004) (noting that *Bazzle* holds "that whether the agreement allowed or forbade class action was a question for the arbitrator to decide"). *Bazzle* did not, as Claimant suggests, direct arbitrators to determine whether the parties "intended to *exclude* class treatment." Motion at 3 (emphasis in original).

In *Bazzle,* the South Carolina Supreme Court had held that class arbitration was permitted under South Carolina law where the "arbitration clauses are silent as to whether

2

arbitration might take the form of class arbitration." 539 U.S. at 447 (*citing Green Tree Financial Corp. v. Bazzle,* 351 S.C. 244 (2002)); *see also* 351 S.C. at 265-66 (noting that state law "permit[s] class-wide arbitration" where "the arbitration agreement is silent"). Stated otherwise, South Carolina law mandated that agreements that were silent on the issue of class-wide arbitrations be construed to permit them. The threshold issue in *Bazzle,* therefore, was whether under South Carolina law "the contracts [are] in fact silent, or do they forbid class arbitration." 539 U.S. at 447. It was this issue which the Court held was for the arbitrator, not the South Carolina courts, to decide. *Id.* at 451 ("[u]nder the terms of the parties' contracts, the question – whether the agreement forbids class arbitration – is for the arbitrator to decide").

Following *Bazzle,* it is for this arbitrator to decide whether the parties' customer agreement as interpreted under the applicable state substantive law permits class-wide arbitration. *See Hearthside Restaurant, Inc., et al., and Qwest Dex, Inc.,* No. 11 147 00357 04 (AAA Sept. 2, 2004) ("after *Bazzle,* it is clear . . . that the issue of whether class action relief is available is to be decided by the arbitrator not the courts" and the "arbitrator must apply Minnesota [the law chosen in the contract] substantive law, that is the law of the state where the contract is entered into, in deciding the issue") (quoted by this tribunal in *Anthony Hobby and Snap-on Tools Company, LLC,* No. 11 114 01884 04 at 2 (AAA June 8, 2005)).

Under South Carolina law, the issue would be, as this tribunal correctly noted in *Hobby,* "whether the parties intended . . . to exclude class action claims." *Hobby* at 9. In this case, however, the parties entered into their contract in the state of Illinois and, as Claimant implicitly concedes, Illinois substantive law applies. Motion at 4-5 (citing Illinois cases). Therefore, Illinois law governs the threshold question "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplementary Rules for Class Arbitrations, Rule 3.

**B.**    **Under Illinois Law, the Agreement's Silence on the Question of Class-Wide Arbitration Must Be Construed To Disallow It**

Unlike the courts of South Carolina, no Illinois court has ever construed an agreement that was silent on the issue of class-wide arbitrations to permit them.[1]  Thus, the question here is whether under Illinois law such an arbitration clause *implicitly* permits class treatment in the absence of any evidence that the parties intended to permit class-wide arbitration.  *See Hobby* at 2 (noting that this tribunal must "predict how courts would decide these issues").[2]  The answer, we submit, is that it does not.

To compel class arbitration, the tribunal would need to insert an implicit term in the contract authorizing class-wide treatment.  Under Illinois law, however, there is "a strong presumption against provisions that easily could have been included in a contract but were not." *Berryman Transfer & Storage Co., Inc. v. New Prime, Inc.*, 345 Ill. App. 3d 859, 863 (2004). Consistent with the intent of the parties, courts "'will not add another term about which an agreement is silent.'"  *Shields Pork Plus, Inc. v. Swiss Valley Ag Serv.*, 329 Ill. App. 3d 305, 312 (2002) (*quoting Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 581 (1994)).  Indeed, "the rights of parties to a contract are limited by the terms expressed in the contract and courts may not rewrite language or add provisions to make the agreement more equitable." *Jewelers Mut. Ins. Co. v. Firstar Bank Ill.*, 341 Ill. App. 3d 14, 26 (2003) (McBride, P.J., concurring in part and dissenting in part).  Accordingly, Illinois courts have limited parties' rights and remedies under an agreement, even where the agreement did not expressly preclude the desired action or relief. *See, e.g., Frederick v. Prof'l Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 480

---

[1] Illinois courts have only held that silence in an arbitration provision as to class arbitration does *not* render that provision unconscionable.  *See Bess*, 351 Ill. App. 3d at 1155-56 ("conclud[ing] that the failure to specifically provide for class actions does not render the Customer Agreement unconscionable and unenforceable").

[2] This case is, therefore, unlike *Barton and Cottage Homesteads of America, Inc.*, No. 11 115 02967 04 at 4 (AAA May 11, 2005) (Arbitrator Lewis A. Remele, Jr.), cited in Claimant's Motion at 4, in which the arbitrator considered a post-*Bazzle* decision of the Minnesota Supreme Court allowing consolidation of 5,000 individual claims in an arbitration. *Illinois Farmers Insurance Company v. Glass Service Company, Inc.* 683 N.W. 2d 792 (Minn. 2004).

(2002) ("The terms of the agreement contain no express provision for the removal of snow and ice from the truck step. We will not add terms to an agreement when the agreement is silent about those specific terms"); *In re Estate of Braun*, 222 Ill. App. 3d 178, 187 (1991) ("The provision is silent as to attorney fees incurred on the minor's behalf. As the court will not add language or matters to a contract about which the document is silent . . . , the trial court was correct in finding that the agreement did not allow for reimbursement of the monies expended" in legal defense); *Croom v. City of De Kalb*, 71 Ill. App. 3d 370, 376 (1979) (holding that claims regarding additional compensation not arbitrable because "collective bargaining agreement clearly has no express provision for additional pay for firefighters performing the duties of acting officers").

Claimant's Motion does not overcome this presumption. No Illinois court ever has held that silence in an arbitration clause as to class arbitration implicitly authorizes class treatment, and the prevailing rule in federal and state courts at the time of contracting in July 2001 was the opposite of what Claimant's contend; that is, where the agreement is silent on class arbitration, the rule in most jurisdictions was that the courts were barred from compelling class treatment. Under Illinois law, "[i]t is well settled . . . that the law existing at the time and place of the making of a contract is deemed a part of that contract, to the same extent as though expressly referred to or incorporated in the contract." *Goble v. Cent. Sec. Mut. Ins. Co.*, 125 Ill. App. 2d 298, 302 (1970); *see also, e.g., Ill. Bankers' Life Ass'n v. Collins*, 341 Ill. 548, 553 (1930) ("existing law is presumed to be a part of every contract . . . and contracts should be so understood and construed unless otherwise clearly indicated by the terms of the agreement"). This fundamental rule exists "so that 'the courts, in construing the existing law as part of the express contract, . . . are merely construing the contract in accordance with the intent of the parties.'" *First Nat'l Bank of La Grange v. Mid-States Eng'g & Sales, Inc.*, 103 Ill. App. 3d 572, 574 (1981); *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997) (it is "presumed that parties contract with knowledge of the existing law"). Thus, a tribunal "*cannot* construe a contract outside the legal conditions underlying a transaction." *Mitchell Buick & Oldsmobile*

5

*Sales, Inc. v. McHenry Sav. Bank*, 235 Ill. App. 3d 978, 985 (1992) (emphasis added); *see also McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 945 (1991).

Moreover, as "a rule of construction, changes in the law subsequent to the execution of a contract are not deemed to become part of agreement unless its language clearly indicates such to have been [the] intention of parties." 11 WILLISTON ON CONTRACTS § 30:23 (4th ed. 2004); *see also Fla. E. Coast Ry. Co. v. CSX Transp. Inc.*, 42 F.3d 1125, 1130 (7th Cir. 1994) ("Whereas the law in effect at the time of execution sheds light on the parties' intent, subsequent changes in the law that are not anticipated in the contract generally have no bearing on the terms of their agreement"); *Lanier v. Assocs. Fin., Inc.*, 114 Ill. 2d 1, 12 (1986) ("The revisions to Regulation Z did not become mandatorily effective until . . . subsequent to the formation of plaintiff's loan agreement" and thus "do not apply to the plaintiff's loan agreement"). The customer service agreement does *not* expressly provide that subsequent changes in the law should be deemed to become a part of the agreement. Rather, the arbitration clause merely states that "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction."[3]

As noted, the prevailing rule in federal and state courts when the parties entered into their agreement was that where the agreement is silent on class arbitration, courts could not compel class treatment. In *Champ v. Siegel Trading Company, Inc.,* 55 F.3d 269, 277 (7th Cir. 1995), the Seventh Circuit held that "since the parties' arbitration agreement does not expressly

---

[3] Even assuming that this clause incorporates subsequent changes to the AAA rules, such as the 2003 Supplementary Rules for Class Arbitration, the AAA rules in and of themselves have no bearing on whether this tribunal should conclude that under the existing, governing law at the time of contracting, this arbitration provision permits or precludes the tribunal from compelling class arbitration. Indeed, the Supplementary Rules for Class Arbitration expressly provide that "[i]n construing the applicable arbitration clause, the arbitrator *shall not consider* the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." AAA Supplementary Rules for Class Arbitrations, Rule 3 (emphasis added).

6

provide for class arbitration, the district court correctly concluded that it was prohibited from

reading such a procedure into these arbitration agreements." As explained by the court:

> The parties' arbitration agreement makes no mention of class
> arbitration. For a federal court to read such a term into the parties'
> agreement would "disrupt [] the negotiated risk/benefit allocation
> and direct[] [the parties] to proceed with a different sort of
> arbitration." *New England Energy. Inc., v. Keystone Shipping Co.*,
> 855 F.2d 1, 10 (Selya, J., dissenting) . . . . We thus adopt the
> rationale of several other circuits and hold that section 4 of the
> FAA forbids federal judges from ordering class arbitration where
> the parties' agreement is silent on the matter.

*Champ v. Siegel Trading Company, Inc.*, 55 F.3d at 275; *see also Johnson v. W. Suburban Bank*,

225 F.3d 366, 377 n.4 (3d Cir. 2000) (citing *Champ* and noting that "it appears impossible" for

class arbitrations to be pursued "unless the arbitration agreement contemplates such a

procedure").[4] A number of federal district courts concluded similarly during this time. *See, e.g.,*

*Hawkins v. Aid Ass'n for Lutherans*, No. 00-C-1327, 2001 WL 34388865, at *6 (E.D. Wis. Oct.

31, 2001) (noting that "courts may not order class arbitration if the arbitration provision is silent

on class treatment"); *Gray v. Conseco, Inc.*, No. SACV000322800, 2001 WL 1081347, at *3

(C.D. Cal. Sept. 6, 2001) ("The Court must give effect to the intentions of the parties as they are

embodied in the arbitration agreement. Because the arbitration agreement at issue here does not

provide for class-wide arbitration of disputes, the Court cannot order arbitration as a class

action"); *Herrington v. Union Planters Bank, N.A.*, 113 F. Supp. 2d 1026, 1034 (S.D. Miss.

2000) (because arbitration clause "does not expressly provide" for class arbitration, "the

plaintiffs are not entitled to arbitrate as a class"); *McCarthy v. Providential Corp.*, No. C 94-

0627 FMS, 1994 WL 387852, at *8 (N.D. Cal. July 19, 1994) (noting that "[t]here is no

provision in any of the arbitration agreements" providing for class arbitration and "[a]ccordingly,

the Court finds that it is without power to order this matter to proceed to arbitration as a class

---

[4] The Illinois Appellate Court has held that the FAA applies to this action. *See Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1142-43 (2004).

action"); *Gammaro v. Thorp Consumer Disc. Co.*, 828 F. Supp. 673, 674 (D. Minn. 1993) ("The Court must give effect to the agreement of the parties, and this arbitration agreement makes no provision for class treatment of disputes. Accordingly, the Court finds that it is without power to order this matter to proceed to arbitration as a class action").[5]

Although no Illinois court had addressed this issue when the parties entered into their agreement, other state courts had followed the federal courts. As the Alabama Supreme Court, for example, noted in 1998, the "[c]aselaw from various federal circuit courts is persuasive authority in our state courts" and "*no persuasive authority* permitting class-wide arbitration exists at this time." *Med Ctr. Cars, Inc. v. Smith*, 727 So. 2d 9, 20 (Ala. 1998) (*citing Champ v. Siegel Trading Co.*, 55 F.3d at 275 (emphasis added)). Thus, "after reviewing the authorities," the court "conclude[d] that to require class-wide arbitration would alter the agreements of the parties, whose arbitration agreements do not provide for class-wide arbitration." *Id.* Similarly, a Washington appellate court stated in 2001 that because the "arbitration agreement [was] silent" on class treatment and the plaintiff "ha[d] failed to cite relevant statutory provisions that authorize class arbitration . . . [w]e cannot compel class arbitration." *Stein v. Geonerco, Inc.*, 105 Wash. App. 41, 49-50 (2001); *see also, e.g, Dominium Austin Partners, LLC v. Lindquist*, No. C5-00-2010, 2001 WL 950085, at *8 (Minn. Ct. App. Aug. 21, 2001) (affirming district court's denial of plaintiff's "motion requesting class treatment of the arbitration" where arbitration clause silent on class arbitration).[6]  In light of the federal

---

[5] The Supreme Court in *Bazzle* implicitly departed from the prevailing position that the FAA specifically barred class-wide arbitration where the agreement was silent on the matter. Under *Bazzle,* it is for the arbitrator to determine whether, under the applicable state law, an arbitration clause that is silent on class-wide arbitration nevertheless permits class arbitration. Under South Carolina law, the answer is that it does; under Illinois law as applied here, we submit that the answer would be no for the reasons discussed in the text.

[6] Only two states, California and Pennsylvania, had contrary rules at this time. *See Keating v. Superior Court*, 31 Cal.3d 584 (1982); *Dickler v. Shearson Lehman Hutton, Inc.*, 408 Pa. Super. 286 (1991). Thus, in *Millstein and Protection One Alarm Systems, No.* 11 110 00270 04 (AAA October 11, 2004) (Arbitrator Mary S. Jones), cited in Claimant's Motion at 4, the tribunal looked to California law at the time of contracting and concluded that class-wide arbitration *was*

and state law in existence at the time of contracting, it is clear that the parties did not intend for the clause to permit class arbitration.

Claimant's arguments to the contrary are without merit. The principles of contract construction that Claimant lists on pages three and four of the Motion in support of her interpretation of the arbitration clause are inapposite to this case and do not overcome the presumption against inserting an implicit term in the agreement permitting class-wide treatment. On page three of the motion, Claimant cites four principles of contract interpretation, all taken from this tribunal's *Hobby* decision. *See Hobby* at 11. None of these principles, however, are derived from Illinois cases, and three of the four are taken from Florida cases, which was the governing law in *Hobby. Id.* at 4.

The three Illinois cases Claimant subsequently cites on page four of the Motion are inapplicable to this case and are not persuasive. Claimant first contends under *Zubi v. Acceptance Indem. Ins. Co.*, 323 Ill. App. 3d 28 (2001) that all "ambiguities" in the arbitration clause should be construed against Verizon Wireless, the drafter, because she claims that this is an adhesion contract. As *Zubi* provides, however, "[w]here the terms of an agreement are plain and unambiguous, a court *must* afford them their plain, ordinary and popular meaning . . . . Although ambiguities in [contracts] will be construed against the [drafter], courts will *not* distort the language of a policy to create an ambiguity where none exists." *Id.* at 33 (emphases added). The arbitration clause is silent as to class arbitration, *not* "ambiguous" on that issue. As Illinois courts have long held, a contract's silence on an issue does not constitute an "ambiguity." *See, e.g., De Tienne v. S. N. Nielsen Co.*, 45 Ill. App. 2d 231, 234 (1963) ("[u]nless a contract is ambiguous, its meaning must be determined from the words used," and in "construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term about which the agreement is silent"); *Berryman Transfer*, 345 Ill. App.

_____

*appropriate* where an arbitration provision was silent as to class-wide treatment. *Id.* at 7 (*citing Keating v. Superior Court*, 31 Cal.3d 584 (1982).

3d at 863 ("we conclude that the trial court erred by determining that the contract was ambiguous because it failed to provide an exception for Prime's preexisting business relationships").[7]

Claimant next contends under *Nitrin, Inc. v. Bethlehem Steel Corp.*, 35 Ill. App. 3d 596 (1976) that a buyer's remedy only should be limited if the contract clearly expresses an intention to do so. *Nitrin* is completely inapplicable to this case. *Nitrin* and the relevant cases cited therein were interpreting a particular provision of the UCC which had "create[d] a presumption that clauses prescribing remedies are cumulative rather than exclusive." *Id.* at 606. The UCC, however, has no bearing on whether class-wide arbitration is permitted under this contract. Moreover, the availability of class arbitration is *not* a "remedy" (e.g., money damages, injunctive relief, etc.), but is rather a procedural mechanism used to obtain remedies on behalf of a class of claimants. Indeed, the court in *Nitrin* referenced "remedies" such as "return[ing a good] for full credit at no expense to [buyer]" and "damages resulting from a breach of warranty." *Id.* at 606. Class-wide treatment is in no way a "remedy" as understood under *Nitrin* and the UCC.

Claimant also argues under *Coles-Moultrie Elec. Co-op. v. City of Sullivan*, 304 Ill. App. 3d 153 (1999) that "[c]lass treatment can be granted without violating any term of the contract." Motion at 4. This is the wrong inquiry under *Coles-Moultrie*, which provides that in "interpreting a contract, meaning and effect must be given to every part of the contract including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely necessary." *Id.* at 159. Claimant does not, and cannot, contend that precluding class-wide arbitration would somehow render meaningless or surplusage any part of the parties' customer service agreement.

---

[7] This is in contrast to the rule in Georgia applicable in *Bagpeddler, et al. and U.S. Bancorp & Nova Information Systems*, No. 11 181 00322 04 (AAA September 2, 2004) (Arbitrator Eugene I. Farber) (noting that "under Georgia law . . . if a contract is silent on a particular issue in certain circumstances, the contract will be deemed ambiguous regarding that issue"). *See* Motion at 5. Thus, the tribunal in *Bagpeddler* construed the ambiguity against the drafter under the Georgia rules of construction. *Bagpeddler* at 8.

Finally, Claimant asserts under *Mitsubishi Motors Corp. v. Soler*, 473 U.S. 614 (1985) that any doubt in the agreement should be resolved in favor of class action treatment. The Supreme Court in *Soler*, however, stated that "any doubts concerning the *scope of arbitrable issues* should be resolved in favor of arbitration." *Id.* at 626 (emphasis added). The issue here, however, is whether the agreement permits class-wide treatment over the claims asserted, not whether any issues in the claims themselves are arbitrable.

This tribunal should therefore conclude that Claimant has failed to overcome the "strong" presumption under Illinois law against inserting an implicit term in the contract permitting class arbitration.

## III.    CONCLUSION

The tribunal should deny Claimant's clause construction motion for the reasons set forth above.

DATED:  September 23, 2005                  MUNGER, TOLLES & OLSON LLP

                                            By:  _____
                                                    RICHARD E. DROOYAN

                                            Attorneys for Respondent
                                            Cellco Partnership, Doing Business as Verizon
                                            Wireless

11

KRISTIN LINSLEY MYLES
JONATHAN H. BLAVIN
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 644-6911

Attorneys for Cellco Partnership d/b/a Verizon
Wireless

AMERICAN ARBITRATION ASSOCIATION

In the Matters of:


DAWN M. ZOBRIST,

and

VERIZON WIRELESS, VERIZON
COMMUNICATIONS INC., AND
CELLCO PARTNERSHIP

Case No. 11 494 0032 05
Arbitrator: Joseph Matthews

PATRICIA BROWN,

and

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS

Case No. 11 494 01274 05
Arbitrator: Eugene I. Farber

SUPPLEMENT TO MOTION OF VERIZON
WIRELESS FOR CONSOLIDATION OF
COMPETING *ZOBRIST* AND *BROWN*
PUTATIVE CLASS ACTIONS

Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") submits this supplement to its Motion for Consolidation in response to the tribunal's request for additional briefing on whether the AAA has the authority to consolidate the *Zobrist* and *Brown* arbitrations. Although Verizon Wireless is providing its additional authority in advance of the scheduled November 22, 2005 hearing, as requested by the tribunal, Verizon Wireless specifically requests that the tribunal not address the consolidation issue at that hearing, inasmuch as the AAA now has set an administrative conference call with both sets of counsel in the *Zobrist* and *Brown* arbitration matters in order to address that very issue.[1] The AAA may be in a better position than the individual arbitrators in either *Zobrist* or *Brown* to resolve this issue, particularly given that the claimants in the *Zobrist* matter have consented to consolidation.

## I.    **INTRODUCTION**

It is well-settled that AAA arbitrators have plenary jurisdiction over procedural matters relating to an arbitration, including the power to consolidate arbitration proceedings. Although there is no AAA rule specifically providing for consolidation, AAA arbitrators repeatedly have consolidated arbitrations even absent such a rule or a court order mandating consolidation. Moreover, AAA arbitrators have consolidated arbitrations over the objections of one or more parties where the procedural and adjudicatory benefits of arbitration outweigh the objecting party's concerns.

The need for authority to consolidate is greatest in the class arbitration context, where the possibility of overlapping actions is greatest. This inherent problem of the class action mechanism is exemplified by the pending *Zobrist* and *Brown* matters, where claimants assert nearly identical claims on behalf of the same Verizon Wireless consumers and seek the same relief. If the AAA is going to allow the consolidation of myriad duplicative claims through the

---

[1] Counsel for Verizon Wireless and Claimant Zobrist agreed to a conference call for Wednesday, November 17 with the AAA administrative staff to discuss the consolidation issue. Apparently, counsel for Claimant Brown had a conflict with this time. Although the date for the conference call has not yet been finalized, it is clear that the call will occur after the November 22 hearing.

mechanism of a class action, it necessarily must permit the consolidation of overlapping class arbitrations. Given that the AAA and its arbitrators clearly have exercised their authority to consolidate arbitrations in the past, there is no reason why such authority should not be exercised here.

## II.  ARGUMENT

### A.  The AAA Has The Authority To Consolidate The *Zobrist* And *Brown* Matters

It is well-established that an arbitrator has broad authority to decide procedural matters in managing the arbitral proceedings, including, where appropriate, consolidation of related arbitrations. In *Blimpie Int'l, Inc. v. Blimpie of the Keys,* 371 F. Supp. 2d 469 (S.D.N.Y. 2005), for example, the Southern District of New York declined to rule as a judicial matter that a AAA consolidated arbitration was improper, holding that "[l]ike the question of class arbitration in *Green Tree*, the question of consolidated arbitration here concerns the *nature* of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate . . . . Indeed, consolidation is a *procedural* issue, 'which grow[s] out of the [parties'] dispute,' and therefore, presumptively falls to the arbitrator." *Id.* at 473-74 (emphases added); *see also, e.g., Shaw's Supermarkets, Inc. v. UCFW, Local 791,* 321 F.3d 251, 254-55 (1st Cir. 2003) ("whether to consolidate the three proceedings" is "in the hands of the arbitrator" as "[p]rocedural matters are committed to the arbitrator"); *Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc.,* 196 N.J. Super. 16, 30 (1984) ("questions of consolidation . . . were procedural issues for determination in the arbitration forum, free from judicial interference").

AAA arbitrators repeatedly have confirmed their authority to consolidate pending arbitrations, despite the absence of an express AAA rule providing for consolidation, and even where there is no court order mandating consolidation. As courts have noted, although the "rules of the AAA have no specific provisions for consolidation or for a common panel of arbitrators without consent of the parties or court order," the "AAA" nonetheless has "'provided . . . parties . . . with the right to present to the arbitrators the question of consolidated, joint or serial

arbitration.'" *Kalman Floor*, 196 N.J. Super. at 29-30 (quoting AAA Consolidation Order). Indeed, over the objections of a party to an arbitration and in the absence of any governing rule, AAA arbitrators have held that after "'carefully consider[ing] the matter and the desires'" of the parties, "'both proceedings should be consolidated and that the hearings proceed in this matter before this panel.'" *Id.* at 30 (quoting AAA Consolidation Order); *see also, e.g., Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F. Supp. 957, 958 (S.D.N.Y. 1988) (holding that court lacked jurisdiction to sever consolidated AAA proceeding at request of objecting part where AAA ruled it would proceed with arbitration on consolidated basis "in the absence of a court order or agreement of the parties to the contrary"); *Central Metals, Inc. v. Lang Tendons, Inc.,* No. 99-2025, 1999 WL 1077080, at *1 n.2 (E.D. Pa. Nov. 29. 1999) (noting that "arbitration proceedings were consolidated by the AAA for trial"); *United Computer Systems, Inc. v. AT & T Corp.* 298 F.3d 756, 759 (9th Cir. 2002) ("Arbitrations II and III had been consolidated by the AAA"); *Maples v. LeBlanc Maples & Waddell*, No. Civ.A. 02-3662, 2003 WL 21467540, at *1 (E.D. La. 2003) ("AAA consolidated these arbitration proceedings").

The increasing acceptance of class arbitrations administered through the AAA system highlights the necessity of the arbitrator's authority to consolidate arbitrations.[2]  Class

---

[2] Ms. Gorini of the AAA has informed Verizon Wireless that there is "no" existing AAA precedent on the consolidation of pending class arbitrations.  The tribunal suggested during the preliminary hearing that the fact that there are numerous pending class arbitrations against the same parties may demonstrate that AAA arbitrators lack the authority to consolidate pending arbitrations.  In particular, the tribunal suggested that Verizon Wireless examine the various cases pending against Snap-On Tools on the AAA Class Action Docket.  In the Snap-On Tools context, however, consolidation presumably has not occurred because the various Snap-On Tools arbitration clauses expressly *preclude* the consolidation of arbitrations. *See Fortuna and Snap-On Tools Co.*, AAA Case No. 11 114 01818 04, at 5 (Aug. 12, 2005 AAA Clause Construction Award) (noting that agreement precluded "consolidation, joinder . . . unless prohibited by applicable law"); *Hobby v. Snap-on Tools Co.*, AAA Case No. 11 114 01884 04, at 4 (June 8, 2005 AAA Clause Construction Award) (agreement stated that "Unless prohibited by applicable law, (i) no arbitration under [this clause] shall include, by consolidation, joinder, or in any other manner, any person other than Standard Franchisee and Snap-on and any other person in privity with or claiming through, in the right of or on behalf of Standard Franchisee or Snap-on, unless both Standard Franchisee and Snap-on consent in writing").

arbitrations by their very nature bring the issue of consolidation to the forefront, as competing

class arbitrations frequently share the same parties asserting identical or nearly identical claims

for relief. It makes little sense for the AAA to have the procedural authority to consolidate

potentially millions of claims via the class action mechanism, yet to lack the authority to

consolidate two competing class arbitrations that significantly overlap in terms of parties and

claims. *See, e.g., Bazzle v. Green Tree Financial Corp.*, 569 S.E. 2d 349, 356 & n.13 (S.C.

2002) (collecting cases "drawing an analogy between ordering class-wide arbitration and

ordering consolidation in arbitration"). Indeed, the "potential for conflicting or overlapping class

actions presents one of the strongest reasons" for "coordinat[ing] or consolidat[ing]"

proceedings. *In re Plumbing Fixtures Litigation*, 308 F. Supp. 242, 243-244 (J.P.M.L. 1970).

Courts have not been blind to this issue, and have suggested to the AAA that its class arbitration

procedural rules inherently provide a mechanism by which the AAA may consolidate

arbitrations. *See, e.g., Yuen v. Superior Court*, 121 Cal. App. 4th 1133, 1139 (2004) (although a

"request for consolidation may involve somewhat different considerations" than class arbitration,

AAA Supplementary Rules for Class Arbitration "provide an administrative mechanism by

which the AAA may consider the consolidation issue"). This clearly is correct: If the AAA has

the power to certify a binding class, it necessarily must have the power to incorporate into the

class action, or otherwise dispose of, individual arbitrations or actions within the AAA system

that are encompassed by the certified class. Any other regime would render the concept of a

class action meaningless. If this power exists, then necessarily the AAA must have the power to

consolidate two pending putative class actions that overlap either in whole or in part.

    That the AAA, or a AAA arbitrator, has discretion to control procedural matters within a

pending arbitration or arbitrations is further supported by the common practice among arbitrators

– consistently approved by the courts – to follow federal and state rules on matters of procedures,

including authorizing motions for summary judgment and other dispositions on the merits, where

the AAA does not have a specific procedural rule on point. *See, e.g., Anaconda Co. v. District

Lodge No. 27 of Intern. Ass'n of Machinists*, 693 F.2d 35, 37 (6th Cir. 1982) (although

agreement "was silent as to what procedure must be followed in a particular case, the arbitrator was free to look to many sources, including federal labor law, for guidance"); *Matter of Arbitration between InterCarbon Bermuda, Ltd. and Caltex Trading and Transport Corp.*, 146 F.R.D. 64, 72 (S.D.N.Y. 1993) (approving use by arbitrator of procedures for summary resolution analogous to Rule 56 of the Federal Rules of Civil Procedure). If such borrowing of procedural mechanisms is allowed for rules that permit early termination of a case on its merits (such as through summary judgment) then surely it is allowed for pure matters of procedure such as consolidation. The tribunal may therefore look to Rule 42 of the Federal Rules of Civil Procedure (used for consolidating actions within a single judicial district) and the statutory procedures for consolidating multiple actions brought in different districts, *see* 28 U.S.C. § 1407(a), which provide closely analogous procedures for consolidating competing actions.

### B.    Claimant's Objections to Consolidation Should Be Rejected

As shown in Verizon Wireless's Motion for Consolidation, the *Zobrist* and *Brown* actions present a compelling case for consolidation. Both actions assert nearly identical claims on behalf of the same Verizon Wireless consumers and seek the same relief. It is clear that the AAA has the authority to consolidate arbitrations over the objection of one or more parties. *See Kalman Floor*, 196 N.J. Super. 16 at 30. Where, as here, the objections to consolidation do not outweigh the strong adjudicatory and procedural benefits of consolidation, the AAA has exercised its authority to consolidate pending arbitrations. *Id.*

None of the arguments advanced by claimant's counsel during the preliminary hearing supports a contrary result. Contrary to counsel's contention, the differences between the *Brown* and *Zobrist* arbitration clauses in no way advise against consolidation. Verizon Wireless maintains that the arbitration clause in *Zobrist* does not permit class arbitration, and has filed an opposition against Claimant Zobrist's clause construction motion. That issue is still pending before the arbitrator in *Zobrist*. If the *Zobrist* tribunal concludes that class arbitration is precluded under the terms of that arbitration clause, Verizon Wireless promptly will withdraw its

Motion for Consolidation of the two matters. If the tribunal in *Zobrist* concludes that Ms. Zobrist's claims may be consolidated with other individuals' claims for class arbitration purposes, then the *Zobrist* action in its entirety may be consolidated with other pending class arbitrations.

Claimant's counsel also contended that consolidation should not occur here because the *Zobrist* and *Brown* demands assert different claims under different law. This is a red herring and should be disregarded. If a class ever is certified in either the *Brown* or *Zobrist* proceedings, the tribunal may need to consider the laws of every jurisdiction where Verizon Wireless subscribers reside. *See, e.g., Brown* Customer Service Agreement (agreement "governed by the laws of the state encompassing the area code assigned to your wireless phone number, without regard to the conflicts of laws rules of that state"). Potentially conflicting applicable law thus will be an issue that the tribunal might confront irrespective of whether the actions are consolidated. Moreover, as demonstrated in the Motion for Consolidation, that the claims in the two matters rest on different statutory and common law bases is irrelevant. The core allegation in each is that Verizon Wireless's ETF is an illegal contract penalty. The dispositive factor for consolidation is not that the claims be identical, but rather whether "plaintiffs in all actions request similar . . . relief for the same conduct." *In re Wireless Telephone 911 Calls Litigation*, 259 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003).

Claimant's counsel further objected to consolidation on the basis that the parties only agreed to a single arbitration before Arbitrator Farber and that consolidation would disrupt the already-decided matters in the *Brown* proceeding concerning arbitration costs and venue. These arguments are likewise immaterial to the Motion for Consolidation. Regarding the appointment of Arbitrator Farber, Verizon Wireless promptly moved for consolidation after Claimant Zobrist filed a motion to expand the scope of her class nationwide and it became apparent that the *Brown* and *Zobrist* classes might completely overlap (with the exception of California). Although this was after Verizon Wireless agreed that Mr. Farber would be the arbitrator of the *Brown* proceedings, Verizon Wireless proposed a three-arbitrator panel including Arbitrators Farber and

Matthews in its Motion for Consolidation to suggest a fair, reasonable mechanism for dealing with the situation. Such an approach would be consistent with the Large/Complex case procedures, which apply in both cases, and would be sensible and efficient given that both Arbitrators Farber and Matthews already have devoted time and effort in nearly identical actions. Moreover, Claimant Brown cannot claim to have any sort of vested right in only one arbitrator presiding over this action. In any event, the Motion for Consolidation is *not contingent* upon the appointment of a three-arbitrator panel. The AAA very well may choose to consolidate these cases through a different administrative procedure or mechanism.

The concerns regarding venue and arbitration costs likewise are irrelevant to the Motion for Consolidation. Consolidation of these cases will not necessarily change the venue or the applicable arbitration fee rulings in *Brown*. These procedural matters can be resolved through the mutual consent of all parties after a decision to consolidate the cases is made. Indeed, the claimant in *Zobrist* has agreed in principle to consolidation without committing to the particulars of any consolidated proceeding. *See* Motion for Consolidation at 1. Moreover, Claimant's concerns pale in comparison to the costs that Verizon Wireless will bear in litigating simultaneously two overlapping, nationwide class actions asserting nearly-identical claims.

Finally, Verizon Wireless has not objected to Claimant's First Amended Demand, which consolidates the claims of Ms. Brown with the claims of Mr. Schroer. Although the addition of Mr. Schroer presents a straightforward case for consolidation – in that he is asserting the identical claims as Ms. Brown – it is consolidation of claims nonetheless. Verizon Wireless contracted separately with Ms. Brown and Mr. Schroer. Having them both be named claimants in this action is a consolidation of their respective, albeit identical, claims. There is no valid reason why Ms. Zobrist's claims, which are *nearly* identical to those of Ms. Brown and Mr. Schroer, likewise should not be consolidated with this action. Indeed, like Mr. Schroer, Ms. Zobrist (in addition to the individuals she represents) is also a class member in *Brown*. Claimant's counsel should not be able to pick and choose which claims will be consolidated and which will not.

### III.   **CONCLUSION**

The AAA and its arbitrators have broad authority to decide procedural matters in managing the arbitral proceedings, including consolidation of related arbitrations.  The tribunal should exercise that authority here and consolidate the *Zobrist* and *Brown* matters.

DATED:  November 18, 2005                    MUNGER, TOLLES & OLSON LLP


                                             By: _____
                                                      Kristin Linsley Myles


                                             Attorneys for Respondent
                                             Cellco Partnership d/b/a Verizon Wireless

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date:  March 24, 2006

To:
Scott A. Bursor, Esq.
Jayne A. Goldstein, Esq.
David Pastor, Esq.
Jonathan Blavin, Esq.
Kristin Linsley Myles, Esq.
Richard Drooyan, Esq.
Richard J. Burke, Esq.
Gordon E. Maag, Esq.
Paul M. Weiss, Esq.
Tod A. Lewis, Esq.
Malik R. Diab, Esq.
Phillip A. Bock, Esq.

Fax Number:
212-989-9163          954-341-0855          617-742-9701
415-512-4077          618-254-0193          312-220-7777
312-334-1971
213-683-5136

From:  Danielle Gorini

Number of Pages:  (including cover) 19

Re: 11 494 01274 05                        Re:  11 494 00324 05
   Patricia Brown on an individual basis, and also    Dawn M. Zobrist, et al and
   on a classwide basis on behalf of others similarly  Verizon Wireless et al
   situated
   and
   Cellco Partnership d/b/a Verizon Wireless

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED.  IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE.  IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED.  IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

March 24, 2006

VIA FACSIMILE

Scott A. Bursor, Esq.
Law Offices of Scott A. Bursor
500 Seventh Avenue, 10th Floor
New York, NY 10018

Jayne A. Goldstein, Esq.
Mager White & Goldstein, LLP
2825 University Drive, Suite 350
Coral Springs, FL 33065

David Pastor, Esq.
Gilman and Pastor LLP
60 State Street, 37th Floor
Boston, MA 02109

Richard J. Burke, Esq.
The Lakin Law Firm, P.C.
301 Evans Avenue
P.O. Box 27
Wood River, IL 62095

Gordon E. Maag, Esq.
4 Ginger Bend
Glen Carbon, IL 62304

Paul M. Weiss, Esq.
Tod A. Lewis, Esq.
Freed & Weiss, LLC
111 West Washington, Suite 1331
Chicago, IL 60602

Malik R. Diab, Esq.
Phillip A. Bock, Esq.
Diab & Bock
20 North Wacker Drive, Suite 1741
Chicago, IL 60606

Jonathan Blavin, Esq.
Kristin Linsley Myles, Esq.
Munger, Tolles & Olson LLP
560 Mission Street Suite 1900
Twenty-Seventh Floor
San Francisco, CA 94105-2907

Richard Drooyan, Esq.
Munger, Tooles & Olsen, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Re: 11 494 01274 05
    Patricia Brown, on an individual basis, and also
    on a classwide basis on behalf of others similarly
    situated
    and
    Cellco Partnership d/b/a Verizon Wireless

Dear Parties:

Enclosed please find the Order issued on March 20, 2006 from Arbitrator Farber.

Sincerely,

Danielle Gorini
Class Action Specialist
401 431 4763
GoriniD@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

Encl.

cc:     Eugene I. Farber, Esq.   (Via fax without encl.)

## AMERICAN ARBITRATION ASSOCIATION
## NORTHEAST CASE MANAGEMENT CENTER

Patricia Brown, on an individual basis, and
also on a classwide basis on behalf of others
similarly situated.

                   Claimant,                              **Case No. 11 494 01274 05**

-and-

                                                           **ORDER**

Cellco Partnership d/b/a Verizon Wireless,

                   Respondent.

          The purpose of this Order is to rule in three separate areas as follows:

          A. The motion by Respondent Cellco Partnership d/b/a Verizon Wireless

("Verizon") to consolidate this arbitration (the "Brown Arbitration") with another pending

arbitration captioned <u>Zobrist and Verizon Wireless</u> AAA Case No. 11 594 00324-05 (the

"Zobrist Arbitration"), which is the subject of a consolidation order previously rendered

by Arbitrator Joseph N. Matthews;

          B. Verizon's motion to stay the Brown Arbitration on the grounds that there are

related proceedings pending before the Federal Communications Commission and for

other reasons; and

          C. Certain document production issues.

          All of the above items have been the subject of extensive submissions and oral

argument by counsel.

### VERIZON'S MOTION TO CONSOLIDATE

          On October 19, 2005 Verizon submitted a motion to consolidate the Brown

Arbitration with the Zobrist Arbitration. Verizon's motion was made both to Arbitrator
Joseph N. Matthews, who was presiding over the Zobrist Arbitration, and to me.
Verizon's cover letter stated that "Verizon Wireless is authorized to state the claimant in
the Zobrist matter agrees that the two arbitrations should be consolidated, with certain
caveats set out in the first paragraph of the motion." The first paragraph of the motion
did not specifically state any caveats, but repeated that Zobrist agreed that the two
arbitrations should be consolidated, although Zobrist believed that the Zobrist
Arbitration should be accorded "first - filed status" in any consolidation and that Zobrist
reserved the right to request that arbitrator fees and other costs be advanced by
Verizon. Neither of these two items have yet been briefed.

Although both parties in the Zobrist Arbitration agreed to consolidation, there was
no statement as to whether they preferred consolidation before Arbitrator Matthews or
before me. Brown has objected to any consolidation for reasons referred to below.
In its moving papers, Verizon also urged that the consolidated arbitrations be heard
before a three arbitrator panel consisting of Arbitrator Matthews and me and a third
arbitrator to be chosen pursuant to AAA rules. Brown also objected to this on the
grounds that Brown and Verizon had originally stipulated that the Brown Arbitration
would be heard before one arbitrator and both Brown and Verizon had selected me as
that arbitrator.

By Order dated February 6, 2006 in the Zobrist Arbitration, Arbitrator Matthews
stated that "it appears to me that this case cries out for administrative consolidation in
order to assure some level of the efficiency that is intended to be one of the hallmarks
of arbitration." Arbitrator Matthews entered a "conditional order" directing the parties in

2

the Zobrist Arbitration "to proceed in the arbitration currently pending before Arbitrator Farber. It is conditional upon the acceptance by Arbitrator Farber of both actions". He also stated that the transfer to me of the Zobrist Arbitration was "preferable to the transfer of that action to be consolidated before me or the proposed consolidation and appointment of a third arbitrator to serve jointly with us..."

Thus, Arbitrator Matthews has ruled on consolidation and directed that the Zobrist Arbitration be transferred to me on condition that I accept the same. The questions before me are therefore (a) whether I have authority to rule on a consolidation motion and (b) if I have such authority, whether I determine consolidation is appropriate and accept the transfer of the Zobrist Arbitration from Arbitrator Matthews.

## A. AUTHORITY TO CONSOLIDATE

Brown's principal argument is that an arbitrator does not possess authority to rule on a motion for consolidation. Brown claims that the absence of a pertinent statute or pertinent AAA rule means either that there can be no consolidation of the Brown Arbitration and the Zobrist Arbitration or that this can only be accomplished by an order of a Court.

Green Tree Financial Corp. v. Bazzle, 123 S. Ct. 2402, 539 U.S. 444 (2003) generally stands for the proposition that arbitrators can preside over class actions. However, the plurality in Bazzle also sets forth a framework for determination of whether an arbitrator has authority to rule on a motion for consolidation. In Bazzle, the plurality stated, in part, as follows:

3

"In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary). AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). These limited instances typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy...

The question here—whether the contracts forbid class arbitration—does not fall into this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. Unlike *First Options*, the question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter.* 514 U.S., at 942-945, 115 S.St. 1920. Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to...That question... concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these circumstances, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide. Cf. Howsam, supra, at 83, 123 S.Ct. 588 (finding for roughly similar reasons that the arbitrator should determine a certain procedural gateway matter"). (Emphasis in original) 539 U.S. at 452-3

Thus, the question is whether a motion for consolidation is a "gateway" issue for a Court or a question regarding the "kind of arbitration proceeding the parties agreed to", which should be determined by the arbitrator. See analysis of <u>Bazzle</u> by the United States Court of Appeals for the Fifth Circuit in <u>Pedcor Management Co. v. Nations Personnel of Texas</u>, 343 F.3d 355 (2003).

In <u>Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union,</u> 321 F.3d 251 (2003) the First Circuit dealt squarely with the question of whether a motion to consolidate three grievance arbitrations under three different collective bargaining agreements should be decided by the Court or by an arbitrator. The First Circuit ruled as follows:

4

"The issue before us is who should make the determination as to whether to consolidate the three grievances into a single arbitration: the arbitrator or a federal court. Since each of the three grievances is itself concededly arbitrable, we think the answer is clear. Under Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), this is a procedural matter for the arbitrator." 321 F.3d at 254

In Blimpie International, Inc. v. Blimpie of the Keys, 371 F.Supp.2d 469

(S.D.N.Y., J. Leisure, 2005) the Federal District Court considered if Blimpie of the Keys

together with 44 other sub-franchisees of Blimpie International could file a consolidated

demand for arbitration with the American Arbitration Association. The Court concluded

as follows:

"Thus, the Court...finds that Green Tree is controlling here. Consolidation does not fall within the 'narrow exception' reserved for gateway matters that the parties would likely have expected a court to resolve. Like the question of class arbitration in Green Tree, the question of consolidated arbitration here concerns the nature of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate. Indeed, consolidation is a procedural issue, 'which grow[s] out of the [parties'] dispute,' and therefore, presumptively falls to the arbitrator. And, as the Supreme Court reasoned in Green Tree, whether a particular procedural device is permissible in the absence of any language in the agreement is a question of 'contract interpretation and arbitration procedures,' which '[a]rbitrators are well situated to answer.' Accordingly, in light of Green Tree and its progeny and the breadth of the arbitration provision here, the Court finds that the question of whether the parties' arbitration proceeding may be consolidated with other arbitration proceedings should be decided by an arbitrator." (Citations omitted) 371 F. Supp. 2d at 473-474

Similarly, in Yuen v. Superior Court of Los Angeles County, 121 Cal.App.4th

1133, 18 Cal.Rptr.3d 127, (2004) the California Court of Appeals considered an

application for consolidation of two American Arbitration Association commercial

arbitrations and concluded that "the reasoning of Green Tree should result in the

arbitrator or arbitrators deciding whether the arbitration agreements in this case permit

consolidation and whether the arbitrations should be consolidated." In Kalman Floor

Company v. Jos. L. Muscarelle, 196 N.J. Super. 16, 481 A.2d 553 (1984) the Appellate

5

Division of New Jersey similarly ruled that the question of consolidation was a
"procedural matter" which should be determined by the arbitrators.

I therefore conclude that, based upon the caselaw, an arbitrator does have
authority to determine whether or not two arbitrations should be consolidated.

### B. THE MOTION FOR CONSOLIDATION

I conclude that Verizon's motion for consolidation should be granted and I accept
the transfer of the Zobrist Arbitration from Arbitrator Matthews. My reasons are as
follows:

1. It is undisputed that all factual allegations in the Zobrist Arbitration are
identical to factual allegations in the Brown Arbitration. Zobrist seeks damages from
Verizon for its imposition of an allegedly unlawful early termination fee of $175.00 for
each Verizon subscriber of Verizon's wireless telephone services who terminated his or
her agreement before the end of the term of that agreement. Brown seeks exactly the
same relief. In fact, the only factual differences between the two arbitrations is that the
claims of Zobrist are limited to matters relating to the early termination fee but the
claims of Brown also relate to an additional issue. Brown also seeks damages against
Verizon based upon Verizon's allegedly illegal locking of cell phone handsets sold by
Verizon to customers, which purportedly makes it impossible or impracticable for
customers to switch cell phone providers without purchasing new handsets. Claimants
in Brown seek to create two classes, a Termination Penalty Class and a Locked
Handset Class. Zobrist makes no allegations against Verizon regarding allegedly
locked headsets.

2. The putative parties in both the Brown Arbitration and the Zobrist Arbitration
are identical. In both cases Verizon is the respondent. In the Brown Arbitration, Brown

6

seeks certification of a Termination Penalty Class consisting of all persons in the United States, except California, who entered into agreements with Verizon which purported to require payment of an early termination fee. In the same order in which he directed consolidation, Arbitrator Matthews granted Zobrist's motion to file a First Amended Claim to "assert a putative class claim on behalf of residents of all states other than the state of California." Thus, although the class representatives and their counsel are different, the putative parties in the Zobrist Arbitration and Brown Arbitration are identical.

3. The discovery in the Zobrist Arbitration for both class certification and on the merits appears to be identical to and totally encompassed within the discovery in the Brown Arbitration.

4. The factual presentations regarding the claims and defenses in the Zobrist Arbitration also appear to be identical to and totally encompassed within the factual presentations in the Brown Arbitration.

5. Even the legal issues in the Zobrist Arbitration appear to be substantially similar or even identical to the legal issues in the Brown Arbitration. Presently, Zobrist's claims are breach of contract, breach of the Illinois Consumer Fraud Statute, presumably because Zobrist resides in Illinois, and breach of "the substantially similar consumer protection statues of other states where Verizon Wireless does business" (see paragraph 47 of Zobrist's First Amended Demand). Considering that the pleading requirements in arbitration are generally viewed with more flexibility than in litigation, Brown's claims appear to amount to the same as those of Zobrist. Brown claims a putative Termination Penalty Class of all persons in the United States, except California, who entered into Verizon agreements requiring an early termination penalty.

7

Brown, who resides in Florida, alleges her first two causes of action for breach of the

Florida Deceptive and Uniform Trade Practices Act and a third claim based upon

violations of the Federal Communications Act. However, after Brown commenced the

Brown Arbitration, upon Verizon's consent, Brown served a First Amended Demand For

Class Arbitration adding Harold P. Schroer, a New York resident, as an additional class

representative. Presumably, Claimant Schroer will seek to assert claims under New

York consumer protection statutes. Moreover, the standard Verizon Customer

Agreement provides that the law of the state of each customer's residence applies to

that customer's contract. Therefore, it seems likely that the applicable law in the Brown

Arbitration will also be the relevant consumer protection statute in each state except

California. Thus, the legal issues in the Zobrist Arbitration may well be entirely

encompassed within the legal issues in the Brown Arbitration.

        6. Finally, the consolidation of the Zobrist Arbitration and Brown Arbitration will

avoid the gross inefficiencies and unnecessary significant expense of two separate

proceedings regarding the same issues and the same parties. It will also avoid the

possibility of inconsistent results. It would make no sense for parties to have selected

arbitration, a process designed to save time and expense, and then do everything

twice.

        The identity and/or substantial similarity of factual issues, parties, discovery, trial

presentations and legal issues outweighs other objections to consolidation raised by

Brown, as follows:

        1. Brown argues that a consolidated arbitration is not workable because her

arbitration agreement and Zobrist's arbitration agreement are different. However,

Brown has not established that the differences are significant and there may be similar

8

differences between Brown's arbitration agreement and the arbitration agreement of Claimant Harold P. Schroer in the Brown Arbitration. Moreover, as noted in Rule 4 of the AAA Supplementary Rules for Class Arbitration (the "Supplementary Rules"), class certification only requires that each class member has entered into an agreement containing an arbitration clause which is "substantially similar" - not identical - to that signed by the class representative and each of the other class members. Finally, to the extent there are differences, it is likely that they can be resolved by different procedures and/or sub-classes.

2. Brown next argues that since I have already entered an order allocating arbitral fees in the Brown Arbitration, there should be no consolidation because it is possible that a fee allocation in the Zobrist Arbitration based on a different agreement will conflict with the fee allocation I have previously ordered. As noted above, Zobrist has reserved the right to request that arbitrator fees and other costs be advanced by Verizon and no ruling has yet been made on this issue. Therefore, there may be no conflict. Additionally, my prior ruling was that, on a cash flow basis, Verizon is required to advance virtually all arbitral fees in the Brown Arbitration. Consolidation of the Zobrist Arbitration would not change this ruling such that there would be any adverse financial impact upon Brown.

3. Arbitrator Matthews has rendered a clause construction award determining that the clause in the Zobrist Arbitration permits class arbitration. As such, an objection based upon clause construction is moot. If a Court subsequently disagrees and rules that the Zobrist Arbitration clause prohibits class arbitration, consolidation would certainly be warranted. Additionally, if a class is subsequently certified in the Brown Arbitration, Zobrist would in all likelihood be afforded an opportunity to opt out of any

9

such class.

4. The locale of the Brown arbitration is New York City and the locale for Zobrist is apparently somewhere In the Midwest. However, when Zobrist consented to consolidation, presumably she consented to a change of locale. Moreover, different locales in otherwise substantially similar arbitration clauses would not seem to rise to the level of denying a consolidation motion.

5. Brown argues that the two arbitrations may require different class definitions. However, as noted above, they do not. In both the Zobrist Arbitration and the Brown Arbitration the putative classes are all Verizon customers in the United States except California. The putative classes are therefore identical, a key fact which supports consolidation.

6. Brown argues that there will be delays from ancillary disputes such as designation of "first filed" status and legal counsel. However, such delays and associated additional expense are minimal compared to the delays and expense of two entirely different separate arbitrations among the same parties regarding the same issues.

7. Brown argues vehemently In opposition to Verizon's suggestion of a reconfiguration of the arbitration panel to constitute Arbitrator Matthews, me and a third arbitrator. I do not believe I have authority to change the agreement reached between Brown and Verizon that there be one arbitrator. I also do not have authority to change the ruling of Arbitrator Matthews directing that the Zobrist Arbitration be consolidated into the Brown Arbitration. I therefore conclude that Brown's objection in this regard is valid and must be sustained.

10

## C. CONCLUSION

I conclude that I have authority to rule on a consolidation motion and that Verizon has presented a compelling case for consolidation. I do not believe any of the points raised by Brown in opposition to consolidation are sufficient to defeat Verizon's motion. As such, Verizon's motion for consolidation is granted. The case manager is directed to advise Arbitrator Matthews that I will accept the transfer of the Zobrist Arbitration.

## THE MOTION FOR A STAY

Verizon has also moved before me and before Arbitrator Matthews for a stay of the Brown Arbitration and the Zobrist Arbitration for a variety of reasons. In granting the consolidation motion, Arbitrator Matthews determined that I should rule on the stay application if I accepted his order directing consolidation of the Zobrist Arbitration into the Brown Arbitration.

For the reasons set forth below, I deny Verizon's application for a stay to the extent that the consolidated action may proceed to the class certification and notice phases of the arbitration. I will consider entertaining a motion for a stay by Verizon at a later date if the Federal Communications Commission issues an order in connection with preemption of state claims in favor of proceedings pending before the Federal Communications Commission.

Verizon argues that the early termination fee claims should be stayed because of application of Florida's doctrine of primary jurisdiction. See New York Cross Harbor v. Consolidated Rail, 72 F. Supp.2d 70 (E.D.N.Y., 1998); Baltimore & Ohio Chicago Terminal R.R. v. Wis. Cent. Ltd., 154 F.3d 404 (7th Cir. 1998). Verizon asserts that proceedings have been initiated before the Federal Communications Commission

11

("FCC") in an attempt to obtain a ruling that a future determination by the FCC preempts all claims that Verizon's early termination fee violates state statutes, including various consumer protection statutes. I do not accept Verizon's assertions for the following reasons:

1. Although Verizon argues that the application of the doctrine of primary jurisdiction is mandatory, it cites no case where a Court or an arbitrator stayed or abated an arbitration because of a pending investigation by an administrative agency.

2. There appears to be significant doubt that the FCC will determine that any FCC decision regarding this matter will preempt claims based upon state statutes. As pointed out by Brown, Judge Herndon in Zobrist v. Verizon Wireless, 02-CV 1000-DRH (SD Ill 2002) has ruled that, "the Court finds that the Early Cancellation Fee is not part of Defendants' rate-making structure, or a part of market entry", which would be the subject of the FCC investigation, but rather is one of Verizon's "other terms and conditions..."Judge Herndon also stated that he agreed with the same result determined by Chief Judge Murphy in Hinkel v. Cingular Wireless, 2002-0999 (S.D. Ill.). Chief Judge Murphy ruled that Cingular's early termination fee "is not part of Defendant's rate-making structure and, thus, it escapes federal preemption". If the early termination fee is not part of Verizon's rates or rate-making structure, it is highly doubtful that the FCC will issue any preemption order.

3. Verizon claims that a decision by the FCC on preemption "can be expected by March or April 2006" (see page 2 of Verizon reply). Brown, on the other hand, argues persuasively that in other similar proceedings the FCC has taken years to make any such decision, that there are thousands of pages of submissions which have been made in this matter to the FCC, that the FCC itself and its staff have been hindered in

12

making quick decisions by internal administrative problems, and that a stay pending an FCC decision will interminably delay these arbitration proceedings. The FCC initiated its proceedings in May 2005 and to date has only issued an Order accepting comments. Verizon does not deny that the FCC took 7 years to issue its most recent preemption ruling in the Truth-In-Billing matter. It therefore appears that Brown's assertion regarding the timing of any possible relevant FCC action is far more likely than Verizon's assertion. However, I will reconsider a motion for a stay if the FCC issues a relevant decision during the pendency of this arbitration.

4. When faced with the same questions in the California action, In re Cellphone Termination Fee Cases (Cal. Super. Ct. 6/21/95), Judge Sabraw determined that a stay of the class action and notice phases of the matter pending before him should not be granted. For the reasons set forth in Judge Sabraw's decision, I similarly believe a stay should not be granted.

5. A stay in these circumstances appears contrary to the parties' agreements. The parties agreed to resolve their disputes by the more flexible and faster procedures of arbitration. It seems contrary to those agreements to conclude that a respondent such as Verizon can stop a putative class action against it, possibly for years, by simply filing for a determination of the issue with a relevant administrative agency and succeeding in having that agency determine it will accept comment on the issue.

6. Finally, as stated by Judge Sabraw in the California action, there are enough built in delays provided by the Supplementary Rules with mandatory stays following partial awards on clause construction and class certification such that it is inappropriate to grant an additional stay because of possible FCC action, especially where 2 courts have already ruled to the contrary.

13

Verizon also argues that the handset lock claims should be stayed because it argues these claims were settled in a prior class action, Campbell v. Airtouch Cellular, GIC 751725 (Cal. Super, Ct., S.D. Co., 2001). Verizon also argues that the claims herein are enjoined by specific orders in the Campbell case. Verizon asserts that the claims herein should be stayed because of Florida's "principle of priority". See Siegel v. Siegel, 575 So. 2d 1267 (Fla. 1991). I reject Verizon's arguments for a stay of the handset lock claims for the following reasons:

1. Based upon the record before me, Verizon has not established that handset lock claims herein were argued and settled in Campbell. There is particular question as to whether the Campbell settlement permitted the assertion of the claims in this arbitration.

2. Based upon the record before me, I also question Verizon's assertion that the releases executed in Campbell cover the claims asserted herein. Verizon can assert its defense of release at the possible merits phase of this proceeding.

3. Verizon argues that proceeding with the handset lock claims this arbitration will violate the injunction granted in Campbell. However, Verizon offers no explanation as to why it has not then sought an order from the Campbell Court to stay this arbitration.

4. Florida's principle of priority appears to apply only to pending cases and the Campbell case has been settled.

5. Based upon the record before me, Verizon has not established that Campbell covered anything more than disclosure issues in connection with handset lock claims. As noted, it is not at all clear to me that the Campbell settlement intended to preclude this later arbitration.

14

6. Although Verizon has not established enough of a basis for me to grant any stay, this order is not intended to preclude Verizon from presenting its defenses based upon <u>Campbell</u> at the possible merits phase of these proceedings.

Finally, for reasons set forth above, I also reject Verizon's application for a stay in connection with claims made under Section 201 of the Federal Communications Act. The import of Verizon's argument is that a Court or arbitration tribunal has no jurisdiction in an action pursuant to Section 201 of the Federal Communications Act if the FCC accepts comments regarding the "reasonableness" issue. However, there appears to be no law or authority so holding.

## CONCLUSION

For the reasons set forth above, I deny Verizon's application to stay this proceeding to the extent that the class certification and possible notice phases of this arbitration shall proceed. However, counsel are directed to advise me of any decision by any Court or the FCC which would warrant reconsideration.

## DISCOVERY MATTERS

The only discovery issue not resolved to date relates to Brown's request that discovery it obtained from Verizon in the matter captioned <u>In Re Wireless Telephone Services Antitrust Litigation</u>, Case No. 02 Civ.2637 (DLC) pending in the United States District Court for the Southern District of New York (the "Federal Action") be deemed discovery in this action subject to the Federal Court's applicable protective order. Verizon objects and argues that the Federal Court discovery was significantly more broad than the discovery required in this matter and that Brown should be compelled to serve notices for production and have another production only of what is relevant to this arbitration and the claims asserted herein.

15

Both sides concede that the counsel for Brown appeared in the Federal Action and that such counsel already has all the documents which would be the subject of a document production. It simply makes no sense to compel Brown to incur the entirely duplicative cost of serving new demands and having another production for documents already in the possession of Brown's counsel. The nature of the production of documents from Verizon to Brown is irrelevant to whether such documents are properly admissible in possible future phases of this arbitration. As such, I grant the request of Brown's counsel.

It is Ordered that:

1. The motion for consolidation is granted.

2. By March 28, 2006, counsel in both the Brown Arbitration and the Zobrist Arbitration shall submit comments to me regarding pending issues and further steps in this Consolidated Arbitration. Counsel should also be prepared to discuss the same in a previously scheduled conference call for March 31, 2006 at 1:00 p.m. EST.

3. The motion for a stay is denied to the extent the class certification and possible notice phases of this arbitration shall proceed.

4. The documents produced in the Federal Action are deemed to be produced in this arbitration subject to the applicable protective order in the Federal Action.

Dated:    White Plains, New York
          March 20, 2006

                    Eugene I. Farber, Arbitrator

16

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

June 22, 2005

VIA FAX

Scott A. Bursor, Esq.
Law Offices of Scott A. Bursor
500 Seventh Avenue, 10th Floor
New York, NY  10018

Jayne A. Goldstein, Esq.
Mager White & Goldstein, LLP
2825 University Drive, Suite 350
Coral Springs, FL  33065

David Pastor, Esq.
Gilman and Pastor LLP
60 State Street, 37th Floor
Boston, MA  02109

David A. Coulson, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL  33131

John P. Hunt, Esq.
Kristin Linsley Myles, Esq.
Munger, tolles & Olson LLP
560 Mission St., Suite 1900
San Fransisco, CA 94105-2907

Re: 11 459 01274 05
    Patricia Brown, on an individual basis, and also
    on a classwide basis on behalf of others similarly
    situated
    and
    Cellco Partnership d/b/a Verizon Wireless

Dear Counsel:

Please be advised that we are initiating administration of this matter as filed.  The Wireless Industry
Arbitration Rules and the Supplementary Rules for Class Arbitrations (SRCA) shall be applied.

It is important to note that the AAA's determination to accept or reject a Demand under the SRCA is
solely an administrative decision and is not a determination as to whether or not the arbitration clause
permits class claims. Such a determination may be made by an arbitrator in the clause construction phase.

Copies of our Wireless Rules, as amended and in effect July 1, 2003 as well as the SRCA are available on
our website (www.adr.org).  If you would like a printed copy sent to you, please let us know.

In accordance with the Rules, if Respondent does not answer on or before July 5, 2005, we will assume that the claim is denied. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

Claimant has requested that the hearing be held in New York, New York. Please review the Rules regarding the locale of hearings.

We will call you to schedule a brief administrative conference via conference call. The purpose of the administrative conference is to assist the Association in administering your case efficiently and expeditiously. Please be prepared to discuss the following:

a.  estimates on the expected duration of the case;
b.  number of arbitrators/party-appointed arbitrator provision;
c.  method of appointment of arbitrators, if applicable;
d.  your views on the qualifications of the arbitrators to be proposed;
e.  the possibility of submitting this dispute to mediation;

Enclosed is a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The Conflicts Checklist is due within fifteen days from the date of this letter. The parties are to exchange copies of all correspondence except this checklist and the arbitrator list.

Parties will not send copies of documents being exchanged between the parties to the Association, such as discovery, unless they are being referred to the arbitrator for a determination. These documents will be returned to you if we receive them.

The Association has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of these proceedings, please try to obtain the other party's agreement prior to contacting the AAA. Without the consent of the parties, case managers only have the authority to grant one extension per deadline, provided the request is reasonable and necessary. Untimely filings will not be considered by the Association.

This case will be administered by facilitating the exchange of appropriate written documents through the AAA. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator. Correspondence should be submitted to the undersigned for transmittal to the arbitrator, copying the other.

The Association will require advance deposits once the arbitrator is appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

We invite the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- File additional claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank listed neutrals
- Review case status

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner can also be viewed and managed online.

We call your attention to Section 9 of the SRCA. Please review the information explaining postings to the class action docket. If you have any questions regarding the docket, please call. The administration of the case shall be conducted by the AAA with the appropriate party representatives. We shall direct all other inquiries to the AAA Class Action Docket on our website.

We will advise you of the name of the case manager to whom this matter is being assigned shortly.

We look forward to assisting you in this matter.

Sincerely,

Catherine E. Shanks
Vice President
401 431 4848
shanksc@adr.org

Encl.

## AMERICAN ARBITRATION ASSOCIATION
### CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 11 459 01274 05
    Patricia Brown, on an individual basis, and also
    on a classwide basis on behalf of others similarly
    situated
    and
    Cellco Partnership d/b/a Verizon Wireless

Case Supervisor: Katharine M. Flanagan
DATE: June 22, 2005

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrator pursuant to the rules, we must advise the arbitrator of the names of all persons, firms, companies or other entities involved in this matter. Please list below all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiary and other related entities. This form will only be used as a list for conflicts, not a preliminary or final witness list. Please note that the AAA will not divulge this information to the opposing party, and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrator, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

For your convenience, this form may be completed online.

NAME                        AFFILIATION                        ADDRESS


DATED: _____    PARTY: _____

                                          Please Print



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date:  June 22, 2005

To:    Scott Bursor, Esq.                                            FAX 212 989 9163
       John P. Hunt, Esq. & Kristin Linsley Myles, Esq. FAX 415 644 6922
       David Coulson, Esq.                                          FAX 305 579 0717
       Jayne Goldstein, Esq.                                        FAX 954 341 0855
       David Pastor, Esq.                                           FAX 617 742 9701

From:  Catherine Shanks

Pages (including cover) 5

Re:
Patricia Brown, on an individual basis and also on a classwide basis of others similarly situated
And
Cellco Partnership d/b/a Verizon Wireless

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS
ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR
OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE
PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS
FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED
ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

1 | KRISTIN LINSLEY MYLES (SBN 154148)
JOHN P. HUNT (SBN 208941)
2 | JONATHAN H. BLAVIN (SBN 230269)
MUNGER, TOLLES & OLSON LLP
3 | 560 Mission Street
27th Floor
4 | San Francisco, California 94105
Telephone:    (415) 512-4000
5 | Facsimile:    (415) 644-6911

6 | Attorneys for Respondents

7

8 | AMERICAN ARBITRATION ASSOCIATION

9

10 | In The Matter Of the Arbitration between:

11 | Patricia Brown

12 | And

13 | Cellco Partnership d/b/a Verizon Wireless

14

15

Case No. 11 459 01274 05

ANSWERING STATEMENT OF CELLCO PARTNERSHIP DOING BUSINESS AS VERIZON WIRELESS TO DEMAND FOR ARBITRATION

16 | **ANSWERING STATEMENT**

17 | Claimant Patricia Brown's putative class arbitration proceeding should not go

18 | forward. She and Respondent Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless")

19 | have agreed to resolve their disputes "on an individual basis," rather than on a class basis. In

20 | addition, this arbitration duplicates proceedings elsewhere that address the same issues and that

21 | should take precedence over this arbitration. The FCC currently is considering whether

22 | Claimant's early termination fee ("ETF") claims are preempted, and Claimant's so-called

23 | "handset locking" claims are the subject of a nationwide class action lawsuit in California that

24 | had been pending for years when Claimant brought suit against Verizon Wireless in the Circuit

25 | Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, in May 2004.

26 | Verizon Wireless consistently has taken the position that this purported "class"

27 | arbitration should not proceed. Verizon Wireless objected immediately to the decision of the

28 | Association to accept the matter for administration on a class basis, and on June 30, 2005,

1109711.1

ANSWERING STATEMENT
TO DEMAND FOR ARBITRATION

1   Verizon Wireless moved for an order from the Palm Beach County court staying these

2   proceedings on grounds including those described above.

3           Verizon Wireless submits this Answering Statement solely to avoid prejudice to

4   itself, and does not concede that this purported class arbitration proceeding should go forward.

5   Even if this class arbitration were not improper, it should be stayed pending resolution of the

6   issues presented in the prior parallel proceedings before the FCC and in California.

7           Even if the challenged ETF provision were invalid, Verizon Wireless nevertheless

8   would be entitled to recover actual damages from any customer who breaches its service contract

9   with Verizon Wireless by terminating service before contract expiration.  Although the proposed

10   "Early Termination Fee" class undoubtedly contains such customers, it is premature to assert

11   counter- or cross-claims against them because a class has not been, and should not be, certified.

12   In the event that a class ever is certified, Verizon Wireless reserves its right to assert appropriate

13   counter- or cross-claims against absent class members.

14                             **DENIAL**

15           Pursuant to applicable rules of the American Arbitration Association ("AAA") and

16   determinations by the AAA in this proceeding, Respondent Verizon Wireless[1] denies the

17   allegations of the Demand for Arbitration filed by Patricia Brown, denies that Respondent

18   engaged in any wrongdoing or improper conduct in connection with its early termination fee/early

19   cancellation fee ("ETF") policy referenced in the Demand for Arbitration or in connection with

20   its programming of handsets, denies that Claimant has any claims against Respondent arising out

21   of or related in any way to Respondent's ETF policy or handset programming, and denies that

22   Claimant is entitled to any of the relief she seeks in this arbitration from Respondent.  Further,

23   Respondent denies that Claimant is entitled to pursue this arbitration on a class basis.

24

25

26

27

28

---

[1] In the judicial proceeding that gave rise to this arbitration, Claimant named "Verizon Wireless Services, LLC" as a defendant.  In her Demand for Arbitration, Claimant names only Cellco Partnership d/b/a Verizon Wireless as a respondent.  Verizon Wireless Services, LLC is not a proper party, but to the extent a court or the Arbitrator may disagree, Verizon Wireless requests the opportunity to file an Answering Statement on behalf of Verizon Wireless Services, LLC.

1

2                                    **AFFIRMATIVE DEFENSES**

3              Respondent sets forth the following affirmative defenses to Claimant's Demand

4    for Arbitration. Respondent does not, by stating the matters set forth in these defenses, allege or

5    admit that it has the burden of proof and/or persuasion with respect to any of these matters, and

6    does not assume the burden of proof or persuasion as to any matters as to which Claimant has the

7    burden of proof or persuasion. Each defense is asserted with respect to both the ETF claims and

8    the handset locking claims unless otherwise stated.

9              Because it is Respondent's position that this arbitration may not be pursued on a

10   class basis, Respondent refers only to Claimant, and not to members of the proposed putative

11   class, in stating its affirmative defenses. If the Arbitrator decides that Claimant may seek class

12   treatment for her claim, Respondent intends to, and does, assert each of its affirmative defenses

13   against each member of the putative class.

14                                  **FIRST AFFIRMATIVE DEFENSE**
                                    **(Class Arbitration Precluded)**
15

16             As its first affirmative defense, Respondent alleges that based upon the American

17   Arbitration Association ("AAA") Policy on Class Arbitrations and Supplementary Rules for Class

18   Arbitrations, and the terms of the underlying customer service agreements ("CSA") of Claimant

19   and members of the putative class, Claimant is precluded from seeking arbitration on a class

20   basis.

21                                 **SECOND AFFIRMATIVE DEFENSE**
                                     **(Federal Preemption)**
22

23             As its second affirmative defense, Respondent alleges that Claimant has failed to

24   state facts sufficient to constitute a cause of action created by or recognized under any state

25   statute, regulation or common law, including the law of Florida, because state law causes of

26   action as alleged in the Demand for Arbitration have been preempted in their entirety by federal

27   legislation and federal common law, pursuant to the Federal Communications Act, 47 U.S.C.

28

1   §§ 151, *et seq.*, specifically including 47 U.S.C. § 332(c)(3)(A), and the Supremacy Clause of the

2   United States Constitution, U.S. Const. Art. VI, cl. 2.

3                            **THIRD AFFIRMATIVE DEFENSE**
                           **(Primary/Exclusive Jurisdiction)**
4

5           As its third affirmative defense, Respondent alleges that Claimant's claims are

6   barred, in whole or in part, by the doctrines of primary and/or exclusive regulatory agency

7   jurisdiction.

8                            **FOURTH AFFIRMATIVE DEFENSE**
                              **(Failure to State a Claim)**
9

10          As its fourth affirmative defense, Respondent alleges that the Demand for

11  Arbitration, and each and every cause of action therein, fails to state facts sufficient to constitute a

12  cause of action against Respondent.  The basis for this defense includes, but is not limited to, the

13  fact that Claimant does not allege that she paid an ETF or that she would be subject to an ETF if

14  she were to terminate her Verizon Wireless service.  Upon information and belief, Claimant has

15  not paid an ETF and would not be subject to an ETF if she were to terminate service.

16                            **FIFTH AFFIRMATIVE DEFENSE**
                    **(No Liquidated Damages Provision – ETF Claims Only)**
17

18          As its fifth affirmative defense, Respondent alleges that Claimant fails to state a

19  cause of action under the law of Florida or any other state because the ETF at issue does not

20  impose a payment obligation as compensation for a contract breach, but is an alternative means of

21  contract performance by Claimant.

22                            **SIXTH AFFIRMATIVE DEFENSE**
                                      **(Setoff)**
23

24          As its sixth affirmative defense, Respondent alleges that, even if Claimant's claims

25  are meritorious, which Respondent denies, those claims are subject to setoff in the event that

26  Claimant breaches her contract with Respondent.

27  */ / /*

28

1109711.1                                    - 4 -                    ANSWERING STATEMENT
                                                             TO DEMAND FOR ARBITRATION

1

2

### SEVENTH AFFIRMATIVE DEFENSE
#### (Respondents' Practices Not Misleading or Deceptive)

3    As its seventh affirmative defense, Respondent alleges that any statements made or

4    actions taken by Respondent were truthful and accurate and were not likely to mislead or deceive

5    Claimant.

6

7

### EIGHTH AFFIRMATIVE DEFENSE
#### (Legitimate Business Justification/Good Faith)

8    As its eighth affirmative defense, Respondent alleges that Claimant's claims are

9    barred, in whole or in part, because Respondent's conduct has at all times been undertaken with

10    legitimate business justification and in reasonable and good faith belief in the lawfulness of its

11    actions.

12

13

### NINTH AFFIRMATIVE DEFENSE
#### (No Injury or Damage)

14    As its ninth affirmative defense, Respondent alleges that Claimant has not suffered

15    any injury or damage.  The basis for this defense includes, but is not limited to, the fact that

16    Claimant does not allege that she paid an ETF or that she would be subject to an ETF if she were

17    to terminate her Verizon Wireless service.  Upon information and belief, Claimant has not paid an

18    ETF and would not be subject to an ETF if she were to terminate service.

19

20

### TENTH AFFIRMATIVE DEFENSE
#### (Lack of Standing)

21    As its tenth affirmative defense, Respondent alleges that Claimant lacks standing

22    to bring the claims alleged in the Demand.  The basis for this defense includes, but is not limited

23    to, the fact that Claimant does not allege that she paid an ETF or that she would be subject to an

24    ETF if she were to terminate her Verizon Wireless service.  Upon information and belief,

25    Claimant has not paid an ETF and would not be subject to an ETF if she were to terminate

26    service.

27    / / /

28    / / /

1109711.1                                      - 5 -                          ANSWERING STATEMENT
                                                                    TO DEMAND FOR ARBITRATION

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Uncertain/Unmanageable Damages)**

As its eleventh affirmative defense, Respondent alleges that Claimant's claims are barred in whole or in part because Claimant's requested monetary relief is too speculative and/or remote and/or impossible to prove and/or allocate. The basis for this defense includes, but is not limited to, the fact that Claimant does not allege that she paid an ETF or that she would be subject to an ETF if she were to terminate her Verizon Wireless service. Upon information and belief, Claimant has not paid an ETF and would not be subject to an ETF if she were to terminate service.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Benefits Realized)**

As its twelfth affirmative defense, Respondent alleges that Claimant has enjoyed the benefits of one or more of the products or services that are the subject of the Demand, and therefore is barred from making one of more of the claims for relief set out in the Demand.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Equitable Defenses)**

As its thirteenth affirmative defense, Respondent alleges that Claimant's claims against Respondent are barred, in whole or in part, by the doctrines of acquiescence, estoppel, laches, and/or waiver.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Ratification and/or Consent)**

As its fourteenth affirmative defense, Respondent alleges that Claimant consented to and approved all the acts and omissions about which she now complains. In addition to other manifestations of consent, Claimant agreed to be bound by the terms of her Verizon Wireless CSA when she used the wireless services provided by Respondent. Accordingly, Claimant is barred from pursuing this action.

/ / /

1

2

### FIFTEENTH AFFIRMATIVE DEFENSE
#### (Waiver/Release)

3

4

5

6

As its fifteenth affirmative defense, Respondent alleges that Claimant has waived or released, in whole or in part, some or all of the claims asserted in the Demand for Arbitration. The basis for this defense includes, but is not limited to, the provision in Claimant's contract stating, "You can dispute your bill, but only within 90 days of receiving it."

7

8

### SIXTEENTH AFFIRMATIVE DEFENSE
#### (Voluntary Payment)

9

10

As its sixteenth affirmative defense, Respondent alleges that Claimant is barred from recovering based on the voluntary payment doctrine.

11

12

### SEVENTEENTH AFFIRMATIVE DEFENSE
#### (Wrongful Acts of Claimant)

13

14

15

16

17

18

19

Based on the allegations of Claimant's Demand, it appears that Claimant (a) failed to exercise ordinary and reasonable care on her own behalf; (b) intentionally or recklessly disregarded her own interests, through action or inaction; and/or (c) otherwise committed wrongdoing, and that such acts and/or omissions were the proximate cause of all or some of Claimant's injuries, if any.  By reason of the foregoing, Respondent alleges as its seventeenth affirmative defense that Claimant is barred, in whole or in part, from recovering any amounts in this proceeding.

20

21

### EIGHTEENTH AFFIRMATIVE DEFENSE
#### (Failure to Mitigate)

22

23

24

25

As its eighteenth affirmative defense, Respondent alleges that Claimant has failed to take reasonable steps to mitigate, alter, reduce, or otherwise diminish her damages, if any. Claimant accordingly is barred from recovery of any damages that might have been prevented by mitigation.

26

/ / /

27

/ / /

28

/ / /

1109711.1

- 7 -

ANSWERING STATEMENT
TO DEMAND FOR ARBITRATION

1

2

### NINETEENTH AFFIRMATIVE DEFENSE
#### (Intervening Acts of Others – "Handset Locking" Only)

3    As its nineteenth affirmative defense, Respondent alleges that the damages alleged

4   in Claimant's Demand, if proved, were caused by persons or entities other than Respondent,

5   including but not limited to various unidentified third parties and intermediaries involved in each

6   individual transaction at issue in this proceeding.  Such intervening and superseding conduct of

7   others bars and/or diminishes recovery, if any, by Claimant.

8

### TWENTIETH AFFIRMATIVE DEFENSE
#### (Indemnity – "Handset Locking" Claims Only)

9

10    As its twentieth affirmative defense, Respondent alleges that it is entitled to full or

11   partial indemnity from such other parties who are found to have proximately caused any injury to

12   Claimant or any class member, and who expressly or impliedly agreed to indemnify or hold

13   harmless Respondent from damages or liabilities such as those claimed by Claimant.  Respondent

14   denies that Claimant or any class member was injured.

15

### TWENTY-FIRST AFFIRMATIVE DEFENSE
#### (Constitutional)

16

17    As its twenty-first affirmative defense, Respondent alleges that Claimant's claims

18   are in contravention of Respondent's rights under applicable clauses of the United States

19   Constitution and Florida State Constitution, and other state constitutions, including without

20   limitation the following provisions:  (a) said claims constitute an impermissible burden on

21   interstate commerce in violation of Article I, Section 8 of the United States Constitution; and (b)

22   an award on said claims would work an unlawful taking of property in violation of the Fifth and

23   Fourteenth Amendments of the United States Constitution, and of Article I, Section 9 of the

24   Florida State Constitution.

25

### TWENTY-SECOND AFFIRMATIVE DEFENSE
#### (Constitutional Defects in FDUTPA)

26

27    As its twenty-second affirmative defense, Respondent alleges that any finding of

28   liability under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. Ann.

1   §§ 501.201, *et seq.* would violate the Due Process Clause of the Fourteenth Amendment to the

2   United States Constitution, and Article I, Section 9 of the Florida State Constitution, and would

3   violate other state constitutions, because the standards of liability under this statute are unduly

4   vague and subjective, and permit retroactive, random, arbitrary, and capricious punishment that

5   serves no legitimate government interest.

6                       **TWENTY-THIRD AFFIRMATIVE DEFENSE**
                        **(Constitutional Defects with Punitive Damages)**
7

8           As its twenty-third affirmative defense, Respondent alleges that the imposition of

9   punitive damages in this case (a) would violate the Due Process Clauses of the Fifth and

10  Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Florida

11  State Constitution, (b) would constitute an excessive fine under the Excessive Fines Clause of the

12  Eighth Amendment to the United States Constitution and under Article I, Section 17 of the

13  Florida State Constitution (c) would violate the Fourth, Fifth and Sixth Amendments to the

14  United States Constitution; and (d) would violate the Contracts Clause of the United States

15  Constitution.

16                      **TWENTY-FOURTH AFFIRMATIVE DEFENSE**
                        **(Constitutional Defect with Award to Those Not Damaged)**
17

18          As its twenty-fourth affirmative defense, Respondent alleges that to the extent

19  Claimant purports to seek relief on behalf of any person who has not suffered any damages, such

20  as herself and members of the putative class who have not suffered any damages, the Demand and

21  each claim for relief therein violates the right of Verizon Wireless to due process under the

22  Florida and United States Constitutions, and other state constitutions.

23                      **TWENTY-FIFTH AFFIRMATIVE DEFENSE**
                        **(Class Action Inappropriate)**
24

25          As its twenty-fifth affirmative defense, Respondent alleges that Claimant's claims

26  are barred, in whole or in part, because this case is not appropriate for class treatment.

27  / / /

28

1

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Not a Proper Representative)

2

3    As its twenty-sixth affirmative defense, Respondent alleges that Claimant's claims

4    are barred, in whole or in part, because Plaintiff is not a proper representative to bring this action

5    on behalf of any proposed class.

6    ## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (No Injunctive Relief)

7

8    As its twenty-seventh affirmative defense, Respondent alleges that Claimant is not

9    entitled to equitable relief because Claimant has adequate remedies at law, and no threat of harm

10    exists to support a grant of injunctive relief.

11    ## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (No Attorney's Fees)

12

13    As its twenty-eighth affirmative defense, Respondent alleges that to the extent

14    Claimant seeks recovery of attorney's fees, such fees are not recoverable.

15    ## TWENTY-NINTH AFFIRMATIVE DEFENSE
### (No Punitive Damages)

16

17    As its twenty-ninth affirmative defense, Respondent alleges that to the extent

18    Claimant seeks recovery of punitive damages, such damages are not recoverable.

19    ## THIRTIETH AFFIRMATIVE DEFENSE
### (No Restitution or Disgorgement)

20

21    As its thirtieth affirmative defense, Respondent alleges that even if any member of

22    any purported class suffered any injury or damage, which Respondent denies, no such class

23    member is entitled to restitution or disgorgement.

24    ## THIRTY-FIRST AFFIRMATIVE DEFENSE
### (Additional Defenses)

25

26    As its thirty-first affirmative defense, Respondent reserves the right to plead any

27    additional, separate defenses, the availability of which may come to light as the action progresses.

28    / / /

1

**PRAYER**

2      WHEREFORE, Respondent prays for an award as follows:

3           1.    That Claimant takes nothing by way of the Demand for Arbitration;

4           2.    That the Demand for Arbitration be dismissed with prejudice and an award

5 entered in favor of Respondents;

6           3.    That Respondent be awarded its costs of suit;

7           4.    For such other and further relief as the Arbitrator deems just and proper.

8

9  DATED:  July 5, 2005                          MUNGER, TOLLES & OLSON LLP

10

11                                              By: _____

12                                                    JOHN P. HUNT

13                                              Attorneys for Respondent
                                                CELLCO PARTNERSHIP DOING
14                                              BUSINESS AS VERIZON WIRELESS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWERING STATEMENT
TO DEMAND FOR ARBITRATION

Case No. 50 2004 CA 00563 MB-AI

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO:

I, the undersigned, declare: that I am employed in the aforesaid County; I am over the age of 18 and not a party to the within action; my business address is 560 Mission Street, Twenty-Seventh Floor, San Francisco, California 94105-2907.

I hereby certify that on July 5, 2005, I served upon the interested party(ies) in this action the document(s) described as:

**Answering Statement of Cellco Partnership d/b/a Verizon
Wireless to Demand For Arbitration**

☒ By placing ☒ the original and/or ☒ true copies thereof enclosed in sealed envelope(s) addressed as stated on the attached service list.

☒ **BY MAIL (AS INDICATED BELOW)** I caused such envelope(s) to be deposited with postage thereon fully prepaid in the United States mail at a facility regularly maintained by the United States Postal Service at San Francisco, California. I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation dated or postage meter date is more than one day after dated of deposit for mailing, pursuant to this affidavit.

☒ **BY E-MAIL (AS INDICATED BELOW)** By sending a copy in .pdf format electronically via the Internet.

☒ **BY FACSIMILE (AS INDICATED BELOW)** By sending a copy of said document by facsimile machine for instantaneous transmittal via telephone line.

Jayne A. Goldstein, Esq.
MAGER WHITE & GOLDSTEIN LLP
2825 University Drive, Suite 350
Coral Springs, FL 33065
Phone: 954 341 0844
Fax: 954 341 0855
Email: jgoldstein@mwg-law.com

Scott A. Bursor, Esq.
LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, 10th Floor
New York, NY 10018
Phone: 212 989 9113
Fax: 212 989 9163
Email: scott@bursor.com
scott@bursor.com

Ann D. White, Esq.
Michael J. Kane, ESq.
Lee Albert, Esq.
MAGER WHITE & GOLDSTEIN LLP
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Phone: 215 481 0273
Fax: 215 481 0271
Email: awhite@mwg-law.com;
mkane@mwg-law.com; lalbert@mwg-law.com

Vicky Jansson
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
Fax: 401 435 6529
E-mail: janssonv@adr.org
*(original document mailed)*

1109747.1                                  - 1 -

David Pastor, Esq.
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Phone: 781 231 7850
Fax: 781 231 7840
Email: dpastor@gilmanpastor.com

Executed on July 5, 2005, at San Francisco, California.

Marsha Poulin

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

August 24, 2005

VIA FACSIMILE

Scott A. Bursor, Esq.
Law Offices of Scott A. Bursor
500 Seventh Avenue, 10th Floor
New York, NY 10018

Jayne A. Goldstein, Esq.
Mager White & Goldstein, LLP
2825 University Drive, Suite 350
Coral Springs, FL 33065

David A. Coulson, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131

David Pastor, Esq.
Gilman and Pastor LLP
60 State Street, 37th Floor
Boston, MA 02109

John P Hunt, Esq. & Kristin Linsley Myles, Esq.
Munger, Tolles & Olson LLP
560 Mission Street Suite 1900
Twenty-Seventh Floor
San Francisco, CA 94105-2907

Re: 11 494 01274 05
    Patricia Brown, on an individual basis, and also
    on a classwide basis on behalf of others similarly
    situated
    and
    Cellco Partnership d/b/a Verizon Wireless

Dear Counsel:

Inasmuch as there were no objections to the appointment of Eugene Farber, his appointment is hereby confirmed.

The undersigned will be contacting the parties within two (2) days of the date of this letter to schedule the preliminary hearing.

Should you have any questions, please feel free to contact me.

Sincerely,

Vicki A. Jansson
Case Manager
401 431 4780
JanssonV@adr.org

Katharine M. Flanagan
Supervisor
401 431 4714
FlanaganK@adr.org

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION
Class Action Arbitration Tribunal

| | |
|---|---|
| PATRICIA BROWN, on an individual basis, and also on a classwide basis on behalf of others similarly situated, | Case No. 11 494 01274 05 |
| Claimant, | |
| -against- | Arbitrator: Eugene I. Farber |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | |
| Respondent. | |

**CLAIMANT'S MOTION FOR A CLAUSE CONSTRUCTION AWARD CONFIRMING THAT THE APPLICABLE ARBITRATION CLAUSE PERMITS THIS ARBITRATION TO PROCEED ON BEHALF OF A CLASS**

LAW OFFICES OF SCOTT A. BURSOR
500 Seventh Avenue, 10th Floor
New York, NY 10018
(212) 989-9113 (tel)
(212) 989-9163 (fax)
scott@bursor.com

August 24, 2005

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

The Arbitration Clause ................................................................................................ 5

Determination To Be Made Under SRCA Rule 3 ...................................................... 6

Argument ..................................................................................................................... 6

   I.     VERIZON CONCEDES THAT THE AGREEMENT DOES NOT
        PROHIBIT CLASS ARBITRATION ................................................................. 6

   II.    AAA TRIBUNALS HAVE HELD, WITHOUT EXCEPTION, THAT
        ARBITRATION CLAUSES LACKING AN EXPLICIT CLASS
        ACTION WAIVER PERMIT CLASS ARBITRATION ................................... 8

   III.   AT LEAST FOUR TERMS IN THE AGREEMENT PROVIDE FOR
        ARBITRATION OF CLASS ACTION CLAIMS ...................................... 18

   IV.   THE AGREEMENT DOES NOT INCLUDE ANY CLASS ACTION
        WAIVER .......................................................................................................... 20

      A.   Standard Form Of Class Action Waivers ................................................. 21

      B.   Verizon Struck A Class Action Waiver From The Prior Version Of
           Its Customer Agreement ........................................................................... 23

      C.   Verizon Reinserted A Class Action Waiver Into A Subsequent
           Version Of Its Customer Agreement ........................................................ 24

      D.   "On An Individual Basis" Is Ambiguous And Cannot Be Read As A
           Class Action Waiver ................................................................................ 24

         1.   It Is Unclear What Part Of The Clause Is Referenced Or Modified
              By "On An Individual Basis" ........................................................... 25

         2.   The Clause Does *Not* Say "*Only* On An Individual Basis" ................. 26

         3.   The Clause Does Not Use "Waiver" Language And Expressly
              Disclaims Any Waiver Of Rights ..................................................... 27

   V.    PRINCIPLES OF CONTRACT INTERPRETATION COMPEL A
        CONSTRUCTION OF THE AGREEMENT PERMITTING CLASS
        ARBITRATION ............................................................................................ 28

      A.   Any Ambiguity Must Be Construed Against The Drafter ......................... 28

B.    Any Doubts Concerning The Scope Of Arbitrable Issues Should Be Resolved In Favor Of Arbitration .......................................................................... 29

C.    Agreements Should Be Construed To Avoid Unconscionability And Unenforceability ................................................................................................. 30

VI.    THE CONDUCT OF VERIZON AND OTHERS CONFIRMS THAT THE AGREEMENT DOES NOT PROHIBIT CLASS ACTIONS ............................ 31

A.    Verizon's Conduct Confirms The Absence Of A Class Action Waiver.................. 31

B.    Verizon Never Asserted That The Same Clause Prohibits Class Arbitration In The *Kaner* Action ............................................................................ 33

C.    AAA Administrative Decisions Confirm The Absence Of A Class Action Waiver ...................................................................................................... 34

VII.    ALTERNATIVELY, IF ANY PROVISION OF THE AGREEMENT COULD BE CONSTRUED TO PROHIBIT CLASS ACTIONS, VERIZON HAS WAIVED THAT PROVISION ......................................................... 34

Conclusion ...................................................................................................................... 36

Certificate Of Service .................................................................................................... 38

# INDEX OF EXHIBITS

**Tab**

### The Applicable Agreement

Verizon Customer Agreement, Oct. 2002 Version ......................................................................1

### Prior & Subsequent Versions Of The Verizon
### Form Customer Agreement

Verizon Customer Agreement, Nov. 2001 Version ..................................................................2

Verizon Customer Agreement, Jan. 2005 Version ..................................................................3

### Other Wireless Carriers'
### Form Customer Agreements

AT&T Wireless Customer Agreement ......................................................................................4

BellSouth Mobility Customer Agreement ................................................................................5

Cingular Customer Agreement ..................................................................................................6

Pacific Bell Wireless Customer Agreement ............................................................................7

Sprint Customer Agreement Agreement ..................................................................................8

T-Mobile Customer Agreement ................................................................................................9

### AAA Clause Construction Awards

*Allen v. Sports & Fitness Clubs of Am., Inc.*,
AAA Case No. 11 160 03041 04 (Apr. 13, 2005 Clause Construction Award) .........................10

*Awe v. I & M Rail Link, LLC*,
AAA Case No. 11 160 00026 05 (May 24, 2005 Clause Construction Award) .........................11

*Bagpeddler.com v. U.S. Bancorp & Nova Information Systems*,
AAA Case No. 11 181 00322 04 (Sep. 2, 2004 Clause Construction Award) ...........................12

*Barton v. Cottage Homesteads of Am., Inc.*,
AAA Case No. 11 115 02967 04 (May 11, 2005 Clause Construction Award) .........................13

*Budner v. Oats*,
AAA Case No. 11 181 00828 04 (Dec. 20, 2004 Clause Construction Award) .........................14

*Cable Connection, Inc. v. Directv, Inc.*,
AAA Case No. 11 145 00752 04 (Mar. 10, 2005 Clause Construction Award) .........................15

*Cole v. Long John Silver's Restaurants, Inc.*,
AAA Case No. 11 160 00194 04 (Jan. 15, 2004 Clause Construction Award) ...........................16

*Cotton v. Rent-A-Center, Inc.*,
AAA Case No. 11 160 01819 04 (Aug. 12, 2005 Clause Construction Award) .........................17

*Fortuna v. Snap-On Tools Co.*,
AAA Case No. 11 114 01818 04 (Aug. 12, 2005 Clause Construction Award) .........................18

*Garrett v. Rollins, Inc.*,
AAA Case No. 11 181 01663 04 (March 23, 2005 Clause Construction Award) .......................19

*Goldstein v. Ibase Consulting of Fairfield County, LLC*,
AAA Case No. 11 160 02760 03 (Mar. 29, 2004 Clause Construction Award) .........................20

*Grayson v. Rent-A-Center, Inc.*,
AAA Case No. 11 160 01823 04 (August 8, 2005 Clause Construction Award) ........................21

*Hayes v. M.S. Carriers, Inc.*,
AAA Case No. 11 118 02907 04 (June 15, 2005 Clause Construction Award)...........................22

*Hearthside Restaurant, Inc. v. Qwest Dex, Inc.*,
AAA Case No. 11 147 00357 04 (Sep. 2, 2004 Clause Construction Award) ............................23

*Hobby v. Snap-on Tools Co.*,
AAA Case No. 11 114 01884 04 (June 8, 2005 Clause Construction Award)............................24

*Levitt v. Lipper Holding, LLC*,
AAA Case No. 11 168 00663 04 (May 20, 2005 Clause Construction Award)...........................25

*Medina v. GMRI, Inc.*,
AAA Case No. 11 160 02409 04 (July 20, 2005 Clause Construction Award) .........................26

*Milstein v. Protection One Alarm Servs., Inc.*,
AAA Case No. 11 110 00270 04 (Oct. 11, 2004 Clause Construction Award) .........................27

*Rhodes Colleges, Inc. v. Michael Satz*,
AAA Case No. 11 181 02217 04 (June 23, 2005 Clause Construction Award) .........................28

*Sidhu v. GMRI, Inc.*,
AAA Case No. 11 160 02273 04 (June 10, 2005 Clause Construction Award) .........................29

*Smith v. TeleTech Holdings, Inc.*,
AAA Case No. 11 160 02726 04 (Apr. 12, 2005 Clause Construction Award)............................30

*Sutter v. Oxford Health Plans*,
AAA Case No. 18 193 20593 02 (Sep. 23, 2003 Memorandum And Order)..............................31

**Other Documents**

*Campbell v. Airtouch Cellular* Class Action Settlement Agreement  ...........................................32

Defendants' Motion For (1) Stay Of Plaintiff's ETF Claims Pending Outcome Of
Proceedings Before The Federal Communications Commission And (2)
Abatement Of Plaintiff's 'Handset Locking' Claims And Incorporated
Memorandum Of Points And Authorities.......................................................................................33

*Kaner, et al. v. Cellco Partnership d/b/a Verizon Wireless*,
Demand For Class Arbitration.......................................................................................................34

American Arbitration Association Policy on Class Arbitrations...................................................35

6/8/05 Letter from John P. Hunt to Catherine Shanks .................................................................36

7/25/05 Letter from Kristin L. Myles to Judge Maass..................................................................37

Claimant Patricia Brown, by and through her undersigned attorneys, respectfully moves this Class Action Arbitration Tribunal, pursuant to Rule 3 of the Supplementary Rules for Class Arbitration ("SRCA"), for a clause construction award confirming that the applicable arbitration clause permits this arbitration to proceed on behalf of a class.

## Introduction

SRCA Rule 3 requires the arbitrator to "determine as a threshold matter … whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." Here that determination should be easy. The applicable arbitration clause is quite broad, covering "ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT," including controversies or claims that might give rise to a class action. Nothing in the agreement attempts to carve-out or exclude class actions from the scope of the clause. Nor is there any waiver of the right to pursue class actions anywhere in the agreement. On similar facts AAA tribunals have ruled twenty (20) times that arbitration clauses permit class arbitration under Rule 3. To date there are no rulings going the other way.

This case is much easier than any of the twenty that have come before it because here the respondent entirely responsible for drafting the arbitration agreement, Verizon,[1] actually struck a class action waiver from the prior version of the agreement in order to obtain a classwide release in another case. In connection with that effort, Verizon represented to a court that the agreement here "contains *no* express prohibition of class actions."[2] When these facts came to light in the Florida court in which this action was initially filed, Verizon was forced to

---

[1] Respondent Cellco Partnership d/b/a Verizon Wireless is referred to herein as "Verizon."

[2] Verizon's Memorandum Of Law In Support Of Final Approval Of Settlement And In Opposition To Objections in *Campbell v. Airtouch Cellular*, Exh. 37D, at 135 (emphasis in original). *See also id.* at 137 ("the arbitration clause … does not expressly forbid class actions.")

concede the issue and to withdraw its motion to stay this class arbitration.[3]  Based on these facts

and the procedural history of this case, it is impossible to reach any conclusion but that the

agreement here permits class arbitration.

Part I below discusses the events that caused Verizon to concede this issue.

Verizon had moved the Florida court to stay this arbitration on the theory that the parties'

agreement prohibits class arbitration.  However, when the Florida court learned that Verizon had,

in connection with a class action settlement in another case, represented that the agreement

"contains *no* express prohibition of class actions," Verizon was forced to concede the issue and

to withdraw that motion.  *See* 7/25/05 Letter from Kristin L. Myles to Judge Maass, Exh. 37, at

2, *quoting* Verizon's Memorandum Of Law In Support Of Final Approval Of Settlement And In

Opposition To Objections in *Campbell v. Airtouch Cellular*, Exh. 37D, at 135 (emphasis in

original).

Part II below reviews twenty (20) prior clause construction awards issued by

AAA tribunals construing agreements that lack an express class action waiver.  Like this

Tribunal's ruling in *Bagpeddler.com*, every one of those twenty cases construed the agreement to

permit class arbitration.  Not one has ever found that an agreement lacking an express class

action waiver could be construed to prohibit class arbitration under SRCA Rule 3.

Part III below discusses four terms in the agreement that provide for arbitration of

class claims.  These include the broad scope of the arbitration clause providing for arbitration of

"ANY CONTROVERSY OR CLAIM," the provision stating that "**AN ARBITRATOR CAN

AWARD THE SAME DAMAGES AND RELIEF … AS A COURT WOULD**," the

---

[3] *See* 7/25/05 Letter from Kristin L. Myles to Judge Maass, Exh. 37, at 2 ("In light of its
statements in *Campbell*, Verizon Wireless wishes to withdraw its argument to this Court that the
'on an individual basis' language expressly prohibits class arbitrations ….").

provision stating that the agreement "DOESN'T CHANGE YOUR SUBSTANTIVE RIGHTS, JUST THE POTENTIAL FORUMS FOR RESOLVING DISPUTES," and the provision incorporating AAA rules which specifically provide for class arbitration.

To highlight the significance of what the applicable agreement *does not say*, Part IV below discusses express class action waivers included in other wireless companies' customer agreements, and in the prior and subsequent versions of Verizon's own customer agreements. The agreement here does not include any language that even remotely resembles a class action waiver. Part IV also discusses the ambiguities in the phrase "on an individual basis," which Verizon buried toward the end of a convoluted 83-word sentence that says nothing about class actions or any waiver of any right. In the Florida court Verizon strained to portray this four-word phrase as a class action waiver. It isn't. The phrase is ambiguous and does not evidence any waiver of the right to pursue class action claims. Verizon eventually conceded that this language does not prohibit class actions. *See* 7/25/05 Letter from Kristin L. Myles to Judge Maass, Exh. 37, at 2.

Part V below details three important principles of contractual interpretation, each of which compels the conclusion that the agreement here permits class arbitration. These include the requirement that ambiguities be construed against the drafting party, that the scope of arbitration clauses be broadly construed, and that agreements be construed to give meaning and effect to all of their terms.

Part VI below describes the conduct of Verizon and other parties which further evidences the lack of any prohibition on class action claims in the relevant agreement. This includes Verizon's imposition of a class action settlement and classwide release against millions

of customers subject to this agreement – which would obviously be inconsistent with a prohibition on class actions.

In Part VII below, we point out that even if there were a provision in the agreement that could be construed to prohibit class claims – and there is not – Verizon's conduct in procuring a classwide release and attempting to assert that release in this action would amount to a breach, repudiation and waiver of any such provision.

Given all of these circumstances, this case presents the easiest determination under SRCA Rule 3 of any case before it, and probably the easiest of any case that will ever follow.  The text of the agreement, the conduct of the drafter, and every other circumstance in this case overwhelmingly compels the conclusion that the agreement does not prohibit class arbitration.  The Tribunal should promptly make this determination "[u]pon appointment," SRCA Rule 3, so that this action can move forward expeditiously.

## **The Arbitration Clause**

The applicable arbitration clause appears in the October 2002 version of

Verizon's form customer agreement, submitted herewith as Exhibit 1.  It provides, in relevant

part:

> ***Dispute Resolution And Mandatory Arbitration***
> **INSTEAD OF SUING IN COURT, WE EACH AGREE TO SETTLE
> DISPUTES (EXCEPT CERTAIN SMALL CLAIMS) ONLY BY
> ARBITRATION.  THE RULES IN ARBITRATION ARE DIFFERENT.
> THERE'S NO JUDGE OR JURY, AND REVIEW IS LIMITED, BUT AN
> ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF,
> AND MUST HONOR THE SAME LIMITATIONS IN THIS
> AGREEMENT, AS A COURT WOULD.  TO THE FULLEST EXTENT
> PERMITTED BY LAW WE EACH AGREE THAT:**
>
> 1.  THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.
> ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO
> THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS
> SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS
> IN INTEREST, OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR
> IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR
> AGREEMENT, OR ANY ADVERTISING FOR SUCH PRODUCTS OR
> SERVICES, WILL BE SETTLED BY ONE OR MORE NEUTRAL
> ARBITRATORS ON AN INDIVIDUAL BASIS BEFORE THE AMERICAN
> ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU
> ("BBB") AS DESCRIBED BELOW.  (IF YOUR LOCAL SMALL CLAIMS
> COURT OFFERS ARBITRATION, YOU MAY ALSO USE THAT PROCESS
> FOR ANY DISPUTE THAT QUALIFIES.)  THIS DOESN'T CHANGE YOUR
> SUBSTANTIVE RIGHTS, JUST THE POTENTIAL FORUMS FOR
> RESOLVING DISPUTES.

The original version of this clause was presented in a 4-point font (approximately) on the back

pages of Verizon's form customer agreement.  *See* Exh. 1.

## Determination To Be Made Under SRCA Rule 3

"Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award')."  SRCA Rule 3.

## Argument

## I.    VERIZON CONCEDES THAT THE AGREEMENT DOES NOT PROHIBIT CLASS ARBITRATION

Verizon has already conceded that the relevant agreement does not prohibit class arbitration, although Verizon did not come to that concession easily.  A brief review of the procedural history of this action illustrates the point.

Claimant initially filed this class action in a Florida court.  Verizon removed the action to federal court and moved to compel arbitration.  The action was remanded to the state court and Verizon renewed its motion to compel arbitration.  Rather than oppose that motion, claimant instead filed a demand for class arbitration which initiated this proceeding before the AAA.

Verizon responded by desperately trying to prevent this matter from being arbitrated.  First, Verizon's lawyer wrote to AAA administrative staff and falsely stated that "the arbitration agreement in question contains an express prohibition on class claims."  6/8/05 Letter from John P. Hunt to Catherine Shanks, Exh. 36.  Based on that falsehood, the letter urged that "the AAA should not accept Claimant's demand for arbitration."  *Id.*  AAA administrative staff eventually rejected that argument and commenced administration of this case.

Verizon then took an even more desperate step to prevent this arbitration from moving forward.  It filed a motion in the Florida court to stay this arbitration.  That put Verizon

6

in the unique position of having two motions pending before the same court simultaneously seeking to compel and to stay the same arbitration. Verizon explained that it wished to compel only an *individual* arbitration, and it wished to stay any *class* arbitration, again on the ground that the parties' agreement "contains an express prohibition on class claims." *See id.*

During a July 15, 2005 hearing before the Florida court, claimant's counsel urged the court to permit the arbitrator to resolve the class action issue in accordance with the parties' agreement and the AAA Supplementary Rules for Class Arbitrations. Verizon forcefully argued that this Tribunal should not be permitted to make that decision because the agreement unambiguously prohibits class arbitration, and the court, not the arbitrator, should determine that issue as a threshold matter. Claimant's counsel responded that Verizon's argument was inconsistent with arguments it had made in another case, *Campbell v. Airtouch Cellular*, in which Verizon had struck a class action waiver from a prior version of its form customer agreement in order to get a class action settlement approved, and had obtained approval of that class action settlement by representing to the *Campbell* court that the agreement – identical to the agreement here – did not prohibit class actions. Verizon's counsel responded that "at no point in time did someone raise an issue about a class waiver, and then it got taken out, and then Verizon made some kind of argument on that basis. It's just fabricated. It's entirely fabricated." *See* 7/15/05 Hearing Transcript, Exh. 37A, at 51.

It wasn't fabricated. Ten days after that hearing Verizon's counsel was compelled to send a letter to the Florida court correcting the false statements she had made during the July 15 hearing and apologizing to the court. *See* 7/25/05 Letter from Kristin L. Myles to Judge Maass, Exh. 37. In fact Verizon *had* struck the class action waiver from the agreement and then represented to the *Campbell* court that the agreement "does not expressly forbid class actions."

7

*Id.* at 2, *quoting* Verizon's Memorandum Of Law In Support Of Final Approval Of Settlement

And In Opposition To Objections in *Campbell v. Airtouch Cellular*, Exh. 37D, at 137.  In fact,

Verizon *had* represented to the *Campbell* court, with emphasis in original, that the agreement

"contains *no* express prohibition of class actions."  7/25/05 Letter from Kristin L. Myles to Judge

Maass, Exh. 37, at 2, *quoting* Verizon's Memorandum Of Law In Support Of Final Approval Of

Settlement And In Opposition To Objections in *Campbell v. Airtouch Cellular*, Exh. 37D, at 135.

Thus Verizon conceded the point and withdrew its motion to stay this class arbitration, stating:

"In light of its statements in *Campbell*, Verizon Wireless wishes to withdraw its argument to this

Court that the 'on an individual basis' language expressly prohibits class action arbitrations ...."

7/25/05 Letter from Kristin L. Myles to Judge Maass, Exh. 37, at 2.  Ms. Myles then

"apologize[d] for any inconvenience to the Court."  *Id.* at 3.

## II.   AAA TRIBUNALS HAVE HELD, WITHOUT EXCEPTION, THAT ARBITRATION CLAUSES LACKING AN EXPLICIT CLASS ACTION WAIVER PERMIT CLASS ARBITRATION

In *Bagpeddler.com v. U.S. Bancorp & Nova Information Sys.*, AAA Case No. 11

181 00322 04 (Sep. 2, 2004 Clause Construction Award, Exh. 12), this Tribunal held that an

arbitration clause that does not expressly prohibit class arbitration must be construed to permit it.

That ruling was part of what has been described as a "national pattern of clause construction

awards" reaching the same conclusion.  *See Awe v. I & M Rail Link, LLC*, AAA Case No. 11 160

00026 05 (May 24, 2005 Clause Construction Award, Exh. 11), at 14.  Through August 22,

2005, AAA had published twenty (20) clause construction awards construing agreements that do

not include an express class action waiver.  Like this Tribunal's ruling in *Bagpeddler.com*, every

one of those twenty cases construed the agreement to permit class arbitration.  Not one tribunal

has held to the contrary.  A brief description of each of those twenty clause construction awards follows:

      1.      In *Awe v. I & M Rail Link, LLC*, AAA Case No. 11 160 00026 05 (May 24, 2005 Clause Construction Award, Exh. 11), the agreement was "silent regarding the availability of class-wide relief."  *Id.* at 1.  The tribunal found it "doubtful that the question [of class arbitration] was ever considered by the parties."  *Id.* at 13.  The tribunal reviewed the eight reported AAA clause construction decisions then available, all of which construed agreements silent on the question to permit class arbitration.  *Id.* at 14-17.[4]  The tribunal thus concluded that "The arbitration clause in question permits this arbitration to proceed on behalf of a class."  *Id.* at 18.

      2.      In *Bagpeddler.com v. U.S. Bancorp & Nova Information Sys.*, AAA Case No. 11 181 00322 04 (Sep. 2, 2004 Clause Construction Award, Exh. 12), the agreement "d[id] not state explicitly whether representing a class in a class action is a procedural remedy available" to the claimant.  *Id.* at 2.  This Tribunal found the provision to be "silent regarding class actions" and therefore ambiguous.  *Id.* at 5 ("if a contract is silent on a particular issue … the contract will be deemed ambiguous regarding that issue").  This Tribunal noted that "ambiguity in a contract is construed most strongly against the drafter [the respondent]," *id.* at 8, and thus ruled that the clause should be construed to permit classwide arbitration.  This Tribunal also offered two alternate grounds supporting its conclusion.  One, that the agreement's choice of law provision in favor of Georgia law should "be read to include all remedies available under

---

    [4] Since this decision in *Awe*, the tally has gone from 8 to 20, with every one of the 20 reported clause construction awards of AAA tribunals ruling that agreements lacking an express waiver permit class arbitration.

Georgia law, including class actions." *Id.* And two, "that a ruling that the Merchant Agreement precludes class actions might be deemed unconscionable," and thus is "not preferred." *Id.*

3.    In *Barton v. Cottage Homesteads of Am., Inc.*, AAA Case No. 11 115 02967 04 (May 11, 2005 Clause Construction Award, Exh. 13), the agreement was silent regarding class actions. *Id.* at 2. The respondent argued that such silence indicated that "the parties did not agree to arbitrate on a class wide basis. *Id.* The respondent also argued that the language of the arbitration clause was phrased in terms of an "individual purchase agreement," which would be inconsistent with permitting class actions. *Id.* at 3-4. The tribunal rejected both of those arguments and ruled that the agreement "does permit the maintenance of a class action arbitration because the arbitration clause is silent on the subject and not the opposite." *Id.* at 4.

4.    In *Budner v. Oats*, AAA Case No. 11 181 00828 04 (Dec. 20, 2004 Clause Construction Award, Exh. 14), the agreement contained "nothing … that attempts to preclude any distributor from bringing class claims against [respondent] in any forum, whether arbitral or judicial." *Id.* at 8. The tribunal noted: "If [respondent] wanted such a limitation, it could have put it in the contract. It did not." *Id.* Invoking the rule that "[t]he agreement is to be construed against the drafter," *id.*, the tribunal found "no indication of any intention to preclude class claims in arbitration." *Id.* at 9.

5.    In *Cable Connection, Inc. v. Directv, Inc.*, AAA Case No. 11 145 00752 04 (Mar. 10, 2005 Clause Construction Award, Exh. 15), the agreement was "silent with regard to the right to bring a class action." *Id.* at 1. The tribunal could not "ascertain from the agreement that there was any intent on this issue" and ruled that "the clause in question does not forbid class arbitration and therefore … it is permitted." *Id.* at 2.

6.    In *Cole v. Long John Silver's Restaurants, Inc.*, AAA Case No. 11 160 00194 04 (Jan. 15, 2004 Clause Contruction Award, Exh. 16), the agreement was "silent as to whether plaintiffs may enforce their contractual right via a collective or a class action." *Id.* at 1. The tribunal framed the "threshold question" as "whether the contract achieves the objective of a negotiated surrender of the significant procedural and remedial rights attendant to a collective or class action." *Id.* at 3.  The tribunal found that "the silence of the contract as to class-action participation imparts a measure of ambiguity," *id.* at 3, and noted that "[t]o the extent that ambiguity has been introduced into the contract, the ambiguous language 'should be construed liberally and interpreted strongly in favor of the nondrafting party.'" *Id.* at 4, *quoting Green Tree Fin. Corp. v. Bazzle*, 351 S.C. 224, 262 (2002).  The tribunal also expressed concern about "the problem of employing contractual ambiguity to effect a deprivation of significant rights," *id.* at 8, and concluded that "the contract cannot be construed as prohibiting a class or collective action." *Id.* at 10.  The tribunal also offered two additional grounds supporting that conclusion. One, the contract represented that "the arbitrator can award you anything you might seek through a court of law," which would include a "class action remedy." *Id.* at 4.  And two, the tribunal recognized that "principles of unconscionability preclude any compelled waiver of plaintiffs' significant rights to participate in statutorily sanctioned collective or class actions." *Id.* at 8.

7.    In *Fortuna v. Snap-On Tools Co.*, AAA Case No. 11 114 01818 04 (Aug. 12, 2005 Clause Construction Award, Exh. 18), the agreement precluded "consolidation, joinder or the inclusion in any other manner of any person other than the Dealer and Snap-On and any other person in privity with or claim through, in the right of, or on behalf of the Dealer or Snap-on, unless prohibited by applicable law." *Id.* at 5.  The tribunal noted that "[a] class action is similar to joinder and consolidation, but it is a totally separate procedure, wherein a group of

representative plaintiffs bring one action on behalf of many parties who are similarly situated."
*Id.* at 7.  Thus the tribunal found the clause ambiguous, construed it against the drafting party,
and ruled that "class actions are found not to be prohibited by the contract, and therefore
permissible in this arbitration."  *Id.* at 8.  The tribunal further reasoned that "federal courts have
also treated class action as a right," and that any waiver of such right  "must be clearly and
unambiguously established."  *Id.* at 9.  Given the ambiguity in the clause, such a clear waiver
could not be established.  *Id.* at 9-10.

8.      In *Garrett v. Rollins, Inc.*, AAA Case No. 11 181 01663 04 (March 23,
2005 Clause Construction Award, Exh. 19), the agreement provided for arbitration of "any
action, dispute, claim or controversy of any kind," and was otherwise silent concerning class
actions.  *Id.* at 1.  The tribunal "conclude[d] that the arbitration agreement … permits class-
action arbitration.  The language of the Agreement does not implicitly or explicitly preclude
class actions.  We interpret the broad sweeping language of the Agreement to include
consideration of class action issues."  *Id.* at 6.

9.      In *Goldstein v. Ibase Consulting of Fairfield County, LLC*, AAA Case
No. 11 160 02760 03 (Mar. 29, 2004 Clause Construction Award, Exh. 20), "although the
employment contract itself [was] silent on whether a class or collective action may be
maintained, the [AAA] rules it incorporates allow such an action."  *Id.* at 2.  The tribunal also
noted that "those cases which hold that contract provisions prohibiting class action treatment are
unconscionable are persuasive."  *Id.* at 2, *citing Szetela v. Discover Bank*, 97 Cal. App. 4th 1094,
118 Cal. Rptr.2d 862 (Cal. App. 2002), *cert. denied*, 537 U.S. 1226 (2003), and *Ting v. AT&T
Corp.*, 319 F.3d 1126 (9th Cir. 2003).  Thus the tribunal held that "[t]he contract cannot be
construed as prohibiting a class or collective action."  *Id.* at 4.

10.     In *Grayson v. Rent-A-Center, Inc.*, AAA Case No. 11 160 01823 04

(August 8, 2005 Clause Construction Award, Exh. 21), the agreement had "no provision

pertaining to class arbitration and also [wa]s silent on the matter of arbitration consolidation."

*Id.* at 2.  The tribunal noted that

> "As of August 1, 2005, there were 15 clause construction opinions available on
> the AAA website.  Each of these cases involved arbitration agreements that were
> silent as to class arbitrations.  In each of these cases the arbitrators found that the
> arbitration agreements did not preclude class actions."  *Id.* at 3.[5]

The tribunal also noted that

> "The reasons why an adhesion contract such as the one involved in this case,
> which is silent concerning the matter of class arbitration, should be construed as
> sufficiently ambiguous to permit class certification under the appropriate
> circumstances are well articulated in *Keating v. Superior Court*, 645 P.2d 1192
> (Sup. Ct. Cal. 1982) [sic] *rev'd in part Southland Corp. v. Keating*, 465 U.S. 1
> (1984), and in the opinion of the South Carolina Supreme Court in *Bazzle v.
> Greentree Financial Corp.*, 469 S.E.2d 349 (2002), *rev'd in Greentree Financial
> Corp. v. Bazzle, supra*."  *Id.* at 5.

11.     In *Hayes v. M.S. Carriers, Inc.*, AAA Case No. 11 118 02907 04 (June 15,

2005 Clause Construction Award, Exh. 22), the agreement was "silent on the issue of class

arbitration."  *Id.* at 5.  The respondent had argued that this silence showed that "there was no

meeting of the minds on [class arbitration] and it cannot be held to be part of the agreement of

the parties."  *Id.* at 5.  The tribunal rejected that argument:

> "If [respondent's argument were] accepted … the entire arbitration agreement
> must fail, and the parties would be left with no agreement to arbitration [sic].  …
> If there was no meeting of the minds as to what kind of arbitration to have, there
> would be no meeting of the minds at all on the issue of arbitration and, therefore,
> no enforceable agreement to arbitrate."  *Id.*

The agreement contained a broad arbitration clause, providing that "Any disagreement or

litigation arising under this Contract shall be referred to mandatory arbitration."  *Id.* at 6.  The

---

[5] Since this ruling was made the tally has increased to 20 reported clause construction awards
of AAA tribunals ruling that agreements lacking an express waiver permit class arbitration.

tribunal reasoned that since both "state procedure and federal procedure provide for class action

litigation, applying the natural and ordinary meaning to 'litigation' results in construing the term

to include class actions." *Id.* The tribunal buttressed this conclusion as follows:

> If on the other hand, one wished to quibble with this interpretation and urge that
> the clause is ambiguous, then the rule that the ambiguity should be construed
> against the drafter should be applied. In this case, the clause is to be construed in
> favor of the [claimant's] interpretation that class arbitration is to be permitted, and
> against the [respondent's] preferred reading that class arbitration is not permitted
> because the [respondent] drafted the provision." *Id.* at 6.

        12.    In *Hearthside Restaurant, Inc. v. Qwest Dex, Inc.*, AAA Case

No. 11 147 00357 04 (Sep. 2, 2004 Clause Construction Award, Exh. 23), the agreement "d[id]

not specifically provide for class action arbitration. In other words, it is 'silent' with regard to

that subject." *Id.* at 2. The tribunal expressed its belief that Minnesota law, in accordance with

*Bazzle*, "will ultimately permit class action claims where there is no express prohibition or

waiver of class action arbitration." *Id.* at 3. The tribunal ruled that "the contract cannot be

construed as prohibiting a class or collective action." *Id.* at 4.

        13.    In *Hobby v. Snap-on Tools Co.*, AAA Case No. 11 114 01884 04 (June 8,

2005 Clause Construction Award, Exh. 24), the agreement stated:

> "Unless prohibited by applicable law, (i) no arbitration under [this clause] shall
> include, by consolidation, joinder or in any other manner, any person other than
> Standard Franchisee and Snap-on and any other person in privity with or claiming
> through, in the right of or on behalf of Standard Franchisee or Snap-on, unless
> both Standard Franchisee and Snap-on consent in writing …" *Id.* at 4.

The tribunal found this clause ambiguous:

> "In my view, the plurality decision in *Bazzle* places the burden on any party
> seeking to use a mandatory arbitration clause as a bar to class treatment of claims
> to establish such 'intent' by the clear expression of the language of the contract.
> Snap-on Tool has not and cannot, in my view, meet that burden based on the
> language of its present Standard Franchise Agreement. Snap-on Tools argues that
> although the words 'class action' do not appear in the text of Section 25 [the
> arbitration clause] of the Standard Franchise Agreement, the phrase 'or in any

other manner' was clearly intended to include class actions within the prohibition.
…

It is entirely appropriate to read the words 'in any other manner' as precluding a procedure such as the transfer of multiple claims by different franchisees against Snap-on tools to a single arbitrator without consolidation or joinder. …

On the other hand, the language 'in the right of or on behalf of Standard Franchisee or Tools' can certainly be interpreted to permit class treatment, with absent members of a putative class given an opportunity to opt out of any class that might be certified. …

At the very least, Article 25 [the arbitration clause] is ambiguous and therefore must be construed against Snap-on Tools.  This interpretation has the added salutary effect of resolving this unique dispute about the scope of arbitration to include the broadest scope of substantive and procedural issues within the arbitration agreement."  *Id.* at 10-11.

Thus the tribunal held that the agreement "does not preclude class treatment of claims."  *Id.* at 12.

14.    In *Levitt v. Lipper Holding, LLC*, AAA Case No. 11 168 00663 04 (May 20, 2005 Clause Construction Award, Exh. 25), the agreement was "silent regarding the possibility of a class action in arbitration."  *Id.* at 15.  The tribunal found the agreement "to be unambiguous and the plain meaning of the arbitration provision of the contract – providing for arbitration of 'all disputes and questions whatsoever' – to be sufficiently broad as to include class action claims."  *Id.* at 16.  Thus, the tribunal ruled that the agreement "does not forbid the arbitration to proceed on behalf of a class."  *Id.* at 19.

15.    In *Medina v. GMRI, Inc.*, AAA Case No. 11 160 02409 04 (July 20, 2005 Clause Construction Award, Exh. 26), the agreement did not "specifically allow or prohibit class arbitration."  *Id.* at 4.  The tribunal reasoned that "If any ambiguity exists about how [the parties'] silence on this subject should be interpreted, the general rules of contract interpretation would compel this silence be interpreted against the drafter and/or the Party who would most

benefit from silence being found to preclude class action arbitration.  …  Thus, this 'silence' can and should be interpreted to allow rather than preclude such proceedings." *Id.* at 5.

16.  In *Milstein v. Protection One Alarm Servs., Inc.*, AAA Case No. 11 110 00270 04 (Oct. 11, 2004 Clause Construction Award, Exh. 27), the agreement provided for arbitration of "any dispute." *Id.* at 4.  The tribunal determined that it was "reasonable to conclude, in interpreting this Agreement that, unless excluded, a dispute giving rise to a class action was included in the plain meaning of 'any dispute.'  It would also seem reasonable to conclude that if the parties intended to exclude disputes involving class actions, the Agreement would have included language to that effect." *Id.* at 5.  The tribunal also reasoned "that exclusion of class arbitration must be a knowing bargained for exchange and silence does not support a knowing waiver." *Id.* at 6.  The tribunal thus ruled that the clause "permits this arbitration to proceed on behalf of a class." *Id.* at 8.

17.  In *Rhodes Colleges, Inc. v. Michael Satz*, AAA Case No. 11 181 02217 04 (June 23, 2005 Clause Construction Award, Exh. 28), the agreement provided for arbitration of "any dispute … no matter how described, pleaded or styled." *Id.* at 6.  The tribunal initially entered an order stating that "[u]nless there is applicable law to the contrary – a question that has not been briefed, it would appear unquestionable that a class action arbitration is permitted by the agreement." *Id.* at 10.  After briefing and the respondent's failure to identify any Florida authority to the contrary, the tribunal found that the agreement could be "fairly read as intended to sweep every possible claim or proceeding from court and into arbitration.  …  Therefore, the arbitrator concludes that the language does what it purports to do and permits arbitration under the provision to be brought on behalf of a class." *Id.* at 10-11.

18.     In *Sidhu v. GMRI, Inc.*, AAA Case No. 11 160 02273 04 (June 10, 2005 Clause Construction Award, Exh. 29), the agreement provided for arbitration of "all claims for wages or other compensation due the employee," but was otherwise silent with respect to class arbitration. *Id.* at 1; *see also id.* at 2 n.1 (noting that the agreement "makes no specific reference to class arbitration"). The tribunal "conclude[d] that the [agreement] is ambiguous with respect to the issue of whether its wording permits individual claims to be consolidated in a class arbitration." *Id.* at 2. The tribunal invoked the principle of construing ambiguity against the drafter, and concluded that the agreement "permits class arbitration." *Id.* at 2-3.

19.     In *Smith v. TeleTech Holdings, Inc.*, AAA Case No. 11 160 02726 04 (Apr. 12, 2005 Clause Construction Award, Exh. 30), the agreement was "silent on the issue of collective action." *Id.* at 2. However, the arbitration clause was quite broad, calling for arbitration of "any disputes," and granting the arbitrator the power to award "any relief … as may be authorized by law." *Id.* The agreement also stated that it was "not intended to effect or waive the substantive legal rights" of the parties. *Id.* The tribunal found "ambiguity in the agreement with respect to the parties' intent to permit a class arbitration." *Id.* at 3. Construing the ambiguity "against the drafter," the tribunal found "that the arbitration clause permits a collective arbitration and a class arbitration." *Id.*

20.     In *Sutter v. Oxford Health Plans*, AAA Case No. 18 193 20593 02 (Sep. 23, 2003 Memorandum And Order, Exh. 31), the agreement prohibited filing any "civil action concerning any dispute arising under this agreement" in any court, and provided for arbitration of "all such disputes." *Id.* at 3-4. Based on this language, the tribunal found

> "that the arbitration clause must have been intended to authorize class actions in arbitration. Indeed, to avoid a finding that such was the parties' intention, it would be necessary for there to be an express exception for class actions in the prohibition. Such a carve-out cannot be inferred absent some clear manifestation

17

of such intent.  Similarly, that class actions in court are absolutely prohibited by the first part of the clause but are at the same time not allowed under the second part would mean that class actions are not possible in any forum.  In my view, that reading cannot be inferred in the absence of a clear expression that such a bizarre result was intended."  *Id.* at 4-5.

Thus, in 20 of 20 prior cases addressing arbitration clauses that lacked an express class action wavier, AAA tribunals have held that such clauses permit class arbitration.  The same result should obtain here.[6]

## III.    AT LEAST FOUR TERMS IN THE AGREEMENT PROVIDE FOR ARBITRATION OF CLASS ACTION CLAIMS

Although the agreement in this case does not specifically mention class actions, in arbitration or otherwise, there are at least four terms in the agreement that should be construed to provide for arbitration of class action claims.

*First*, the agreement provides for arbitration of "ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT."  This is a broad arbitration clause.  Certainly broad enough to encompass controversies or claims that might give rise to a class action claim.  And AAA tribunals construing similarly broad clauses in *Hayes*, *Levitt*, *Milstein*, *Rhodes College*, *Smith*, and *Sutter* have found that such language supports

---

[6] In addition to the foregoing twenty cases, there are two additional clause construction awards published on AAA's docket.  In *Cotton v. Rent-A-Center, Inc.*, AAA Case No. 11 160 01819 04 (Aug. 12, 2005 Clause Construction Award, Exh. 17), the tribunal ruled that the applicable clause permitted class arbitration because a court order referred the matter to arbitration "with the understanding that Respondents may *not* assert that the arbitration clause precludes class action claims."  *Id.* at 1 (emphasis in original).  The tribunal thus entered a clause construction award in claimant's favor without even permitting briefing on the issue.  *Id.*  And in *Allen v. Sports & Fitness Clubs of Am., Inc.*, AAA Case No. 11 160 03041 04 (Apr. 13, 2005 Clause Construction Award, Exh. 10), the agreement explicitly prohibited class arbitration, stating:  "Unless controlling legal authority requires otherwise, there shall be no right or authority for any dispute to be heard or arbitrated on a class action basis."  *Id.* at 9.  The tribunal determined that this class action waiver was "unenforceable because it is both procedurally and substantively unconscionable."  *Id.* at 13.  The tribunal then determined that "Stripped of the unconscionable bar on class arbitration, the arbitration agreement here must then be construed to permit class arbitration."  *Id.*

18

arbitration of class claims.[7]  Moreover, while the agreement here applies to "any controversy or claim," there is no language carving out any type of dispute from the broad reach of the arbitration clause.  As AAA tribunals have recognized in *Budner*, *Milstein*, and *Sutter*, if parties wished to carve-out class actions from the arbitration clause they would do so explicitly.[8]  And indeed here, where Verizon has wished to prohibit class actions it *has* done so explicitly in prior and subsequent versions of its customer agreement.  *See* Parts IV.B and IV.C, below.  That Verizon did not include any such prohibition in *this* agreement speaks volumes.

    *Second*, the agreement states that "**AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF … AS A COURT WOULD**."  Certification of class actions, class damages and class relief can be awarded in nearly all courts.  Thus AAA tribunals have construed such language to permit class arbitration.  *See, e.g.*, *Cole*, Exh. 16, at 4 (agreement stating that "the arbitrator can award you anything you might seek through a court of law" construed to permit a "class action remedy"); *Smith*, Exh. 30, at 3 (agreement granting the

---

[7] *See Hayes*, Exh. 16 at 6 (construing an arbitration clause covering "Any disagreement or litigation" to permit class arbitration); *Levitt*, Exh. 19, at 19 (construing an arbitration clause "providing for arbitration of 'all disputes and questions whatsoever' … to be sufficiently broad as to include class action claims"); *Milstein*, Exh. 20, at 5 (holding that "a dispute giving rise to a class action was included in the plain meaning of [an arbitration clause covering] 'any dispute'"); *Rhodes College*, Exh. 28 (construing an arbitration clause covering "any dispute … no matter how described, pleaded or styled" to permit class arbitration); *Smith*, Exh. 21, at 2 (construing an arbitration clause covering "any disputes" to permit class arbitration); *Sutter*, Exh. 22, at 3-5 (holding that an arbitration clause "must have been intended to authorize class actions in arbitration" because it covers "all … disputes").

[8] *See Budner*, Exh. 14, at 8 ("If [respondent] wanted such a limitation, it could have put it in the contract.  It did not."); *Milstein*, Exh. 27, at 5 ("It would also seem reasonable to conclude that if the parties intended to exclude disputes involving class actions, the Agreement would have included language to that effect."); *Sutter*, Exh. 31, at 4-5 ("Indeed, to avoid a finding that such was the parties' intention, it would be necessary for there to be an express exception for class actions in the prohibition.").

arbitrator the power to award "any relief … as may be authorized by law" construed to permit class arbitration).

      *Third*, the agreement states that it "DOESN'T CHANGE YOUR SUBSTANTIVE RIGHTS, JUST THE POTENTIAL FORUMS FOR RESOLVING DISPUTES." If claimant had brought this action in either the federal or state courts in Florida, she would have the right to pursue it as a class action. *See* Fla. R. Civ. P. 1.220 and Fed. R. Civ. P. 23. The agreement preserves that right in an arbitral forum. *Cf. Hayes*, Exh. 22, at 6 (since both "state procedure and federal procedure provide for class action litigation," arbitration clause covering any "litigation" construed to permit class arbitration); *Bagpeddler.com*, Exh. 12, at 8 (choice of law provision in favor of Georgia law construed "to include all remedies available under Georgia law, including class actions").

      *Fourth*, the agreement provides for arbitration under the AAA rules, which specifically provide for class actions. *See* SRCA, Rule 1(a) ("These Supplementary Rules for Class Arbitrations … shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ('AAA') where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules."); *Goldstein*, Exh. 20, at 2 (construing an arbitration clause as permitting class arbitration because "the [AAA] rules it incorporates allow such an action").

## IV.    THE AGREEMENT DOES NOT INCLUDE ANY CLASS ACTION WAIVER

      The right to pursue a class action is a significant substantive, procedural and remedial right. Since implied waivers of important rights are disfavored, a waiver of a right to pursue a class action must be explicit, and must clearly evidence "a negotiated surrender of the

significant procedural and remedial rights attendant to a collective or class action." *Cole*, Exh. 16, at 3. *See also Milstein*, Exh. 27, at 6 ("exclusion of class arbitration must be a knowing bargained for exchange and silence does not support a knowing waiver").[9] But here, the agreement contains no explicit waiver of any rights, and does not even come close to evidencing a "negotiated surrender" or "knowing waiver" of the right to pursue a class action claim.

To illustrate the importance of what this agreement *does not say*, we first set forth, in Part A below, the standard form of class action waivers that many other wireless carriers have included in their customer agreements. Verizon chose not to use any such language in the agreement here. In Parts B and C below, we show that Verizon has employed similar class action waivers in versions of its form customer agreement that both pre-date and post-date the agreement at issue here. This demonstrates that Verizon knew how to draft a clear prohibition on class claims, but chose not to. In Part D below, we show that the phrase "on an individual basis" is ambiguous and cannot be construed as a class action waiver. Verizon's decision to bury that ambiguous phrase toward the end of a convoluted 83-word sentence that says nothing about class actions or class arbitration prevented any "knowing waiver" or "negotiated surrender" of the right to bring a class action.

## A.    Standard Form Of Class Action Waivers

Class action waivers in arbitration agreements typically take the form of a prohibition on "class actions," "representative" or "class" claims, or "consolidation" of claims. The following examples, all from wireless companies' customer agreements, are illustrative:

---

[9]*See also Hobby*, Exh. 18, at 10 ("In my view, the plurality decision in *Bazzle* places the burden on any party seeking to use a mandatory arbitration clause as a bar to class treatment of claims to establish such 'intent' by the clear expression of the language in the contract."); *Sutter*, Exh. 22, at 4-5 ("[I]t would be necessary for there to be an express exception for class actions in the prohibition. Such a carve-out cannot be inferred absent some clear manifestation of such intent.").

- "**Arbitration Procedures.**  An arbitrator may not … order consolidation or class arbitration ….
  "**Waiver of Punitive Damage Claims and Class Actions.**  …  you and we both waive … any right to pursue any claims on a class or consolidated basis or in a representative capacity."  AT&T Wireless Customer Agreement, Exh. 4 (excerpt).

- "**COMPANY AND CUSTOMER AGREE THAT NO ARBITRATOR HAS THE AUTHORITY TO … ORDER CONSOLIDATION OR CLASS ARBITRATION.**"  BellSouth Mobility Customer Agreement, Exh. 5.

- "You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding.  Further, you agree that the arbitrator may not consolidate proceedings on more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding …"  Cingular Customer Agreement, Exh. 6 (excerpt).

- "**EVEN IF APPLICABLE LAW PERMITS CLASS ACTIONS OR CLASS ARBITRATION, YOU WAIVE ANY RIGHT TO PURSUE ON A CLASS BASIS ANY CONTROVERSY OR CLAIM … AGAINST US, OR ANY OF OUR AFFILIATES, AND WE WAIVE THE SAME RIGHTS WITH REGARD TO ANY SUCH CONTROVERSY OR CLAIM AGAINST YOU.**" Pacific Bell Wireless Customer Agreement, Exh. 7 (excerpt).

- "YOU AND SPRINT FURTHER AGREE THAT NEITHER SPRINT NOR YOU WILL JOIN ANY CLAIM WITH THE CLAIM OF ANY OTHER PERSON OR ENTITY IN A LAWSUIT, ARBITRATION OR OTHER PROCEEDING; THAT NO CLAIM EITHER SPRINT OR YOU HAS AGAINST THE OTHER SHALL BE RESOLVED ON A CLASS-WIDE BASIS; AND THAT NEITHER SPRINT NOR YOU WILL ASSERT A CLAIM IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANYONE ELSE."  Sprint Customer Agreement, Exh. 8.

- "YOU ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF … PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER IN A CLASS ACTION.  …  YOU AND WE BOTH WAIVE ANY … RIGHT TO PURSUE, OR PARTICIPATE AS A PLAINTIFF OR AS A CLASS MEMBER IN, [sic] CLAIMS ON A CLASSWIDE, CONSOLIDATED, OR REPRESENTATIVE BASIS."  T-Mobile Customer Agreement, Exh. 9.

These examples illustrate the type of clear, unmistakable, and well known terms that are used to

prohibit classwide proceedings in many form agreements imposed by wireless carriers.  Yet none

of these terms appears in the agreement at issue here.  Nor does the agreement contain any

language that is even remotely similar to these class action waivers.

>    **B.**    **Verizon Struck A Class Action Waiver From The Prior Version Of Its**
>    **Customer Agreement**

Just as other wireless companies know how to draft a class action waiver, so too

does Verizon.  Indeed, the November 2001 version of Verizon's form customer agreement –

which predates the October 2002 version at issue here – included an explicit class action waiver,

stating:  "**EVEN IF A LAW OR AN ARBITRATION RULE WOULD PERMIT A CLASS**

**ACTION OR A CLASS ARBITRATION, WE EACH WAIVE ANY RIGHT TO SUCH A**

**PROCEDURE.**"  (Exh. 2.)  But the agreement at issue here – the October 2002 version (Exh. 1)

– does not include such a term.

It appears that Verizon removed the class action waiver from its customer

agreement in order to obtain a classwide release through the class action settlement in *Campbell*

*v. Airtouch Cellular*.  That settlement (Exh. 32) purports to grant Verizon a nationwide classwide

release of a broad range of claims.  Different iterations of the *Campbell* settlement were

vigorously opposed by consumer groups, including Consumers Union and Wireless Consumers

Alliance, as well as by individual consumers, though a revised settlement was ultimately

approved by the trial court.[10]  Verizon's use of the class action device to obtain the classwide

release in the *Campbell* settlement obviously would have been inconsistent with Verizon's

waiver of "any right to such a procedure" under the terms of the November 2001 version of

Verizon's customer agreement.  Thus the objectors to the *Campbell* settlement could have

---

[10]Some of the undersigned counsel represented a number of objectors to the *Campbell*
settlement who defeated the initial settlement.  Some of those objectors then supported a revised
settlement that ultimately gained the approval of the trial court.  Some did not support the revised
settlement.  At least one is presently appealing the order that approved the revised settlement.

invoked that waiver to prevent approval of the *Campbell* settlement.  It appears that Verizon anticipated such an attack and removed the class action waiver from its customer agreement to prevent it.

Then, having struck the class action waiver, Verizon twice emphasized to the *Campbell* court that the agreement did not prohibit class actions.  *See* Verizon's Memorandum Of Law In Support Of Final Approval Of Settlement And In Opposition To Objections in *Campbell v. Airtouch Cellular*, Exh. 37D, at 135 (stating that the arbitration clause "contains *no* express prohibition of class actions") (emphasis in original); *id.* at 137 ("the arbitration clause … does not expressly forbid class actions.").

**C.**    **Verizon Reinserted A Class Action Waiver Into A Subsequent Version Of Its Customer Agreement**

After the *Campbell* class action settlement was approved Verizon amended its service agreement again in January 2005 to reinsert a class action waiver.  The January 2005 version states:  "**THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF [AAA] PROCEDURES OR RULES WOULD.**"  (Exh. 3.)  But again, that term does not appear in the agreement at issue here.  (Exh. 1.)

**D.**    **"On An Individual Basis" Is Ambiguous And Cannot Be Read As A Class Action Waiver**

Verizon had argued to the Florida court that the phrase "on an individual basis" – four words buried in an 83-word sentence that says nothing about class actions or a waiver of any rights – should be construed to prohibit classwide arbitration.  Verizon was then forced to withdraw that argument and concede the issue given its prior inconsistent statements in the *Campbell* action.  *See* Part I, *supra*.  Moreover, even leaving that concession aside for the moment, Verizon's argument was wrong from the start.  It is unclear what the phrase "on an

individual basis" was intended to mean, and there is no indication that it had anything to do with class actions or class arbitrations.

> **1.**     **It Is Unclear What Part Of The Clause Is Referenced Or Modified By "On An Individual Basis"**

The four-word phrase is buried toward the end of an 83-word sentence:

> ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT, OR ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS ON AN INDIVIDUAL BASIS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB") AS DESCRIBED BELOW.

The 83-word sentence has 4 commas and 13 instances of the word "or." Some are conjunctive ors. Some are disjunctive ors. Some of the ors are ambiguous as to whether they are conjunctive or disjunctive. There is no mention of class actions, class arbitration, or consolidation of claims. Nor is there any mention of any waiver of any right.

There is also no reference to the customer anywhere in the 83-word sentence. Elsewhere the agreement uses the term "you" or "your" to refer to the customer (*e.g.*, "*You* represent that you're at least 18 years old and have the legal capacity to accept this agreement." and "This doesn't change *your* substantive rights ….") (emphasis added). In some instances the agreement uses the word "we" to refer to both the customer and Verizon (*e.g.*, "Instead of suing in court, *we* each agree to settle disputes … only by arbitration.") (emphasis added). Since the 83-word sentence does not use the terms "you," "your," or "we," it does not refer to the customer at all. This suggests that the phrase "on an individual basis" must be referring to something other than the customer. Something actually in the sentence.

There are several clauses within the 83-word sentence that might be referred to or modified by "on an individual basis." For example, it might modify the phrase "us or any of our affiliates or predecessors in interest," in order to state a requirement that claims against Verizon must be brought separately from claims against Verizon's "affiliates or predecessors in interest." It might modify the phrase "product or service … or any advertising," such that claims concerning different products or services or advertising must be brought separately from claims concerning other products or services or advertising. It might modify the phrase "one or more neutral arbitrators," suggesting that each arbitrator must make an individual decision. Or it might modify the phrase "AAA or BBB" such that a claim must be brought before one or the other of those organizations, but not both. The grammar and syntax of the 83-word sentence make it impossible to determine which of these phrases is modified by "on an individual basis." But none of them have anything to do with class actions or class arbitration.

## 2.  The Clause Does *Not* Say "*Only* On An Individual Basis"

Even assuming *arguendo* that the phrase "on an individual basis" could be construed as Verizon had urged, to refer to the customer individually rather than as a class representative, it would still be ambiguous because there is nothing in the text to indicate whether such a requirement would prohibit also bringing claims as a class representative. In every class action the class representative brings claims in both an individual capacity and as a class representative. Captions in class actions always list the plaintiff's name followed by "individually and on behalf of others similarly situated" (or some analogous phrase) to indicate that the action is brought in a dual capacity. The arbitration demand here is even more explicit, captioned "Patricia Brown, on an individual basis, and also on a classwide basis on behalf of others similarly situated," and stating at page 1 that the claimant "brings this action on an

individual basis on behalf of herself and on a classwide basis on behalf of those similarly situated."

The fact that the plaintiff in a class action always acts in this dual role demonstrates that there is no inconsistency between bringing an action "on an individual basis" and as a class representative. Thus a requirement that an action be brought "on an individual basis," standing alone, cannot be read to preclude also bringing the same action on a classwide basis. That is why, for example, Cingular's class action waiver (Exh. 6) states: "YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding." Cingular's clause differs significantly from the clause at issue here because it uses the word "only." Cingular's class action waiver states that claims must be brought "*only* in your … individual capacity" (emphasis added). The use of the word "only" excludes claims brought in any other capacity (*e.g.*, as a class representative). But the clause at issue here does not use the word "only" or any other term suggesting exclusivity in connection with the phrase "on an individual basis." Moreoever Cingular's clause explicitly adds: "and not as a plaintiff or class member in any purported class or representative proceeding." The clause at issue here, on the other hand, says nothing about class actions.

### 3.    The Clause Does Not Use "Waiver" Language And Expressly Disclaims Any Waiver Of Rights

The clause also does not use the language of waiver that one would expect to see if the clause were meant to waive an important right. *Compare* AT&T Customer Agreement (Exh. 4) ("**Waiver of … Class Actions**"); Pacific Bell Wireless Customer Agreement (Exh. 7) ("**YOU WAIVE ANY RIGHT TO PURSUE ON A CLASS BASIS ANY CONTROVERSY** …"); T-Mobile Customer Agreement (Exh. 9) ("THIS ARBITRATION

PROVISION CONSTITUTES A WAIVER OF … PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER IN A CLASS ACTION.").

Moreover, the phrase "on an individual basis" is sandwiched between anti-waiver language.  It is preceded by "**AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF … AS A COURT WOULD.**"  And it is followed by:  "THIS DOESN'T CHANGE YOUR SUBSTANTIVE RIGHTS, JUST THE POTENTIAL FORUMS FOR RESOLVING DISPUTES."  Both of these statements confirm that the customer is not waiving any rights (*e.g.*, the right to bring a class action) since the arbitrator can award the "same damages and relief" (*e.g.*, class certification, and classwide damages) "as a court would."  This language negates any possible implication of a knowing waiver of the right to pursue a class action.  *See, e.g.*, *Cole*, Exh. 16, at 3 (no waiver absent clear evidence of "a negotiated surrender of the significant procedural and remedial rights attendant to a collective or class action"); *Milstein*, Exh. 27, at 6 ("exclusion of class arbitration must be a knowing bargained for exchange and silence does not support a knowing waiver").

**V.    PRINCIPLES OF CONTRACT INTERPRETATION COMPEL A CONSTRUCTION OF THE AGREEMENT PERMITTING CLASS ARBITRATION**

Three principles of contract interpretation – (i) construing ambiguity against the drafter, (ii) broadly construing the scope of arbitration clauses, and (iii) construing agreements to give meaning and effect to all of their terms – all apply here, and all support a construction of the relevant agreement permitting class arbitration.

**A.    <u>Any Ambiguity Must Be Construed Against The Drafter</u>**

Verizon drafted this form agreement and imposed it on every customer on a take-it-or-leave-it basis, with the customer's assent presumed through mere use of a cellular

telephone.  There can be no doubt that this is a contract of adhesion drafted entirely by Verizon.

As such, any ambiguity in the agreement must be construed against Verizon.  *See, e.g.*,

Restatement (Second) of Contracts § 206 ("In choosing among the reasonable meanings of a

promise or agreement or a term thereof, that meaning is generally preferred which operates

against the party who supplies the words or from whom a writing otherwise proceeds."); *Pasteur*

*Health Plan, Inc. v. Salazar*, 658 So.2d 543, 545 (Fla. 3d DCA 1995) ("any ambiguities and

omissions should be construed in favor of [the non-drafting party]"), *rev. denied* 666 So.2d 901

(Fla. 1996); *Gostinelli v. Stein*, 794 N.Y.S.2d 759, 762 (4th Dept. 2005) ("any ambiguity … must

be construed against the drafter").  AAA tribunals have invoked this principle in

*Bagpeddler.com, Budner, Cole, Hayes, Hobby* and *Smith* to hold that clauses that are silent or

otherwise ambiguous regarding class arbitration must be construed to permit it where the party

that drafted the agreement opposes class arbitration.[11]  The same principle should be applied

here, and the same result should obtain.

     **B.**     **Any Doubts Concerning The Scope Of Arbitrable Issues Should Be Resolved In Favor Of Arbitration**

     When interpreting the scope of an arbitration provision, the Supreme Court has

instructed that "due regard must be given to the federal policy favoring arbitration, and

ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).  "[A]n order to arbitrate

---

[11] *Bagpeddler.com*, Exh. 12, at 8 ("ambiguity in a contract is construed most strongly against the drafter"); *Budner*, Exh. 14, at 8 ("The agreement is to be construed against the drafter."); *Cole*, Exh. 16, at 4 ("To the extent that ambiguity has been introduced into the contract, the ambiguous language 'should be construed liberally and interpreted strongly in favor of the nondrafting party.") (*quoting Green Tree Fin. Corp. v. Bazzle*, 351 S.C. 224, 262 (2002)); *Hayes*, Exh. 22, at 6 ("ambiguity should be construed against the drafter"); *Hobby*, Exh. 24, at 11 ("At the very least, Article 25 [the arbitration clause] is ambiguous and therefore must be construed against Snap-on Tools."); *Smith*, Exh. 30, at 3 (construing ambiguity "against the drafter").

the particular grievance should not be denied unless it may be said with positive assurance that

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*AT&T Techs., Inc. v. Communications Workers Of Am.*, 475 U.S. 643, 650 (1986).  Accordingly,

all doubts concerning the scope of arbitrable issues, including any ambiguities in the agreement,

should be resolved in favor of arbitration.  *Brandon, Jones, Sandall, Zeide, Kohn, Chalal &

Musso v. MedPartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002), *citing Moses H. Cone Mem'l

Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  At least one AAA tribunal has

applied this guidance in construing an arbitration clause under SRCA Rule 3 to permit class

arbitration.  *See Hobby*, Exh. 24, at 11 ("resolving … dispute about the scope of arbitration to

include the broadest scope of substantive and procedural issues within the arbitration

agreement").  The same principle should apply here, and the same result should obtain.

### C.  Agreements Should Be Construed To Avoid Unconscionability And Unenforceability

If the agreement were construed to prohibit class actions it would be

unconscionable and unenforceable in many states.[12]  A construction that might render the

agreement unconscionable and unenforceable in many states where it has been imposed on

millions of Verizon customers is disfavored.  *See* Restatement (Second) of Contracts § 203(a)

("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is

---

[12] *See, e.g.*, *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254 (9th Cir. 2005) (class action waiver unconscionable and unenforceable under Washington law); *Ting v. AT&T Corp.*, 319 F.3d 1126 (9th Cir. 2003) (same under California law); *Discover Bank v. Superior Court (Boehr)*, 113 P.3d 1100 (Cal. 2005) (same under California law); *Leonard v. Terminix Int'l Co.*, 854 So.2d 529 (Ala. 2003) (same under Alabama law); *State ex rel Dunlap v. Berger*, 211 W.Va. 549 (2002) (same under West Virginia law); *Whitney v. Alltell, Communications Inc.*, 2005 WL 1544777 (Mo. Ct. App. 2005) (same under Missouri law); *Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812 (Ill. Ct. App. 2005) (same under Illinois law); *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150 (Ohio Ct. App. 2004) (same under Ohio law); *Szetela v. Discover Bank*, 97 Cal. App.4th 1094 (2002) (same under California law); *Powertel Inc. v. Bexley*, 743 So.2d 570 (Fla. 1st DCA 1999) (same under Florida law).

preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect");
Restatement (Second) of Contracts § 208 ("a court may … limit the application of any
unconscionable term as to avoid any unconscionable result"); *Gilman Yacht Sales, Inc. v. FMB
Investments, Inc.*, 766 So.2d 294, 296 (Fla. 4th DCA 2000) (citing and applying Restatement
§ 203(a)); *Mionis v. Bank Julius Baer & Co.*, 749 N.Y.S.2d 497, 502 (2d Dept. 2002) ("Courts
are obliged to interpret a contract to give meaning to all of its terms.").  AAA tribunals have
applied these principles in *Bagpeddler.com*, *Cole* and *Goldstein* to construe ambiguous
agreements to permit class arbitration.  *See Bagpeddleer.com*, Exh. 12, at 8 (recognizing that "a
ruling that the Merchant Agreement precludes class actions might be deemed unconscionable"
and thus is "not preferred"); *Cole*, Exh. 16, at 8 (recognizing that "principles of
unconscionability preclude any compelled waiver of plaintiffs' significant rights to participate in
statutorily sanctioned collective or class actions"); *Goldstein*, Exh. 20, at 2 (recognizing that
"those cases which hold that contract provisions prohibiting class action treatment are
unconscionable are persuasive").  In each of these cases the tribunal avoided a potentially
unconscionable result by construing the agreement to permit class arbitration.  The same
principle should apply here, and the same result should obtain.

## VI.  THE CONDUCT OF VERIZON AND OTHERS CONFIRMS THAT THE AGREEMENT DOES NOT PROHIBIT CLASS ACTIONS

While the text of the agreement and applicable principles of contract
interpretation confirm that the agreement permits class arbitration, so too does the conduct of
Verizon and other parties.

### A.    Verizon's Conduct Confirms The Absence Of A Class Action Waiver

Verizon's conduct related to *Campbell v. Airtouch Cellular* confirms that the
relevant agreement does not prohibit class actions.  *First*, Verizon represented to the *Campbell*

court, and eventually to the Florida court in which this action was initially filed, that the clause permits class arbitration. *See* Part I, *supra*. Verizon's representations to those courts concede the issue and compel a ruling here that the agreement permits classwide arbitration.

        *Second*, Verizon supported a classwide settlement of the *Campbell* action, over significant opposition from public interest groups such as Consumers Union and Wireless Consumers Alliance, as well as individual consumers, including some represented by claimant's undersigned counsel. Verizon could not have succeeded in imposing that settlement and obtaining a classwide release in that action if it was subject to an agreement under which it had waived its right to participate in class actions. That appears to be the reason that Verizon struck such a waiver from the November 2001 version of the customer agreement shortly before imposing that settlement. As noted above, the November 2001 version of Verizon's form customer agreement provided: "**EVEN IF A LAW OR AN ARBITRATION RULE WOULD PERMIT A CLASS ACTION OR A CLASS ARBITRATION, WE EACH WAIVE ANY RIGHT TO SUCH A PROCEDURE.**" (Exh. 2.) That provision would have prevented Verizon from obtaining the classwide release in *Campbell*.[13] So Verizon struck that term from the form agreement approximately one month before the initial proposed class action settlement was submitted to the *Campbell* court. Numerous objectors, including some represented by the undersigned counsel, convinced the *Campbell* court to reject that settlement proposal. Through 2003 and 2004 vigorous litigation over the *Campbell* settlement ensued. Ultimately the settlement was revised, submitted again, and approved by the *Campbell* court in 2004. Once that court had safely approved the settlement and the classwide release in favor of Verizon, Verizon

---

[13] *See* Exh. 32, *Campbell v. Airtouch Cellular* Class Action Settlement Agreement ¶ XXI ("all Class members shall be deemed to have released and discharged each Verizon Wireless Entity … from any and all causes of action …arising out of, in whole or in part, the subject matter of any of the claims alleged in the Complaint").

quietly reinserted a class action waiver into the January 2005 version of its customer agreement. That new provision states: "**THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF [AAA] PROCEDURES OR RULES WOULD.**"  (Exh. 3.) Verizon's removal of the waiver to facilitate the *Campbell* settlement, then reinsertion of the waiver afterward, confirms that Verizon well understood that the agreement at issue here did not contain such a waiver and did not prohibit class actions.

> *Third*, in the Florida court where this action was initially filed, Verizon asserted the *Campbell* release against claimant Brown and urged the court to abate certain of Brown's claims – essentially to dismiss them – on the theory that they were subject to the class release in *Campbell*.  *See Defendants' Motion For (1) Stay Of Plaintiff's ETF Claims Pending Outcome Of Proceedings Before The Federal Communications Commission And (2) Abatement Of Plaintiff's 'Handset Locking' Claims And Incorporated Memorandum Of Points And Authorities*, Exh. 33, at 13-21.  The basis for that motion – that Brown's claims were subject to the classwide release in *Campbell* – is fundamentally inconsistent with the notion that the parties were prohibited by the customer agreement from pursuing claims on a classwide basis.

> **B.**    **Verizon Never Asserted That The Same Clause Prohibits Class Arbitration In The *Kaner* Action**

> Verizon has well understood that the October 2002 version of its customer agreement did not prohibit class arbitration because, since January 2005, Verizon has been arbitrating another matter on a classwide basis under a form agreement with an identical arbitration clause.  The AAA arbitration captioned *Kaner, et al. v. Cellco Partnership d/b/a Verizon Wireless* is based on the November 2003 version of the Verizon Customer Agreement, which contains an arbitration clause identical to the October 2002 version at issue here.  The

arbitration demand in *Kaner* is submitted herewith as Exhibit 34.  During the *Kaner* proceedings Verizon has never asserted that the identical clause precludes class arbitration.

> C.      **AAA Administrative Decisions Confirm The Absence Of A Class Action Waiver**

The American Arbitration Association Policy on Class Arbitrations, Exh. 35, states:

> "The Association is not currently accepting for administration demands for class arbitration where the underlying agreement prohibits class claims, consolidation or joinder, unless an order of a court directs the parties to the underlying dispute to submit their dispute to an arbitrator or to the Association."

No court has ordered the *Kaner* case or this case to arbitration.  Thus, if the arbitration clause, which is identical here and in *Kaner*, prohibited class claims, AAA would not have accepted and agreed to administer either case.  Moreover, Verizon's counsel forcefully called this policy to the attention of AAA administrative staff in urging them to reject Brown's arbitration demand.  *See* 6/8/05 Letter from John P. Hunt to Catherine Shanks, Exh. 36.  AAA rejected the arguments of Verizon's counsel and commenced administration of this case.  The fact that AAA accepted and is administering both *Kaner* and this case demonstrates that AAA administrative staff have twice construed the agreement to *not* "prohibit[] class claims."

**VII.    ALTERNATIVELY, IF ANY PROVISION OF THE AGREEMENT COULD BE CONSTRUED TO PROHIBIT CLASS ACTIONS, VERIZON HAS WAIVED THAT PROVISION**

In the alternative, even assuming arguendo that a provision in the agreement could be construed to prohibit class actions, Verizon would have breached, repudiated, and/or waived any such provision by virtue of its actions procuring a purported classwide release in *Campbell* and asserting that release in this litigation.  *See* Part I and Part VI.A., *supra*.  Each of

those actions by Verizon was fundamentally inconsistent with a class action waiver and would amount to a breach, repudiation and waiver of any prohibition on class actions.

**<u>Conclusion</u>**

   For the foregoing reasons, the Tribunal should grant claimant's motion for a

clause construction award confirming that the applicable arbitration clause permits this

arbitration to proceed on behalf of a class.

Dated:  August 24, 2005


        By  /s/ *Scott A. Bursor*
          Scott A. Bursor

        LAW OFFICES OF SCOTT A. BURSOR
        500 Seventh Avenue, 10th Floor
        New York, NY  10018
        (212) 989-9113 (tel)
        (212) 989-9163 (fax)
        scott@bursor.com

        FARUQI & FARUQI, LLP
        Nadeem Faruqi
        Adam R. Gonnelli
        320 East 39th Street
        New York,  NY 10016
        (212) 983-9330 (tel)
        (212) 983-9331 (fax)
        nfaruqi@faruqilaw.com
        agonnelli@faruqilaw.com

        Jayne A. Goldstein
        MAGER WHITE & GOLDSTEIN, LLP
        2825 University Drive, Suite 350
        Coral Springs, FL  33065
        (954) 341-0844 (tel)
        (954) 341-0855 (fax)
        jgoldstein@mwg-law.com

GILMAN AND PASTOR LLP
David Pastor
60 State Street, 37th Floor
Boston, MA 02109
(617) 742-9700 (tel)
(617) 742-9701 (fax)
dpastor@gilmanpastor.com

Attorneys for Claimant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent by email this 24th day of August, 2005, to:

Vicki A. Jansson, JanssonV@adr.org
Katharine M. Flanagan, FlanaganK@adr.org
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Kristin Linsley Myles, Esq., Kristin.Myles@mto.com
John P. Hunt, Esq., John.Hunt@mto.com
Munger, Tolles & Olson LLP
560 Mission Street, Site 1900
San Francisco, CA 94105

David A. Coulson, Esq., CoulsonD@gtlaw.com
Greenberg Trauring, P.A.
1221 Brickell Avenue
Miami, FL 33131

By   /s/ *Scott A. Bursor*
       Scott A. Bursor

       LAW OFFICES OF SCOTT A. BURSOR
       500 Seventh Avenue, 10th Floor
       New York, NY  10018
       (212) 989-9113 (tel)
       (212) 989-9163 (fax)

38

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION
Class Action Arbitration Tribunal

| | |
|---|---|
| PATRICIA BROWN, on an individual basis, and also on a classwide basis on behalf of others similarly situated, | Case No. 11 494 01274 05 |
| Claimant, | |
| -against- | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | Arbitrator:  Eugene I. Farber |
| Respondent. | |

**STIPULATED PARTIAL FINAL AWARD – CLAUSE CONSTRUCTION**

Claimant Patricia Brown and Defendant Cellco Partnership d/b/a Verizon Wireless stipulate as follows:

1.      The applicable arbitration clause permits this arbitration to proceed on behalf of a class.

2.      The parties waive any right to appeal this Clause Construction Award.

So stipulated this _____ day of September, by:


_____          _____
    Scott A. Bursor                                          Kristin Linsley Myles

LAW OFFICES OF SCOTT A. BURSOR          MUNGER, TOLLES & OLSON LLP
500 Seventh Avenue, 10th Floor                   560 Mission Street, 27th Floor
New York, NY  10018                                  San Francisco, CA 94105
Attorney for Claimant                                  Attorneys for Respondent



So ordered this _____ day of September, by:


_____
    Eugene I. Farber

## MUNGER, TOLLES & OLSON LLP

PETER R. TAFT
ROBERT K. JOHNSON[1]
ALAN V. FRIEDMAN[1]
RONALD L. OLSON[1]
DENNIS E. KINNAIRD[1]
RICHARD S. VOLPERT
RONALD C. BROWN[1]
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
ROBERT L. ADLER
CARY B. LERMAN
CHARLES D. SIEGAL
RONALD K. MEYER
GREGORY P. STONE
VILMA S. MARTINEZ
BRAD D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
STEVEN L. GUISE[1]
ROBERT B. KNAUSS
STEPHEN M. KRISTOVICH
JOHN W. SPIEGEL
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
GREGORY D. PHILLIPS
LAWRENCE C. BARTH
KATHLEEN M. MCDOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
RONALD C. HAUSMANN
PATRICK J. CAFFERTY, JR.
JAY M. FUJITANI
O'MALLEY M. MILLER
SANDRA A. SEVILLE-JONES
MARK H. EPSTEIN
HENRY WEISSMANN

KEVIN S. ALLRED
MARC A. BECKER
CYNTHIA L. BURCH
BART H. WILLIAMS
JEFFREY A. HEINTZ
JUDITH T. KITANO
KRISTIN LINSLEY MYLES
MARC T.G. DWORSKY
JEROME C. ROTH
STEPHEN D. ROSE
JEFFREY L. BLEICH
GARTH T. VINCENT
TED DANE
MARK SHINDERMAN
STUART N. SENATOR
MARTIN D. BERN
DANIEL P. COLLINS
STEVEN B. WEISBURD
EDWARD C. HAGEROTT, JR.
RICHARD E. DROOYAN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
MARY ANN TODD
MICHAEL J. O'SULLIVAN
KELLY M. KLAUS
DAVID B. GOLDMAN
BURTON A. GROSS
KEVIN S. MASUDA
HOJOON HWANG
KRISTIN S. ESCALANTE
DAVID C. DINIELLI
ANDREA WEISS JEFFRIES
PETER A. DETRE
PAUL J. WATFORD
DANA S. TREISTER
CARL H. MOOR
DAVID M. ROSENZWEIG
DAVID H. FRY
TODD E. MOLZ
LISA J. DEMSKY

MALCOLM A. HEINICKE
GREGORY J. WEINGART
TAMERLIN J. GODLEY
JAMES C. RUTTEN
J. MARTIN WILHITE
RICHARD ST. JOHN
ROHIT K. SINGLA
ALLISON B. STEIN
MARSHA HYMANSON
SUSAN R. SZABO
LINDA S. GOLDMAN
LINDA M. BURROW
NATALIE PAGÉS STONE
BRETT J. RODDA
CAROLYN HOECKER LUEDTKE
JOSEPH S. KLAPACH
LISA VANCE CASTLETON
MONIKA S. WIENER
JOHN P. HUNT
LYNN HEALEY SCADUTO
C. DAVID LEE
BAYRON T. GILCHRIST
RANDALL G. SOMMER
BROOKS E. ALLEN
EMILY M. STEPHENS
AARON M. MAY
SHONT E. MILLER
MARIA SEFERIAN
JASON L. HAAS
MANUEL F. CACHÁN
ERIC J. LORENZINI
MEGAN M. LA BELLE
KATHERINE K. HUANG
SARAH KURTIN
KATHERINE M. FORSTER
ROSEMARIE T. RING
JOSEPH J. YBARRA
ANNE M. VOIGTS
AILSA W. CHANG
AMANDA SCHREIBER
BLANCA FROMM YOUNG

ROBERT E. SATTERTHWAITE
ÖZGE GÜZELSU
LINDSAY D. MCCASKILL
MARK H. KIM
KATE K. ANDERSON
ALISON J. MARKOVITZ
LOREN KESSLER-HIGGINS
E. DORSEY HEINE
SAMUEL N. WEINSTEIN
PAUL M. ROHRER
KIT AUGUSTSON
JAY K. GHIYA
SUSAN TRAUB BOYD
JOHN C. DAY
JENNIFER L. POLSE
TODD J. ROSEN
DANIEL L. GEYSER
BRIAN R. HOCHLEUTNER
DEAN N. KAWAMOTO
GRANT A. DAVIS-DENNY
E. MARTIN ESTRADA
JASON RANTANEN
REBECCA GOSE LYNCH
JONATHAN H. BLAVIN
JOHN R. GRIFFIN
DAVID M. SWEET
KAREN J. FESSLER
MICHELLE T. FRIEDLAND
J. RAZA LAWRENCE
MICHAEL T. KOVALESKI
LIKA C. MIYAKE
MELINDA EADES LEMOINE
───────
RICHARD D. ESBENSHADE[1]
OF COUNSEL
───────
E. LEROY TOLLES
(RETIRED)

[1]A PROFESSIONAL CORPORATION

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

─────

355 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

November 29, 2005

WRITER'S DIRECT LINE
(415) 512-4011
(415) 644-6911 FAX
Jonathan.Blavin@mto.com

VIA EMAIL AND FEDEX

Joseph Matthews, Esq.
Colson Hicks Eidson
255 Aragon Avenue
Second Floor
Coral Gables, FL 33134

Joseph@colson.com

      Re:   Case No. 11 494 0032 05
             *Zobrist and Verizon Wireless*

Dear Mr. Matthews:

     I am writing to advise you that Verizon Wireless does not intend to appeal the tribunal's November 22, 2005 clause construction award. Verizon Wireless also has informed Mr. Eugene I. Farber, arbitrator of the *Brown and Verizon Wireless* matter, of its intent not to appeal this ruling.

     In light of the tribunal's clause construction award, Verizon Wireless maintains that the time is ripe for consolidation of the *Zobrist* and *Brown* matters. Both actions are now in the same procedural posture, and the substantive issues going forward in both proceedings will be largely the same if not identical.

MUNGER, TOLLES & OLSON LLP

Joseph Matthews
November 29, 2005
Page 2

Very truly yours,

*[signature]*

Jonathan H. Blavin

cc (via e-mail):

    Katharine Flanagan
    Paul Weiss, Esq.
    Gordon Maag, Esq.
    Richard Burke, Esq.
    Phil Bock, Esq.

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: November 23, 2005

To:
Richard J. Burke, Esq.
Gordon E. Maag, Esq.
Paul M. Weiss, Esq.
Tod A. Lewis, Esq.
Malik R. Diab, Esq.
Phillip A. Bock, Esq.
Richard Drooyan, Esq.

Fax Numbers:      618-254-0193
                  312-220-7777
                  312-334-1971
                  213-683-5136

From: Kelly L.S. Taylor, Esq.

Number of Pages: (including cover) 9

Re: 11 494 00324 05
    Dawn M. Zobrist, individually, and on behalf of
    others similarly situated
    and
    Verizon Wireless, Verizon Communications, Inc.
    and Cellco Partnership

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS
ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR
OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE
PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS
FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED
ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

November 23, 2005

VIA FACSIMILE

Richard J. Burke, Esq.
The Lakin Law Firm, P.C.
301 Evans Avenue
P.O. Box 27
Wood River, IL 62095

Gordon E. Maag, Esq.
#4 Ginger Bend
Glen Carbon, IL 62034

Paul M. Weiss, Esq.
Freed & Weiss LLC
111 West Washington, Suite 1331
Chicago, IL 60602

Tod A. Lewis, Esq.
Freed & Weiss LLC
111 West Washington, Suite 1331
Chicago, IL 60602

Malik R. Diab, Esq.
Diab & Bock
20 N. Wacker Drive, Suite 1741
Chicago, IL 60606

Phillip A. Bock, Esq.
Diab & Bock
20 N. Wacker Drive, Suite 1741
Chicago, IL 60606

Richard Drooyan, Esq.
Munger, Tolles & Olsen
355 South Grand Ave., 35th Fl.
Los Angeles, CA 90071

Re: 11 494 00324 05
    Dawn M. Zobrist, individually, and on behalf of
    others similarly situated
    and
    Verizon Wireless, Verizon Communications, Inc.
    and Cellco Partnership

Dear Counsel:

By direction of the Arbitrator we herewith transmit to you the duly executed Partial Award on Claimant's Request for Preliminary Clause Construction Award and Order on Motion to Stay, in the above matter.

Pursuant to the Supplementary Rules for Class Arbitrations, this matter is stayed for 30 days from the date of this award to permit to move a court of competent jurisdiction to confirm or vacate the Partial Final Clause Construction Award. We ask the parties to keep the Association advised of any pending court actions.

Please feel free to contact the undersigned should you have any questions.

Sincerely,

*Kelly L.S. Taylor*

Kelly L.S. Taylor, Esq.
Class Action Specialist
401 431 4744
TaylorK@adr.org

*Supervisor Information: Katharine M. Flanagan, 401 431 4714, FlanaganK@adr.org*

Encl.

cc:     Joseph M. Matthews, Esq.        Via Fax w/o Encl.

# American Arbitration Association
## Commercial and Class Action Arbitration Tribunal

Case #11 494 00324 05

In the Matter of Arbitration Between:

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

Claimant

and.

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

Respondent

---

## PARTIAL AWARD ON CLAIMANT'S REQUEST FOR PRELIMINARY CLAUSE CONSTRUCTION AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated and sworn in accordance with the arbitration agreement entered into between Claimant, and Respondent in July 2001, the Commercial Arbitration Rules of the American Arbitration Association (AAA), as supplemented by the Supplementary Rules for Class Arbitrations, and pursuant to Preliminary Scheduling Order #1 in this proceeding, enter this Partial Award Granting Claimant's Request For Preliminary Clause Construction Award.

### Introduction

As the undersigned noted in *Anthony Hobby v. Snap-on Tools Co., LLC.* AAA Class Action Docket Case No. 11 114 0188404, Clause Construction Award, p, 2, (June 8, 2005) under the Supplementary Rules for Class Arbitrations adopted by the AAA following the decision of the U.S. Supreme Court in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) individual arbitrators must, in the following words of The Honorable Charles A. Flynn, Jr., (District Court Judge, Retired) in his Clause Construction Award entered September 2, 2004 in *Hearthside Restaurant, Inc., et al v. Qwest Dex, Inc., et al*, AAA Class Action Docket, (www.adr.org) Case No. 11 147 00357 04 predict how courts would decide these issues.

"However, after *Bazzle*, it is clear, and the parties agree, that the issue of whether class action relief is available to be decided by the arbitrator not the courts. The parties further agree that the arbitrator must apply Minnesota [the law chosen in the contract] substantive law, that is the law of the state where the contract is entered into, in deciding the issue, Since there is no post *Bazzle* case directly on point, the arbitrator is left to

1

Case #11 494 00324 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

                                   Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

                                   Respondent

---

anticipate the decision of the Minnesota Supreme Court when and it if is
presented with an appropriate case."

### The Contract Language and Applicable Law

The standard form contract includes the following provision relevant to the issues
at this stage of these proceedings:

> "Any controversy or claim arising out of or relating to this agreement,
> other than a claim by Verizon Wireless as to non-payment, shall be settled
> by binding arbitration in accordance with the commercial arbitration rules
> of the American Arbitration Association (Rules) and judgment upon the
> award rendered by the arbitrator may be entered in any court of competent
> jurisdiction."

The parties agree that the Federal Arbitration Act (FAA) applies as to procedural
issues, but Illinois law applies as to substantive issues, to the extent they are not
preempted by the FAA itself.

### Summary of the Parties' Positions

The parties agree that the subject contract is silent as to whether the parties
intended to permit class treatment of claims governed by the arbitration provision. The
parties also agree that there is no clear binding authority from the Supreme Court of
Illinois (or intermediate Illinois appellate courts) as to whether class-wide arbitration of
claims is permissible in the absence of express language in the contract authorizing such.

2

Case #11 494 00324 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

                                Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

                                Respondent

---

      Claimant argues that principles of contract construction applicable to contracts of adhesion compel construction of the agreement to permit class treatment of claims, provided the claims are otherwise proper for class treatment. Claimant also argues that under applicable U.S. Supreme Court authority, any doubt about the scope of an arbitration agreement should be resolved in favor of including and not excluding matters of substance and procedure to be arbitrated.

      Respondent argues that the parties drafted the agreement based on the law as it existed at the time and because the majority of courts (mostly federal) that had addressed the issue concluded arbitration provisions in contracts precluded class treatment of claims, this agreement should be interpreted to preclude class actions, even though it is silent on the subject.

      I find Claimant's arguments more persuasive under applicable law and construe the subject clause as not prohibiting class treatment of claims, provided they are otherwise appropriate for class action certification.

## Analysis

      The contract in this case is unquestionably a contract of adhesion under the law of Illinois. *Abbott v. Amoco Oil Co.*, 249 Ill.App.3d 774; 619 N.E.2d 789,794 (1993). Applying basic principles of contract construction under Illinois and U.S. law, I conclude that the arbitration clause in the subject contract must be construed in the light most favorable to Claimant (*Zubit v. Acceptance Indemnity Insurance Company*, 323 Ill.App.3d 28; 751 N.E.2d 69 (2001) and that any doubt about the scope of the arbitration

Case #11 494 00324 05

In the Matter of Arbitration Between:

Dawn M. Zobrist, individually, and on behalf
of others similarly situated
                                        Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership
                                        Respondent

---

provision must be resolved in favor of including not excluding claims on behalf of a
putative class. *Mitsubishi v. Soler*, 473 U.S. 614 (1985)

Respondent's choice of language in its arbitration clause is extremely broad,
including "any controversy or claim arising out of or relating to this agreement." When it
wanted to exclude a claim, it did so with the specific language "other than a claim by
Verizon Wireless as to non-payment."

Respondent's argument that I should interpret that intent of the contract language
by looking to the established law in existence at the time the contract was drafted would
be more persuasive if, in fact, the courts of Illinois had clearly established prior to the
time this contract was executed (July 2001) that in the absence of a clear expression
granting class treatment of claims in arbitration, they are barred. However, Respondent's
counsel candidly acknowledges that Illinois courts had not addressed this issue prior to
the time of this contract nor have they addressed it at any time up to the present.

I have found nothing in Illinois law that would suggest it precludes class
treatment of claims otherwise proper for class treatment, merely because the contract
between the parties selects arbitration in broad language. In the absence of clear
language prohibiting class treatment, I conclude this agreement does not prevent
Claimant from seeking to establish her right to represent a class if she is able to meet the
requirements for maintenance of a class action.

4

Case #11 494 00324 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

Respondent

---

*Conclusion*

      Pursuant to Rule 3 of the Supplementary Rules for Class Arbitrations, I stay all
proceedings in this matter for a period of 30 days to permit any party to move ask a court
of competent jurisdiction to confirm or vacate this Clause Construction Award.

      IT IS SO ORDERED.

Dated: ___11/22/05___            _____
                                    Joseph M. Matthews

      I, Joseph M. Matthews, do hereby affirm upon my oath as Arbitrator that I am the
individual described in and who executed this instrument, which is my Award.

Dated: ___11/22/05___            _____
                                      Joseph M. Matthews

# American Arbitration Association
## Commercial and Class Action Arbitration Tribunal

Preliminary Order # 2                             Case #11 494 0032 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

## ORDER ON MOTION TO STAY

This matter came on for consideration by Arbitrator Joseph M. Matthews on Respondents' Motion to Stay. Upon review of the Motion and supporting exhibits, the supporting and opposing memoranda, it is

ORDERED as follows:

1.  The motion to stay is deferred.

2.  Simultaneous with this Order, the arbitrator has entered a Partial Award Construing the subject Arbitration Clause in accordance with Rule 3, Supplementary Rules for Class Arbitration and has entered a Stay of these proceedings pending review of that Partial Award.

3.  Upon completion of the clause construction phase and return of these proceedings to this arbitrator, Respondents' motion to stay based on the primary jurisdiction doctrine will be taken up immediately.

DONE AND ORDERED.

Dated: __November 22, 2005__             _____
                                          Arbitrator's Signature