UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                           :

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,  :
and VERIZON COMMUNICATIONS INC.,          :

                           :

               Petitioners,      :

                           :        No. 08 CV 427 (LAK)

      vs.                      :

                           :        Filed Electronically

PATRICIA BROWN, HAROLD P. SCHROER, and  :
DAWN M. ZOBRIST, on an individual basis and on  :
behalf of others similarly situated,           :

                           :

               Respondents.    :

                           :
------------------------------------------------------------------------x

## REPLY MEMORANDUM IN SUPPORT OF
## PETITIONERS' MOTION TO VACATE CLASS DETERMINATION AWARD

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA  90071-1560
Tel:  213-683-9100 – Fax:  213-687-3702

Jeffrey S. Jacobson
Carl Micarelli
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022-3916
Tel:  212-909-6000 –  Fax: 212-909-6836

Attorneys for Petitioners Cellco Partnership d/b/a
Verizon Wireless and Verizon Communications Inc.

I.     **THE ARBITRATOR IMPROPERLY ASSERTED JURISDICTION OVER SUBSCRIBERS BOUND BY EXPRESS CLASS WAIVERS**

A.     **The Arbitrator Lacked Power to Invalidate Class Arbitration Waivers**

Absent clear and unmistakable contrary intent, the arbitrability of arbitrability and the validity of a class arbitration waiver are to be decided by a court. Memo. in Support of Motion ("Memo") at 8-9. Because such intent is lacking in this case, the Arbitrator's invalidation of the class waiver is reviewed *de novo*. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Respondents erroneously say that *First Options* requires "clear[] error[]" review. Opp. at 16. *First Options* states that the District Court's review of an arbitrator's determination of arbitrability must be "independent," not deferential. 514 U.S. at 947-48. The clear error standard applies only to *appellate* review of a District Court's factual determinations. *Id*.

1.     The CSAs Do Not Clearly and Unmistakably Give the Arbitrator Power to Resolve These Issues

Respondents' reliance on general language in the Customer Service Agreements ("CSAs") regarding arbitrability is unavailing. Most importantly, the CSAs' incorporation of the AAA's rules forecloses Respondents' argument. Respondents do not dispute that the AAA Class Arbitration Policy, incorporated into the parties' agreement, states that an arbitrator "will not seek to make decisions" concerning "whether an agreement that prohibits class actions is enforceable," a question that "the courts appeared to have reserved for themselves." Memo. at 11. Under *Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002), this is dispositive.

In *Katz*, the parties' agreement governing the sale of an interest in a clothing manufacturing company contained two relevant clauses. One clause, similar to the broadly-worded arbitration clauses at issue here, "assign[ed] *all disputes* under the agreement to arbitration." *Id*. at 96 (emphasis added). The other clause provided that the determination of the value of the company's shares would be made solely by the company's accountants, and "not be

1

subject to any . . . arbitration." *Id*. The Second Circuit "distinguish[ed]" its "existing precedent

on the arbitrability of arbitration clauses" and "not[ed] the importance of the *dominance of*

*specific over general arbitration provisions* in the resolution of the arbitrability" issue. *Id*.

(emphasis added). Specifically, the court stated that although it had

> previously held that a broadly worded arbitration clause committing resolution of
> all disputes to arbitration satisfied this 'clear and unmistakable' standard . . . we
> cannot conclude that in this case where a single agreement contains both a
> broadly worded arbitration clause and a specific clause assigning a certain
> decision to an independent accountant, that the parties' intention to arbitrate
> questions of arbitrability under the broad clause remains clear.

*Id*. at 97. Similarly, the CSAs contain broadly-worded arbitration clauses and a specific clause

assigning a particular issue—the validity of the class waiver—to the judiciary. As *Katz* held, the

"presence of both these clauses creates an ambiguity, which, under *First Options*, requires us to

assign questions of arbitrability to the district court, not the arbitrator." *Id*.

Although *Katz* is dispositive, Respondents also fail to point to any language in the CSAs

that clearly and unmistakably commits the arbitrability of arbitrability and the validity of the

class waiver to the Arbitrator. The clauses stating that the parties agree to arbitrate "any claim"

arising out of the agreement, and that the arbitrator can award the same relief as a court, Opp. at

7-9, are irrelevant. Such general language gives an arbitrator power to *interpret* the agreement to

determine if it permits class arbitration. But determining the meaning of an arbitration clause is

different from determining if the clause, or a portion of it, is *valid*. *Green Tree Fin. Corp. v.*

*Bazzle*, 539 U.S. 444, 452 (2003), which Respondents cite, made this distinction between clause

construction—to be decided by the arbitrator—and validity—to be decided by the court, absent

clear and unmistakable contrary intent. *See also* Memo. at 8-9; *Preston v. Ferrer*, 128 S. Ct.

978, 984 (2008) ("attacks on the validity of an entire contract, *as distinct from attacks aimed at*

*the arbitration clause*, are within the arbitrator's ken" (emphasis added)); *Ehleiter v. Grapetree*

2

*Shores, Inc.*, 482 F.3d 207, 221-22 (3d Cir. 2007) (clause stating that "[a]ll claims" arising out of the agreement are arbitrable, including "arbitrability of any claim or dispute," is not "clear and unmistakable evidence" of intent to arbitrate issue that parties "'reasonably would have thought a judge, not an arbitrator, would decide'"); *Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410 (M.D. Ala. 1998) (same as to validity of arbitration agreement).

Nor can Respondents find comfort in the clause stating "[o]nly an arbitrator can decide whether an issue is arbitrable." Opp. at 9. First, Respondents do not dispute that this language cannot justify the Arbitrator's assertion of authority to determine the validity of the class waivers in the CSAs after December 2004, which do not contain this language. *See, e.g.,* Ex. 13; Ex. 14.[1] Second, the presence of this language in the pre-2002 CSAs does not clearly and unmistakably indicate the parties' intent to submit the gateway *validity* issue to the arbitrator. Memo. at 10; *see also Ehleiter*, 482 F.3d at 221-22; *Stiles*, 994 F. Supp. at 1414.

2.    Verizon Wireless's Statements to the Florida State Court Did Not Clearly and Unmistakably Submit the Issue to the Arbitrator

The Arbitrator's reliance on the statements to the Florida state must be reviewed *de novo*, as those statements do not even arguably relate to the arbitrability of arbitrability. Memo. at 12.

Verizon Wireless's letter to the Florida state court was not a clear and unmistakable agreement to submit the validity of *all* class arbitration waivers to the Arbitrator. The letter concerned only the arbitration clause *in Brown's CSA*. Memo. at 13. Brown agreed that "this October 2002 version *is the only operative agreement*." Ex. 34 at 305 n.4 (emphasis added). Respondents do not contend otherwise, and their suggestion that the Brown CSA is similar to other CSAs containing an express class waiver is incorrect (*see* footnote 2, *infra*), but also

---

[1] All exhibits referenced herein are attached to the Declaration of Jonathan H. Blavin in Support of Petitioners' Motion to Vacate Class Determination Award.

irrelevant: whatever issues Verizon Wireless agreed to submit to arbitration under the Brown

CSA, it did not agree to submit issues under *other* arbitration agreements.

Respondents also fail to show that Verizon Wireless submitted validity to arbitration even

with respect to Brown's CSA.  Verizon Wireless stated that the arbitrator could decide "whether

the *contract language permits class arbitrations*" (Ex. 1 at 018), but not whether an agreement

that prohibits class arbitration is valid.  Respondents erroneously contend that Verizon Wireless

also agreed to submit the validity issue with respect to the Brown CSA to arbitration, relying on

the statement that "other threshold questions that Verizon has presented to this Court" should be

decided by the arbitrator.  Ex. 1 at 018.  But Respondents do not establish that the "threshold

questions" clearly and unmistakably referred to the *validity* of the class arbitration waiver.

Verizon Wireless's stay motion was brought on three bases: (1) that the arbitration clause

prohibited class arbitrations (*see* C618 at 4-9), (2) that the arbitration should be stayed in favor of

FCC proceedings concerning whether state-law challenges to ETFs were preempted (*see id*. at 9-

10), and (3) that other claims based on the alleged "locking" of handsets should be abated based

on an earlier settlement of another case called *Campbell* (*see id*. at 10).  Indeed, in the sentence

immediately following the one containing the "other threshold questions" language, the letter

states that in withdrawing the motion, Verizon Wireless was doing so "without prejudice to its

ability to argue to the arbitrator that (1) the parties' arbitration clause should be construed not to

permit class actions; (2) plaintiff's ETF-related claims should be stayed in light of the pending

FCC proceedings; and (3) plaintiff's handset locking claims should be stayed or abated in light

of the class settlement proceedings and related injunction in *Campbell*."  Ex. 31 at 204.  No

reference is made to the validity of the class waiver in Brown's CSA.  The "other threshold

questions" language plainly encompassed the FCC and *Campbell*-related issues.  The phrase was

4

not, and cannot be construed as, a clear and unmistakable reference to the validity issue of the

class waiver in Brown's CSA, let alone other CSAs not before the Florida court.

> 3.    Other AAA Rules Do Not Give the Arbitrator Power to Determine the
> Validity of the Class Arbitration Waivers

Respondents incorrectly contend that Supplementary Rule 3 gave the Arbitrator authority

to determine the enforceability of the waiver.  Opp. at 11-12.  Rule 3 provides that the arbitrator

shall determine "whether the . . . arbitration clause permits the arbitration to proceed on behalf of

or against a class."  Ex. 22 at 121.  Such an interpretation of the meaning of the contract—clause

construction—is not the issue in this case.  Verizon Wireless does not contest in this case that the

CSA in effect from July 2002 through December 2004, to which Brown was a party, or the

earlier CSA to which Zobrist was a party, do not prohibit class arbitration.  But other CSAs

expressly *prohibit* class arbitration.  Rule 3 does not say that the arbitrator has the power to

determine if such provisions are valid, and the AAA's Policy, incorporated into the rules, says

just the opposite.

Rule 4(a)(6) is similarly inapposite.  It requires the Arbitrator to determine whether "each

class member has entered into an agreement containing an arbitration clause which is

substantially similar to that signed by the class representative(s)."  *Id.* at 122.  In other words,

once all other class certification requirements are met, the arbitrator must also find that the class

members' arbitration clauses are similar.  This is a limitation on class certification, and it

requires contract interpretation.  The rule does not even implicitly, let alone clearly and

unequivocally, give the Arbitrator power to determine validity.

Respondents incorrectly argue that the Arbitrator's invalidation of these class arbitration

waivers was dicta, and that he only needed to make a finding of similarity under Rule 4(a)(6).

Opp. at 23.  By certifying two classes that include millions of customers whose CSAs expressly

forbid class arbitration, the Arbitrator purported to exercise *jurisdiction* to adjudicate those

individuals' rights. A finding that those individuals' CSAs are similar to the Brown and Zobrist

CSAs—even if it could be credited[2]—does not support an exercise of jurisdiction. A finding of

similarity is a necessary but not a sufficient condition for certification. To the extent the

Arbitrator lacks jurisdiction to determine an individual's rights, that individual cannot be a class

member, and the similarity of that individual's CSA to other CSAs is irrelevant. The Arbitrator

acknowledged as much, stating: "[a]lthough the inquiry under Supplemental Rule 4(a)(6) could

end with the above," there "remain some question[s] about whether it is appropriate to certify

classes in an arbitration and include class members who entered into CSAs which have clauses

explicitly precluding class arbitration . . . ." Ex. 1 at 017. He recognized that Verizon Wireless

had presented the jurisdictional point as separate from the issue of substantial similarity. *Id*. at

017-018 ("Verizon argues that this Tribunal does not have authority to consider the

enforceability of the class arbitration waiver . . . . *Additionally*, Verizon's argument is that CSAs

containing class arbitration waivers . . . are not substantially similar . . . ." (emphasis added)).

       Rule 4(a)(6) is not clear and unmistakable evidence that the parties intended to submit the

---

[2] The Arbitrator concluded that the clauses were similar because Verizon Wireless had said that
the Brown CSA, which states that the parties agree to arbitrate on an "individual" basis,
expressly prohibited class arbitration. Ex. 1 at 016-017. But Verizon Wireless subsequently
withdrew that argument based on a review of pleadings submitted to another court in which the
company had said that this language did not expressly bar class arbitration. In sharp contrast,
other CSAs *did* expressly bar class arbitration. Far from showing that Verizon Wireless
conceded that the 2002-2004 CSA was similar to other CSAs that expressly prohibit class
arbitration, Verizon Wireless's decision not to contest clause construction of the Brown CSA
shows just the opposite—that the clause in the Brown CSA is *not* similar to those in other CSAs.
The Award, moreover, is internally inconsistent on this point. Even as the Arbitrator relied on
Verizon Wireless's initial position that the Brown CSA barred class arbitration as a basis for
finding that it was similar to CSAs with express class waivers, he also relied on Verizon
Wireless's later position that the Brown CSA did *not* expressly bar class arbitration as a basis for
finding that Verizon Wireless had submitted the validity of the waiver to arbitration. Ex. 1 at
019. The Arbitrator's willingness to pick and choose among positions highlights the results-
oriented nature of his analysis.

validity of a class action waiver to arbitration, particularly in light of the AAA's Policy, which specifically states that validity is not to be resolved by the arbitrator.

Finally, Verizon Wireless's statements in support of the consolidation of the *Brown* and *Zobrist* proceedings by the AAA are beside the point. *See* Opp. at 15. Verizon Wireless argued that the AAA has plenary power to resolve "procedural" issues within the arbitration, such as consolidation. Bursor Decl., Ex. 12 at 2. That is entirely different from the scope of the Arbitrator's substantive power to resolve the validity of the class arbitration waiver. Verizon Wireless never agreed to submit the latter issue to arbitration.

### B.     The Arbitrator Manifestly Disregarded the Law in His Validity Analysis

1.     The Arbitrator Disregarded the Choice of Law Provision

Even if the Arbitrator had authority to determine the validity of the class waiver, he committed reversible error in refusing to apply the parties' choice of law clause. Respondents do not dispute that failure to apply a choice of law provision constitutes manifest disregard for the law. *See* Memo. at 15. Respondents nevertheless claim that the Arbitrator's  refusal to apply the choice of law clause was harmless because "[e]very state court decision on this issue is heavily fact dependent. . . ." Opp. at 28. Respondents cite *Muhammad v. County Bank of Rehoboth Beach*, 912 A.2d 88 (N.J. 2006), and *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), which indicate that even those courts would enforce class arbitration waivers under some circumstances. But Respondents fail to address the numerous courts that have *upheld* class waivers even in a mass market context and even as applied to claims for small sums. State courts are clearly split on the issue, requiring "a state-by-state review of contract conscionability jurisprudence" regarding class waivers. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007). The Arbitrator's failure to address this issue, even though it was brought to his attention, constitutes manifest disregard. *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204

7

(2d Cir. 1998) (where explanation if given by arbitrator "would have strained credulity, the absence of an explanation may reinforce . . . that the arbitrators engaged in manifest disregard").

      2.     The Arbitrator Failed to Engage in a Severability Analysis

Most of the CSAs in effect before July 2002 and the post-2005 CSA contain non-severability provisions that render the arbitration agreements void upon a finding that the class arbitration waiver is unenforceable. *See, e.g.,* Ex. 20 at 117. Even assuming the Arbitrator had the authority to rule on the validity of the class waiver, he plainly erred in asserting jurisdiction over subscribers who agreed *not to arbitrate at all* if the class waivers were deemed void.

Respondents do not even attempt to defend the Arbitrator's action in this respect on the merits. Instead, they erroneously claim that Verizon Wireless did not raise this issue in the arbitration. Opp. at 29. On the contrary, Verizon Wireless specifically argued to the Arbitrator that the class arbitration waiver was not severable from the agreement to arbitrate, and that if the waiver was deemed invalid so too was the arbitration agreement itself. Ex. 35 at 403. In support of this argument, Verizon Wireless cited *Riensche v. Cingular Wireless*, No. C06-1325Z, 2006 WL 3827477, at *13 (W.D. Wash. Dec. 27, 2006). *Id.* In *Riensche*, the court stated that the "arbitration agreement provides that if the class action prohibition 'is found to be unenforceable, then the entirety of this arbitration clause shall be null and void.' Because this Court concludes that the class action provision is substantively unconscionable, the Court also concludes that the arbitration clause in this agreement is null and void." The fact that Verizon Wireless did not then also cite *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 993 (9th Cir. 2007), which reached the same conclusion, is of no moment.

      3.     The Arbitrator Ignored Preemption

The Arbitrator did not address *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007), which held that reliance on the *Muhammad* unconscionability rationale is preempted by the FAA. The

Arbitrator did not find that *Gay* was wrongly decided or rely on any of the cases Respondents

now cite (Opp. at 25-26). The Arbitrator simply failed to address the issue. This constitutes

manifest disregard of the law. *See Rich v. Spartis*, --- F.3d ----, 2008 WL 343330, at *7 (2d Cir.

Feb. 8, 2008) (where "arbitrators simply ignore the applicable law, the literal application of a

'manifest disregard' standard should presumably compel vacation of the award").

II.    **THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW IN HIS CLASS CERTIFICATION ANALYSIS**

Contrary to Respondents' suggestion (Opp. at 2), Verizon Wireless cited caselaw and

scholarly authority demonstrating that due process and fundamental fairness considerations

require the Court to subject a class arbitration award to more searching review than an ordinary

commercial arbitration award. Memo. at 21-22. Respondents also fail to respond to Verizon

Wireless's showing that the AAA's rules contemplate more searching judicial review of class

awards. Memo. at 20-21. Accordingly, even with respect to customers with CSAs between July

2002 and December 2004, as to whom the Arbitrator had jurisdiction, the Award should be

vacated not only based on manifest disregard, but also based on abuse of discretion.

A.    **The Arbitrator Ignored the Class Representatives' Lack of Standing**

Respondents' only argument in support of the standing of the representatives of Class B

is the "capable of repetition yet evading review" doctrine. Opp. at 30-31. Respondents,

however, fail to contest the well-settled rules that the doctrine does not apply (1) when the

named plaintiff is not a class member when the motion for class certification is filed, and (2)

when the plaintiff cannot show a reasonable expectation of being subjected to the same conduct

by the private defendant. Memo. at 24. Respondents likewise fail to justify the standing of the

class representatives to pursue Class A's claim under Section 201(b) of the Communications Act.

Zobrist's federal claim, as to which there is exclusive federal jurisdiction, could not relate back

to her state court complaint. Schroer's informal FCC complaint constituted a binding election of remedies that precluded him from pursuing judicial action, and that in any event could not have tolled the statute under binding FCC regulations. Memo. at 25-28.

**B.** **The Arbitrator Disregarded the Irreconcilable Conflicts of Laws Between States' Common Law Liquidated Damages Standards**

Respondents do not address the differences between the "retrospective" and "prospective" approaches followed by various states concerning the validity of a liquidated damages provision. Respondents' reiteration of the Arbitrator's plainly erroneous reasoning is unavailing. The time of the analysis is outcome determinative in many cases, and the admissibility of evidence is irrelevant to the standard for liability, which is dictated by application of the choice of law provision. Memo. at 28-30.

**C.** **The Arbitrator Manifestly Disregarded the Law by Ignoring Disabling Conflicts Precluding Certification of Class A**

The Arbitrator manifestly disregarded the law in his class conflict analysis by reversing the burden of proof with respect to the existence of a conflict. Verizon Wireless more than satisfied its limited burden of demonstrating the existence of "potential conflicts" that are "'real probabilities and not mere imaginative speculation.'" *Dornberger v. Metro. Life Ins. Co.*, 182 F.R.D. 72, 82 (S.D.N.Y. 1988) (quoting *Robertson v. Nat'l Basketball Ass'n*, 389 F. Supp. 867, 898 (S.D.N.Y. 1975)); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982). Although Respondents note that the Arbitrator found the conflict to be "speculative" (Opp. at 32), he did so without finding that Verizon Wireless's evidence lacked credibility. Instead, he deemed "speculative" any conflict that was not proven to a *certainty*. That ruling manifestly disregarded applicable law.

10

Dated: New York, New York
       March 6, 2008

Respectfully submitted,

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA  90071-1560
Tel:  213-683-9100 – Fax:  213-687-3702
henry.weissmann@mto.com
hojoon.hwang@mto.com
jonathan.blavin@mto.com

Jeffrey S. Jacobson
Carl Micarelli
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022-3916
Tel:  212-909-6000 –  Fax: 212-909-6836
jsjacobson@debevoise.com
cmicarelli@debevoise.com


By: /s/ Jeffrey S. Jacobson
      Jeffrey S. Jacobson


Attorneys for Petitioners Cellco Partnership d/b/a
Verizon Wireless and Verizon Communications Inc.

11

## CERTIFICATE OF SERVICE

I, Carl Micarelli, a member of the Bar of this Court and one of the attorneys for

Petitioners herein, certify as follows:

On this 21st day of February 2008, I served the within MEMORANDUM OF LAW IN

OPPOSITION TO RESPONDENTS' MOTION TO DISMISS PETITION TO VACATE upon

Scott A. Bursor, counsel for the Respondents, by sending a copy by electronic mail to

scott@bursor.com, such means of service being an electronic means to which he has consented

in writing pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.

Dated: New York, New York
       February 21, 2008

                                      _____

                                          Carl Micarelli