UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,    :
and VERIZON COMMUNICATIONS INC.,              :
                                              :
                              Petitioners,    :
                                              :
              vs.                             :
                                              :        No. 08 CV 427 (LAK)
PATRICIA BROWN, HAROLD P. SCHROER, and        :
DAWN M. ZOBRIST, on an individual basis and on :        Filed Electronically
behalf of others similarly situated,          :
                                              :
                              Respondents.    :
                                              :
                                              :
------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR AN ORDER
TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA  90071-1560
Tel:  213-683-9100 – Fax:  213-687-3702

Jeffrey S. Jacobson
Carl Micarelli
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022-3916
Tel:  212-909-6000 –  Fax: 212-909-6836

Attorneys for Petitioners Cellco Partnership
d/b/a Verizon Wireless and Verizon
Communications Inc.

4647200.1

## INTRODUCTION

The Arbitrator whose prior class certification order Verizon Wireless has moved this Court to vacate has now issued another order without jurisdiction or legal basis to do so.  On March 10, 2008, the Arbitrator issued a new "Partial Final Award" (the "Injunction Award") in which he has purported to enjoin members of the putative classes from "bringing any class action or asserting or prosecuting any class claim that could potentially prejudice the claims asserted on behalf of [the classes] in this Arbitration."  Respondents now invoke the summary procedure of an Order to Show Cause ("OSC") to seek confirmation of that award and a restraining order that would prevent parties to an action pending in the U.S. District Court in the District of New Jersey, *Waudby v. Verizon Wireless*, Civil Action No. 07-470 (FLW) (the "*Waudby* Action"), from proceeding with further litigation.  The requested relief must be denied.

Respondents have not demonstrated and cannot demonstrate any likelihood of success on the merits, i.e., that the Injunction Award would be confirmed on the merits.  To our knowledge, an arbitrator's order enjoining litigants in a pending federal action is unprecedented.  Respondents argue, without precedent or authority, that the Arbitrator has as much authority to issue an anti-suit injunction as does a court.  Under that premise, however, the injunction is plainly unlawful under settled federal law.

The Injunction Award rests on the rationale that inconsistent rulings or the possibility of a settlement in the *Waudby* Action may prejudice the classes that the Arbitrator certified in the Class Award, the validity of which is now pending before this Court.  The Second Circuit in *Ret. Sys. of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004) ("*Retirement Systems*"), like every other Court of Appeals to consider the issue, expressly

held that one tribunal cannot enjoin another "simply to be the first court to reach judgment and thereby avoid issues of collateral estoppel." This is precisely what the Arbitrator seeks to do through the Injunction Award. Moreover, the Arbitrator had no jurisdiction to issue the injunction because the pendency of Verizon Wireless's petition to vacate the Class Award divested the Arbitrator of any authority to build on that award while the appeal is pending.

Respondents likewise cannot demonstrate a likelihood of irreparable harm. There is no on-going settlement discussions among the parties to the *Waudby* Action, much less an imminent settlement. And even if there were, such a possibility would not support an injunction, as the case law makes clear. The possibility of inconsistent rulings from the *Waudby* court, moreover, simply does not count as cognizable harm under *Retirement Systems* and its progeny.

The Injunction Award exceeds the Arbitrator's authority and improperly undermines the federal courts' jurisdiction to resolve matters pending before them. It cannot support any temporary equitable relief and should be vacated through an orderly briefing process.

## BACKGROUND

### A.    The Class Award and Related Proceedings

The circumstances of the underlying arbitration were explained in detail in the parties' prior briefing. Briefly, Claimants in *Brown & Verizon Wireless*, No. 11 459 01274 05, and *Zobrist & Verizon Wireless*, No. 11 494 0032 05, contend that Verizon Wireless's $175 early termination fee ("ETF") is an unlawful penalty. On January 10, 2007, the Arbitrator issued a partial final award (the "Class Award") certifying two nationwide (excluding California) classes of Verizon Wireless customers (1) who were parties to customer service agreements ("CSAs") from November 1, 2000 through November 16, 2006

- 3 -

and (2) who were assessed an ETF pursuant to such CSAs.  Verizon Wireless has moved to

vacate the class award, which motion is fully briefed and awaiting argument.

### B.    The *Waudby* Action

The arbitration is not the only action that seeks to challenge Verizon Wireless's ETF.

On January 25, 2007, John Waudby filed a complaint in the United States District Court for

the District of New Jersey on behalf of himself and a putative nationwide class of Verizon

Wireless customers who were charged an ETF.  The *Waudby* complaint alleges that Verizon

Wireless's ETF is invalid under Section 201 of the Communications Act and other laws.

Petitioner's Exhibit 1.[1]  The *Waudby* complaint alleges that the arbitration agreement in the

CSA to which Waudby is a party is unenforceable, and on this basis seeks to pursue claims in

court on a class-wide basis.  *Id.* ¶¶ 26-29.  The case was assigned to Judge Freda L. Wolfson.

Verizon Wireless, in answering the complaint, contended that Waudby must arbitrate

his individual claims pursuant to the February 2006 CSA.  Petitioner's Exhibit 2.  This CSA

expressly prohibits class arbitration and further provides that the agreement to arbitrate will

not apply if the class arbitration waiver is found to be unenforceable.  On December 27, 2007

- before the Arbitrator issued the Class Award - Verizon Wireless filed a motion to compel

individual arbitration of Waudby's claims.  Petitioner's Exhibit 3.  In this motion, Verizon

Wireless argued that Waudby's CSA was governed by New York law, under which an

arbitration clause with a class waiver is enforceable.  *Id.*  Verizon Wireless's motion further

stated that, if the court were to find the class arbitration waiver in Waudby's CSA

unenforceable, the entire arbitration agreement would also be unenforceable such that "[t]he

---

[1]  All exhibits referenced herein as Petitioners' Exhibit are either attached to the Declaration
of Hojoon Hwang in Support of Petitioners' Opposition to Respondents' Motion for an Order
to Show Cause and Temporary Restraining Order.  All exhibits referenced herein as
"Respondents' Exhibit" are attached to the March 14, 2008 Declaration of Scott A. Bursor.

Court may not issue, and Verizon Wireless does not seek, an order compelling class-wide arbitration." *Id.* at 4 n. 2.

Waudby opposed Verizon Wireless's motion, asserting that the class arbitration waiver is an unenforceable exculpatory clause. Petitioner's Exhibit 4. Waudby also asserts that, if the class arbitration waiver is invalidated, the arbitration clause as a whole is unenforceable, because the class arbitration waiver is not severable from the arbitration clause. *Id.* at 28 n. 13. The briefing on this motion was completed on March 4, 2008. No hearing date has been set.

While these events were unfolding, counsel for the claimants in the arbitration, Respondents herein, attempted, but failed, to take control of the *Waudby* Action. On November 13, 2007, an alleged member of the putative *Waudby* class, represented by Respondents' counsel, filed a motion to intervene and to have his counsel designated as interim class counsel. On February 14, 2008, a United States Magistrate Judge denied these motions. Petitioner's Exhibit 5. The judge instead appointed Waudby's counsel as interim class counsel, finding that his counsel have "acted diligently and appropriately throughout their representation of this case" (*id.* at 7), "are more experienced, have completed more work, and will be able to devote more resources to this litigation than [Claimants'] attorney(s)" (*id.* at 8), and are "more appropriate representative[s] of the interim class" (*id.* at 9). That order is now on appeal to Judge Wolfson.

C.    **The Arbitration Proceedings Concerning Injunction Award**

Unable to obtain a favorable ruling in New Jersey, Respondents asked the Arbitrator to grant the same relief. Respondents advanced two concerns that they claimed justified an injunction stopping the *Waudby* Action and preventing other parallel class litigation. First, Respondents allegedly feared that Verizon Wireless might seek to enter into a settlement of

- 5 -

the *Waudby* Action without their involvement.  *See* Respondents' Exhibit 3.  Second,

Respondents were concerned that the *Waudby* court may issue rulings at odds with the

Arbitrator's determinations.  *See* Respondents' Exhibit 5.   In particular, Respondents noted

that Verizon Wireless's motion to compel individual arbitration might result in a ruling from

the *Waudby* court that either (1) accepted Verizon Wireless's contention that the class

arbitration waiver was enforceable, or (2) found the waiver unenforceable and deemed the

arbitration agreement ineffective, thus allowing the action to proceed in court.  *Id.* at 3.  In

opposition to the Respondents' motion, Verizon Wireless pointed out that its appeal of the

Class Award to this Court deprived the Arbitrator of jurisdiction over matters encompassed

on that appeal, including the issuance of an injunction, and that, in any event, the Arbitrator

lacked the authority to enjoin a federal court proceeding in the circumstances of the case.

Respondents' Exhibit 4.

After hearing argument from the parties, the Arbitrator stated a concern that the

pending motion to compel arbitration was in "conflict" with the Class Award.  Respondents'

Exhibit 6 (Transcript) at 48.  He then stated that he would issue the requested injunction and

asked Respondents' counsel to prepare a proposed award.  *Id.* at 71-73.  The Arbitrator

adopted the Injunction Award on March 10, 2008.  Respondents' Exhibit 7.  The Injunction

Award states:

> Class members who have not opted out of Class A and/or Class B are
> hereby enjoined from bringing any class action or asserting or prosecuting
> any class claim that could potentially prejudice the claims asserted on
> behalf of Class A and/or Class B in this Arbitration.
>
> Nothing herein shall be construed to enjoin any class member who opts
> out of Class A and/or Class B from bringing or prosecuting any action on
> an individual claim as opposed to a class claim. . . .

The injunction set forth above shall remain in effect at least until Judge
Kaplan has ruled on the pending petition to vacate the Class
Determination Award.

*Id.* at 2-3.

## ARGUMENT

"A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, *and* (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. Direct TV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007) (internal quotation marks omitted) (emphasis in the original). Respondents have not met, and cannot conceivably meet, this burden.

### A.      The Injunction Award Is Plainly Unlawful Under Controlling Law

Respondents cannot demonstrate that they have a likelihood of success on the merits or that there are substantial questions concerning the merits because the Injunction Award clearly exceeded the Arbitrator's authority under any standard of review.[2] Respondents'

---

[2] The unique and weighty federal interests at issue in this Motion require *de novo* review of the Injunction Award. Rather than adjudicating the rights of consenting private litigants, the Injunction Award directly interferes with the rights of the federal courts to proceed with cases within their jurisdiction. The extent to which such interference will be permitted must be decided by the Court, not the Arbitrator. Moreover, the Injunction Award is directed at Waudby who has asserted to the New Jersey District Court that he has not validly agreed to arbitrate at all. Waudby has a right to have the New Jersey court determine that issue, presented to that court in a fully briefed motion, independently. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996) (whether there is a "valid arbitration agreement between the parties" is a "question for the court to decide unless the parties have unmistakably assigned that task to the arbitrator."). The Injunction Award, if not reviewed *de novo*, will accomplish an end-run around the independent standard of review that applies to the determination of whether Waudby agreed to arbitrate on a class basis and, if not, whether his claims should proceed in court. In any event, as shown below, the Injunction Award would be invalid even under a manifest disregard standard.

- 7 -

argument that an arbitrator has the authority to grant equitable relief (Motion at 6) fails to address the critical issues, namely, whether the Arbitrator had the authority to enjoin a federal court proceeding and whether the Arbitrator could lawfully do so while the appeal of the underlying Class Award, on which the injunction is based, is pending in this Court. As shown below, he had no such authority.

      **1.     The Arbitrator Had No Authority to Enjoin a Federal Court Proceeding in the Circumstances of this Case.**

Respondents argue that the Arbitrator had the authority to issue the injunction because the parties' arbitration clause provides that an arbitrator can grant any relief that a court may. *See* Motion at 4; Respondents' Exhibit 6 at 34:15-17 (Respondents' counsel stating "[s]o if Judge Kaplan has authority to do it, you must also under the agreement have authority to do it.").

However far such authority may extend, this clause by its own terms does not give the Arbitrator any *greater* power than a court would have in this context. The Arbitrator and the federal courts (to whom the injunction is directed) are tribunals of different jurisdiction and not courts of co-equal dignity. Thus, the Arbitrator's power is analogous to that of a federal court considering an injunction against state court proceedings. In those circumstances, the law is clear that a federal court could not enjoin such proceedings, and the Arbitrator manifestly disregarded these established limitations on his authority in issuing the Injunction Award.

The settled rule is that, where parallel proceedings on substantially the same in personam claims are pending in two jurisdictions, the proceedings "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731

F.2d 909, 926-27 (D.C. Cir. 1984); *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977); *Retirement Systems*, 386 F.3d at 426.  In *Retirement Systems*, the Second Circuit expressly held that federal courts may not enjoin proceedings in other courts to prevent the possibility of contrary rulings or out of a desire to prevent delays to their own proceedings. Just as this Court could not stay actions in other courts, absent conditions (such as a pending class action settlement) that are not present here, the Arbitrator similarly lacked such authority.

In *Retirement Systems*, Judge Cote was presiding over a securities class action in the multifaceted *WorldCom* matter.  Similar claims had been brought in an Alabama state court. The defendants asked the Alabama judge to delay the trial date until after the conclusion of the matter before Judge Cote, but the judge refused.  The defendants then asked Judge Cote to enjoin the Alabama judge from "resolving any summary judgment motion or beginning the trial in [the Alabama Action] until at least sixty days following the entry of a verdict in the class action trial," and she entered that order.  386 F.3d at 423.  Judge Cote held that "the injunction was necessary in aid of its jurisdiction because it was "necessary to preserve the schedule in the *Securities Litigation* and to keep the federal MDL litigation on its own 'path to judgment.'"  *Id.* at 424.

The Second Circuit reversed.  Distinguishing the situation it considered in *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), in which it upheld a district judge's injunction of parallel proceedings in the context of a pending nationwide class action settlement to which the judge had granted preliminary approval, the Second Circuit held that "*Baldwin-United* did not create a blanket rule or presumption that a federal court in any multidistrict action may enjoin parallel state proceedings."  *Retirement Sys.*, 386 F.3d at 427.

- 9 -

> As an initial matter, we note that a federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest-no interest that can be vindicated by the exercise of the federal injunction power-in being the *first* court to hold a trial on the merits. We have held that a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues of collateral estoppel:

>> There is no reason why [a] state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal.

*Id.* at 429 (quoting *Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir. 1971)).  The Arbitrator's Injunction Order contravenes *Retirement Systems.*  As the Second Circuit noted in that case, every Court of Appeals to consider the issue has reached the same conclusion. *See* 386 F.3d at 429-430 (citing cases).

The Arbitrator sought to evade this rule by basing the injunction on the purported need to "preserve [his] ability . . . to make a meaningful final award on the merits of this action."  Respondents' Exhibit 7 at 2.  Although the All Writs Act authorizes injunctions "in aid of" a federal court's "jurisdiction, or to protect or effectuate its judgments," 28 U.S.C.A. § 1651(a) and Note of Decisions I.2[3], that statute does not justify an injunction to avoid the possibility of inconsistent rulings by another tribunal or a ruling that could give rise to a res

---

[3]  Many of the cases in this area address both the All Writs Act, which is an affirmative grant of authority to federal courts, and the Anti-Injunction Act, 28 U.S.C. § 2283, which sets forth limitations on that authority with respect to injunctions against state court proceedings.  The fact that the Arbitrator enjoined a federal, as opposed to a state, court proceeding does not make these authorities any less applicable.  First, the Arbitrator, a mere private actor, owes no less deference to federal courts than federal courts owe to state courts.  Second, even where the Anti-Injunction Act does not apply, the federal court's authority cannot exceed that granted by the All Writs Act.  Because the two statutes use similar language, the scope of a federal court's authority under the All Writs Act is similar to that permitted by the Anti-Injunction Act.  *See Retirement Systems*, 386 F.3d at 425 n. 5.

- 10 -

judicata bar. To the contrary, "an action brought to enforce [personal] liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Retirement Systems*, 386 F.3d at 426 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922)); *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 329 (3d Cir. 2007) (it is not sufficient to invoke the in-aid-of-jurisdiction authority that "prior resolution of a state court action will deprive a federal court of the opportunity to resolve the merits of a parallel action in federal court."). Neither the prospect that the *Waudby* Action will reach judgment first and could be "pled as res judicata" (*Vendo*, 433 U.S. at 632) in the *Brown/Zobrist* proceeding, nor the risk that the *Waudby* court may issue rulings reaching different conclusions than the Arbitrator, can support and injunction against the *Waudby* Action. As one court in this District recently explained:

> Although parallel litigation may present a risk of inconsistent judgments, courts have nevertheless held that when a judgment is rendered in one court, 'the effect of that judgment is to be determined by the application of the principles of res judicata by the court in which the action is still pending in the orderly exercise of its jurisdiction.' *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. at 642, 97 S.Ct. 2881 (quoting *Kline v. Burke Constr. Co.,* 260 U.S. at 230, 43 S.Ct. 79). In other words, the possibility of inconsistent judgments is not an interference with a court's jurisdiction because the doctrine of res judicata provides a way for the court to deal with prior judgments "as it would determine any other question of fact or law arising in the progress of the case." *Kline,* 260 U.S. at 230, 43 S.Ct. 79.

*U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 523 F. Supp. 2d 328, 337 (S.D.N.Y. 2007); *see also SR Int'l Business Ins. Co. Ltd. v. World Trade Center Properties, LLC*, 445 F. Supp. 2d 356, 360-361 (S.D.N.Y. 2006). Accordingly, the Arbitrator could not base his authority on the purported need to prevent a ruling by the *Waudby* court that would be res judicata or on the possibility of inconsistent rulings in the *Waudby* Action.

### 2. The Arbitrator Lacked Jurisdiction to Issue the Injunction in Light of the Pending Appeal of the Class Award

Under settled law, when an appeal is taken from an order of a lower court, the appeal deprives the court of jurisdiction to act with respect to all matters encompassed by that appeal. "The filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 271 (2d Cir. 1994). The Arbitrator violated this rule in issuing the Injunction Award.

*Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986), cited to the Arbitrator, considered a virtually-identical situation. In *Henry*, plaintiffs sued in a federal court in Illinois alleging RICO and other violations of federal law against defendants arising from a mortgage foreclosure, which complaint was dismissed by the district court. 808 F.2d at 1231-32. Plaintiffs filed a notice of appeal from the dismissal. Thereafter, plaintiffs filed a complaint in Illinois state court asserting state law claims based on the same set of facts. *Id.* at 1232. Defendants then asked the federal court, whose order dismissing the federal claims was on appeal in the Seventh Circuit, to enjoin plaintiffs from litigating their state law claims, and the district court issued an injunction. *Id.*

The Seventh Circuit held that the district court acted in excess of its jurisdiction because the notice of appeal "divest[ed] the district court of its control over those aspects of the case involved in the appeal." *Id.* at 1240. The court rejected the district court's reasoning that the injunction was necessary to protect its judgment, and explained as follows:

> The Supreme Court in *Griggs* emphasized, however, that 'a

4647200.1

> federal district court and a federal court of appeals should not
> attempt to assert jurisdiction over a case simultaneously.' 459
> U.S. at 58, 103 S.Ct. at 402. This case illustrates the potential
> danger of their attempting to do so.
>
> In issuing its injunction, the district court naturally assumed
> that its rulings would be upheld on appeal. At the time that the
> notice of appeal was filed, however, it was possible that the
> district court would be reversed. Had we reversed the dismissal
> of the amended complaint, the district court would then have
> been in the unenviable position of having issued an injunction
> to protect and effectuate a judgment reversed on appeal.  It is
> precisely such conflicting rulings that the rule transferring
> jurisdiction from the district to the appellate court upon the
> filing of a notice of appeal is designed to prevent.

808 F.2d at 1241.  Relying on *Henry*, the Sixth Circuit reached the same result in *American*

*Town Center v. Hall 83 Associates*, 912 F.2d 104, 110-11 (6th Cir. 1990), and held that the

district court lacked authority to enjoin a state court proceeding while the court's judgment

was on appeal.  As the *Henry* court stated, any request for an injunction should have been

directed to this Court, as the reviewing court.  *See Henry*, 808 F.2d at 1241 ("[t]he defendants

should have filed their motion for an injunction with this Court.").[4]

The Arbitrator's determination in the Class Award that the express class action

waiver and nonseverability provision contained in CSAs like Waudby's are invalid is at the

heart of Verizon Wireless's motion to vacate the Class Award.  Indeed, the Arbitrator's

jurisdiction to enjoin Waudby, as a member of the class he purported to certify, depends

entirely on those determinations.  If the Court vacates the Class Award's conclusions in these

respects, the foundation of the injunction would evaporate.  As such, the requested injunction

---

[4] When asked by the Arbitrator why Respondents did not seek such an order from this Court,
Respondents' counsel frankly admitted that he preferred to obtain an injunction from the
Arbitrator and then seek to shield it from scrutiny by invoking a deferential standard of
review.  Respondents' Exhibit 7 at 27:1-4 ("I don't want to use a phrase like rubber stamp or
anything like that, but the grounds for review of your order would be very narrow.").

lies at the core of the "aspects of the case involved in the appeal," *Griggs*, 459 U.S. at 58, and

the Arbitrator was prohibited from exercising any jurisdiction to enforce or protect his

determinations in the Class Award while the motion to vacate that award is pending in this

Court.

The limitation on the Arbitrator's authority to issue an injunction to protect the Class

Award applies regardless of this Court's ultimate disposition of the motion to vacate the

Class Award.  In *Henry*, the Seventh Circuit reversed the district court's underlying judgment

of dismissal, but nonetheless held that the pendency of the appeal deprived the district court

of the power to enjoin a state court proceeding based on that judgment.  Likewise here, the

Court should vacate the Injunction Award regardless of its disposition of the Class Award,

because the Arbitrator lacked jurisdiction to issue the Injunction Award.

### B.      Respondents Have Not Demonstrated A Likelihood Of Irreparable Harm

Nor could Respondents establish a likelihood of irreparable harm, necessary to

support a temporary restraining order.  As *Retirement Systems* and its progeny make clear,

the possibility of inconsistent adjudication of an issue in parallel proceedings is simply not a

cognizable harm that one tribunal can invoke to support an injunction against another

tribunal.  *See supra* at 8-11.  Moreover, even if such harms were cognizable and the *Waudby*

court reaches a decision on the validity of Mr. Waudby's arbitration agreement contrary to

the Arbitrator's conclusion, there would be no irreparable harm; Respondents will still be

able to obtain this Court's own review of the Arbitrator's Class Award in the motions

pending in this case.

The possibility of a settlement in the *Waudby* Action is likewise insufficient to

demonstrate irreparable harm.  As Verizon Wireless represented to the Arbitrator

(Respondents' Exhibit 6 at 11:4-13:2), no settlement of Waudby is imminent.  Indeed, even if a settlement had been reached in *Waudby*, the Arbitrator would not have been authorized to enjoin it absent a pending settlement in the arbitration.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 145 (3d Cir. 1998) (where there was "no classwide settlement pending before the [enjoining] court, . . . and no stipulation of settlement or prospect of settlement in that court is imminent," the district court could not enjoin a pending class settlement in Louisiana state court to protect its own jurisdiction).

Moreover, any settlement in the *Waudby* Action would be subject to review by the New Jersey District Court.  The Third Circuit's decision in *Grider*, 500 F.3d at 329, is on point.  In *Grider*, the Third Circuit held that the district court abused its discretion by enjoining settlement proceedings in another federal court, finding that "there *is simply no support* for the proposition that a court may enjoin parties from participating in or reaching a bona fide settlement in another federal court that may dispose of claims before it - particularly when there is no pending settlement in the enjoining court."  500 F.3d at 331 (emphasis added).  The possibility that a competing proceeding will result in an inadequate or collusive settlement does not support an injunction, particularly when the settlement is proposed in a class action in federal court.  The court aptly noted that an injunction is an extraordinary remedy that should not be granted if there is an adequate remedy at law.  *Id.* at 332.  The court stated:

> Here, that adequate remedy at law is Federal Rule of Civil Procedure 23(e), which provides that '[a]ny class member may object to a proposed settlement' . . . To the extent that the actual proposed settlement in [the court to be enjoined] affects the *Grider* class members unfairly, those class members may object, and [the court to be enjoined] can deal with the objections.  Indeed, . . . courts must operate on the basis of the assumption that all federal judges follow the

law and protect the rights of the class members in accordance with
Rule 23 of the Federal Rules of Civil Procedure..

500 F.3d at 332 (internal quotation marks and citation omitted).

As applied here, a settlement in *Waudby*, even if one were to materialize, could not support a claim of irreparable harm as a matter of law because Judge Wolfson in the New Jersey District Court can be presumed to follow the requirements of Rule 23 to determine whether any such settlement would be fair to the class. There is no basis to question her ability and willingness to do so. Respondents and other class members retain the right to object to any such settlement and to present their arguments to her, if and when any settlement is reached in *Waudby*.

**C.    The Validity Of The Injunction Award Presents An Issue Distinct From The Validity Of The Class Award**

Respondents seek to minimize the prejudice to Verizon Wireless and Waudby that would result from a temporary restraining order by noting that the injunction would expire if the Court grants Verizon Wireless's petition to vacate the Class Award. Motion at 3, 6-7. This attempt to conflate the two awards is wrong. While the Injunction Award must, of necessity and by its terms, be vacated if the Class Award is vacated, the reverse is not true. Even if the Class Award were upheld - and it should not be, for reasons set forth in Verizon Wireless's pending motion to vacate - the Injunction Award would still present the separate question of whether the Arbitrator has the authority to enjoin pending proceedings in a federal court. As shown above, the Arbitrator had no such authority in the circumstances of this case. Moreover, as Respondents concede, the Injunction Award is a final reviewable order under the FAA (Motion at 5), and the Court has jurisdiction to review it regardless of

how it determines Respondents' pending motion to dismiss, which concerns the reviewability of the Class Award.

Accordingly, Verizon Wireless would be prejudiced by the requested relief because it has a right to defend itself in the *Waudby* Action and to obtain rulings on critical issues, regardless of whether the Class Award is valid or unreviewable.  The Injunction Award seeks to take away that right, which does not depend on the Class Award being vacated.  In light of Respondents' failure to establish the prerequisites for temporary equitable relief, the Motion should be denied, and the parties should be ordered to brief the merits of the Injunction Award.

## CONCLUSION

For the foregoing reasons, this Court should deny the Motion.


Dated:  New York, New York
        March 14, 2008

                                        Respectfully submitted,

                                        Henry Weissmann
                                        Hojoon Hwang
                                        Jonathan H. Blavin
                                        MUNGER, TOLLES & OLSON LLP
                                        355 South Grand Avenue, Suite 3500
                                        Los Angeles, CA  90071-1560
                                        Tel:  213-683-9100 – Fax:  213-687-3702

                                        Jeffrey S. Jacobson
                                        Carl Micarelli
                                        DEBEVOISE & PLIMPTON LLP
                                        919 Third Avenue
                                        New York, NY  10022-3916
                                        Tel:  212-909-6000 – Fax:  212-909-6836


                                        By:    /s/ Carl Micarelli
                                               Carl Micarelli (CM 5332)
                                               Email: cmicarelli@debevoise.com

- 17 -

Attorneys for Petitioners Cellco Partnership
d/b/a Verizon Wireless and Verizon
Communications Inc.

4647200.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, :
and VERIZON COMMUNICATIONS INC., :

                                Petitioners, :

          vs. :

PATRICIA BROWN, HAROLD P. SCHROER, and :
DAWN M. ZOBRIST, on an individual basis and on :
behalf of others similarly situated, :

                            Respondents. :

                                       :

--------------------------------------------------------------------x

No. 08 CV 427 (LAK)

**DECLARATION OF HOJOON HWANG IN SUPPORT OF VERIZON WIRELESS'S OPPOSITION TO RESPONDENTS' MOTION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

I, Hojoon Hwang, declare as follows:

1.      I am a member of the Bar of the State of California associated with Munger, Tolles & Olson LLP and am one of the attorneys for Cellco Partnership d/b/a Verizon Wireless and Verizon Communications, Inc. (collectively, "Verizon Wireless") in the arbitration that is the subject of this proceeding. I am personally familiar with the proceedings in the arbitration. I make this declaration based upon personal knowledge and, if called as a witness, could and would testify competently to the matters set forth herein.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Class Action Complaint, *Waudby v. Verizon Wireless Services, LLC*, Civil Action No. 07-470 (FLW) (D.N.J. Jan. 25, 2007) (Docket #1).

3.      Attached hereto as Exhibit 2 is a true and correct copy of Answer and Counterclaims of Defendant Cellco Partnership d/b/a Verizon Wireless, *Waudby v. Verizon Wireless Services, LLC*, Civil Action No. 07-470 (FLW) (D.N.J. March 23, 2007) (Docket #8).

4.      Attached hereto as Exhibit 3 is a true and correct copy of the Notice and Brief of Defendant Cellco Partnership d/b/a Verizon Wireless in Support of Motion to Compel

Arbitration of Plaintiffs' Individual Claims, *Waudby v. Verizon Wireless Services, LLC*, Civil Action No. 07-470 (FLW) (D.N.J. Dec. 27, 2007) (Docket # 33 & 33-2).

5.    Attached hereto as Exhibit 4 is a true and correct copy of the Brief in Opposition to Motion to Compel Individual Arbitration, *Waudby v. Verizon Wireless Services, LLC*, Civil Action No. 07-470 (FLW) (D.N.J. Feb. 19, 2008) (Docket # 53).

6.    Attached hereto as Exhibit 5 is a true and correct copy of Memorandum Opinion & Order, *Waudby v. Verizon Wireless Services, LLC*, Civil Action No. 07-470 (FLW) (D.N.J. Feb. 14, 2008) (Docket # 51 & 52).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2008

_____

Hojoon Hwang

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

JOHN WAUDBY, individually and on behalf of
all others similarly situated,

               Class Plaintiff,

    v.

VERIZON WIRELESS SERVICES, LLC and
CELLCO PARTNERSHIP, d/b/a VERIZON
WIRELESS,

               Defendants.

Case No.: 07-CV- 470 (FLW)

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

    Plaintiff John Waudby, individually and on behalf of others similarly situated, complains

against defendants Verizon Wireless Services, LLC and Cellco Partnership d/b/a Verizon

Wireless ("Verizon" or "Defendant"), upon personal knowledge as to himself and his own acts,

and as to all other matters upon information and belief, based upon, *inter alia*, the investigation

made by his attorneys, as follows:

**I.    OVERVIEW OF THE ACTION**

    1.    Plaintiff brings this action individually and on behalf of a proposed class of

persons who were injured by Verizon's business acts and practices.

    2.    The proposed class consists of persons and entities who had Verizon accounts and

were charged an "Early Termination Fee" (also referred to herein as "ETF") when they cancelled

their Verizon wireless service, as defined more fully herein.

    3.    Through a uniform scheme and common course of conduct, Verizon charged

Plaintiff and other Verizon customers an ETF of $175.00 if they cancelled their wireless service

at any time after a trial period but before the end of the "service plan" term, regardless of their



reason(s) for cancellation.

4.      As alleged herein, Verizon's ETF gives rise to Plaintiff's claims for violation of:

(1) the Federal Communications Act; (2) New Jersey Consumer Protection Act, (3) alternatively,

violations of the substantially similar laws of certain states, and (4) Declaratory Relief pursuant

to 28 U.S.C. § 2201.

## II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action

involving more than 100 class members.  A member of the class is a citizen of a state different

from defendant, and the amount in controversy, in the aggregate, exceeds the sum of

$5,000,000.00 exclusive of interest and costs.

6.      Venue is proper under 28 U.S.C. § 1391(c), as Defendant maintains its principal

place of business in Bedminster, New Jersey, and regularly transacts business here.

## III.    PARTIES

7.      Plaintiff John Waudby is a natural person and resident of New York who was

charged an ETF.

8.      Defendants Verizon Wireless Services, LLC and Cellco Partnership, d/b/a Verizon

Wireless are both Delaware corporations with principal places of business in Bedminster, New

Jersey.

## IV.    FACTS

### Early Termination Fees

9.      Verizon requires its customers to abide by a wireless customer service agreement

("Agreement").

10.    Verizon distributes the Agreement on preprinted standardized forms that are not subject to modification or negotiation, or, if the consumer is shopping on the Internet, through read-only screens that cannot be modified by users; Verizon presents these Agreements to prospective subscribers on a "take it or leave it" basis. These Agreements are therefore contracts of adhesion.

11.    Each of Verizon's Agreements includes, as a term and condition of service, a purported liquidated damages clause that requires subscribers to pay early termination penalties if for any reason they seek to terminate service before the expiration of the contract period, which is typically one or two years.

12.    These early termination penalties are also due if Verizon terminates the agreement for, among other things, nonpayment by the customer.

13.    The specified penalty for customers terminating service before the expiration of a specified term is typically $175.00 per line, as demonstrated from the following clause in the "Verizon Terms and Conditions":

> EARLY TERMINATION FEE: If you select any one (1) or two (2) year Calling Plan and cancel Service during your Minimum Term, then you are responsible for a $175.00 Early Termination Fee in addition to all other outstanding charges on your account. ...

14.    The early termination penalty does not vary during the term of the contract. The customer is required to pay the full penalty whether he or she cancels fifteen calendar days into the contract or one day before the date it is scheduled to expire.

15.    The customer must pay the early termination penalty even if cancellation is the result of non-existent, poor, or otherwise inadequate service provided by Verizon.

16.    The early termination is a penalty, and, in fact, is not a reasonable measure of the anticipated or actual loss that the termination causes Verizon.

-3-

17.     Apparently, the actual purpose of the early termination fee is to recoup equipment costs – an admission recently made by the international association that represents the wireless communication industry, the Cellular Telecommunications and Internet Association (CTIA) – of which Verizon is a member – in a filing to the FCC: "The longer assured commitment under these term contracts enables the carriers *to reduce handset prices* at the inception of the term and to reduce monthly service charges, based on the expectation that initial and ongoing costs can be recouped gradually over time."[1]

18.     Verizon therefore disguises a fee to recover equipment costs as a liquidated damages clause, which is an illegal penalty when the damages are readily calculable. The termination fee is not actually designed to compensate Verizon for any damages arising from the termination, but has the effect and purpose of locking in the subscribers of Verizon and discouraging them from switching to competing services (what is known as "churn").

19.     Verizon's early termination penalty discourages competition in the wireless industry because consumers cannot freely shop around for the best wireless service.

20.     The early termination penalty is not a rate charged by Verizon, nor is it part of Verizon's rate structure, nor is it a rate component charged for any "service." It is part of the "Terms and Conditions" and can only be categorized as an illegal penalty provision.

21.     The termination penalty imposed by Verizon is an illegal and void liquidated damages provision. It constitutes an unjust, unconscionable, unlawful, unfair and deceptive practice under all applicable statutes.[2]

---

[1]     "Petition of the Cellular Telecommunications and Internet Association for an Expedited Discovery Ruling," page 15, March 15, 2005, FCC, WT-05-194.

[2]     At the Yankee Group wireless conference in New York in June of 2006, Verizon's Chief Executive, Denny Strigl, announced that Verizon would pro-rate its termination fees, stating "complaints on this issue [ETFs] [are] the single largest that our customers have. . . .It's a legitimate complaint: If they leave in month one or month 23, [customers] pay the same charge." Strigl further referred to ETFs as a "black eye" on the cellular industry. *Verizon to ease termination fees*, Bruce Myerson, June 28, 2006, http://www.msnbc.msn.com/id/13600607/

22.    Furthermore, Plaintiff is informed and believes that any request for a change in service can only be granted with a renewal of the initial contract term, thereby extending the contract an additional year (or two years) as of the date of the modification. This required extension further discourages Plaintiff and Class members from changing their service to obtain lower prices or otherwise modify their plan because it reinstates early termination penalties.

23.    Plaintiff is informed and believes that many if not the majority of Verizon's customers are locked into Verizon's customer service agreements beyond the initial one- or two-year period, at which point Verizon no longer needs to recover alleged customer acquisition costs.

24.    Plaintiff is informed and believes that Verizon's early termination penalty provisions have permitted Verizon to collect revenues and generate enormous profits as a result of: (a) the payment of the early termination penalties; and (b) the revenue generated by tethering Plaintiff to Verizon's service for at least the original contract period, and, in most cases, for additional years.

25.    Plaintiff Waudby began using Verizon wireless cellular service in 2002. Upon upgrading his phone in February 2006 (for which Verizon forced him to sign a new contract), he was unable to use the phone due to repeated dropped calls. Plaintiff made multiple (more than 50) calls to Verizon for assistance in resolving this lack of service. When Verizon failed to address Plaintiff's lack of service, he cancelled his subscription. Notwithstanding his reasons for cancellation, Verizon charged Plaintiff a $175.00 "early termination fee."

V.    **NO ENFORCEABLE AGREEMENT TO ARBITRATE**

26.    Defendant has inserted clauses into its "terms and conditions" that purport to impose mandatory arbitration. However, these terms and conditions constitute contracts of adhesion insofar as they are drafted entirely by the Defendant on a take-it-or-leave-it basis in a setting in which disputes between the contracting parties predictably involve small amounts of damages. Plaintiff had neither the bargaining power nor the ability to change the contractual

terms. Defendant relies on its purported mandatory arbitration provisions to shield it from civil liability. In practice, the waiver virtually immunizes the defendants from responsibility for their own wrongful conduct. Such waivers are unconscionable under the law of this Circuit and New Jersey state law, and should not be enforced.

27.    The mandatory arbitration provision in contracts like Verizon's contracts have repeatedly been held unenforceable. *See, e.g., Muhammad v. County Bank of Rehoboth Beach, Delaware,* 912 A.2d. 88, 2006 WL 2273448 (N.J., August 9, 2006); *Ting v. AT&T Corp.,* 319 F.3d 1126 (9th Cir. 2002), *cert. denied,* 540 U.S. 811 (2003); *Discover Bank v. Superior Court,* 36 Cal.4th 148 (2005); *Kinkel v. Cingular,* No. 100925, 223 Ill.2d 1, 2006 WL 2828664 (October 5, 2006); compare *Zobrist v. Verizon Wireless,* 354 Ill.App.3d 1139 (Ill. 5th Dist., 2004) (compelling class-wide arbitration).

28.    The delay incurred by these motions imposes unnecessary and burdensome costs on customers who assert meritorious claims, and ultimately discourages customers from pursuing their legal rights. *See, e.g.,* Ting, 319 F.3d 1126.

29.    On information and belief, Verizon has never used arbitration to resolve its own claims against a customer. Instead, it has resolved scores of claims against customers by assigning them to collection agencies who then pursue a variety of means to resolve them, including filing lawsuits, but not arbitration.

## VI.    CLASS ACTION ALLEGATIONS – EARLY TERMINATION FEE (ETF) CLASS

### A.    Definition of the Class

30.    Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below, of which Plaintiff is a member (the "ETF Class"):

> All persons and entities who Verizon charged an "Early
> Termination Fee."

**B.　　Numerosity**

31.　　At this time, Plaintiff does not know the exact size of the ETF Class; however,

due to the nature of the trade and commerce involved, Plaintiff believes that ETF Class members

are so numerous that joinder of all members is impracticable. The number of class members can

be determined through appropriate discovery.

**C.　　Commonality**

32.　　There are questions of law or fact common to the ETF Class, including at least the

following:

(a)　　Whether the ETF is unjust, unreasonable and/or unlawful;

(b)　　Whether Defendant's conduct violated the Federal
Communications Act;

(c)　　Whether Defendant charged ETF Class members a $175.00 "Early
Termination Fee";

(d)　　Whether the ETF is unjust, and/or unlawful;

(e)　　Whether Defendant's conduct constitutes deceptive, unfair and/or
oppressive conduct;

(f)　　Whether Defendant was unjustly enriched;

(g)　　Whether Defendant intended the ETF to subsidize the cost of
cellular telephones purchased by Plaintiff and the ETF Class from
Defendant;

(h)　　Whether Declaratory Relief is appropriate; and

(i)　　Whether Plaintiff and the ETF Class have been damaged, and if so,
the proper measure of such damages.

**D.　　Typicality**

33.    Plaintiff has the same interests in this matter as all other members of the ETF class, and his claim is typical of all members of the class.

**E.    Adequacy**

34.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of ETF Class members and does not have interests adverse to the ETF Class.

**F.    The Prerequisites of Rule 23(b)(2) are Satisfied**

35.    The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the ETF Class thereby making appropriate final injunctive and equitable relief with respect to the ETF Class as a whole.

36.    The prosecution of separate actions by members of the ETF Class would create a risk of establishing incompatible standards of conduct for Defendant. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of the ETF Class, who would not be parties to those actions.

37.    Defendant's actions are generally applicable to the ETF Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the ETF Class as a whole.

38.    Defendant's systemic policy and practices make declaratory relief with respect to the ETF Class as a whole appropriate.

**G.    The Prerequisites of Rule 23(b)(3) are Satisfied**

39.    This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the ETF Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the ETF Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual ETF Class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the ETF Class defined above.

### COUNT I
### (Violation of § 201 of the Federal Communications Act)

40.    Plaintiff repeats and realleges the allegations of the prior paragraphs as if fully set forth herein.

41.    At all times relevant hereto there was in full force and effect the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*

42.    Verizon is a common carrier engaged in interstate or foreign communication by wire or radio, and is subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq.*

43.    Verizon's termination penalties, described above, are charges and/or practices in connection with communication service, subject to the requirements of 47 U.S.C. § 201(b).

44.    Section 201(b) of the FCA provides that all charges, practices, classifications, and regulations for and in connection with communication service, shall be just and reasonable. 47 U.S.C. § 201(b).

45.    Verizon's ETFs are unjust, unreasonable and/or unlawful under Section 201(b).

46.     As a direct and proximate result of Defendants' violation of 47 U.S.C. §§ 201(b) described above, Plaintiff and the Class have been damaged.

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and counsel as Class counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.     Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.     Granting such further relief as the Court deems just.

**COUNT II**
**(Violation of New Jersey Consumer Fraud Act)**

47.     Plaintiff repeats and realleges the allegations of the prior paragraphs as if fully set forth herein.

48.     Plaintiff brings this claim pursuant to the New Jersey Consumer Fraud Act (NJCFA), which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices. *See, e.g.,* N.J. Rev. Stat. § 56:8-1 *et seq.*

49.     N.J. Rev. Stat. § 56:8-2 provides:

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice"

-10-

50.    At all relevant times, Plaintiff, Class members and Defendant were "persons" within the meaning of N.J. Rev. Stat. § 56:8-1.

51.    The imposition of an ETF is an act or practice in the conduct of trade or commerce.

52.    The imposition of an ETF impacts the public interest.

53.    The imposition of an ETF is deceptive because Defendant describes it as a liquidated damages clause and states that its damages are difficult or impracticable to calculate, when, in fact, it is a charge to recover the cost of equipment, and Defendant's damages are in fact quite simple to recover.

54.    The imposition of an ETF is unfair because it is imposed even when Defendant fails to properly provide class members with the wireless cellular services for which they contracted; while class members are always at risk of breach, Defendant is never at risk of breach.

55.    Defendant's ETF is an illegal penalty and is therefore unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, Verizon turns "delinquent" accounts over to collections and has one's credit history negatively impacted); and causes consumers substantial injury.

56.    Plaintiff and the ETF Class suffered an economic injury as a direct and proximate result of Defendant's conduct, including but not limited to the amount of the ETFs improperly charged.

57.    Defendant has committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the ETF Class defined herein;

B.  Designating Plaintiff as representative of the ETF Class and counsel as ETF Class counsel;

C.  Entering judgment in favor of Plaintiff and the ETF Class and against Defendant;

D.  Awarding Plaintiff and ETF Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.  Granting such further relief as the Court deems just.

## COUNT III
### (Violation of Substantially Similar Consumer Fraud Statutes of Certain States)

58.    Plaintiff repeats and realleges the allegations of the prior paragraphs as if fully set forth herein.

59.    This Count is brought in the alternative to Count II. The ETF Class is modified, for this count only and pending discovery, to include individuals and entities with cellular numbers or services in New York, where Plaintiff resides, and the substantially similar statutes of specific sister states,[3] all of which were enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices. *See, e.g.,* N.J. Rev. Stat. § 56:8-1 *et seq.*

---

[3]    The claims of New York citizens (such as Plaintiff) are brought under the New York Consumer Fraud Act. N.Y. Gen. Bus. Law. § 349 *et seq.* The claims of non-New York citizens are brought under the consumer protection statute(s) of their respective states. *See* Ala. Code § 8-19-1 *et seq.* (Alabama); Alaska Stat. § 45.50.471 *et seq.* (Alaska); Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.* (Arkansas); Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et seq.* (District of Columbia); Fla. Stat. Ann. § 501.201 *et seq.* (Florida); Ga. Code Ann. § 10-1-390 *et seq.* (Georgia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw. Rev. Stat. § 480-1 *et seq.* (Hawaii); Idaho Code § 48-601 *et seq.* (Idaho); 815 ILCS § 505/1 *et seq.* (Illinois); Kan. Stat. Ann § 50-623 *et seq.* (Kansas); Ky. Rev. Stat. § 367.110 *et seq.* (Kentucky); La. Rev. Stat. Ann. § 51:1401 *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* (Maine); Md. Com. Law Code Ann. § 13-101 *et seq.*, Md. Com. Law Code Ann. § 13-301 *et seq.*, Md. Com. Law Code Ann. § 13-408 *et seq.* (Maryland); Mass Gen. L. ch. 93A, § 1 *et seq.* (Massachusetts); Mich. Stat. Ann § 445.901 *et seq.*, Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Minn. Stat. § 325F.68 *et seq.*, Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et*

60. The imposition of an ETF is an act or practice in the conduct of trade or commerce.

61. The imposition of an ETF impacts the public interest.

62. The imposition of an ETF is deceptive because Defendant describes it as a liquidated damages clause and states that its damages are difficult or impracticable to calculate, when, in fact, it is purportedly an internal charge to recover equipment costs, and Defendant's damages (if any) are in fact quite simple to recover.

63. The imposition of an ETF is unfair because it is imposed even when Defendant fails to properly provide class members with the wireless cellular services for which they contracted; while class members are always at risk of breach, Defendant is never at risk of breach.

64. Defendant's ETF is an illegal penalty and is therefore unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, Verizon turns "delinquent" accounts over to collections and has one's credit history negatively impacted); and causes consumers substantial injury.

65. Plaintiff and the ETF Class suffered an economic injury as a direct and proximate result of Defendant's conduct, including but not limited to the amount of the ETFs improperly charged.

---

*seq.* (Mississippi); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); Mont. Code Ann. § 30-14-101 *et seq.* (Montana); Neb. Rev. Stat. § 59-1601 *et seq.* (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. §. 598.0903 *et seq.* (Nevada); N.H. Rev. Stat. Ann. § 358-A:1 *et seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-12-1 *et seq.* (New Mexico); N.C. Gen. Stat. § 75-1 *et seq.* (North Carolina); N.D. Cent. Code § 51-15-01 *et seq.* (North Dakota); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, § 751 *et seq.* (Oklahoma); Ore. Rev. Stat. § 646.605 *et seq.* (Oregon); Penn. Stat. § 201-1 *et seq.* (Pennsylvania); R.I. Gen. Laws § 6-13.1-1 *et seq.* (Rhode Island); S.C. Code Ann. § 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. § 37-24-1 *et seq.* (South Dakota); Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee); Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Texas); Vt. Stat. Ann. Tit. 9, § 2451 *et seq.* (Vermont); Va. Code Ann. § 59.1-196 *et seq.* (Virginia); Wash. Rev. Code § 19.86.010 *et seq.* (Washington); W. Va. Code § 46A-6-101 *et seq.* (West Virginia); and Wyo. Stat. § 40-12-101 *et seq.* (Wyoming).

66.     Defendant's conduct as alleged herein violates the substantially similar unfair and deceptive acts and practices laws of other states.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the ETF Class defined herein;

B.     Designating Plaintiff as representative of the ETF Class and counsel as ETF Class counsel;

C.     Entering judgment in favor of Plaintiff and the ETF Class and against Defendant;

D.     Awarding Plaintiff and ETF Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.     Granting such further relief as the Court deems just.

## COUNT IV
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

67.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

68.     There is an actual controversy between Verizon and all members of the ETF concerning the enforceability of the early termination fee provisions contained in the Verizon customer service agreements to which they are all parties.

69.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

70.     Plaintiff is an interested party who seeks a declaration of his and the class' rights and legal relations vis-à-vis Verizon with regard to early termination fee provisions contained in the Verizon customer service agreements to which they are all parties. Specifically, Plaintiff seeks a declaration that such provisions are unlawful and unenforceable.

-14-

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(2), and certifying the ETF / Injunction Class defined herein;

B.    Designating Plaintiff as representative of the Class and counsel as ETF Class counsel;

C.    Entering judgment in favor of Plaintiff and the ETF Class and against Defendants;

D.    Awarding Plaintiff and ETF Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.    Granting such further relief as the Court deems just.

## VIII.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

DATED:  January 25, 2007                    Respectfully submitted,

                                            **JOHN WAUDBY,**
                                            **Class Plaintiff,**

                                            _David Buchanan_
                                            One of His Attorneys

                                            David Buchanan
                                            Michael Rosenberg
                                            Scott Alan George
                                            **SEEGER WEISS LLP**
                                            550 Broad Street
                                            Suite 920
                                            Newark, New Jersey 07102

                                            Paul M. Weiss
                                            William M. Sweetnam
                                            Eric C. Brunick
                                            **FREED & WEISS LLC**
                                            111 West Washington Street, Suite 1331
                                            Chicago, Illinois 60602
                                            Phone: (312) 220-0000

-15-

**Attorneys for Plaintiff
and Proposed Class**

*HH copy*

RECEIVED

**SEEGER WEISS LLP**
ATTORNEYS AT LAW
1200 Walnut Street
Fifth Floor
Philadelphia, PA 19107-5450
(212) 584-0700
FAX (212) 584-0799
www.seegerweiss.com

JAN 0 3 2006

**HH**

CHRISTOPHER A. SEEGER*+
STEPHEN A. WEISS*
DAVID R. BUCHANAN*+
DIOGENES P. KEKATOS*
ERIC T. CHAFFIN*‡
MOSHE HORN*+
JONATHAN SHUB‡

MICHAEL L. ROSENBERG*+Δ
MARC S. ALBERT*Δ
DONALD R. BRADFORD◊Δ

ADMITTED IN
*NY, +NJ,□MA
◊MI, ○OK, ‡PA
Δ COUNSEL

RICK BARRECA*+
TERRIANNE BENEDETTO‡+
PATRICIA D. CODEY+
SINDHU S. DANIEL*‡○
DONALD A. ECKLUND*+
MICHAEL S. FARKAS*+
SCOTT A. GEORGE‡+
JEFFREY S. GRAND*
ROOPAL P. LUHANA*+
LAURENCE V. NASSIF*+
JAMES A. O'BRIEN III*□
ANDREA M. PI-SUNYER*
MELISSA STEWART-HAYNES*
ELIZABETH A. WALL*+

direct email:
sgeorge@seegerweiss.com

**VIA FEDERAL EXPRESS**

February 5, 2007

Hojoon Hwang
Munger, Tolles & Olson LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105-2907

Re:    Waudby v. Verizon Wireless LLP et al.,
       U.S. Dist. Ct for the Dist. of N.J., 07-CV-0470 (FLW)

Dear Mr. Hwang,

Please be advised that two of your clients - Verizon Wireless LLP and Cellco Partnership (d/b/a Verizon Wireless) ("Verizon Wireless") - have been named in the above referenced class action, the complaint which was filed on January 25, 2007. I understand that you are representing Verizon Wireless in similar matters pending before the American Arbitration Association. I therefore enclose for your consideration and convenience a Waiver of Service of Summons (and one copy thereof) for defendants, and a copy of the Class Action Complaint.

Please advise at your earliest convenience if your client will waive service.

Truly,

Scott Alan George

Enclosures

℁ AO 399 (Rev. 10/95)

# WAIVER OF SERVICE OF SUMMONS

TO:  <u>Scott Alan George, Esq.</u>
<div align="center">(NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)</div>

I,  <u>Verizon Wireless LLP</u>  , acknowledge receipt of your request
<div align="center">(DEFENDANT NAME)</div>

that I waive service of summons in the action of  <u>Waudby v. Verizon Wireless LLP and Cellco Partnerships</u> ,
<div align="center">(CAPTION OF ACTION)</div>

which is case number  <u>07-CV-0470 (FLW)</u>  in the United States District Court
<div align="center">(DOCKET NUMBER)</div>

for the  _____ District of  <u>New Jersey</u> .

    I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

    I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

    I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

    I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after  <u>2/5/2007</u> ,
<div align="right">(DATE REQUEST WAS SENT)</div>

or within 90 days after that date if the request was sent outside the United States.

_____      _____
(DATE)                     (SIGNATURE)

Printed/Typed Name: _____

As _____ of _____
         (TITLE)                (CORPORATE DEFENDANT)

## Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

AO 399 (Rev. 10/95)

# WAIVER OF SERVICE OF SUMMONS

TO:  Scott Alan George, Esq.
_____
(NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

I,  Cellco Partnerships _____ , acknowledge receipt of your request
(DEFENDANT NAME)

that I waive service of summons in the action of  Waudby v. Verizon Wireless LLP and Cellco Partnerships ,
(CAPTION OF ACTION)

which is case number  07-CV-0470 (FLW) _____  in the United States District Court
(DOCKET NUMBER)

for the  _____ District of  _____ New Jersey _____ .

I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after  _____ 2/5/2007 _____
(DATE REQUEST WAS SENT)

or within 90 days after that date if the request was sent outside the United States.

_____        _____
(DATE)                              (SIGNATURE)

Printed/Typed Name:  _____

As  _____  of  _____
(TITLE)                          (CORPORATE DEFENDANT)

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

Philip R. Sellinger (PS 9369)
Todd L. Schleifstein (TS 3787)
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900
Attorneys for Defendant Cellco Partnership,
d/b/a Verizon Wireless

<div align="center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

-------------------------------------------------------------------X

| | |
|---|---|
| JOHN WAUDBY, individually and on behalf of himself and all others similarly situated, | : |
| | : |
| | : |
| Plaintiff, | : Civ. Act. No. 07-0470 (FLW) |
| | : |
| vs. | : |
| | : **ANSWER AND** |
| VERIZON WIRELESS SERVICES, LLC and | : **COUNTERCLAIMS OF** |
| CELLCO PARTNERSHIP, d/b/a VERIZON | : **DEFENDANT CELLCO** |
| WIRELESS, | : **PARTNERSHIP, D/B/A** |
| | : **VERIZON WIRELESS** |
| Defendants. | : |

-------------------------------------------------------------------X

Defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon Wireless"),[1] by and

through its undersigned counsel, Greenberg Traurig, LLP and Munger, Tolles & Olson LLP, as

and for its Answer to the Complaint of plaintiff John Waudby, and its Counterclaims against

plaintiff, alleges as follows:

<div align="center">

**OVERVIEW OF THE ACTION**

</div>

1.   Admits that plaintiff has filed a class action against it, and denies the remainder of the

allegations of Paragraph 1.

---

[1]   Verizon Wireless Services, LLC is improperly named as a defendant in this action.  It is not
engaged in the business of supplying wireless telephone services and is strictly a reseller of
business equipment, supplies, parts, and warranty services.

2. Admits that plaintiff has filed a class action against it and has put forth a proposed class definition, and denies the remainder of the allegations of Paragraph 2.

3. Admits that customers who terminate their wireless service before the end of the terms of their customer agreements may be charged an early termination fee ("ETF"), and denies the remainder of the allegations of Paragraph 3.

4. Paragraph 4 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

## JURISDICTION AND VENUE

5. Paragraph 5 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

6. Admits that its principal place of business is in Basking Ridge, New Jersey, and states that the remainder of Paragraph 6 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

## PARTIES

7. Lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 7, and on that basis denies them.

8. Admits that it is a general partnership formed under Delaware law and that its headquarters are in New Jersey, and denies the remainder of the allegations of Paragraph 8.

## FACTS

**Early Termination Fees**

9. Admits that customers may enter into customer agreements, and denies the remainder of the allegations of Paragraph 9.

10. Paragraph 10 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

11. Paragraph 11 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

12. Admits that customers who terminate their wireless service before the end of the terms of their customer agreements, including through continuous and persistent non-payment, may be charged an ETF, and denies the remainder of the allegations of Paragraph 12.

13. Admits that its customer agreements disclose the existence of an ETF and the circumstances under which an ETF may be assessed, and denies the remainder of the allegations of Paragraph 13.

14. Denies the allegations of Paragraph 14.

15. Denies the allegations of Paragraph 15.

16. Denies the allegations of Paragraph 16.

17. Admits that the ETF enables it to offer term contract service plans with heavily discounted or free handsets and low monthly service charges, and denies the remainder of the allegations of Paragraph 17.

18. Denies the allegations of Paragraph 18.

19. Denies the allegations of Paragraph 19.

20. Denies the allegations of Paragraph 20.

21. Denies the allegations of Paragraph 21.

22. Denies the allegations of Paragraph 22.

23. Denies the allegations of Paragraph 23.

24. Denies the allegations of Paragraph 24.

25.   Lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 25, and on that basis denies them.

**No Enforceable Agreement to Arbitrate**

26.   Admits that its customer agreements contain arbitration clauses, and denies the remainder of the allegations of Paragraph 26.

27.   Paragraph 27 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

28.   Paragraph 28 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

29.   Denies the allegations of Paragraph 29.

## CLASS ACTION ALLEGATIONS – EARLY TERMINATION FEE (ETF) CLASS

**Definition of the Class**

30.   Admits that plaintiff purports to bring this action pursuant to Federal Rule of Civil Procedure 23, and states that the remainder of Paragraph 30 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

**Numerosity**

31.   Paragraph 31 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

**Commonality**

32.   Paragraph 32 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

**Typicality**

33.   Paragraph 33 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

**Adequacy**

34.   Paragraph 34 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

**The Prerequisites of Rule 23(b)(2) are Satisfied**

35.   Paragraph 35 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

36.   Paragraph 36 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

37.   Paragraph 37 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

38.   Paragraph 38 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

**The Prerequisites of Rule 23(b)(3) are Satisfied**

39.   Paragraph 39 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

## COUNT I
### (Violation of § 201 of the Federal Communications Act)

40.   Repeats and re-alleges the responses in paragraphs 1 through 39 as if fully set forth herein.

41.   Paragraph 41 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

42. Paragraph 42 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

43. Paragraph 43 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

44. Paragraph 44 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

45. Denies the allegations of Paragraph 45.

46. Denies the allegations of Paragraph 46, and specifically denies that plaintiff is entitled to any of the relief he seeks under Paragraph 46.

WHEREFORE, Verizon Wireless demands judgment:

a. Dismissing the First Count of the Complaint with prejudice;

b. Awarding Verizon Wireless the reasonable attorneys' fees and costs of suit that it incurred in connection with defending against the allegations in the First Count of the Complaint; and

c. Granting Verizon Wireless such other and further relief as this Court may deem just and proper.

## COUNT II
### (Violation of New Jersey Consumer Fraud Act)

47. Repeats and re-alleges the responses in paragraphs 1 through 46 as if fully set forth herein.

48. Admits that plaintiff purports to bring a cause of action pursuant to the New Jersey Consumer Fraud Act, and denies the remainder of the allegations of Paragraph 48.

49. Paragraph 49 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

50.    Paragraph 50 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

51.    Paragraph 51 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

52.    Paragraph 52 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

53.    Denies the allegations of Paragraph 53.

54.    Denies the allegations of Paragraph 54.

55.    Denies the allegations of Paragraph 55.

56.    Denies the allegations of Paragraph 56.

57.    Denies the allegations of Paragraph 57, and specifically denies that plaintiff is entitled to any of the relief he seeks under Paragraph 57.

WHEREFORE, Verizon Wireless demands judgment:

a.    Dismissing the Second Count of the Complaint with prejudice;

b.    Awarding Verizon Wireless the reasonable attorneys' fees and costs of suit that it incurred in connection with defending against the allegations in the Second Count of the Complaint; and

c.    Granting Verizon Wireless such other and further relief as this Court may deem just and proper.

## COUNT III
### (Violation of Substantially Similar Consumer Fraud Statutes of Certain States)

58.    Repeats and re-alleges the responses in paragraphs 1 through 57 as if fully set forth herein.

59.    Admits that plaintiff purports to bring a cause of action under certain state consumer fraud statutes, and denies the remainder of the allegations of Paragraph 59.

60.    Paragraph 60 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

61.    Paragraph 61 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

62.    Denies the allegations of Paragraph 62.

63.    Denies the allegations of Paragraph 63.

64.    Denies the allegations of Paragraph 64.

65.    Denies the allegations of Paragraph 65.

66.    Denies the allegations of Paragraph 66, and specifically denies that plaintiff is entitled to any of the relief he seeks under Paragraph 66.

WHEREFORE, Verizon Wireless demands judgment:

a.   Dismissing the Third Count of the Complaint with prejudice;

b.   Awarding Verizon Wireless the reasonable attorneys' fees and costs of suit that it incurred in connection with defending against the allegations in the Third Count of the Complaint; and

c.   Granting Verizon Wireless such other and further relief as this Court may deem just and proper.

## COUNT IV
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201)

67.    Repeats and re-alleges the responses in paragraphs 1 through 66 as if fully set forth herein.

68.    Denies the allegations of Paragraph 68.

69. Paragraph 69 consists of legal conclusions to which no response is required, but to the extent those conclusions are based on factual allegations, those allegations are denied.

70. Admits that plaintiff seeks a declaration concerning the legality of ETFs, denies the remainder of the allegations of Paragraph 70, and specifically denies that plaintiff is entitled to any of the relief he seeks under Paragraph 70.

WHEREFORE, Verizon Wireless demands judgment:

a. Dismissing the Fourth Count of the Complaint with prejudice;

b. Awarding Verizon Wireless the reasonable attorneys' fees and costs of suit that it incurred in connection with defending against the allegations in the Fourth Count of the Complaint; and

c. Granting Verizon Wireless such other and further relief as this Court may deem just and proper.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are pre-empted in their entirety by federal legislation and federal common law, pursuant to the Federal Communications Act, 47 U.S.C. § 151 *et seq.*, specifically including 47 U.S.C. § 332(c)(3)(A), and the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of primary and exclusive regulatory agency jurisdiction.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are subject to a valid and enforceable agreement to arbitrate, and therefore are not properly brought in this Court.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to constitute a claim against Verizon Wireless upon which relief can be granted.

## FIFTH AFFIRMATIVE DEFENSE

The early termination fee at issue does not impose a payment obligation as compensation for a contract breach, but is an alternative means of contract performance by plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are subject to set-off to the extent that he breached his contract with Verizon Wireless.

## SEVENTH AFFIRMATIVE DEFENSE

Any statements made or actions taken by Verizon Wireless were truthful and accurate and were not likely to mislead or deceive plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Verizon Wireless's conduct has at all times been undertaken with legitimate business justification and in a reasonable and good faith belief in the lawfulness of its actions.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered any injury or damage, and Verizon Wireless is not liable to him for any injury or damage.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because he lacks standing to assert any the causes of action alleged in the Complaint

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because his requested monetary relief is too speculative, remote and impossible to prove or allocate.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that plaintiff suffered injury or damage, such injury or damage was not proximately caused by any conduct or inaction of Verizon Wireless.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because he did not rely on the statements or omissions of which he now complains.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff has enjoyed the benefits of one or more of the products or services that are the subject of the Complaint, and therefore is barred from making one of more of the claims for relief set out in the Complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of acquiescence, estoppel, laches, and waiver.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff consented to and approved all the acts and omissions about which he now complains, and agreed to be bound by the terms of his Verizon Wireless customer agreement when he used the wireless services provided by Verizon Wireless, which actions bar him from pursuing his claims.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff has waived or released, in whole or in part, some or all of the claims asserted in the Complaint, including without limitation, through provisions in his customer agreement limiting the time period for disputing bills.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering any amounts in this action based on the voluntary payment doctrine.

## NINETEENTH AFFIRMATIVE DEFENSE

Upon information and belief, plaintiff (a) failed to exercise ordinary and reasonable care on his own behalf; (b) intentionally or recklessly disregarded his own interests, through action or inaction; and (c) otherwise committed wrongdoing, and such acts and omissions were the proximate cause of all or some of his alleged injuries, thus barring him, in whole or in part, from recovering any amounts in this action.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff has failed to take reasonable steps to mitigate, alter, reduce, or otherwise diminish his alleged damages, and accordingly, is barred from recovery of any damages that might have been prevented by such mitigation.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are in contravention of Verizon Wireless's rights under applicable clauses of the United States and New Jersey Constitutions, including without limitation, the Commerce Clause to the United States Constitution, the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, the Due Process Clause under the Fourteenth Amendment of the United States Constitution and Article I, Paragraph 1 of the New Jersey

Constitution, the constitutional prohibition against vague and overbroad laws, the separation of powers doctrine under Article II of the United States Constitution and Article V of the New Jersey Constitution; and the Takings Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Paragraph 20 of the New Jersey Constitution.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The imposition of punitive damages in this case would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Paragraph 1 of the New Jersey Constitution, the Excessive Fines Clauses of the Eighth Amendment to the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution, and the Contracts Clauses of the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent that plaintiff purports to seek relief on behalf of any person who has not suffered any damages, the Complaint violates the right of Verizon Wireless to due process under the United States and New Jersey Constitutions.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by principles of prior adjudication, including without limitation, the doctrines of *res judicata*, collateral estoppel and merger and bar.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

This case is not appropriate for class treatment.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not a proper representative to bring this action on behalf of any proposed class.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to equitable relief because he has adequate remedies at law, and no threat of harm exists to support a grant of injunctive relief.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

To the extent that plaintiff seeks recovery of attorneys' fees, such fees are not recoverable.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

To the extent that plaintiff seeks recovery of punitive damages, such damages are not recoverable.

## THIRTIETH AFFIRMATIVE DEFENSE

Even if any member of any putative class suffered any injury or damage, no such class member is entitled to restitution or disgorgement.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by prior filed duplicative and overlapping actions.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Verizon Wireless intends to rely on any additional affirmative defenses which become available or apparent during discovery, and thus reserves the right to amend this Answer to assert such additional defenses.

## COUNTERCLAIMS

**Jurisdiction and Venue**

1.   In the event that this Court deems that subject matter jurisdiction exists as to plaintiff's claims, Verizon Wireless alleges that this Court has jurisdiction over these Counterclaims and that venue of the matter alleged in these Counterclaims is proper under 28 U.S.C. § 1391(a)(1).

**Nature of Counterclaims**

2.   Plaintiff alleges that he entered into a wireless services customer agreement with Verizon Wireless for the provision of wireless services.  To the extent this is true, plaintiff agreed to remain a Verizon Wireless customer for a term of years from the date he entered into his contract, but retained the option of terminating early in exchange for payment of an early termination fee ("ETF").

3.   Plaintiff alleges that he terminated service and was charged an ETF.  To the extent this is true, plaintiff did so as a result of the exercise of an option to terminate a customer agreement prior to its termination date.

4.   Plaintiff has filed suit against Verizon Wireless, on behalf of himself and a putative class of consumers, in this Court, alleging that Verizon Wireless violated 47 U.S.C. § 201(b), N.J.S.A. 56:8-1 *et seq.*, and "substantially similar" consumer fraud statutes of other states. Plaintiff's claims are based on the ETF he alleges that he was charged by Verizon Wireless.

5.   According to plaintiff, the Verizon Wireless ETF provision he was charged is unenforceable and violates federal and state law.  Plaintiff seeks, among other things, to have the Court declare that this Verizon Wireless ETF is void and to order Verizon Wireless to award damages to him.

6.   Verizon Wireless is filing an Answer in which it denies that its ETF is unenforceable and contends instead that the ETF is an alternative performance option, under which a subscriber may terminate service before the end of the customer agreement term in exchange for payment of an ETF.  Thus, it is the position of Verizon Wireless that to the extent plaintiff terminated service and was charged or paid an ETF, the ETF reflects his choice of an alternative method of performing his contract obligations, rather than the assessment of damages for his breach of the customer agreement.  Verizon Wireless contends that its ETF is not an unlawful "penalty" and is valid and enforceable.

7.   Verizon Wireless also contends that any state law that would invalidate the ETF provisions in its customer agreements is pre-empted by federal law.

8.   In the event, and only in the event, that the Court disagrees with Verizon Wireless and determines that (a) the ETF clause is not a valid alternative performance option, and thus plaintiff breached his agreement; (b) the ETF is unenforceable and violates federal or state law; and (c) that such state law claims are not federally pre-empted, then Verizon Wireless brings these counterclaims to recover the actual damages that it sustained as a result of plaintiff's early termination of his customer agreement.

**Parties**

9.   Verizon Wireless is a Delaware partnership with its primary place of business in Basking Ridge, New Jersey.  Verizon Wireless provides wireless services in New Jersey.

10.   Plaintiff John Waudby is a resident of New York.

**Operative Facts**

11.   Verizon Wireless and plaintiff entered into a customer agreement.  Pursuant to this customer agreement, Verizon Wireless agreed to provide wireless services to plaintiff in

exchange for monthly payments to be made by him.  Under the customer agreement, plaintiff agreed to maintain his service for a set period of time.  Because a Verizon Wireless customer has the ability to change calling plans, plaintiff was not obligated to remain on his original plan for the duration of the minimum terms.

12.   Plaintiff terminated his service prior to the end of the customer agreement term period.

13.   Verizon Wireless provided wireless services as required by the customer agreement into which plaintiff entered.

14.   It is the position of Verizon Wireless that under the express provisions of the customer agreement, plaintiff retained the option of terminating early in exchange for payment of a $175 ETF.  However, in the event the Court determines that the ETF provision in the customer agreement to which plaintiff claims to be a party is not an alternative means of performance and is void and unenforceable, then he has breached his customer agreement by terminating early and owes Verizon Wireless compensation for the damage caused by his breach of his customer agreement.

15.   As of the date of the filing of these Counterclaims, plaintiff's claims have not been certified as a class action.  Verizon Wireless expressly reserves its right to assert the claims set forth herein against the members of any later certified class on an individual or a class-wide basis.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

16.   Verizon Wireless repeats and re-alleges the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

17.  The customer agreement that plaintiff executed was binding and enforceable.

18.  In the event that the Court determines that the ETF provision set forth in plaintiff's customer agreement is invalid, then he damaged Verizon Wireless by terminating his customer agreement early.  Damages incurred by Verizon Wireless include, without limitation, its lost profits, which include the excess of remaining monthly payments due under the customer agreement over the cost of serving plaintiff for the remainder of the agreed-upon term.

19.  Verizon Wireless performed all of its duties and obligations under plaintiff's customer agreement, except those excused by his early termination of his customer agreement.

20.  Verizon Wireless seeks its damages, including prejudgment interest and consequential damages, in an amount to be determined at trial.

WHEREFORE, Verizon Wireless demands judgment against plaintiff:

a.  Awarding Verizon Wireless compensatory, incidental and consequential damages, in an amount to be determined at trial, together with interest thereon;

b.  Awarding Verizon Wireless its costs of suit; and

c.  Granting Verizon Wireless such other and further relief as this Court may deem just and proper.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

21.  Verizon Wireless repeats and re-alleges the allegations contained in Paragraphs 1 through 20 as if fully set forth herein.

22.  In the event that the Court finds that any portion of plaintiff's customer agreement was void, then he is liable to Verizon Wireless for the benefits he received thereunder.

23.  If plaintiff was a party to a customer agreement with Verizon Wireless, he received certain benefits, including without limitation, a subsidized wireless handset, as consideration

for which he agreed not to cancel Verizon Wireless service without either completing a certain period of service with Verizon Wireless, or paying an ETF.

24. If plaintiff was a party to a customer agreement with Verizon Wireless and was charged an ETF, he canceled Verizon Wireless service without completing the agreed-upon period of service with Verizon Wireless.

25. If plaintiff is relieved of the obligation to pay the ETF, he should not in justice be permitted to retain the benefits he received from Verizon Wireless.

26. Accordingly, if plaintiff is relieved of the obligation to pay the ETF, he will be unjustly enriched and the amount of the benefits he received should be restored to Verizon Wireless as restitution.

WHEREFORE, Verizon Wireless demands judgment against plaintiff:

a.   If plaintiff's customer agreement is held void, ordering restitution of benefits conferred in an amount to be determined at trial;

b.   Awarding Verizon Wireless its costs of suit; and

c.   Granting Verizon Wireless such other and further relief as this Court may deem just and proper.

GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey  07932
Tel:  (973) 360-7900
Fax:  (973) 301-8410

By:   /s/ Todd L. Schleifstein
        PHILIP R. SELLINGER
        TODD L. SCHLEIFSTEIN

- and –

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000

Attorneys for Defendant Cellco Partnership,
d/b/a Verizon Wireless

Dated:  March 23, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
-----------------------------------------------------------------------X
JOHN WAUDBY, individually and on behalf of        :
himself and all others similarly situated,         :  Civ. Act. No. 07-0470 (FLW)
                                                   :
                              Plaintiff,           :
                                                   :
            vs.                                    :
                                                   :  STATEMENT PURSUANT TO
VERIZON WIRELESS SERVICES, LLC and                 :  FED. R. CIV. P. 7.1
CELLCO PARTNERSHIP, d/b/a VERIZON                  :
WIRELESS,                                          :
                                                   :
                              Defendants.          :
-----------------------------------------------------------------------X
```

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned counsel for

defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), certifies that it is a

Delaware general partnership, which has eight partners.  Verizon Communications Inc. and

Vodafone Group Plc. are two publicly held corporations that, while not partners in Verizon

Wireless, have an interest in entities that are partners in Verizon Wireless.

Dated:  March 23, 2007

GREENBERG TRAURIG, LLP

By:     /s/ Todd L. Schleifstein
        Philip R. Sellinger (PS 9369)
        Todd L. Schleifstein (TS 3787)
        200 Park Avenue
        Florham Park, New Jersey  07932-0677
        (973) 360-7900 (Phone)
        (973) 301-8410 (Facsimile)

        Attorneys for Defendant Cellco Partnership,
        d/b/a Verizon Wireless

Philip R. Sellinger
Todd L. Schleifstein
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900
Attorneys for Defendant Cellco Partnership,
d/b/a Verizon Wireless

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN WAUDBY, individually and on behalf of          :
himself and all others similarly situated,          :
                                                    :
                                                    :
                            Plaintiff,              :
                                                    :   Civ. Act. No. 07-470 (FLW) (JJH)
                                                    :
            vs.                                     :
                                                    :
VERIZON WIRELESS SERVICES, LLC and                  :   **ORAL**
CELLCO PARTNERSHIP, d/b/a VERIZON                   :   **ARGUMENT REQUESTED**
WIRELESS.                                           :
                                                    :
                            Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## NOTICE OF MOTION TO COMPEL
## ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS

TO: Jonathan Shub, Esq.           James E. Cecchi, Esq.
    SEEGER WEISS LLP              CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
    550 Broad Street, Suite 920    STEWART & OLSTEIN
    Newark, New Jersey 07102     5 Becker Farm Road
    Attorneys for Plaintiff      Roseland, New Jersey 07068
                                 Attorneys for Plaintiff

PLEASE TAKE NOTICE that, on January 21, 2008 at 9:00 a.m., or as soon thereafter as

counsel may be heard, the undersigned attorneys for defendant Cellco Partnership, d/b/a Verizon

Wireless ("Verizon Wireless") shall move before the Honorable John J. Hughes, United States

District Court for the District of New Jersey, at the Clarkson S. Fisher Federal Building and U.S.

Courthouse, 402 East State Street, Trenton, New Jersey 08608, for an Order compelling

arbitration of the individual claims asserted in this action by plaintiff John Waudby.

PLEASE TAKE FURTHER NOTICE that, in support of its Motion, Verizon Wireless

will rely upon the accompanying Brief in Support of Motion to Compel Arbitration of Plaintiff's

Claims, and Certifications of Daniel Malutich and Todd L. Schleifstein.

PLEASE TAKE FURTHER NOTICE that a proposed form of Order is submitted

herewith.

PLEASE TAKE FURTHER NOTICE that Verizon Wireless respectfully requests oral

argument of this motion.

/s/ Todd L. Schleifstein
Philip R. Sellinger (PS 9369)
Todd L. Schleifstein (TS 3787)
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900

- and –

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000

Attorneys for Defendant Cellco Partnership,
d/b/a Verizon Wireless

Dated:  December 27, 2007

2

Philip R. Sellinger
Todd L. Schleifstein
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900
Attorneys for Defendant Cellco Partnership,
d/b/a Verizon Wireless

<div align="center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

------------------------------------------------------------X

JOHN WAUDBY, individually and on behalf of       :
himself and all others similarly situated,       :
                                                 :
                                                 :
                            Plaintiff,           :
                                                 :    Civ. Act. No. 07-0470 (FLW)(JHH)
          vs.                                    :
                                                 :
VERIZON WIRELESS SERVICES, LLC and               :
CELLCO PARTNERSHIP, d/b/a VERIZON                :
WIRELESS,                                        :
                                                 :
                            Defendants.          :

------------------------------------------------------------X


**BRIEF OF DEFENDANT CELLCO PARTNERSHIP
D/B/A VERIZON WIRELESS IN SUPPORT OF MOTION TO
COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS**

On The Brief:

Philip R. Sellinger                 Henry Weissmann
Todd L. Schleifstein                Hojoon Hwang
GREENBERG TRAURIG, LLP              Jonathan H. Blavin
200 Park Avenue                     MUNGER, TOLLES & OLSON LLP
Florham Park, New Jersey 07932      560 Mission Street, 27th Floor
(973) 360-7900                      San Francisco, California 94105
                                    (415) 512-4000

4140183.2

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS.....................................................................................2

ARGUMENT.......................................................................................................5

POINT I ...........................................................................................................5

THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER ARE
ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT

POINT II...........................................................................................................7

THE ARBITRATION PROVISION IS ENFORCEABLE UNDER THE
APPLICABLE STATE LAW

    A.    The Provision Is Enforceable Under New York Law, which Applies
        by the Terms of the Contract........................................................................7

    B.    Plaintiff Cannot Invoke the "Fundamental Policy" Exception ......................9

        1.    New York, Not New Jersey, Law Would Apply Absent the
                Choice of Law Provision.................................................................10

        2.    New Jersey Does Not Have a Materially Greater Interest in
                the Controversy Than New York ......................................................12

        3.    The Application of New York Law Would Not Contravene
                the Fundamental Public Policy of New Jersey ..................................13

POINT III .........................................................................................................14

APPLYING NEW JERSEY PUBLIC POLICY TO INVALIDATE THE
ARBITRATION AGREEMENT WOULD CONTRAVENE FEDERAL LAW

CONCLUSION .................................................................................................17

## TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page**

*Bar-Ayal v. Time Warner Cable, Inc.,*
No. 03 CV 9905 KMW, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ...............................7

*Battaglia v. McKendry,*
233 F.3d 720 (3d Cir. 2000)....................................................................................6

*Carideo v. Dell, Inc.,*
492 F. Supp. 2d 1283 (W.D. Wash. 2007)..............................................................12

*Cost Bros., Inc. v. Travelers Indem. Co.,*
760 F.2d 58 (3d Cir. 1985).....................................................................................4

*Doctor's Assocs., Inc. v. Casarotto,*
517 U.S. 681 (1996)...............................................................................................13

*E-Rate Consulting, Inc. v. Harrisburg School Dist.,*
No. Civ 04-5258 (WHW), 2006 WL 3751359 (D.N.J. Dec. 18, 2006) .....................7

*Gay v. CreditInform,*
2007 WL 4410362 (3d Cir. Dec. 19, 2007) ....................................................*passim*

*Gibbs ex rel. Gibbs v. Carnival Cruise Lines,*
314 F.3d 125 (3d Cir. 2002)....................................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991)..................................................................................................5

*Great Western Mortg. Corp. v. Peacock,*
110 F.3d 222 (3d Cir. 1997)....................................................................................4

*Green Tree Fin. Corp.-Ala. v. Randolph,*
531 U.S. 79 (2000)..................................................................................................5

*Heindel v. Pfizer, Inc.,*
381 F. Supp. 2d 364 (D.N.J. 2004) ....................................................................10, 11

*Homa v. American Express Co.,*
496 F. Supp. 2d 440 (D.N.J. 2007) ................................................................*passim*

*Hoxworth v. Blinder, Robinson & Co.*
980 F.2d 912 (3d Cir. 1992) ...................................................................................1

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,*
379 F.3d 159 (5th Cir. 2004) ................................................................................14

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) ...........................................................................10, 11

*In re Mintze,*
434 F.3d 222 (3d Cir. 2006)....................................................................................4

*In re Pharm. Indus. Average Wholesale Price Litig.,*
230 F.R.D. 61 (D. Mass. 2005)...........................................................................10, 11

*In re Relafen Antitrust Litig.,*
221 F.R.D. 260 (D. Mass. 2004)............................................................................11

*Johnson v. West Suburban Bank,*
225 F.3d 366 (3d Cir. 2000).....................................................................................7

*Miron v. BDO Seidman, LLP,*
    342 F. Supp. 2d 324 (E.D. Pa. 2004) ...................................................6
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)................................................................................4
*Perry v. Thomas,*
    482 U.S. 483 (1987)..........................................................................14
*Seus v. John Nuveen & Co.*
    146 F.3d 175 (3d Cir. 1998)................................................................4
*Southland Corp. v. Keating,*
    465 U.S. 1 (1984)................................................................................4
*Stone v. Doerge,*
    328 F.3d 343 (7th Cir. 2003)............................................................14
*Trippe Mfg. Co. v. Niles Audio Corp.,*
    401 F.3d 529 (3d Cir. 2005)................................................................5

## State Cases

*Delta Funding Corp. v. Harris,*
    189 N.J. 28 (2006) ............................................................................12
*Instructional Sys., Inc. v. Computer Curriculum Corp.,*
    130 N.J. 324 (N.J. 1992) ....................................................................8
*Klussman v. Cross Country Bank,*
    134 Cal. App. 4th 1283 (2005) ........................................................10
*Kramer v. Ciba-Geigy Corp.,*
    371 N.J. Super. 580 (App. Div. 2004) ................................................8
*Lytle v. CitiFinancial Servs., Inc.,*
    810 A.2d 643 (Pa. Super. Ct. 2002) ............................................14, 15
*Muhammad v. County Bank of Rehoboth Beach*
    189 N.J. 1 (2006) ........................................................................10, 15
*Ranieri v. Bell Atl. Mobile,*
    304 A.D.2d 353 (N.Y. App. Div. 2003) ..............................................7
*Thibodeau v. Comcast Corp.,*
    912 A.2d 874 (Pa. Super. Ct. 2006) ............................................14, 15
*Tsadilas v. Providian Nat'l Bank,*
    13 A.D.3d 190 (N.Y. App. Div. 2004) ................................................7

## Federal Statutes

47 U.S.C. § 201................................................................................................4
9 U.S.C. § 2....................................................................................................4
9 U.S.C. § 4....................................................................................................4

## State Statutes

N.J. S.A. 56:8-1..............................................................................................4

**Other Authorities**

Restatement (Second) of Conflicts of Laws § 187 .................................................................8, 9

Restatement (Second) of Conflicts of Laws § 188 .................................................................10

## PRELIMINARY STATEMENT

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") respectfully submits this brief in support of its motion to compel arbitration of the individual claims asserted in this action by plaintiff John Waudby.

As Plaintiff admits in the Complaint, he entered into a written contract with Verizon Wireless that provides for the resolution of all disputes arising from that contract through arbitration on an individual basis. The arbitration clause is valid and applies to Plaintiff's claims in this action, each of which challenges the validity of Verizon Wireless's early termination fees ("ETF"), assessed pursuant to the terms of the contract. Under the Federal Arbitration Act ("FAA"), which applies to the agreement, Plaintiff's claims should be dismissed or stayed, and he should be ordered to arbitrate his individual claims, *unless* he can establish some basis for invalidating the arbitration provision under applicable state law *and* that applying such state law would not contravene the FAA.

In his Complaint, Plaintiff attempts to circumvent the arbitration provision in his contract by asserting that the "law of this Circuit and New Jersey state law" purportedly render the provision unenforceable. Complaint ¶ 26. This contention is wholly unavailing. To the contrary, directly-applicable authorities from both the Third Circuit and other courts in this judicial district unambiguously hold that the arbitration clause should be enforced as written.

First, New York law, which applies in this case pursuant to the choice of law provision in the parties' contract, expressly affirms that the contract's arbitration provision and its non-severable class action waiver are fully enforceable. Plaintiff's attempt to invoke the public policy of New Jersey to avoid the application of New York law fails because New Jersey does not have a materially greater interest in this controversy than New York, and New Jersey law would not apply in the absence of a choice of law provision. In *Homa v. American Express Co.*, 496 F. Supp.2d 440 (D.N.J. 2007), a court in this district upheld a choice of law provision in a consumer contract and, applying the chosen law, affirmed the validity of an arbitration agreement providing for a waiver of class action procedures. In the process, the court rejected

a similar public policy challenge to that asserted by Plaintiff here.

Second, the Third Circuit Court of Appeals just recently affirmed the enforceability of an arbitration provision with a class action waiver. *See Gay v. CreditInform*, No. 06-4036, 2007 WL 4410362 (3d Cir. Dec. 19, 2007). In doing so, the court affirmed and enforced a similar contractual choice of law provision. Moreover, the court held that the arbitration provision precluding a class action would be enforceable *as a matter of federal law*, even if the applicable state law would find such provisions unconscionable. *Id.* at *18-21. Although the Court need not reach this issue given the applicability of New York law, the Third Circuit's decision in *Gay* leaves no doubt that the arbitration clause should be enforced as a matter of federal law, even if New Jersey law were to apply.

Accordingly, this case should be dismissed or stayed pending individual arbitration.[1]

## STATEMENT OF FACTS

Plaintiff John Waudby, a New York resident, Complaint ¶ 7, is a Verizon Wireless customer who began using Verizon Wireless service in 2002. *Id.* ¶ 25. He signed a new contract with Verizon Wireless in February 2006, in connection with upgrading his cellular

---

[1] On May 25, 2007, this Court entered an order staying this action in deference to the primary jurisdiction of the Federal Communications Commission ("FCC") over the questions of whether (1) Verizon Wireless's ETFs violate section 201 of the Communications Act, 47 U.S.C. § 201, and (2) Plaintiff's state law claims are preempted by section 332 of the Act. At a telephonic status conference on November 13, 2007, the Court verbally indicated that it would lift the stay effective January 1, 2008 for purposes of conducting class discovery, and ordered the parties to submit a discovery plan by January 25, 2008. In filing this motion, Verizon Wireless does not intend to waive or limit its contention that this case should continue to be stayed pending the FCC's resolution of the above issues. Verizon Wireless brings this motion now, however, because the arbitrability of Plaintiff's individual claims should be determined before the parties engage in extensive class discovery, both because the resolution of the motion may moot the need for class discovery and because of the risk that Plaintiff would argue that Verizon Wireless waived its right to compel arbitration by engaging in discovery. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-26 (3d Cir. 1992). As this Motion is filed prior to any discovery or resolution of merits issues, Verizon Wireless has not waived its right to compel arbitration. *Cf. id.* at 925-26 (waiver found where party seeking arbitration moved to dismiss case on the merits, engaged in discovery and opposed class certification motion).

phone. *Id.* He alleges that the new phone did not work well with his service, and as a result,

he cancelled his subscription prior to the expiration of the term of the contract. *Id.* He was

then charged an ETF in the amount of $175.00. *Id.* Verizon Wireless' records show that

Plaintiff signed a contract with a two-year term, to expire on February 7, 2008, at a Verizon

Wireless store in Rochester, New York. Certification of Daniel Malutich ("Malutich Cert.")

¶ 4, Ex. A. He terminated his service by porting his service to another company on November

20, 2006. *Id.* ¶ 5.

     The Verizon Wireless Customer Agreement (the "Agreement") governs the relationship

between Plaintiff and Verizon Wireless. The Agreement in effect at the time of Plaintiff's

termination (*see* Malutich Cert. Ex. B at 10) provides in bold, capital letters, in a separate box

set apart from the rest of the text.

> ### *Dispute Resolution and Mandatory Arbitration*
>
> **WE EACH AGREE TO SETTLE DISPUTES (EXCEPT
> CERTAIN SMALL CLAIMS) ONLY BY ARBITRATION.
> THERE'S NO JUDGE OR JURY IN ARBITRATION, AND
> REVIEW IS LIMITED, BUT AN ARBITRATOR CAN
> AWARD THE SAME DAMAGES AND RELIEF AND
> MUST HONOR THE SAME LIMITATIONS IN THIS
> AGREEMENT, AS A COURT WOULD. IF AN
> APPLICABLE STATUTE PROVIDES FOR AN AWARD
> OF ATTORNEY'S FEES, AN ARBITRATOR CAN
> AWARD THEM TOO.**

     Further, the Agreement includes a provision limiting the availability of class

arbitrations: "YOU CAN OBTAIN PROCEDURES, RULES, AND FEE INFORMATION

FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG), OR FROM US.

**THIS AGREEMENT DOESN'T PERMIT CLASS ARBITRATIONS EVEN IF THOSE

PROCEDURES OR RULES WOULD.**" *Id.* Ex. B at 10.

     The provision allows a customer to bring claims under $10,000 in small claims court.

*Id.* It also obligates Verizon Wireless to pay any filing fee, administration fee or fees of the

arbitrator that may be charged by the AAA or BBB, provided that the customer first participates in a voluntary mediation with Verizon Wireless. *Id.* at 10-11. The provision also preserves the right to attorneys' fees to the extent provided by statute. *Id.* at 11.

The portion of the Agreement that addresses arbitration states that the "FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT." The Agreement also contains a choice of law provision as follows:

> Except to the extent we've agreed otherwise in the provisions on late fees, collection costs and arbitration, or as required by Federal law, this agreement and disputes covered by it are governed by the laws of the state encompassing the area code assigned to your wireless phone number when you accepted this agreement, without regard to the conflicts of laws rules of that state.

Plaintiff's 581 area code is associated with the state of New York. Malutich Cert. ¶ 4. Thus, the choice of law provision requires application of New York law.

The class action waiver is expressly made an essential, and non-severable, part of the arbitration provision, providing, in bold, capital letters, that "**IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) ABOVE IS DEEMED UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.**" *Id.* Ex. B at 11.[2]

Plaintiff admits that he signed his contract with Verizon Wireless and that it includes a mandatory arbitration provision. Complaint ¶¶ 25-26. He further alleges that "the waivers" (apparently referring to the class action waiver provision) are unenforceable under the law of this Circuit and New Jersey state law, citing cases applying New Jersey, California and Illinois law. *Id.* ¶¶ 26-27.

Plaintiffs asserts claims under the Federal Communications Act, 47 U.S.C. § 201 (*id.*

---

[2] Thus, if the Court were to determine that the class action waiver is unconscionable and cannot be enforced, the entire arbitration provision would be rendered unenforceable. The Court may not issue, and Verizon Wireless does not seek, an order compelling class-wide arbitration.

¶¶ 40–46), the New Jersey Consumer Fraud Act, N.J. S.A. § 56:8-1 *et seq.* ("NJCFA") and

under "Substantially Similar Consumer Fraud Statutes of Certain States." *Id.* ¶¶ 47-57, 59-66.

## ARGUMENT

### POINT I

### THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER ARE ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT

In enacting the FAA, Congress "withdrew the power of the states to require a judicial

forum for the resolution of claims which the contracting parties agreed to resolve by

arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "The purpose of the Act was

to abolish the common law rule that arbitration agreements were not judicially enforceable,"

*Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985), and implement the

"federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24–25 (1983). To effectuate these purposes, section 2 of the FAA provides that an

arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the United States

Supreme Court has recognized, "there is a strong presumption in favor of arbitration, and

doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"

*Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) (quoting *Moses H. Cone

Mem'l Hosp.*, 460 U.S. 1, 24–25).

Under the FAA, where one party fails to comply with a valid arbitration agreement, a

court may stay the action and order "the parties to proceed to arbitration in accordance with the

terms of the agreement." 9 U.S.C. § 4; *In re Mintze*, 434 F.3d 222, 229, 233 (3d Cir. 2006).

Alternatively, where a valid arbitration agreement requires that all the claims brought by the

plaintiff be submitted to arbitration, a court may dismiss the action in its entirety. *Seus v. John

Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998); *see also Homa*, 496 F. Supp. 2d at 451

(dismissing an action under Fed. R. Civ. P. 12(b)(6) where all claims were subject to an arbitration provision).

A motion to compel arbitration pursuant to the FAA "calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). The party challenging an arbitration agreement has the burden to show that the agreement is invalid. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

In this case, a valid agreement to arbitrate exists. Plaintiff admits that he signed a contract with Verizon Wireless, Complaint ¶¶ 3, 7, 25, which contains a mandatory arbitration provision. *Id.* ¶ 26. His argument that the provision is unenforceable under federal law is plainly wrong. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the United States Supreme Court ordered that a party proceed with arbitration over his objections that the arbitration provision contained a class action waiver. *Id.* at 32 (noting that "'even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred'") (citations omitted). The Third Circuit recently affirmed this principle in *Gay*, stating that "[w]hatever the benefits of class actions, the FAA *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Gay*, 2007 WL 4410362 at *20 (emphasis in the original) (citation and internal quotation marks omitted).

Plaintiff's claims are subject to his contract's arbitration clause, which applies to "any controversy or claim arising out of or relating to this agreement, or any prior agreement for wireless service…or any product or service provided under or in connection with this agreement or such a prior agreement, or any advertising for such products or services," and which requires arbitration of all such claims, except certain small claims which, pursuant to the Agreement, can be resolved either in small claims court or in arbitration. Malutich Cert. Ex. B at 10 (capitalization in original omitted). His claim that Verizon Wireless's ETF is an

unreasonable charge or practice under section 201(b) of the Communications Act or violates

consumer protection statutes of various states is plainly one "arising out of" the Agreement

pursuant to which the ETF is assessed. *See Id.* Ex. B at 5-6. *See, e.g., Battaglia v. McKendry,*

233 F.3d 720, 727 (3d Cir. 2000) ("when phrases such as 'arising under' and 'arising out of'

appear in arbitration provisions, they are normally given broad construction"); *Miron v. BDO*

*Seidman, LLP,* 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004) ("When an arbitration clause

provides for arbitration of all matters 'arising under' or 'arising out of' a particular agreement,

the clause is typically construed broadly to suggest that a given dispute is arbitrable.").

<div align="center">

**POINT II**

**THE ARBITRATION PROVISION IS**
**ENFORCEABLE UNDER THE APPLICABLE STATE LAW**

</div>

Because the arbitration provision is valid as a matter of federal law, this Court must

enforce the Agreement unless Plaintiff can establish a defense to arbitrability under state law,

*i.e.,* that the arbitration agreement is unenforceable. *Homa,* 496 F. Supp. 2d  at 445.

Moreover, the state law defense must be consistent with the requirements of section 2. *Gay,*

2007 WL 4410362 at *19 (state law unconscionability analysis is "hardly the end point"

because "federal law is controlling here, and the [state] law must conform with it.")  As shown

below, Plaintiff cannot do so.

**A.    The Provision Is Enforceable Under New York**
**Law, which Applies by the Terms of the Contract**

Before determining whether the arbitration agreement is enforceable, the Court must

first determine which state law controls. *Homa,* 496 F. Supp. 2d at 447. Here, the parties have

provided that the Agreement will be governed by the laws of the state encompassing the area

code of the wireless telephone number of the customer, which in this case is New York.

Under New York law, there is no question that the arbitration agreement is enforceable.

New York has a strong policy favoring arbitration, mirroring federal law. *See Ranieri v. Bell*

*Atl. Mobile,* 304 A.D.2d 353, 354 (N.Y. App. Div. 2003) (enforcing arbitration provision of

Verizon Wireless's predecessor that contained class action waiver).   Reflecting that policy,
New York courts "are in accord with authorities holding that a contractual proscription against
class actions . . . is neither unconscionable nor violative of public policy." *Id.* (citing *Johnson
v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000)).   Inequality of bargaining power does not
invalidate a contract when the contracting party has a choice among different sellers or service
providers. *Ranieri*, 304 A.D.2d at 354.   New York courts further recognize that invalidating an
arbitration agreement on the basis that it prohibits class actions "would undermine the liberal
federal policy favoring arbitration agreements." *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d
190, 191 (N.Y.App.Div. 2004) ("[t]he arbitration provision is enforceable even though it
waives plaintiff's right to bring a class action.")   *See also, Bar-Ayal v. Time Warner Cable,
Inc.*, No. 03 CV 9905 KMW, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) at *16 (rejecting
argument that class action waiver in arbitration agreement is substantively unconscionable
under New York law).

   Thus, if the parties' choice of law is given effect, Verizon Wireless's arbitration
provision is plainly enforceable.   The Court should apply the forum state's choice of law rules
- here, New Jersey's - to determine whether that choice should be given effect.   *Gibbs ex rel.
Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002).   New Jersey follows section
187 of the Restatement (Second) of Conflicts of Laws.   *E-Rate Consulting, Inc. v. Harrisburg
School Dist.*, No. Civ 04-5258 (WHW), 2006 WL 3751359, * 9 (D.N.J. Dec. 18, 2006) ("New
Jersey Courts have endorsed the approach reflected in Section 187 of the Restatement (Second)
of Conflict of Laws.")   Under the Restatement, the parties' chosen law will govern unless it
can be shown that:

> [1] the chosen state has no substantial relationship to the parties
> or the transaction and there is no other reasonable basis for the
> parties' choice, or

> [2] application of the law of the chosen state would be contrary
> to a fundamental policy of a state which has a materially greater

> interest than the chosen state in the determination of the
> particular issue and which, under the rule of § 188, would be the
> state of the applicable law in the absence of an effective choice
> of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2)(a)-(b) (1971). *See also Kramer v. Ciba-*
*Geigy Corp.*, 371 N.J. Super. 580, 600-01 (2004).

Plaintiff cannot meet the first prong of the section 187 exception for the simple reason

that he is a New York resident who signed his contract in New York and had a Verizon

Wireless account with a New York area code. These facts are sufficient to establish a

substantial relationship supporting a contractual choice of law provision specifying New York

law. *See* Restatement (Second) of Conflict of Laws § 187 cmt. f (noting that a state will have a

substantial relationship where one of the parties is domiciled there); *Instructional Sys., Inc. v.*

*Computer Curriculum Corp.*, 130 N.J. 324, 341–43 (N.J. 1992) (state had substantial

relationship to the dispute where one of the parties to the contract was domiciled in that state).

Accordingly, the only remaining inquiry is whether Plaintiff can satisfy the second exception

under section 187. As shown below, he cannot.

### B.     Plaintiff Cannot Invoke the "Fundamental Policy" Exception

The second prong of section 187 has three distinct elements. First, the Court must

determine which state's law would apply "in the absence of an effective choice of law by the

parties." Second, the Court must determine whether that state has a "materially greater

interest" in the controversy than the state whose laws were chosen by the parties in their

contract. Lastly, and *only if* there is a state (other than the one chosen by the parties) that

meets *both* requirements, the Court determines whether applying the chosen law would

contravene a "fundamental public policy" of *that* state. *See Homa*, 496 F. Supp. 2d at 448

("the Restatement test does not necessarily require the Court to determine whether the choice-

of-law provision contravenes a fundamental public policy of [the forum state] New Jersey.

Instead, the test . . . [is] whether the parties' choice of law violates a fundamental public policy

of the state whose law would apply 'in the absence of an effective choice of law by the parties.'") (quoting section 187).

### 1. New York, Not New Jersey, Law Would Apply Absent the Choice of Law Provision

Absent the inclusion of a choice of law provision in the Agreement, the choice of applicable law would be governed by section 188 of the Restatement, which directs the Court to apply "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) Conflict of Laws, § 188(1) (1971). The Restatement lists five factors that are relevant to this determination: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2). As the Restatement makes clear, the Court must weigh these factors based on their nexus to the interests served by the underlying substantive laws upon which the claims are based. *Id.*, § 188, cmt. c ("the interest of a state in having its contract rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule …").

Each of these factors strongly favor application of New York law. Plaintiff went to a Verizon Wireless store in Rochester, New York and signed the Agreement there. New York is also the predominant place of the Agreement's performance and the primary location of the subject matter of the dispute, given Plaintiff's residence there: he used his phone in New York, requiring the use of Verizon Wireless's towers and other infrastructure in the state. Verizon Wireless's domicile in New Jersey is simply insignificant in this context. As the Restatement observes, "a state may have little interest in the application of a rule designed to protect a party against the unfair use of superior bargaining power if the contract is to be performed in another state which is the domicile of the person seeking the rule's protection." *Id.*, § 188, cmt. c.

4140183.2

10

Moreover, the state of Plaintiff's residence is highly significant because his claims raise issues of consumer protection. Not only has Plaintiff invoked the consumer protection laws of both New Jersey and other states, the basis of his challenge to the arbitration agreement - and of the New Jersey Supreme Court's decision in *Muhammad v. County Bank of Rehoboth Beach*, 189 N.J. 1 (2006) - is that the agreement does not sufficiently protect a consumer's interest in seeking compensation through the class action mechanism. Numerous courts have concluded that, particularly in this context, the domicile of the allegedly injured consumer is the paramount factor that trumps the defendant's principal place of business. *See e.g.*, *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 377-78 (D.N.J. 2004); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005); *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1300 (2005).

The Court's conclusion in *Heindel* is instructive. In that case, Pennsylvania residents sued Pfizer, Merck and other pharmaceutical companies headquartered in New Jersey, alleging that drugs manufactured by the defendants breached the implied warranty of merchantability, and that defendants' advertising practices violated the NJCFA. *Heindel*, 381 F. Supp.2d at 367–68. Applying New Jersey choice of law rules, the court held that Pennsylvania, not New Jersey, had a greater interest in the outcome of the litigation:

> To be certain, New Jersey has a interest in governing the conduct of its corporate citizens and encouraging truthful marketing and advertising of products. However, with respect to both the warranty and consumer fraud claims, Pennsylvania has a competing interest in ensuring that its own citizens are 'compensated for their injuries' . . .

> '[T]he deterrence interest of New Jersey as the domicile and locus of the defendant manufacturer must yield in this case to the compensation interest' of Pennsylvania. *See Gantes v. Kason Corp.*, 145 N.J. 478, 496-97, 679 A.2d 106 (1996)

*Heindel*, 381 F. Supp. 2d at 377-78.

Indeed, "[c]ourts have generally rejected application of the law of a defendant's principal place of business" in favor of the consumer protection laws of the "home states of the consumers." *Pharm. Indus.*, 230 F.R.D. at 83. For consumer protection claims, "the injury is decidedly where the consumer is located, rather than where the [defendant] maintains its headquarters." *Bridgestone*, 288 F.3d at 1017; *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) (noting that "the primary aim of...consumer protection laws generally...is compensating consumers, not policing corporate conduct"). Because of New York's paramount interest in the protection of its consumers, it clearly has the most significant relationship with the parties and transaction with respect to the issue in this case and has a materially greater interest in the controversy than New Jersey.

      **2.    New Jersey Does Not Have a Materially
                 <u>Greater Interest in the Controversy Than New York</u>**

Even if New Jersey law were assumed, *arguendo*, to apply absent the choice of law provision, Plaintiff cannot meet the independent requirement that the state whose fundamental public policy is invoked also have a materially greater interest in the controversy than New York. The above-cited authorities, which demonstrate that the state of the consumer's residence has a great interest in the application of its own laws, also demonstrate that New Jersey's interest in policing the conduct of its resident companies is not materially greater than New York's interest in providing compensation for its consumers. *See Heindel*, 381 F. Supp. 2d at 378 (New Jersey "does not have a 'compelling reason . . . to extend to such non-domiciliary plaintiffs the benefit of [its] decisional law'") (quoting *Deemer v. Silk City Textile Mach. Co.*, 193 N.J. Super. 643, 475 A.2d 648 (1984)).

The Third Circuit's recent decision in *Gay* reasoned that the law chosen by the parties should be respected where two states' competing interests in protecting a resident consumer, on the one hand, and protecting a resident business, on the other, and are, at best, in equipoise. *Gay*, 2007 WL 4410362 at *16-17. Though both interests are significant, the court noted, "we cannot say" that one is any "lesser" than the other. *Id.* Here, even if one were to conclude that

New Jersey's interest in regulating resident businesses were of equal significance to New York's interest in compensating its resident consumers, it cannot be said that one interest is materially greater than the other. This precludes Plaintiff's attempt to invoke New Jersey public policy under section 187 of the Restatement, even if New Jersey law would otherwise apply.

### 3. The Application of New York Law Would Not Contravene the Fundamental Public Policy of New Jersey

Because Plaintiff cannot show that New Jersey law would otherwise apply in the absence of the Agreement's choice of law provision or that New Jersey has a materially greater interest than New York, New Jersey's public policy concerning the arbitration provision at issue is irrelevant. Moreover, Plaintiff cannot establish that New Jersey has a fundamental public policy that would be defeated by the application of New York law.

In *Homa,* a court in this district considered the validity of an arbitration clause in a consumer credit card contract that contained a class action waiver similar to that in the Agreement. The court held that "the parties' choice of Utah law controls because application of that law does not violate any fundamental public policy of New Jersey." *Homa,* 496 F. Supp. 2d at 448. The court held that the New Jersey Supreme Court's decision in *Muhammad,* finding a class action waiver to be unconscionable, did not "establish a fundamental public policy against the enforcement of class-action waivers in arbitration agreements. In fact, *Muhammad* confirms that class-action waivers are not 'per se unenforceable' under the public policy of New Jersey." *Id.*

The *Homa* court's reading of *Muhammad* is correct. *Muhammad* did not hold that class action waivers are necessarily unconscionable, and, in a companion case issued the same day, enforced a class action waiver on different facts. *See Delta Funding Corp. v. Harris,* 189 N.J. 28, 60-61 (2006). A class action waiver may be unconscionable in a particular context without implicating fundamental public policy: the two are separate and distinct standards. *See Carideo v. Dell, Inc.,* 492 F. Supp. 2d 1283, 1288 (W.D. Wash. 2007) ("The court finds

unavailing Plaintiff's attempt to conflate the concepts of fundamental public policy (which operates to invalidate an entire area of contract law) and substantive unconscionability (which examines one contract provision at a time)."

The *Homa* court's conclusion that *Muhammad* does not establish a fundamental public policy of New Jersey compels the application of New York law to the determination of the validity of the arbitration clause in the parties' Agreement.

<div align="center">

**POINT III**

**APPLYING NEW JERSEY PUBLIC POLICY TO INVALIDATE THE ARBITRATION AGREEMENT WOULD CONTRAVENE FEDERAL LAW**

</div>

In the event that the Court were to find that New Jersey's fundamental public policy is implicated by this motion, applying *Muhammad* to invalidate the arbitration agreement would violate the FAA.[3] In enacting Section 2 of the FAA, "Congress precluded States from singling out arbitration provisions for suspect status. . ." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). That a state decision "employs a general principle of contract law, such as unconscionability, is not always sufficient to ensure that the state-law rule is valid under the FAA." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir.

---

[3] As the Court is aware, Verizon Wireless has filed a motion to compel individual arbitration of the plaintiffs' claims in *Litman v. Cellco P'ship*, Civ. Act. No. 07-4886 (FLW) (JJH), also pending before this Court. That motion, the supporting brief to which is attached to the Certification of Todd L. Schleifstein, dated December 27, 2007, also demonstrates that unconscionability is not a grounds for refusing to enforce an arbitration agreement subject to the FAA because the term "revocation" as used in section 2 of the FAA only encompasses defects in contract formation, not substantive unconscionability, and that an application of *Muhammad* to invalidate the arbitration provision would frustrate Congress's objectives in enacting the FAA and is therefore preempted. *See* Brief in Support of Defendant's Petition to Compel Arbitration at 15-22, 37-40. These issues need not be considered or reached here because there is a New York choice of law provision in this case, unlike in *Litman*, where the plaintiffs are New Jersey residents as to whose claims New Jersey law should apply. As shown above, New Jersey public policy is simply not relevant to this Motion. Moreover, the Third Circuit's decision in *Gay* provides a compelling and independent basis for rejecting the application of *Muhammad*. If, however, the Court determines that none of these grounds suffices to establish the enforceability of the arbitration provision at issue, Verizon Wireless respectfully requests that the Court consider the additional arguments that it presented in *Litman*.

2004). "[S]tate courts are not permitted to employ those general doctrines in ways that subject

arbitration clauses to special scrutiny." *Id.* In particular, a "state law disfavoring or

prohibiting arbitration for a class of transactions" is prohibited by the FAA. *Stone v. Doerge*,

328 F.3d 343, 345 (7th Cir. 2003). The New Jersey Supreme Court's decision in *Muhammad*

falls into the prohibited category because it effectively holds that a class-arbitration waiver in

any consumer contract that predictably involves small amounts in controversy is prohibited.

The Third Circuit's decision in *Gay* confirms that using New Jersey public policy, as

articulated in *Muhammad,* to invalidate this arbitration agreement would contravene the FAA.

The Court in *Gay* considered Pennsylvania state court authorities which held, just as

*Muhammad* did, that arbitration provisions with class action waivers were unconscionable and

cannot be enforced in cases involving small amounts in controversy. 2007 WL 3310362 at *

19 (discussing *Lytle v. CitiFinancial Servs., Inc.*, 810 A.2d 643 (Pa. Super. Ct. 2002) and

*Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super. Ct. 2006)). Recalling the Supreme

Court's warning that "a court [may not] rely on the uniqueness of an agreement to arbitrate as a

basis for a state-law holding that enforcement would be unconscionable," the Third Circuit

examined whether this Pennsylvania case law complied with the FAA's prohibition on treating

arbitration agreements as uniquely suspect. *Gay,* 2007 WL 3310362 at *20 (quoting *Perry v.

Thomas,* 482 U.S. 483, 492 n.2 (1987)). The Court concluded:

> To the extent, then, that *Lytle* and *Thibodeau* hold that the inclusion of a
> waiver of the right to bring judicial class actions in an arbitration
> agreement constitutes an unconscionable contract, they are not based
> 'upon such grounds as exist at law or in equity for the revocation of *any*
> contract' pursuant to section 2 of the FAA, and therefore cannot prevent
> the enforcement of the arbitration provision in this case. . . .
>
> [T]here is no escape from the fact that [*Lytle* and *Thibodeau*] deal with
> agreements to arbitrate, rather than with contracts in general, and thus they
> are not in harmony with *Perry*. It would be sophistry to contend . . . that
> the Pennsylvania cases do not 'rely on the uniqueness of an agreement to
> arbitrate as a basis for a state-law holding that enforcement would be
> unconscionable. [citation]

*Id.*

There is no discernible difference between the analysis employed by the Pennsylvania courts in *Lytle* and *Thibodeau*, on the one hand, and by the New Jersey Supreme Court in *Muhammad*. Each holds that an arbitration agreement that prohibits a class action in cases with small stakes is unconscionable. Each does so based on the respective state's policy favoring class actions. *See Thibodeau*, 912 A.2d at 884; *Lytle*, 810 A.2d at 665; *Muhammad*, 189 N.J. at 16-18. Each is concerned that, without the availability of class procedures, the arbitration agreement would operate to exculpate defendants' wrongful acts and shield them from liability. *Thibodeau*, 912 A.2d at 885; *Lytle*, 810 A.2d at 666; *Muhammad*, 189 N.J. at 19-21. While each purport to apply generally applicable principles of contract law, the Third Circuit emphatically rejected this pretense, deeming it "sophistry" that cannot obscure the underlying hostility to arbitration provisions for particular classes of transactions. The Third Circuit's rejection of the Pennsylvania cases as contrary to the FAA, therefore, applies squarely to the New Jersey Supreme Court's analysis in *Muhammad*.

Nor is there a meaningful difference between Plaintiff's arguments here and those of the appellant in *Gay*. As in *Gay*, "it is perfectly obvious" that Plaintiff "relies on the uniqueness of the arbitration provision in framing [his] unconscionability agument." *Gay*, 2007 WL 4410362 at *21. Plaintiff does not assert that his wireless service agreement, as a whole, is unconscionable or that he was misled into entering into the Agreement. Rather, Plaintiff, like the plaintiff in *Gay*, "contends that the provision is unconscionable because of what it provides, i.e., arbitration of disputes on an individual basis in place of litigation possibly brought on a class action basis." *Id.*; *cf.* Complaint ¶ 26 (asserting that the contract is offered on a "take-it-or-leave-it basis in a setting in which disputes . . . predictably involve small amounts of damages" and that enforcing provision would "shield" Verizon Wireless "from civil liability" and "virtually immunizes [it] from responsibility for [its] own wrongful conduct.") As in *Gay*, applying state law to declare the provision unconscionable on these purported bases will "interfere with the appropriate application of the FAA" and is thus impermissible. 2007 WL 4410362 at *21.

*Gay* is squarely on point. New Jersey cannot place certain contracts in a special category for disfavored treatment. This is precisely what *Muhammad* did, however, in declaring unenforceable all arbitration agreements that foreclose class treatment of low value claims. Any application of *Muhammad* to invalidate this provision will therefore interfere with the appropriate application of the FAA, as the Third Circuit found. Although application of New York law under the choice of law provision is a sufficient basis for upholding the arbitration provision in this case, *Gay* teaches that a contrary result based upon the application of New Jersey law would be preempted by the FAA.

## CONCLUSION

For the foregoing reasons, the Court should enter an order dismissing Plaintiff's Complaint and directing Plaintiff to arbitrate his claims on an individual basis.

Respectfully submitted,

/s/ Todd L. Schleifstein
Philip R. Sellinger (PS 9369)
Todd L. Schleifstein (TS 3787)
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900

– and –

Henry Weissmann (admitted *pro hac vice*)
Hojoon Hwang (admitted *pro hac vice*)
Jonathan H. Blavin (admitted *pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000
Attorneys for Defendant Cellco Partnership,
d/b/a Verizon Wireless

Dated: December 27, 2007

4140183.2                    17

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN WAUDBY, individually and on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>   v.<br><br>VERIZON WIRELESS SERVICES, LLC and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS<br><br>Defendant. | Civil Action No. 07-470(FLW)(JJH) |

## BRIEF IN OPPOSITION TO MOTION TO COMPEL INDIVIDUAL ARBITRATION

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
William M. Sweetnam
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
Scott Alan George
SEEGER WEISS
550 Broad Street
Newark, New Jersey  07102
(973) 639-9100

Richard J. Burke
RICHARD J. BURKE LLC
1010 Market Street, Suite 660
St. Louis, Missouri 63101
(314) 880-7000

Interim Class Counsel

# TABLE OF CONTENTS

Table Of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Statement Of Facts And Procedural History............................................................. 4

Legal Argument ...................................................................................................... 7

       Point One

Verizon Waived Its Right To Arbitrate This Matter.................................................. 7

    A.    This Court Has The Authority To Determine If Verizon Waived .................... 7

    B.    The Controlling Legal Standard Governing Waiver.......................................... 8

    C.    Verizon Waived Its Purported Right To Arbitrate............................................ 10

          i)    Verizon's Motion To Compel Arbitration Is Untimely .......................... 10

          ii)    Verizon Has Contested The Merits Of Plaintiff's Claims
               And Acted Inconsistent With Its Alleged Arbitration Rights................ 12

          iii)    Verizon's Failure To Raise Arbitration At The Court's
               November 13, 2007 Status Conference Is Inconsistent
               With Its Alleged Arbitration Rights........................................................ 13

          iv)    Verizon Never Informed The Court
               Or Its Adversary Of Its Embrace Of Arbitration ................................... 14

          v)    Verizon's Forum Shopping Has Caused
               Significant Non-Merits Motion Practice................................................. 15

       Point Two

Verizon's Arbitration Clause Is An Unenforceable Exculpatory Clause ...................... 17

    A.    Rules Regarding Exculpatory Clauses Are Not Preempted By The FAA......... 17

    B.    Verizon's ETF Is An Unenforceable Penalty .................................................... 18

    C.    Verizon's Arbitration Clause Is An Unenforceable Exculpatory Clause .......... 20

    D.    The Arbitration Clause Provides No Real Remedy To Plaintiff Or The Class . 22

i

Point Three

As A Matter Of New Jersey Public Policy Class Action Waivers
Are Unenforceable Whether Applied To Court Proceedings Or Arbitration ............... 28

Conclusion ................................................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**

*A.H.A. General Construction, Inc. v. New York City Housing Authority*,
   92 N.Y.2d 20, 699 N.E.2d 368, 677 N.Y.S.2d 9 (1998) ........................................................ 20

*Ann-Par Sanitation v. Town of Brookhaven*,
   23 A.D.2d 380, 804 N.Y.S.2d 758 (2d Dept. 2005) ................................................................ 18

*Bates Advertising USA, Inc. v. 498 Seventh LLC*,
   7 N.Y.3d 115, 850 N.E.2d 1137, 818 N.Y.S.2d 161 (2006) .................................................. 19

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................................ 17

*Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995) .............. 9

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) .............................. 16, 22

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) .................................................................. 24, 25

*Cotton v. Clone*, 4 F.3d 176 (2nd Cir. 1993) .......................................................................... 9, 10

*Delta Funding Corporation v. Harris*, 189 N.J. 28 (2006) .......................................................... 30

*Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14 (2d Cir. 1992) ........................... 25

*Doctor's Assoc., Inc. v. Casrotto*, 517 U.S. 681 (1996) ......................................................... 8, 17

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) .................................. 8, 9, 10, 11

*Erny v. Estate of Merola*, 171 N.J. 86 (2002) ............................................................................ 18

*Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) ........................................................... 4, 17, 29

*Gibbs v. Carnival Cruise Lines*, 314 F.3d 125  (3d Cir. 2002) .................................................... 18

*Hilferty v. Chevrolet Motor Division of General Motors Corp.*,
   1996 WL 287276 (E.D.Pa. 1996) ........................................................................................ 26

*Hoxworthy v. Glinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992) ......................................... 11

*International Cablevision, Inc. v. Noel*, 982 F.Supp. 904 (W.D.N.Y. 1997) .............................. 25

*JMD Holding Corp. v. Congress Financial Corporation*,
   4 N.Y.3d 373, 828 N.E.2d 604, 795 N.Y.S.2d 502 (2005) .................................................. 19

*Kane v. U-Haul International*, 218 Fed.Appx. 163 (3d Cir. 2007) .............................................. 20

*Koken v. Morelli*, 2007 WL 2990681 (D.N.J. 10/10/07) ........................................................ 8, 17

*Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991) ..................................................................... 9

*Lago v. Krollage*, 78 N.Y.2d 95, 575 N.E.2d 107, 571 N.Y.S.2d 689 (1991) ........................... 20

*Lewallen v. Green Tree Servicing*, 487 F.3d 1085 (8th Cir. 2007) ................................... 9, 11, 14

*Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643 (Pa.Super.Ct. 2002) .................................... 17

*Marie v. Allied Home Mort. Corp.*, 402 F.3d 1 (1st Cir. 2005) ..................................................... 8

*Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1 (2006) ................. 28, 29, 30

*Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3d Cir. 1989) .................................... 26

*Sanif v. Iannotti*, 119 A.D.2d 654, 500 N.Y.S.2d 7989 (2d Dept. 1986) .................................... 21

*Tessler v. Sonitrol Security Systems of Northern New Jersey, Inc.*,
   203 N.J.Super. 477 (App.Div. 1995) .................................................................................. 21

*Thiboudeau v. Comcast Corp.*, 912 A.2d 874 (Pa.Super.Ct. 2006) ............................................. 17

*Trump International Hotel & Tower v. Carrier Corp.*,
   2007 WL 3120865 (S.D.N.Y. 10/23/07) ............................................................................ 20

**Statutes**

47 U.S.C. § 206 ........................................................................................................................ 23

47 U.S.C. §201 ......................................................................................................................... 23

9 U.S.C. § 2 ............................................................................................................................. 17

iii

N.J.SA. 56:8-19........................................................................................................ 23

**Other Authorities**
Restatement (Second) Conflict of Laws § 187 ........................................................... 18
Restatement (Second) of Contracts, § 356, comment b............................................. 19
Restatement, Second, of Contracts, § 356(1)........................................................... 18

**Rules**
Fed. R. Civ. Pro. 12 (g)............................................................................................. 11

iv

**PRELIMINARY STATEMENT**

Plaintiff, John Waudby. filed this putative class action on January 26, 2007.  Since that time, defendants, Verizon Wireless Services, LLC and Cellco Partnership, d/b/a "Verizon Wireless" (collectively "Verizon") have done everything possible to avoid addressing Plaintiff's claims on the merits.  First, Verizon answered the complaint and filed a counterclaim against Plaintiff for breach of contract and unjust enrichment.  Although Verizon asserted – in one of its thirty-three affirmative defenses – that Plaintiff's claims were subject to a valid agreement to arbitrate, Verizon did not move to compel arbitration.  Instead, Verizon filed a motion to refer Plaintiff's claims arising under Section 201 of the Federal Communications Act (hereinafter the "Section 201 Claim") to the Federal Communications Commission ("FCC") under the primary jurisdiction doctrine, and sought either dismissal or a "stay" of Plaintiff's state law consumer fraud claims.  In other words, Verizon affirmatively invoked the Court's jurisdiction to prevent Plaintiff from litigating the Section 201 Claim in Federal Court, in favor of resolving that claim in an administrative tribunal.  Verizon did not seek the Court's intervention to compel arbitration of the Section 201 Claim, nor did it seek the Court's intervention to compel arbitration of the state law claims – it invoked the Court's power to stay or dismiss those claims.

On May 25, 2007, the Court granted Verizon's motion (Docket Entry ("D.E.") 20).  In addition, the Court scheduled an in-person status conference for November 13, 2007, to address: (1) the status of the pre-emption case before the FCC; (2) the status of the referral of the Section 201 Claim to the FCC; (3) the need for modification or termination of the Order to Stay; and (4) commencement of class discovery (D.E. 21).

Six months passed and Verizon did absolutely nothing to move its preemption case before the FCC.  On November 13, 2007, the previously scheduled conference with the Court took place. After hearing the parties' positions, the Court determined that the stay against all of

plaintiff's claims would lift after December 31, 2007, and that substantive class discovery would commence at that time. The parties were directed to meet and confer concerning a proposed scheduling order and to submit their respective proposals to the Court by January 25, 2008. During the conference, Verizon made no mention of its hidden intention to file a motion to compel arbitration. (Declaration of James E. Cecchi, dated February 19, 2008 ("Cecchi Dec.") ¶¶3-4.)

On December 27, days before the stay was to be lifted, and while Verizon and Plaintiff's counsel were supposed to be working on a joint discovery plan, Verizon belatedly filed a motion to compel arbitration, arguing that all of Plaintiff's claims – including the Section 201 Claim – should be arbitrated on an individual (not class) basis.[1] Simultaneously, in a related but not identical class arbitration case, Verizon argued that class ETF claims were most appropriately resolved in this Federal Court proceeding! (Cecchi Dec., Exhibit A, Arbitration Award, at 32-33).[2]

Verizon's serial assertion of different positions, at different times, in different venues, reveals that its true objective is to avoid, at all costs, substantive adjudication of Plaintiff's class claims. Put simply, Verizon seeks to put Plaintiff's claims in a perpetual state of limbo, somewhere between litigation, the FCC, and arbitration. It is attempting to whipsaw the various forums by arguing in each that another forum is more appropriate.

---

[1]     Verizon has not, however, sought to refer to arbitration its conditional counterclaim against Plaintiff. In addition, in keeping with its practice of playing each side of every issue, Verizon continues to assert that the FCC is, actually, the proper forum for resolution of Plaintiff's claims, and that it does not "waive" that argument by seeking resolution in another, entirely different forum. *See* Verizon Brief, p. 2, n. 1.

[2]     On January 25, 2008, the Court entered an Order denying an application by proposed intervenor Brian Thormann to stay this matter in favor of the pending similar AAA arbitration (D.E. 48).

2

There are, however, consequences to the tactical gamesmanship employed by Verizon. By invoking this Court's jurisdiction to send Plaintiff's claims to an alternative administrative forum prior to moving to compel arbitration, by seeking a stay or dismissal of Plaintiff's state law claims, by delaying the prosecution of this case for nine months, by remaining silent during a substantive conference with the Court about scheduling class discovery, and by arguing to a AAA Arbitrator that class claims relating to Early Termination Fees should be resolved in this proceeding in Federal Court, Verizon has not only taken inconsistent positions but has prejudiced Plaintiff and waived its right to have this dispute resolved by arbitration. Indeed, Verizon was well aware of its purported right to have Plaintiff's claims arbitrated when it filed its answer and counterclaim. It made the conscious decision not to invoke that purported right and, instead, to send Plaintiff's claims to a different place – the FCC. When that gambit failed, and it was ordered to conduct class discovery after months of delay, Verizon changed course and came up with a contingency delay plan – arbitration!

Plaintiff submits that Verizon's recent embrace of arbitration comes too late, is at odds with its previous desire to have Plaintiff's claims resolved in an administrative proceeding, as well as its assertion in the class arbitration that Federal Court is the most appropriate forum to resolve class wide ETF claims. On the final point, Plaintiff agrees. This is, in fact, the only forum that can grant complete relief to the class on all of its claims. It is the only forum where Verizon can obtain nationwide finality. Based upon Verizon's conduct, Plaintiff respectfully submits that it is the forum Verizon is stuck with.

Verizon's conduct has also severely prejudiced Plaintiff and placed significant burdens on the Court. There has been extensive sophisticated motion practice in this case including Verizon's motion to refer Plaintiff's claims to the FCC, a motion to intervene by a putative class representative, cross-motions to appoint class counsel, and a motion to stay this action in favor of

3

a pending class arbitration proceeding. Plaintiff's counsel has spent hundreds of hours and many thousands of dollars responding to these motions. For its part, the Court has been compelled to review hundreds of pages of briefs, hundreds of pages of exhibits, and has written two lengthy opinions – first referring this matter to the FCC, and most recently, appointing Interim Class Counsel. All of this illustrates that Verizon's motion does not come at the earliest feasible point in the litigation (as it must), but at a point long after the ship has sailed. Indeed, Class Counsel has already received thousands of pages of discovery relevant to class certification and is in the process of reviewing those materials to prepare its class certification brief. It would, respectfully, be contrary to the interests of justice, and severely prejudicial to Plaintiff if, after all of this time, activity and work, Plaintiff was now forced to arbitrate his $175 ETF claim.

Finally, even if the Court were convinced that Verizon has not waived arbitration, Verizon has no right to compel arbitration in this case because the purported arbitration clause in its customer agreement is, in reality, an unenforceable exculpatory clause that seeks to exonerate Verizon from its own intentional wrongdoing. Such clauses are universally condemned, whether they appear in arbitration agreements or not. For that reason, the Third Circuit's recent decision in *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) is inapposite to this case.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff John Waudby filed this action on January 26, 2007 on behalf of himself and all others similarly situated seeking a refund from Verizon of a $175 Early Termination Fee ("ETF") charged by Verizon to customers who terminate their wireless telephone service with Verizon prior to the expiration of their contract term. Plaintiff claims that the ETF is an unreasonable charge under § 201 of the Federal Communications Act, and is an unenforceable penalty under the common law.

4

Ostensibly, Verizon charges the ETF to recoup the discount on cellular telephones that Verizon gives when customers obtain a new phone when signing up for or renewing their Verizon cellular phone service.  However, the ETF is a flat fee charged to the customer regardless of when the customer cancels his or her service, or why the customer cancelled service.  Thus, a customer who cancels in the 23rd month of a two-year contract would be charged the same $175 ETF as a customer who cancels after the first week of a two-year contract.  Likewise, a customer who cancels service due to bad reception or other service failures, is charged a $175 ETF.  Further, Verizon charges an ETF to customers in cases where Verizon terminates the contract.

On March 23, 2007, Verizon answered the Complaint and filed a counterclaim against Plaintiff.  It also moved to refer the Section 201 Claim to the FCC and to stay or dismiss all remaining claims pending other FCC proceedings.  Verizon argued that the ETF was a "rate charged" under the FCC's enacting legislation and, therefore, the FCC was the only forum for resolution of the dispute as to the reasonableness of its ETF.  Verizon wrote that under the primary jurisdiction doctrine the FCC has the expertise and authority to decide the controlling questions of law raised by plaintiff's challenge to Verizon's ETF (D.E. 9).

Verizon's motion was granted by way of Order dated May 24, 2007.  The Order also scheduled an in-person conference with the Court for November 13, 2007 to discuss the progress of the case, if any, before the FCC, and to revisit whether the stay should remain in place.

Thereafter, despite having prevailed upon the Court to send Plaintiff's claims to the FCC, Verizon took no steps to move the issue at all in the administrative forum.  At the November 13 conference, the parties reported to the Court that there had been no progress before the FCC.  As a result, the Court directed that the stay would be terminated as of the end of the year if the FCC had not reached a decision on the issues before it, and ordered the parties to present a plan to

5

proceed with class discovery. At no time prior to or during the conference with the Court did Verizon advise Plaintiff or the Court of its intention to seek arbitration.

On the same day as the Scheduling Conference, Brian Thormann, a client of lead counsel in the class wide arbitration addressing similar, but not identical class claims as raised here, filed an extensive motion to intervene in this action and to have his counsel, Scott Bursor, appointed interim class counsel (D.E. 24). On December 14, 2007, Verizon filed a brief opposing Thormann's motion to intervene. (D.E. 31). In its brief, Verizon made no mention of arbitration but, instead, argued that Thormann had not demonstrated that Waudby was an inadequate class representative. Verizon further argued that Thormann would always have the "option of opting out of any class that may ultimately be certified in this case to pursue his claims independently."

Plaintiff was also required to file extensive papers opposing both Thormann's motion to intervene, as well as his motion to appoint Mr. Bursor as class counsel. Plaintiff also filed a cross-motion to have his counsel appointed interim class counsel (D.E. 31).

On December 27, 2007, just days before the stay was to expire, and two weeks after it argued that Thormann had no basis to intervene because he had not demonstrated that Waudby was an inadequate *class representative,* Verizon filed the within motion to compel individual arbitration (D.E. 33).

On January 11, 2008, Mr. Thormann filed an application, by way of letter, seeking a stay of this matter in favor of the New York arbitration proceeding (D.E. 37). On January 14, 2008, Plaintiff responded to Thormann's motion to stay, arguing that this case should proceed, and that the claims and putative classes were not identical to those addressed in the class arbitration (D.E. 39).

On January 18, 2008, the Court held a Scheduling Conference which was attended by counsel for proposed intervenor Brian Thormann.  At the conference, Thormann again sought a stay of this action in favor of the class arbitration taking place in New York.

On January 25, 2008, the Court denied Thormann's motion to stay this case in favor of the New York arbitration, and entered a Scheduling Order for Class Discovery (D.E. 45-2).  On January 30, 2008, the Court entered a "Discovery Protective Order" which had been negotiated by the parties (D.E. 48).  Thereafter, pursuant to the Court's Scheduling Order, Verizon produced to Plaintiff thousands of documents relevant to class certification.

In addition, on February 15, 2008, the Court denied Thormann's motion to intervene, and granted, in a lengthy opinion, Plaintiff Waudby's cross-motion to have his counsel appointed Interim Class Counsel (D.E. 51).  As such, the motion before the Court comes not at the earliest possible time, but after extensive motion practice spanning more than a year, and after the appointment of Interim Class Counsel.

## POINT ONE

### VERIZON WAIVED ITS
### RIGHT TO ARBITRATE THIS MATTER

Having failed to permanently bury Plaintiff's claims in the administrative quagmire of the FCC, Verizon changed its mind and discovered that, contrary to its previous arguments, it now believes Plaintiff's claims should be arbitrated – but *only* on an individual basis.  Verizon belated embrace of the arbitral forum comes too late since Verizon has, respectfully, waived any purported right to arbitrate.

### A.    This Court Has The Authority To Determine If Verizon Waived

As a threshold matter, this Court has authority to determine whether Verizon waived any right to seek to compel arbitration in the first instance.  The issue of whether a party has waived

7

arbitration as a result of its conduct before the court is an issue for the judge, not the arbitrator. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217-19 (3d Cir. 2007); *Marie v. Allied Home Mort. Corp.*, 402 F.3d 1, 13-14 (1st Cir. 2005). "Where the alleged waiver arises out of conduct within the very same litigation which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings. . . . Judges are well-trained to recognize abusive forum shopping." *Marie*, 403 F.3d at 13. Here, Plaintiff contends that Verizon waived its right to arbitrate as a result of its actions here. Thus, the waiver issue is to be decided by the Court.

## B. The Controlling Legal Standard Governing Waiver

While the FAA permits a district court to send to arbitration all matters that may be found to be controlled by a valid arbitration clause, *see* 9 U.S.C. § 4, the right of a party to compel such arbitration is limited. It is "well settled that a party can waive its contractual right to arbitration like any other contractual provision." *Koken v. Morelli*, 2007 WL 2990681, *2 (D.N.J. 10/10/07) (citing *Ehleiter, supra.* and *Southern Sys. Inc. v. Torrid Oven Ltd.*, 105 F.Supp.2d 848, 852 (W.D. Tenn. 2000)). Likewise, the FAA provides that the court is required to stay an action pending arbitration only if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Such "default" includes waiver as a result of a party's actions in court.[3] *Ehleiter*, 482 F.3d at 218; *Marie* 402 F.3d at 13; *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 204-05 (4th Cir. 2004).

---

[3]      Waiver is also a defense arising "upon such grounds as exist at law or in equity for the revocation of any contract" under 9 U.S.C. § 2. *See generally Doctor's Assoc., Inc. v. Casrotto*, 517 U.S. 681, 687 (1996); *Ehleiter*, 482 F.3d at 217-18. However, in federal court, waiver is generally decided as a matter of federal law under Section 3 rather than under general contract rules.

A party may not merely assert a right to arbitrate without taking "appropriate steps to secure it." *Cotton v. Clone*, 4 F.3d 176, 179 (2nd Cir. 1993). "To safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the *earliest feasible determination* of whether to proceed judicially or by arbitration." *Lewallen v. Green Tree Servicing*, 487 F.3d 1085, 1091 (8th Cir. 2007)(emphasis added). Under the majority rule, "prejudice is the touchstone for determining whether the right to arbitration has been waived by litigation conduct." *Ehleiter*, 482 F.3d at 222.[4]   Prejudice can consist of either substantive prejudice, such as when a party loses a motion going to the merits and essentially attempts to evade the full implications of its loss, or procedural and "can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).

Among the factors which may be considered to assess whether the party opposing arbitration has suffered prejudice are:  1)  the timeliness or lack thereof of a motion to arbitrate; 2)  the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; 3)  whether the party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; 4)  the extent of its non-merits motion practice; 5)  its assent to the trial court's pretrial orders; and 6)  the extent to which both parties have engaged in discovery. *Ehleiter*, 482 F.3d at 222.  The waiver determination depends upon the particular facts of the case and is not susceptible to bright line

---

[4]      The one exception is the Seventh Circuit, which holds that no showing of prejudice to the party opposing arbitration is necessary beyond the prejudice in changing forums midstream. *Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).  The *Cabinetree* court recognized the majority position "requires evidence of prejudice – but not much." *Id.* Since the Third Circuit follows the majority rule that prejudice must be shown, each of the cases cited herein follow the majority rule.

9

rules. *Cotton*, 4 F.3d at 179. Tested by these standards, it is apparent that Verizon has affirmatively waived any alleged contractual right to arbitrate.

### C.   Verizon Waived Its Purported Right To Arbitrate

Verizon has waived its right to compel arbitration because its motion is untimely and its conduct in this litigation is inconsistent with a desire to proceed with arbitration. Plaintiff and his counsel have also been procedurally prejudiced by Verizon's conduct because they have been compelled to respond to numerous non-merits motions, incurring many thousands of dollars in attorney time in the process. As shown below in more detail, these facts all demonstrate that Verizon's motion is untimely, would prejudice Plaintiff if granted, and should be denied.

### i)   Verizon's Motion To Compel Arbitration Is Untimely

At the outset of this case, on March 23, 2007, Verizon moved to refer Plaintiff's federal claims to the FCC and to stay Plaintiff's state law claims. (D.E. 9). Alternatively, Verizon sought to dismiss Plaintiff's claims. While Verizon's motion was not granted until May 25, 2007, the filing of the motion for referral and stay had the practical effect of staying the litigation. The Court did not proceed with the usual initial scheduling conference upon the filing of the Answer. Rather, the case was "on hold" pending resolution of Verizon's motion. Verizon's motion for referral and for a stay was successful, so that Plaintiff had to wait until the end of 2007 to schedule class discovery, and until February 2008 to commence class discovery.

Just before the stay was set to expire and the parties were to proceed with discovery, Verizon moved to compel arbitration. Verizon's motion was calculated to avoid giving any weight to *Ehleiter* factor no. 6, the extent to which both parties have engaged in discovery, since it was filed just before discovery was to commence. However, it was already too late for Verizon. The motion to compel arbitration came 11 months after the complaint was filed and nine months after it filed a motion to refer Plaintiff's claims to the FCC and for a stay. In

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992), the Third Circuit found that a delay of 11 months in moving to compel arbitration was sufficient to waive arbitration. The delay here is much closer in duration to that in *Hoxworthy* than in other cases cited in *Ehleiter* where the Third Circuit noted that the time involved was clearly too short. *See Ehleiter*, 482 F.3d at 223. *Compare also Lewallen*, *supra*. (11 month delay).

Further, timeliness is not merely a procedural requirement without substance. Federal Court's enforce timeliness requirements regarding forum issues strictly because invoking the jurisdiction of the proper forum – at the earliest possible time – is essential to enhancing judicial economy and efficiency. Although Verizon's motion to "refer" and "stay" was not, strictly, a Rule 12 motion, the concepts embodied in Rule 12 are certainly relevant when considering the first *Eihleter* factor. In particular, Rule 12(h) clearly establishes that certain types of motions going to the proper forum are waived if omitted from a motion made under Rule 12. Fed. R. Civ. Pro. 12 (g). Here, by contending at the outset of the case and at a time when it certainly could have moved to compel arbitration that the FCC was the primary adjudicative body which should consider and resolve Plaintiff's claims, Verizon waived the alternative and opposite argument that Plaintiff's claims were subject to mandatory individual arbitration.

Verizon's intentional decision to choose the administrative forum is also not without consequence to the goals of judicial economy and efficiency embodied in Rule 12 and the waiver rules. Plaintiff and the other class members have been prejudiced because they suffered an unnecessary delay and significant unnecessary expense in proceeding with their claims while Verizon alternated between the FCC and arbitration. Put simply, Verizon could have moved to compel arbitration last March, but chose not to. Now, 11 months later, when things did not work out as it hoped for in the administrative forum, Verizon seeks to send Plaintiff's claims to yet another, equally unacceptable forum – arbitration. As such, Verizon did not move to compel

11

arbitration at the "earliest feasible" point. It affirmatively delayed and only moved to compel arbitration when it did not like the outcome of its first, preferred forum, the FCC.

> **ii)** **Verizon Has Contested the Merits of Plaintiff's Claims And Acted Inconsistent With Its Alleged Arbitration Rights**

Between the time that Verizon first appeared and the end of December 2007, the case did not proceed to class discovery because Verizon wanted Plaintiff's federal claims heard by the FCC and it wanted no one to hear Plaintiff's state law claims. If Verizon wanted to proceed to arbitration, it could have easily done so in March 2007. Indeed, among Verizon's affirmative defenses asserted in its answer was that Plaintiff's claims were subject to arbitration. (*See* D.E. 8, Verizon Answer, Third Affirmative Defense). However, rather than attempting to compel arbitration at the earliest feasible time as it is obligated to do, Verizon successfully obtained an order referring Plaintiff's federal claims to the FCC and a stay of Plaintiff's state law claims. Verizon took advantage of this Court's processes to send Plaintiff's Section 201 Claim somewhere other than to arbitration and to stay proceedings on Plaintiff's state law claims. As a result, at Verizon's insistence, Plaintiff had to sit idle for nine months.

Verizon's initial litigation decision reveals that – as a matter of choice – it determined that the FCC was the preferable forum, and that the primary jurisdiction doctrine mooted this case. In other words, Plaintiff's claims were not arbitrable, they were subject to the regulatory control of the FCC. This decision is the exact opposite of preserving one's right to arbitrate.

Verizon's reference to the case of *Litman v. Cellco Partnership*, Civil Action No. 07-4886 (FLW)(JJH), is highly instructive and supportive of Plaintiff's position on this point. Although the claims in this case are entirely different, and counsel here did not even know about *Litman* until Verizon referred to it in its brief (Verizon Brief, at 14, n. 3), *Litman* shows how a

party wishing to preserve its alleged arbitral rights should proceed.[5]   In *Litman*, Verizon immediately moved to dismiss plaintiff's claims *with prejudice* on the grounds that they were pre-empted by the FCC, and simultaneously moved to compel arbitration.  Verizon did not move to "refer" the Plaintiff's claims to the FCC, nor did it move to "stay" Plaintiff's state law claims pending resolution of Plaintiff's claims in the FCC as it did in this case.  As such, the very least that can be said is that in *Litman*, unlike this case, Verizon did assert its rights to arbitrate at the earliest feasible moment.  Similarly, Verizon did not seek adjudication in an administrative forum, before seeking resolution in arbitration as it has done here.  Thus, to the extent that *Litman* has any relevance to this case, it shows how Verizon's conduct here has been entirely inconsistent with a perceived right to arbitrate these very different ETF claims.

Defendant has also vigorously contested the merits of Plaintiff's claims, and in the process affirmatively invoked the jurisdiction of the District Court.  It has asserted thirty three affirmative defenses and filed a counterclaim against Plaintiff seeking damages.   By doing so Verizon has elected to invoke judicial jurisdiction when it suits its purposes, and has accepted the benefits of that election by obtaining a stay of this action for many months while the FCC considered the preemption issue.  Having accepted the benefit of the Court's jurisdiction it cannot, consistent with *Eihleiter* or fundamental notions of fair play, reject the Court's jurisdiction at a different time when it perceives it to be in its immediate interests to do so.

### iii)   Verizon's Failure To Raise Arbitration At the Court's November 13, 2007 Status Conference Is Inconsistent With Its Alleged Arbitration Rights

Verizon's conduct during the Court's November 13, 2007 status conference is also relevant to the Court's determination of whether Verizon waived and has prejudiced Plaintiffs.

---

[5]      Since Plaintiff here has nothing to do with *Litman*, and has no knowledge whatsoever about the substance of that case, we express no opinion on whether those claims are subject to arbitration or not.

13

When it became clear to the Court at the November 13, 2007 conference that the FCC was not going to resolve the issues before it, the Court decided to lift Verizon's stay as of January 1, 2008, and directed class discovery to proceed after that time.  At that conference, Verizon made no mention of arbitration despite the fact that the Court directed the parties to work together to prepare a class discovery schedule after the expiration of the stay on December 31, 2007.  By remaining silent during the Court's conference, Verizon again engaged in conduct inconsistent with its alleged arbitral rights, and prejudicial to Plaintiff.  Plaintiff submits that, at the very least, after having delayed the case for months because it allegedly wanted the FCC to decide Plaintiff's claims, Verizon was obligated to speak up and inform the Court and Plaintiff that it now wanted to arbitrate.  Verizon did not do so and remained silent during a conference concerning substantive class discovery.  Its conduct – of doing one thing but secretly planning another entirely different thing – prejudiced Plaintiff and is inconsistent with its obligation of invoking the right to arbitrate at the earliest feasible moment.

Indeed, an arbitration clause is not a fallback position to be used if other forums do not produce the desired results.  "An arbitration provision gives the parties the choice of an alternative, nonjudicial forum to resolve their disputes, but it does not go so far as to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums." *Lewallen*, 487 F.3d at 1092.   However, sequential avoidance of this litigation is exactly what Verizon seeks to accomplish.

### iv)    Verizon Never Informed The Court Or Its Adversary Of Its Embrace Of Arbitration

In assessing waiver, the *Ehleiter* court also found it relevant whether the moving party had informed its adversary or the Court of its intention to seek arbitration, even if its application had not yet been made.  This did not happen here.  During the many months the case languished

14

with no activity, and during the Court's November scheduling conference, Verizon never informed plaintiff or the Court of its intention to seek arbitration. Indeed, Verizon agreed to meet and confer with Plaintiff's counsel to prepare a joint class discovery schedule after the lifting of the stay. Further, in opposing Thormann's motion to intervene, Verizon argued that it should be denied, not because it was planning to file a motion to compel arbitration, but because Thormann had failed to demonstrate that Waudby was an *inadequate class representative*! In fact, Verizon even argued that Thormann could opt out if he wanted to if a class were certified in this case. Verizon surprised everyone when, days later, it filed a motion to compel *individual* arbitration.

Verizon's silence is telling. It did not say anything while the case was stayed (and presumably before the FCC), because it wanted the case to remain dormant. Certainly, during the Court's November status conference, when the very topic before the Court was lifting the stay to permit substantive class discovery to commence, Verizon had an absolute duty and obligation to speak – to inform the Court and the parties of its newly minted embrace of the wisdom of individual arbitration. This failure is just as significant as its initial decision to file a motion to refer Plaintiff's Section 201 Claim to the FCC, and to stay Plaintiff's state law claims.

### v)    Verizon's Forum Shopping Has Caused Significant Non-Merits Motion Practice

The *Ehleiter* Court also identified "non-merits" motion practice as a significant factor in assessing waiver. Here, Plaintiff has been compelled to engage in extensive non-merits motion practice as a consequence of Verizon's litigation decisions. The Court has also been required to devote significant attention and resources to this matter deciding motions, and conducting conferences, that would only be necessary if the case were to proceed here.

First, Plaintiff was compelled to resist, at significant expense, Verizon's motion to refer this case to the FCC. The Court was, of course, required to devote significant time and attention to this motion. The Court's opinion is 15 pages long. Thereafter, because of the delay Verizon imposed by seeking FCC adjudication of its claims, Mr. Thormann and his counsel sought intervention in this case when it became apparent that the stay was going to lift. Thormann also sought an order appointing himself class representative, and his counsel Interim Class Counsel. Plaintiff resisted those motions and incurred significant additional expenses doing so. Further, in addition to his motion to intervene, Thormann filed an application to "stay" this litigation in favor of the New York arbitration. Plaintiff resisted that motion as well and filed his own motion for the appointment of Interim Class Counsel.

All of this protracted procedural litigation put a burden on the Court as well as Plaintiff. The Court considered and denied Thormann's motion to intervene and stay. The Court considered and granted, in a lengthy opinion, Waudby's motion to appoint Interim Class Counsel. All of this effort – by Plaintiff and the Court – constitutes the exact type of procedural prejudice which warrants a finding of waiver.

There are other significant expenses Plaintiff has incurred because of Verizon's conduct which will be wasted if its motion to compel individual arbitration is granted. The parties have negotiated, and entered into a Discovery Confidentiality Order. A schedule for class discovery has been entered, and Verizon has produced thousands of documents to plaintiffs regarding class certification. Plaintiff's counsel is reviewing those documents and is preparing its class certification brief. All of this effort will be wasted if Plaintiff is now compelled to arbitrate on an individual basis since, as Judge Posner aptly noted in *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), "only a lunatic or a fanatic sues for $30." This is the

exact type of procedural prejudice Court's look to when determining whether waiver has occurred. *See Koken*, at * 3.

<div align="center">POINT TWO</div>

<div align="center">**VERIZON'S ARBITRATION CLAUSE
IS AN UNENFORCEABLE EXCULPATORY CLAUSE**</div>

Verizon argues that its arbitration clause with Plaintiff should be enforced and that this matter should be referred to individual arbitration. Verizon primarily relies upon the Third Circuit's recent decision in *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007), which it contends held that any state case law holding that class action arbitration waivers are unconscionable are preempted by the Federal Arbitration Act. (Verizon Brief at 14-17). Plaintiff does not read *Gay* so broadly. In addition, for the reasons set forth below, Verizon's arbitration clause is unenforceable under generally applicable contract principles providing that exculpatory clauses are unenforceable.

A.   **Rules Regarding Exculpatory Clauses Are Not Preempted By The FAA**

Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, embodies a national policy favoring arbitration and putting arbitration agreements on equal footing with all other contracts. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). An arbitration clause may be invalidated under generally applicable contract defenses. On the other hand, courts may not invalidate an arbitration agreement under state laws applicable only to arbitration provisions. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In *Gay*, the Third Circuit held that the Pennsylvania decisions in *Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643 (Pa.Super.Ct. 2002) and *Thiboudeau v. Comcast Corp.*, 912 A.2d 874 (Pa.Super.Ct. 2006), which held that class action waivers in arbitration clauses were unconscionable, were preempted by the FAA. *Gay*, 511 F.3d at 394-95.

<div align="center">17</div>

Verizon argues that *Gay* controls the outcome of this motion, since any state decisions holding that class-action arbitration waivers are unconscionable would be preempted under *Gay*. *Gay* is, however, inapplicable because, while Verizon's arbitration clause may be unconscionable, it is also an unenforceable exculpatory clause. Exculpatory clause rules are generally applicable contract rules. As applied to the facts here, Verizon's arbitration clause is an unenforceable exculpatory clause because as a practical matter, it insulates Verizon from any liability for the collection of an unlawful penalty. Assuming that Verizon's arbitration clause is, in fact, a penalty, the application of general exculpatory clause rules would not be preempted by the FAA. *Gay*, therefore, is not relevant.

**B.    Verizon's ETF Is An Unenforceable Penalty**

It is a well-settled proposition of general contract law that liquidated damages provisions in a contract are enforceable, while penalty provisions are not. Restatement, Second, of Contracts, § 356(1). "While the parties to a contract may agree as to the damages in the event of a breach, the imposition of penalties or forfeitures for breach of contract is not permitted in the absence of statutory authority". *Ann-Par Sanitation v. Town of Brookhaven*, 23 A.D.2d 380, 804 N.Y.S.2d 758 (2d Dept. 2005).[6]   The issue of whether a liquidated damages provision is

---

[6]     Verizon spends a considerable portion of its brief on a choice-of-law analysis, arguing that New York law should apply to Plaintiff's claims. (Verizon Brief at 7-14). Since this action is venued in New Jersey, New Jersey choice of law rules apply. *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002). The first step in New Jersey's governmental-interest analysis is whether there is an actual conflict in the laws of the states involved. *Erny v. Estate of Merola*, 171 N.J. 86, 100 (2002). Plaintiff is relying here upon generally applicable contract law, so there is no conflict between New Jersey law or the law of any other state, including New York. Verizon's form Customer Agreement provides that the law of the state "encompassing the area code assigned to [the customer's] wireless phone number when [the customer] accepted the agreement." Absent public policy considerations, New Jersey will honor a choice-of-law provision in a contract. Restatement (Second) Conflict of Laws § 187. Since Mr. Waudby resides in New York, Plaintiff has cited to New York law. However, New York follows general contract principles, so the arguments presented here would be applicable to all of the class members, regardless of their residence.

enforceable or an unenforceable penalty is a question of law for the Court. *JMD Holding Corp.*

*v. Congress Financial Corporation*, 4 N.Y.3d 373, 379, 828 N.E.2d 604, 609, 795 N.Y.S.2d 502,

506 (2005).

> A contractual provision fixing damages in the event of breach will be
> sustained if the amount liquidated bears a reasonable proportion to the probably
> loss and the amount of actual loss is incapable or difficult of precise estimation.
> If, however, the amount fixed is plainly or grossly disproportionate to the
> probable loss, the provision calls for a penalty and will not be enforced.

*Id.*, 4 N.Y.3d at 380, 828 N.E.2d at 609, 795 N.Y.S.2d at 507. *See also* Restatement (Second) of

Contracts, § 356, comment b. Thus, a liquidated damages clause may be found unenforceable if

either the damages as a result of a breach are readily ascertainable at the time the parties entered

the contract or that the amount of the "liquidated damages" is conspicuously disproportionate to

the foreseeable losses. *Bates Advertising USA, Inc. v. 498 Seventh LLC*, 7 N.Y.3d 115, 120, 850

N.E.2d 1137, 1139, 818 N.Y.S.2d 161, 163 (2006). If a liquidated damages clause is rejected as

a penalty, the recovery is limited to the actual damages proven. *JMD Holding*, 4 N.Y.3d at 380,

828 N.E.2d at 609, 795 N.Y.S.2d at 507.

Verizon's ETF is an unenforceable penalty because Verizon's potential damages in the

event of a breach by the customer are capable of precise estimation and the ETF is

disproportionate to the reasonably foreseeable losses. The purported reason that the ETF is

imposed is that Verizon gives the customer a steep discount on handsets in return for the

customer committing to a one- or two-year contract with Verizon. The ETF is imposed

ostensibly to recover the cost of the phone if the customer breaks the contract.

The ETF is an unenforceable penalty for two reasons. First, the damage to Verizon is

easily calculable, it would be the amortized cost of the phone the customer purchased. Second,

the ETF is the same whether the customer cancels his or her contract in the first month or in the

twenty-third month. Particularly in the later months, the ETF is disproportionate to the damages

19

Verizon might foreseeably incur in the event of a breach by the customer. An additional problem with both reasons is that the ETF is a one-size-fits-all charge. Customers who purchased an inexpensive phone are charged the same amount as customers who purchased an expensive phone. Theoretically, Verizon would suffer greater damages if a customer with an expensive phone terminated his or her contract, but a customer who bought an inexpensive phone would pay the same as the other customer with the expensive phone. As a result, the ETF would impose a relatively heavier burden on the customer purchasing a less expensive phone. For the same reasons, Verizon's ETF is an "unreasonable" charge contrary to § 201 of the Communications Act and a violation of applicable consumer fraud statutes.

**C.    Verizon's Arbitration Clause Is An Unenforceable Exculpatory Clause**

Exculpatory clauses which exonerate a party for his or her own wrongdoing may be enforceable, but are closely scrutinized by the courts. *Lago v. Krollage*, 78 N.Y.2d 95, 99, 575 N.E.2d 107, 110, 571 N.Y.S.2d 689, 692 (1991). Nonetheless, an agreement is void which purports to grant an exemption from liability for willful or grossly negligent acts, or where a special relationship exists between the parties such that an overriding public interest demands that such a contract provision be rendered ineffectual. *Id.*, 79 N.Y.2d at 100, 575 N.E.2d at 110, 571 N.Y.S.2d at 692. Such an overriding public interest which would cause an exculpatory clause to be unenforceable would be "in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing." *A.H.A. General Construction, Inc. v. New York City Housing Authority*, 92 N.Y.2d 20, 31, 699 N.E.2d 368, 374, 677 N.Y.S.2d 9, 15 (1998).[7] *See also Tessler v. Sonitrol Security Systems of Northern*

---

[7]     If there is unequal bargaining power between the parties or the clause is unconscionable, an exculpatory clause may be unenforceable even as to negligent acts. *See Kane v. U-Haul International*, 218 Fed.Appx. 163, 166 (3d Cir. 2007); *Tessler, id.* (New Jersey law); *Trump International Hotel & Tower v. Carrier Corp.* 2007 WL 3120865 (S.D.N.Y. 10/23/07); *Sanif v.*

*New Jersey, Inc.*, 203 N.J.Super. 477, 483-486 (App.Div. 1995)(surveying cases and following general rule that exculpatory clause will not insulate party from damages resulting from intentional wrongdoing).

Verizon's arbitration clause is not, on its face, an exculpatory clause, but as applied to claims challenging Verizon's Early Termination Fee or any other universally applied charge or policy, it acts as an exculpatory clause because it does not provide a customer with a realistic opportunity to challenge the ETF. Simply put, it will generally be beyond the capability of a layman to know how to challenge the ETF as an unenforceable penalty, and it would be an inherently unfair fight to have a *pro se* claimant attempt to prove that the ETF is an unenforceable penalty against Verizon's attorneys. Further, it would be simply uneconomical for a customer to hire an attorney to represent him or her in challenging the ETF, since it would cost several hundred thousand dollars in attorney's fees and expert fees[8] in order to recover $175.

---

*Iannotti*, 119 A.D.2d 654, 655, 500 N.Y.S.2d 798, 799 (2d Dept. 1986). While Verizon's Customer Agreement is a contract of adhesion, and may be unconscionable, it is not necessary to reach those issues, since exculpatory clauses are unenforceable as to intentional wrongdoing even if the contract is between parties with equal bargaining power.

[8]   Plaintiff's estimate that litigation of a properly litigated single claim challenge to the ETF would be several hundred thousand dollars. In addition to the hours of legal research and briefing related to the legal issues of whether the ETF is a penalty, gathering and digesting the documents necessary to prove that the ETF constitutes a penalty would take hundreds of hours of attorney time. For example, a claimant would need documents from Verizon showing the costs related to the sale of phones to customers, what discounts on what phones would be given to customers depending upon the length of their contract, data as to what losses Verizon would actually suffer if a customer terminated their contract prior to the termination date, whether Verizon had ever made such a calculation itself before imposing the ETF, and how the amount of the ETF was calculated. Several depositions would likely be necessary to question Verizon witnesses about these issues. In addition, an economic expert may be necessary in order to give an opinion as to how the information obtained from Verizon relate to the legal standards of what constitutes a penalty. In formulating his or her opinion, the economic expert would likely have to review most of the same Verizon documents as the attorneys to make that determination, in addition to the deposition testimony. How many hundred thousand dollars this may cost may be open to debate, but it is not debatable that the cost would be greatly disproportionate to the $175 ETF.

In addition, Verizon's imposition of the ETF is the type of conduct that "smacks of intentional wrongdoing". This is not an instance of, for example, a Verizon employee not exercising due care and crashing his bucket truck into a customer's window, or Verizon miscalculating a figure leading to an erroneous charge. The ETF did not appear in the Customer Agreement by accident. Rather, the EFT has been imposed as a matter of intentional, calculated corporate policy. As is set forth above, penalties are unenforceable as a matter of public policy. As such, an attempt to impose or collect a penalty would be "in contravention of acceptable notions of morality." To add insult to injury, imposing and collecting a penalty which Verizon knows that very few customers would (or could) challenge would likewise be "in contravention of acceptable notions of morality." A clause in a contract that would insulate a party from liability resulting from the imposition of an illegal penalty would, therefore, be an unenforceable exculpatory clause.

**D.    The Arbitration Clause Provides No Real Remedy To Plaintiff Or The Class**

The arbitration clause in Verizon's Customer Agreement is found at Exhibit B to the Declaration of Daniel Malutich. For the reasons set forth below, Verizon's arbitration clause is designed to discourage challenges to a widespread practice involving small amounts of money per customer, such as the imposition of the ETF. By way of example, the ETF charge means only $175 to the customer, but means hundreds of millions of dollars to Verizon. By throwing sufficient obstacles in the way of customers attempting to challenge the ETF, such as the class action arbitration waiver and other portions of the arbitration clause, the arbitration clause effectively insulates Verizon from *any* challenge to the ETF. As Judge Posner observed in *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004):

> The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The

22

*realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.

While a consumer might be marginally less of a lunatic or less fanatical to sue over $175, rather than $30, Judge Posner's observation is equally applicable here. [9]

In addition, although Verizon's Customer Agreement provides for a procedure for obtaining a remedy against Verizon in the event of a dispute, upon closer analysis, the arbitration clause actually throws sufficient roadblocks in the way of a consumer who may wish to challenge an ETF such that the arbitration clause insulates Verizon against liability, contrary to well-settled contract law.

For example, paragraph 1 of the arbitration clause provides that in the event of arbitration between Verizon and the customer, that the prevailing party may be awarded their attorney's fees "if an applicable statute provides for an award of attorney's fees." Plaintiff has asserted essentially three separate claims, one under the Federal Communications Act pursuant to 47 U.S.C. §201, a consumer fraud claim, and a claim for declaratory judgment that the early termination fees are unlawful. The FCA claim and the consumer fraud claims would allow for the recovery of attorney's fees by a successful plaintiff, *see* 47 U.S.C. § 206; N.J.SA. 56:8-19, but the declaratory judgment claims, with no statutory right of attorney's fees, would be subject to the American Rule.

On its face, it would seem that if Mr. Waudby, or any other individual customer successfully challenged Verizon's ETF as a penalty, they would be made whole, *i.e.*, they would get back the $175 ETF, perhaps minus Verizon's actual damages, and would be reimbursed their

---

[9]     Actually, Judge Posner's observation is less far off than it would appear. As is set forth above, a penalty clause may be unenforceable, but the injured party is allowed to collect the damages actually proven. Thus, while class members might be entitled to a refund of any Early Termination Fee which they paid, Verizon would be allowed to offset its actual damages. The net to the customer could easily be under $100 and could be in the $30 range.

the attorney's fees which they expended. Generally, however, the amount in controversy is a significant factor governing the amount of *reasonable* attorney's fees. Thus, absent extraordinary circumstances, if Mr. Waudby or another individual customer successfully challenged Verizon's ETF, they would be awarded $175, plus, at most, $175 in reasonable attorney's fees. Under those circumstances, a layman would not have sufficient legal knowledge to establish that the ETF was an unlawful penalty and no reasonable person would pay an attorney hundreds of thousands of dollars to challenge the ETF, when the most they could be awarded is an amount keyed to the amount in controversy, not the several hundred thousands of dollars necessary to prove their claim.[10]

The factors to be considered in determining the reasonableness of an attorney fee award are:

> (1) the time and labor required;  (2) the novelty and difficulty of the questions;  (3) the skill requisite to perform the legal service properly;  (4) the preclusion of employment by the attorney due to acceptance of the case;  (5) the customary fee;  (6) whether the fee is fixed or contingent;  (7) time limitations imposed by the client or the circumstances;  (8) the amount involved and the results obtained;  (9) the experience, reputation, and ability of the attorneys;  (10) the "undesirability" of the case;  (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*City of Riverside v. Rivera*, 477 U.S. 561, 568, n. 3 (1986). The starting point for all attorney fee awards is the "lodestar" calculation, the number of hours expended times the attorney's hourly rate. *Rivera*, 477 U.S. at 568. The court may then adjust the lodestar upwards or downwards

---

[10]  Just as important a question is why would Verizon spend hundreds of thousands of dollars in attorney's fees defending a $175 claim. On an individual basis, Verizon would be better off refunding the $175 ETF than spending $175,000 to try to avoid paying the $175. Overall, Verizon would come out ahead, though, if it deterred more than 1,000 would-be challenges to the ETF. If word got out that Verizon would simply refund the $175 ETF in order to avoid litigation expenses, it would be flooded with demands. On the other hand, if a would-be claimant knew he or she would have to spend $175,000 or more in a hotly contested arbitration to recover the $175 ETF, no reasonable person would bother.

based upon the factors set forth above. The most important factor in determining the reasonableness of the fee award is the amount involved and the results obtained. *Id.*

In *Rivera*, the Court found that there was no need for the attorney's fees to be proportional to the amount of damages awarded. *Rivera*, 477 U.S. at 574-581. However, that holding was limited to civil rights cases, because of the important public interest in encouraging counsel to vindicate constitutional rights even if actual damages might be small or minimal. *Id.* On the other hand, in his concurring opinion, Justice Powell observed, "It probably will be the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Rivera*, 477 U.S. at 586, n. 3 (Powell, J., concurring in judgment)(emphasis in original).

Lower courts have taken Justice Powell's observation to heart. For example, New York law, which Verizon argues is applicable to Plaintiff's claims, limits the amount of attorney's fees which can be awarded in contractual fee-shifting cases to the amount in controversy. *Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19-20 (2d Cir. 1992). That rule is further tempered in that when determining whether the fees in question are reasonable, the fee arrangement between the prevailing party and the attorney cannot be grossly disproportionate to the fees the party would agree to in the absence of a fee-shifting agreement. *Id.* at 20. This rule has been applied both in New York and elsewhere to statutory fee-shifting claims involving only private economic losses. *International Cablevision, Inc. v. Noel*, 982 F.Supp. 904, 911-13 (W.D.N.Y. 1997)(attorney fee claim limited to $20,000 on $20,000 statutory damages for selling illegal cable decoder boxes contrary to Cable Communications Policy Act.). The reasoning is that a reasonable person would not pay more in attorney's fees than they were fighting over in the litigation. For example, in *Hilfrey v. Chevrolet*, the plaintiff recovered $4,070.80 in a lemon

law case, but sought over $12,000 in attorney's fees. The District Court limited the plaintiff's

attorney fee claim to the amount of the recovery, explaining:

> We do not believe any reasonable person would ordinarily spend more than
> $4,070.80 in legal fees to recover $4,070.80. We are certain no reasonable person
> would pay $12,405 in fees to win $4,070.80. The difference in this case is that
> the fee-shifting statutes ensure that a car buyer need not expend any money on an
> attorney in order to recoup his damages since those costs will be borne by the
> manufacturers. Even so, the reasonableness of the attorneys' fees cannot be
> measured in a vacuum but must be evaluated by the standards of ordinary
> commercial transactions. In other words, there must be some rational relationship
> between the amount of loss and the attorney costs spent in trying to recoup that
> loss. It is simply unreasonable for Kimmel & Silverman to have spent nearly
> $13,000 (and rising) in attorneys' fees and costs in pursuit of a loss worth just
> over $4,000. We shall therefore award far less than plaintiffs seek.

*Hilferty v. Chevrolet Motor Division of General Motors Corp.*, 1996 WL 287276 at *6 (E.D.Pa.

1996).

However, as Justice Powell noted in *City of Riverside*, in rare cases of private litigation, a

benefit to the public can justify an award of attorney's fees disproportionate to the amount in

controversy. For example, in *Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3d Cir.

1989), the Third Circuit affirmed an award of $64,946.11 in attorney's fees under RICO when

the jury awarded the plaintiff $887 in damages. There, the plaintiff brought suit against anti-

abortion protesters who had damaged its offices. The Third Circuit found that a proportionality

rule was not applicable to RICO claims for the same reasons that a proportionality rule was

inapplicable to civil rights cases. *Northeast Women's Center*, 889 F.2d at 473-475. The court

further noted, citing Justice Powell, "we believe that this would be one of the 'rare cases in

which an award of private damages can be said to benefit the public interest to the extent that

would justify [a] disproportionality between damages and fees.'" *Northeast Women's Center*,

889 F.2d at 472, n. 13.

26

Again, Verizon's arbitration clause comes to its rescue. A successful customer could not be awarded attorney's fees in excess of the amount in controversy because he or she could not generate a benefit to the public interest. Nothing that any individual customer could do in an arbitration could benefit any other customer because paragraph 5 of the arbitration clause provides "An award and any judgment confirming it only applies to the arbitration in which it was awarded and can't be used in any other case except to enforce the award itself." Thus, under the terms of the arbitration agreement, if one customer were to prove that Verizon's ETF were an unlawful penalty, a second customer could not use that finding against Verizon under the doctrine of collateral estoppel.[11] Rather, the second, third, fourth, and so on customers would have to spend their own money reinventing the wheel and attempt to prove all over again that Verizon's ETF was unlawful penalty. This is further deterrence to customers bringing individual arbitrations because no one could use any arbitration ruling adverse to Verizon to their own benefit.[12]

Based upon the foregoing, while Verizon is seeking to compel individual arbitration of Mr. Waudby's claims, individual arbitration provides no real remedy to him or to any other class members to challenge Verizon's ETF. As a practical matter, Verizon's arbitration clause insulates it from liability from any challenge to its ETF. Thus, it is an unenforceable exculpatory clause. Since Verizon's arbitration clause is unenforceable with respect to Plaintiff's and other class members' claims, Verizon's motion to compel individual arbitration should be denied.

---

[11]    This assumes that the second customer could obtain a copy of the arbitration award in the first instance. While arbitration awards are not sealed or otherwise confidential, they are also not public records like court proceedings.

[12]    *See* footnote 10, *supra.*

27

## POINT THREE

## AS A MATTER OF NEW JERSEY PUBLIC POLICY
## CLASS ACTION WAIVERS ARE UNENFORCEABLE WHETHER APPLIED TO
## COURT PROCEEDINGS OR ARBITRATION

Verizon predictably argues that the Third Circuit's recent decision in *Gay* controls the outcome here, and establishes a federal rule that class action waivers are always enforceable. This is an exaggeration of what *Gay* establishes. It also ignores that under New Jersey law, as a matter of public policy, class action waivers (whether they appear in arbitration agreements or otherwise) are unenforceable. A brief review of *Muhammad* and *Gay* shows this to be true, and further establishes that Verizon's class action waiver is unenforceable as a matter of New Jersey public policy.[13]

In *Muhammad*, the New Jersey Supreme Court unequivocally reaffirmed that class actions fulfill the public policies of the state of New Jersey. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 17-18 (2006). For that reason, the court held:

> As a matter of generally applicable state contract law, it was unconscionable for defendants to deprive Muhammad of the mechanism of a class-wide action, whether in arbitration or in court litigation. The public interest at stake in her edibility and the ability of her fellow consumers effectively to pursue their statutory rights under this State's consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement. *Id.* at 22.

This holding was not arbitration explicit – a class action ban is contrary to New Jersey public policy whether "applied in a lawsuit or in arbitration." *Id.* at 7. Indeed, the *Muhammad* Court – evidencing New Jersey's consistency with the federal policy favoring arbitration – enforced the arbitration agreement in question – but only after striking the class action ban. *Muhammad* thus

---

[13] *Muhammad* permitted arbitration to proceed – but without the class ban or waiver. That result is not available here since Verizon only seeks arbitration if it can have it the way it wants it, *i.e.*, only on an individual basis. If the Court finds, as Plaintiff submits it should, that the class ban is unenforceable as a matter of New Jersey public policy, then the litigation must proceed because Verizon's Customer Agreement provides that the arbitration clause is unenforceable of the class ban is invalidated.

28

establishes a number of principles which are relevant here.  First, class action bans, as a matter of generally applicable contract law, are unconscionable in the context of small consumer claims such as those at issue here.  Second, the Court's unconscionability determination was not arbitration specific, it applies whether the ban is sought in litigation or in arbitration.  These principles control the outcome here – and are not altered by *Gay*.

*Gay* held that Pennsylvania law conflicted with the FAA because, according to the Third Circuit, it was hostile to arbitration by requiring that consumers be permitted to bring class actions in court.  *See Gay*, 511 F.3d at 395.  No such hostility exists here, nor can New Jersey law be considered at all at odds with the federal policy favoring arbitration.  The rule of law announced in *Muhammad* is not rooted in hostility to arbitration.  In fact, *Muhammad* compelled arbitration.  Instead, the *Muhammad* rule of law arises from New Jersey's public policy favoring class actions, and from the normal contract principles that prohibit exculpatory clauses in adhesive contracts, whether the class action bans are located in contracts that contain arbitration clauses or not.  In other words, *Muhammad* puts arbitration clauses on the same footing as any other contracts, just as the FAA requires.

The result of this analysis is that, as a matter of New Jersey law, the class action ban pressed by Verizon, cannot be sustained.  Verizon will counter that even if Plaintiff's view of *Muhammad* and *Gay* prevails, it is irrelevant since New York law governs this case.  Not so when the issue is the enforceability of the class action ban as it appears in Verizon's customer agreement.  Under New York law such a ban would be enforced.  It would, however, violate a fundamental policy of New Jersey to apply that ban to this lawsuit which is venued in New Jersey and which fundamentally concerns the actions of a New Jersey corporate citizen.  In *Muhammad* the Court spoke at length of a public policy against class action bans where the bans would have the effect of barring consumers from effectively vindicating their rights under the Consumer Fraud Act. Under New Jersey choice of

law rules, New York law, which would support such a ban, cannot be applied in the face of this fundamental policy. Nor can Verizon find solace in the New Jersey Supreme Court's companion case of *Delta Funding Corporation v. Harris*, 189 N.J. 28 (2006). In *Delta Funding,* the plaintiff was not seeking to bring a class action, and the amount in controversy was great, meaning that it was not a situation where the arbitration clause acted as an exculpatory clause.

In sum, the preemption language of *Gay* does not change the result here. *Gay* concerned Pennsylvania law whereas the principles established by *Muhammad* are not based upon a preference for litigation over arbitration. Under New Jersey law, normal contract principles that prohibit exculpatory clauses in adhesive contracts are applicable to class action bans, in settings, such as here, where those bans are exculpatory, whether the class action bans are located in contracts that contain arbitration or not. Taken together with the strong New Jersey public policy favoring class actions in consumer suits, it is apparent that Verizon's class action ban cannot be enforced, nor can New York law be applied to the issue as it would conflict with a fundamental public policy of this State of allowing consumers the ability to effectively vindicate their rights under the State's consumer protection statute.

## CONCLUSION

For the reasons set forth above, Verizon's motion to compel arbitration should be denied.

<div style="margin-left: 50%">

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiff


By: ___/s/ James E. Cecchi_____
JAMES E. CECCHI

</div>

Dated: February 19, 2008

<div style="text-align:center">30</div>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN WAUDBY, individually and on behalf of all others similarly situated, | : | Civil Action No. 07-470 (FLW) |
| | : | |
| Class Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM** |
| | : | **OPINION** |
| VERIZON WIRELESS SERVICES, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

**I.   INTRODUCTION**

This matter comes before the Court upon Motion by Movant Brian Thormann ("Movant") to Intervene in this Action and for Appointment of Interim Class Counsel [dkt. entry no.24], returnable February 4, 2008. Both Class Plaintiff John Waudby ("Plaintiff") and Defendants Verizon Wireless Services LLC, et al. ("Defendants") oppose Mr. Thormann's Motion. In addition, Mr. Waudby filed a cross-motion to appoint Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart, & Olstein, P.C.; Freed & Weiss, LLC; Seeger Weiss; and Richard J. Burke LLC (collectively "Carella Byrne") as interim class counsel. Mr. Thormann filed a reply on January 18, 2008. The Court considered all of the parties' submissions and decided this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, Mr. Thormann's motion to intervene is denied and Carella Byrne is appointed interim class counsel.

1

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Movant Brian Thormann seeks to intervene in this class-action lawsuit that was filed on

January 27, 2007.  In the Complaint, Plaintiff alleges that Defendants' "early termination fee"

("ETF") gives rise to claims for violation of (1) the Federal Communications Act; (2) the New

Jersey Consumer Protection Act; (3) alternatively, violations of the substantially similar laws of

certain states; and (4) Declaratory Relief pursuant to 28 U.S.C. § 2201.  (Pl.'s Compl. at ¶ 4.)

Proposed intervenor, Mr. Thormann, is a member of the putative class in the pending

Arbitration[1] and a member of the putative class in this action.  He seeks to intervene under

Federal Rules of Civil Procedure 20(a) and 23(d)(2).  Moreover, he seeks to have his counsel, the

Law Offices of Scott A. Bursor, appointed as sole Lead Counsel.

Movant's Counsel argues that since the Arbitrator appointed Mr. Bursor as sole Lead

Counsel in the California-arbitration, which has been going on for four years, then this Court

should similarly grant Movant's motion to intervene as well as its motion for appointment of

class counsel.  In furtherance of its arguments, Movant states that Mr. Weiss and his colleagues

were discharged from the Arbitration in January 2007.  (Movant's Br. at 1.)  Movant then argues

that a month later Mr. Weiss copied verbatim the pleading from the Arbitration and then filed it

with this Court.  *Id.*

---

[1] There is a substantially similar class in *Brown and Zobrist v. Cellco Partnership d/b/a Verizon Wireless*, AAA Xase No. 11 494 01274 05 (the "Arbitration").

## III.   DISCUSSION

### A.   Movant's Motion to Intervene

Movant argues that he is a member of the putative class defined in paragraph 30 of Mr. Waudby's Complaint as "[a]ll persons who Verizon charged an ETF." (Movant's Br. at 2.) Thus, Movant argues that he should be permitted to intervene under Federal Rules 24 and 23(d)(2). *Id.* Defendants oppose Movant's motion arguing that Movant failed to comply with Rule 24(c) and, in addition, failed to demonstrate that he is entitled to intervene as of right pursuant to Rule 24(a).

#### 1.   *Federal Rule of Civil Procedure 24(a)*

Federal Rule of Civil Procedure 24(a) states that "[u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the application may, as a practical matter, impair or impede the applicant's ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*" Fed. R. Civ. P. 24(a) (emphasis added).

Here, Movant has not shown that his interest would be impaired by the case moving forward without him intervening. In fact, quite the opposite is true because if the class is certified, the Court would deem that Movant's interests are adequately protected. *See Fed. R. Civ. P. 23(a)(4).* If, on the other hand, the class is not certified than Movant remains free to file an independent action to pursue his claims. Moreover, Movant can opt out of any class that may ultimately be certified in order to pursue his claims independently. Thus, the Court finds that Movant has not demonstrated a real deprivation of interests. *See In re Safeguard Scientifics*, 220

F.R.D. 43, 48-49 (E.D. Pa. 2004) (the court denied a proposed intervention of a class member

under Rule 24 because the class member was free to pursue an individual claim). By his own

statement, Movant proves that he is not entitled to intervene as of right since both he and Mr.

Waudby have the same goal. Specifically, Movant states that "since [he] is a member of the

putative class seeking to assert essentially the same claims on behalf of essentially the same class

of [Defendants'] customers, [he] should be permitted to intervene under Rule 24(a)." (*See*

Movant's Br. at 2.)

> 2.    *Federal Rule of Civil Procedure 24(c)*

Pursuant to Federal Rule of Civil Procedure 24(c), a "person desiring to intervene shall

serve a motion . . . that shall state the grounds therefor and shall be accompanied by a pleading

setting forth the claim or defense for which intervention is sought." A proposed intervenor must

comply with the requirements of Rule 24(c). *See S.E.C. v. Investors Sec. Leasing Corp.*, 610

F.2d 175, 178 (3d Cir. 1979). Rule 24(c) is intended to "enable the court to properly frame the

issues, and to inform the parties against whom some right is asserted or relief sought." *In re*

*Pantopaque Prods. Liab. Litig.*, 939 F. Supp. 266, 274 (D.N.J. 1996).

Here, Movant has not provided a pleading as is required by the Rule. Moreover,

Movant's motion fails to state a factual basis for a claim beyond the assertion that Movant is a

member of the putative class as defined in the Complaint. Said statement neither sufficiently

identifies Movant's interest relating to "the property of or transaction that is the subject of" this

action nor explains why "the disposition of the action may . . . impair or impede" his ability to

protect [his] interest." Further, Movant's conclusory statement does not allow an adequate

assessment of whether Mr. Waudby adequately represents Movant's interests.

The Court and parties cannot speculate on what Movant's interests and positions might

be. Thus, Movant's Motion to Intervene is denied.[2]

    B.    <u>Appointment of Lead Class Counsel</u>

    At the outset, the Court notes that since Movant's motion for intervention has been

denied, Movant's counsel, The Law Offices of Scott A. Bursor, cannot be interim lead counsel.

However, even if Movant was permitted to intervene, the Court would nonetheless appoint

Carella Byrne as interim lead counsel.

    Pursuant to Federal Rule of Civil Procedure 23(g)(2)(A), the "court may designate

interim class counsel to act on behalf of the putative class before determining whether to certify

the action as a class action." Pursuant to Federal Rule of Civil Procedure 23(g)(2)(B), "[i]f more

than one adequate applicant seeks appointment as class counsel, the court must appoint the

applicant *best* able to represent the interests of the class." (emphasis added). Federal Rule of

Civil Procedure 23(g)(1)(C)(i) lists the four criteria that the court must consider in appointing

class counsel. They are the following: (1) the work counsel has done in identifying or

investigating potential claims in the action; (2) counsel's experience in handling class actions,

other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of

the applicable law; and (4) the resources counsel will commit to representing the class. Also, the

Court may consider other matters pertinent to counsel's ability to fair and adequately represent

the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(C)(ii). Each factor will be discussed

---

[2] Movant also sights Fed. R. Civ. P. 23(d)(2). The Court holds that Rule 23(d)(2) does not create a separate or independent basis for intervention. *See Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 344 (D. Mass. 2005). Rather, intervention in class actions is governed by the same principles that apply in any other proceeding. *See* 7B C.A. Wright & A.R. Miller, Federal Practice and Procedure: Civil § 1799 at 246 (3d ed. 2005).

below.

      1.    *The Work Counsel has Done in Identifying or Investigating Potential Claims in the Action*

Carella Byrne drafted the Complaint in this case. Moreover, despite Movant's counsel argument that the Complaint in this case is "copied verbatim" from the Complaint that is pending in arbitration, (Movant's Br. at 1), the Court finds that Carella Byrne drafted that Complaint as well. (Decl. of Paul Weiss at 3.) It is undeniable that Movant's counsel has been involved in the Arbitration of this case in California, (Movant's Br. at 4-12), but the Court finds that Carella Byrne has more experience in class action litigation and, more specifically, ETF litigation. In fact, Carella Byrne brought one of the initial ETF actions and has had substantial participation in pursuing ETF claims. Moreover, Mr. Paul Weiss was co-class counsel in the ETF arbitration matter pending against Verizon until his participation ceased. Moreover, Carella Byrne, specifically both Richard J. Burke and Paul Weiss, developed the ETF's class damage and recovery model that was used by all Plaintiff's counsel at the unsuccessful mediation held in California in 2007. Carella Byrne has expanded a significant amount of money ("tens of thousands of dollars") in FCC related costs on how to best oppose the industry petitions. (*See* Weiss Decl. at 4.)

      2.    *Counsel's Experience in Handling Class Actions, Other Complex Litigation, and Claims of the Type Asserted in the Action*

At the outset, the Court notes that both Counsel are experienced litigators. However, Carella Byrne is more experienced and better able to handle the types of claims asserted in this action.

Freed & Weiss are well known for their consumer class action cases.[3] Moreover, Carella Byrne is co-lead class counsel in *Hall v. Sprint Spectrum*, -- N.E.2d --, 2007 WL 1892679 (Ill. App. Ct. June 27, 2007) which is the only cell phone ETF case that has been certified on a contested basis as a multi-state class. (*See* Weiss Decl. at 2.) Carella Byrne has extensive class-action experience in class actions involving cases such as the Exxon Dealer Class Action, the AOL/Time-Warner Class Action, the KPMG Tax Shelter Class Action, the Merck/Vioxx Securities Class Action, the Rail Fuel Surcharge Class Action, the Virgin Mobile Securities Class Action, and the Wachovia ERISA Class Action. (*See* Decl. of James Cecchi at 3-6.) Seeger Weiss LLP is an international law firm with extensive experience in the prosecution of complex litigation, specifically involving cases seeking relief for consumers in the telecommunications industry. (Decl. of Scott Alan George at 2.)

While Carella Byrne are proven, high-powered litigators involved in some of the most complex class-action lawsuits in the country, Scott A. Bursor, while experienced, is a solo practitioner.[4] It would be untenable for the Court to permit Mr. Bursor alone to represent the proposed class. Although Movant's counsel argues that it is better able to handle the case then the Carella Byrne team, the Court finds that Carella Byrne has acted diligently and appropriately throughout their representation of this case and the pending Arbitration.

---

[3] *See* Weiss Decl. at 2 (*Hall v. Sprint Spectrum L.P., et al.*, No. 04-L-113 (3d Jud. Cir., Illinois) (ETF Charges); *Monday v. Locus Telecommunications, Inc.*, Civ. Action No: 07-2659 (PGS) (D.N.J.) (calling card fees); *Ramirez v. Lycatel, LLC*, Civ. Action No. 07-5533(FSH)(D.N.J.) (calling card fees); etc.)

[4] . The Court cannot speculate who Mr. Bursor has as co-counsel working with him on this matter.

3.    *Counsel's Knowledge of the Applicable Law*

Both Movant's and Plaintiff's counsel are knowledgeable in the applicable law. The Court does not base its holding for Movant's counsel's lack of knowledge in the substantive law. Rather, the Court finds that the attorneys on the Carella Byrnes' team are more experienced, have completed more work, and will be able to devote more resources to this litigation than Movant's attorney(s). Additionally, Carella Byrne is more familiar with this Court's local rules and procedures.

4.    *The Resources Counsel Will Commit to Representing the Class*

As previously noted, the Carella Byrne team has well-established, respected, and experienced attorneys representing the proposed Class. Carella Byrne has more resources to commit to this litigation than the Law Offices of Scott A. Bursor. Movant's brief aims more at disqualifying Carella Byrne than it does qualifying himself. Movant alleges that "Waudby counsel have a long track record of failing to appear, failing to contribute, failing to assist, and failing to devote any significant resources to the prosecution of these claims." (Movant's Br. at 15.) The Court disagrees.

First, as the Court has previously noted, Carella Byrne was responsible for drafting the Complaint in this case as well as the Complaint in the four-year old Arbitration. Second, despite Movant's allegations that Freed & Weiss were engaged in a "dispute" with other counsel "concerning the representation of Ms. Zobrust[,]" rather than working on matters relating to the arbitration, the Court finds that Mr. Weiss stopped working on the arbitration because Phil Bock sent him an e-mail stating that Mr. Weiss should not perform any work on the Zobrist case. (Weiss Decl. at 5.) As Ms. Zobrist was not Mr. Weiss's client, it was not his responsibility to

8

represent her. Third, Movant's argument that Freed & Weiss failed to appear at a hearing is

similarly unpersuasive in light of the fact that they were never responsible for attending said

hearing. Rather, it was Mr. Bursor's own co-counsel in the Arbitration, the Lakin Law Firm,

who failed to attend the hearing. *Id.* at 5-6. Simply stated, the Court finds that Carella Byrne has

more resources to expend in this litigation and thus is a more appropriate representative of the

interim class.

In sum, the Carella Byrne team is appointed interim class counsel because (1) Movant's

Motion to Intervene was denied, thus leaving Movant's firm without a basis for becoming

interim class counsel and (2) Carella Byrne is experienced, able to expend more resources, and

has already expended a considerable amount of resources familiarizing themselves with the

claims involved in this lawsuit.

## IV.    CONCLUSION

For the reasons stated herein, Movant's Motion to Intervene is denied. Furthermore,

Movant's Motion to Appoint the Law Office of Scott A. Bursor as sole Lead Counsel is denied.

Plaintiff's cross-motion to appoint Carella Byrne as sole Lead Counsel is granted. An

appropriate Order accompanies this Memorandum Opinion.


**DATED**: February 14, 2008

9

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN WAUDBY, individually and on behalf of all others similarly situated, | : : : | Civil Action No. 07-470 (FLW) |
| Class Plaintiff, | : : | |
| v. | : : | O R D E R |
| VERIZON WIRELESS SERVICES, LLC, et al., | : : | |
| Defendants. | : : | |

This matter comes before the Court upon Motion by Movant Brian Thormann ("Movant") to Intervene in this Action and for Appointment of Interim Class Counsel [dkt. entry no.24], returnable February 4, 2008; and both Class Plaintiff John Waudby ("Plaintiff") and Defendants Verizon Wireless Services LLC, et al. ("Defendants") oppose Mr. Thormann's Motion; and Mr. Waudby filed a cross-motion to appoint Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart, & Olstein, P.C.; Freed & Weiss, LLC; Seeger Weiss; and Richard J. Burke LLC (collectively "Carella Byrne") as interim class counsel; and Mr. Thormann filed a reply on January 18, 2008; and the Court considered the matter pursuant to Federal Rule of Civil Procedure 78; and for the reasons stated in the accompanying Memorandum Opinion and good cause having been shown;

IT IS on this 14th day of February, 2008,

ORDERED that Movant's Motion to Intervene [dkt. entry no. 24] is DENIED; and it is

FURTHER ORDERED that Movant's Motion to Appoint the Law Offices of Scott A. Bursor as Interim Class Counsel is DENIED; and it is

**FURTHER ORDERED** that Plaintiff John Waudby's Cross-Motion to Appoint Carella

Byrne as Interim Class Counsel is hereby **GRANTED**.

<div style="text-align:right">

*s/ John J. Hughes*

**JOHN J. HUGHES**
**UNITED STATES MAGISTRATE JUDGE**

</div>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,    :
and VERIZON COMMUNICATIONS INC.,    :
:
                           Petitioners,    :    No. 08 CV 427 (RWS)
:
     vs.    :    Filed Electronically
:
PATRICIA BROWN, HAROLD P. SCHROER, and    :
DAWN M. ZOBRIST, on an individual basis and on    :
behalf of others similarly situated,    :
:
                     Respondents.    :
:
------------------------------------------------------------------------x

**PETITIONERS' SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO RESPONDENTS' MOTION BY ORDER TO SHOW CAUSE
FOR A PRELIMINARY INJUNCTION ENJOINING CLASS MEMBERS
<u>FROM BRINGING OR PROSECUTING CONFLICTING CLASS ACTIONS</u>**

Henry Weissmann
Hojoon Hwang
Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA  90071-1560
Tel:  213-683-9100 – Fax:  213-687-3702
E-mail:  Henry.Weissmann@mto.com
          Hojoon.Hwang@mto.com
          Jonathan Blavin@mto.com

Jeffrey S. Jacobson
Carl Micarelli
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022-3916
Tel:  212-909-6000 –  Fax: 212-909-6836
E-mail:  jsjacobson@debevoise.com
         cmicarelli@debevoise.com

Attorneys for Petitioners Cellco Partnership d/b/a
Verizon Wireless and Verizon Communications Inc.

Verizon Wireless's memorandum in opposition to Respondents' application for an Order to Show Cause explained why the Arbitrator's Injunction Award is contrary to law and should not be confirmed. After denying Respondents' request for a temporary restraining order that would have put the Injunction Award into immediate effect, the Court said that (1) it will hear argument on March 26, 2008 on the validity of the Arbitrator's underlying Class Determination Award simultaneously with argument on Respondents' request for a preliminary injunction putting into effect the Injunction Award during the pendency of this proceeding, and (2) the parties could, if they choose, submit additional briefing. Respondents submitted a substantial new brief on March 17. Verizon Wireless writes to respond to the new contentions Respondents raised in that Reply memorandum.

## ARGUMENT

This is not a situation in which a court has compelled arbitration and then enjoins the party compelled from continuing to prosecute litigation that contravenes the referral. No court has ever determined that the parties to whom this injunction would apply — in particular, the named plaintiff in the action pending in New Jersey federal court — must arbitrate their claims, let alone that they must do so as part of a class arbitration. To the contrary, Verizon Wireless has moved to vacate the Arbitrator's Class Determination Award, by which the Arbitrator arrogated to himself jurisdiction and powers that the parties' agreements to arbitrate expressly do not authorize. If the Court vacates the Class Determination Award, as it should, then Respondents' request for injunctive relief will be moot.

In addition to the unlawfulness of the Class Determination Award, the injunction Respondents request would be improper in any event. As Respondents have conceded, the Arbitrator's injunctive authority against absent class members can be no greater than that of a federal court. Verizon Wireless's prior brief cited *Retirement Systems of Alabama v. J.P.*

1

*Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004), which held that one tribunal hearing class claims may not enjoin proceedings in a parallel case, absent special circumstances not present here. Respondents' Reply fails even to mention this controlling precedent.

Respondents have not shown that the injunction is either necessary to prevent irreparable harm or within the authority of the Arbitrator. The injunction, moreover, is contrary to law. The motion for preliminary injunction therefore should be denied.

**I.    The Court Has Not Found and Should Not Find That Respondents Have a "Right" To Arbitrate Their Claims On a Classwide Basis.**

The Arbitrator's injunction founders at the outset because the Class Award upon which it is based must be vacated. The Arbitrator had no power to enjoin the class representative in the *Waudby* Action, or any other absent class member, unless the Arbitrator had the authority to include such persons in a class subject to his jurisdiction. No court has ever determined that the Arbitrator has such authority. On the contrary, Verizon Wireless has moved this Court to vacate the Class Determination Award.

Verizon Wireless's Motion to Vacate the Class Determination Award demonstrates at least four fundamental defects in that award, any of which justifies discarding it. Specifically:

- The validity of a class arbitration waiver is to be decided by a court, not the Arbitrator .

- The validity of a class arbitration waiver must be evaluated according to the law of each state in which prospective claimants reside pursuant to the contracts' choice of law provision. Several courts have expressly upheld these waivers under the laws of their states. The Arbitrator, however, improperly ruled Verizon Wireless's class action waivers to be *universally* unenforceable.

- If the class arbitration waivers were deemed invalid, the parties agreed not to arbitrate at all. Prior to July 2002, and in and after February 2006, Verizon Wireless's arbitration agreements provided that if the class action waiver provision was deemed unenforceable, then the arbitration agreement as a whole would not apply. The Arbitrator, however, ignored the express terms of the parties' agreement, deemed the non-severability clauses "unconscionable," and included in the arbitral class millions of customers who expressly agreed not to arbitrate.

- The Arbitrator certified a class without following the proper standards for doing so. He ignored the class representatives' lack of standing to represent the class, did not conduct a proper choice-of-law analysis, and did not require Respondents to demonstrate that the palpable intra-class conflicts in the case could be managed in a way that does not trample the rights of Verizon Wireless or absent class members.

If the Court vacates the Class Determination Award, as it should, such a decision would moot both the Injunction Award and Respondents' Order to Show Cause. In the absence of a determination by the Court that the Class Determination Award is valid and enforceable — and that the Arbitrator therefore has authority over Mr. Waudby and the other absent members of the putative class — there is no basis on which the Arbitrator could issue the Injunction Award.

## II.    The Line of Authority Cited in Respondents' Reply Brief Is Inapposite.

In each of the cases cited by Respondents in their Reply Brief, the courts, after granting a motion to compel arbitration, enjoined the party compelled from continuing to litigate in court. *See, e.g., Necchi Sewing Machine Sales Corp. v. Carl*, 260 F. Supp. 665, 669 (S.D.N.Y. 1966) ("*I* have held that the disputes here are referable to arbitration.") (emphasis added). The courts did so in these cases because, as this Court properly phrased the problem in *Reliance Nat'l Insurance Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 390 (S.D.N.Y. 1997), "[w]ere it otherwise, such an order [to arbitrate] would be rendered meaningless, since a petitioner would have no choice but to litigate arbitrable claims in a pending action or risk default."

These cases are inapposite for two reasons. First, as noted, no court has determined that the claims of absent class members — and in particular, the claims of the named plaintiff in the *Waudby* Action — must be arbitrated at all, let alone on a class basis. Second, these cases enjoin the party compelled in order to prevent harm to the moving party, who might otherwise be forced to litigate in a non-arbitral forum against its wishes. That harm is not at issue in this case, however, and the rationale behind these cases does not apply.

*Reliance*, *Necchi Sewing Machine* and the other cases cited by Respondents protect the interests of parties who do not want to litigate claims that they have successfully moved to compel into arbitration. The analog to this case would arise, for example, if the court in *Waudby* were to grant Verizon Wireless's motion to compel Mr. Waudby to arbitrate his claim on an individual basis, and if Mr. Waudby responded to that decision by bringing a new purported class action suit in another jurisdiction. In such a circumstance, the *Waudby* court certainly could, on a request by Verizon Wireless, enjoin Waudby from prosecuting that separate action. *See, e.g., Dominium Austin Partners, L.L.C v. Emerson*, 248 F.3d 720 (8th Cir. 2001) (requiring putative class plaintiff who signed an arbitration agreement to arbitrate on an individual basis; enjoining plaintiff from continuing the class action case).

But Verizon Wireless has not moved to compel a classwide arbitration, and it does not object to continuing to litigate the *Waudby* Action notwithstanding the pendency of the *Brown* arbitration. Nor would the injunction bar Verizon Wireless from litigating in New Jersey or any other forum. Rather, Respondents are seeking to enjoin only *other putative class members*. None of the cases Respondents cite involve such an internecine conflict.

Respondents erroneously contend that the Injunction Award would "protect" Respondents' "contractual rights." Respondents assert that that the pendency of *Waudby* has "already prejudiced Brown's arbitration rights, and threatens to deprive Brown entirely of her contractual right to arbitrate." Reply Mem. at 4. There is no support for this assertion. Respondents have been pursuing the *Brown* arbitration for over a year while the *Waudby* Action has been pending. As *Retirement Systems* shows, nothing prevents two class actions in two venues from proceeding in parallel.

4

In short, no harm would befall Respondents from *Waudby*'s continuing. Because the case threatens no "burden" on them, the concern at issue in the *Reliance* and *Necchi Sewing Machine* cases simply does not apply. The costs of allowing the arbitration and the *Waudby* case to proceed in parallel would fall on Verizon Wireless, not Respondents.

## III.    The Injunction Award Is Contrary to Law and Beyond the Arbitrator's Authority.

Even if Verizon Wireless was itself inclined to seek an injunction against all members of a certified class from prosecuting parallel litigation, the Second Circuit's decision in *Retirement Systems* would preclude the issuance of such an injunction. As in *Retirement Systems*, which involved a request by a defendant for exactly that kind of injunction, this situation "does not involve duplicative motions for injunctive relief, and does not expose defendants to the risk of inconsistent injunctions. It only risks subjecting defendants to simultaneous litigation in [two forums] — a familiar feature of our federal system." *Retirement Systems*, 386 F.3d at 430.

*Retirement Systems* holds precisely that the mere pendency of a class action does not permit an injunction against parallel litigation. In *Retirement Systems*, the district judge had identified several detrimental effects of a state court litigation proceeding in parallel to the complex multidistrict securities litigation over which she was presiding. One effect that concerned her is the same one identified by Respondents here, namely that the parallel court might decide an issue differently, "necessarily engender[ing] complicated and time-consuming motion practice in the class action in order to permit the ramifications, including any collateral estoppel effect, of that litigation to be determined before the class trial begins." 386 F.3d at 424.

The Second Circuit found these concerns to be insufficient to justify an injunction:

> As an initial matter, we note that a federal district court, even
> assuming it has some interest in avoiding delay in its own
> proceedings, has no interest — no interest that can be vindicated
> by the exercise of the federal injunction power-in being the *first*

court to hold a trial on the merits. We have held that a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues of collateral estoppel:

> There is no reason why a state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal. [*Id.* at 429 (citations omitted).]

If a *defendant* cannot obtain an injunction in this situation, an arbitral *plaintiff* cannot obtain an order blocking other plaintiffs from proceeding in parallel against a defendant — particularly when that defendant does not object.

Without mentioning *Retirement Systems* or expressly trying to distinguish it, Respondents' reply memorandum (at 11) suggests the possibility that "the entire arbitration proceeding" should be likened to "a settlement process, much like a preliminarily approved class action settlement." Respondents thus argue that the case falls within the Second Circuit's decision in *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), in which the Court upheld an injunction against parallel litigation in the context of a preliminarily-approved settlement. A settlement, however, is a consensual resolution to a case that, in the class action context, gives putative class members certain specified rights (to object, opt out, etc.). An arbitration is an adversarial proceeding. The two are simply not analogous.

The obvious flaws of the analogy aside, the Second Circuit's *Retirement Systems* decision itself forecloses the comparison Respondents attempt. *Retirement Systems* held that it is not the *beginning* of settlement discussions that trigger the possibility of a *Baldwin-United*-type injunction, but rather the "substantially significant prospect of settlement in the near future." 386 F.3d at 428, *quoting Baldwin-United*, 770 F.2d at 338. No such prospect exists here. The

arbitration is not in a settlement posture. To the contrary, it is nothing more or less than the kind of parallel proceeding that the Second Circuit reversed a district judge's attempt to block.[1]

Also, as in *Retirement Systems*, the plaintiffs "have failed to explain how the [proposed] injunction was necessary to protect" the interests they seek to promote. 386 F.2d at 428. Their answer, which seems to be that the Court cannot and need not even ask them to justify their request because the Arbitrator already has acceded to it, is not enough, for at least three reasons.

First, the Arbitrator's Injunction Award contains no discussion of what he believed the "harm" to be if the injunction did not issue. This Court cannot defer to findings without knowing their supposed factual basis.

Second, even if the Arbitrator accepted Respondents' arguments with respect to alleged harm, these are exactly the arguments that the Second Circuit, in *Retirement Systems*, said were insufficient. An Arbitrator's dubious blessing does not give this Court power to act in manner proscribed by controlling precedent; to the contrary, this Court cannot give effect to an order founded on an incorrect legal conclusion. *See Lusk v. Village of Cold Spring*, 475 F.3d 480, 484-45 (2d Cir. 2007) ("Questions of law decided in connection with requests for preliminary injunctions receive the same *de novo* review that is appropriate for issues of law generally." (citation omitted)).

---

[1]    Respondents are equally wrong to try to analogize a referral to arbitration "to removal from state court to federal court" (Reply Mem. at 10) — an argument that is unsupported by precedent. The *Waudby* Action is a separate case from *Brown*, and the pendency of the former does not interfere with the latter. In addition, removal divests the state court of jurisdiction and requires the state court to "proceed no further" unless the case is remanded. 28 U.S.C. § 1446(d). Thus, an injunction is in aid of the federal court's exclusive jurisdiction. By contrast, when a court refers a matter to arbitration, it does not lose jurisdiction. On the contrary, the action is stayed in the judicial forum, and the courts' jurisdiction must be invoked, as it was by Respondents, to confirm an arbitral award. And nothing in the FAA or any other law gives an arbitrator the power to enjoin a judicial proceeding in the same way that a federal court can enjoin a state court following removal.

Third, as discussed above, the Arbitrator's authority to exercise jurisdiction over the absent members of the putative class remains to be resolved by the Court. Plaintiffs' argument that the Court must simply accept the Arbitrator's findings before the Court has even determined that the Arbitrator had authority to make them is circular.

### CONCLUSION

The Court should vacate the class determination award or, in the alternative, deny the injunction Respondents have proposed.

Dated: New York, New York
　　　　March 24, 2008

           Respectfully submitted,

           Henry Weissmann
           Hojoon Hwang
           Jonathan H. Blavin
           MUNGER, TOLLES & OLSON LLP
           355 South Grand Avenue, Suite 3500
           Los Angeles, CA  90071-1560
           Tel:  213-683-9100 – Fax:  213-687-3702
           E-mail:   Henry.Weissmann@mto.com
                 Hojoon.Hwang@mto.com
                 Jonathan Blavin@mto.com

           Jeffrey S. Jacobson
           Carl Micarelli
           DEBEVOISE & PLIMPTON LLP
           919 Third Avenue
           New York, NY  10022-3916
           Tel:  212-909-6000 –  Fax: 212-909-6836
           E-mail:   jsjacobson@debevoise.com
                 cmicarelli@debevoise.com

           By:  __/s/ **Jeffrey S. Jacobson**_____
              Jeffrey S. Jacobson

           Attorneys for Petitioners Cellco Partnership d/b/a
           Verizon Wireless and Verizon Communications Inc.